UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61515-CIV-COOKE
MAGISTRATE JUDGE BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

      Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

      Defendants.

## DEFENDANTS' MOTION AND MEMORANDUM OF LAW FOR SPECIAL SCHEDULING ORDER

### I.  INTRODUCTION

Defendants Revolution Eyewear, Inc., Hardy Way, LLC (fka Hardy Life), and Gary Martin Zelman (collectively "Defendants") seek permission to file an early motion for summary judgment, without prejudice to their right to file a later motion on other grounds, if necessary.  Defendants' defense based on claim preclusion and issue preclusion can be decided expeditiously based on undisputed facts that are in the public record and/or readily available to all parties.  Specifically, as set forth in more detail below, plaintiffs' claims are barred based on the judgment and rulings in a prior case involving the same parties and same patent, *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Central District of California Case No. CV 02-1087 ("California Action").

An early motion for summary judgment based on this issue would very likely be dispositive and save the parties and the Court significant time and resources.  However, in the unlikely event Defendants' motion is not granted, there are additional issues which may be

-1-

appropriate for summary judgment later in the case, including invalidity and non-infringement.[1]

Defendants request, pursuant to Local Rule 7.C.2., that the Court grant permission to file such a later motion for summary judgment, if necessary.

Defendants request that the instant motion be heard at the same time as defendant Marchon Eyewear's motion to dismiss based on similar claim preclusion arguments, assuming the Court sets such a hearing.

## II.  THE CALIFORNIA ACTION BETWEEN THE SAME PARTIES ON THE SAME PATENT

This is the fourth lawsuit between plaintiffs and Revolution Eyewear on the '545 Patent and its predecessor. The '545 Patent is a reissue of U.S. Patent No. 5,568,207, which had only two claims.  In 1999, Aspex and Contour sued Revolution for infringement of the '207 patent. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, Central District of California Case No. 99-CV-1623, 2001 U.S. Dist. LEXIS 25831, at *1-2 (C.D. Cal. June 4, 2001).  The court granted Revolution's motion for summary judgment of non-infringement, and the Federal Circuit summarily affirmed. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 42 F. App'x 436 (Fed. Cir. 2002). [2]

In 2002, the '207 patent was reissued as the '545 Patent with 32 additional claims. (Hanle Decl. Ex. 1.)  Aspex and Contour filed a counterclaim against Revolution in the California Action identified above for infringement of the '545 Patent.  Specifically, Aspex and Contour asserted that Revolution infringed claims 6, 22 and 34 of the '545 Patent.  Early in the case, the Court granted partial summary judgment that Revolution did not infringe claims 6 and 34. *Revolution Eyewear*, 563 F.3d at 1364.  Later in the case, the Court entered judgment that

---

[1]     For example, one claim of U.S. Patent No. RE 37,545 (the "'545 Patent") has recently been rejected as obvious by the United States Patent and Trademark Office ("PTO") in a reexamination proceeding.  (Hanle Decl. Ex. 2.)  The same prior art relied on by the PTO renders the claims asserted in this case obvious.

[2]     This history can also be found in the Federal Circuit's decision.  See *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1368 (Fed. Cir. 2009).

Revolution infringed claim 22, which was affirmed by the Federal Circuit. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1365 (Fed. Cir. 2009). [3]

On September 23, 2009, Plaintiffs Aspex and Contour filed this lawsuit, yet another suit involving the same parties and the same '545 Patent. As addressed below, this lawsuit is barred under the doctrine of claim preclusion as a result of the judgment in the California Action. Gary Martin Zelman, as an alleged alter ego of Revolution, and Hardy Life, LLC, as a licensor and alleged aider and abettor, are in privity with Revolution, and Plaintiffs' legal theories against them are entirely dependent on their claim against Revolution. Thus, Plaintiffs' claims against Zelman and Hardy also fail as a matter of law.

### III. PLAINTIFFS' CLAIMS ARE BARRED BASED ON RES JUDICATA/CLAIM PRECLUSION

**A.     This Case Involves the Same Parties and the Same Claim as the California Action**

The doctrine of *res judicata*, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). The purpose behind the doctrine of *res judicata* it to protect a party from the expense and vexation attending multiple lawsuits on the same claims, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions. *Id.* "A claim will be barred by prior litigation if the four following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.* Each of those elements is present here: (1) a final judgment; (2) by a competent court; (3) involving the same parties and/or their privies; and (4) on the same cause of action.

---

[3] After the summary judgment rulings, Aspex was dismissed as a party for lack of standing at the time the California Action was filed. Immediately after its dismissal, Aspex filed another suit against Revolution in the Central District of California asserting the same '545 Patent against the identical products. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, Case No. 07-cv-05042. That case is presently stayed.

