1  Michael A. Nicodema *(pro hac vice)*
   Barry J. Schindler *(pro hac vice)*
2  Gregory A. Brehm *(pro hac vice)*
   GREENBERG TRAURIG, LLP
3  MetLife Building
   200 Park Avenue
4  New York, NY 10166
   Telephone (212) 801-9200
5  Facsimile: (212) 801-6400

6  Jon E. Hokanson (State Bar No. 118829)
   Ako S. Williams (State Bar No. 212451)
7  COUDERT BROTHERS LLP
   333 South Hope Street, 23rd Floor
8  Los Angeles, CA 90071
   Telephone: (213) 229-2900
9  Facsimile: (213) 229-2999

10 Attorneys for Defendants/Counterclaimants

11

12                   UNITED STATES DISTRICT COURT

13                  CENTRAL DISTRICT OF CALIFORNIA

14 | REVOLUTION EYEWEAR, INC., a | Case No. CV 02-01087 LGB (CWx)
   | California Corporation,      |
15 |                              |
   |        Plaintiff,            | **DECLARATION OF DAVID
16 |                              | YINKAI CHAO IN SUPPORT OF
   |   v.                         | COUNTERCLAIMANTS' MOTION
17 |                              | FOR PARTIAL SUMMARY
   | ASPEX EYEWEAR, INC., a Delaware | JUDGMENT THAT REVOLUTION
18 | Corporation; THIERRY IFERGAN, an | LITERALLY INFRINGES CLAIM
   | individual; REAL EYES OPTICAL, | 22 OF THE '545 PATENT**
19 | LLC., a business; and SCOTT STRENK, |
   | an individual,               | Date:      May 16, 2005
20 |                              | Time:      10:00 a.m.
   |        Defendants.           | Courtroom: 780
21 |                              |
22 | AND RELATED COUNTERCLAIM     | The Honorable Lourdes G. Baird

23

24

25

26

27

28

I, David Yinkai Chao, declare and state as follows:

1. I am over the age of eighteen (18) and have personal knowledge of the matters set forth in this declaration.

2. I am the Director of International Sales for Contour Optik Inc. ("Contour"). Contour is a Taiwanese corporation with its principal business office located at 6 Industrial Fifth Rd., Tou-Chiau Industrial Park, Chiayi 621, Taiwan, Republic of China. Contour is in the business of designing, manufacturing and marketing eyewear throughout the world including primary eyeglass frames with magnetic "clip-on" sunglasses. I have been employed by Contour since 1989 and have been the Director of International Sales since 1996. I am also one of Contour's shareholders and a corporate officer.

3. My brother, Richard Chao, also works for Contour. He invented the eyewear product described and claimed in United States patent number 5,568,207 ("'207 patent"). The '207 patent has been reissued as U.S. Patent No. RE 37,545 E ("'545 reissue patent"). Richard Chao is also the named inventor on the '545 reissue patent. Contour was the co-owner of the '207 patent, and is the co-owner of the '545 reissue patent.

4. I have been requested by the Counterclaimants Aspex Eyewear, Inc., Manhattan Design Studio, Inc., Contour Optic, Inc., and Asahi Optical Co., Ltd. (collectively "Counterclaimants"), to give my opinion as to whether the primary frames of certain magnetic clip-on eyewear sold by Revolution Eyewear, Inc., ("Revolution"), under the "IMF" brand name, contain all the elements of claim 22 of the '545 patent as construed by this Court.

5. In reaching my opinions in this declaration, I have studied the following: (a) the '545 patent (Exh. 1); (b) the Joint Claim Construction Statement for U.S. Patent No. RE 37,545 (Exh. 2); (c) the Court's "Order Construing Claims Of U.S. Patents 6,343,858 and RE 37,545" of May 7, 2003 (Exh. 3); (d) the Court's "Order Granting in Part and Denying in Part Plaintiff's Motion for Summary

Judgment" of August 8, 2003 (Exh. 4); and (e) the physical samples of Revolution's IMF magnetic clip-on eyewear identified as model numbers IMF 319 and IMF 338 which are also depicted in the photographs within this declaration and attached as Exhibits 5 and 6 respectively. Exhibit 7 to my declaration is the IMF 338 along with the corresponding auxiliary frame I constructed. Within this declaration, I have used photographs of the IMF 319 frames to illustrate my opinions and conclusions. These photographs, as well as the other photographs described in my declaration, are true and accurate representations of the following: (a) an unmodified sample of Revolution's IMF 319 primary frame (Figures 1-3); (b) a sample of Revolution's bottom-mounted auxiliary frame and a sample of an auxiliary frame that I had constructed to mount to the corresponding IMF Primary Frame from the top (Figure 4); and (c) samples of top-mounting auxiliary frames that I had constructed stably supported on, and the aligned with, an unmodified sample of Revolution's IMF Primary Frame (Figures 5-6).

