UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  09-61515-CIV-COOKE

ORDER OF REFERENCE SEPTEMBER 25, 2009

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

    Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

    Defendants.
_____/

**REPLY BRIEF OF DEFENDANT HARDY WAY, LLC IN SUPPORT
OF MOTION TO DISMISS THE COMPLAINT PURSUANT
TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

I.    **INTRODUCTION**

    The irony in Plaintiffs' opposition is palpable.  Plaintiffs spend **fourteen pages** trying to convince the Court that their conclusory, **nine-word** allegation of inducing infringement is adequate – specifically, that Hardy "actively and knowingly aided and abetted Revolution's direct infringement."  Despite the clear requirements of *Twombly* and *Iqbal*, the opposition, like the complaint, provides no factual support for the allegations that Hardy *knew* of the '545 patent and the alleged infringement.  But worse, the complaint and opposition are utterly silent on what Hardy allegedly *did* that encouraged infringement by Revolution.  Indeed, the allegations in *Twombly*, *Iqbal* and *Sinaltrainal* (relied upon by Plaintiffs), are far more detailed than Plaintiffs'

aiding and abetting allegations here, but were all deemed inadequate by the Supreme Court or the Eleventh Circuit.

Hardy's motion clearly and unambiguously focuses on the deficiency of Plaintiffs' allegations of *inducing* infringement: the complaint does not allege direct infringement by Hardy. (Complaint ¶¶ 25-29.) But Plaintiffs' opposition bizarrely focuses on Plaintiffs' allegations of *direct* infringement by other defendants, which have not been challenged by Hardy's motion. Thus, Plaintiffs' entire discussion of Federal Form 18, which does not address *inducing* infringement, is a red herring. Similarly inapposite are Plaintiffs' citations to cases decided before *Twombly* and *Iqbal*.

Most significantly, Plaintiffs' opposition demonstrates that Plaintiffs do not in fact even *possess* an adequate factual basis to state a claim of inducing infringement against Hardy. Instead, their claim is based on purported "market realities" – not even mentioned in the complaint -- that have nothing to do with the specific dealings between Hardy and Revolution. In addition to being nothing more than rank attorney speculation and conjecture, Plaintiffs' entire discussion is devoid of a single fact that relates to Hardy. Hence, even Plaintiffs' "information and belief" statements in the complaint lack any support as Plaintiffs cannot identify any facts specific to Hardy that support such "information and belief" statements.

Accordingly, Plaintiffs' claims against Hardy should be dismissed without leave to amend.[1]

---

[1] If Plaintiffs later obtain specific information sufficient to support their allegations, they can seek leave to amend. Plaintiffs should not be permitted to burden Hardy with discovery, etc. without a single fact to support their claim.

CASE NO.: 09-61515-CIV-COOKE

## II. PLAINTIFFS' AIDING AND ABETTING ALLEGATIONS ARE PLAINLY DEFICIENT UNDER THE CONTROLLING AUTHORITY

Plaintiffs' complaint is not even close to sufficient under *Twombly*, *Iqbal* and *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268-69 (11th Cir. 2009), which made clear that the principles of *Twombly* and *Iqbal* are applied to Rule 12(b)(6) motions in this Circuit.  Significantly, both *Iqbal* and *Sinaltrainal* – like this case -- involved allegations of secondary liability, and all three cases involved allegations of concerted action.  In each case, although the factual allegations were far more detailed than those against Hardy here, the allegations were deemed deficient.

In *Twombly*, the complaint alleged a conspiracy by incumbent telephone service providers to prevent competitors from entering into the market.  The complaint included considerable detail regarding the alleged agreement, including the following:

> "Beginning at least as early as February 6, 1996, and continuing to the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators engaged in a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets by, among other things, agreeing not to compete with one another and to stifle attempts by others to compete with them and otherwise allocating customers and markets to one another in violation of Section 1 of the Sherman Act."

*Twombly*, 550 U.S. at 551.  The complaint also alleged a factual basis for the alleged agreement, consisting of "parallel conduct", including making unfair agreements with the competitors for access to the existing networks, providing inferior connections to the networks, overcharging, and billing in ways designed to sabotage the competitors' relationships with their customers.  *Id*. at 550.  The Supreme Court ruled that these allegations were insufficient, and that the allegations of a conspiracy were "merely legal conclusions" insufficiently supported by the allegations of parallel conduct.  *Id*. at 564.

