**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-61515-CIV-COOKE/BANDSTRA**

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS REVOLUTION**
**EYEWEAR, INC.'S, HARDY WAY, LLC'S AND GARY MARTIN**
**ZELMAN'S MOTION FOR SPECIAL SCHEDULING ORDER AND**
**CROSS-MOTION TO STRIKE**

Plaintiffs Aspex Eyewear, Inc. ("Aspex") and Contour Optik, Inc. ("Contour")
(collectively, "Plaintiffs") submit this Opposition to Defendant Revolution Eyewear, Inc.'s
("Revolution"), Hardy Way, LLC, formerly known as Hardy Life, LLC's ("Hardy") and
Gary Martin Zelman's (collectively, the "Revolution Defendants") Motion for a special
scheduling order which grants them permission to file an early motion for summary
judgment, without prejudice to their right to file a later summary judgment motion on other
grounds, and cross-move to strike the Revolution Defendants' motion papers.

This is an action for direct patent infringement and inducement of patent
infringement.  Revolution is a serial infringer of U.S. Patent No. US RE37,545, entitled
"Auxiliary Lenses for Eyeglasses" (the "'545 Patent"), the patent at issue, and its prior acts

of infringement resulted in an earlier infringement counterclaim against it by Plaintiffs in an action brought in the U.S. District Court for the Central District of California ("*Revolution I*"). Plaintiffs were granted summary judgment on infringement in *Revolution I*, and a jury awarded Plaintiffs over $4 million in damages. The California District Court in *Revolution I* also awarded Plaintiffs pre- and post-judgment interest, and attorneys' fees based on Revolution's litigation misconduct, bringing the total award to about $5 million. .

The parties have already submitted their respective positions regarding the terms of a proposed Scheduling Order to the Magistrate Judge, and the Magistrate Judge has not yet considered those positions or entered a Scheduling Order. One of the terms of the Scheduling Order as to which the parties disagree is whether the Revolution Defendants should be permitted to make two motions for summary judgment: (a) one at the outset of the case based on the liability judgment and damages award in *Revolution I* under the doctrine of *res judicata*; and (b) a later motion for summary judgment as to any other issues at the close of discovery. We respectively submit that the Court should deny the Revolution Defendants' motion, and strike their motion papers for three reasons.

First, this issue is already before the Magistrate Judge, and the current motion is made in derogation of his authority. The Revolution Defendants' current motion is merely an attempt to improperly influence the Court with respect to an issue that is not ripe for determination, and to require Plaintiffs to unnecessarily spend money opposing the motion.

Second, the Revolution Defendants have come forward with no reason to depart from Local Civil Rule 7.1(c)(2)'s prohibition on multiple summary judgment motions. To the contrary, leave from this prohibition is rarely granted in light of the waste of resources that such a litigation strategy entails, which would result here. Basic fairness dictates that the

Revolution Defendants be put to a choice -- either seek summary judgment now on the grounds set forth in their current motion and be precluded from any future summary judgment motions, or make whatever summary judgment motions on any and all grounds they believe are appropriate at the close of discovery.

Finally, the Revolution Defendants' proposed "early" summary judgment motion is meritless.  This identical issue is currently before the Court through a Rule 12(b)(6) motion filed by Defendant Marchon Eyewear, Inc. ("Marchon") based on *res judicata* principles in light of Plaintiffs' earlier litigation with Marchon.  As Plaintiffs demonstrated in opposition to Marchon's motion, this is a brand new suit arising from new designs, products, patent claims, and causes of action for infringement never before litigated by the parties.

Accordingly, as discussed in more detail below, we submit that the Revolution Defendants' current motion be denied, and that their motion papers be stricken.

