# EXHIBIT 4

Case 2:02-cv-01087-MMM-CW  Document 422  Filed 07/23/2007  Page 1 of 16

SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No. CV 02-01087 MMM (CWx) | Date July 23, 2007 |

Title: *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*

Present: The Honorable MARGARET M. MORROW

| ANEL HUERTA | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs | Attorneys Present for Defendants: |
|---|---|
| None | None |

Proceedings:  Order Re Motions In Limine

## I. BACKGROUND

On February 5, 2002, plaintiff Revolution Eyewear, Inc. filed this patent infringement action against defendants Aspex Eyewear, Inc., Thierry Ifergan, Real Eyes Optical, and Scott Strenk. Revolution's claims against Real Eyes Optical and Strenk were dismissed pursuant to stipulation on February 24, 2005. Its claims against Aspex and Ifergan were dismissed for lack of standing by Judge Lourdes Baird on April 11, 2005. Following that dismissal, the only claims remaining in the action were those pled in a counterclaim filed by Aspex, Ifergen, Manhattan Design Studio ("MDS"), Contour Optik, Inc. ("Contour"), and Asahi Optical Co., Ltd ("Asahi" or "Asahi/Pentax") against Revolution on September 10, 2002. The counterclaim asserted that certain of Revolution's products infringed U.S. Patent No. RE 37,545 ("'545 Patent").

On August 7, 2003, Judge Baird granted summary judgment in Revolution's favor on all of the counterclaims except those related to Claim 22 of the '545 Patent. The case was subsequently transferred to this court. On April 30, 2007, the court denied Revolution's motion for summary judgment of invalidity of Claim 22 of the '545 Patent; granted counterclaimants' motion for partial summary judgment on infringement of Claim 22; and denied Revolution's cross-motion for summary judgment of non-infringement of Claim 22. Having found that Revolution had infringed the '545 Patent, the court set the matter for a trial on damages. On July 20, 2007, the court dismissed Aspex's

DOCKETED ON CM
JUL 2 5 2007
BY ____  010

(422)

counterclaim for lack of standing. As a result, the remaining counterclaimants are Ifergen, MDS, Contour, and Asahi/Pentax. In anticipation of trial, both parties have now filed motions *in limine*.

## II.   REVOLUTION'S MOTION *IN LIMINE*

Revolution moves *in limine* for an order excluding counterclaimants' Exhibits 26-31. These exhibits are commercial samples of Revolution's Bling Bling, Alter Egos, Kids, and Air branded magnetic clip-on eyewear, and Marchon's Calvin Klein and Nike frames with magnetic clip-ons (collectively "the Non-IMF Products"). Revolution argues the exhibits must be excluded as irrelevant and unfairly prejudicial under Rules 401 and 403 of the Federal Rules of Evidence.

On April 30, 2007, the court granted counterclaimants' motion for summary judgment of infringement of claim 22 of the '545 Patent after determining that Revolution's "IMF frames . . . literally infringe[ ] Claim 22."[1] It then set the matter for a trial on damages, which it denominated "the only issue remaining to be tried."[2] Revolution argues that, because the jury's task will be limited to determining the amount of damages traceable to the infringing IMF frames, other products such as the Bling Bling and Alter Egos magnetic clip-on eyewear are irrelevant, as they have no bearing on the proper measure of damages. Counterclaimants concede that the IMF frames are the only infringing products at issue in this damages trial. They argue, however, that evidence of the Non-IMF Products is relevant to show the "pervasiveness of the infringing design." They contend that this is a factor that the jury can consider in determining the amount of reasonable royalty damages.

The Patent Act "contemplates that when a patentee is unable to prove entitlement to lost profits or an established royalty rate, it is entitled to 'reasonable royalty' damages based upon a hypothetical negotiation between the patentee and the infringer when the infringement began." *Unisplay, S.A. v. American Electronic Sign Co., Inc.*, 69 F.3d 512, 517 (Fed Cir. 1995). In determining the reasonable royalty rate, the factfinder may consider a series of fifteen factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). See *Unisplay*, 69 F.3d at 517 n. 7 ("A comprehensive list of relevant factors in determining a reasonable royalty is set out in *Georgia-Pacific*"). These factors include, *inter alia*, "[t]he extent to which the infringer has made use of the invention[ ] and any evidence probative of the value of that use"; "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity"; and "the benefits to those who have used the invention." *Georgia-Pacific*, 318 F.Supp. at 1120.

Counterclaimants argue that Revolution "incorporated the infringing design" into the Non-IMF

---

[1] Order Granting Aspex's Motion for Partial Summary Judgment of Infringement (April 30, 2007 Infringement Order) at 20-21.

[2] Docket No. 357.

Products and that its use of that "infringing design" in the Non-IMF Products demonstrates the design's popularity, its commercial success, and the benefit that Revolution has acquired from use of the design. The court has not determined that the Non-IMF Products are "infringing" or that they otherwise incorporate the patented invention, however. Nor is this an issue that the jury can be asked to decide in the context of a damages trial related to the infringing IMF designs. Because the Non-IMF Products have not been found to be "infringing," counterclaimants cannot introduce commercial samples of the Non-IMF Products to show "the pervasiveness of the infringing design." Consequently, the court concludes that Exhibits 26-31 are not relevant under Rule 401 and must be excluded.

