UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

    Defendants.
_____/

**PLAINTIFF CONTOUR OPTIK, INC.'S OPPOSITION TO
DEFENDANT REVOLUTION EYEWEAR, INC.'S, MOTION
TO COMPEL SUPPLEMENTAL INTERROGATORY RESPONSES**

Plaintiff Contour Optik, Inc. ("Contour") submits this Opposition to Defendant Revolution Eyewear, Inc.'s ("Revolution") motion to compel supplemental responses to Revolution's First Set of Interrogatories (Nos. 1, 2, 4, and 5), to which Contour responded on January 14, 2010[1] and provided a supplemental response on February 9, 2010. For the reasons discussed in detail below, Revolution's motion should be denied in its entirely.

I.    **STATEMENT OF FACTS**

    A.    **The Reexamined '545 Patent-In-Suit**

On February 12, 2002, the U.S. Patent Office issued U.S. Patent No. US RE37,545, entitled "Auxiliary Lenses for Eyeglasses" (the "'545 Patent"). *See* Declaration of Ericka Turk-Moore "Decl. of Turk-Moore" at Exh. 1; Compl. ¶ 12; *see* Decl. of Turk-Moore at Exh. 2.

---

[1] Plaintiff Contour Optik, Inc.'s Certified Responses to Defendant Revolution Eyewear, Inc.'s First Set of Interrogatories was served on January 29, 2010.

Plaintiffs Contour and Aspex Eyewear, Inc. ("Aspex") (collectively, "Plaintiffs") co-own the patent. Compl. at ¶ 14.

Following a September 13, 2007 third party request for re-examination of certain claims of the '545 Patent, the Patent Office issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which reconfirmed all of the original claims of the '545 Patent, and included a New amended Claim 23, and a New Claim 35. *See* Decl. of Turk-Moore at Exh. 3. New amended Claim 23 and New Claim 35 of the re-examined '545 Patent did not exist in the original '545 Patent. *See* Decl. of Turk-Moore at Exhs. 1 and 3.

### B.   *Revolution I*

In 2002, Revolution brought *Revolution I,* an action against Aspex for infringement of U.S. Patent No. 6,343,858 (the "'858 Patent"). *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1363 (Fed. Cir. 2009). Aspex answered Revolution's Complaint and, with Contour, counterclaimed against it for infringement of Claim 22 of the '545 Patent by Revolution's magnetic clip-on eyewear. *Id.* In April 2005, the Court dismissed Revolution's causes of action for infringement of the '858 Patent for lack of standing. *Id.* at 1363-64.

On April 30, 2007, the Court granted Plaintiffs' motion for summary judgment that Revolution literally infringed Claim 22 of the '545 Patent, and denied Revolution's motion for summary judgment that Claim 22 is invalid. *Id.* at 1364. Claim 22 is directed to a ***primary spectacle frame*** capable of magnetically engaging an auxiliary spectacle frame, in which the primary frame includes a pair of ***"projections"*** for securing the primary frame magnetic members. *Id.* at 1363. The inventor's use of "projections" to secure the magnetic members solved the "decreased strength" problem suffered by prior art products in which the frames were excavated to "embed" the magnetic members. *Revolution Eyewear, Inc.*, 563 F.3d at 1367.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

The only issue left for trial was the amount of Contour's damages. *Id.* at 1364. After a four-day trial, a jury returned a verdict setting a royalty rate of 5% and awarding damages of $4,319,530 to Contour. *Id.* The District Court subsequently held that Revolution was entitled to absolute intervening rights and reduced the damages award by $125,964, but also rejected Revolution's equitable intervening rights defense. *Id.* at 1365. Specifically, the District Court held that Revolution had acted with unclean hands by continuing to sell the infringing products after learning of the April 2007 rulings on the cross-motions for summary judgment. *Id.* On February 25, 2008, the District Court entered final judgment awarding Contour damages in the amount of $4,193,567. *Revolution Eyewear, Inc.*, 563 F.3d at 365. The District Court also awarded Contour pre-judgment and post-judgment interest, and attorneys' fees based on Revolution's litigation misconduct, bringing the total award to about $5 million.

