# EXHIBIT 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

    Defendants.
_____/

**PLAINTIFF CONTOUR OPTIK, INC.'S NOTICE OF SERVING UNEXECUTED RESPONSES TO DEFENDANT REVOLUTION EYEWEAR, INC.'S FIRST SET OF INTERROGATORIES**

Plaintiff, Contour Optik, Inc., by and through undersigned counsel, hereby gives notice of having served unexecuted responses to Defendant Revolution Eyewear, Inc.'s First Set of Interrogatories.

Respectfully submitted,

By: _____
Jacqueline Becerra
Florida Bar No. 025135
Ericka Turk-Moore
Florida Bar No. 0038198
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: BecerraJ@gtlaw.com
        TurkMooreE@gtlaw.com

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

and

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 15<u>th</u> day of January, 2010, the foregoing document is being served on all counsel of record on the attached Service List *via facsimile and first class U.S. Mail*.

*/s/ Ericka Turk-Moore*
Ericka Turk-Moore

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com


Case 0:09-cv-61515-MGC   Document 61-5   Entered on FLSD Docket 02/22/2010   Page 4 of 15

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

## SERVICE LIST

*Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,*
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@feldmangale.com
Feldman Gale, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-397-0798
Facsimile: 305-358-3309

*Attorneys for Defendants
Hardy Way, LLC, Revolution Eyewear, Inc.
and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants
Revolution Eyewear, Inc. and Gary Martin
Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants
Marchon Eyewear, Inc. and Nike, Inc.*

3

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

    Defendants.
_____/

## PLAINTIFF CONTOUR OPTIK, INC.'S RESPONSES TO DEFENDANT REVOLUTION EYEWEAR, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Contour Optik, Inc. ("Contour") responds to the First Set of Interrogatories of Defendant Revolution Eyewear, Inc. ("Revolution"), as follows:

### GENERAL OBJECTIONS

1. Contour objects to these Interrogatories to the extent they attempt to impose obligations on it other than those authorized or imposed by the applicable laws, the Federal Rules of Civil Procedure or the Local Civil Rules of the United States District Court for the Southern District of Florida.

2. Contour objects to Revolution's Definition of U.S. Patent No. US RE37,545, entitled "Auxiliary Lenses for Eyeglasses" (the "'545 Patent"), and thus the implication contained therein that the original '545 Patent is the patent at issue in this case. On February 12, 2002, the U.S. Patent Office issued the '545 Patent. Following a September 13, 2007

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

request for re-examination of certain claims of the '545 Patent, the Patent Office issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which reconfirmed the patentability of all of the original claims of the '545 Patent, and included a New Claim 23, and a New Claim 35. Thus, the patent at issue in this case is not the original '545 Patent, but instead, a re-examined, and re-confirmed '545 Patent with new Claims 23 and 35. Contour will respond to these Interrogatories based on this definition of the '545 Patent -- that is, a re-examined and re-confirmed '545 Patent with new Claims 23 and 35.

    3. Contour objects to these Interrogatories to the extent that they are overbroad, unduly burdensome and seek information that is not relevant to Contour's claims that Revolution infringed the '545 Patent.

    4. Contour objects to these Interrogatories, including the Definitions therein, to the extent that they are overbroad or purport to require it to supply information which is not within its possession, custody or control. Contour will undertake reasonable efforts and make diligent inquiries to obtain and provide information responsive to these Interrogatories, to the extent the information requested is not otherwise objectionable or privileged. Much of that effort, however, will necessarily follow discovery from the Defendants in this action.

    5. Contour objects to these Interrogatories to the extent that they seek information immune from discovery by the attorney-client privilege, the attorney work product doctrine or any other applicable privileges. Contour will not provide any privileged or work product information in response to these Interrogatories. If any privileged or work product information is produced, such production is inadvertent and is not intended, and Contour expressly reserves the right to withdraw that information from discovery without any consequence whatsoever.

2

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

6. Contour objects to these Interrogatories to the extent that they are unreasonably cumulative, duplicative or intended to harass, or are not relevant to the subject matter of this action, as set forth in the parties' pleadings, and not reasonably calculated to lead to the discovery of admissible evidence.

