# EXHIBIT 5



Jacqueline Becerra
Tel. (305) 579-0534
Fax (305) 579-0717
becerraj@gtlaw.com

February 2, 2010

*Via Facsimile & U.S. Mail*

Jennifer A. Trusso, Esq.
Sheppard Mullin Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626

Re: Aspex Eyewear et al. v. Marchon Eyewear et al.
Case No. 09-CIV-61515-Cooke/Bandsta (S.D. Fl)

Dear Ms. Trusso:

I write in response to your January 27, 2010 letter addressed to me and to my partner, Mr. Nicodema. Although your letter contained the unilaterally imposed "deadline" that we respond by Sunday, January 31, 2010, I informed you immediately upon my receipt of the letter that we would not be able to respond in the 48 hours provided, and advised that we would respond by today, February 2, 2010. You responded to my email that this was not acceptable and that you would file your motion to compel without the benefit of our response (despite the fact that, under the Local Rules, your motion would not be due before February 16, 2010, and we agreed to provide you with more time if needed). Although we fully expect that you will file the motion to compel in derogation of the meet and confer process that is required by the Local Rules, your letter contains several mischaracterizations that need to be addressed. I am responding accordingly.

First, we have taken every step and made every effort to confer with you in good faith. Contour's responses to Revolution's interrogatories were served on January 14, 2010. On January 20, 2010, you e-mailed us a request to meet and confer about the responses, but provided no detail as to the issues you wished to discuss. Based on the wording of your e-mail, we assumed that the call was about one discrete issue -- the verification of the interrogatory responses. The call was set for the morning of January 22, 2010. As I previously explained to you, I was unable to make the call because of a family health issue that arose that very morning. My colleague, Lennie Bersh, participated in the call, but was unaware that I would not be able to join him. It is astounding that in light of the circumstances that lead me to miss that call that you are continuing to make an issue of this.

Among other things, my unavailability for that call posed no prejudice to Revolution. In fact, I accepted an e-mail invitation to reschedule the call for 5:00 p.m. that same day. After I did so, Mr. Bersh advised me that you had a number of issues with our responses, which you

Jennifer A. Trusso, Esq.
Sheppard Mullin Richter & Hampton LLP
February 2, 2010
Page 2

chose to raise for the first time in my absence. By the time I was made aware of this, I had already left for a meeting outside of the office -- a meeting I was planning to excuse myself from to take the 5:00 p.m. call given that I believed that the nature of the call was to address a fairly easy issue (the verification of the responses) that would require little time. When, however, I realized that Revolution had several additional substantive issues with respect to Contour's interrogatory responses, I proposed that we reschedule the call for early the following week, as I did not have my file or my notes with me and was not at a location where I could meaningfully discuss those issues. Your partner, Stephen Hanle, refused to change the time of the call -- even though I later learned that he was on a ski trip that afternoon and would not be participating in the call in any event. I also asked your firm to provide me with a list of the issues you planned to raise. Neither you nor Mr. Hanle did so. As a courtesy, I nevertheless called in at 5:00 p.m. even after I had advised you that I did not have my file, that I would prefer to reschedule the call and that it would be best to know what issues you would be raising before the call so that I could by prepared. Instead, we proceeded with this call despite the fact that I had not choice but to take the call while I was standing in the kitchen of a hotel room trying to take notes over the sound of the kitchen staff and the traffic that could be heard in the background (as you were driving and on your speakerphone). Clearly, this was not the most productive of circumstances.

You claim that my need to confer with my colleagues and client before responding substantively to the new issues that you raised on the call is an indication of bad faith on Contour's part. This argument borders on the frivolous, as it would have been impossible for me to provide substantive response without knowing the issues or having my file in front of me. Again, I could have conferred with my colleagues and client before our call if I had Revolution's concerns in writing in advance of the call.

