**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 09-61515-CIV-COOKE
MAGISTRATE JUDGE BANDSTRA**

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

       Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

       Defendants.

**MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS
REVOLUTION EYEWEAR, INC. AND GARY MARTIN ZELMAN**

## I. INTRODUCTION

Defendants Revolution Eyewear, Inc. and Gary Martin Zelman (collectively "Defendants") hereby move for summary judgment on counts II and V of plaintiffs' complaint for patent infringement, and Defendants' first affirmative defense and first counterclaim for non-infringement. Plaintiffs have asserted claims against Revolution for infringement of U.S. Patent No. RE 37,545, and against Zelman for infringement and inducing Revolution's infringement.[1] As conclusively established below, Plaintiffs' claims are barred under the doctrines of claim preclusion and issue preclusion based on the rulings and judgment in a prior case involving the same parties and the same patent, *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Central District of California Case No. CV 02-1087 ("California Action"). Under these circumstances, claim preclusion applies because the accused products in this action are essentially the same as the accused products in the California Action. See *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379-80 (Fed. Cir. 2008) (upholding summary judgment of claim preclusion).

---

[1] Zelman is the president of Revolution. Plaintiffs are apparently basing their claims against Zelman on a baseless alter ego theory. In any event, Zelman does not sell any products himself (Fact 40), so a determination that plaintiffs' claims against Revolution are barred or that Revolution's products do not infringe requires summary judgment in favor of Zelman, as well.

Specifically, plaintiffs here alleged in the California Action that Revolution's eyewear products including both a primary eyeglass frame and a magnetically attaching auxiliary sunglass frame infringed certain claims of the '545 patent.[2]  The California court construed the claims and granted summary judgment that Revolution's products did not infringe the asserted claims that covered an auxiliary frame because the '545 patent was limited to <u>top-mounting</u> auxiliary frames --- where the auxiliary frame attaches to the top of the primary frame, as shown in the figures from the patent below.  (Fact 9.)[3] [4]



The auxiliary frame in Fig. 4 attaches to the top of the primary frame in Fig. 3, as shown in Figs 5 and 6.  Note that arms 21 of the auxiliary frame (colored in yellow) rest on top of extensions 11 of the primary frame in Figs. 5 and 6.  The '545 patent repeatedly explains that the arms 21 rest on top of the primary frame to prevent the downward movement of the auxiliary frames.  (Fact 9.)  It was and is undisputed that Revolution's auxiliary frames are bottom-mounting; the auxiliary frame attaches to the bottom of the primary frame, as shown in the photographs below.  (Facts 27-28.)

---

[2]   A true and correct copy of the '545 patent and the reexamination certificate pertaining thereto is attached hereto as Exhibit A.

[3]   "Fact __" refers to the facts and supporting evidence set forth in Defendants' Statement of Undisputed Material Facts filed herewith.

[4]   The difference between top-mounting and bottom-mounting is significant.  The '545 patent acknowledges that "front-mounting" auxiliary frames that attach magnetically to the front of a primary spectacle frame were in the prior art.  The attachment to the primary frame was limited to the use of magnets; there was nothing additional to support the auxiliary frame to the primary frame.  (Ex. A ('545 patent) col. 1, lines 26-32.)  Thus, the purported improvement of the '545 patent was having arms on the auxiliary frame extending over the primary frame to prevent downward movement of the primary frame during exercise.  (*Id.*, col. 1, line 62 – col. 2, line 2.)  Revolution's accused frames do not have this feature.

W02-WEST:3SMH1\402658501.2





**Auxiliary Frame Accused in California
Action Bottom Mounted to Primary Frame**



**Auxiliary Frame Accused in this Case
Bottom-Mounted to Primary Frame**

After granting summary judgment that Revolution's *auxiliary* frames do not infringe, the California court ruled that Revolution's *primary* frames infringed claim 22 of the '545 patent, because they were "capable of engaging" a top-mounting auxiliary frame, which is all that claim 22 required. To show infringement of *claim* 22, plaintiffs had to construct a special top-mounting auxiliary frame because Revolution's bottom-mounting auxiliary frame was not capable of engaging its primary frame from the top. Significantly, the accused products in this case have the same bottom-mounting auxiliary frame design that was found not to infringe in the California Action.

The California court entered judgment consistent with its rulings, which were upheld on appeal. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1368 (Fed. Cir. 2009) ("We agree with the district court that, in pointing out the two deficiencies in the prior art, [inventor] **Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration** …") (emphasis added). Plaintiffs did not appeal the Court's claim construction ruling in the California Action. The final judgment in the California Action bars plaintiffs' claims for infringement and inducing infringement in this action as a matter of law.

