# EXHIBIT N



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

Ivor R. Elrifi

MINTZ, LEVIN, COHEN, FERRIS, GLOVSKY & POPEO, P.C.

9255 Towne Centre Drive, Suite 600

San Diego, CA 64046

**MAILED**

**APR 23 2008**

CENTRAL REEXAMINATION UNIT

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/008,864*.

PATENT NO. *RE37545 ET AL.*.

ART UNIT *3993*.

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

PTOL-465 (Rev.07-04)

| Office Action in Ex Parte Reexamination | Control No. 90/008,864 | Patent Under Reexamination RE37545 ET AL. |
|---|---|---|
| | Examiner Glenn K. Dawson | Art Unit 3993 |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

a ☐ Responsive to the communication(s) filed on _____ .   b ☐ This action is made FINAL.
c ☐ A statement under 37 CFR 1.530 has not been received from the patent owner.

A shortened statutory period for response to this action is set to expire _1_ month(s) from the mailing date of this letter.
Failure to respond within the period for response will result in termination of the proceeding and issuance of an *ex parte* reexamination certificate in accordance with this action. 37 CFR 1.550(d). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**
If the period for response specified above is less than thirty (30) days, a response within the statutory minimum of thirty (30) days will be considered timely.

Part I   THE FOLLOWING ATTACHMENT(S) ARE PART OF THIS ACTION:

1. ☐ Notice of References Cited by Examiner, PTO-892.    3. ☐ Interview Summary, PTO-474.
2. ☒ Information Disclosure Statement, PTO/SB/08.          4. ☐ _____.

Part II   SUMMARY OF ACTION

1a. ☒ Claims _1-9, 12, 13, 16-20, 23, 24 and 31-34_ are subject to reexamination.
1b. ☒ Claims _10, 11, 14, 15, 21, 22 and 25-30_ are not subject to reexamination.
2.  ☐ Claims _____ have been canceled in the present reexamination proceeding.
3.  ☐ Claims _____ are patentable and/or confirmed.
4.  ☒ Claims _1-9, 12, 13, 16-20, 23, 24 and 31-34_ are rejected.
5.  ☐ Claims _____ are objected to.
6.  ☐ The drawings, filed on _____ are acceptable.
7.  ☐ The proposed drawing correction, filed on _____ has been (7a)☐ approved (7b)☐ disapproved.
8.  ☐ Acknowledgment is made of the priority claim under 35 U.S.C. § 119(a)-(d) or (f).
    a)☐ All  b)☐ Some*  c)☐ None    of the certified copies have
    1☐ been received.
    2☐ not been received.
    3☐ been filed in Application No. _____ .
    4☐ been filed in reexamination Control No. _____ .
    5☐ been received by the International Bureau in PCT application No. _____ .
    * See the attached detailed Office action for a list of the certified copies not received.
9.  ☐ Since the proceeding appears to be in condition for issuance of an *ex parte* reexamination certificate except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte* Quayle, 1935 C.D. 11, 453 O.G. 213.
10. ☐ Other: _____

cc: Requester (if third party requester)
U.S. Patent and Trademark Office
PTOL-466 (Rev. 08-06)               Office Action in Ex Parte Reexamination               Part of Paper No. 20080402

Application/Control Number: 90/008,864 Page 2
Art Unit: 3993

## *Reexamination*

### *Claim Rejections - 35 USC § 103*

The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made.

This application currently names joint inventors. In considering patentability of the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of the various claims was commonly owned at the time any inventions covered therein were made absent any evidence to the contrary. Applicant is advised of the obligation under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was not commonly owned at the time a later invention was made in order for the examiner to consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g) prior art under 35 U.S.C. 103(a).

Application/Control Number: 90/008,864                                                             Page 3
Art Unit: 3993

Claims 1-9,12,13,16-20,23,24, and 31-34 are rejected under 35 U.S.C. 103(a) as being unpatentable over Martin-'244 in view of Nishioka-5642177 or Sadler-5416537.

