EXHIBIT O



06/23/08

Docket No.: A8445.0001/P001-B
(PATENT)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reexamination of U.S. Patent No. Re37,545:
Richard Chao

Control No.: 90/008,864                 Confirmation No.: 4206

Filed: September 13, 2007               Art Unit: 3993

For: AUXILIARY LENSES FOR EYEGLASSES    Examiner: G. K. Dawson

## AMENDMENT IN RESPONSE TO NON-FINAL OFFICE ACTION

**MS *Ex Parte* Reexam**
**Central Reexamination Unit**
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir:

### INTRODUCTORY COMMENTS

In response to the Office Action dated April 23, 2008, please amend the above-identified

U.S. Reissue Patent as follows:

**Instructions to amend[1] and add new Claims** begin on page 2 of this paper.

**Remarks/Arguments** begin on page 3 of this paper.

**Deposit Account Fee Authorization** is found at page 48 of this paper.

**Certificate of Service** is found at page 49 of this paper.

06/24/2008 JWHITFIE 00000002 90008064

**Exhibits A-E** at located after the Certificate of Service of this paper.

01 FC:1812                                    50.00 OP

---

[1]   37 C.F.R. §1.121. . . . (j) Amendments in reexamination proceedings. Any proposed amendment to the description and claims in patents involved in reexamination proceedings must be made in accordance with § 1.530. (Nov. 2007).

DSMDB-2440892v01

Control No. 90/008,864                                              Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

## AMENDMENTS TO THE CLAIMS

**Please amend Reissue patent claims 23 and 34 as follows:**

23.     (Amended)     An eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member[s] surfaces on a primary spectacle frame.

34.     (Amended)     An eyeglass device comprising:

a primary spectacle frame having two side portion extensions with a front side, a rear side and a first magnetic member at said rear side,

an auxiliary spectacle frame including two side portions each having an arm extended therefrom, each of said arms containing a second magnetic member, said arms extending across a respective extension from said front side to said rear side so that said first and second magnetic members engage one another whereby said auxiliary spectacle frame is supported by said primary spectacle frame.

**Please add new claim 35 as follows:**

35.     (New)  The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets.

2

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

## REMARKS

     Reconsideration of the above-identified Patent under Reexamination in view of the

above amendments to the claims, and the following remarks, is respectfully requested.

## I.    STATUS OF THE CLAIMS

     Patent claims 1-34 and newly added claim 35 are pending.  Reexamination has been

requested for claims 1-9, 12-13, 16-20, 23-24 and 31-34.  Reexamination has not been requested for

claims 10, 11, 14-15, 21-22 and 24-30.  Newly added claim 35 is similar to claim 3 in specifically

reciting that the magnetic member is a magnet.  Accordingly, the following response will consider

claim 35.

     Claims 23 and 34 have been amended, and discussed in detail below.[23]  No new

matter has been added.  Currently claim 23 has been amended to specify the horizontal surface of

the magnetic member and claim 34 amended to more clearly describe the location of the magnetic

member of the primary frame, _e.g._, claim 23:  "a magnetic member having a horizontal surface";

and, claim 34: "a primary spectacle frame having two side portion extensions with . . . a rear side

and a first magnetic member at said rear side".  The relative positioning now recited in the claim is

clearly supported by, _inter alia_, Chao `545 patent at Column 1, lines 51-53, and Figures 3, 5 and 6.

See Vas-Cath, Inc. v. Mahurkar 935 F.2d 1555, 1564 (Fed. Cir. 1991) ("We agree with the district

court's conclusion that drawings alone may be sufficient to provide the "written description of the

---

[2]    37 CFR 1.530(d)(2) ... For any claim changed by the amendment paper, a parenthetical expression "amended," "twice amended," etc., should follow the claim number.

[3]    (f) Changes shown by markings. Any changes relative to the patent being reexamined which are made to the specification, including the claims, must include the following markings: (1)The matter to be omitted by the reexamination proceeding must be enclosed in brackets; and (2)The matter to be added by the reexamination proceeding must be underlined.

DSMDB-2440892v01

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

invention" required by § 112."), citing In re Berkman, 642 F.2d 427, 429 (C.C.P.A. 1981)( "This

court has held that drawings may be used to satisfy the disclosure requirement.").

New claim 35 has been added, and is dependent on claim 23. As mentioned above,

claim 35 is similar to claim 3 in further limiting one of the magnetic members of the independent

claim to a magnet. Original reissue patent claims 7-9, 13 and 15 similarly further limit the magnetic

member of their respective independent claim. Therefore, claim 35 further limits claim 23, and

should not be construed to be an impermissible broadening.

The April 23, 2008 Office Action ("the Office Action"), rejects patent claims 1-9, 12,

13, 16-20, 23, 24, and 31-34 under 35 U.S.C. §103(a) as being unpatentable over Martin U.S. Patent

No. 5,867,244 ("the Martin patent") in view of Nishioka U.S. Patent No. 5,642,177 ("the Nishioka

patent") or Sadler U.S. Patent No. 5,416,537 ("the Sadler patent"). The Request for Reexamination

("the Request") and the Order Granting Reexamination ("the Order") admit the Nishioka and Sadler

patents were previously considered in prior concluded examinations before the U.S. Patent and

Trademark Office ("PTO"). (Request at 2; Order at 2).

## II.- CORRECTION OF PTO RECORDS AND THE APRIL 23, 2008 OFFICE ACTION

### A. Richard Chao Is The Sole Inventor-The Patent Does Not Name Joint Inventors

The Office Action states at page 2, "This application currently names joint

inventors." This statement is incorrect.

The Chao Re37,545 patent ("the `545 patent") and its predecessor patent, Chao U.S.

Patent No. 5,568,207, identify only "**Richard Chao**" as the named inventor on the front face of

each patent. The prosecution history of the Chao patents and the inventor's declarations confirm

4

Control No. 90/008,864                                     Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Richard Chao as the sole inventor.  Similarly, the PTO's Private and Public PAIR databases identify

Richard Chao as the sole inventor of Re37545.  Correction of the record of the first Office Action

and reexamination proceeding's data is requested.

      The error apparently flows from page 1 of the Request that incorrectly states "In re

Patent of: Richard Chao and Chi Y. Hsien."  On information and belief, "Chi Y (sic: Yi) Hsien" on

the front face of the Chao `545 patent, is a city in Taiwan.[4]  It is believed there is nothing in the

prosecution history to suggest otherwise.

### B.  Incorrect Citation Re: Concurrent Proceeding

      Patent Owner[5] acknowledges its duty pursuant to 37 C.F.R. § 1.565, but does not

understand the reference at page 10 of the Office Action to U.S. Patent No. 6,213,224.  The `224

patent is directed to an "Electric Power Tool . . ." whereas the present invention is directed to

"Auxiliary Lenses for Eyeglasses."  See below:

| United States Patent | 6,213,224 |
|---|---|
| Furuta ,  et al. | April 10, 2001 |

Electric power tool with enhanced strength to axially-applied external force

**Abstract**

An electric power tool is provided including a main housing (2) assembled by fitting
together right and left casing halves (3, 4), a drive unit (5), a spindle (14) coupled to
the drive unit, and a change ring (20). . . .

      Correction, clarification, and reissue of a corrected, non-Final Office Action are

requested.

---

[4]    Patent Owner also notes the Request at page 1 incorrectly identifies "David Yinkai Chao" as the inventor of the
`545 patent.  The Request's data concerning the application that matured into the `545 patent is also in error.

[5]    The Chao `545 patent is jointly owned by Aspex Eyewear, Inc. and Contour Optik, Inc., collectively the
"Patent Owner."

DSMDB-2440892v01

Control No. 90/008,864                                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

The Patent Owner acknowledges citation of U.S. Patent No. 5,321,442 in the,

"Notice of References Cited" provided with the Order, but does not believe this is the item the PTO

alludes to in the paragraph concerning concurrent proceedings.

Patent Owner has previously filed a Statement pursuant to 37 C.F.R. §1.565,

notifying the PTO of Reexamination Control No. 90/008863, and involving a different, and later

filed David Chao patent, i.e., U.S. Patent No. 6,109,747. The Chao `747 patent was cited during

the prosecution of the Chao `545 patent. A copy of the Request, Order to reexamine the `747

patent, Patent Owner's Statement and Requestor's Reply were filed with the §1.565 statement.

However, Patent Owner is unsure if this is the proceeding the Office Action meant to reference.

Clarification is requested.

### III.   CLAIMS 1-9, 12-13, 16-20, 23-24 AND 31-34 ARE PATENTABLE OVER MARTIN COMBINED WITH NISHIOKA OR SADLER

Patent Owner respectfully traverses the rejection of claims 1-9, 12-13, 16-20, 23-24

and 31-34, as allegedly being unpatentable under 35 U.S.C. §103 over the Martin patent when

combined with either the Nishioka or Sadler patents. The rejection is improper and should be

withdrawn.

The rejection is improper and should be withdrawn because *the Martin patent*

*cannot qualify as "Prior Art"* (emphasis added). During the prosecution of the Chao `545 patent, a

declaration pursuant to 37 C.F.R. §1.131 was filed. Based on the §1.131 declaration and evidence

from a concluded interference proceeding, the PTO accorded the Chao `545 patent an effective

filing date prior to May 31, 1995. The Martin patent was filed August 3, 1995, several months after

the effective filing date of Chao `545 patent. Thus the Martin patent is not "Prior Art." Since

6

DSMDB-2440892v01

Control No. 90/008,864                                      Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Martin is not "Prior Art," it cannot be relied upon in the rejection of any claim in the Chao `545

patent. Therefore, the rejection of the claims under 35 U.S.C. §103 is fatally defective, improper,

and should be withdrawn.

