# EXHIBIT P

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

    Defendants.

## PLAINTIFF ASPEX EYEWEAR, INC.'S RESPONSES TO DEFENDANT REVOLUTION'S SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Aspex Eyewear, Inc. ("Aspex") provides the following responses to Defendant Revolution Eyewear, Inc.'s ("Revolution")'s Second Set of Interrogatories.



## GENERAL OBJECTIONS

1. Aspex objects to these Interrogatories to the extent they attempt to impose obligations on it other than those authorized or imposed by the applicable laws, the Federal Rules of Civil Procedure or the Local Civil Rules of the United States District Court for the Southern District of Florida.

2. Aspex objects to Revolution's Definition of U.S. Patent No. US RE37,545, entitled "Auxiliary Lenses for Eyeglasses" (the "'545 Patent"), and thus the implication contained therein that the original '545 Patent is the patent at issue in this case. On February 12, 2002, the U.S. Patent Office issued the '545 Patent. Following a September 13, 2007 request for re-examination of certain claims of the '545 Patent, the Patent Office issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which reconfirmed the patentability of all of the original claims of the '545 Patent, and included a New Claim 23, and a New Claim 35. Thus, the patent at issue in this case is not the original '545 Patent, but instead, a re-examined, and re-confirmed '545 Patent with new Claims 23 and 35. Aspex will respond to these Interrogatories based on this definition of the '545 Patent at issue -- that is, a re-examined and re-confirmed '545 Patent with new Claims 23 and 35.

3. Aspex objects to these Interrogatories to the extent that they are overbroad, unduly burdensome and seek information that is not relevant to Aspex's claims that Revolution infringed the '545 Patent.

4. Aspex objects to these Interrogatories to the extent that they consist of multiple subparts, thus bringing the total interrogatories propounded by Revolution to greater than the allowable 25.

5. Aspex objects to these Interrogatories, including the Definitions therein, to the extent

2

that they are overbroad or purport to require Aspex to supply information which is not within its possession, custody or control. Aspex will undertake reasonable efforts and make diligent inquiries to obtain and provide information responsive to these Interrogatories, to the extent the information requested is not otherwise objectionable or privileged. Much of that effort, however, will necessarily follow discovery from the Defendants in this action.

6. Aspex objects to these Interrogatories to the extent that they seek information immune from discovery by the attorney-client privilege, the attorney work product doctrine or any other applicable privileges. Aspex will not provide any privileged or work product information in response to these Interrogatories. If any privileged or work product information is produced, such production is inadvertent and is not intended, and Aspex expressly reserves the right to withdraw that information from discovery without any consequence whatsoever.

7. Aspex objects to these Interrogatories to the extent that they are unreasonably cumulative, duplicative or intended to harass, or are not relevant to the subject matter of this action, as set forth in the parties' pleadings, and not reasonably calculated to lead to the discovery of admissible evidence.

8. By responding to these Interrogatories, Aspex does not concede that any of its Responses are or will be admissible evidence at trial or at any hearing in this action. In responding to these Interrogatories, Aspex does not waive any objection, on any ground, including but not limited to competence, privilege, relevance, materiality, hearsay, or to the use of any such information for any purpose, in whole or in part, in any stage or proceeding in this action or any other action. All of Aspex's Responses set forth below are made subject to the above qualifications.

9. Aspex states that these Responses are accurate as of the date made, to the best of its

3

information, knowledge and belief. These Responses are given without prejudice to using or relying on at trial or at any hearing subsequently discovered information, or information omitted from these Responses, and Aspex reserves the right to produce additional evidence at trial or at any hearing, and to object on appropriate grounds to the introduction at any trial or hearing of any information included in these Responses.

10. The above General Objections are incorporated by reference into each Response to each specific Interrogatory below as if fully set forth therein. The provision of any Response is not and should not be deemed to be a waiver of the above General Objections or of any specific objection set forth in Response to any specific Interrogatory.

### INTERROGATORY NO. 1:

Describe any other alleged infringements of the '545 patent which you are aware (other than those alleged in this action), including for each alleged infringement the identity of the person who allegedly infringed, the name or other designation of the allegedly infringing product, a description of the product, the claims of the '545 patent allegedly infringed, and the date that you notified the person of the alleged infringement.