W02-WEST:3SMH1\402372335.1

Under the doctrine of "claim splitting," a party cannot avoid the effects of res judicata by splitting a cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits.  See *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).  Thus, while Plaintiffs are suing on different claims of the '545 Patent, courts have consistently held that a plaintiff is barred from asserting patent claims in a subsequent action if those claims could have been asserted in the prior action. See, e.g., *Kearns v. Gen. Motors Corp*., 94 F.3d 1553, 1555 (Fed. Cir. 1996) (barring plaintiff from bringing subsequent action where previous action on same patents was dismissed); *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008), aff'd, 2008 U.S. App. LEXIS 21433 (Fed. Cir. 2008) (holding that where the "nucleus of facts [is] identical in both actions," a patent holder is precluded from bringing a second lawsuit against the same defendant based on different claims of a previously asserted patent); *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc*., 2005 U.S. Dist. LEXIS 45405 at 6-8 (N.D. Cal. 2005) (barring patent holder from splitting causes of action within a single patent where the patent holder attempted to bring separate lawsuits based on different patent claims of the same patent); *AMEX, LLC v. Mopex, Inc*., 215 F.R.D. 87, 92 (S.D.N.Y. 2002) (holding that assertion of an additional claim of the same patent arises out of the "'same transaction or series of transactions'" and that claim preclusion applies, barring the patentee "forever from asserting that claim against the [defendant]"); *Panoualias v. Nat'l Equip. Co.*, 269 F. 630, 632-33 (2d Cir. 1920) ("even if it were suggested (as it is not) that there are claims other than Nos. 37 and 38 which may be infringed by the [device], since that device was before the trial court [in the first action], it was the duty of plaintiff then and there to put forth all of the claims that were infringed"); *Gen.Ry. Signal Co. v. Union Simplex Train Control Co*., 23 F. Supp. 667, 671 (D. Del. 1938), aff'd, 106 F.2d 1018 (3d Cir. 1939) (prohibiting plaintiff from pursuing in a second infringement action patent claims that could have been brought in the first infringement action).

**B.      The Accused Device Is Essentially The Same As The Device In The California Action**

When a plaintiff sues the same defendant on the same patent, claim preclusion applies when the accused device in the second action is "essentially the same" as the accused device in the prior action.  *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1324 (Fed. Cir. 2008). Accused devices are "essentially the same" where the differences between them are merely "colorable" or "unrelated to the limitations in the claim of the patent." *Id.*  Here, the claims being asserted relate primarily to the "auxiliary frame" described in the '545 Patent, which magnetically attaches to a primary frame.  As shown in the figures below, the design of the auxiliary frame has not changed from the products at issue in the California Action, particularly in that the disk-shaped silver magnets are on the *top* surface of "arms" extending from the side of the frame.

  

Auxiliary Frame at Issue in California      Auxiliary Frame of Accused Products      Side-by-Side of California Frame
Action (See Hanle Decl. Ex. 3)                  in this Case (Hanle Decl. ¶ 5)          (bottom) and Accused Frame (top)
                                                                                                      (Hanle Decl. ¶ 6)

The language of the claims now being asserted is as follows:

23. An eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including

a front side, a rear side, and oppositely positioned side portions,

each of said side portions having an arm extended therefrom,

each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface,

and a pair of magnetic members respectively secured in the free ends of said arms,

said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members

-5-

having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

35. The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets.

As shown, both auxiliary frames have:

- a front side, a rear side, and oppositely positioned side portions

- each of said side portions having an arm extended therefrom

- each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface

- and a pair of magnetic members [one in each arm] respectively secured in the free ends of said arms

- said arms and said pair of magnetic members adapted to extend [along] respective side portions of a primary spectacle frame[4]

Thus, there are no changes "related to the limitations in the claim of the patent" now being asserted, and the frames are "essentially the same" as those covered by the final judgment in the California Action. *Acumed*, 525 F.3d at 1324. Accordingly, claim preclusion applies and plaintiffs claims are barred based on the final judgment in the California Action. This issue can and should be decided by an early motion for summary judgment.

**C.    Based On Issue Preclusion, The Accused Product Does Not Contain A Key Element Of The Asserted Claims As A Matter Of Law**

The '545 Patent relates to an eyeglass device including a primary and an auxiliary spectacle frame. (Hanle Decl. Ex. 1, Abstract.) The auxiliary frame in Fig. 4 attaches to the top of the primary frame in Fig. 3. (*Id.,* Figs. 3-5.) Note that arms 21 of the auxiliary frame rest on top of extensions 11 of the primary frame in Fig. 5.





---

[4]    See discussion below regarding the "adapted to extend across" limitation.