## I.   QUALIFICATIONS

6. I have been involved in the design of eyewear since 1990. I am the named sole or joint inventor on over twenty five U.S. and foreign patents in the eyewear field.

7. I am qualified to render the opinions in this declaration because of my previous practical experience in the optical frame industry designing and selling optical frames to numerous buyers around the world, and obtaining patents for eyewear products. In addition, for approximately a four year period, I was the person at Contour primarily responsible for supervising approximately fifteen employees who were involved in the design and preparation of sketches of optical frames and participating in international sales activity.

8. The technology of the '545 patent is the design and manufacture of clip-on eyewear that includes primary and auxiliary spectacle frames for supporting

lenses; and specifically, clip-on eyewear in which the auxiliary frame is attached to the primary frame through the use of cooperating magnets.

9. In my opinion, a person of ordinary skill in the art of the '545 patent is someone who had at least four years of practical experience working for a manufacturer of optical frames in the late 1995 time frame, when the patent was filed. I am a person of at least ordinary skill in the design and manufacture of eyewear, including primary spectacle frames having magnetic clip-on auxiliary frames, and I consider myself a person of at least ordinary skill in the art of the '545 patent.

## II. OPINIONS CONCERNING THE '545 PATENT AND REVOLUTIONS' IMF SERIES MAGNETIC EYEWEAR

10. I have been asked to determine whether the primary frames in Revolution's IMF series magnetic eyewear ("IMF Primary Frames") contain all the limitations of claim 22 of the '545 patent. In forming my opinions discussed below, I considered the language of claim 22 as interpreted by the Court, as stipulated to by the parties, and as set forth in the Joint Claim Construction Statement for U.S. Patent No. RE 37,545. I also compared sampled of Revolution's IMF 319 and 338 Primary Frames to the requirements of claim 22. Because the Court has already construed the scope of claim 22, I was not asked to determine my understanding as to the proper scope of the claims as a person skilled in the art. After a careful review, I conclude that all the limitations found in claim 22 are found in the IMF Primary Frames analyzed.

### A. METHOD CLAIMS 1 THROUGH 3

11. Claim 22 of the '545 patent reads:

> A primary spectacle frame for supporting primary lenses therein and

having two side portion extensions extending rearwardly therefrom and

having a front side, a rear side, a top side, and a rear end,

each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof,

each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides,

and a pair of first magnetic members respectively secured in said projections,

said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle are located in front of said primary lenses.

12. Claim 22 is directed solely to *"a primary spectacle frame for supporting primary lenses therein."* The parties stipulated and agreed that the *"primary spectacle frame"* refers to the entirety of the primary eyeglass frame with the exception of the lenses, the plastic nose pieces and the legs which extend back over the wearer's ears. The *"primary spectacle frame"* includes the lens rims (if provided), nose bridge, extensions, projections (if provided), and first magnetic members, and rim-locks (if provided) (Exh 2 at 33). As can be seen from Figure 1,



Chao's Declaration in Support of Motion for Partial Summary Judgment
of Infringement of Claim 22 of the '545 patent

1  each of the accused IMF primary frame is "a primary spectacle frame for supporting
2  primary lenses therein" as required by claim 22.
3      13.  Revolution and Aspex stipulated to the interpretation of the phrase
4  *"having two side portion extensions extending rearwardly therefrom"* to mean
5  "those portions of the primary spectacle frame which extend outwardly and rearwardly of the lenses or lens rims (if provided) to pivotally connect to the legs" (Exh. 2 at 34). The extensions are commonly known in the eyewear industry as "end pieces" of



15  the spectacle frame, and are typically welded to or otherwise formed integrally
16  with the lens rims. As can be seen in Figure 1 and Figure 2, the IMF Primary
17  Frames have a end piece welded to the sides of the lens rim that extend outwardly
18  and then rearwardly and pivotally connect to the legs.
19      14.  Revolution and Aspex stipulated to the interpretation of the phrase
20  *"having a front side, a rear side, a top side, and a rear end"* (Exh. 2 at 34). As
21  required by claim 22, each of Revolution's IMF Primary Frames' end pieces has a
22  front side, a top side and a rear end (Fig. 2).
23      15.  Revolution and Aspex stipulated to the interpretation of the phrase
24  *"each of said rear ends pivotally coupling a leg configured to conform to a user at*
25  *a distal end thereof"* to mean that "the most rearwardly extending portion of each
26  rear end connects to a leg made to fit over the wearer's ear in a manner that allows
27  the leg to be turned from side to side by the wearer" (Exh. 2 at 35). As shown in
28  Figure 2 and Figure 3 (illustrated in Paragraph 19 below) the rear end of each IMF

Primary Frame end piece or "side portion extension" is pivotally connected to a leg using a screw hinge connection. Each leg has a distal end configured to conform to the user so that it fits over the user's ear.