In *Iqbal*, the complaint alleged that the defendants designated the plaintiff a person of high interest on account of his race, religion, or national origin, in contravention of the First and

3

Fifth Amendments to the Constitution.  In alleging secondary liability against the Director of the FBI, Robert Mueller, and the U.S. Attorney General, John Ashcroft, the complaint included the following:

> The complaint alleges that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11."  It further alleges that "[t]he policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." Lastly, the complaint posits that petitioners "each knew of, condoned, and willfully and maliciously agreed to subject" respondent to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest." The pleading names Ashcroft as the "principal architect" of the policy, and identifies Mueller as "instrumental in [its] adoption, promulgation, and implementation."

*Iqbal*, 129 S.Ct. at 1944 (internal citations omitted).  As in *Twombly*, the Supreme Court determined that these allegations were conclusory, were not entitled to the presumption of truth, and were insufficient under Rule 8.  *Id.* at 1952

Finally, in *Sinaltrainal*, which is cited in Plaintiffs' opposition at page 7, the complaint alleged a conspiracy between police and the management of a bottling facility to retaliate against the plaintiffs for their part in a labor strike.  The complaint included the following allegations:

> On March 6, 1996, the police arrested the [plaintiffs]. While in transit to the jail, Flores was repeatedly and brutally beaten by police and was threatened at gun point. As a result of the false charges filed by Aponte, the plaintiffs were incarcerated in a filthy and dangerous Colombian prison for six months. They were released after a regional prosecutor found the charges "to be completely without basis." The plaintiffs allege "Aponte's plan necessarily required the cooperation and complicity of the arresting police officers, since the officers had to be willing to arrest and imprison the union leaders without any evidence of the non-existent bomb." Therefore, "[b]ased on information and belief," the plaintiffs allege Aponte conspired with the arresting police officers to unlawfully arrest, detain, and imprison the plaintiffs.

*Sinaltrainal*, 578 F.3d at 1268.  The Eleventh Circuit held:

> Here, the Garcia plaintiffs' attenuated chain of conspiracy fails to nudge their claims across the line from conceivable to plausible. *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974. First, while the plaintiffs allege "Aponte's plan necessarily required the cooperation and complicity of the arresting police officers," we are not required to admit as true this unwarranted deduction of fact. Second, the plaintiffs' allegations of conspiracy are "based on information and belief," and fail to provide any factual content that allows us "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Specifically, these plaintiffs allege "[t]he basis for the conspiracy was either that Aponte arranged to provide payment to the officers for their participation, or that the officers had a shared purpose with Aponte to unlawfully arrest and detain Plaintiffs because they were union officials and had been branded by Panamco officials as leftist guerillas." The premise for the conspiracy is alleged to be either payment of money or a shared ideology. The vague and conclusory nature of these allegations is insufficient to state a claim for relief, and "will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965.

*Sinaltrainal*, 578 F.3d at 1268.  The Eleventh Circuit goes on to point out that the complaint fails to allege when or where the alleged conspiratorial agreement took place, the scope of the conspiracy and its participants, or the acts allegedly taken pursuant to the conspiracy.  *Id*. at 1268-69.[2]

The complaint in this case similarly fails to allege such details, including the acts allegedly taken by Hardy to encourage direct infringement by Revolution Eyewear.  Further, the allegations here are far less detailed than those found deficient in *Twombly*, *Iqbal* and *Sinaltrainal*.  With respect to Hardy, the complaint at most alleges knowledge by Hardy of the patent and the alleged direct infringement, that Hardy "actively and knowingly aided and