**I.     STATEMENT OF FACTS**

**A.  The Reexamined '545 Patent-In-Suit**

On February 12, 2002, the U.S. Patent Office issued the "'545 Patent (*See* Dec. of Turk-Moore at Exh. 1).  Complaint ¶ 12 (*See* Dec. of Turk-Moore at Exh. 2).  Following a September 13, 2007 request for re-examination of certain claims of the '545 Patent, the Patent Office issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which reconfirmed all of the original claims of the '545 Patent, and included a New amended Claim 23, and a New Claim 35 (*See* Dec. of Turk-Moore at Exh. 3).  *Id*. at ¶ 13.  Plaintiffs are the assignees of record of the '545 Patent, each owning a one-half undivided interest.  *Id*. at ¶ 14.

### B. *Revolution I*

In 2002, Revolution brought *Revolution I,* an action against Aspex for infringement of U.S. Patent No. 6,343,858 (the "'858 Patent"). *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1363 (Fed. Cir. 2009). Aspex answered Revolution's Complaint and, with Contour, counterclaimed against it for infringement of the '545 Patent by Revolution's magnetic clip-on eyewear. *Id*. In April 2005, the court dismissed Revolution's causes of action for infringement of the '858 Patent for lack of standing. *Id*. at 1363-64.

Two years later, in April 2007, the court granted Plaintiffs' motion for partial summary judgment that Revolution literally infringed Claim 22 of the '545 Patent, and denied Revolution's motion for summary judgment that Claim 22 is invalid. *Id*. at 1364. Claim 22 is directed to a ***primary spectacle frame*** that is capable of magnetically engaging an auxiliary spectacle frame, in which the primary frame includes a pair of "***projections***" for securing the primary frame magnetic members. *Id*. at 1363.

The only issue left for trial was the amount of Plaintiffs' damages. *Id*. at 1364. Before trial began, Revolution moved *in limine* to exclude six exhibits offered by Plaintiffs, which consisted of commercial samples of certain "Non-IMF Products." *See* Dec. of Turk-Moore at Exh. 4: Order re Motions *In Limine* in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Case No. 02-cv-1087 (C.D. Cal. July 23, 2007), at 2. The Non-IMF Products were branded magnetic clip-on eyewear designed, sold or offered for sale by Revolution that incorporated certain "New Designs" -- namely, designs where the magnets are ***embedded*** in the primary eyeglass frame, rather than being secured in ***projections***. *Id*.

Revolution argued (and Plaintiffs did not dispute) that Revolution products containing "IMF frames" (*i.e.*, primary spectacle frames including a pair of "***projections***" for securing

the primary frame magnetic members) were the only infringing products at issue in the forthcoming damages trial. *Id.* Accordingly, Revolution further argued that Non-IMF Products were irrelevant and had no logical bearing on the amount of Plaintiffs' damages. *Id.* Plaintiffs disagreed, arguing that evidence of the Non-IMF Products would nonetheless be relevant to show the pervasiveness of the infringing design, which was a factor that the jury could have considered in determining the amount of a reasonable royalty. *Id.*

The District Court agreed with Revolution, and excluded the Non-IMF Product exhibits from evidence. *Id.* Exh. 4 at 3. The District Court reasoned that, because it had made no determination as to whether the Non-IMF Products infringed the '545 Patent or otherwise incorporated the patented invention, evidence as to the Non-IMF Products was irrelevant to the pervasiveness of the infringing design. *Id.* The District Court further held that even if these exhibits had some minimal relevance, their probative value would be so outweighed by the danger of unfair prejudice and confusion of the issues as to warrant exclusion of the exhibits under Fed. R. Evid. 403. Turk-Moore Dec. Exh. 4 at 3. The District Court was particularly concerned that "the jury may be misled into believing that the Non-IMF Products are 'infringing,' when no such determination has been made." *Id.*

After a four-day trial, a jury returned a verdict setting a royalty rate of 5% and awarding damages of $4,319,530 to Plaintiffs. *Revolution*, 563 F.3d at 1364. The District Court subsequently held that Revolution was entitled to absolute intervening rights and reduced the damages award by $125,964, but also rejected Revolution's equitable intervening rights defense. *Id.* at 1365. Specifically, the District Court held that Revolution had acted with unclean hands by continuing to sell the infringing products after learning of the April 2007 rulings on the cross-motions for summary judgment. *Id.* The District Court

subsequently awarded Plaintiffs attorneys' fees based on Revolution's litigation misconduct, and on February 25, 2008, entered final judgment awarding Plaintiffs damages in the amount of $4,193,567.  *Id*.  The District Court denied Revolution's motions for Judgment as a Matter of Law, for a new trial, and for remittitur.  *Id*.  The Federal Circuit Court of Appeals affirmed each of the above rulings in all respects.  *Id*. at 1374.