Even if the Exhibits 26-31 had some minimal relevance, their probative value would be so outweighed by "the danger of unfair prejudice [and] confusion of the issues" as to warrant exclusion under Rule 403. A jury confronted with samples of the IMF frames as well as samples of five additional Non-IMF Products might infer that infringement occurred on a much larger scale than the court has determined. This inference would likely prejudice unfairly their determination of the appropriate damages to award. Counterclaimants' only response to this argument is that "Revolution would not be prejudiced because Exhibits 26-31 incorporate the same infringing design."[3] In effect, counterclaimants concede that the jury may be misled into believing that the Non-IMF Products are "infringing," when no such determination has been made. Because such an inference would be unfairly prejudicial to Revolution and because that prejudice would "substantially outweigh[ ]" the minimal, if not nonexistent, probative value of the evidence, the court exercises its discretion to exclude Exhibits 26-31 under Rule 403 as well. See 2 WEINSTEIN'S FEDERAL EVIDENCE, § 403.04[1][b] (2d ed. 2007), at 403-37 ("Unfairness may also be found in the form of evidence that may cause a jury to based its decision on something other than the established propositions in the case"); compare *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 689-90 (9th Cir. 2001) (probative value of coworkers' testimony that they were sexually harassed by supervisor to show that management knew of the supervisor's conduct was substantially outweighed by risk of unfair prejudice, because testimony "would create a significant danger that the jury would base its assessment of liability on remote events involving other employees, instead of recent events concerning Plaintiffs").

For these reasons, the court grants Revolution's motion *in limine* to exclude counterclaimants' Exhibits 26-31.

---

[3]Revolution MIL Opp. at 6:21-22.

### III.  COUNTERCLAIMANTS' MOTIONS *IN LIMINE*

#### A.  Whether Counterclaimants' Motions Should Be Denied For Lack Of Timely Service

The parties agree that counterclaimants failed to comply with Local Rule 6-1,[4] which provides: "If mailed, the notice of motion shall be served not later than twenty-four (24) days before the Motion Day designated in the notice. If served personally, the notice of motion shall be served not later than twenty-one (21) days before the Motion Day designated in the notice." Under this rule, counterclaimants' motions *in limine* were to be mailed by June 8, 2007 or personally served by June 11, 2007, i.e., 24 and 21 days before the noticed motion date of July 2, 2007, respectively. Counterclaimants mailed the motions to Revolution on June 11, 2007. That same day, but after the close of business, counterclaimants emailed courtesy copies of the briefs and related documents to Revolution's counsel.

Because it is clear Revolution received the motions and supporting documents by June 11, 2007, the court concludes that it was not prejudiced in its ability to oppose the motions. It will therefore consider counterclaimants' motions *in limine* on their merits rather than denying them for violation of Local Rule 6-1. See *Professional Programs Group v. Dep't of Commerce*, 29 F.3d 1349, 1353 (9th Cir. 1994) ("A departure [from the local rules] is justified only if the effect is 'so slight and unimportant that the sensible treatment is to overlook [it],'" quoting *Martel v. County of Los Angeles*, 21 F.3d 940, 947 n. 4 (9th Cir. 1994); *id.* ("As noted, the district court has broad discretion to depart from the strict terms of the local rules where it makes sense to do so and substantial rights are not at stake. Given that the government filed the functional equivalent of the statement required by Rule 7.14.2, we cannot say the district judge abused her discretion").

#### B.  Counterclaimants' Motion To Exclude Exhibits 46-47, 54, And 59[5]

##### 1.  Whether The Exhibits Must Be Excluded Under Rules 26(a) and 37(c)(1)

Counterclaimants move to exclude Revolution's Exhibits 46-47, 54, and 59 on the ground that they were not produced "as required under Rule 26(a)."[6] Rule 26(a) sets forth the parties' initial disclosure obligations and provides that "a party must, without awaiting a discovery request, provide

---

[4] Counterclaimants MIL Opp. at 17-22; Counterclaimants' Ex Parte Application For An Order Deeming Their Motions In Limine Timely Served at 3.

[5] Counterclaimants also moved to exclude Exhibits 33-34, 40, 58, 60, and 62. Because Revolution withdrew these exhibits in its opposition brief, however, the court does not address their admissibility in this order.

[6] Counterclaimants MIL Mot. at 3.

4

to other parties," *inter alia*, "a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." FED. R. CIV. PROC. 26(a)(1)(B). Rule 26(e) imposes a continuing duty on litigants to supplement their disclosures under Rule 26(a). FED. R. CIV. PROC. 26(e)(1).

Rule 37 provides that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." FED. R. CIV. PROC. 37(c)(1). The party facing Rule 37 sanctions has the burden of showing substantial justification or harmlessness. *Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness"); *Wilson v. Bradlees of New England, Inc.*, 250 F.3d 10, 21 (1st Cir. 2001) ("[I]t is the obligation of the party facing sanctions for belated disclosure to show that its failure to comply with the Rule was either justified or harmless and therefore deserving of some lesser sanction").