The District Court denied Revolution's motions for Judgment as a Matter of Law, for a new trial, and for remittitur. *Id.* On April 29, 2009, the Federal Circuit upheld the jury's damages award, and affirmed the District Court's rulings in all respects. *Id.* at 1374.

C.   **The Current Action**

Plaintiffs filed their Complaint in the action at issue on September 23, 2009, and subsequently served each defendant. Revolution and Defendant Gary Martin Zelman answered the Complaint on November 30, 2009, but on the same date, Defendants Hardy Way, LLC, formerly known as Hardy Life, LLC ("Hardy"), Marchon Eyewear, Inc. ("Marchon") and Nike, Inc. ("Nike") each moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). All of those motions are currently *sub judice*.

There can be no dispute that the Revolution products accused of infringement in this action all incorporate an auxiliary spectacle frame that is magnetically attached to a primary spectacle frame in which the primary frame magnets are ***embedded*** in the frame (rather than

3

being secured in "projections") (the "New Design"). The infringement issue in *Revolution I* involved Claim 22 of the original '545 Patent (directed to a ***primary spectacle frame***) and Revolution's "Old Design" products, in which the primary frame magnets were secured in "projections." In contrast, this action involves New Claims 23 and 35 of the re-examined '545 Patent (first issuing on March 3, 2009), both of which are directed to an ***auxiliary spectacle frame*** of the type incorporated into Revolution's "New Designs." New Claims 23 and 35 of the re-examined '545 Patent, as well as Plaintiffs' causes of action against Revolution for infringement of these claims, did not exist and could not have existed as of the February 25, 2008 date on which final judgment was entered in *Revolution I*.[2]

As alleged in the Complaint, three of the defendants in this action -- Revolution, Mr. Zelman and Marchon -- directly infringe New Claims 23 and 35 of the '545 Patent, both literally and under the doctrine of equivalents. *See* Compl. ¶¶ 16-17, 21-22, 37, 40.[3] The other two defendants, Hardy and Nike, infringe Claims 23 and 35 by knowingly inducing, aiding and abetting the above acts of patent infringement by Revolution and Marchon, respectively. *Id.* at ¶¶ 26, 31.

### D.   Plaintiffs' Proposed Scheduling Order And Revolution's Interrogatories

Pursuant to the Court's September 25, 2009 Order, on December 7, 2009, the parties filed a Joint Scheduling Report and Joint Proposed Scheduling Order. *See* D.E.# 29. One of the items that the Court required the parties to address in this submission is "the Number and Timing of Motions for Summary Judgment or Partial Summary Judgment." *Id.* at 2. Plaintiffs proposed

---

[2] The full text of Original Claim 23 of the '545 Patent, New Amended Claim 23 and New Claim 35 of the re-examined '545 Patent, and a detailed explanation as to the differences between these claims, is set forth in Plaintiffs' prior submissions. *See* D.E.# 47 at 5-7 (filed under seal); D.E.# 49 at 6-8.

[3] In addition, Mr. Zelman actively and knowingly aided and abetted Revolution's acts of patent infringement. Compl. ¶¶ 38-39.

4

that each party make a single motion for summary judgment at the close of discovery. *Id.* All of the Defendants, including Revolution, proposed that the Court "conduct a hearing in January 2010 to address Marchon and Nike's motion to dismiss on *res judicata* and, if necessary, ***special scheduling to resolve this defense expeditiously for all Defendants. [The Revolution Defendants] plan to file an early motion for summary judgment on this defense . . . .***" *Id.* at 2-3 (emphasis added).

On November 25, 2009, Revolution served Plaintiffs with a set of six contention interrogatories. As Revolution concedes on this motion, three of the interrogatories (Nos. 1, 4 and 5) "are specifically directed to" Revolution's *res judicata* defense. *See* Revolution Mem. at p. 2. Subsequently, on December 23, 2009, Revolution, Hardy and Mr. Zelman filed a motion for entry of a "special scheduling order" which grants them permission to file an early motion for summary judgment on *res judicata* grounds in light of the judgment in *Revolution I*, without prejudice to their right to file later summary judgment motions on other grounds. *See* D.E.# 38. Critically, although Revolution had already served contention interrogatories seeking discovery from Plaintiffs on the *res judicata* issue, Revolution repeatedly argued in its motion for a special scheduling order that the issue of *res judicata* could be resolved as a matter of law on summary judgment based on "clear and undisputed facts" -- in other words, that no discovery was necessary to resolve the issue. *Id.* at 3, 6, 8.