7. Contour objects to these Interrogatories as premature, and not authorized by any Scheduling Order of the Court or consensual agreement of the parties regarding the current scope of discovery. In particular, pursuant to the Court's September 25, 2009 Order, on December 7, 2009, the parties filed a Joint Scheduling Report and Joint Proposed Scheduling Order. One of the items that the Court required the parties to address in this submission is the timing of service of and responses to interrogatories and other written discovery on various issues in dispute. The parties were unable to reach agreement on this issue and submitted competing proposals. No Rule 16(b) initial pretrial conference has been held, and the Magistrate Judge has not yet resolved the parties' disputes in the Proposed Scheduling Order or entered his own Scheduling Order.

8. By responding to these Interrogatories, Contour does not concede that any of its Responses are or will be admissible evidence at trial or at any hearing in this action. In responding to these Interrogatories, Contour does not waive any objection, on any ground, including but not limited to competence, privilege, relevance, materiality, hearsay, or to the use of any such information for any purpose, in whole or in part, in any stage or proceeding in this action or any other action. All of Contour's Responses set forth below are made subject to the above qualifications.

9. Contour states that these Responses are accurate as of the date made, to the best of its information, knowledge and belief. These Responses are given without prejudice to using

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

or relying on at trial or at any hearing subsequently discovered information, or information omitted from these Responses, and Contour reserves the right to produce additional evidence at trial or at any hearing, and to object on appropriate grounds to the introduction at any trial or hearing of any information included in these Responses.

10. The above General Objections are incorporated by reference into each Response to each specific Interrogatory below as if fully set forth therein. The provision of any Response is not and should not be deemed to be a waiver of the above General Objections or of any specific objection set forth in Response to any specific Interrogatory.

## RESPONSES TO INTERROGATORIES

### INTERROGATORY NO. 1

Identify by name and all other available commercial designations each accused product in the Florida Action.

### RESPONSE TO INTERROGATORY NO. 1

Contour objects to this Interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this Interrogatory on the ground that it is premature, as Contour will be unable to comprehensively identify each infringing Revolution product at issue until after the completion of fact discovery from Revolution and Defendants Hardy Way, LLC, formerly known as Hardy Life, LLC ("Hardy") and Gary Martin Zelman (collectively, the "Revolution Defendants"). Without waiver of these objections, Contour responds as follows: As presently advised, the Revolution Defendants have made, used, sold, or offered for sale various brands of magnetic clip-on eyewear that satisfy every element of Claims 23 and 35 of the '545 Patent. Such products include, without limitation, Bling Bling Clips, Alter Egos, Revolution Kids, Ed Hardy, Revolution, Revolution Airs, Revolution Titanium, and That's So Raven branded magnetic clip-on eyewear.

4

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

## INTERROGATORY NO. 2

State the basis for your contention that the accused products have "arms" and "magnetic members adapted to extend across respective side portions of a primary spectacle frame," including without limitation the portions of the accused products that you contend meet this limitation, your proposed construction of this claim language and the factual and legal basis for this construction.

## RESPONSE TO INTERROGATORY NO. 2

Contour objects to this Interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this Interrogatory on the ground that it calls for Contour to state legal conclusions on claim construction. Moreover, Contour further objects to this Interrogatory on the ground that it is premature, as factual contentions can only be formed after the completion of all discovery in this action.

Without waiver of these objections, Contour further responds as follows: A visual examination of the products identified in response to Interrogatory No. 1 reveals that each product includes an auxiliary spectacle frame, and each auxiliary frame includes an arm located at each side portion of the frame and extending rearward of lens rims. Each auxiliary frame arm includes a magnetic member, and each arm is adapted to extend across respective side portions of a primary spectacle frame when the auxiliary frame is magnetically attached to the primary frame.

## INTERROGATORY NO. 3

For each accused product in the Florida Action, state your infringement contentions, including without limitation the claims that you contend Revolution has infringed and, on an element-by-element basis, how each element is met by the accused product, whether the alleged infringement has been literal or under the doctrine of equivalents, and how the test of equivalency is satisfied.