Needless to say, the 5:00 p.m. call was so unproductive and contrary to Revolution's good faith, meet and confer obligations under the Local Rules that I called you the following work day, January 25, to discuss the matter and to try to come to some agreement as to how we might conduct ourselves more productively in the future. Judging by your letter, that call was a wasted effort. On January 25, 2010, you advised me that I would be receiving a letter later that day outlining the issues that we had discussed. Two days later, on January 27, 2010, I asked you whether we would be receiving and when as I had not yet received anything. Indeed, I had not prepared a written response to our "meet and confer" because it seemed logical to respond only to a single letter from you.

As we understand Revolution's position, all actions by Plaintiffs are in bad faith unless they dismiss this suit and agree to pay Revolution's attorneys' fees. This is clearly not productive. I appreciate that this will be a hotly contested case, and can also appreciate zealous advocacy for a client. However, threats and allegations of this nature are unwarranted, unproductive and cause further delay and wasted effort.

On our call, you expressed frustration that my partner, Michael Nicodema, was unavailable to personally discuss certain issues with Revolution's counsel. However, as we

Jennifer A. Trusso, Esq.
Sheppard Mullin Richter & Hampton LLP
February 2, 2010
Page 3

advised you on multiple occasions, Mr. Nicodema was in trial, and every one of defendants' concerns was addressed by either me or my partner, Barry Schindler. Revolution may not have liked our answers, but your suggestion that we have not been responsive is not accurate. Moreover, it is frankly none of Revolution's concern as to how my firm and our clients choose to staff this case. That insistence that Mr. Nicodema deal with you personally on each and every issue is patently unreasonable.

Having now addressed the almost three pages of non-substantive matters that you raised in your letter, below is our response to the substantive matters. We have done so in no particular order.

### Unexecuted Interrogatory Responses

You should have now received our executed responses. Revolution's position that Plaintiffs have waived our objections is frivolous and requires no further response.

### Privilege Log

This issue apparently relates to a reference in Contour's response to Interrogatory No. 5 regarding analyses of the merits of the claims and counterclaims asserted in the prior litigation between our clients in the U.S. District Court for the Central District of California. All of these analyses took place between counsel of record in that action and our clients, and to the best of our knowledge, none were memorialized in any memoranda or similar hard copy documents. There is no need to document any e-mails and other oral communications on a privilege log, and we are certain that Revolution similarly would not agree to do so with respect to advice received from its counsel regarding the lawsuit.

### Relevance of Interrogatory No. 5

Contour's responses and objection to Interrogatory No. 5 are proper, and we have provided a complete response. Accordingly, we stand by the response and all of Contour's objections.

### Claim Construction/Providing Information on Specific Products as to Interrogatory Nos. 1-5

We will provide you with the identifying information for those products which Plaintiffs have already identified as infringing. However, such a response would necessarily be subject to amendment seeing that the discovery in this case has just begun. We will provide you with that identifying information by February 9, 2010. Indeed, in light of the fact that discovery in this case is still ongoing, Contour reserves its right to amend and supplement these responses as the law and the Federal and Local Rules allow and require. Accordingly, we stand by our objections as to the prematurity of these Interrogatories.

Jennifer A. Trusso, Esq.
Sheppard Mullin Richter & Hampton LLP
February 2, 2010
Page 4

### Request for Comparison between the California and Florida Actions in Interrogatory Nos. 4-5

Contour is under no obligation to provide the sort of comparison requested in these Interrogatories, or to produce documents from the prior action that are already in Revolution's possession, custody and control. In addition, these Interrogatories are wholly inconsistent with the position that you have taken on Revolution's motion for a "special scheduling order" allowing it to make an "early" summary judgment motion on the issue of *res judicata*. According to the position taken in that motion, no such discovery of Contour is necessary. Are you willing to withdraw that motion?

### Interrogatory No. 6

This Interrogatory seeks information regarding the basis for Plaintiffs' allegations of inducement of infringement against Hardy. As an initial matter, Hardy has not answered the Complaint, and is currently not entitled to any discovery. Nonetheless, we stand by the sufficiency of Contour's response to Interrogatory No. 6.

Sincerely,

/s/
Jacqueline Becerra

*MIA 181,057,138v1 2-2-10*