Plaintiffs raise two frivolous arguments in pursuing this case despite the clear application of *res judicata*. First, they argue that patent claims 23 and 35 being asserted in this case are "new" because they were amended during a reexamination proceeding which concluded after the judgment in the California Action. Plaintiffs are incorrect as a matter of law. Under 35 U.S.C. § 305, patent claims cannot be *broadened* during reexamination proceedings. Thus, plaintiffs could have asserted the earlier, broader patent claim 23 in the California Action.[5] Second,

---

[5] Claim 35 is dependent on claim 23 and thus also narrower than the claim 23 as it existed during the California Action. Thus, plaintiffs' present infringement claim could have been brought in the California Action and is barred by claim preclusion/*res judicata*.

plaintiffs argue that there are slight differences in the size of the magnets and arms – without any changes to their orientation -- of the various models of the accused auxiliary frames in both the California Action and this action.[6]  However, as admitted by plaintiffs, these differences are unrelated to the limitations of the patent claims being asserted – that is, patent claim 23 has no limitations related to the size of the magnets or the arms.  (Facts 30-31; see *Roche*, 531 F.3d at 1379-80.)  Thus, none of these differences are new and none gave rise to a claim that plaintiffs did not previously have in the California Action.  Plaintiffs <u>could have asserted</u> patent claim 23 in the California Action regardless of any such size differences and the claim for infringement of claims 23 and 35 in this case is barred.  *Id.*

Plaintiffs' infringement claims in this case are <u>also</u> barred based on the doctrine of collateral estoppel/issue preclusion.  *Del* Mar *Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (1987).  The court in the California Action construed the claim terms "[magnets] having a horizontal surface" (claim 6) and "said arms extending across a respective extension" (claim 34) to require a top-mounting auxiliary frame, where the arm of the auxiliary frame extends <u>across the top</u> of the primary frame and the magnet surface on the auxiliary frame faced <u>downwardly</u>.  Under established law, the identical language ("having a horizontal surface") and nearly identical language ("said arms … adapted to extend across respective side portions") of claim 23 must be given the same meaning.  *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999).  Defendants therefore do not infringe as a matter of law because it is undisputed that Revolution's accused auxiliary frames are <u>bottom-mounting</u> – the arms extend <u>underneath</u> the primary frames and the magnet surfaces face <u>upwardly, not downwardly</u>.  (Facts 27-28.)

Defendants therefore seek summary judgment on the grounds that plaintiffs' claims are barred as a matter of law based on claim preclusion.  Plaintiffs' claim of infringement is <u>also</u> barred under Fed. R. Civ. P. 13(a) because they were required to assert this additional claim as a compulsory counterclaim to Revolution's declaratory judgment counterclaim of non-infringement in the California Action.  See *Polymer Indus. Products Co. v. Bridgestone/ Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003).  In addition, as explained above, Revolution's Accused Products do not infringe based on issue preclusion with respect to the

---

[6]   The "Accused Products" are the auxiliary frames of 41 models sold by Revolution, which are identified in Plaintiffs' second supplemental response to Interrogatory No. 1.  A true and correct copy of the relevant pages of that response is attached hereto as Exhibit B.

California court's claim construction and the undisputed facts regarding the configuration of the Accused Products.

## II.  STATEMENT OF FACTS

### A.     The California Action Between The Same Parties On The Same Patent

This is the fourth lawsuit between plaintiffs and Revolution on the '545 Patent and its predecessor patent.  The '545 Patent is a reissue of U.S. Patent No. 5,568,207, which had only two claims.  In 1999, Aspex sued Revolution for infringement of the '207 patent.  *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc*., No. 99-CV-1623, 2001 U.S. Dist. LEXIS 25831, at *1-2 (C.D. Cal. June 4, 2001).  The district court granted Revolution's motion for summary judgment of non-infringement, finding that claim 1 of the '207 patent was directed to the "top-mounted" primary and auxiliary frame combination and that Revolution's products were in a "bottom-mounted" configuration.  *Id.* at *5, 10, *27.  The Federal Circuit summarily affirmed. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc*., 42 F. App'x 436 (Fed. Cir. 2002).[7]

In 2002, Revolution filed a lawsuit against Aspex and Contour alleging patent infringement of one of Revolution's patents (defined above as the California Action). *Revolution*, 563 F.3d at 1363.  Also in 2002, around the time the Calfornia Action suit was filed, the '207 patent was reissued as the '545 Patent with 32 additional claims.  (Fact 1.) In September 2002, Aspex and Contour filed a counterclaim against Revolution in the California Action for infringement of multiple claims of the '545 patent, which it later identified as claims 6, 22 and 34.  (Fact 2.)  In February 2003, Revolution, in turn, counterclaimed for a declaratory judgment that it did not infringe any valid claim of the '545 patent.  (Fact 3.)  In March 2003, Aspex and Contour filed a reply to Revolution's counterclaim for a declaratory judgment.  (*Id.*)  They did not assert infringement of any additional claims of the '545 patent in the reply or at any time thereafter.  (*Id.*)

Patent claims 6 and 34 claim both the primary spectacle frame and the auxiliary frame that attaches magnetically to the primary frame.  (Fact 4.)  Patent claim 22 is primarily directed to the primary frame, but requires that the magnets of the primary frame be "capable of engaging" the magnets of the auxiliary frame.  (Fact 4.)  The Revolution products accused of

---

[7]    This history can also be found in the Federal Circuit's decision in the California Action, 563 F.3d at 1363 (Fed. Cir. 2009).

infringement in the California Action included both primary spectacle frames and auxiliary frames.  (Fact 5.)