With respect to claim 1, Martin discloses an eyeglass device having a primary spectacle frame 12 having two side portions with extensions 18,20 pivotally coupling to leg means 14,16, an auxiliary spectacle frame 24 having two side portions each having an arm 40,42, for extending over and engaging the upper side portions of the primary spectacle frame; and the auxiliary frame is stably supported on the primary frame and being prevented form falling downward relative to the primary frame due to clips 40,42 and 46 and due to the clips resting on top of extensions 18,20. As seen in fig. 2, the clip hooks clearly extend across the extensions from the front side past the rear side. However, magnetic members secured in projections secured to the rear and side portions of the primary frame, and magnetic members secured to the arms for engaging the other magnetic members is not disclosed. Martin does disclose that the purpose of the invention is to provide a means by which an auxiliary frame could be mounted to the primary frame in a removable manner and in which the mounting is nearly undetectable.

Application/Control Number: 90/008,864                                                          Page 4
Art Unit: 3993

Both Nishioka and Sadler teach of using magnets on primary frames for coupling to magnets on projections of auxiliary frames. This produces a simple, stable and removable manner in which to couple auxiliary frames to primary frames. It would have been obvious to have provided the arms 40,42 with magnets for mating with magnets placed on either frames 10,12, and/or extensions 18,20, as taught by Nishioka and Sadler, as this would further act to supplement the clips in stably supporting the auxiliary frames on the primary frames and would still allow the auxiliary frames to be easily attached to and detached from the primary frames.

The specific placement of the magnets on the two frames would be obvious to one skilled in the art. Any surface of the clips 40,42 and either frames 10,12 or extensions 18,20 which come into contact with each other would be obvious placements for the magnets. For example, magnets could be placed on the top of extensions 18 and 20 and couple to magnets placed on the bottom of hooks 40 and 42. Or magnets could be placed on the front-facing side of the part of the hook which extends rearwardly of the rear portion of the frames 10,12 and could couple to a magnet placed on the back side or rear of the frame portions 10,12 which abut the hooks. The magnets could be either embedded into the material making up the frames, extensions or hooks,

Application/Control Number: 90/008,864 Page 5
Art Unit: 3993

or could be mounted to a small projection placed on these structures. One skilled in the art would recognize that either structure would work equally well. Additionally, simply rotating the hook members 40,42 ninety (90) degrees such that the extensions extend vertically downward instead of horizontally across would also have been an obvious manner in which to allow the hooks to latch onto extensions 18,20 instead of the frames. Any of these configurations are considered to be obvious design choices. One skilled in the art would have had every reason to expect success in placing the magnetic coupling members in any of the positions presented above, as any two surfaces on the frames or extensions of the primary frame and on the clips hooks 40,42 of the auxiliary frame which are design to abut each other would present efficient surfaces for holding the magnets in such a position that they would be readily engaged by a corresponding magnet on the opposite frame.

The result of the proposed combination would yield the predictable result of stably removably supporting an auxiliary frame on a primary frame via both friction from the clips and magnetic attraction force through the use of complementary magnets on the two frames. Additionally, it would have been obvious to try magnet couplings from the number of known means for attaching auxiliary frames to primary frames as one skilled in the art would

Application/Control Number: 90/008,864 Page 6
Art Unit: 3993

have had every reason to expect success in that the magnets would be expected to behave as all magnets behave and like poles attracting each other could obviously be used as a coupling means for two components desired to be removably, stably coupled together.

With respect to claim 2, since the projections holding the 1st magnetic members do not attach to the top of the frame, the projections and magnets are clearly below the upper side portion of the primary frame. When the hook is rotated ninety (90) degrees the magnet is downward toward the projections. Even when the hooks are not rotated, when the magnet is placed on the bottom portion of the hook clips 40,42, then the magnet extends downward toward the projections as well.

With respect to claim 3, both Sadler and Nishioka disclose that both magnetic members can be magnets.

With respect to claim 4, the lenses in the frames of Martin define a vertical plane. As outlined above with respect to claim 1, the magnets on the primary frames or extensions would have horizontal surfaces when placed on the rear portions of the frames or on the top rear-facing surfaces of the extensions 18,20.

Claim 5 is rejectable for the same reason as claim 2.

Application/Control Number: 90/008,864                                                               Page 7
Art Unit: 3993

With respect to claim 6, since the magnets on the auxiliary clip hooks 40,42 are oriented to be on the bottom of the clip hooks or on the front-facing surfaces of the clip hooks, either of these would have horizontal surfaces.

With respect to claims 7-9, see claim 3.

With respect to claim 12, As noted above with respect to claim 1, a magnetic member on the rear side of the extension will obviously couple to a magnetic member on the front-facing side of the hook clip member when rotated ninety (90) degrees.