The rejection based on the Martin patent is also improper because the secondary

teachings of the Nishioka and Sadler patents teach away from the redesign and reconstruction of the

Martin patent discussed in the Office Action. KSR Int'l Co. v. Teleflex Inc. et al., 127 S.Ct. 1727,

1740 (April 30, 2007). Further, the redesign and reconstruction of Martin's auxiliary frame

described in the Office Action impermissibly changes the principle of operation of Martin's device.

In re Ratti, 270 F.2d 810, 812 (CCPA 1959). Therefore, the claims undergoing reexamination are

not rendered obvious by the combination of references cited in the Office Action.

A.       The Rejections Of Record Are Improper –
         The Martin Patent Is Not Prior Art

The prosecution history of the Chao `545 patent makes clear the Chao `545 patent

was accorded a filing date prior to May 31, 1995. Neither the Request nor the Order mentions the

declaration under 37 C.F.R. §1.131, filed during the prosecution of the Chao `545 patent. We now

refer to the prosecution history of the Chao `545 patent undergoing reexamination to explain.

1.       The Martin Patent Is Not Prior Art

The Chao `545 patent issued on February 12, 2002, and matured from U.S. Patent

Application Serial No. 09/182,862 that was filed on October 21, 1998. The `862 application is a

reissue of Chao U.S. Patent No. 5,568,207. The Chao `207 patent matured from U.S. Patent

Application Serial No. 08/554,854. The `854 application was filed on November 7, 1995. Thus the

7

DSMDB-2440892v01

Control No. 90/008,864                                          Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

filing specifics of the Chao `545 patent, identified at page 1 of the Request, ¶ (1), lines 1-3, are

inaccurate.

The Request at page 2 states, "the effective filing date of US `545 is the filing date of

U.S. Patent Application Serial No. 08/554,854: November 7, 1995." This statement is incorrect. *It

is error* to state November 7, 1995, is the "effective" filing date of the Chao `545 patent.

Patent Owner notes the Request includes some discussion of certain portions of the

Chao `545 patent prosecution history, as does the Order.  The Order does refer to a rejection of

certain claims during prosecution of the Chao `545 patent, involving the "contested" Twincome-

Pentax documents.  However, notably missing from both is: (1) any discussion concerning the Chao

Declaration under 37 C.F.R. §1.131, and (2) discussion of PTO statements according the Chao `545

patent an earlier effective filing date relied upon to antedate and remove the Twincome-Pentax

documents as "potential" prior art.

The Chao §1.131 Declaration declares an effective filing date prior to May 31, 1995.

David Y. Chao, in-part declared:

> 6.  Prior to May 31, 1995, while I was working in Taiwan I made a first drawing entry into
> my Day Planner.  The drawing entry illustrates a figure that depicts what I thought my
> brother Richard Chao had invented and communicated to me in Taiwan.  (Chao
> Interference Exhibits 1105).  (Exhibits 8)

8

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

8.   Prior to May 31, 1995, but after I sketched the drawing (the figure of Exhibit 8) referred to in ¶6 above, I traveled to the United States (the "US")(hereinafter the "first trip").  A copy of business records verifying that I was in the US prior to May 31, 1995 are attached as Exhibit 10. The business records include a copy of my American Express Bill.  The copy of my American Express Bill attached as Exhibit 10 has a closing date prior to May 31, 1995, and identifies the charges I made in California and Pennsylvania prior to May 31, 1995.  A copy of charge receipts that I signed and received while I was in the US prior to May 31, 1995, and identified on my American Express Bill, are also attached as part of Exhibit 10.  The Credit Card Number and dates have been redacted from these business records.

9.   As is my customary practice, I had my Day Planner referred to in ¶ 6 above with me during my first trip to the US prior to May 31, 1995, which Day Planner included the illustration identified in ¶ 6 supra.

10.  Prior to May 31, 1995, but after I returned from my first trip to the US discussed in ¶ 8 above, and while working in Taiwan, I made a second drawing entry into my Day Planner which illustrates a figure which depicts what I thought my brother Richard Chao had invented and communicated to me while in Taiwan.  (Chao Interference Exhibits 1106).  (Exhibit 9).  The second drawing entry into my Day Planner made prior to May 31, 1995, but after the first drawing entry into my Day Planner, illustrates, inter-alia, a magnetic member extending downward from an auxiliary frame toward a projection on the primary spectacle frame holding a magnetic member, as does Figure 7 of the Chao '207 patent.

9

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

The prosecution history demonstrates and the PTO expressly states the Chao `545

patent is entitled to an earlier effective filing date, i.e., prior to May 31, 1995, and prior to the filing

date of the Martin patent.[6] Thus the Martin patent is not available as "Prior Art."

During prosecution of the `545 patent, the PTO stated at page 6 of the May 22, 2001

Office Action:

> *Response to Amendment*
>
> 12.    The declaration/affidavit of David Chao under 37 CFR 1.131 (see exhibit #4) filed on April 20, 2001 with the evidence (see exhibits #8-10) and the facts fount in the interference 104,051, papers #149,185 are sufficient to overcome the Twin-come documents reference.

On July 30, 2001, the PTO reaffirmed the sufficiency of the Chao Declaration under

37 C.F.R. §1.131 to antedate the "Twincome-Pentax" documents at page 2 of the "Reasons for

Allowance" statement, an attachment to the Notice of Allowance in the prosecution history of the

Chao `545 patent:

---

[6]    The Martin patent requires the use of three clips, including the essential, tension applying bridge clip, features neither claimed nor disclosed by the Chao `545 patent. Thus, the Martin and Chao `545 patent, or the predecessor `207 patent, do not claim the same invention that Martin is claiming. A declaration pursuant to 37 C.F.R. §1.131 is proper and effective in antedating the Martin patent. See M.P.E.P. §2258 G at 2290 (Rev. 5, 2006).

10

DSMDB-2440892v01

Control No. 90/008,864                                              Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Application/Control Number: 09/182,862                                        Page 2
Art Unit: 2873

### REASONS FOR ALLOWANCE

1.     The following is an examiner's statement of reasons for allowance: (I) The
declaration/affidavit of David Chao under 37 CFR 1.131 (see exhibit #7) filed on April 20, 2001
with the evidence (see exhibits #8,9,10) and the facts fount in the interference no.: 104,051,
papers #149,185 (see exhibits #3,4) are sufficient to overcome the Twincome-Pentax reference.
Therefore, the Twincome-Pentax reference is no longer applicable. In another word, the rejection
under 35 USC 102(a) over Twincome-Pentax reference in the action, paper #5, has been
withdrawn. (II) In the amendment filed on April 20, 2001, all the cancellation of the added Fig.

Thus the Chao 37 C.F.R. §1.131 Declaration, combined with evidence found in
Interference No. 104,051, were deemed sufficient by the PTO to antedate the contested the
"Twincome-Pentax" documents, and remove it as a reference.  An Information Disclosure
Statement, filed on June 23, 2008, but under separate cover, includes a copy of the "Twincome-
Pentax" documents so that it may be made of record in these reexamination proceedings.  However,
"Twincome-Pentax" was previously and fully considered by the PTO and does not qualify as prior
art.

Therefore, Official records maintained by the PTO accorded the `545 patent
undergoing reexamination an effective filing date prior to May 31, 1995.  The Martin patent is not
available as prior art, and not available as a reference to be relied upon in these reexamination
proceeding, or in the rejections of claims 1-9, 12-13, 16-20, 23-24 and 31-34.  Therefore, the
rejection of claims 1-9, 12-13, 16-20, 23-24 and 31-34 undergoing reexamination is improper, and
would also be inappropriate for those claim not being reexamined, and should be withdrawn.

11

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

**B.** **The Office Action Rejection Of Claims Is Improper And Does Not Establish Obviousness- Martin Is Flawed As A Primary Reference – Nishioka And Sadler Are Deficient As Secondary References And Teach Away - Patent Claims 1-9, 12-13, 16-20, 23-24 And 31-34 Are Not Obvious Over Martin Combined With Either The Nishioka Or Sadler Patent**

Patent claims 1, 4, 6, 12, 14, 16, 17, 18, 19, 20, 23, 24 and 31-34 are independent claims. **We treat the independent claims separately.** Because the independent claims are not obvious, dependent claims 2-5 and 7-9 are also not obvious. See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc., 520 F.3d 1358, 2008 U.S. App. LEXIS 6786, *12, 86 U.S.P.Q.2d 1196 (CA Fed. 2008).

**1.** **Claims 1-3**

The Office Action ("OA") states Martin has a primary spectacle with upper side portions and auxiliary spectacle arms 40, 42. OA at 3. The side portions of the auxiliary frame are stated to have arms 40 and 42 that extend over and engage the upper side portions of extensions 18 and 20. Id.

**a)** **The Martin Patent**

The Office Action admits the Martin patent fails to disclose the use of magnetic members, projections, and the location and function of the claimed projections (OA at 3):

> . . . magnetic members secured in projections secured to the rear and side portions of the primary frame, and magnetic members secured to the arms for engaging the other magnetic members is not disclosed.

There are other differences between the Martin patent and claim 1. Martin patent

12

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

Figure 2 is replicated below and illustrates "L-shaped" clips 40 and 42, disclosed to be "outboard hooks 40 and 42" (Martin: 3/19-20), with free ends facing inwardly toward the eyeglass bridge and one another:



The outboard hooks are part of the disclosed three clip arrangement that is expressly stated to be "unique" (Martin: 3/17-19). A minimum of three clips is required for Martin's auxiliary frame (Martin: 1/67-2/8):

> The clip-on eyewear of the present invention . . .
> having a minimum of three simple clips that hold the
> auxiliary frame on the frame of the conventional
> glasses. . . This arrangement is provided by a pair of
> lens frames joined by a flexible bridge and a single
> reversed clip that engages the bridge of the
> conventional glasses to exert a force to hold the frames
> on the conventional eyewear.

The outboard hooks are disclosed to clip around frames 12 and 13 (Martin: 3/19-21) and Martin expressly discloses the outboard clips are maintained "**around** the frame of conventional eyeglasses" (3/65-67) (emphasis added). Thus the Martin patent requires a minimum of three clips, a clip arrangement that is expressly disclosed to be unique, and hooks that "wrap around" the lens frame. Thus, Martin's invention requires the use of three separate attachment mechanisms that in combination with one another, attach the auxiliary frame to the primary frame.

13

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

According to the Office Action, the auxiliary frame of Martin is "stably support[ed]" on the frame "due to clips 40, 42 and 46 and due to the clips *resting* on top of extensions 18, 20." (emphasis added). The Patent Owner disagrees that Martin's clips 40 and 42 "rest" on temple blocks 18, 20. Martin makes clear that the clips 40 and 42 wrap around the primary frame, and are forcibly applied into contact by the tension of clip 46 to attach the auxiliary frame to the conventional eyewear (1/65-2/8)[7]:

> The clip-on eyewear of the present invention . . . [has] . . . a minimum of three simple clips that hold the auxiliary frame on the frame of the conventional glasses . . *a single reversed clip* that engages the bridge of the conventional glasses to *exert a force to hold the frames on the conventional eyewear*. (emphasis added).

Martin makes clear that the clips 40 and 42 may include a resilient member to prevent scarring of the primary lens frame *because the clips 40 and 42 forcibly contact the primary lens frame* (3/47-50) (emphasis added):

> Preferably outboard clips 40 and 42 are covered with resilient sleeve 48 and 50 to apply some gripping force to conventional lens frames 12 and 13, and prevent scarring the frames.

Thus characterizing the interaction of Martin's auxiliary and primary frames as involving "resting" is clearly inaccurate.

In any event, the obviousness positions described in the Office Action not only minimize differences between Martin and the Chao `545 patent, but require substantial redesign and reconstruction of the elements shown in Martin. The attachment of Martin's auxiliary frame

---

[7]   The notation 1/65-2/8 refers to column and line number of the patent.

14

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

requires **wearer applied force** to mount and attach the auxiliary frame to the primary frame (Martin: 4/8-12):

> Thus, there has been disclosed unique auxiliary clip-on eyewear . . . three clips are necessary to . . . hold the auxiliary eyewear on a conventional frame. . . . They are installed or removed by clipping one clip around the block (sic: lens frame) and then the center clip on the bridge of the conventional frame with a slight tension applied to position the other clip. Removal is a simple reversal of this procedure.

Notwithstanding all these differences, including the complete lack of any projection component in Martin, or Martin's different method of attaching the auxiliary frame, which the Office Action appears to ignore, the Office Action proceeds to improperly redesign the disclosed and patented invention, primarily relying on a single deficiency of the Martin patent, i.e., "magnetic members." See, In re Ratti, 270 F.2d 810, 812 (CCPA 1959):

> We hold, further, that the combination of Jepson with Chinnery et al. is not a proper ground for rejection of the claims here on appeal. This suggested combination of references would require a substantial reconstruction and redesign of the elements shown in Chinnery et al. as well as a change in the basic principles under which the Chinnery et al. construction was designed to operate.

### b)      The Nishioka And Sadler Patents

The Office Action relies on the Nishioka or Sadler patents for the use of magnets. The Office Action states "Nishioka and Sadler teach using magnets on primary frames for coupling to magnets on projections of auxiliary frame" and concludes this produces a "stable . . . manner to couple auxiliary frame to a primary frame." (OA at 4). However, the Office Action fails to articulate or provide any explicit facts, e.g., identify what structure, if any, of Nishioka or Sadler is a

15

Control No. 90/008,864                                          Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

magnet positioned at the "rear and side portions" of the primary frame, as required by claim 1, or

what structure, if any, of Nishioka or Sadler, could or should be construed to be a "projection" on

the primary frame. See KSR Int'l Co. v. Teleflex Inc. et al., 127 S.Ct. 1727, 1741 (April 30, 2007)

> To facilitate review, this analysis should be made
> explicit. See In re Kahn, 441 F.3d 977, 988 (CA Fed.
> 2006) "[R]ejections on obviousness grounds cannot be
> sustained by mere conclusory statements; instead, there
> must be some articulated reasoning with some rational
> underpinning to support the legal conclusion of
> obviousness").

Further, the projections of claim 1 of the `545 patent are located on the primary

frame, not the auxiliary frame as stated in the Office Action.

Nishioka and Sadler do not suggest placing the magnets at *any* location on the

primary frame or the auxiliary frame.  Instead, Nishioka and Sadler illustrate embedding the

magnets in the front lens frame / face of the primary frame.

As for the templeless sunglass frame, Nishioka embeds the magnets within

extensions of the sunglass lens frame that lie within the plane defined by the sunglass lenses,

consistent with patentee's "templeless" sunglass frame.  Similarly, Sadler illustrates attaching the

magnets to an inner side of the auxiliary frame, i.e., illustrated to be the rear surface of the auxiliary

lenses that is juxtaposed to the front face of the primary frame.

Nishioka initially disparages the sunglasses and eyeglasses of the prior art, "various

eyeglasses have been proposed . . . those provided with clip-on sunglasses, and those with

templeless sunglasses positioned inside thereof" (Nishioka: 1/16-18).  As for the templeless

sunglasses of the prior art, they are "disagreeable and incongruous" because they are positioned at

the rear face of the primary frame, i.e., positioned on the inside of the primary frame, and "have

16

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

their ends simply hanged on the both temples of sunglasses are not stable." (Nishioka: 1/23-28). In

both the Summary of the Invention (Nishioka: 1/39, 46, 49, 55), as well as in the Detailed

Description of the Preferred Embodiment sections of the patent, Nishioka makes clear the

sunglasses are "templeless." Nishioka, repetitively mentions no less than 17 times that the

sunglasses, i.e., the auxiliary frame, is templeless. This repetitive teaching, coupled with a

disclosure of only front face positioned magnets: "the present invention . . . templeless sunglasses

can be magnetically attached to the front of an eyeglasses frame;" would suggest to one of ordinary

skill in the art "front" mounting only. These teachings by Nishioka implicitly discourage one of

ordinary skill in the art from using *any* mounting mechanism; especially mounting that is

inconsistent with a "templeless" frame. Thus, Nishioka teaches away from the claimed auxiliary

frame mounting structure. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d 551, 553 (Fed. Cir.

1994) ("A reference may be said to teach away when a person of ordinary skill, upon reading the

reference, would be discouraged from following the path set out in the reference, or would be led in

a direction divergent from the path that was taken by the applicant.").

   Sadler also teaches away from using magnets and clips together. Thus Sadler teaches

away from the Office Action's / Request's proposed redesign and reconstruction of Martin's

auxiliary frame. Sadler expressly discloses, as the first listed object of the "present invention," to

provide eyeglasses with "means for securing auxiliary lenses *which does not employ clips*" (Sadler:

1/34-35). Sadler only illustrates magnets located in a plane substantially parallel to the plane

defined by the auxiliary lenses, i.e., a vertical plane. Similarly, the magnets of the primary frame

are embedded within the front surface of the primary eyeglass frames, also in a plane illustrated to

17

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

be substantially vertical and parallel to the vertical planes defined by the auxiliary lenses 15 and

auxiliary magnets 17.

Sadler does not appear to disclose or illustrate any projections on any rear or inner

portion of the primary eyeglass frame.  Sadler's mentioning of magnets at the temporal region has

nothing to do with attachment or engagement to the frame at any location between the hinge 7 and

frame 1, but instead the positioning (embedding) of the magnets at the top of frame 1 near the

temple (Sadler: 3/11-15):

> If the first magnetic members 13 are attached at
> positions which correspond to the temporal region of
> the wearer, so too would be the second magnetic
> members 17. In this case, the auxiliary lenses 15 would
> be supported from the top. Thus, a more secure bond is
> achieved.

Thus, Sadler expressly teaches away from the proposed redesign and reconstruction

of Martin's auxiliary frame.  See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553.

### c)   The Reasons For Obviousness Stated In The First Office Action Are Baseless

As stated above, "[R]ejections on obviousness grounds cannot be sustained by mere

conclusory statements; instead, there must be some articulated reasoning with some rational

underpinning to support the legal conclusion of obviousness." KSR at 1741, quoting In re Kahn,

441 F.3d 977, 988 (CA Fed. 2006).

It appears the PTO's basis for the proposed redesign and reconstruction of Martin's

auxiliary frame is the intended purpose of Martin's clips arrangement:

> Martin does disclose that the purpose of the invention
> is to provide a means by which an auxiliary frame
> could be mounted to the primary frame in a removable

18

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

> manner and in which the mounting is nearly
> undetectable. (emphasis added.

The Office Action then opines:

> It would have been obvious to have provided the arms
> 40, 42 with magnets for mating with magnets placed
> on either frames 10, 12, and/or extensions 18, 20, as
> taught by Nishioka and Sadler, as this would further
> act to supplement the clips in stably supporting the
> auxiliary frames on the primary frames and would still
> allow the auxiliary frames to be easily attached to and
> detached from the primary frames.

However, as discussed above, the Martin patent is admitted to lack many of the

limitations of claim 1, and certainly the magnetic members of every Chao patent claim.

Notwithstanding these and other deficiencies, as well as the limitations of the Nishioka and Sadler

patents, and their express teachings not to do what the Office Action expressly proposes, the Office

Action still concludes that Patent Owner's claimed invention is obvious.

First, Nishioka and Sadler only teach magnetic engagement at the front surface of the

primary frame, and not the rear mounted magnetic member engagement required by Chao `545

patent claim 1. Second, Martin's auxiliary frame is maintained on the primary frame under a

mechanically imposed positive force. Third, adding magnets to Martin's auxiliary frame, as

proposed by the Office Action, would complicate and possibly undermine the "removable"

requirement of Martin. Clearly, one of ordinary skill in the art would understand from Martin that it

was important and desirable to facilitate and not hinder removal of the auxiliary frame. Stated

otherwise, one would not make it any more difficult to remove the auxiliary frame in Martin than

that already caused by the amount of force a wearer must apply to clip 46 to remove the auxiliary

frame. Adding magnets to outboard clips 40 and 42, as proposed by the Office Action, would

19

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

necessarily increase the force holding the auxiliary frame in place and similarly increase the amount

of force necessary to disengage the auxiliary frame. What has not been articulated in the Office

Action is why one of ordinary skill in the art would even contemplate making removal of Martin's

auxiliary frame more difficult than patentee contemplated. The proposed redesign and

reconstruction of Martin's auxiliary frame would appear to be contrary to patentee's inventive

intention, and inconsistent with the assertion in the Office Action that adding magnetic attraction

would make removal easier. Under KSR, the standard of an argument for obviousness is to be

"articulated reasoning with some rational underpinning to support the legal conclusion of

obviousness." KSR, 127 S.Ct. at 1741. Since the Office Action does not articulate a rational reason

to increase the engagement force necessary to engage Martin's auxiliary frame with Martin's

primary frame, there is no support or basis for the obviousness conclusion discussed in the Office

Action.

The Office Action also does not articulate a reason to ignore prior art that expressly

teaches away from the proposed redesign and reconstruction of Martin's auxiliary frame, As

discussed above, while Nishioka and Sadler do teach "front" face mounted magnets, Nishioka

clearly suggests limiting the position of the magnets to a position on a templeless frame. Thus the

prior art relied on in the Office Action actually teaches away from the proposed redesign of

Martin's auxiliary frame. KSR, 127 S.Ct. at 1740:

> The Court relied upon the corollary principle that when
> the prior art teaches away from combining certain
> known elements, discovery of a successful means of
> combining them is more likely to be nonobvious.

20

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

Similarly, Sadler expressly teaches the use of the magnets, but not with clips.  Thus, Sadler also teaches away from the proposed redesign and reconstruction of Martin's auxiliary frame.  See id.  See also Gurley at 553.

As for the Office Action's argument that increasing the stability of the auxiliary frame on the primary frame of Martin would be accomplished by adding magnets to the existing system, it is not seen how or why the existing unique clip system of Martin, that forcibly engages the auxiliary frame to the primary frame, is unstable in any way, or could become any more stable than in its present design.  Martin makes clear that the disclosed clip arrangement is unique (Martin: 3/17), and the clip 46 forcibly applies pressure to the frame such that each hook 40 and 42 is "forced" into contact with blocks 18 and 20 (Martin: 3/26-28).  Also, outboard clips hook around and resiliently engage the lens frames 12 and 13.  The Office Action provides no factual evidence that recognizes or suggests that Martin's "unique" clip arrangement is deficient in any regard, or that Martin's forcibly held auxiliary frame is unstable, or supplemental attachment components are necessary to make the clip-on eyewear more stable than that already provided by the present design.  No articulated and rational reason has been provided to justify a conclusion of obviousness.  See KSR, 127 S.Ct. at 1741:

> "[R]ejections on obviousness grounds cannot be
> sustained by mere conclusory statements; instead, there
> must be some articulated reasoning with some rational
> underpinning to support the legal conclusion of
> obviousness") quoting In re Kahn, 441 F.3d 977, 988
> (Fed. Cir. 2006).

In addition, the last statement at page 4, ¶(1) of the Office Action states that supplementing Martin by adding magnets "would still allow the auxiliary frames to be easily attached to and detached from the primary frames."  This bold assertion is not substantiated by any

21

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

PTO provided declaration or affidavit.  As discussed above, this argument is technically flawed, and should be withdrawn.

The Office Action then opines:

> The specific placement of the magnets on the two frames would be obvious to one skilled in the art. Any surface of the clips 40, 42 and either frames 10, 12 or extensions 18, 20 which come into contact with each other would be obvious placements for the magnets.

As discussed above, the secondary references to Nishioka and Sadler either teach away from (1) adding magnets to any location other than the front face of the primary frame or (2) using magnets in combination with clips.  In contrast to the facts in KSR, the "prior art" relied upon in these reexamination proceedings and Office Action only suggest placement of magnets in the planes defined by the lenses of the primary eyeglasses or the lenses of the auxiliary frame.  There is no factual evidence of locating magnets for mounting the auxiliary frame or sunglasses at any other location.  See KSR 127 S.Ct. at 1744-45:

> And from the known wire-chafing problems of Rixon, and Smith's teaching that "the pedal assemblies must not precipitate any motion in the connecting wires," Smith, col. 1, lines 35-37, Supplemental App. 274, the designer would know to place the sensor on a nonmoving part of the pedal structure.

These arguments by the Office Action appear to be little more than impermissible hindsight, especially in view of Nishioka and Sadler separately teaching away from the proposed redesign and reconstruction of martin's auxiliary frame and attachment principles:

> A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.

22

DSMDB-2440892v01

Control No. 90/008,864                                         Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

KSR, 127 S.Ct. at 1742-43; Immunogenics, N.V. v Abbott Labs., 512 F.3d 1363, 1374 (CA Fed.

2008):

> 3. We are mindful that in *KSR*, the Supreme Court made clear that a finding of teaching, suggestion, or motivation to combine is not a "rigid rule that limits the obviousness inquiry." ... We must still be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention. (Internal citations omitted)(emphasis added).

Alternatively, the Office Action opines at 5:

> . . . simply rotating the hook members 40, 42 ninety (90) degrees such that the extensions extend vertically downward instead of horizontally across would also have been an obvious manner in which to allow the hooks to latch onto extensions 18, 20 instead of the frames.

There are at least two reasons this argument fails. First, there is simply no disclosure within the four corners of the Martin patent that could provide any reason to make the proposed redesign, and completely change the principle of Martin's unique mounting arrangement. See, In re Ratti, 270 F.2d at 812. Second, the Office Action is devoid of any factual evidence to support such speculation. See, KSR, 127 S.Ct. at 1741.

There is nothing within the four corners of the Martin patent that teaches or suggests, expressly or inherently, that the position of the free ends of clips 40 and 42 have any orientation other than that illustrated in Figure 2. Figure 4, replicated below, is a side view taken along 4-4 of Figure 2, and illustrates that clip 40, like that of clip 42, merely has a resilient sleeve 48 that contacts "temple mount or block[s]" 18:

23

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B



The resilient sleeves 48 and 50 that circumscribe the outboard clips are expressly disclosed to "grip" the conventional lens frame and to prevent scarring (Martin: 3/46-48). There is no component on the resilient sleeve that "extends downwardly" below the upper side plane of blocks 18 and 20.

As illustrated, the free ends of Martin's clips are arranged such that they are oriented in a direction towards the bridge of the eyewear and one another. According to Martin, the disclosed three clip arrangement is "unique" (Martin: 3/17-19). Alteration of that system would alter patentee's intended purpose, i.e., alter the function of the clips 40 and 42 to no longer directly grippingly engage lens frames 12 and 13, which is part of patentee's unique arrangement (Martin: 3/46-48). See, In re Ratti, 270 F.2d at 812.

The final argument proffered by the Office Action is based on the "obvious to try" test:

> . . . it would have been obvious to try magnet couplings from the number of known means for attaching auxiliary frames to primary frames as one skilled in the art would have had every reason to expect success in that the magnets would be expected to behave as all magnets behave and like poles attracting each other could obviously be used as a coupling means for two components desired to be removably, stably coupled together.

24

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

According to KSR, "obvious to try" "may" be appropriate:

> When there is a design need or market pressure to
> solve a problem and there are a finite number of
> identified, predictable solutions, a person of ordinary
> skill has good reason to pursue the known options
> within his or her technical grasp. If this leads to the
> anticipated success, it is likely the product not of
> innovation but of ordinary skill and common sense. In
> that instance the fact that a combination was obvious to
> try *might* show that it was obvious under § 103.

The Office Action provides no factual evidence of a design need. There is no evidence that the Martin patent eyeglass system is unstable. There is no factual evidence to verify or justify a need to redesign Martin. There is no factual evidence the "Prior Art" is dissatisfied with the magnetic mounting principle of Nishioka or Sadler, i.e., magnetic engagement at the front face of the primary eyeglasses. This coupled with Sadler's express teaching away from the use of clip technology, or Nishioka's disclosure discouraging the use of sunglasses, "auxiliary" frames, with templeless mounting, renders the Office Action's "obvious to try" argument one founded solely in impermissible hindsight.

Furthermore, the references presently relied upon in the Office Action appear to establish either a resistance by the eyeglass industry to try any other mounting technique or satisfaction with the front face mounting principle. In view of the above arguments, it is submitted that the rejection of claim 1 as obvious over Martin combined with Nishioka or Sadler, is improper and should be withdrawn.

Claims 2 and 3 respectively depend from claim 1. The office Action states:

> With respect to claim 2, since the projections holding
> the 1st magnetic members do not attach to the top of
> the frame, the projections and magnets are clearly
> below the upper side portion of the primary frame.

25

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008                    Docket No.: A8445.0001/P001-B

> When the hook is rotated ninety (90) degrees the magnet is downward toward the projections. Even when the hooks are not rotated, when the magnet is placed on the bottom portion of the hook clips 40,42, then the magnet extends downward toward the projections as well.

> With respect to claim 3, both Sadler and Nishioka disclose that both magnetic members can be magnets.

As discussed above, claim 1 is not obvious over Martin combined with Nishioka or Sadler. Martin is not available as prior art, thus rendering the arguments in the Office Action facially improper. None of the references teach or suggest the projections of claim 1, or magnets secured at a rear side of the primary frame. Nishioka teaches away from securing magnets at a rear side of the primary frame by teaching templeless frames, and only disclosing front face mounted magnets. Sadler teaches away from using any clips. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553. The Office Action improperly redesigns and reconstructs the Martin eyeglass device, and alters its principle of operation. In re Ratti, 270 F.2d at 812. For all these reasons, and more, independent claim 1 is not obvious. Because claims 2-3 depend on a patentable, and non-obvious claim, they too are not obvious. See Ortho-McNeil Pharm., 520 F.3d at 1358. Therefore, the rejection of claims 1-3 is improper and should be withdrawn.

## 2.    Claims 4 And 5

Claim 4, in-pertinent part recites:

> 4.    (Currently amended)  An eyeglass device comprising:

> . . . the primary spectacle frame including two side portion extensions extended therefrom . . . a first magnet having a horizontal surface and secured to said side portion extensions of the primary spectacle frame, and

26

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

> an auxiliary spectacle frame . . . including two auxiliary side portions, the auxiliary spectacle frame including two second magnets, each secured to one of the auxiliary side portions for respectively engaging the horizontal surface of one of the first magnets . . . .

The Office Action states,

> . . .the lenses in the frames of Martin define a vertical plane. As outlined above with respect to claim 1, the magnets on the primary frames or extensions would have horizontal surfaces when placed on the rear portions of the frames or on the top rear-facing surfaces of the extensions 18,20.

However, claim 4 is not obvious over Martin combined with Nishioka or Sadler. Martin is not available as prior art, thus rendering the arguments in the Office Action facially improper. Patent Owner can find no factual evidence within the Office Action that illustrates the use or knowledge of mounting magnets so that horizontal surfaces of the magnetic material engage one another. Nishioka, in teaching away from the use of anything other than front face mounted magnets, implicitly teaches away from the horizontal surface engaging magnet material of claim 4, rendering the obvious arguments of the Office Action improper. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553. Similarly, the convoluted redesign of Martin to rotate the outboard hooks and add magnets is inconsistent with the holding in In re Ratti, 270 F.2d at 812. Sadler teaches the skilled practitioner not to use both magnets and clips in the same system. KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553. These reasons alone adequately rebut the arguments of the Office Action.

These arguments by the Office Action appear to be little more than impermissible hindsight, especially in view of Nishioka and Sadler separately teaching away from the proposed modification

27

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

> A factfinder should be aware, of course, of the
> distortion caused by hindsight bias and must be
> cautious of arguments reliant upon ex post reasoning.

KSR, 127 S.Ct. at 1742-43; Immunogenics, 512 F.3d at 1374:

> 3. We are mindful that in *KSR*, the Supreme Court
> made clear that a finding of teaching, suggestion, or
> motivation to combine is not a "rigid rule that limits
> the obviousness inquiry." ... We must still be careful
> not to allow hindsight reconstruction of references to
> reach the claimed invention without any explanation as
> to how or why the references would be combined to
> produce the claimed invention. (Internal citations
> omitted)(emphasis added).

As for claim 5, because claim 5 depends on patentable, non-obvious claim 4, claim 5

is also not obvious. See Ortho-McNeil Pharm., 520 F.3d at 1358. Therefore, the rejection of claims

4-5 is improper and should be withdrawn.

### 3.   Claims 6-9

The Office Action alleges with respect to claims 6-9:

> With respect to claim 6, since the magnets on the
> auxiliary clip hooks 40, 42 are oriented to be on the
> bottom of the clip hooks or on the front-facing surfaces
> of the clip hooks, either of these would have horizontal
> surfaces. With respect to claims 7-9, see claim 3.

Original claim 6, in pertinent, part recites:

> 6.      An eyeglass device comprising:
>
>         a primary spectacle frame . . . including two
> side portion extensions extended therefrom . . .
> including two first magnetic members respectively
> having a horizontal surface and being secured to one of
> the side portions extensions of the primary spectacle
> frame; and

28

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

> an auxiliary spectacle frame for supporting
> auxiliary lenses therein, and for disposing in front of
> the primary spectacle frame, the auxiliary spectacle
> frame including two auxiliary side portions . . , two
> second magnetic members each secured to one of the
> auxiliary side portions and having a horizontal surface
> for coupling a corresponding horizontal surface of one
> of the first magnetic members . . ..

However, claim 6 is not obvious over Martin combined with Nishioka or Sadler. Martin is not available as prior art, thus rendering the arguments in the Office Action facially improper.

Patent Owner can find no factual evidence within the Office Action that illustrates the use or knowledge of mounting magnets so that horizontal surfaces of the magnetic material engage one another. See, KSR, 127 S.Ct. at 1741. Nishioka, in teaching away from the use of anything other than front face mounted magnets, implicitly teaches away from the horizontal surface engaging magnet material of claim 6, rendering the obvious arguments of the Office Action improper. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553.

The convoluted redesign of Martin to rotate the outboard hooks and add magnets is inconsistent with the holding in In re Ratti, 270 F.2d at 812. Sadler also teaches away from the proposed redesign / reconstruction / modification of Martin because Sadler discourages the use of clips and magnets together. In fact, Sadler acknowledges the prior clip art and expressly chooses to avoid its use. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553. These reasons alone adequately rebut the arguments of the Office Action.

These arguments by the Office Action appear to be little more than impermissible hindsight, especially in view of Nishioka and Sadler separately teaching away from the proposed modification

29

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

> A factfinder should be aware, of course, of the
> distortion caused by hindsight bias and must be
> cautious of arguments reliant upon ex post reasoning.

KSR, 127 S.Ct. at 1742-43; Immunogenics, 512 F.3d at 1374:

> 3. We are mindful that in *KSR*, the Supreme Court
> made clear that a finding of teaching, suggestion, or
> motivation to combine is not a "rigid rule that limits
> the obviousness inquiry." ... <u>We must still be careful
> not to allow hindsight reconstruction of references to
> reach the claimed invention without any explanation as
> to how or why the references would be combined to
> produce the claimed invention.</u> (Internal citations
> omitted)(emphasis added).

As for claims 7, 8 and 9, each depends directly from claim 6. Because claim 7, 8 and 9 each depend on patentable, non-obvious claim 6, claims 7, 8 and 9 are respectively also not obvious. See Ortho-McNeil Pharm., 520 F.3d at 1358. Therefore, the rejection of claims 6-9 is improper and should be withdrawn.

### 4.   <u>Claims 12-13</u>

With respect to claim 12, the Office Action states,

> With respect to claim 12, as noted above with respect
> to claim 1, a magnetic member on the rear side of the
> extension will obviously couple to a magnetic member
> on the front-facing side of the hook clip member when
> rotated ninety (90) degrees.

However, claim 12 is not obvious over Martin combined with Nishioka or Sadler. Martin is not available as prior art, thus rendering the arguments in the Office Action facially improper.

As discussed <u>supra</u>, Patent Owner can find no factual evidence within Martin or the Office Action that justifies the redesign and reconstruction of Martin so that the outboard clips have

DSMDB-2440892v01

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

any orientation other than wrapping around the lens frame 12 and 13, i.e., not a scintilla of evidence

that the outboard clips of Martin could or should be rotated 90 degrees as proposed in the Office

Action. The proposed redesign and reconstruction of Martin completely and improperly alters the

operating principle of the Martin patent. See In re Ratti, 270 F.2d at 812. Further, Sadler expressly

teaches the skilled practitioner not to use both magnets and clips in the same system. Thus Sadler

teaches away from the proposed redesign / reconstruction / modification of Martin. See KSR, 127

S.Ct. at 1740; In re Gurley, 27 F.3d at 553. In addition, Nishioka also teaches away from the

proposed redesign / reconstruction / modification of Martin, in teaching away from the use of any

magnet arrangement other than front face mounted magnets on the primary frame.

These arguments by the Office Action appear to be little more than impermissible

hindsight, especially in view of Nishioka and Sadler separately teaching away from the proposed

modification

> A factfinder should be aware, of course, of the
> distortion caused by hindsight bias and must be
> cautious of arguments reliant upon ex post reasoning.

KSR, 127 S.Ct. at 1742-43; Immunogenics, 512 F.3d at 1374 (CA Fed. 2008):

> 3. We are mindful that in KSR, the Supreme Court
> made clear that a finding of teaching, suggestion, or
> motivation to combine is not a "rigid rule that limits
> the obviousness inquiry." ... We must still be careful
> not to allow hindsight reconstruction of references to
> reach the claimed invention without any explanation as
> to how or why the references would be combined to
> produce the claimed invention. (Internal citations
> omitted)(emphasis added).

31

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

As for claim 13, because claim 13 depends on patentable, non-obvious claim 12, claim 13 is also not obvious.  See Ortho-McNeil Pharm., 520 F.3d at 1358.  Therefore, the rejection of claims 12-13 is improper and should be withdrawn.

### 5.    Claims 16-20

With respect to claims 16-20, the Office Action states "see claims 1 and 12."  First, as discussed above with reference to claims 1 and 12, Martin combined with Nishioka or Sadler is facially improper.  Martin is not available as prior, and therefore the rejection of claims 16-20 is improper and should be withdrawn.

Further, each of claims 16-20 respectively requires a primary frame and an auxiliary frame, and that a magnetic member be secured to a / the rear side of the primary spectacle frame side extensions.  As discussed above, Nishioka teaches away from the use of any magnet arrangement other than front face mounted magnets on the primary frame, i.e., the use of only templeless sunglasses, i.e., templeless auxiliary frames.  See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553.  In addition, Sadler expressly teaches the skilled practitioner not to combine clips and magnets in the same system.  Thus Sadler also teaches away from the proposed redesign / reconstruction / modification of Martin.  Id.

Furthermore, as discussed above, Patent Owner can find no factual evidence within Martin or the Office Action to justify redesign and reconstruction of Martin so that the outboard clips have any orientation other than wrapping around the lens frame 12 and 13, i.e., not a scintilla of evidence that the outboard clips of Martin could or should be rotated 90 degrees as proposed in the Office Action.  The proposed modification completely and improperly alters the operating principle of the Martin patent.  See In re Ratti, 270 F.2d at 812.

32

Control No. 90/008,864                                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Thus, there is no factual evidence within the four corners of the Office Action to render obvious the extended arm – magnetic member limitation of the auxiliary frame of claims 16 – 20, or the magnetic member engagement of the auxiliary frame with a magnetic member secured to "a / the" rear side of the primary spectacle frame side extensions.

These arguments by the Office Action appear to be little more than impermissible hindsight, especially in view of Nishioka and Sadler separately teaching away from the proposed modification, and the holding in <u>Ratti</u>:

> A factfinder should be aware, of course, of the distortion caused by hindsight bias and must be cautious of arguments reliant upon ex post reasoning.

<u>KSR</u>, 127 S.Ct. at 1742-43; <u>Immunogenics</u>, 512 F.3d at 1374:

> 3.  We are mindful that in *KSR*, the Supreme Court made clear that a finding of teaching, suggestion, or motivation to combine is not a "rigid rule that limits the obviousness inquiry." ...  <u>We must still be careful not to allow hindsight reconstruction of references to reach the claimed invention without any explanation as to how or why the references would be combined to produce the claimed invention</u>. (Internal citations omitted)(emphasis added).

Therefore, the rejection of claims 16-20 is improper and should be withdrawn.

## 6.    Claims 23, 24 And 35

With respect to claims 23 and 24, the Office Action states

> . . . see claim 1 for the description of Martin's auxiliary frame. The bent hook arm clips 40, 42 are adapted to extend across side portions of the primary spectacle frame so that the magnetic members on the bent hook arm clips can vertically engage magnetic members on a primary spectacle frame. . . With respect to claim 24, see the description of the auxiliary frame member with respect to claim 2.

33

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

First, as discussed above, Martin combined with Nishioka or Sadler is facially

improper. Martin is not available as prior, and therefore the rejection of claims 23 and 24 is

improper and should be withdrawn.

Claims 23 and 24 in relevant part recite:

| Claim 23 | Claim 24 |
|---|---|
| . . . each of said side portions having an arm extended therefrom, each of *said arms* having a *rearwardly directed free end* for securing a magnetic member, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame | . . . each of *said arms* having *a rearwardly directed end* for securing a magnetic member, a pair of magnetic members respectively located at said ends of said arms, each of said ends further including a downwardly extended end portion for hooking onto a primary spectacle, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame |

Thus, claims 23 and 24 each require the arms of the auxiliary frame have rearwardly

directed ends. Martin does not disclose this feature because Martin expressly discloses and

illustrates that the outboard clips forcibly engage lens frames 12 and 13, and have ends oriented in a

direction directed towards the centrally located bridge of the primary eyewear. Thus the free ends

of outboard clips 40 and 42 are centrally directed.

One of ordinary skill in the art would not add magnets to the ends of Martin's

outboard clips for numerous reasons. The first reason, Martin's outboard clips as presently

configured and modified would have the magnet at it's inwardly ("centrally") directed end, and

would position the magnet so that it rubbed against the inner face of the primary lenses. Second,

adding magnets to the auxiliary frame of Martin is contrary to the teachings of Sadler, as Sadler

teaches away from such a combination. Third, adding magnets to Martin's outboard clips would

make removal of the auxiliary frame more difficult. Fourth, as there is no reason to consider

Martin's forcibly mounted and restrained auxiliary frame unstable, there would be no reason to add

34

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

magnetic attraction to enhance stability. Fifth, rotating the outboard clips of Martin, as proposed,

and adding magnets to the clip ends would completely redesign the Martin device, and alter the

attachment principles considered by Martin to be unique. In re Ratti, 270 F.2d at 812.

These arguments by the Office Action appear to be little more than impermissible

hindsight, especially in view of Nishioka and Sadler separately teaching away from the proposed

modification, and of course the holding in Ratti. KSR, 127 S.Ct. at 1742-43; Immunogenics, 512

F.3d at 1374:

> 3. We are mindful that in *KSR*, the Supreme Court
> made clear that a finding of teaching, suggestion, or
> motivation to combine is not a "rigid rule that limits
> the obviousness inquiry." … We must still be careful
> not to allow hindsight reconstruction of references to
> reach the claimed invention without any explanation as
> to how or why the references would be combined to
> produce the claimed invention. (Internal citations
> omitted)(emphasis added).

Therefore, the rejection of claims 23 and 24 is improper and should be withdrawn.

As for claim 35, because claim 35 depends on patentable, non-obvious claim 23,

claim 35 is also not obvious. See Ortho-McNeil Pharm., 520 F.3d at 1358.

### 7.    Claims 31-34

The Office Action states, "[w]ith respect to claim 31, see the description of claim 2;

[w]ith respect to claims 32-34, see claim 1.

First, as discussed above, rejections based upon Martin combined with Nishioka or

Sadler are facially improper. Martin is not available as prior, and therefore the rejection of claims

31-34 is improper and should be withdrawn.

35

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

As regards claims 31-33, each requires the "first magnetic member" is secured to the rear side of a side portion extension of the primary frames. As discussed above, the Office Action admits Martin does not disclose the use of any magnetic member, and there is no express teaching of this feature. As argued above, neither Nishioka nor Sadler teach positioning a magnetic member at a rear side of the primary spectacle frame. In fact, Nishioka's repetitive teaching of templeless "sunglass" auxiliary frames implicitly teaches away from Patent Owner's arrangement of claims 31-33. Sadler similarly teaches away from using the Martin patent with magnets, by expressly teaching not to use clips. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553. The redesign and reconstruction of the Martin patent that alters Martin's principle of operation, as proposed in the Office Actions, is based on pure conjecture and speculation, and devoid of any factual basis. In re Ratti, 270 F.2d at 812. The arguments set forth in the Office Action are perfect examples of impermissible hindsight. Immunogenics, 512 F.3d at 1374. The rejection of claims 31-33 is improper and should be withdrawn.

Original patent claim 34 in relevant part recites:

34.    (Currently amended)  An eyeglass device comprising:

a primary spectacle frame having two side portion extensions with a front side, a rear side and a first magnetic member,

. . . an arm . . . containing a second magnetic member, said arms extending across a respective extension from said front side to said rear side so that said first and second magnetic members engage one . . .

. .

Claim 34 requires that the arm extend across the primary frame from front side to rear side so the magnetic members may engage one another. Nishioka's and Sadler's magnet

36

DSMDB-2440892v01

Control No. 90/008,864                                    Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

positioning would not suggest this cooperation.  More importantly, Nishioka's repetitive teaching of

templeless auxiliary frames implicitly teaches away from the claimed arrangement.  Sadler similarly

teaches away from using the Martin patent with magnets, by expressly teaching not to use clips.

See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d at 553.  Only hindsight could add a magnet to the

outboard clips of Martin.

      The redesign and reconstruction of the Martin patent that alters Martin's principle of

operation, as proposed in the Office Actions, is based on pure conjecture and speculation, and

devoid of any factual basis.  In re Ratti, 270 F.2d at 812.  The arguments set forth in the Office

Action are perfect examples of impermissible hindsight.  Immunogenics, 512 F.3d at 1374.  The

rejection of claim 34 is improper and should be withdrawn.

## IV.    CONSIDERATION OF THIRD PARTIES ARGUMENTS

      As discussed above, the Request identifies Re37,545 as the patent to be reexamined,

but incorrectly identifies its inventor, application serial number and filing date.  A comparison of the

instant reexamination proceeding Request, with that of Reexam Control 90/008863 (David Chao

U.S. Patent No. 6,109,747), "the `863 reexam," reveals the source of that incorrect data to be the

`863 Request.

### A.    The Request's Claim Construction Standards

      The Request directs the PTO's attention to the standard of claim interpretation set

forth at M.P.E.P. §904.01 and cites as legal precedent In re Morris 1048 (CA Fed. 1997).  However

§900 of the M.P.E.P. is directed to "Prior Art, Classification and Search" and "patent applications,"

whereas these proceedings are not a patent application.  Instead, since the instant proceeding

involves reexamination of a patent, and is not a patent application, the PTO is often provided

DSMDB-2440892v01

Control No. 90/008,864                                                Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

guidance by M.P.E.P. §2258 G (Rev. 5, Aug. 2006). Thus the M.P.E.P. suggests, if the patent is

pending, claim construction is guided by the Court's holding in In re Yamamoto, 740 F.2d 1569

(Fed. Cir. 1984), and when the patent has expired, by Phillips v AWH Corp., 415 F.3d 1303, 1316

(Fed. Cir. 2005).

      The Request at page 9 states claims 12, 16 and 24 of the Chao `545 patent have

undergone "judicial review," and to provide the PTO assistance with claim construction, cites

Aspex Eyewear Inc., v. Miracle Optics, Inc., (C.D. Cal. 2003)." Patent Owner is unsure why the

Request cites only to this Aspex litigation for judicial review, for the following reasons. First, the

Request states at n.1, page 2, that the cited Aspex case is not an appellate decision and in any event

they do not agree with the District Court's claim construction. Second, there are other concluded

and pending legal proceedings involving judicial review of the Chao `545 patent. Patent Owner has

filed a §1.565 Statement concerning concurrent legal proceedings, and will provide any additional

papers from those litigations upon a request from the PTO.

      In addition, with respect to the Aspex proceeding mentioned by the Request, a

district court's claim construction is reviewed de novo on appeal, Medrad, Inc. v. MRI Devices

Corp., 401 F.3d 1313, 1316 (Fed. Cir. 2005) reh'g denied, 2005 U.S. App. LEXIS 8358 (Fed. Cir.

Apr. 11, 2005) ("We review the district court's construction of claims de novo." (citing Markman v.

Westview Instruments, Inc., 52 F.3d 967, 979-81 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370

(1996))). And in this instance, the Federal Circuit has reviewed the district court's findings in

Aspex Eyewear Inc., v. Miracle Optics, Inc., (C.D. Cal. 2003). See, Aspex Eyewear Inc., v. Miracle

Optics, Inc. 170 Fed. Appx. 715, 2006 Lexis U.S. App. Lexis 5540 [Issued as unpublished or

DSMDB-2440892v01

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

nonprecedential], where the Federal Circuit reversed and remanded the case to the District Court for further consideration.

Thus the Request's claim construction comments are at best superfluous, if not moot.

**B.** **The Request's Prosecution History Summary**

The Request summarizes certain portions of the Chao `545 prosecution history. For example, after briefly discussing the July 15, 1999 Office Action, the Request then discusses Applicant's January 19, 2000 response. However, the January 19, 2000 Response apparently was not formerly entered by the PTO, even though the Request discusses it in detail. The formerly entered version appears to be Applicant's "Supplemental Response" filed on August 29, 2000.

In the Request, it is stated that claim 12 was amended "to add the limitation that the primary frame define a vertical plane." Request at 6. The Request then alleges "[s]imilar amendments were proposed to the remaining claims." This *mischaracterizes* Applicant's Response. When the reissue was filed, the terminology "vertical plane" was not present in any claim. Of the thirty three (33) newly filed reissue claims, claims 12, 13, 22, 34 and 35 did include the phrase "engaging on a horizontal position," but the remaining claims did not. In the first Office Action on July 15, 1999, only claims 12 and 34 were subject to a rejection over the Nishioka patent. Claims 22 and 35 were not rejected on any prior art reference.

On January 19, 2000, Applicant filed a first Response, which apparently was never formally entered by the PTO. In that Response, the only instructions to add the terminology "with the lenses defining a vertical plane," were directed to claims 12, 34 and 35. Thus only a few reissue application claims included a limitation that the lenses of the primary spectacle frame defined a vertical plane, most did not, contrary to the "remaining claims" phraseology used by the Request.

39

Control No. 90/008,864                                         Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Changes requested in the January 19, 2000 response were apparently affected by the

August 29, 2000 response, resulting in 64 new reissue claims.[8]  However, the Request's "vertical

plane" argument appears moot since reissue claims 12 and 34 were eventually amended to eliminate

this terminology in favor of the "horizontal surface" limitation now found in patent claim 5

(renumbered reissue claim 12), and others.

The Request highlights Applicant's arguments regarding the Nishioka patent in the

January 19, 2000 Response; also found in the Applicant's response of August 29, 2000.  However,

Applicant's argument regarding the horizontal surface limitation is limited to claims 12 and 34.

We have already discussed the Request's omission regarding the Chao §1.131

Declaration.  The §1.131 declaration was sufficient and successful in antedating and removing the

contested Twincome-Pentax documents as prior art.  The Chao `545 patent was properly accorded

an effective filing date prior to May 31, 1995.

The next omission in the Request's discussion of the prosecution history involves the

April 4, 2001 Interview.  During the interview the PTO withdrew many of the rejections of record,

based on Applicant's prior responses, including rejections / objections involving proposed Figure 8,

ultimately canceled.  See Aspex 170 Fed. Appx. *715:

> As the prosecution history cited above reflects, the
> applicant's reason for ultimately canceling Figure 8
> was because the examiner indicated during the
> interview that he would waive the requirements of 37
> C.F.R. § 1.83 with respect to the feature "the end
> portion of the arm of the auxiliary frame extended
> downward towards the projection for hooking on the
> primary spectacle frame." In other words, the applicant
> took the position that Figure 8 was no longer

---

[8]     Patent Owner notes that the amendment protocols set forth in 37 C.F.R. §121, apparently do not apply to
reissue applications.  See¶ (a) "Amendments in applications, other than reissue applications."

DSMDB-2440892v01

Control No. 90/008,864                                          Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

> necessary; he did not, contrary to the district court's
> conclusion, concede that the subject matter of Figure 8
> was unpatentable. (emphasis added)

The Request then discusses reissue claims 36-41. The PTO rejected these claim on

May 22, 2001 in view of the Nishioka patent. Reissue claim 36, like that of claim 12, was amended

to recite the magnetic members include a "horizontal surface." However, many other reissue claims

remained unchanged and the recited magnetic members were not further limited or restricted to

having any "horizontal surface." See, for example, patent claims 1, 12, 16-20, 23-24 and 31-34.

### C.    The Request's Judicial Claim Construction

Paragraph "C" at pages 9-11 of the Request identifies what purports to be a

discussion of the judicial claim construction in <u>Aspex v Miracle Optics</u>. However, there are other

concluded and pending legal proceedings involving judicial review of the Chao `545 patent. As

stated above, Patent Owner has filed a §1.565 Statement concerning concurrent legal proceedings,

and will provide any additional papers relating to judicial review of the Chao `545 patent upon a

request from the PTO.

In any event, as discussed above, the Federal Circuit has reversed and remanded this

case to the District Court for further consideration. However, because the Federal Circuit held in <u>In</u>

<u>re Yamamoto</u> that a different standard of claim construction exists in reexamination proceedings, in

contrast to patents being review by the court and presumed valid under 35 U.S.C. §282, it would be

premature and inappropriate to respond to any of the allegations made by the Request in this

section.

41

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

### D.   The Request's Remarks Concerning The Cited References And Patent Claims 1-9, 12-13, 16-20, 23-24 and 31-34

First, as discussed above, any rejection of any claim based on the Martin patent, as a prior art reference, is fatally flawed since the Martin patent is not available as prior art. With Martin removed as a primary reference, only the Nishioka and Sadler patents remain. However, as discussed above, both Nishioka and Sadler teach *only*, suggest *only*, and illustrate *only* front face mounted magnets.

Nishioka clearly teaches away from the use of a temporal component that facilitates Patent Owner's rear, magnetic mounting / engagement concept. See KSR, 127 S.Ct. at 1740; In re Gurley, 27 F.3d 551, 553 (CA Fed. 1994) ("A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant."). Nishioka mentions seventeen times that the auxiliary frames are "templeless." This repetitive teaching would clearly discourage one of ordinary skill in the art from Patent Owner's rear magnetic mounting / engagement concept. As for Sadler, patentee makes clear that by using magnets, clip technology is not to be used. Thus the secondary references, in and of themselves, would *not* render the invention of claims 1-9, 12-13, 16-20, 23-24 or 31-34 obvious under any circumstance, unless impermissible hindsight is permitted. Immunogenics, 512 F.3d at 1374.

### E.   The Request's Analysis Based On The Substitution Of Ferromagnetic Materials For Components Of The Martin Device Is Flawed

A pervasive theme of the Request's claim analysis is the use of ferromagnetic material in the construction of Martin's eyeglass device. The Request alleges (Request at 12):

> . . . ferromagnetic material such as steel is well known in eyeglass frame construction and can be used in the

42

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

> temple blocks, particularly in view of the teachings of
> the Nishioka and Sadler patents that suggest the
> advantages of using magnetic attraction to affix an
> auxiliary spectacle frame to a primary spectacle frame.
> The temple blocks could therefore also be construed as
> magnetic members that would be read upon by the
> language of the claims addressed here.

For example, the Request states "temple blocks 18 and 20 can inherently be made of ferromagnetic material – steel is a well known material for constructing eyeglass frames." Request, claim 1 at page 12. A similar recitation is also found in the Request's discussion of claim 4 at page 13; claims 6 and 12 at page 14; claim 16 at page 15; claims 17 and 18 at page 16; claims 19 and 20 at page 17; claims 23-24 at pages 18-19; and, claims 31-34 at pages 19-21.

As we have discussed above, one of ordinary skill in the art would not be inclined to enhance the engagement of the auxiliary frame to the primary frame in Martin. Adding magnets to outboard clips 40 and 42, or making the clips from a ferromagnetic material, would increase the amount of force necessary to disengage the auxiliary frame. One of ordinary skill in the art would understand that Martin would not want to make removal of the auxiliary frame any more difficult than that required by the unique three clip arrangement that already requires a force be applied to clip 46 to remove the auxiliary frame.

Further, it is not seen how the clip system of Martin could be made any more stable by adding magnetic materials. Martin makes clear that the disclosed clip arrangement is unique (Martin: 3/17) and outboard clips hook around and resiliently engage the lens frame. Thus the auxiliary frame is forcibly restrained on the primary frame. Thus, there is no instability to overcome or reason to take advantage of magnetic attraction that would be offered by the use of a ferromagnetic material and a magnetic material, or coupled magnetic components.

43

DSMDB-2440892v01

Control No. 90/008,864                                          Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

As for the Request's statement that "blocks 18 and 20 can inherently be made of ferromagnetic material – steel," this argument fails for several reasons. The first is the misuse of the term "inherently." See In re Robertson, 169 F.3d 743, 745 (Fed. Cir. 1999) quoting Continental Can Co. v. Monsanto Co., 948 F.2d 1264, 1268, 20 U.S.P.Q.2D (BNA) 1746 (Fed. Cir. 1991). "Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." Id. at 1269. See also M.P.E.P. §2112. ("The mere fact that a certain thing may result from a given set of circumstances is not sufficient.").

Martin is silent concerning the nature of the materials used for the primary or auxiliary frames, except to the extent that stainless steel clips are welded to the auxiliary frame. One of ordinary skill in the eyeglass art could reasonably conclude that the auxiliary frame is also made from some metal. But not all metals are steel, and not all steels are magnetic. Exhibits A-E, attached hereto, exemplify and teach that there are different types of stainless steels, and not all stainless steels, e.g., austenitic stainless steels, are magnetic. For example, Exhibit A teaches stainless steel is not inherently magnetic, e.g., "type 304 is the most non-magnetic" (Moore et al., p. 13, ¶(1.2.3) (1983)) . Thus the possibility that Martin's blocks could be made of steel, does not make this material of construction necessarily, i.e., inherently, ferromagnetic. Similarly, with respect to the "thin stainless steel bars" used as Martin's outboard clips, which the Request improperly reads on the "second pair of magnetic members," these clips are not necessarily magnetic since not all stainless steels are magnetic in nature. Continental Can Co., 948 F.2d at 1269.

DSMDB-2440892v01

Control No. 90/008,864                                      Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

As to the secondary references, Nishioka appears to limits its discussion of

construction materials to frames 1a and 5a. It is made clear in one embodiment either the frame 5a

or frame 1a is made of a material that is attracted by magnetic force. (Nishioka: 2/40-55). Of

course, if the frames are made from synthetic resin, the magnets have to be attached. (Id. at 2/56-

59). However, in either embodiment, only front face mounting is disclosed, and the practitioner is

clearly discouraged from using anything other than "templeless" auxiliary frames.

Sadler, on the other hand restricts the members 13 and 17 to either magnets or a

ferromagnetic material. However, Sadler also makes clear that a more secure bond is achieved

through the use of "permanent magnetic material" (Sadler: 3/21-29), and more importantly, "an

object of the present invention . . . [is] . . . *means for securing auxiliary lenses which does not*

*employ clips*" (Sadler: 1/19-20; 1/34-36) (emphasis added). In view of Sadler, it is reasonable to

conclude that clip and magnetic attachment mechanisms are divergent technologies and one of

ordinary skill in the art would not view the teachings of one relevant to the other.

One of ordinary skill in the art would not look to the materials of construction in

Sadler or Nishioka based on Sadler alone, i.e., Sadler teaches away from using clip technology in

combination with magnet technology. Stated another way, one of ordinary skill in the art would not

consider using the advantages of the magnetic attraction taught by Sadler or Nishioka in Martin,

because Sadler expressly teaches not to do so.

In addition, as discussed supra, redesigning Martin, as the Request proposes,

impermissibly changes the principle of operation of the Martin patent, i.e., the clip attachment

mechanism of Martin would be redesigned and eliminated, which is clearly inconsistent with

patentee's "unique" arrangement. See, In re Ratti, 270 F.2d at 812.

45

DSMDB-2440892v01

Control No. 90/008,864                                           Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

     The Request's claim analysis lacks element to element correspondence. The M.P.E.P. makes clear that "All words in a claim must be considered in judging the patentability of that claim against the prior art," citing In re Wilson, 424 F.2d 1382,1385 (CCPA 1965). (M.P.E.P. § 2143.03, Rev. 6, Sept. 2007). It is also a matter of law that different terms in a claim body generally have different meanings. Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 2008 U.S. App LEXIS 7826, *13 (CA Fed. 2008) citing Applied Med. Res. Corp. v. United States Surgical Corp., 448 F.3d 1324 (Fed. Cir. 2006)].

     For example, patent claim 1 under reexamination separately provides for, *inter alia*, "extensions" and "projections" on the primary frame, and the cooperation of recited elements provides for primary-auxiliary frame engagement at a rear side of the primary frame's side portion. Even assuming *arguendo* that Martin's blocks 18 and 20 could be construed to be an extension of the frame, patent claim 1 still requires a "projection" for securing a magnetic member to at least a rear side portion of the primary frame. None is present in Martin, and the secondary references only teach front face magnetic mounting of an auxiliary frame. Neither secondary reference includes a primary frame with the structure of claim 1. Even the PTO recognized that these features are clearly not taught by Martin, and the Office Action admits of their absence. Thus the Request again misrepresents what Martin teaches and fails the point to any feature in the Martin, Nishioka or Sadler patents that could be construed as the claimed projection of claim 1.

     The Request concludes its claim analysis with a discussion of KSR, alleging the "references cited herein provide the kind of interrelated teachings discussed in the KSR ruling." However, the cited patents are interrelated to the extent they each teach auxiliary and primary frames. In the instant case, although auxiliary and primary frames are known, there is no factual

46

Control No. 90/008,864                                          Docket No.: A8445.0001/P001-B
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

evidence of Patent Owners' rear mounting / engagement technique.  More importantly, the Request

disregards the Court's "corollary principle," i.e., "when the prior art teaches away from combining

certain known elements, discovery of a successful means of combining them is more likely to be

nonobvious."  KSR, 127 S.Ct. at 1741.  As discussed above, Nishioka and Sadler teach away from

the Martin redesign and reconstruction proposed in the Office Action, and the device of the Chao

`545 patent.  There simply is no factual evidence of record of Patent Owner's magnetic mounting /

engagement arrangement.

      For all the reasons advanced above, it is submitted that the rejections of record are

improper, inconsistent with the holding in KSR, and should be withdrawn.

## CONCLUSION

      For all the reasons given above, Patent Owner believes the reexamined claims, as

well as the un-reexamined claims are patentable, and that an NIRC should be issued confirming the

patentability of all patent claims.

47

Control No. 90/008,864
Amendment dated June 23, 2008
Reply to Office Action of April 23, 2008

Docket No.: A8445.0001/P001-B

## **AUTHORIZATIONS**

The Director is hereby authorized to charge any deficiency in the fees filed, asserted to be filed or which should have been filed herewith (or with any paper hereafter filed in this reexamination proceeding by this firm) to our Deposit Account No. 04-1073, under Order No. A8445.0001/P001-B.  A duplicate copy of this paper is enclosed.

Dated: June 23, 2008

Respectfully submitted,

By _(signature)_
Michael S. Marcus, Esq.
     Registration No.: 31,727
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
(202) 420-2200
Attorney for Patent Owner

48

## AMENDMENT TRANSMITTAL LETTER

| | Docket No. A8445.0001/P001-B |
|---|---|

| Control No. 90/008,864-Conf. #4206 | Filing Date September 13, 2007 | Examiner G. K. Dawson | Art Unit 3731 |
|---|---|---|---|

Applicant(s):  Richard Chao

Invention:  AUXILIARY LENSES FOR EYEGLASSES

### TO THE COMMISSIONER FOR PATENTS

Transmitted herewith is an amendment in the above-identified application.

The fee has been calculated and is transmitted as shown below.

| CLAIMS AS AMENDED | | | | | |
|---|---|---|---|---|---|
| | Claims Remaining After Amendment | Highest Number Previously Paid | Number Extra Claims Present | Rate | |
| Total Claims | 35 | - 34 = | 1 | x   50.00 | 50.00 |
| Independent Claims | 20 | - 20 = | 0 | x   210.00 | 0.00 |
| Multiple Dependent Claims (check if applicable)   ☐ | | | | | |
| Other fee (please specify): | | | | | |
| TOTAL ADDITIONAL FEE FOR THIS AMENDMENT: | | | | | 50.00 |

[x] Large Entity                                      ☐ Small Entity

☐ No additional fee is required for this amendment.

☐ Please charge Deposit Account No. _____ in the amount of $ _____ .
A duplicate copy of this sheet is enclosed.

☐ A check in the amount of $ _____ to cover the filing fee is enclosed.

☐ Payment by credit card.  Form PTO-2038 is attached.

[x] The Director is hereby authorized to charge and credit Deposit Account No.   04-1073
as described below.  A duplicate copy of this sheet is enclosed.

   [x] Credit any overpayment.

   [x] Charge any additional filing or application processing fees required under 37 CFR 1.16 and 1.17.

Dated:   June 23, 2008

Michael S. Marcus
Attorney/Agent Reg. No.:  31,727

DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006-5403
(202) 420-3702