### RESPONSE TO INTERROGATORY NO. 1:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome. Aspex further objects to this Interrogatory on the ground that it seeks information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Further responding, Aspex interprets this Interrogatory to refer to infringements by third parties who not parties to this litigation. With that interpretation, subject to the general objections, without waiver of any objection, and pursuant to Fed.R.Civ.P. 33 (d)(1), Aspex will produce non-privileged, non-work product documents from which the information sought by this interrogatory may be ascertained. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

### INTERROGATORY NO. 2:

For each allegation of infringement set forth in response to the preceding interrogatory, identify any studies, reports, summaries, analyses or opinions prepared or obtained by or for you with respect to the issue of the alleged infringement, including the date of each such study, report, summary, analysis or opinion, the subject matter of the study, report, summary, analysis or opinion, the identity of each person who prepared it, and the identity of each document pertaining thereto.

### RESPONSE TO INTERROGATORY NO. 2:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome, and seeks information immune from discovery under the attorney-client privilege and work product immunity. Aspex further objects to this Interrogatory on the ground that it seeks information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Subject to the general objections, without waiver of any objection, and pursuant to Fed.R.Civ.P. 33 (d)(1), Aspex will produce non-privileged, non-work product documents, as may exist, from which the information sought by this interrogatory may be ascertained. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

### INTERROGATORY NO. 3:

For each asserted claim, describe the conception and reduction to practice of the claimed invention, including the earliest dates of conception and reduction to practice, the identity and role of each person who participated in or witnessed the conception or the reduction to practice, and the identity of all documents and things pertaining to the conception and reduction to practice.

### RESPONSE TO INTERROGATORY NO. 3:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome, and seeks information immune from discovery under the attorney-client privilege and work product immunity. Aspex further objects to this Interrogatory on the ground that it seeks information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Subject to the general objections, without waiver of any objection, and pursuant to Fed.R.Civ.P. 33 (d)(1), Aspex will produce non-privileged, non-work product documents, as may exist, from which the information sought by this interrogatory

may be ascertained. Such documents will include, but are not limited to: (1) declarations filed by Richard and David Chao in other litigations involving the '207 and original '545 Patents and/or during prosecution of the original '545 Patent; and (2) the testimony of Richard and David Chao given in the interference proceeding involving the '207 Patent. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

**INTERROGATORY NO. 4:**

State the facts concerning when you first became aware of the existence of any of Revolution's products accused in this action, including the specific product of which you first became aware, how you became aware of such product, and when you formed the belief that such product infringed the asserted claims of the '545 patent.

**RESPONSE TO INTERROGATORY NO. 4:**

Subject to the general objections, and without waiver of any objection, Aspex responds that it first became aware of at least some of the products listed in the previously-served Plaintiff Contour Optik's Supplemental Responses to Defendant Revolution's Interrogatory Nos. 2, 3, and 5, and Second Supplemental Response to Interrogatory No. 1 ("Contour Second Response"), at or about the time that Revolution began marketing and selling these products. Aspex formed the belief that these products infringed Claims 23 and/or 35 of the reexamined '545 Patent-In-Suit after the March 3, 2009 issuance date of Reexamination Certificate No. 37,545F1. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

7

## INTERROGATORY NO. 5:

State the facts concerning the passage of time between the time you first became aware of the existence of any of Revolution's products accused in this action and the date you filed the complaint herein, including the amount of time that passed, the reasons the complaint was not filed earlier, and the persons who participated in the decision for any delay between your awareness of the accused products and the filing of this action.

## RESPONSE TO INTERROGATORY NO. 5:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome, and seeks information immune from discovery under the attorney-client privilege and work product immunity. Aspex further objects to this Interrogatory on the ground that it seeks information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Subject to the general objections, and without waiver of any objection, Aspex responds as follows: Claims 23 and 35 of the patent-in-suit were issued on March 3, 2009. Aspex brought this suit on September 23, 2009 -- slightly more than six months after issuance of Claims 23 and 35. Counsel for Aspex and Aspex's in-house counsel participated in determining the timing of when to bring suit, the particulars of which are subject to the attorney-client privilege and work product immunity. Aspex reserves its right to amend and or supplement its response to this Interrogatory as appropriate.

## INTERROGATORY NO. 6:

Describe the efforts that you took or that were taken on your behalf, before filing the complaint, to analyze Revolution's accused products and whether any of Revolution's accused products infringe the '545 Patent including, but not limited to, what products were analyzed, where and when the products were analyzed, the persons who participated in or assisted with any such analysis, and the claim construction that was utilized for such analysis.

8

## RESPONSE TO INTERROGATORY NO. 6:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome, and seeks information immune from discovery under the attorney-client privilege and work product immunity. Aspex further objects to this Interrogatory on the ground that it seeks information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Subject to the general objections, and without waiver of any objection, Aspex responds as follows: In-house counsel José Peña of Aspex Eyewear, in consultation with outside counsel, analyzed numerous Revolution / Hardy Life frames with reference to Claims 23 and 35 of the reexamined '545 Patent prior to bringing this suit. Aspex has no written reports of such analyses. Aspex reserves its right to amend and or supplement its response to this Interrogatory as appropriate.

## INTERROGATORY NO. 7:

Identify any studies, reports, summaries, analyses or opinions prepared or obtained by or for you, prior to filing the Florida Action, with respect to the issue of the alleged infringement by Revolution of the '545 patent at any time, including the date of each such study, report, summary, analysis or opinion, the subject matter of the study, report, summary, analysis or opinion, the identity of each person who prepared it, and the identity of each document pertaining thereto.

## RESPONSE TO INTERROGATORY NO. 7:

See Response to Interrogatory No. 6.

## INTERROGATORY NO. 8:

For each novelty, patentability, validity, or state of the art search or investigation conducted by you or on your behalf or presented to you relating to the subject matter of the '545 patent, provide the date and place of the search including field of the search by class and subclass where appropriate; identify all prior art located or noted as a result of said search; and identify the persons making, authorizing and requesting such search or investigation.

## RESPONSE TO INTERROGATORY NO. 8:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome, and seeks information immune from discovery under the attorney-client privilege and work product immunity. Aspex further objects to this Interrogatory on the ground that it seeks information irrelevant to the subject matter of this litigation and not reasonably calculated to lead to discovery of admissible evidence. Subject to the general objections, without waiver of any objection, and pursuant to Fed.R.Civ.P. 33 (d)(1), Aspex will produce non-privileged, non-work product documents, as may exist, from which the information sought by this interrogatory may be ascertained. Such documents will include, but are not limited to, alleged prior art identified: (1) during prosecution of the '207, original '545 and reexamined '545 Patents; (2) during other litigations involving the '207 and original '545 Patents. Aspex reserves its right to amend and or supplement its response to this Interrogatory as appropriate.

## INTERROGATORY NO. 9:

State in full the basis for your contention that Revolution's alleged acts of infringement have been committed willfully and with knowledge of your patent rights, as alleged in paragraph 23 of your Complaint in the Florida Action, including all facts upon which you base your contention, the identity of each person having knowledge of such facts, and the identity of each document pertaining to such facts.

## RESPONSE TO INTERROGATORY NO. 9:

Aspex objects to this Interrogatory on the ground that it is overbroad and unduly burdensome, and seeks information immune from discovery under the attorney-client privilege and work product immunity. Without waiver of any objections, Aspex responds as follows:

- Revolution had knowledge of the reexamination proceeding that resulted in new Claims 23 and 35 of the '545 Patent-in-suit.

10

- Revolution also had full knowledge of the original '545 Patent; and had full knowledge of the infringement proceedings in the California District Court and the Federal Circuit involving claim 22 of the original '545 Patent and Revolution's original infringing IMFT and IMF frames

- Thus, Revolution knew that, even under Revolution's construction of Claim 22 in the California action, and Claims 23 and 35 in this action, that at least one District Court and the Federal Circuit would endorse a claim construction for claims directed to a primary spectacle frame or an auxiliary spectacle frame such that Revolution's auxiliary frame need only be capable of magnetically attaching to any primary frame, whether or not it was Revolution's primary frame, and whether or not it was a commercial primary frame

- Having the above knowledge, Revolution never removed the epoxy coating from the auxiliary frames accused in this action; nor did it take any action to make sure that its auxiliary frames could not be both bottom-mounted and top-mounted (under Revolution's claim construction) to a primary spectacle frame.

- Revolution was found to be a willful infringer in the California action, and there is no evidence in the record of this action that Revolution acted in reasonable reliance upon the advice of competent patent counsel.

Based on the above, Revolution knew there was an objectively high risk that it would be found an infringer of claims 23 and 35. As presently advised, knowledgeable persons include Gary Zelman, R. Joseph Trojan, and Revolution's present trial counsel. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

11

### INTERROGATORY NO. 10:

Do you contend that Revolution's IMF products accused of infringement in the California Action did not infringe claims 23 and 35 of the '545 patent?

### RESPONSE TO INTERROGATORY NO. 10:

Subject to the general objections, and without waiver of any objection, Aspex responds as follows: Claims 23 and 35 of the reexamined '545 Patent did not exist until March 3, 2009, and Revolution's IMF products at issue in the California action are not at issue in this case. As presently advised, Aspex does not presently have a contention one way or the other as to whether the IMF frames at issue in the California action would have infringed Claims 23 and 35 of the reexamined '545 Patent. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

### INTERROGATORY NO. 11:

If you contend that Revolution's IMF products accused of infringement in the California Action did not infringe claims 23 and 35 of the '545 patent, state in full the basis of such contention.

### RESPONSE TO INTERROGATORY NO. 11:

See Response to Interrogatory No. 10.

### INTERROGATORY NO. 12:

Do you contend that claim 23 of the '545 patent was broadened as a result of the amendments to the claim during reexamination, as reflected in Reexamination Certificate RE 37,545 E?

### RESPONSE TO INTERROGATORY NO. 12:

No.

12

## INTERROGATORY NO. 13:

If you contend that claim 23 of the '545 patent was broadened as a result of the amendments to the claim during reexamination, state in full the basis of such contention.

## RESPONSE TO INTERROGATORY NO. 13:

See response to Interrogatory No. 12.

## INTERROGATORY NO. 14:

State all facts which support any contention that you suffered lost profits caused by Revolution's alleged infringement of the '545 patent, including but not limited to facts supporting alleged demand for the patented features, facts supporting the alleged absence of non-infringing substitutes, the number of lost sales for each of the accused products, your replacement product for each alleged lost sale, the alleged profits lost for each lost sale and how such amount was calculated, your contentions regarding a reasonable royalty for infringement of the asserted claims of the '545 patent, including the royalty rate and base amount, and how such rate and amount were calculated.

## RESPONSE TO INTERROGATORY NO. 14:

Aspex objects to this Interrogatory on the ground that it is premature because it is more properly the subject of the expert phase of discovery, which has not yet begun. Subject to this objection, the general objections, and without waiver of any objection, Aspex responds as follows: Aspex is not presently seeking lost profits in this case. Aspex's damages claim is for a reasonable royalty under 35 U.S.C. § 285. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

## INTERROGATORY NO. 15:

For each person who has cited a reference as prior art against the '545 patent, including patent examiners, identify the prior art reference by author inventor, date, title and description.

## RESPONSE TO INTERROGATORY NO. 15:

See Response to Interrogatory No. 8.

13

**INTERROGATORY NO. 16:**

If you have ever granted or offered a license under the '545 patent, state the name and address of the licensee or the prospective licensee, the date and terms of such license or offer of license, and the agreed upon royalty rate, where applicable.

**RESPONSE TO INTERROGATORY NO. 16:**

Subject to the general objections, without waiver of any objection, and pursuant to Fed.R.Civ.P. 33 (d)(1), Aspex will produce non-privileged, non-work product documents, as may exist, from which the information sought by this interrogatory may be ascertained. Further responding, as presently advised, Aspex has never licensed a competitor under the '545 Patent, and has a policy of not doing so.

**INTERROGATORY NO. 17:**

State Aspex's proposed construction of each term, phrase, and element in the asserted claims of the '545 Patent, including any alleged ordinary meaning of such term or phrase. For each proposed construction, state the facts and contentions supporting such construction, including the ordinary meaning of such term or phrase, excerpts from the written description of the '545 patent, figures, excerpts from the prosecution history, prior court rulings, all extrinsic evidence (including documents, dictionary definitions, opinions, testimony, etc.), and the identity of each witness with knowledge of such facts.

**RESPONSE TO INTERROGATORY No. 17:**

See Exhibit 1 to Contour Optik, Inc.'s Second Supplemental Responses to Revolution's first set of interrogatories.

14

## INTERROGATORY NO. 18:

For each proposed construction in response to the preceding interrogatory, state the facts and contentions supporting such construction, including the ordinary meaning of such term or phrase, excerpts from the written description of the '545 patent, excerpts from the prosecution history, prior court rulings, all extrinsic evidence (including documents, dictionary definitions, opinions, testimony, etc.), and the identity of each witness with knowledge of such facts.

## RESPONSE TO INTERROGATORY NO. 18:

See Response to Interrogatory No. 17.

## INTERROGATORY NO. 19:

Specify your contentions regarding a reasonable royalty for infringement of the asserted claims of the '545 Patent, including the royalty rate and base amount, and how such rate and amount were calculated, including an identification of all factors you believe are pertinent to a hypothetical negotiation, and an explanation of how, if at all, each of the fifteen factors set forth in Georgia-Pacific Corp. v. United States Plywood Corp., 318 F. S. pp. 1116, 1120 (S.D.N.Y. 1970), impacted the determination of the alleged reasonable royalty; and identify all facts, documents (e.g., by production numbers, exhibit numbers, or page-and-line numbers), samples, investigations, tests, measurements, analyses, opinions, and testimony supporting your lost-profits and reasonably royalty rate contentions.

## RESPONSE TO INTERROGATORY NO. 19:

Aspex objects to this Interrogatory on the ground that it is premature because it is more properly the subject of the expert phase of discovery, which has not yet begun. Aspex has not presently formed a contention as to the applicable reasonable royalty and this case. Aspex will provide Revolution with an expert report from its damages expert at the appropriate time, from which the information sought by this interrogatory may be ascertained.

## INTERROGATORY NO. 20:

Identify the art to which the '545 patent pertains and explain in detail the education, experience and training of a person of ordinary skill in the art of the '545 patent would have had at the time of the claimed inventions.

**RESPONSE TO INTERROGATORY NO. 20:**

Subject to the general objections, and without waiver of these objections, Aspex responds as follows: The technology or "art" to which the '545 patent relates is the design and manufacture of clip-on eyewear that includes primary and auxiliary spectacle frames for supporting lenses; and more particularly, clip-on eyewear where the auxiliary frame is attached to the primary frame through the use of cooperating magnets or magnetic material. A person of ordinary skill in the art of designing and manufacturing clip-on eyewear in general, and magnetic clip-on eyewear in particular, is someone who had at least four years of practical experience working for a manufacturer of optical frames in the 1994 - early 1995 time frame, when the '545 patent was invented. Aspex reserves its right to amend and/or supplement its response to this Interrogatory as appropriate.

**INTERROGATORY NO. 21:**

State all facts that support your contention that you have been irreparably injured by Revolution's alleged infringement of the '545 patent.

**RESPONSE TO INTERROGATORY NO. 21:**

Subject to the general objections, and without waiver of any objection, Aspex responds as follows: Aspex's successful business was built around its patented technology and Aspex does not license its intellectual property rights to competitors. Therefore, direct competitors with infringing products, like Revolution, irreparably harm Aspex, by taking away sales and market share, and the goodwill of Aspex's customers. Further, absent an injunction, the continued presence of infringers in the marketplace damages Aspex's reputation, in that it will be perceived as unable to enforce its patents, which will only breed more infringers. The presence of direct competitors who are infringing Aspex's patents will erode Aspex's right to exclusivity under the

16

Patent laws. Money damages cannot compensate Aspex for these injuries. Aspex reserves its right to amend and or supplement its response to this Interrogatory as appropriate.

Respectfully submitted,

Dated: March 30, 2010

By: *[signature]*

Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

and

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc.*

## CERTIFICATION

I, Thierry Ifergan, certify that I am an Executive Vice President of Aspex Eyewear, Inc., one of the Plaintiffs in this action, that I have read the foregoing Plaintiff Aspex Eyewear, Inc.'s Responses to Defendant Revolution Eyewear, Inc.'s First Set of Interrogatories, and that I believe, to the best of my knowledge and based on information provided to me by others, that the matters stated therein are true and correct.

Dated: March ___, 2010

_____
Thierry Ifergan

18

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 30th day of March, 2010, the foregoing document is being served on all counsel of record on the attached Service List *via email*.

David Joyal

## SERVICE LIST

*Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.*
Case No. 09-61515-CIV-Cooke/Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants
Hardy Way, LLC, Revolution Eyewear, Inc.
and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants
Revolution Eyewear, Inc. and Gary Martin
Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants
Marchon Eyewear, Inc. and Nike, Inc.*

19