In the California Action, the court determined that the '545 Patent did not cover an auxiliary frame that attached to the *bottom* of a primary eyeglass frame. Specifically, plaintiffs had asserted claim 34, which included the following limitation: *"said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]* from said front side to said rear side so that said first and second magnetic members engage one another whereby said auxiliary spectacle frame is supported by said primary spectacle frame."* The California court construed this language to mean that at least some portion of each arm of the auxiliary frame reaches across the top of the corresponding extension of the primary frame. (Hanle Decl., Ex. 4, p. 35.) The Court granted Revolution's motion for summary judgment that claim 34 was not infringed; it was undisputed that the arms of Revolution's auxiliary frame attach to the *bottom* of the extensions on the primary frame and plaintiffs did not oppose the motion. *Revolution Eyewear*, 563 F.3d at 1364. The Federal Circuit agreed with the district court's construction, noting: "We agree with the district court that, in pointing out the two deficiencies in the prior art, **Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration** and a primary frame that has embedded magnetic members." *Revolution Eyewear, Inc.*, 563 F.3d at 1368 (emphasis added).

The claim asserted here, claim 23, contains language very similar to claim 34, whereby the arms and magnetic members on the auxiliary frames are "*adapted to extend across respective side portions* of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame." (Hanle Decl. Ex. 1.) Based on the doctrine of issue preclusion and fundamental claim construction law, the nearly identical language of claim 23 must be construed consistently to require that the arms and magnetic members of the auxiliary frame are adapted to reach across the top of the corresponding extension of the primary frame. [5] Thus, Revolution's

---

[5]     *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 ("The prior determination of certain issues, including the issues of claim construction and of infringement by the type A and non-infringement by the type C models, bars judicial redetermination of those issues as between the parties to the prior actions.") Unless the patent otherwise provides, a claim

auxiliary frames do not infringe claims 23 and 35 as a matter of law, because they are adapted to extend <u>underneath</u> the corresponding extensions of the primary frame, and not to "reach across the top" of those extensions.  (See photos above.)  This issue also is based on clear and undisputed facts and can and should be decided by an early motion for summary judgment.

## IV.  DEFENDANTS SEEK PERMISSION TO FILE AN ADDITIONAL MOTION FOR SUMMARY JUDGMENT, IF NECESSARY

Revolution, Zelman and Hardy Way believe the threshold issues addressed above can and should be resolved at the beginning of the case, before the unnecessary expenditure of the parties' resources on other issues that are very likely to be moot.  If Defendants' narrowly tailored motion is not completely dispositive, however, Defendants Revolution, Hardy and Zelman each seek the Court's advance permission, in accordance with S.D. Fla. L.R. 7.1.C.2, to file an additional motion for summary judgment.  Of course, Defendants would file a joint motion on common issues.  A proposed Order granting this motion is attached hereto as Exhibit A".

---

term cannot be given a different meaning in the various claims of the same patent. See, e.g., *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999).

## CERTIFICATE OF GOOD FAITH CONFERENCE

I hereby certify that counsel for movants has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so or has made reasonable efforts to confer with all parties or no-parties who may be affected by the relief sought in the motion, but has been unable to do so.

Respectfully submitted,

s/Samuel A. Lewis
Samuel A. Lewis
Fla. Bar. No.: 0055360
slewis@feldmangale.com
Janet T. Munn
Florida Bar No. 501281
jmunn@feldmangale.com
FELDMAN GALE, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone: 315.397.0798
Telecopy: 315.358.3309

and

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:    714.513.5100
Telecopy:    714.513.5130

*Attorneys for Defendants Revolution Eyewear, Inc., Gary Martin Zelman, and Hardy Way, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 23, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.


<u>s/Samuel A. Lewis</u>

## SERVICE LIST

Jacqueline Becerra, Esq.
Email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esq.
Email: turkmooree@gtlaw.com
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Telephone:  305-579-0534
Telefax:      305-579-0717

*Attorney for Plaintiffs Aspex
Eyewear, Inc. and Contour Optix, Inc.
Inc.*

W. Barry Blum, Esq.
Email: bblum@gjb-law.com
Martin J. Keane, Esq.
Email: mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, FL  33131
Telephone:  305.349.2300
Facsimile:  305.349.2310
*Attorney for Defendants Marchon Eyewear, Inc.
and Nike, Inc.*

Michael Nicodema, Esq.
Email: nicodemam@gtlaw.com
MetLife Building
Greenberg Traurig
200 Park Avenue
New York, NY 10166-1400
Telephone:  (212) 801-9200
Telefax:  (212) 801-6400

*Attorney for Plaintiffs Aspex
Eyewear, Inc. and Contour Optix,*

Edgar H. Haug, Esq.
ehaug@flhlaw.com
Brian S. Gonclaves, Esq.
BGoncalves@flhlaw.com
David Herman, Esq.
dherman@flhlaw.com
Frommer, Lawrence & Haug LLP
745 Fifth Avenue
New York, NY  10151
Telephone: 212-588-0888
Facsimile:  212-588-0500
*Attorney for Defendants Marchon
Eyewear, Inc. and Nike, Inc.*

W02-WEST:3SMH1\402372335.1