16. Claim 22 also requires that *"each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides."* Revolution and Aspex stipulated to the interpretation of the word *"projection"* to mean "a part of the primary spectacle frame that forms a housing within which one of the first magnetic members is inserted and secured" (Exh. 2 at 35). Also, the parties stipulated that *"attached to each of said rear sides"* means that "each projection is connected to the rear side of the corresponding extension in a manner such that the connection is not likely to fail or give way" (Exh. 2 at 35). Revolution's IMF Primary Frames have *"projections"* or housings in which the magnets of the primary frame are inserted (Fig. 2 & 3). As shown in Figure 3 below, each *projection* is attached to the rear side of the corresponding side portion



1 extension of the IMF Primary Frames.

2   17.   The next element of claim 22 reads: *"a pair of first magnetic members respectively secured in said projections."* The Court has interpreted the phrase *"secured in said projections"* to mean that "each first magnetic member is inserted into and firmly connected to a corresponding projection in a manner such that the connection is not likely to fail or give way" (Exh. 3 at 32-33). The "magnetic members" can be either a permanent magnet or a ferromagnetic material (Exh. 2 at 36). The IMF Primary Frames include a pair of magnets. Each magnet in the IMF Primary Frames is firmly secured in one of the "projections" so that the connection is not likely to fail or give way.

3   18.   The phrase *"said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame"* was interpreted by the Court to mean that "the first magnetic members have the ability to magnetically attract the corresponding second magnetic members of an auxiliary spectacle frame when placed above the first magnetic member, with or without actual contact" (Exh. 3 at 34). As can be seen clearly in Figure 3 the top surfaces of the IMF Primary Frames magnets have a thin, decorative coating. It appears that this coating was placed on the magnets for aesthetic purposes. After studying the IMF Primary Frames, the decorative coating does not, in my opinion, hinder the magnetically attractive capability of the top surfaces of the primary frame magnets in any way.



19.   The magnets of Revolution's accused IMF Primary Frames have the ability, without modification of the magnets, removal of the decorative coating, or modification of any other part of the primary spectacle frame, to magnetically attract the corresponding second magnetic members of an auxiliary spectacle frame when

placed above the first magnetic members. To illustrate this point I had a pair of auxiliary frames constructed with magnets that can magnetically engage the corresponding magnets of the two IMF Primary Frames when placed above the primary frame magnets, such that the auxiliary frame is aligned with and stably supported on the primary frame. This was done without modifying the IMF Primary Frames in any way. Figure 4 is a photograph showing two auxiliary frames. The



frame in the upper part of the photo is the sample top-mounting auxiliary frame I had constructed. The frame in the lower part of the photo is a bottom-mounting auxiliary frame manufactured by Revolution. Figure 5 shows the auxiliary frame I had constructed placed on top of the corresponding IMF Primary Frame so that the magnets of the auxiliary frame are aligned with the corresponding magnets of the IMF Primary Frame. As shown in Figures 5 and 6, the top-mounting auxiliary frame I had constructed is stably supported on



the IMF Primary Frames without any modifications whatsoever to the IMF Primary Frame.

20. The last element of claim 22 reads *"so that lenses of an auxiliary spectacle [frame] are located in front of said primary lenses."* As this element requires, when the auxiliary frame I had manufactured is placed on top of the corresponding IMF Primary Frame, the lenses of the auxiliary frame are aligned and located in front of the lenses of the primary frame. Again this was done without any modifications to the IMF Primary Frames. Accordingly, this last element of claim 22 is satisfied.

21. I declare under penalty of perjury of the law of the United States of America that the foregoing is true and correct, and if called to testify on the foregoing I could and would testify competently thereto. Executed this 25 day of March, 2005 in Saratoga, California.

_____
David Yinkai Chao

9
Chao's Declaration in Support of Motion for Partial Summary Judgment
of Infringement of Claim 22 of the '545 patent

Exhibit 5 – Page 148