---

[2]    The pre-*Twombly*/*Iqbal* decisions of the Eleventh Circuit cited at page 7 of Plaintiffs' opposition are inapposite.  Plaintiffs' reliance on *Ola* and *In re Papst* is equally misplaced.  In *Ola* defendants' 12(b)(6) motion on the patent claims was based on a construction of the claim language at issue.  *OLA, LLC v. Builder Homesite, Inc.*, 2009 U.S. Dist. LEXIS 89766 *12 (E.D. Tex. Sept. 29, 2009).  Such is not the case here. Further, *In re Papst* does not stand for the proposition that a complaint that merely cites some examples of infringing devices is sufficient.  Instead, the Court held that the complaint there provided a long list of infringing devices and "significant details" regarding the infringing <u>conduct</u>.  *In re Papst Licensing GmbH & Co. KG Litig.*, 631 F. Supp. 2d 42, 45 (D.D.C. 2009).  Such details regarding Hardy's conduct are absent here.

abetted" the alleged direct infringement, and that the alleged infringement was not authorized by Plaintiffs. Moreover, unlike in *Twombly*, *Iqbal* and *Sinaltrainal*, the complaint does not allege a single fact to support those conclusions.

Hardy is not demanding "detailed factual proof" and "an excessive level of detail at the pleading stage" (Plfs. Opp. Br. at 6); but rather facts that support Plaintiffs' legal conclusion that Hardy induced Revolution's alleged direct infringement. Plaintiffs' recitation of what was pled in their complaint against Hardy is nothing more than legal conclusions "masquerading as facts." (Plfs. Opp. Br. at 5-6). In particular, stating "Hardy had actual knowledge of the '545 patent" is not a statement of fact but rather a conclusion. There are no facts supporting this conclusory statement of knowledge. Similarly, alleging that "Hardy had knowledge of Revolution's direct infringement of claims 23 and 35 of the '545 patent" and "actively and knowingly aided and abetted such infringing activities" are not facts but again conclusions. What actual facts support these statements? There is not a single fact in the complaint or opposition regarding what Hardy has actually done that led Plaintiffs to be "informed" and "believe" that Hardy has knowledge of the '545 patent. Similarly, there is not a single fact in the complaint or opposition regarding what Hardy did that led Plaintiffs to be "informed" and "believe" that Hardy aided and abetted or encouraged Revolution's alleged infringing activities. To the extent those facts exist, they should be in the complaint. If no such facts exists, Hardy should not be subjected to defending this lawsuit.

### III. PLAINTIFFS' ARGUMENTS REGARDING THEIR DIRECT INFRINGEMENT CLAIM ARE A RED HERRING

Plaintiffs also attempt to misguide the Court into looking solely at the sufficiency of their direct infringement claims. As stated above, Plaintiffs' allegations as they relate to a direct infringement claim are not the subject of Hardy's motion. Plaintiffs' entitlement to relief against

Hardy is solely based on their allegation that Hardy has induced Revolution's alleged direct infringement. (Plfs.' Opp. Br. at 5.) Yet, Plaintiffs' opposition glosses over this fact and attempts to conflate direct infringement and inducing infringement by focusing on whether Plaintiffs have met the pleading standard for a direct infringement claim.

This entire argument, premised on Federal Form 18 and *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354 (Fed. Cir. 2007) is misplaced. Federal Form 18 solely relates to the pleading requirements for *direct* infringement and has nothing to do with an allegation of *inducing* infringement. *Elan Microelectronics Corp. v. Apple, Inc.*, 2009 WL 2972374 at *2 (N.D. Cal. Sept. 14, 2009) (Form 18 does not "even purport to address" inducing infringement; "accordingly, neither *McZeal* nor Form 18 supports a conclusion that Apple has adequately pleaded its counterclaims" for inducing infringement.)[3] As established above, Plaintiffs' allegations of inducing infringement are woefully inadequate.

### IV. ATTORNEY SPECULATION AND CONJECTURE REGARDING LICENSEE AND LICENSOR RELATIONSHIPS DOES NOT SAVE PLAINTIFFS' COMPLAINT

In a last ditch attempt to save Plaintiffs' complaint, Plaintiffs argue that their "information and belief" statements are justified based on unsupported attorney argument regarding the "realities of the marketplace" in the context of an intellectual property license. (Plfs.' Opp. Br. at 12.) First, Plaintiffs' complaint is completely devoid of a single reference to a license or such "realities of the marketplace". Second, Plaintiffs' argument is belied by the very law they cite. Specifically, it is only appropriate to plead on "information and belief" when a plaintiff has

---

[3] In a subsequent appeal in *McZeal*, the Federal Circuit noted that it reversed the district court's dismissal under 12(b)(6) because "it was well established under Fifth Circuit precedent that 'pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.'" *McZeal v. Sprint Nextel Corp.*, 335 Fed. Appx. 966, 967 (Fed. Cir. 2009). Thus, *McZeal* is not persuasive for this additional reason.

"<u>sufficient data</u> to justify interposing an allegation on the subject . . ." Plfs.' Opp. Br. at 12, citing 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure: Civil (2nd ed. 1990) § 1224 at 206 (emphasis added); see *Sinaltrainal*, 578 F.3d at 1268 (allegations of conspiracy based on information and belief "failed to provide any factual content" and were thus insufficient.) Here, Plaintiffs failed to provide *any* factual content to support their inducing and aiding and abetting charges purportedly based on "information and belief."

Plaintiffs' opposition devotes two pages making general statements regarding licensee and licensor relationships, without any specifics relating to Hardy. According to Plaintiffs, the license of a trademark (the Hardy "brand") that has nothing to do with the patented technology necessarily supports an allegation of inducing infringement by Hardy. This is clearly incorrect under *Iqbal*, which requires facts that allow a court to infer "more than the mere possibility of misconduct." *Id*. at 1950; see *Twombly* 550 U.S. at 565-66 (allegations of unlawful parallel conduct support the *possibility* of an unlawful agreement, but are insufficient). Indeed, the only authority cited by Plaintiffs, *Barcamerica Int'l U.S.A. Trust v. Tyfield Importers Inc.*, 289 F.3d 589 (9th Cir. 2002), involves a trademark licensor that did *not* supervise or monitor its licensee. This is completely at odds with the unsupported inference requested by Plaintiffs here that Hardy must have supervised or monitored Revolution's alleged direct infringement.

## V.    CONCLUSION

Plaintiffs' opposition confirms that, not only is the Complaint inadequate, but Plaintiffs do not even *possess* sufficient facts to support a claim of inducing infringement against Hardy. Accordingly, the Court should dismiss the Complaint as against Hardy without leave to amend until such time as Plaintiffs can allege actual conduct by Hardy that encouraged the alleged direct infringement (assuming such direct infringement claims are not barred).

CASE NO.: 09-61515-CIV-COOKE

Respectfully submitted,

s/Janet T. Munn
Janet T. Munn
jmunn@feldmangale.com
Florida Bar. No. 501281
FELDMAN GALE, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone: 305.397.0798
Telecopy: 305.358.3309

and

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:    714-513-5100
Facsimile:    714-513-5130

*Attorneys for Defendant Hardy Way, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of November 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/EFC. I also certify that the foregoing document is being served this day on all counsel of record identified on the Service List in the manner specified on the Notice of Electronic Filing generated by EM/ECF.

By:    s/Janet T. Munn
       Janet T. Munn

CASE NO.: 09-61515-CIV-COOKE

## SERVICE LIST

Jacqueline Becerra, Esq.
Email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esq.
Email: turkmooree@gtlaw.com
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Telephone: 305-579-0534
Telefax:     305-579-0717

*Attorney for Plaintiffs Aspex Eyewear, Inc. and Contour Optix, Inc.*

W. Barry Blum, Esq.
Email: bblum@gjb-law.com
Martin J. Keane, Esq.
Email: mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, FL 33131
Telephone: 305.349.2300
Facsimile: 305.349.2310
*Attorney for Defendants Marchon Eyewear, Inc. and Nike, Inc.*

Michael Nicodema, Esq.
Email: nicodemam@gtlaw.com
MetLife Building
Greenberg Traurig
200 Park Avenue
New York, NY 10166-1400
Telephone: (212) 801-9200
Telefax: (212) 801-6400

*Attorney for Plaintiffs Aspex Eyewear, Inc. and Contour Optix, Inc.*

Edgar H. Haug, Esq.
ehaug@flhlaw.com
Brian S. Gonclaves, Esq.
BGoncalves@flhlaw.com
David Herman, Esq.
dherman@flhlaw.com
Frommer, Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500
*Attorney for Defendants Marchon Eyewear, Inc. and Nike, Inc.*