### C.  <u>The Current Action</u>

There can be no dispute that the Revolution products accused of infringement in this action all incorporate the "New Design" specifically excluded from the damages trial in *Revolution I*, in which an auxiliary spectacle frame is magnetically attached to a primary spectacle frame in which the primary frame magnets are ***embedded*** in the frame.  Moreover, contrary to *Revolution I*, which involved Original Claim 22 of the '545 Patent (directed to a ***primary spectacle frame***) and Revolution's "Old Design" products, this action involves New Claims 23 and 35 of the '545 Patent, both issuing on March 3, 2009, and both of which are directed to an ***auxiliary spectacle frame*** of the type incorporated into Revolution's "New Designs."  Original Claim 23 of the '545 Patent, and New Claims 23 and 35 of the re-examined '545 Patent, are reproduced below:

### <u>Original Claim 23</u>

23.    An eyeglass device comprising:

An auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member, and a pair of ***magnetic members*** respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic

members can vertically engage corresponding magnetic members on a primary spectacle frame.

**New Claim 23**

23. An eyeglass device comprising:

An auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a ***magnetic member having a horizontal surface***, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic {members} member surfaces on a primary spectacle frame.

**New Claim 35**

35.   ***The eyeglass device according to claim 23***, wherein, said magnetic members of said auxiliary spectacle frame are ***magnets***.

Under 35 U.S.C. § 112, Original Claim 23 and New Claim 23 are both known as "independent" claims -- that is, the claims stand on their own.  By contrast, New Claim 35 is known as a "dependent" claim under Section 112, because it incorporates all the elements of New Claim 23, and adds an additional feature -- namely, New Claim 35 requires that the "magnetic members" recited in New Claim 23 be actual "magnets."

Importantly, New Claim 23 is significantly different in scope than Original Claim 23.  Specifically, whereas Original Claim 23 was ***generic*** as to the spatial orientation of the auxiliary frame magnetic members, New Claim 23 requires that the auxiliary frame magnetic members be ***horizontally*** oriented.  Original Claim 23 was amended to add this horizontal

orientation limitation in response to the Patent Office Examiner's rejection of Original Claim

23 over the prior art.  The Patent Office issued claim 23 based on this amendment:

> With respect to claim 23, the prior art fails to disclose or fairly suggest and eyeglass device having an auxiliary frame having front, rear and side portions, each side portion having an arm extended therefrom and having a rearward directed free end securing magnetic members therein, ***each magnetic member having a horizontal surface***, the arms and magnetic members adapted to extend across respective side portions of a primary spectacle frame so that the magnetic members can vertically engage corresponding magnetic members on the primary frame.

*See* Dec. of Turk-Moore at Exh. 5: 12/1/08 Patent Office "Notice Of Intent To Issue Ex Parte

Reexamination Certificate" at 5 (emphasis added).  As such, New Claims 23 and 35 of the re-

examined '545 Patent (first issuing on March 3, 2009), as well as Plaintiffs' causes of action

against the Revolution Defendants for infringement of these claims, did not exist, and could

not have existed, as of the February 25, 2008 date of judgment in *Revolution I.*

As alleged in the Complaint, three of the defendants in this action, Revolution, Mr.

Zelman and Marchon, directly infringe at least Claims 23 and 35 of the '545 Patent, both

literally and under the doctrine of equivalents, through their unauthorized making, use, sale,

or offering for sale of various brands of magnetic clip-on eyewear that satisfy every element

of Claims 23 and 35.  Complaint ¶¶ 16-17, 21-22, 37, 40.[1]  The other two defendants, Hardy

and Nike, Inc., infringe Claims 23 and 35 by knowingly inducing, aiding and abetting the

above acts of patent infringement by Revolution and Marchon, respectively.  *Id.* at ¶¶ 26, 31.

---

[1]  In addition, Mr. Zelman actively and knowingly aided and abetted Revolution's acts of patent infringement.  Complaint ¶¶ 38-39.

### D.   <u>The Procedural History of This Action</u>

Plaintiffs filed their Complaint on September 23, 2009, and subsequently served each defendant.  Revolution and Mr. Zelman answered the Complaint on November 30, 2009, but on the same date, Hardy, Marchon and Nike each moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Hardy's and Nike's motions allege that the Complaint is not pleaded with the level of factual detail required by Rules 8(a) and 12(b)(6).  *See* Docket Entries 21 and 24.  Marchon's motion, however, is premised upon the supposed *res judicata* effect of the dismissal of its prior action with Plaintiffs pursuant to a Settlement Agreement between them.  *See* Docket Entry 23.

Pursuant to the Court's September 25, 2009 Order, on December 7, 2009, the parties filed a Joint Scheduling Report and Joint Proposed Scheduling Order.  *See* Docket Entry 29.  One of the items that the Court required the parties to address in this submission is "the Number and Timing of Motions for Summary Judgment or Partial Summary Judgment."  *Id.* at 2.  Plaintiffs proposed that each party make a single motion for summary judgment at the close of discovery.  *Id.*  All of the Defendants, including the Revolution Defendants, proposed that the Court "conduct a hearing in January 2010 to address Marchon and Nike's motion to dismiss on res *judicata* and, if necessary, ***special scheduling to resolve this defense expeditiously for all Defendants.  [The Revolution Defendants] plan to file an early motion for summary judgment on this defense*** . . . ."  *Id.* at 2-3 (emphasis added).

No Rule 16(b) initial pretrial conference has been held, and the Magistrate Judge has not yet resolved the parties' disputes in the Proposed Scheduling Order or entered his own Scheduling Order.  Apparently not content to wait for the Court to act on its own, on December 23, 2009, the Revolution Defendants filed the current motion, by which they seek

entry of a "special scheduling order" which grants them permission to file an early motion for summary judgment on *res judicata* grounds in light of the judgment in *Revolution I*, without prejudice to their right to file a later summary judgment motion on other grounds.

For the reasons discussed below, the Revolution Defendants' Motion should be denied and their motion papers should be stricken.

## II.   ARGUMENT

### A.   Defendants' Motion Papers Should Be Stricken

By making this motion, the Revolution Defendants seek to go over the Magistrate Judge's head, and submit that the very issues presented for resolution in the Proposed Scheduling Order should instead be resolved by the District Judge on a fully briefed motion on notice made at the very beginning of the case.  This tactic has no support, is offensive to the Court, and may appropriately be stricken pursuant to Fed. R. Civ. P. 12(f).

A party may move to strike from a pleading "any redundant, immaterial, or impertinent and scandalous matter."  Fed. R. Civ. P. 12(f).  Although Rule 12(f) is technically addressed to formal "pleadings," courts have occasionally extended its application to other court papers and written submissions, including the incidents of motion practice.  *See, e.g.*, *Pigford v. Veneman*, 225 F.R.D. 54, 58 n.8 (D.D.C. 2005) (striking "notice of unprofessional conduct" filed with court); *Schmitz v. Mars, Inc.*, 261 F. Supp. 2d 1226, 1229 (D. Or. 2003) (striking affidavits); *McLaughlin v. Copeland*, 435 F. Supp. 513, 520 (D. Md. 1977) (striking portions of affidavits).  Numerous courts have relied upon the Rule's prohibition of "scandalous matter" in striking papers that denigrate the Court or its procedures or rulings.  *See, e.g.*, *Stanfield v. Horn*, 704 F. Supp. 1486, 1487 (M.D. Tenn. 1988) (criticism of Magistrate Judge's report and recommendation); *Agran v. Isaacs*, 306

F. Supp. 945, 948 (N.D. Ill. 1969) (disparaging character and ethics of judges).

The Revolution Defendants' motion papers should be stricken under this standard. The Court has already adopted a procedure, which it assigned to the Magistrate Judge, by which disputes between the parties as to the "number and timing of motions for summary judgment or partial summary judgment" are to be resolved. *See* Docket Entry 29 at 2. The Revolution Defendants are attempting to circumvent that procedure and remove the issue from the Magistrate Judge's consideration by making their current motion to the District Judge. Such offensive litigation tactics should not be countenanced by this Court. Accordingly, all of the Revolution Defendants' current motion papers should be stricken.

### B. The Revolution Defendants' Request For Permission To Make Additional Summary Judgment Motions At A Later Time Should Be Denied

Citing no authority, and betraying an apparent lack of confidence in their proposed summary judgment motion based on the doctrine of *res judicata*, the Revolution Defendants seek to hedge their bets by attempting to obtain permission to make a second summary judgment motion on numerous additional grounds later in the case. (Rev. Def. Mem. at 8.) Granting such relief to the Revolution Defendants would not serve the interests of judicial economy, and would be grossly unfair to Plaintiffs. The Revolution Defendants should be limited to a single summary judgment motion, which they can file now or later.

Local Civil Rule 7.1(c)(2) clearly states that "[t]he practice of filing multiple motions for partial summary judgment shall be prohibited, absent prior permission of the Court." The Rule serves the Eleventh Circuit's policy of discouraging such *seriatim* summary judgment motions, especially where combining "the legal issues in [a] case are complex, [and] combining the various legal issues into a single motion would [] help[] the trial court achieve a broader understanding of the entire case." *National Fire Ins. Co. of Hartford v. Fortune*

*Constr. Co.*, 320 F.3d 1260, 1265 n.5 (11th Cir. 2003) (criticizing defendant's "attempt to break this case into little pieces," which "seems to have contributed to the confusion below").

For that reason, exceptions to the prohibition set forth in Local Civil Rule 7.1(c)(2) are rare. *See, e.g.*, *Williams Island Synagogue, Inc. v. City of Aventura*, 2004 WL 2504633 *2 (S.D. Fla. Nov. 2, 2004) (denying plaintiff's motion to file second summary judgment motion in action arising from city's denial of conditional use permit to synagogue; "The bar imposed by the local rules, in part, protects the party opposing summary judgment and conserves judicial resources" by preventing filing of multiple motions for summary judgment, and plaintiff had shown no reason for departure from rule beyond alleged intervening change in state law); *Novartis Consumer Health Inc. v. Elan Transdermal Techs., Inc.*, 209 F.R.D. 507, 508 (S.D. Fla. 2002) (striking defendant's four separate summary judgment motions in patent infringement action; motions were filed "with the effect, if not the intent, of evading" Rule's page limitations on supporting memoranda of law).

The Revolution Defendants have come forward with no compelling reason to depart from Local Civil Rule 7.1(c)(2)'s well-reasoned prohibition on multiple summary judgment motions. Their contention that they are acting to avoid "the unnecessary expenditure of the parties' resources on other issues that are very likely to be moot" (Rev. Def. Mem. at 8), can always be made by a Defendant seeking to circumvent the rules, and is merely speculative at best. Moreover, like the defendant in *Novartis*, the Revolution Defendants are also seeking a back-door method by which they can attempt to exceed the page limitations imposed on their

supporting memorandum of law.  The Court should not countenance such tactics.[2]

### C.    The Revolution Defendants' Proposed Summary Judgment Motion is Meritless

The Revolution Defendants seek to have this Court determine that this action is barred by the doctrine of *res judicata* in light of the judgment entered after the damages trial in *Revolution I*.  An "early" summary judgment motion premised on that theory would lack any merit and should be denied.  Since almost all of the Revolution Defendants' substantive arguments in their current motion are already before the Court through Marchon's Rule 12(b)(6) motion, Plaintiffs will not burden the Court by repeating its opposition arguments in detail here, and will instead summarize those arguments and refer to their earlier opposition memorandum (Docket Entry 37, filed under seal).[3]

First, as was true of the prior litigation between Plaintiffs and Marchon, the doctrine of *res judicata* does not apply to the judgment in *Revolution I*, because the "New Designs" at issue here were expressly excluded from the earlier damages trial.  *See generally* Docket Entry 37 at 8-10.  Second, *res judicata* does not bar this action for the further reason that New Claims 23 and 35 did not exist at the time that the judgment in *Revolution I* was

---

[2]  Indeed, if the Revolution Defendants truly believed in the merits of their proposed *res judicata*-based motion, they could easily have filed a Rule 12(b)(6) motion on that ground, as did Marchon. All of the evidence referenced in the Revolution Defendants' motion is a matter of public record from a prior judicial proceeding, of which the Court can take judicial notice pursuant to Fed. R. Evid. 201. Allowing the Revolution Defendants to make multiple summary judgment motions would thus needlessly reward this manipulative litigation strategy.

[3]  To the extent that Plaintiffs' cross-motion to strike is denied, they respectfully request an additional two weeks from the disposition of the cross-motion to respond in further detail to the Revolution Defendants' substantive arguments.

entered.  *See generally Id*. at 11-13.[4]  Similarly, since New Claims 23 and 35 did not exist in *Revolution I*, the Revolution Defendants' reliance upon supposed factual similarities between *Revolution I* and this action, as well as their contention that Plaintiffs are engaging in "claim splitting", are equally meritless.  *See generally Id*. at 13-15.[5]

## III.   CONCLUSION

For the above reasons, the Revolution Defendants' request should be denied, and they should be put to a choice -- either seek summary judgment now on the grounds set forth in their current motion and be precluded from any future summary judgment motions, or make

---

[4]   Unlike this action, none of the cases cited in the Revolution Defendants' motion appear to involve patents that covered separate and distinct inventions.  *See, e.g., Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 620 (Fed. Cir. 1995) ("In both complaints, Mars alleged that it had been injured by the infringement attributable to the importation, sale and use of the same group of Nippon Conlux Premier series coin changers."); *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008) ("As is readily apparent from the face of the Complaint . . . this case involves the same defendants and products that were at issue in" prior litigation, and plaintiff made "no assertion to the contrary."); *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, 2205 WL 1869342 *2 (N.D. Cal. Aug. 5, 2005) (both actions alleged infringement of same patent in same manner, but only second action specified particular claim under patent).  *American Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002), is wholly inapposite, as that case involved new claims asserted under a business method patent.

[5]   The Revolution Defendants' citation to *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319 (Fed. Cir. 2008), actually favors Plaintiffs.  In that case, the Federal Circuit found, in reversing the District Court's dismissal of the case on *res judicata* grounds, that the products at issue in the second action were different because they could not be configured in the same manner as those at issue in the first suit within the meaning of the patent.  *Acumed*, 525 F.3d at 1326-27.

a single summary judgment motion at the close of discovery.  Plaintiffs respectfully request

that the Revolution Defendants' motion be denied in its entirety.

Dated:   January 11, 2010

                              Respectfully submitted,

                              By: s/Jacqueline Becerra
Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

and

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone:  (973) 360-7900
Facsimile:  (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.*
*and Contour Optik, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on this 11th day of January, 2010, I electronically filed the foregoing document with the Court using CM/ECF.  I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>s/Jacqueline Becerra</u>
Jacqueline Becerra

<u>SERVICE LIST</u>
Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@feldmangale.com
Feldman Gale, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-397-0798
Facsimile: 305-358-3309

*Attorneys for Defendants*
*Hardy Way, LLC, Revolution Eyewear, Inc.*
*and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants*
*Revolution Eyewear, Inc. and Gary Martin*
*Zelman*

*NJ 226,828,692v1 1-11-10*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants*
*Marchon Eyewear, Inc. and Nike, Inc.*