In its moving papers, counterclaimants assert that Exhibits 46-47, 54, and 59 must be excluded because they were not disclosed under Rule 26(a) – i.e., during initial disclosures. In its opposition, Revolution convincingly argues that it had no reason to include Exhibits 46-47, 54, and 59 in its initial disclosures because (1) the exhibits are relevant only to its defense to counterclaimants' counterclaim, and (2) its initial disclosures were made on the same day counterclaimants filed their counterclaim and before Revolution was aware of the claims and defenses related to the counterclaim. Tacitly conceding the merit of this argument, counterclaimants assert for the first time in reply that the exhibits must be excluded because they were not disclosed at any time during the course of discovery. Because this additional argument was first raised in reply, thus preventing Revolution from responding to it, the court will not consider it. See See *Stewart v. Wachowski*, No. CV 03-02873 MMM, 2004 WL 2980783, *11 (C.D. Cal. Dec. 16, 2004) (refusing to consider an argument raised for the first time in reply); see also *Dietrich v. Trek Bicycle Corp.*, 279 F.Supp.2d 1122, 1128 (W.D. Wis. 2003) ("Defendants raised this argument for the first time in its reply brief. Because this argument should have been raised earlier or not at all, I will not consider it"); *Halliburton Energy Services, Inc. v. Weatherford International, Inc.*, No. Civ.A. 302CV1347-N, 2003 WL 22017187, *1 n. 1 (N.D. Tex. Aug. 26, 2003) ("Halliburton offers additional grounds for reconsideration in its reply[;] however, the grounds are not proper under Rule 59(e) . . . and the Court will not consider an argument raised for the first time in a reply brief"); *Public Citizen Health Research Group v. National Institutes of Health*, 209 F.Supp.2d 37, 44 (D.D.C. 2002) ("The Court highly disfavors parties creating new arguments at the reply stage that were not fully briefed during the litigation. . . . By placing a new argument in the Reply, Plaintiff does not permit Defendant or Intervenor-Defendant to competently respond to such an argument").

Because Revolution was "substantially justified" in failing to produce, in its initial disclosures, documents relevant only to an as-yet-unfiled counterclaim, the court denies counterclaimants' motion

5

to exclude Exhibits 46-47, 54 and 59 under Rules 26(a) and 37(c)(1).

### 2. Whether Exhibit 46 Is Excludable Under Rules 801, 401, Or 403

Exhibit 46 is a compilation of 1998-2001 eyewear catalogs and advertisements. Counterclaimants contend it is irrelevant under Rule 401, constitutes hearsay under Rule 801, and is unfairly prejudicial under Rule 403. The court disagrees. First, the evidence is relevant to Revolution's defense of equitable intervening rights, as it tends to show that Revolution made substantial investments in its IMF product line before the '545 reissue patent issued on February 12, 2002. See 35 U.S.C. § 252 ("The court . . . may provide for the continued manufacture, use or sale of the thing made, purchased or used, or for the manufacture, use or sale of which substantial preparation was made before the grant of the reissue, . . . to the extent and under such terms as the court deems equitable for the protection of investments made or business commenced before the grant of the reissue"); *Seattle Box Co., Inc. v. Industrial Crating and Packing Inc.*, 756 F.2d 1574, 1580 (Fed. Cir. 1985) ("the remedy of intervening rights is calculated to protect an infringer's preexisting investments and business"); *Mine Safety Appliances Co. v. Becton Dickinson and Co.*, 744 F.Supp. 578, 580 (S.D.N.Y. 1990) (granting equitable intervening rights in part because the infringer "began manufacture, marketing and distribution of its models which include technology covered by the reissue patent before" that patent issued). Contrary to counterclaimants' contention, Revolution need not show that documents in Exhibit 46 "substantiat[e] the dollar amount of th[e] alleged 'substantial investment'" before they are admissible.[7] The fact of advertising and marketing alone makes such "substantial investment" "more probable . . . than it would be without the evidence." FED. R. EVID. 401; see also *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 587 (1993) (Rule 401's "basic standard of relevance . . . is a liberal one").

Second, the evidence is not hearsay because it is not offered "for the truth of the matter asserted," e.g., that certain frames are priced at x amount, but only to show that Revolution advertised and marketed relevant eyewear. See FED. R. EVID. 801(c), Advisory Committee Notes ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay"). Third, any prejudice that counterclaimants might suffer from being "forc[ed] to hunt through voluminous documents to ascertain why Revolution seeks to offer [a] particular page or pages" is not "substantially outweighed" by the evidence's clear probative value in establishing Revolution's equitable intervening rights defense. See FED. R. EVID. 403. Nor is the court persuaded by counterclaimants' suggestion that the jury might be misled into believing that all 2200 pages of the catalogs and advertisements relate to Revolution's eyewear. The court can presume that jurors are sufficiently familiar with catalogs to know that an eyewear catalog will include products from many different companies, and any uncertainty in this regard can be clarified through appropriate cross-examination of Revolution's witnesses. See *Gulf States Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981) (Rule

---

[7]Counterclaimants MIL Reply at 4:11-14.

403 assumes that a trial judge can "discern and weigh the improper inferences that a jury might draw from certain evidence"). Counterclaimants' motion to exclude Exhibit 46 is therefore denied.

### 3. Whether Exhibit 47 Is Excludable Under Rule 801

Exhibit 47 is a stock sale and purchase agreement between Gary Zelman (Revolution's president) and Roland and Laurice Messih for shares of capital stock in Revolution owned by the Messihs. Counterclaimants contend the exhibit constitutes inadmissible hearsay. The court disagrees. As a contract, the sale and purchase agreement is a "verbal act" that "has independent legal significance" and therefore "fall[s] outside the category of hearsay." 30 B Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7005 (Interim Edition 2006); see also *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992) (holding that contracts are admissible to prove lost profits and stating: "A contract . . . is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay"); *United States v. Rubier*, 651 F.2d 628, 630 (9th Cir. 1981) ("facts of independent legal significance constituting a contract which is at issue are not hearsay").[8] The court therefore denies counterclaimants' motion to exclude Exhibit 47.[9]

### 4. Whether Exhibit 54 Is Excludable Under Rules 801 Or 401

Exhibit 54 is a lease agreement between Rediger Investment Corporation and Revolution. Revolution intends to offer the document in support of its equitable intervening rights defense, specifically to show the "substantial investment that [it] made in growing its business during the relevant time period."[10] Counterclaimants contend the exhibit is inadmissible hearsay and irrelevant in any event because the lease agreement is not signed by a representative of Revolution.

As respects counterclaimants' relevance argument, it may be the case that Zelman can testify to the transaction that gave rise to the lease agreement, assuming he has personal knowledge of it,

---

[8] Revolution asserts, moreover, that both Zelman and Roland Messih will testify at trial. If so, Revolution may offer the document to either or both witnesses to refresh their recollection of the matters contained therein. See FED. R. EVID. 612 (writing may be used by a witness to refresh memory). Should either party testify in a manner that contradicts the sale and purchase agreement, the document will be also admissible for impeachment purposes. See FED. R. EVID. 607; *United States v. Castillo*, 181 F.3d 1129, 1133 (9th Cir. 1999) (noting that Rule 607 allows admission of extrinsic evidence to impeach by contradiction, subject to Rule 403 considerations).

[9] In their reply, counterclaimants argued that Exhibit 46 cannot possibly be used to prove Revolution's entitlement to equitable intervening rights, as Revolution asserts, because it is dated five months after the '545 reissue patent issued. Because counterclaimants did not raise a relevance objection in its motion, the court does not consider the argument.

[10] Counterclaimants MIL Opp. at 4:20-22.

7

and to the fact that the parties to the agreement considered themselves bound by it despite the fact that it was not executed by a representative of Revolution.[11] See FED. R. EVID. 602. If Zelman's testimony establishes that the contract is or was in force during the relevant period, it will not be irrelevant, and assuming he or some other witness can adequately authenticate the document, it can be offered into evidence.[12] In that case, the agreement would be a "verbal act" that "has independent legal significance" and therefore "fall[s] outside the category of hearsay." 30 B Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7005 (Interim Edition 2006). If Zelman cannot testify that the agreement governed Revolution's relationship with Rediger, however, it would appear to be not only irrelevant, but inadmissible hearsay as well, and would have to be excluded. In order to determine this issue in an orderly fashion, the court will require that Revolution make a written offer of proof regarding Zelman's proposed testimony about the lease agreement no later than **July 30, 2007.** Counterclaimants may respond by **August 6, 2007.** The court defers ruling on this motion until receipt of these pleadings.

    5.    Whether Exhibit 59 Is Excludable Under Rules 401, 403, 801, Or 1002-1003

Exhibit 49 is a letter from Southland Opticians, Inc. dated February 7, 2000. It states:

"Dear Al, [¶] Just to let you know the 'Aspex' rep was in my office a few days ago and what he told me did alarm me! He said that Revolution was counterfeiting the Aspex magnetic frames and that they would be putting you 'out of business'. He also

---

[11] Because Zelman will be available to counterclaimants' for cross-examination, it is immaterial that counterclaimants "never had an opportunity to test the credibility and authenticity" of the lease agreement "by deposition of a knowledgeable representative of Rediger." (Counterclaimants MIL Reply at 5:24-26). Counterclaimants may test "the credibility and authenticity" of Zelman's testimony regarding the lease agreement during cross-examination.

[12] The exhibit may also be used to refresh Zelman's recollection. FED. R. EVID. 612; see also *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975) ("any writing may be used to refresh the recollection of a witness, even if that writing is not made by the witness himself"). Counterclaimants correctly observe that documents used to refresh a witness' recollection under Rule 612 must be independently admissible before they can be offered in evidence. See 4 WEINSTEIN'S FEDERAL EVIDENCE § 612.04[5] at 612-29 (2d ed. 2007) ("The right to introduce portions of the writing [used to refresh a witness' recollection] into evidence is limited, however, to writings that are admissible. Allowing unfettered admission of relevant portions would undermine the usual modes of introducing evidence and would permit by-passing of best evidence, authentication, and hearsay rules in many instances. Rather, Rule 612 must be understood as allowing opposing counsel to examine the writing and question the witness about it, but to keep the writing from being considered by the jury as part of the evidence except to the extent that it complies with all the rules governing the admissibility of writings"). Thus, the mere fact that Zelman used the document to refresh his recollection concerning the transaction would not make it independently admissible.

claimed that I could be sued for selling them. [¶] Al, is any of this true? If so I have to stop using your IMF product. [¶] Please call me ASAP."[13]

Counterclaimants contend the letter is irrelevant and unfairly prejudicial, constitutes double hearsay, and violates the best evidence rule. The letter's relevance to the damages trial is not immediately obvious, and Revolution does not proffer any reason why it is admissible under Rule 401. Counterclaimants' Rule 401 objection is therefore sustained. In addition, while statements by "the 'Aspex' rep" might be admissible as party-opponent statements were Aspex still a counterclaimant, the repetition of those statements by the author of the letter is inadmissible hearsay not within any exception. Although Revolution posits that the letter is an "excited utterance" admissible under Rule 803(5), the court disagrees. It is true, as Revolution asserts, that "unlike the hearsay exception for present sense impressions, [Rule] 803(1), an excited utterance need not be contemporaneous with the startling event to be admissible[.] Rather, the utterance must be contemporaneous with the excitement engendered by the startling event." *United States v. Alexander*, 331 F.3d 116, 122 (D.C. Cir. 2003). The author's use of an exclamation mark is insufficient, however, to show that the author was so excited at the time he wrote the letter as to "preclude[ ] conscious reflection on the subject of the statement." *Id*. This is particularly true because the letter was written "a few days" after the Aspex representative's visit, and because the author will not be called to testify to his state of mind when he wrote the letter. Accordingly, there is no way to ascertain that the letter was in fact "contemporaneous with the excitement engendered by the startling event." *Id*. Counterclaimants' motion to exclude Exhibit 59 is therefore granted.

### C. Counterclaimants' Motion To Exclude Exhibits 55, 56, And 64

Exhibits 55 and 56 are two letters from attorney David O'Reilly, which state his opinion that Revolution's products do not infringe the '207 Patent. Exhibit 64 is a March 22, 2000 opinion from O'Reilly to Zelman concerning the '545 Patent. Citing *In re Echostar Communications Crop.*, 448 F.3d 1294 (Fed. Cir. 2006), counterclaimants contend that Revolution waived any attorney-client or work-product privilege associated with the letters when it decided to rely on advice of counsel as a defense to willfulness. See *id.* at 1304 ("when an alleged infringer asserts its advice-of-counsel defense regarding willful infringement of a particular patent, it waives its immunity for any document or opinion that embodies or discusses a communication to or from it concerning whether that patent is valid, enforceable, and infringed by the accused"). Having waived any privilege, counterclaimants argue, Revolution should have produced Exhibits 55-56 and 64 during discovery in response to the following requests for production:

- "All opinions of counsel received by Revolution referring or relating to the validity, enforceability, or the question of Revolution's infringement of the 545 reissue patent."
- "All documents referring or relating to any opinions, studies, test, communications,

---

[13]Declaration of Josephine Brosas ("Brosas Decl."), Exh. 17.

9

evaluations, or conclusions that support, contradict, or otherwise relate to the subject matter of any opinion provided to Revolution concerning the validity, enforceability or the questions of Revolution's infringement of the 545 reissue patent."[14]

Because Exhibits 55-56 and 64 were not produced in response to these requests, counterclaimants assert that Revolution cannot now offer the opinions at trial.

The court has previously found that counterclaimants did not adequately plead and preserve a willful infringement claim that would support an award of enhanced damages under 35 U.S.C. § 284. Revolution therefore had no reason to assert an advice of counsel defense to willful infringement, and *In re Echostar* is inapposite. The opinions of counsel are relevant to Revolution's defense of equitable intervening rights, however, and to counterclaimants' prayer for attorneys' fees. See, e.g., *Seattle Box*, 756 F.2d at 1580 (advice of counsel given before grant of a broadened reissue patent is a factor in support of equitable intervening rights); *Gerhardt v. Kinnaird*, 162 F.Supp. 858, 864 (E.D. Ky. 1958) (pre-reissue advice of counsel as to how defendant might build a non-infringing item was one factor that supported a finding of equitable intervening rights); see also *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1340 (Fed. Cir. 2004) ("While a finding of willful infringement does not require a finding that a case is exceptional, '[o]ur cases uniformly indicate that the willfulness of the infringement by the accused infringer may be a sufficient basis in a particular case for finding the case "exceptional" for purposes of awarding attorney fees to the prevailing patent owner.' . . . Based on a finding of willful infringement, it is within the district court's discretion whether to award attorney fees under § 285. In essence, Wal-Mart argues the district court abused that discretion because 'more egregious conduct than willful infringement is necessary to hold a case exceptional,' an argument that we rejected in *Avia*," quoting *Avia Group International, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1567 (Fed. Cir. 1988)).

Thus, Exhibit 64, an opinion regarding infringement of the '545 Patent that was clearly responsive to counterclaimants' discovery requests, should have been produced if Revolution intended to rely on it at trial to establish entitlement to equitable intervening rights or to defend against counterclaimaints' prayer for attorneys' fees. Because it was not produced, the court must exclude Exhibit 64. See, e.g., *Tristrata Technology, Inc. v. ICN Pharmaceuticals, Inc.*, 314 F.Supp.2d 356, 361 (D. Del. 2004) (excluding a declaration of counsel in post-trial proceedings regarding enhanced damages because "it would be unfair to permit ICN to submit new evidence post-trial regarding its belief that Tristrata's patents were invalid because the Court is not persuaded that ICN's response to Tristrata's interrogatories provided Tristrata with notice that ICN held a good faith belief that the '157 and '776 patents were invalid"); *Applied Medical Res. Corp. v. U.S. Surgical Corp.*, 967 F.Supp. 861, 864 n. 3 (E.D. Va. 1997) (holding that concerns of fairness and reliability required the exclusion of opinions of counsel that were not admitted at trial or produced in discovery).

---

[14]Declaration of Josephine Brosas in Support of Counterclaimatns' Reply ("Brosas Decl. II"), Exh. 1.

Exhibits 55 and 56, however, are opinions that pertain to the '207 Patent, not the '545 Patent. They were thus not responsive to counterclaimants' discovery requests. Consequently, counterclaimants' motion to exclude these exhibits is denied.

D. **Counterclaimants' Motion To Exclude Exhibits 37-39, 42, 44-45, 53, And 61.**

1. **Exhibit 37**

Exhibit 37 is a summary of Revolution's sales of magnetic eyewear from 1998 to 2002. Counterclaimants "conditionally object[ ]" to the exhibit on the ground that it is "incomplete." In reply, they indicate they will withdraw their motion to exclude Exhibit 37 when Revolution produces certain sales records to "complete" the summary offered in Exhibit 37. At the continued pretrial conference held on July 2, 2007, the parties indicated that the sales information had been exchanged; accordingly, the court deems the motion to exclude Exhibit 37 moot.

2. **Exhibit 38**

Exhibit 38 is a February 4, 2000 indemnification agreement between Revolution and Pearl Vision, Inc., in which Revolution agrees to indemnify Pearl Vision from any liability arising out of its sale of "certain auxiliary lenses with magnet attachments for securing to eyeglasses."[15] Counterclaimants seek to exclude the exhibit on hearsay and relevance grounds. The hearsay objection is overruled, as the contract is a "verbal act" that "has independent legal significance" and therefore "fall[s] outside the category of hearsay." 30 B Michael H. Graham, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 7005 (Interim Edition 2006); see also *Mueller*, 972 F.2d at 937 (holding that contracts were admissible to prove lost profits and stating: "A contract . . . is a form of verbal act to which the law attaches duties and liabilities and therefore is not hearsay"); *Rubier*, 651 F.2d at 630 ("facts of independent legal significance constituting a contract which is at issue are not hearsay").

The relevance objection is likewise overruled, because the evidence is pertinent to Revolution's defense of equitable intervening rights. In this regard, the court is not persuaded by counterclaimants' argument that "Exhibit 3[8] is irrelevant to Revolution's intervening rights because this indemnification agreement pertains to auxiliary lenses whereas claim 22 of the '545 patent concerns primary frames."[16] The February 4, 2000 indemnification agreement predates issuance of the '545 Patent by two years. That Revolution agreed to indemnify a seller from liability arising out of its sale of an auxiliary frame, but not a primary frame, suggests that Revolution and Pearl Vision did not believe that Revolution's primary frame infringed the earlier '207 Patent. It may therefore be relevant to Revolution's equitable intervening rights defense because it tends to show that

---

[15] Confidential Exh. 4 In Support Of Counterclaimants' Motions *In Limine*

[16] Counterclaimants MIL Reply at 12:11-13.

11

Revolution invested in the IMF frames at a time when it did not know the product would infringe a broader reissue patent that had yet to be granted. See FED. R. EVID. 401 (relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"); Smith v. Texas, 543 U.S. 37, 44 (2004) (noting the "'low threshold for relevance'" (citations omitted)). Counterclaimants' motion to exclude Exhibit 38 is therefore denied.

### 3. Exhibit 39

Exhibit 39 is a summary of commissions paid to Revolution sales representatives. Counterclaimants' hearsay objection to the evidence is overruled, since the document is admissible as a business record under Rule 803(6). See FED. R. EVID. 803(6) (records or data compilations "in any form" are admissible "if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the . . . record . . . as shown by the testimony of the custodian or other qualified witness"). The record will, of course, have to be properly authenticated by a "custodian or other qualified witness" who can testify that it was made and kept in the course of a regularly conducted business activity.

Counterclaimants' relevance objection is also overruled, as the exhibit is relevant to a determination of damages and to Revolution's intervening rights defense. As noted, counterclaimants may establish damages by asking that the jury determine the reasonable royalty for a license of the '545 Patent. Among the factors that can be considered in determining a reasonable royalty is "[t]he established profitability of the product made under the patent." Georgia-Pacific, 318 F.Supp. at 1120. The profitability of the IMF frames – one measure of the "profitability of the product made under the patent" – is affected by the amount of commissions paid to sales representatives. Additionally, because Exhibit 39 pertains to commissions paid in and before 2000, it tends to show the amount of money Revolution invested in the product before the '545 Patent issued. It is therefore relevant to Revolution's defense of equitable intervening rights. Consequently, counterclaimants' motion to exclude Exhibit 39 is denied.

### 4. Exhibit 42

Exhibit 42 is comprised of two advertisements by Zelman in what appears to be a trade publication. The advertisements set forth Revolution's position regarding the ongoing litigation with Aspex and assert, inter alia, that "Revolution Eyewear, Inc. has great respect for the intellectual property rights held by others and would never do anything to violate the "honest" assertion of those rights." They also state that "Aspex Eyewear, Inc., through its latest advertisements, has been using misleading information in order to gain an advantage in the optical marketplace."[17] Counterclaimants contend the evidence is hearsay, irrelevant, and unfairly prejudicial.

---

[17]Brosas Decl., Exh. 7.

12

Because the exhibit is offered only to show that Revolution advertised and defended its product in the marketplace, and not for the truth of the matter asserted in the advertisement, it is not hearsay that is inadmissible under Rule 801. Revolution contends, and the court agrees, the advertisements are relevant to its defense of equitable intervening rights, as the advertisements were clearly placed in 1999 or shortly thereafter,[18] and thus indicate that Revolution invested in its IMF products before the '545 Patent issued by marketing and defending those products in the marketplace. Counterclaimants assert that the advertisements are unfairly prejudicial, as they suggest that counterclaimants have engaged in unfair, dishonest business practices. Because the advertisements reference actions by Aspex Eyewear, which is no longer a counterclaimant, rather than MDS, Contour or Asahi/Pentax, the potential for prejudice is reduced. Precisely because they reference Aspex, however, the court questions whether introduction of the advertisements would not simply confuse the jury and cause it to speculate about the relevance of advertising that addresses the intellectual property rights of a party not before the court. To avoid jury confusion, therefore, the court exercises its discretion to exclude the evidence under Rule 403. This ruling is also based on the fact that Revolution seeks to offer other pre-reissue advertisements – which are included within Exhibit 44 – such that the introduction of these two advertisements will be cumulative. See FED. R. EVID. 403. For these reasons, the court grants counterclaimants' motion to exclude Exhibit 42.

### 5. Exhibit 44

Exhibit 44 is a compilation of various advertisements by Revolution, including copies of the two advertisements that comprise Exhibit 42. Counterclaimants' objections to Exhibit 44 are identical to its objections to Exhibit 42, and are sustained to the extent that the two advertisements that comprise Exhibit 42 are excluded for the reasons stated above. The balance of the advertisements in Exhibit 44 are admissible.

### 6. Exhibit 45

Exhibit 45 is a March 24, 1999 letter from Zelman to Genuine International Optical Limited ("Genuine"), in which Zelman asks Genuine to ship "1,500 packaging cards for the IMF frames" "very fast," and inquires about an order of "15 extra clip-ons for each style, each color for the IMF line." Zelman also advises Genuine that "a HUGE P.O. will be placed tomorrow for the IMF's."[19] Counterclaimants seek to exclude Exhibit 45 on hearsay and relevance grounds.

Counterclaimants contend "[t]he exhibit has no relevance to Revolution's intervening rights defense because it does not indicate that the order was actually placed." The court is not persuaded by this reasoning. The letter indicates that Revolution asked Genuine to ship packaging cards and

---

[18] For example, the advertisement references several court proceedings, as well as an award received by Revolution, in 1999.

[19] Brosas Decl., Exh. 9.

13

clip-ons, i.e., expenses Revolution incurred as part of its investment in the IMF frames; accordingly, it is relevant to Revolution's intervening rights defense.

Counterclaimants' hearsay objection is sustained, however. The letter is offered for the truth of the matter asserted, e.g., to show Zelman requested 1,500 packaging cards and inquired about an order of clip-ons. Revolution contends the letter is admissible under Rule 803(3)'s exception for "then existing state of mind . . . such as intent [or] plan" (FED. R. EVID. 803(3)), because it shows Zelman's "then existing state of mind (i.e. his intent, plan) to expand his business as evidenced by the 'huge' purchase order indicated in the letter."[20] The court disagrees. By offering Zelman's belief that a "huge" purchase order would be placed the next day, Revolution seeks to prove that a "huge" purchase order was indeed placed. Compare *Seattle Box*, 756 F.2d at 1580 ("[T]he remedy of intervening rights is calculated to protect an infringer's preexisting investments and business. Prior business commitments, such as previously placed orders and contracts, are one such example"). This is expressly prohibited by Rule 803(3), which does not apply to "a statement of memory or belief to prove the fact remembered or believed." FED. R. EVID. 803(3).

If Zelman testifies, the letter may be used to refresh his recollection. See FED. R. EVID. 612. Because the exhibit may not be used for any other purpose, however, and because documents offered under Rule 612 are not independently admissible, see *supra*, the court grants counterclaimants' motion to exclude Exhibit 45.

### 7. Exhibit 53

Exhibit 53 is a September 15, 1999 letter from Bank of America to Zelman and Messih. Attached to the letter is a Bank of America press release stating that the company had awarded its "Spirit of Innovation" award to Revolution. The letter explains that the award is part of the "Bank of America Small Business Awards Program," that "[t]he judges were quite impressed with [Revolution's] success story," and that Bank of America hoped Revolution would attend the *Los Angeles Times* Small Business Strategies Conference.[21] Counterclaimants move to exclude Exhibit 53 on the hearsay and relevance grounds.

Revolution contends the exhibit is admissible because it is "being offered to corroborate the anticipated testimony of Mr. Zelman that, on or about September 15, 1990, Mr. Zelman received a letter and related papers from Bank of America,"[22] and not to show Revolution received the Spirit of Innovation award. Aside from the letter's content (e.g., its statement that Revolution had received the Spirit of Innovation award), the fact that Zelman received a communication from Bank of

---

[20] Counterclaimants MIL at 13:8-11.

[21] Brosas Decl., Exh. 12.

[22] Counterclaimants MIL Opp. at 13:18-21.

14

America is not relevant to any of the issues to be tried. As a result, the court concludes that Revolution intends to offer the letter and its attachments to prove that Revolution received the Spirit of Innovation award, and that Bank of America viewed it as a business "success story." Because Zelman can testify to his company's receipt of the award, and because the letter is an out-of-court statement being offered for the truth of the matter asserted, the court concludes that counterclaimants' hearsay objection must be sustained. Their motion to exclude Exhibit 53 is therefore granted.

### 8. Exhibit 61

Exhibit 61 is Aspex's advertisement for its patented Easy Clip® eyewear. The advertisement references several court proceedings, including developments in Aspex's lawsuit against Revolution. Counterclaimants contend the advertisement is irrelevant, unfairly prejudicial, misleading to the jury, and potentially confusing. Citing *Georgia-Pacific*, Revolution argues that the advertisement is relevant to one of the factors used to determine a reasonable royalty rate – "[t]he commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business." *Georgia-Pacific*, 318 F. Supp. at 1120. Because Aspex is no longer a party in this action, its relationship with Revolution is irrelevant. For this reason, the court grants counterclaimants' motion to exclude Exhibit 61.

### E.   Whether Revolution Should Be Precluded From Arguing Intervening Rights To The Jury

The parties agree that after the jury makes factual findings, the court must determine whether an infringer is entitled to equitable intervening rights. See *Shockley v. Arcan, Inc.*, 248 F.3d 1349, 1358 (Fed. Cir. 2001). As a result, counterclaimants argue that Revolution should be precluded from arguing to the jury that it is entitled to intervening rights. Revolution contends, however, that "[t]o the extent that the facts underlying the defense of intervening rights overlap with the facts pertaining to damages, Revolution should be permitted to argue to the jury in summation that damages are to be mitigated by Revolution's intervening rights."[23] The court disagrees.

Whether or not Revolution is entitled to equitable intervening rights, and whether its entitlement to such rights warrants a reduction of any damages awarded by the jury, are questions for the court to decide. See *Seattle Box*, 756 F.2d at 1579 (upon a determination that an infringer is entitled to equitable intervening rights, a court may "use its broad equity powers to fashion an appropriate remedy"); *id.* at 1583 (holding that court's finding of equitable intervening rights barred an award of damages for products made before the reissue patent was granted). To the extent Revolution relies on *Railroad Dynamics, Inc. v. A. Stucki Co.*, 579 F.Supp. 353, 373 (E.D. Pa. 1983) for the proposition that a jury may determine the issue of intervening rights, the court declines to follow it, as it is contrary to the Federal Circuit's decision in *Shockley*, and contrary to the weight

---

[23] Counterclaimants MIL Opp. at 15:11-14.

of non-Federal Circuit authority. See, e.g., *American Cynamid Co. v. Lincoln Laboratories, Inc.*, 403 F.2d 486, 487 (7th Cir. 1968) (noting that the issue of intervening rights was tried to the court); *Lucent Technologies Inc. v. Gateway, Inc.*, Civil Nos. 02CV2060-B(CAB), 03CV0699-B (CAB), 03CV1108-B (CAB), 2007 WL 1306542, *1 (S.D. Cal. Apr. 30, 2007) (noting that the issue of intervening rights "came before the Court to determine as non-jury issues"); *Richardson-Vicks, Inc. v. UpJohn Co.*, Civ.A. No. 93-556, 1996 WL 31209, *7-8 (D. Del. Jan. 17, 1996) (granting defendants' renewed motions for judgment as a matter of law after a jury verdict and noting that "even if the jury verdict were to stand, the court would grant defendants the equitable relief requested in their motion for intervening rights"). Accordingly, the court believes it would be improper for Revolution to argue to the jury that it is entitled to have any damages award based on intervening rights. It may, of course, argue to the jury the facts that would be necessary to support a finding by the court that it is entitled to such rights.

## III. CONCLUSION

For the foregoing reasons, the court grants Revolution's motion *in limine* to exclude Exhibits 26-31. It grants counterclaimants' motion *in limine* to exclude Exhibits 42, 45, 53, 59, 61 and 64; denies counterclaimants' motion to exclude Exhibits 38-39, 44 (with the exception of that portion of Exhibit 44 that constitutes Exhibit 42), 46-47, and 55-56; and denies as moot counterclaimants' motion to exclude Exhibit 37. The court directs Revolution to make a written offer of proof regarding Zelman's proposed testimony about Exhibit 54 no later than **July 30, 2007.** Counterclaimants may respond by **August 6, 2007.** The court will then rule on the admissibility of that document. Finally, the court grants counterclaimants' motion to preclude Revolution from arguing to the jury in summation that it is entitled to equitable intervening rights. Revolution may, however, argue the facts that would underlie the court's determination of the intervening rights defense.