On January 14, 2010, Contour responded to Revolution's interrogatories in good faith based on its current information and knowledge, but without the benefit of having taken any discovery from Revolution. Decl. of Turk-Moore at Exh. 4. Following the meet and confer conference between the parties, Contour nonetheless committed to supplement its response to Interrogatory No. 1 by February 9, 2010. Decl. of Turk-Moore at Exh. 5 at 3. Revolution filed

5

this motion on February 4, 2010, seeking further detail as to Contour's responses to four of the six interrogatories -- Nos. 1, 2, 3, and 5. On February 9, 2010, as promised, Contour supplemented its response to Interrogatory No. 1. Decl. of Turk-Moore at Exh. 6.

## II.   ARGUMENT

### A.   Revolution's Motion Should Be Denied As Nothing More Than An Attempt To Waste Resources And Multiply These Proceedings

Revolution repeatedly represented to this Court in its pending motion for a "special scheduling order" that its *res judicata* defense is ripe for adjudication on summary judgment, without the need for discovery.[4] In this motion to compel, however, Revolution seeks to compel more detailed responses to Interrogatory Nos. 1, 4 and 5, which Revolution admits address the very same *res judicata* defense.

There can be no clearer inconsistency than a litigant asserting (a) on the one hand, that a cause of action should be immediately determined as a matter of law on a motion for summary judgment in light of a specific defense, and (b) on the other hand, that discovery is needed from the non-movant on the elements of the very same supposedly case-dispositive defense. An issue is either ripe for determination on summary judgment, or it is not.

Revolution's desire to engage in self-contradictory motion practice is wasteful of both this Court's and the parties' resources, and does nothing to further the efficient disposition of this action on the merits. Contour submits that Revolution's assertion of conflicting positions on the need for discovery as to its *res judicata* defense is being undertaken solely for purposes of

---

[4] Plaintiffs vigorously dispute this contention. In the interest of not burdening the Court with arguments that have already been presented in *two* fully briefed motions on Defendants' *res judicata* defenses (one by Revolution and one by Marchon), Contour refers the Court to those arguments at D.E.# 47 (filed under seal) and D.E.# 49, respectively, rather than respond in detail here to the repetitive arguments presented on pages 3-6 and 17-19 of Revolution's current brief.

6

harassment, and to make this case unnecessarily expensive for Plaintiffs to prosecute. For these reasons alone, Revolution's motion to compel should be denied in its entirety.

### B.  Contour's Interrogatory Responses Fully Comply With Rules 26 And 33

Revolution offers several complaints about the sufficiency of Contour's responses to Interrogatories No. 1, 2, 3, and 5, and seeks discovery sanctions against Contour.[5] These complaints are meritless, however, since Contour has provided complete and appropriate responses to Revolution's interrogatories. We address each interrogatory in turn.

#### 1.  Interrogatory No. 1

Interrogatory No. 1 asks Contour to identify all infringing Revolution products of which it is currently aware. Contour did so (Decl. of Turk-Moore, Exh. 4 at 4), but Revolution still challenged the response as non-specific. *See* Revolution Mem. at 7-8. Revolution neglects to advise the Court, however, that Contour supplemented its original response to Interrogatory No. 1 on February 9, 2010 to provide even further information regarding the products identified in its original response. Decl. of Turk-Moore at Exh. 5 at 3, Exh. 6.

Consistent with its litigation strategy, Revolution did not even wait for Contour's supplemental response, but instead filed its motion to compel on February 4, 2010. Revolution's argument as to Interrogatory No. 1 is now moot, and Revolution should not be allowed to waste

---

[5]  None of the cases cited by Revolution supports the imposition of such sanctions. *Q-Pharma, Inc. v. Andrew Jurgens Co.*, 360 F.3d 1295 (Fed. Cir. 2004), actually affirmed a District Court's refusal to impose discovery sanctions in a patent case, in light of the high standard of proving that a plaintiff's claims of infringement were frivolous. *Antonious v. Spalding & Evenflo Cos.*, 275 F.3d 1066 (Fed. Cir. 2002), went even further in reversing a District Court's imposition of discovery sanctions in a patent case; it held that plaintiff's attorneys' claim construction was not frivolous, and that the adequacy of plaintiff's pre-suit investigation was a proper subject of discovery. Finally, although *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981 (Fed. Cir. 2000), affirmed an award of discovery sanctions against a patent holder's law firm, the district court found that (a) the infringement contentions at issue there had no factual basis, (b) the patent holder had undertaken little inquiry before filing its infringement counterclaims, and (c) the patent holder had withdrawn its claims with respect to six of the eight patents in dispute. No similar facts are present here.

7

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

the Court's and Contour's time with a motion to compel. *See Armor Screen Corp. v. Storm Catcher, Inc.*, 2008 WL 4753358 *1-*2 (S.D. Fla. Oct. 29, 2008) (denying motion to compel defendants to provide supplemental responses to six document requests as moot, where electronic versions of responsive documents had already been produced, but plaintiff refused to withdraw motion).[6]

Revolution further argues that Contour somehow has an immediate duty to identify ***all*** Revolution products that might be subject to Plaintiffs' causes of action at trial -- notwithstanding the fact that Plaintiffs have not yet had any discovery from Revolution -- because "there is ample public information on Revolution's products." Revolution's Mem. at 8. This argument misstates Contour's discovery obligation. Contour is merely obligated to provide answers that "as a whole disclose a conscientious endeavor to understand the questions and to answer fully those questions as are proper," *Parrott v. Wilson*, 707 F.2d 1262, 1273 n.24 (11th Cir. 1983) (internal citation omitted), and then to timely supplement its responses as appropriate. *See* Fed. R. Civ. P. 26(e)(1)(A). Contour has met this burden through its original and supplemental responses to Interrogatory No. 1.

None of the cases cited by Revolution apply here. *Powell v. Home Depot USA, Inc.*, 2008 WL 2473748 (S.D. Fla. June 16, 2008), merely denied an objection that interrogatories in a patent infringement action regarding the existence of prior art, obviousness and product testing were premature and invalid on their face, and required the defendant to provide some substantive answer to the interrogatories. In both *Hendricks v. Mirabilis Ventures, Inc.*, 2008 WL 423566 (M.D. Fla. Feb. 13, 2008), and *Titre v. S.W. Bach & Co.*, 2005 WL 16992508 (S.D. Fla. July 20, 2005), a defendant refused outright to answer interrogatories that it claimed were premature

---

[6] Revolution's citation to *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977), is thus inapposite, as the precise discovery sought here was provided by Contour.

8

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

contention interrogatories. Both courts ordered the defendant to provide some answer to the interrogatories, but also recognized that because the cases were in the early stages of discovery, supplementation of the responses would be necessary. *Hendricks*, 2008 WL 423566 at *2; *Titre*, 2005 WL 16992508 at *3.

In contrast to these cases, Contour has responded to Interrogatory No. 1 with all information currently in its possession, custody or control. Moreover, as the *Hendricks* and *Titre* courts recognized, due to the early date on which Revolution served its interrogatories, Contour may further supplement its responses based on information it learns from Revolution during discovery.

### 2. <u>Interrogatory No. 2</u>

Interrogatory No. 2 reads as follows: "State the basis for your contention that the accused products have 'arms' and 'magnetic members adapted to extend across respective side portions of a primary spectacle frame', including without limitation the portions of the accused products that you contend meet this limitation, your proposed construction of this claim language and the factual and legal basis for this construction." Decl. of Turk-Moore, Exh. 4 at 5. Contour responded:

> Contour objects to this Interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this Interrogatory on the ground that it calls for Contour to state legal conclusions on claim construction. Moreover, Contour further objects to this Interrogatory on the ground that it is premature, as factual contentions can only be formed after the completion of all discovery in this action.

> Without waiver of these objections, Contour further responds as follows: A visual examination of the products identified in response to Interrogatory No. 1 reveals that each product includes an auxiliary spectacle frame, and each auxiliary frame includes an arm located at each side portion of the frame and extending rearward of the lens rims. Each auxiliary frame arm includes a magnetic member, and each arm is adapted to extend across respective side portions of a primary spectacle frame when the auxiliary frame is magnetically attached to the primary frame.

9

(*Id.*).

Contour's answer meets every aspect of Interrogatory No. 2, by explaining that (a) its response is based on a visual inspection of the specific infringing Revolution products identified in response to Interrogatory No. 1, which revealed that (b) each such product includes an auxiliary spectacle frame, that (c) each such auxiliary frame includes an arm located at each side portion of the frame and extending rearward of the lens rims, and (d) that each such auxiliary frame arm (i) includes a magnetic member, and (ii) that each magnetic member is adapted to extend across respective side portions of a primary spectacle frame when the auxiliary frame is magnetically attached to the primary frame.

Revolution challenges Contour's response as "merely a regurgitation of the claim language." *See* Revolution Mem. at 10. Revolution is wrong. Contour's response tells Revolution exactly where the "arms" are located on the accused products -- *i.e.*, "each auxiliary frame includes an arm located at each side portion of the frame and extending rearward of the lens rims," and does not just repeat the claim language. Decl. of Turk-Moore, Exh. 4 at 5. In addition, Revolution cannot claim ignorance as to whether its accused auxiliary frames have "arms," whether the arms include "magnetic members," or whether the magnetic members are "adapted to extend across respective side portions of a primary spectacle frame." Indeed, Revolution marks the accused products with its own U.S. Patent No. 6,705,722 ("the '722 patent") (Decl. of Turk-Moore at Exh. 7), and the '722 patent illustrates and describes all the features referenced by Revolution in Interrogatory No. 1. Figure 1 of the '722 patent is reproduced below:

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com



As shown in Figure 1, Revolution's auxiliary frame is designated generally by the reference numeral 10, the auxiliary frame has an arm 18 located at each side portion of the frame and extending rearward of the lens rims, and each arm 18 includes a magnetic member 26. Decl. of Turk-Moore at Exh. 7 at column 5, lines 12-21.[7] Figure 2 is also instructive:



---

[7] The Figures of the '722 patent show projections on the primary frame. Nevertheless, Revolution marks its accused New Design products with the '722 patent number, and we discuss this patent simply to illustrate Revolution's feigned ignorance as to simple terminology used in the asserted '545 Patent claims.

11

As shown in Figure 2, Revolution's accused auxiliary frame can be magnetically attached to a primary spectacle frame 12, and the auxiliary frame magnetic members are adapted to extend across respective side portions of the primary frame.[8]

As shown above, Contour properly objected to the portion of Interrogatory No. 2 seeking Contour's "proposed construction of this claim language and the factual and legal basis for this construction," on the ground that it "calls for Contour to state legal conclusions on claim construction," and as premature because "factual contentions can only be formed after the completion of all discovery in this action." Decl. of Turk-Moore Exh. 4 at 5. The parties should not have to interpret each and every word of every claim allegedly infringed.

The vast majority of the terms in asserted Claims 23 and 35 are ordinary English words and phrases, whose definitions should not be subject to dispute -- *e.g.*, "frame," "lenses," "front side," "rear side," "oppositely positioned," "arms," "extended therefrom," "rearwardly directed," "free end," "securing," "magnetic member," "horizontal surface," "secured" "pair" of magnetic members "adapted," "extend across," "side portions," "vertically engage," and "corresponding." Revolution cannot seriously contend that it needs Contour to tell it what all these words mean, or that there can be genuine claim construction disputes as to any of them.

Based on the Court's Order Setting Civil Jury Trial Date and Pretrial Deadlines (D.E.# 59 -- "Scheduling Order"), the parties can focus on what turn out to be the *real* claim construction disputes in this case, rather than forcing the parties to interpret each and every word of the asserted claims just for the sake of multiplying the cost of the litigation.[9]

---

[8] Revolution offers no evidentiary support for the meritless proposition that Contour is deliberately refusing to "provide its construction of the identified claim language because it necessarily conflicts with the claim construction rendered in" *Revolution I*. Revolution Mem. at 12.

[9] The cases cited by Revolution impose no greater discovery obligation on Contour. The Court in *Omegapatents, LLC v. Lear Corp.*, 2008 WL 719295 *2 (M.D. Fla. Mar. 14, 2008), noted that

12

### 3. Interrogatory No. 3

Interrogatory No. 3 asks Contour to state its infringement contentions and, on an element-by-element basis, to explain how each element is met by each Revolution product at issue, to state whether the infringement is literal or under the doctrine of equivalents, and to explain how the test of equivalency is satisfied. Contour responded by providing claim charts, which show the literal correspondence between each element of Claims 23 and 35 and the products identified in response to Interrogatory No. 1. Decl. of Turk-Moore, Exh. 4 at 5-7.

As it did with respect to Contour's answer to Interrogatory No. 2, Revolution argues that Contour's claim charts are deficient because Contour "merely regurgitated the claim language in describing unspecified products of Revolution." *See* Revolution Mem. at 15. Again, Revolution is wrong. As can be seen from the response, Contour stated that its claim charts relate to "all of the brands of magnetic clip-on eyewear with similar designs as those identified in Response to Interrogatory No. 1, that were made, used, sold, or offered for sale by the Revolution Defendants." Further, Contour's claim charts elaborate on the meaning of terms and phrases such as "auxiliary spectacle frame," auxiliary lenses," "front side," "rear side," "rearwardly directed free end," "horizontal surface," and "vertically engage," beyond the exact wording of Claims 23 and 35. Decl. of Turk-Moore, Exh. 4 at 5-7.

---

"contention interrogatories are often disfavored," yet required a defendant to respond to such interrogatories identifying specific claim elements that it claimed were lacking in its products -- after it had taken discovery from plaintiff. Here, discovery has not proceeded to the point here where such "disfavored" contention interrogatories are appropriate. *General Elec. Co. v. DRSystems, Inc.*, 2007 WL 1573625 *2 (E.D.N.Y. May 25, 2007), actually supports Contour's position, as that Court ordered the precise sort of separate claim construction discovery that Plaintiffs have proposed here. Finally, *WhitServe LLC v. Computer Patent Annuities N. Am., LLC*, 2006 WL 1273740 (D. Conn. May 9, 2006), did not involve a situation, such as this one, in which a party proposed separate claim construction discovery and its adversary prematurely served broader discovery, nor did that Court require plaintiff to construe every single word in the claim, as Revolution seeks here.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

To the extent that Revolution's position here focuses on Contour's supposed failure to identify all possible infringing Revolution products in response to Interrogatory No. 1, that issue has been fully addressed and mooted by Contour's supplemental response to the interrogatory, which identifies all infringing products reasonably within Contour's knowledge at the present time. Contour made Revolution well aware that it would be supplementing its response to Interrogatory No. 1, and gave Revolution a date certain for doing so. Revolution, however, was dead set on filing its motion to compel, and forcing Contour to spend money opposing it, and thus did not care to wait to receive the supplemental response to Interrogatory No. 1 before rushing to Court.

Further, Interrogatory No. 4 is properly objectionable, because it seeks Contour's construction of each and every term of asserted Claims 23 and 35. As discussed above in connection with Interrogatory No. 2, the parties should not have to interpret each and every word of every claim allegedly infringed. The Court's Scheduling Order (D.E.# 59) will allow the parties to focus on what turn out to be the real claim construction disputes in this case, rather than forcing the parties to interpret each and every word of the asserted claims just for the sake of multiplying the cost of this litigation.

### 4. Interrogatory No. 5

Interrogatory No. 5 states: "On an element-by-element basis for each asserted claim in the Florida Action, state all differences between the auxiliary spectacle frames of the accused product in the Florida Action and the auxiliary spectacle frame of the accused product in the California Action [*i.e., Revolution I*]." Decl. of Turk-Moore, Exh. 4 at 8. Because Interrogatory No. 5 is wholly improper, Contour objected to it on numerous grounds, including (a) relevance, (b) prematurity in light of the absence of discovery from Revolution, (c) improper shifting of the

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

burden of proof to Contour on the elements of Revolution's *res judicata* defense, and (d) the undue breadth of the Interrogatory, which necessarily encompasses legal analyses by Plaintiffs' counsel that are, by their very nature, protected by the attorney-client privilege and work product doctrine. Decl. of Turk-Moore, Exh. 4 at 8-9. Further, the interrogatory necessarily requires Contour to construe each and every element of Claims 23 and 35, which, as discussed, Contour should not have to do.

Interrogatory No. 5 essentially asks Contour to prove Revolution's *res judicata* defense for it by requiring Contour to accept the very legal theory upon which that defense is premised. This is improper because, as explained above, Contour vigorously disputes Revolution's legal theory. In particular, the parties disagree strongly as to the relevance of any supposed similarities between the auxiliary frames used on the infringing Revolution products here and those used on the infringing Revolution products at issue in *Revolution I*. That issue, however, lies at the heart of Interrogatory No. 5.

Revolution's only argument is that Contour should be required to undertake the claim construction, legal and factual analyses required by answering Interrogatory No. 5 because Revolution deems this relevant to its *res judicata* defense. Revolution Mem. at 17-18. Tellingly, Interrogatory No. 5 does not ask Contour if it ***contends that there are differences*** between the auxiliary frames used on the infringing Revolution products in the current and prior actions. In fact, Contour has made no such contention one way or the other because it considers this issue to be irrelevant. Rather, Revolution asks Contour to ***state the differences*** between the prior and current auxiliary frames, thus implying the correctness and relevance of Revolution's *res judicata* contentions. Such loaded interrogatories, that attempt to shift the burden of proof on a claim or defense to the responding party, are improper. *See, e.g., In re Vitamins Antitrust Litig.*,

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

120 F. Supp. 2d 45, 57-58 (D.D.C. 2000) (granting defendants' motion for protective order, and holding that defendants need not answer an interrogatory that would have improperly shifted the burden of proof to defendants on the viability of their personal jurisdiction defenses before plaintiff made a required contrary certification).

Revolution also seeks a ruling that Contour has waived the attorney-client privilege with respect to Interrogatory No. 5, because it failed to produce a privilege log of all the communications it may have had with counsel regarding the subject matter of the interrogatory. Revolution Mem. at 19. This argument is frivolous. Indeed, Revolution cites no authority requiring a party to log such obviously privileged, core attorney-client communications that regularly take place throughout a hotly contested litigation.

In fact, some Federal Courts have expressly held that disclosure on a formal privilege log of such ordinary course privileged communications is entirely unnecessary. *See, e.g., In re Papst Licensing, GmbH Patent Litig.*, 2001 WL 1135268 *2 (E.D. La. Sept. 19, 2001) (court "found no reason to require a detailed document-by-document log" of "all communications between defense counsel concerning the lawsuit."). Indeed, to hold otherwise would likely require the parties to waste resources by exchanging lengthy logs of all such communications on a daily, weekly or monthly basis.

In any event, a party's failure to immediately produce a privilege log on demand does not waive the attorney-client privilege. *See FDIC v. Cherry, Bekaert & Holland*, 131 F.R.D. 596, 606-07 (M.D. Fla. 1990) ("failure to assert the attorney-client privilege in a timely manner does not waive the privilege even when the privilege is asserted for the first time in a motion for reconsideration of a district court's order to produce") (citing *Southern Ry. Co. v. Lanham*, 403

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

F.2d 119, 133-34 (5th Cir. 1968)). It would therefore be clear legal error for this Court to impose the draconian sanction of waiver requested by Revolution.

### III. CONCLUSION

For the above reasons, Revolution's motion to compel should be denied.

Dated: February 22, 2010

Respectfully submitted,

By: /s/ Jacqueline Becerra
Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

And

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.
and Contour Optik, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of February 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/EFC or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Jacqueline Becerra
JACQUELINE BECERRA

## SERVICE LIST

Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants Hardy Way, LLC, Revolution Eyewear, Inc. and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants Revolution Eyewear, Inc. and Gary Martin Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants Marchon Eyewear, Inc. and Nike, Inc.*

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com