## RESPONSE TO INTERROGATORY NO. 3

Contour objects to this Interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this Interrogatory on the ground that it calls for

5

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

Contour to state legal conclusions on claim construction. Moreover, Contour further objects to this Interrogatory on the ground that it is premature, as factual contentions can only be formed after the completion of all discovery in this action. In particular, Contour cannot respond to this Interrogatory as currently drafted without full discovery from the Revolution Defendants, including with respect to all of the brands of magnetic clip-on eyewear with similar designs as those identified in Response to Interrogatory No. 1, that were made, used, sold, or offered for sale by the Revolution Defendants.

Without waiver of these objections, Contour responds with the following claim charts, showing literal correspondence between the products identified in response to Interrogatory No. 3 and asserted Claims 23 and 35:

| **Claim 23** | **Revolution Products Indentified In Response To Interrogatory No. 1** |
|---|---|
| An eyeglass device comprising: | |
| An auxiliary spectacle frame for supporting auxiliary lenses therein, | Each of Revolution's products includes an auxiliary spectacle frame (*e.g.*, a sunglass frame) for supporting auxiliary lenses (*e.g.*, sunglass lenses) therein. Each auxiliary spectacle frame is an eyeglass device. |
| said frame including a front side, a rear side, and oppositely positioned side portions, | Each of Revolution's auxiliary frames includes a front side (the front side of the frame when worn), a rear side (the side generally opposite the front side), and oppositely positioned side portions disposed substantially at the outer ends of the frame. |
| each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, | Each side portion of Revolution's auxiliary frame has an arm extended therefrom, and each arm has a rearwardly directed free end (*i.e.*, an end that extends substantially rearward of the lenses and is not attached to the side portions of the frame) that secures a magnetic member having a horizontal surface (*i.e.*, a surface in a substantially horizontal plane when the frame is worn). |

6

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

| | |
|---|---|
| and a pair of magnetic members respectively secured in the free ends of said arms, | Each of Revolution's auxiliary frames has a magnetic member secured in the free end of each arm. |
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. | The arms with secured magnetic members of each Revolution auxiliary frame are adapted to extend across respective side portions of a primary spectacle frame so that the auxiliary frame magnetic members can vertically engage (*i.e.*, from a direction in a substantially vertical plane when the frame is worn) corresponding magnetic surfaces when placed on a primary spectacle frame. |
| **Claim 35** | **Revolution Products Indentified In Response To Interrogatory No. 1** |
| The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets. | Each of Revolution's auxiliary spectacle frames includes all the requirements of Claim 23. The magnetic members of Revolution's auxiliary spectacle frame are magnets. |

## INTERROGATORY NO. 4

Identify by name and all other available commercial designations each accused product that was the subject of Contour's counterclaim in the California Action.

## RESPONSE TO INTERROGATORY NO. 4

Contour objects to this Interrogatory on the ground that it calls for information that is equally available to Revolution through its participation in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Case No. 02-cv-1087 (C.D. Cal.) ("*Revolution I*"), and is therefore unreasonably cumulative, duplicative and intended to harass Contour. Without waiver of these objections, Contour responds as follows: The Revolution products at issue in *Revolution I* were designated IMF and IMFT, and are described in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 2007 WL 6892109 *3-*4 (C.D. Cal. Apr. 30, 2007).

7

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

## INTERROGATORY NO. 5

On an element-by-element basis for each asserted claim in the Florida Action, state all differences between the auxiliary spectacle frames of the accused product in the Florida Action and the auxiliary spectacle frame of the accused product in the California Action.

## RESPONSE TO INTERROGATORY NO. 5

Contour objects to this Interrogatory as seeking information irrelevant to any claim or defenses in this action, and not reasonably calculated to lead to the discovery of admissible evidence. Contour further objects to this Interrogatory on the ground that it is premature, as Contour cannot respond to this Interrogatory as currently drafted without full discovery from the Revolution Defendants, including with respect to all of the brands of magnetic clip-on eyewear with similar designs as those identified in Response to Interrogatory No. 1, that were made, used, sold, or offered for sale by the Revolution Defendants.

Contour further objects to this interrogatory on the ground that it seeks to impose a burden on Contour to undertake an analysis of Revolution's eyewear that Contour has no discovery obligation to undertake, for the following reasons: (1) the IMF and IMFT frames at issue in *Revolution I* are not at issue in this action; (2) the Revolution auxiliary frames at issue in this action were not at issue in *Revolution I*; (3) Contour did not assert original claim 23 of the '545 Patent in *Revolution I*, nor was any auxiliary frame claim asserted in *Revolution I*; and (4) New Claims 23 and 35 of the '545 Patent asserted in this action did not exist during pendency of *Revolution I*. If Revolution wants to assert some irrelevant structural correspondence between its IMF and IMFT auxiliary frames and the auxiliary frames accused of infringement in this action, it can do so, but Contour has no discovery obligation to do so.

8

Contour further objects to this Interrogatory to the extent that it seeks analyses of the causes of action asserted by Contour and Plaintiff Aspex Eyewear, Inc. in *Revolution I*, as all such analyses were and are protected from discovery in both *Revolution I* and in this action by the attorney-client privilege and the work product doctrine.

### INTERROGATORY NO. 6

Please state all facts upon which you base your contention that Hardy Life, LLC induced infringement of the '545 patent, including without limitation the basis for your contention that Hardy Life "actively and knowingly aided and abetted Revolution's direct infringement of claims 23 and 35 of the '545 patent.

### RESPONSE TO INTERROGATORY NO. 6

Contour objects to this Interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this Interrogatory on the ground that it is premature, as factual contentions can only be formed after the completion of all discovery in this action.

Without waiver of these objections, Contour further responds as follows: Hardy is well aware of the '545 Patent at issue in this case, and as a licensor of its brand names, Hardy has an inherent interest in exercising quality control over its licensee's goods and services. Such control is necessary to protect the licensor's reputation for marketing goods and services of a certain level of quality, upon which consumers rely in making purchasing decisions. In addition, failure to exercise such control leaves the licensor vulnerable to a later challenge by its licensee or its competitors that it has abandoned its intellectual property rights, and thus to the cancellation of those rights. Thus, when dealing with forms of licensed intellectual property, such as trademarks and brand names, it is customary for a licensor to actively supervise development, production, distribution, and marketing of any product that carries its brand, and to detail its rights to actively supervise these activities in its licensing agreements with licensees of the property.

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

Typically, such licensing agreements will allow the licensor to specify the manner in which its intellectual property will be used on or in connection with the licensee's goods and services and on all advertising and promotional materials. Such agreements also typically require the licensee to obtain the licensor's permission before using any new presentation of the intellectual property. With respect to quality control, and to avoid a finding that the licensor has only granted a "naked license," licensing agreements typically provide the licensor with a right of access to the licensee's facilities, raw materials, finished products, personnel, and records to monitor the licensee's adherence to the licensor's quality standards.

Contour therefore believes that such a level of control exists here over Revolution's actions with respect to products bearing the Hardy brand name. In fact, Contour's counsel wrote to Hardy's counsel on November 25, 2009, and suggested that, if Hardy believes that the allegations pleaded in the Complaint are incorrect and maintains that Hardy did not follow the above industry standard, Hardy provide Contour with a copy of its licensing agreement with Revolution, so that Contour can re-evaluate the allegations against Hardy. Hardy has not produced the agreement, or disputed Contour's interpretation of it.

By virtue of its license agreement with Hardy, Revolution has obviously demonstrated a significant motivation and desire to sell its infringing eyewear under the Hardy brand name. Revolution's sales constitute a direct infringement of New Claims 23 and 35 of the '545 Patent. Given Revolution's motivation to license Hardy's brand name for the infringing products, by exercising control over Revolution's products as outlined above as a condition to Hardy licensing its brand name, and continuing these licensing efforts with

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

knowledge of the '545 Patent, Hardy has actively aided and abetted Revolution's direct infringement of the '545 Patent; and thus is liable for inducement of infringement.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com