On May 6, 2003, the California court issued its claim construction order, holding:  "the invention disclosed in the '545 patent is limited to a top-mounting design."  (Fact 6.)  The court explained:  "the invention described is clearly for a top-mounting design:  the written description only describes a top-mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned anything other than a top-mounting design."  (*Id.*) The '545 patent's specification explains why the top-mounting configuration is critical to the claimed invention.  It explains that the front-mounting magnetic auxiliary frames in the prior art "have no supporting members for preventing the auxiliary lenses from moving downward relative to the frames such that the auxiliary lenses may easily move downward relative to the frames and may be easily disengaged from the frames when the users conduct jogging or jumping exercises."  (Fact 7; Ex. A col. 1, lines 27-32.)  The invention claimed in the '545 patent solves that problem as follows:

> the auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with the upper portion of the primary spectacle frame, and a pair of second magnetic members secured to the arms respectively for engaging with the first magnetic members of the primary spectacle frame so as to secure the auxiliary spectacle frame to the primary spectacle frame. The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward relative to and so as to prevent the auxiliary spectacle frame from being disengaged from the primary spectacle frame.

> … the second magnetic members are extended downward toward the projections for hooking on the primary spectacle frame.  (Fact 8; Ex. A, col. 1, line 56 – col. 2, line 7.)

Consistent with the California court's holding and the '545 patent's specification, the inventor of the '545 patent Richard Chao, testified that his invention was for a top-mounting auxiliary frame, and that he never even thought of a bottom-mounting auxiliary frame until he saw a Revolution's bottom-mounting auxiliary frame many years later.  (Fact 10.)  Also consistent with its holding that "the invention disclosed in the '545 patent is limited to a top-mounting design," the California court construed the term "magnetic members … having a horizontal surface" in the auxiliary frame (claim 6) to mean "having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary

spectacle frame."  (Fact 11.)  Claim 23 asserted in this case contains language identical to claim 6, "magnetic member having a horizontal surface," which must be construed the same.  (Fact 12.)

Similarly, claim 34 had the following limitation:  *"said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]"*.  The California court construed this language to mean that at least some portion of each arm reaches across the top of the corresponding extension of the primary frame.  (Fact 13.)  Claim 23 asserted in this case contains almost identical language to claim 34: "said arms … adapted to extend across respective side portions," which must be construed the same.  (Fact 14.)

Claim 22 requires that the magnetic members of the primary frame be "capable of engaging" the magnetic members of the auxiliary frame.  (Fact 15.)  Consistent with holding that "the invention disclosed in the '545 patent is limited to a top-mounting design," the court construed this term to mean that the primary frame magnets have the ability to magnetically attract the magnets of the auxiliary frame when placed above the primary frame magnets.  (*Id.*)  Claim 23 asserted in this case does not have a similar "capable of engaging" language, but requires instead that the arms of the auxiliary frame be specially "adapted to extend across [the top of] respective side portions of a primary spectacle frame."  (Fact 16.)

It was (and is) undisputed that the magnet surfaces of Revolution's accused auxiliary frames in the California Action were upwardly, not downwardly, facing and that the arms of Revolution's auxiliary frame extend underneath the corresponding extensions on the primary frame.  (Fact 17; *Revolution Eyewear*, 563 F.3d at 1363.)  Accordingly, the Court granted Revolution's motion for summary judgment that claims 6 and 34 were not infringed.  (Fact 18; *Revolution Eyewear*, 563 F.3d at 1364.)

Plaintiffs later argued that Revolution's primary frames infringed claim 22 because they were "capable of engaging" auxiliary frame magnets when placed above the auxiliary frame magnets.  (Fact 19; 563 F.3d at 1369.)  In support of their argument, plaintiffs did not use Revolution's auxiliary frames, which are bottom loading; rather, they specially made auxiliary frames with magnet surfaces facing downwardly towards the magnets on Revolution's primary frame.  (Fact 19.)[8]  The California court ruled on April 30, 2007, that Revolution's *primary* frames infringed claim 22 of the '545 patent because they had the ability to attract the top-

---

[8]   Although the magnet surface on Revolution's primary frames faced downwardly, there was some magnetic attraction through the epoxy covering the top of the magnets.

loading auxiliary frames specially made by plaintiffs.  (Fact 20; 563 F.3d at 1369.)  Thus, the California court consistently held that Revolution's bottom-loading auxiliary frames did not infringe the '545 patent.

On February 25, 2008, the California court entered judgment consistent with its rulings.  (Fact 21; 563 F.3d at 1365.)  Plaintiffs did not challenge the California court's grant of summary judgment in favor of Revolution on claims 6 and 34 or the California court's claim construction order.  (Fact 22; 563 F.3d at 1365.)  In April 2009, the Federal Circuit affirmed the judgment.  (Fact 23; 563 F.3d at 1365, 1374.)  The Federal Circuit explained the '545 patent as follows:

> The technology in this case involves a spectacle frame that supports an auxiliary frame, enabling the user to securely fasten a second set of lenses (e.g., sunglass lenses) onto the primary frame (often holding prescription lenses). …
> According to the '545 patent, at the time of the invention, at least two deficiencies existed in conventional spectacle frames: the "stable support" issue and the "decreased strength" problem.  The former refers to the fact that because the auxiliary lenses were simply attached to the frames by magnetic materials, the auxiliary lenses might easily move downward relative to the frames and might be easily disengaged from the frames when the users conducted jogging or jumping exercises. '545 patent col.1 ll.26–32.  Chao's invention addresses this issue through an auxiliary frame that may be stably supported on the primary frame, i.e., **the "top-mounted" design**. Id. col.2 ll.49–56.

563 F.3d at 1362-63 (emphasis added).  The Federal Circuit agreed with the district court's claim construction, noting:  "We agree with the district court that, in pointing out the two deficiencies in the prior art, **Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration** and a primary frame that has embedded magnetic members."  *Id.* at 1368 (emphasis added).

**B.     Revolution's Accused Products**

Before the California court granted summary judgment of infringement on claim 22 in April 2007, Revolution had redesigned its primary frames such that the magnets were embedded in the frames, rather than placed in projections attached to the frames.  (Fact 24.)  It is undisputed that the redesigned primary frames do not infringe any claim of the '545 patent because, as noted by the Federal Circuit, the '545 patent "disclaimed … a primary frame that has embedded magnetic members."  (*Id.*; 563 F.3d at 1368.)

The design of the auxiliary frames remained unchanged, with magnetic member surfaces that face upwardly and arms that are adapted to extend underneath the respective side portions of the primary frame.  (Fact 25.)  Because there is variability in the size and shape of Revolution's

various primary frames in both the old design and new embedded design, there is also variability in the angle and length of the arms in the various auxiliary frames that mate with the primary frames. (Fact 29.) However, all of the auxiliary frames for both the old primary frames and the redesigned primary frames for the Accused Products are identical with respect to the limitations in claim 23, as shown in the photographs below:[9]

   

*California Accused Auxiliary Frame - TOP*    *Florida Accused Auxiliary– TOP Frame - TOP*    *California Accused Auxiliary Frame - BOTTOM*    *Florida Accused Auxiliary Frame – BOTTOM*

- said auxiliary frame including a front side, a rear side, and oppositely positioned side portions,
- each of said side portions having an arm extended therefrom,
- each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface,
- and a pair of magnetic members respectively secured in the free ends of said arms,
- said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

(Fact 30.) Claims 23 and 35 contain no limitations regarding the size or angle of the arms of the auxiliary frame or regarding the size of the magnets. (Fact 31.) In other words, because any differences among these various auxiliary frames are "unrelated to the limitations in the claim of the patent," they are all "essentially the same" for purposes of claim preclusion. *Roche*, 531 F.3d at 1379-80.

Plaintiffs became aware of the redesigned products at the time they were released, which was before the summary judgment ruling in April 2007 and trial in the California Action. (Fact

---

[9]    Although the above-referenced auxiliary frames are identical with respect to the limitations of claims 23 and 35, they do not infringe those claims. As set forth below, they do not have "horizontal surfaces", "extend across respective side portions" or "vertically engage corresponding magnetic member surfaces" as properly construed.

32.)  Plaintiffs formed the belief at that time that the auxiliary frames infringed the '545 patent. (*Id.*)  Nevertheless, from August 7, 2003 – the date the California court granted summary judgment of non-infringement of primary/auxiliary claims 6 and 34 – until they filed this case on September 23, 2009, plaintiffs <u>never</u> asserted that Revolution's bottom-mounting auxiliary frames infringed the '545 patent, and <u>never</u> asserted that Revolution infringed claim 23.  (Fact 33.)

## C.     The Reexamination Certificate

In September 2007, a third party filed with the PTO a request for reexamination of numerous claims of the '545 patent, including claim 23 asserted here, based on several prior art patents, including U.S. Patent No. 5,867,244 to defendant Gary Martin.  (Fact 34.)  The PTO initially rejected all of the subject claims as obvious.  (Fact 35.)  In response, plaintiffs amended claim 23 to specify that the magnetic members of claim 23 "having a horizontal surface" engage corresponding magnetic "member surfaces" on the primary frame.  (Fact 36.)  At the time plaintiffs added this language to claim 23, "having a horizontal surface" had already been construed in the California Action to mean "having a downwardly facing surface …"  (Fact 36.) Because the amendment adds a limitation, amended claim 23 is narrower, or certainly no broader, than pre-amendment claim 23.  (Fact 37; 35 U.S.C. § 305.)  Plaintiffs also added claim 35, which Plaintiffs admit is narrower than claim 23.  (Fact 37.)  The PTO issued a reexamination certificate including these amended claims on March 3, 2009.  (Fact 38.)

Plaintiffs filed this lawsuit on September 23, 2009, against, among others, Revolution, the same party involved in the California Action, alleging infringement of the same '545 patent as asserted in the California Action.  (Fact 39.)

## III.  PLAINTIFFS' CLAIMS ARE BARRED BASED ON RES JUDICATA/CLAIM PRECLUSION

## A.     This Case Involves the Same Parties and the Same Claim as the California Action

The doctrine of *res judicata*, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding.  *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999).  The purpose behind the doctrine of *res judicata* is to protect a party from the expense and vexation attending multiple lawsuits on the same claims, to conserve judicial resources, and to foster reliance on judicial action by minimizing the possibility of inconsistent decisions.  *Id.*  "A claim will be barred by prior litigation if the four following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by

a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.*  Each of those elements is present here:  (1) a final judgment; (2) by a competent court; (3) involving the same parties and/or their privies; and (4) on the same cause of action.  (Facts 21, 39.)

Under the rule against "claim-splitting," a party cannot avoid the effects of res judicata by splitting a cause of action into separate grounds of recovery and then raising the separate grounds in successive lawsuits.  See *Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995).  Asserting different claims of the same patent against the same products does not constitute a separate cause of action and is barred under the rule.  "It is … of no moment that [plaintiff] now accuses Defendants of infringement of [a different claim from the same patent], for the 'nucleus of facts' is identical in both suits." *Hemphill v. Kimberly-Clark Corp.*, 530 F. Supp. 2d 108, 111 (D.D.C. 2008), aff'd 335 Fed. Appx. 964, 965 (Fed. Cir. 2008) ("In other words, it is required that a patentee sue an alleged infringer for infringement of all pertinent claims of her patent at one time regarding the same products, rather than attempting to litigate each claim separately."); see *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, 2005 WL 1869342, *3 (N.D. Cal. 2005) ("a patent plaintiff should not be permitted to avoid the adverse consequences of failing to assert all patent claims in a pending action by simply filing a new patent action"); *CIVIX-DDI, LLC v. Expedia, Inc.*, 2005 U.S. Dist. LEXIS 9493 at *13 (N.D. Ill. 2005) ("Judicial economy requires the Court to dismiss this action. [Plaintiff] attempts to assert new patent claims that it should have timely brought in the Initial Action.")

Nor can plaintiffs avoid the preclusion of res judicata by contending that reexamined claims 23 and 35 are "new claims."  This argument was soundly rejected in *Hoffman v. Wisner Classic Manufacturing Co.*, 927 F.Supp. 67, 73 (E.D.N.Y. 1996).  The *Hoffman* court explained:

> The purpose of the reexamination statute is to increase the reliability of doubtful patents by permitting the Patent and Trademark Office to consider prior art affecting the validity of the patent which may have escaped review at the time of the initial application. Whether a reexamination is ordered depends upon the presence or absence of a substantial new question of patentability. Upon determining the patentability of the reexamined patent, the Commissioner issues a certificate confirming those claims determined to be patentable. *See,* 4 Lipscomb's, Walker On Patents, 15.1 (1986).
>
> An important limitation on reexamination however, is that "[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding." 35 U.S.C. § 305. Thus, claims added or amended in a reexamination proceeding will necessarily be narrower because section 305 bars claims that enlarge the scope of original claims. Therefore, no

device can infringe the narrower claims emerging from reexamination that would not have infringed the original claims as well. *See In re Freeman*, 30 F.3d 1459, 1464 (Fed.Cir.1994). Because the '860 patent's claims were narrowed by the addition of claims 4-7, and because it has already been concluded that any prior action for infringement of the original patent has been adjudicated in favor of the defendant, Wisner cannot now be deemed guilty of infringing upon this new, narrower patent.

Similarly here, amended claim 23 and added claim 35 are no broader than claim 23 as it existed before the amendment.  Therefore, Revolution's auxiliary frames cannot infringe the claims emerging from reexamination unless they would have infringed original claim 23.  Because it was already concluded in the California Action that Revolution's bottom-mounting auxiliary frames did not infringe the '545 patent, those frames cannot now be deemed to infringe these no-broader claims.  In other words, plaintiffs <u>could have asserted</u> the earlier, equivalent or broader version of claim 23 in the California Action, so their present cause of action for infringing the amended claim is barred under the doctrine of res judicata.  *Id.*

**B.    Plaintiffs' Cause Of Action For Infringement Of Claim 23 Is Barred Because It Was A Compulsory Counterclaim In The California Action**

Plaintiffs' attempt to sue on the same patent in a different lawsuit is <u>also</u> barred by the law of compulsory counterclaims.  Federal Rules of Civil Procedure, Rule 13(a) provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving of the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

The purpose behind Rule 13(a) is "judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensure from a common factual background."  *Polymer Indus. Products Co. v. Bridgestone/Firestone, Inc*., 347 F.3d 935, 938 (Fed. Cir. 2003).

Under Federal Circuit law, an action for a declaratory judgment of non-infringement of a patent makes any counterclaim for infringement of that patent compulsory.  *Polymer Indus.*, 347 F.3d at 938.[10]  Compulsory counterclaims must include every claim of the patent at issue that the counterclaimant contends is infringed.  *Civix-DDI LLC*, 2005 U.S. Dist. LEXIS 9493 at *8-9,

---

[10]   The issue of whether a claim for patent infringement is a compulsory counterclaim is determined under Federal Circuit law.  *Id.*; *Biodex Corp. v. Loredan Biomedical*, *Inc.*, 946 F.2d 850, 858-59, (Fed.Cir.1991).

W02-WEST:3SMH1\402658501.2

citing *Polymer Indus.*, 347 F.3d at 938.  A party that does not raise an infringement claim as a compulsory counterclaim is "forever barred from asserting that claim in future litigation." *Id.*

In the California Action, plaintiffs filed a counterclaim for infringement of multiple claims of the '545 patent, which it later specified as only claims 6, 22 and 34. (Fact 2.)  In response, Revolution filed a counterclaim alleging that it did not infringe any valid claim of the '545 patent. (Fact 3.)  Under the law cited above, plaintiffs were required to file a counterclaim for infringement of any and all claims of the '545 patent they believed were infringed, but failed to do so with respect to claim 23.  (*Id.*)  Similarly, plaintiffs were required to claim infringement of the '545 patent with respect to any products then sold by Revolution.  *Polymer Indus.*, 347 F.3d at 937-38.  However, plaintiffs never asserted that Revolution's auxiliary frames alone infringed the '545 patent.  (Fact 33.)  Plaintiffs are thus barred under Rule 13(a) from asserting claim 23 of the '545 patent in this case and barred from asserting that Revolution's auxiliary frames infringe any claim of the '545 patent, because they failed to assert these as compulsory counterclaims in the California Action.

## C.   The Accused Products Are Essentially The Same As The Accused Auxiliary Frames Device In The California Action

Whether two claims for infringement constitute the "same claim" is an issue particular to patent law and thus Federal Circuit law applies.  *Roche*, 531 F.3d at 1379; *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001).  Under the law of the Federal Circuit, an infringement claim in a second suit is the "same claim" as in an earlier infringement suit if the accused products in the two suits are "essentially the same."  *Roche*, 531 F.3d at 1379; *Acumed*, 525 F.3d at 1324; *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991).  Accused products "are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'"  *Roche*, 531 F.3d at 1379; *Acumed*, 525 F.3d at 1324; *Foster*, 947 F.2d at 480.

In *Roche*, the defendant seeking to avoid the application of res judicata argued that the accused drug formulation in the second action (ANDA-2 formulation) was not "essentially the same" as the accused drug formulation in the first (ANDA-1) formulation for several reasons: (1) unlike the ANDA-1 formulation, the ANDA-2 formulation is insufficient to form micelles (a globule of lipid molecules), (2) the two formulations are stabilized by completely different ingredients and mechanisms; and (3) the FDA required separate drug applications for the two

formulations. *Roche*, 531 F.3d at 1380. The district court nevertheless found that the plaintiff met its burden of establishing that the two formulations were essentially the same because the differences were unrelated to the claims of the patent *Id.* The Federal Circuit agreed:

> We find no error in the district court's analysis. The court determined that the ANDA-1 formulation and the ANDA-2 formulation are "essentially the same" because any differences between them are unrelated to the claims of the '493 patent. Though the court recognized that there are differences in the concentrations of the ingredients in the ANDA-1 and ANDA-2 formulations, it also realized that all of the concentrations are well within the ranges claimed in the '493 patent. The fact that they are stabilized by different mechanisms, even if true, is irrelevant because both formulations are encompassed by the claims of the '493 patent. Thus, any difference in composition between the two formulations is merely colorable and the two formulations are "essentially the same."

Accordingly, the Federal Circuit affirmed the district court's summary judgment that the defendants' counterclaims were barred by claim preclusion. *Id.* at 1381.

Similarly here, the accused auxiliary frames in the California Action and the Accused Products in this case are "essentially the same" because any alleged differences among the products are unrelated to the claims of the patent being asserted. Plaintiffs argue that there are slight differences in the size of the magnets and arms – without any changes to their orientation -- of the various models of the accused auxiliary frames in both the California Action and this action.[11] Thus, these are not changes between the auxiliary frames accused in the California action and those accused here; they are slight differences that have existed all along among the various models accused in the California Action. (Fact 29.) Further, plaintiffs' argument disregards the applicable law. The question is not whether the Accused Products are identical to the previously accused products, but rather whether they are essentially the same in relation to the claims at issue. *Roche*, 531 F.3d at 1379. As admitted by plaintiffs, the differences here are unrelated to the limitations of the patent claims being asserted – that is, patent claims 23 and 35 have no limitations regarding the size of the magnets or the arms. (See *id.* at 1379-80; Facts 30-31.)

As set forth above, the accused auxiliary frames in the California Action and the Accused Products in this case are identical with respect to the limitations in claim 23 and 35.

---

[11]   The "Accused Products" are the auxiliary frames of 41 models sold by Revolution, which are identified in Plaintiffs' second supplemental response to Interrogatory No. 1. A true and correct copy of the relevant pages of that response is attached hereto as Exhibit B.

- a front side, a rear side, and oppositely positioned side portions,

- each of said side portions having an arm extended therefrom,

- each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface,

- and a pair of magnetic members respectively secured in the free ends of said arms,

- said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

- wherein, said magnetic members of said auxiliary spectacle frame are magnets.

(Fact 30.)  Indeed, plaintiffs concede that the accused auxiliary frames in the California Action and the Accused Products in this case are "essentially the same" under the Federal Circuit standard by contending that both sets of products meet all the limitations of claim 23, regardless of any alleged differences in the size or angle of the auxiliary frame arms.  (See Hanle Decl. Ex. K (Aspex Depo.) pp. 6-11, 58.)

In other words, any such differences are "unrelated to the limitations of the claim" and the products are "essentially the same."[12]  Thus, none of these differences gave rise to a claim that plaintiffs did not previously have in the California Action.  Plaintiffs <u>could have asserted</u> patent claim 23 in the California Action regardless of any such variability in arm or magnet size and the claim for infringement of claims 23 and 35 in this case is barred.  *Roche*, 531 F.3d at 1379-80.  Accordingly, claim preclusion applies and plaintiffs' claims are barred based on the final judgment in the California Action.

## IV.   THE ACCUSED PRODUCTS DO NOT CONTAIN KEY ELEMENTS OF THE ASSERTED CLAIMS AS A MATTER OF LAW

### A.   The Claim Construction In The California Action Is Binding On Plaintiffs

A patent infringement analysis requires two steps.  The first step, the interpretation of the claims of the patent, is a matter of law exclusively for the Court to determine.  *Markman v. Westview Inst. Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  In

---

[12]   Plaintiffs argue that differences in the size and angle of the auxiliary frame arms between the Accused Products in this case and the accused products in the California Action prevent the application of claim preclusion.  However, as set forth above, because of the differences among the various accused primary frames in the California Action, there were also differences in the size and angle of the arms in the various accused auxiliary frames.  (Fact 29.)  Yet all of these auxiliary frames were accused of infringement in the California Action regardless of these differences.  Plaintiffs' argument is a red herring.

the present case, the California court's claim construction is binding and should be followed by this Court.  The second step, comparing the construed claims of a patent to the accused device, is an issue of fact.  See Id. at 976.  There are no genuinely disputed material issues here with respect to non-infringement.

As set forth above, the California made the following claim construction rulings:  (1) "the invention disclosed in the '545 patent is limited to a top-mounting design" (Fact 6); (2) "magnetic members … having a horizontal surface" in the auxiliary frame means "having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame" (Fact 11); (3) "said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]" means that "at least some portion of each arm reaches across the top of the corresponding extension" (Fact 13).  Plaintiffs did not challenge these claim construction rulings on appeal.  (Fact 22; 563 F.3d at 1365.)

Based on the doctrine of issue preclusion and fundamental claim construction law, the nearly identical language of claim 23 must be construed consistently to require that the arms and magnetic members of the auxiliary frame are adapted to reach across the top of the corresponding extension of the primary frame.  *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 ("The prior determination of certain issues, including the issues of claim construction and of infringement by the type A and non-infringement by the type C models, bars judicial redetermination of those issues as between the parties to the prior actions.")[13]  Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent.  See, e.g., *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999).  Thus, the corresponding limitations of claim 23 should be construed as shown in the second column in the table in Section B below.

The California court's constructions are fully supported, indeed mandated, by the Federal Circuit's claim construction methodology.  See *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).  The *Phillips* court held:  "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  *Id.* at 1315 (citations omitted).  The *Phillips* court noted that the importance of the specification derives from the statutory requirement that the specification describe the

---

[13]   Plaintiffs even admit that they are bound by the California court's claim construction.  (Fact 22.)

invention in "full, clear, concise, and exact terms."  *Id.* at 1316.  Here the specification explains that the arms of the auxiliary frame extend <u>over</u> and engage with the <u>upper</u> portion of the primary spectacle frame to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and to prevent the auxiliary spectacle frame from moving downward.  (Facts 8-9.)  This configuration is the <u>only</u> configuration described in the patent and the <u>only</u> configuration shown in the figures:



The auxiliary frame in Fig. 4 attaches to the top of the primary frame in Fig. 3, as shown in Figs 5 and 6.  Note that arms 21 of the auxiliary frame (colored in yellow for illustration) rest on top of extensions 11 of the primary frame in Figs. 5 and 6.

This top-mounting configuration, where the arms of the auxiliary frame extend over the primary frame to prevent downward movement, was necessary to distinguish the invention of the '545 patent from the "front-mounting" prior art, where the magnets on the auxiliary frame attached to magnets on the front of the primary frame and there were no additional structures to prevent downward movement of the auxiliary frames during exercise, etc.  (Facts 7-9; see *Phillips*, 415 F.3d at 1317.)  The extrinsic evidence also strongly supports the California court's claim construction.  See *Phillips*, 415 F.3d at 1318.  The inventor of the '545 patent Richard Chao, testified that his invention was for a top-mounting auxiliary frame, and that he never even thought of a bottom-mounting auxiliary frame until he saw a Revolution's bottom-mounting auxiliary frame many years later.  (Fact 10.)

**B.    The Accused Products Do Not Infringe Under the Claim Construction Required by The California Court's Ruling**

| Claim 23 Language | Construction Required by Construction in California Action | Why The Accused Products Do Not Infringe |
|---|---|---|
| "magnetic member having a horizontal surface" | magnetic member having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame | The magnets on Revolution's auxiliary frames have an upwardly facing surface **not** a downwardly facing surface.  (Fact 26.)<br><br><br>*Revolution Auxiliary Frame Showing Upwardly Facing (Silver) Magnet Surface*  *Revolution Auxiliary Frame Showing (Red) Epoxy Covering Bottom of Arm* |
| "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame" | said arms and said pair of magnetic members adapted such that at least some portion of each arm reaches across the top of respective side portions of the primary spectacle frame | The arms and magnetic members of Revolution's auxiliary frames are adapted such that the entire arms extend underneath the respective side portions of the primary spectacle frame, and no part of the arms or magnetic members are adapted to extend across the top of the primary spectacle frame.  (Facts 27-28)<br><br><br>*Revolution Product with Arms and Magnets of Auxiliary Frame Extending Underneath Side Portions of Primary Frame* |

-18-

| so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame | so that said pair of magnetic members having a downwardly facing horizontal surface can vertically engage the top of corresponding magnetic member surfaces on the top of a primary spectacle frame[14] | The magnetic members of Revolution's auxiliary frames engage the <u>bottom</u> of corresponding magnetic member surfaces on a primary spectacle frame, <u>not the top</u> of the primary frame.  (Fact 28) |
|---|---|---|
| | |  <br>*Auxiliary Frame*   *Bottom of Primary Frame*<br><br><br>*Revolution Frames Showing The Magnets of the Auxiliary Frame Engaging the <u>Bottom</u> of the Primary Frame.*<br><br>Note that the "corresponding magnetic member surfaces" are on the bottom of the primary frame, not the top, which does not have a "magnetic member surface." |

---

[14]   This construction is mandated by the California court's ruling that "the invention disclosed in the '545 patent is limited to a top-mounting design."  (Fact 6.)  In other words, the magnet surfaces on the auxiliary frame must engage the magnet surfaces on the primary frame from the top.

To literally infringe a claim, every limitation recited in the claim must read exactly on the accused system.  *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001).  The third column in the table shows that at least three limitations of claim 23 do not read on Revolution's Accused Products under the claim construction binding on plaintiffs as a result of the California court's claim construction.  The product and the pictures do not lie and the facts are undisputed.  The Accused Products do not infringe claim 23 and dependent claim 35 as a matter of law.

V.     <b>CONCLUSION</b>

Based on the foregoing, Defendants Revolution Eyewear, Inc. and Gary Martin Zelman are entitled to summary judgment on counts II and V of plaintiffs' complaint for patent infringement, and their first affirmative defense and first counterclaim for non-infringement. Respectfully submitted,

s/ Steven M. Hanle


Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:     714.513.5100
Telecopy:      714.513.5130

and

s/ Janet T. Munn
Janet T. Munn
jmunn@rascoklock.com
Florida Bar No. 501281
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL  33134
Telephone: 305.476.7100
Telecopy: 305.476.7102

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC and Gary Martin Zelman*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 20, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.


By: <u>s/ Janet T. Munn</u>
       Janet T. Munn

W02-WEST:3SMH1\402658501.2

## SERVICE LIST

*Attorney for Plaintiffs Aspex Eyewear, Inc., and*
*Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Plaintiffs Aspex Eyewear, Inc., and*
*Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
email: schindlerb@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

Todd Schleifstein, Admitted Pro Hac Vice
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, NJ  07932
email:  schleifsteint@gtlaw.com
Telephone:  973.360.7900
Telecopy:  973.301.8410

*Attorney for Defendants Marchon Eyewear, Inc.,*
*and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310

Scott W. Hansen, Admitted Pro Hac Vice
email:  shansen@reinhartlaw.com
**REINHART BOERNER VAN DEUREN**
1000 N. Water Street
PO Box 2965
Milwaukee, WI  53201-2965
Telephone:  414.298.8123
Telecopy:  414.298.8097

*Attorney for Defendants Marchon Eyewear, Inc.,*
*and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email:  ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email:  bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email:  dherman@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
email:  pfleming@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone:  212.588.0800
Telecopy:  212.588.0500

Mark P. Walters, Admitted Pro Hac Vice
email:  mwalters@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
1191 2nd Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206.336.5690
Telecopy:  212.588.0500