With respect to claim 13, see claims 3 and 7-9.

With respect to claims 16-20, see claims 1 and 12.

With respect to claim 23, see claim 1 for the description of Martin's auxiliary frame. The bent hook arm clips 40,42 are adapted to extend across side portions of the primary spectacle frame so that the magnetic members on the bent hook arm clips can vertically engage magnetic members on a primary spectacle frame.

With respect to claim 24, see the description of the auxiliary frame member with respect to claim 2.

With respect to claim 31, see the description of claim 2.

With respect to claims 32-34, see claim 1.

Application/Control Number: 90/008,864     Page 8
Art Unit: 3993

Therefore, all of the claims which were requested to be re-examined are hereby rejected under 103(a) under Martin in view of Nishioka or Sadler.

### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extension of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

### *Litigation*

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. RE 37545 throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Amendments in Reexamination Proceedings*

Application/Control Number: 90/008,864　　　　　　　　　　　　　　　　　　Page 9
Art Unit: 3993

Patent owner is notified that any proposed amendment to the specification and/or claims in this reexamination proceeding must comply with 37 CFR 1.530(d)-(j), must be formally presented pursuant to 37 CFR 1.52(a) and (b), and must contain any fees required by 37 CFR 1.20(c).

### Submissions

In order to ensure full consideration of any amendments, affidavits or declarations, or other documents as evidence of patentability, such documents must be submitted in response to this Office action. Submissions after the next Office action, which is intended to be a final action, will be governed by the requirements of 37 CFR 1.116, after final rejection and 37 CFR 41.33 after appeal, which will be strictly enforced.

### Service of Papers

After filing of a request for ex parte reexamination by a third party requester, any document filed by either the patent owner or the third party requester must be served on the other party (or parties where two or more third party requester proceedings are merged) in the reexamination proceeding in the manner provided in 37 CFR 1.248. The document must reflect service or the document may be refused consideration by the Office. See 37 CFR 1.550(f).

### Notification of Concurrent Proceedings

Application/Control Number: 90/008,864  Page 10
Art Unit: 3993

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving Patent No. 6,213,224 throughout the course of this reexamination proceeding. Likewise, if present, the third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

### *Correspondence*

All correspondence relating to this ex parte reexamination proceeding should be directed as follows:

By U.S. Postal Service Mail to:
Mail Stop Ex Parte Reexam
ATTN: Central Reexamination Unit Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450


By FAX to: (571) 273-9900
Central Reexamination Unit


By hand to: Customer Service Window
Randolph Building
401 Dulany St.
Alexandria, VA 22314

Application/Control Number: 90/008,864 Page 11
Art Unit: 3993

NOTICE RE PATENT OWNER'S CORRESPONDENCE ADDRESS Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an ex parte reexamination or an interpartes reexamination is designated as the correspondence address of the patent.

Revisions and Technical Corrections Affecting Requirements for Ex Parte and InterPartes Reexamination, 72 FR 18892 (April 16, 2007)(Final Rule)

The correspondence address for any pending reexamination proceeding not having the same correspondence address as that of the patent is, by way of this revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of the effective date.

This change is effective for any reexamination proceeding which is pending before the Office as of May 16, 2007, <u>including the present reexamination proceeding,</u> and to any reexamination proceeding which is filed after that date. Parties are to take this change into account when filing papers, and direct communications accordingly.

In the event the patent owner's correspondence address listed in the papers

Application/Control Number: 90/008,864　　　　　　　　　　　　　　　　　Page 12
Art Unit: 3993

(record) for the present proceeding is different from the correspondence address of the patent, it is strongly encouraged that the patent owner affirmatively file a Notification of Change of Correspondence Address in the reexamination proceeding and/or the patent (depending on which address patent owner desires), to conform the address of the proceeding with that of the patent and to clarify the record as to which address should be used for correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice
(571) 272-7703
Central Reexam Unit (CRU)
(571) 272-7705
Reexamination Facsimile Transmission No.
(571) 273-9900

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

Application/Control Number: 90/008,864                                    Page 13
Art Unit: 3993

Any inquiry concerning this communication or earlier communications from the Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

/Glenn K Dawson/
Primary Examiner, Art Unit 3993

GLENN K. DAWSON
PRIMARY EXAMINER

Glenn K. Dawson Primary Examiner
Central Reexamination Unit 3993
(571) 272-4694

Conferee:

Conferee: