EXHIBIT Q

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-61515-CIV-COOKE/BANDSTRA**

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.

_____/

**PLAINTIFF CONTOUR OPTIK, INC.'S SUPPLEMENTAL RESPONSES TO
DEFENDANT REVOLUTION'S INTERROGATORY NOS. 2, 3 AND 5, AND
SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1**

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and the Court's

Endorsed Order dated March 3, 2010 (DE 63), Plaintiff Contour Optik, Inc. ("Contour")

provides the following supplemental responses to  Defendant Revolution Eyewear, Inc.'s

("Revolution") interrogatory nos. 2, 3 and 5, and second supplemental response to Revolution's

interrogatory. no. 1.

## GENERAL OBJECTIONS

      1.    Contour objects to these interrogatories to the extent they attempt to impose

obligations on it other than those authorized or imposed by the applicable laws, the Federal Rules

of Civil Procedure or the Local Civil Rules of the United States District Court for the Southern

District of Florida.



2.   Contour objects to Revolution's Definition of U.S. Patent No. US RE37,545, entitled "Auxiliary Lenses for Eyeglasses" (the "'545 Patent"), and thus the implication contained therein that the original '545 Patent is the patent at issue in this case.  On February 12, 2002, the U.S. Patent Office issued the '545 Patent.   Following a September 13, 2007 request for re-examination of certain claims of the '545 Patent, the Patent Office issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which reconfirmed the patentability of all of the original claims of the '545 Patent, and included a New Claim 23, and a New Claim 35.  Thus, the patent at issue in this case is not the original '545 Patent, but instead, a re-examined, and re-confirmed   '545 Patent with new Claims 23 and 35.   Contour will respond to these interrogatories based on this definition of the '545 Patent patent at issue -- that is, a re-examined and re-confirmed '545 Patent with new Claims 23 and 35.

3.   Contour objects to these interrogatories to the extent that they are overbroad, unduly burdensome and seek information that is not relevant to Contour's claims that Revolution infringed the '545 Patent.

4.   Contour objects to these interrogatories, including the Definitions therein, to the extent that they are overbroad or purport to require it to supply information which is not within its possession, custody or control.  Contour will undertake reasonable efforts and make diligent inquiries to obtain and provide information responsive to these interrogatories, to the extent the information requested is not otherwise objectionable or privileged.  Much of that effort, however, will necessarily follow discovery from the Defendants  in this action.

5.   Contour objects to these interrogatories to the extent that they seek information immune from discovery by the attorney-client privilege, the attorney work product doctrine or any other applicable privileges.  Contour will not provide any privileged or work product information in

2

response to these interrogatories. If any privileged or work product information is produced, such production is inadvertent and is not intended, and Contour expressly reserves the right to withdraw that information from discovery without any consequence whatsoever..

6. Contour objects to these interrogatories to the extent that they are unreasonably cumulative, duplicative or intended to harass, or are not relevant to the subject matter of this action, as set forth in the parties' pleadings, and not reasonably calculated to lead to the discovery of admissible evidence.

7. By responding to these interrogatories, Contour does not concede that any of its Responses are or will be admissible evidence at trial or at any hearing in this action. In responding to these interrogatories, Contour does not waive any objection, on any ground, including but not limited to competence, privilege, relevance, materiality, hearsay, or to the use of any such information for any purpose, in whole or in part, in any stage or proceeding in this action or any other action. All of Contour's Responses set forth below are made subject to the above qualifications.

8. Contour states that these Responses are accurate as of the date made, to the best of its information, knowledge and belief. These Responses are given without prejudice to using or relying on at trial or at any hearing subsequently discovered information, or information omitted from these Responses, and Contour reserves the right to produce additional evidence at trial or at any hearing, and to object on appropriate grounds to the introduction at any trial or hearing of any information included in these Responses.

9. The above General Objections are incorporated by reference into each Response to each specific Interrogatory below as if fully set forth therein. The provision of any Response is

3

not and should not be deemed to be a waiver of the above General Objections or of any specific objection set forth in Response to any specific Interrogatory.

## INTERROGATORY NO. 1

Identify by name and all other available commercial designations each accused product in the Florida Action.

### SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1

Contour objects to this interrogatory on the ground that it is overbroad and unduly burdensome.  Contour further objects to this interrogatory on the ground that it is premature, as Contour will be unable to comprehensively identify each infringing Revolution product at issue until after the completion of fact discovery from Revolution and Defendants Hardy Way, LLC, formerly known as Hardy Life, LLC ("Hardy") and Gary Martin Zelman (collectively, the "Revolution Defendants").  Moreover, in light of the fact that discovery in this case is still ongoing, Contour reserves its right to amend and supplement these responses as the law and the Federal and Local Rules allow and require.  Without waiver of these objections, Contour responds as follows:  As previously advised, the Revolution Defendants have made, used, sold, or offered for sale various brands of magnetic clip-on eyewear that satisfy every element of Claims 23 and 35 of the '545 Patent.   Such products include, without limitation, Bling Bling Clips, Alter Egos, Revolution Kids, Ed Hardy, Revolution, Revolution Airs, Revolution Titanium, and That's So Raven branded magnetic clip-on eyewear.  More specifically, listed below are the model numbers of the products that Contour was aware of prior to the filing of this lawsuit:

| | |
|---|---|
| BB034 | REV547 |
| EHK101 | REV549 |
| EHK102 | REV550 |
| EHK103 | REV551 |
| EHK104 | REV555 |
| EHK105 | REV557 |

4

| | |
|---|---|
| EHK106 | REV559 |
| REV525 | REV560 |
| REV527 | REV561 |
| REV528 | REV562 |
| REV529 | REV564 |
| REV530 | REV566 |
| REV531 | REV567 |
| REV532 | REV568 |
| REV535 | REV581 |
| REV537 | REVT62 |
| REV539 | REVT63 |
| REV540 | REVT64 |
| REV542 | REVT65 |
| REV543 | REVT66 |
| REV546 | |

Contour does not presently contend that any other Revolution eyewear infringes claims 23 and 35. However, there is no Federal Rule of Civil Procedure or Local Rule that requires Contour to indentify infringe products it has no knowledge of. The above listed eyewear is what Contour is presently aware of. Because Contour has not yet received any discovery from Revolution on its accused products, and similar products made with the same or equivalent infringing design, Contour reserves the right to further supplement this response as discovery progresses.

## SUPPLEMENTAL RESPONSES TO INTERROGATORY NOS. 2, 3 AND 5

### INTERROGATORY NO. 2

State the basis for your contention that the accused products have "arms" and "magnetic members adapted to extend across respective side portions of a primary spectacle frame," including without limitation the portions of the accused products that you contend meet this limitation, your proposed construction of this claim language and the factual and legal basis for this construction.

### RESPONSE TO INTERROGATORY NO. 2

Contour objects to this interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this interrogatory on the ground that it calls for Contour

5

to state legal conclusions on claim construction.   Moreover, Contour further objects to this Interrogatory on the ground that it is premature, as factual contentions can only be formed after the completion of all discovery in this action.

Without waiver of these objections, Contour further responds as follows:   A visual examination of the products identified in Contour's second supplemental response to interrogatory no. 1 reveals that each product includes an auxiliary spectacle frames, and each auxiliary frame includes an arm located at each side portion of the frame and extending rearward of lens rims.  Each auxiliary frame arm includes a magnetic member, and each arm is adapted to extend across respective side portions of a primary spectacle frame when the auxiliary frame is magnetically attached to the primary frame.

### *"arm(s)"*

Further responding, Contour construes the term "arm" to mean the portion of the auxiliary spectacle frame that secures one of the auxiliary frame magnetic members and extends outwardly and rearwardly of the auxiliary lenses.  Contour's construction of the terms used in asserted claims 23 and 35 is set out in Exhibit 1 to these responses.  As shown in Contour's preliminary infringement contentions set out in Exhibit 2 to these responses, Revolution's accused auxiliary spectacle frames have "arms" that satisfy Contour's construction of this term.

### *"magnetic member"*

Contour construes the term "magnetic member" to mean a permanent magnet or a ferromagnetic member, but at least one magnetic member in each pair of corresponding auxiliary frame/primary frame magnetic members must be a permanent magnet (*see* Exhibit 1). Based on an examination of Revolution's accused eyewear, and as shown in Exhibit 2 to these responses,

6

Revolution's accused auxiliary spectacle frames have "magnetic members" that satisfy Contour's construction of this term.

### *"adapted to extend across respective side portions of a primary spectacle frame"*

Contour construes the term "adapted to extend across respective side portions of a primary spectacle frame" means the magnetic members and at least some portion of the auxiliary spectacle frame arms are suitable for reaching across the top or bottom of the corresponding side portion of a primary spectacle frame (*see* Exhibit 1). Based on an examination of Revolution's accused eyewear, and as shown in Exhibit 2 to these responses, Revolution's accused auxiliary frames satisfy this claim element as construed by Contour.

Contour contends that Revolution's accused auxiliary spectacle frames identified in Contour's second supplemental response to interrogatory no. 1 fall into a product family of instrumentalities whose members are indistinguishable with respect to the infringement alleged by Contour. For this reason, Contour's preliminary infringement contentions set out in Exhibit 2 apply equally to all of Revolution's accused products. *See Renesas Technology Corp. v. Nanya Technology Corp.*, 2005 WL 2000926 (N.D.Cal. Aug. 18, 2005); *Suncast Techs., L.L.C. v. Patrician Prods., Inc.*, 2008 WL 179648, at *9, *13 (S.D. Fla. Jan. 17, 2008) ("[T]he resolutions suggested by the various local patent rules embody the collective wisdom and experience of groups of judges and practicing patent lawyers who, on repeated occasions, have addressed the very discovery issues covered by the local patent rules. . . . Consequently, the Court finds the local patent rules of these other districts to provide instructive insight into identifying proper topics of discovery unique to a patent suit, and suggesting the correct sequencing of such discovery.").

7

## INTERROGATORY NO. 3

For each accused product in the Florida Action, state your infringement contentions, including without limitation the claims that you contend Revolution has infringed and, on an element-by-element basis, how each element is met by the accused product, whether the alleged infringement has been literal or under the doctrine of equivalents, and how the test of equivalency is satisfied.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3

Contour objects to this interrogatory on the ground that it is overbroad and unduly burdensome. Contour further objects to this interrogatory on the ground that it calls for Contour to state legal conclusions on claim construction. Moreover, Contour further objects to this interrogatory on the ground that it is premature, as factual contentions can only be formed after the completion of all discovery in this action. In particular, Contour cannot fully respond to this interrogatory as currently drafted without full discovery from the Revolution Defendants, including with respect to all of the brands of magnetic clip-on eyewear with similar designs as those identified in Contour's second supplemental response to interrogatory no. 1 made, used, sold, or offered for sale by the Revolution Defendants.

Without waiver of these objections, Contour contends that each of the accused Revolution products identified in Contour's second supplemental response to Revolution's interrogatory no. 1 literally infringe asserted claims 23 and 35 of the reexamined '545 Patent. Revolution has not yet provided Contour with its non-infringement contentions, and therefore, Contour does not know what elements of the asserted claims Revolution contends are not present in the accused products. Accordingly, Contour is not yet in a position to provide infringement contentions under the doctrine of equivalents. Contour reserves the right to do so, after Revolution provides its non-infringement contentions.

Exhibit 1 to this supplemental response is a chart providing Contour's constructions of the limitations of asserted claims 23 and 35 of the reexamined '545 Patent, along with intrinsic

8

and extrinsic support. Exhibit 2 is a chart providing Contour's preliminary infringement contentions based on these constructions. Because Contour has not yet received any discovery from Revolution on its accused products, Contour reserves the right to amend, modify, and/or change its infringement contentions as discovery progresses.

Contour contends that Revolution's accused auxiliary spectacle frames identified in Contour's second supplemental response to interrogatory no. 1 fall into a product family of instrumentalities whose members are indistinguishable with respect to the infringement alleged by Contour. For this reason, Contour's preliminary infringement contentions set out in Exhibit 2 apply equally to all of Revolution's accused products. Exhibit 2 contains illustrative photographs of one product in the family of infringing Revolution products. This product has model no. REV 535 and is marked with U.S. Patent No. 6,705,722.

## INTERROGATORY NO. 5

On an element-by-element basis for each asserted claim in the Florida Action, state all differences between the auxiliary spectacle frames of the accused product in the Florida Action and the auxiliary spectacle frame of the accused product in the California Action.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5

Contour objects to this interrogatory as seeking information irrelevant to any claim or defenses in this action, and not reasonably calculated to lead to the discovery of admissible evidence. Contour further objects to this interrogatory on the ground that it is premature, as Contour cannot respond to this interrogatory as currently drafted without full discovery from the Revolution Defendants, including with respect to all of the brands of magnetic clip-on eyewear with similar designs as those identified in Contour's second supplemental response to interrogatory no. 1, that were made, used, sold, or offered for sale by the Revolution Defendants.

9

Contour further objects to this interrogatory as improperly seeking to invade Contour's attorney-client privilege and the work product immunity accorded its counsel.

Contour further objects to this interrogatory on the ground that it seeks to impose a burden on Contour to undertake an analysis of Revolution's eyewear that Contour has no discovery obligation to undertake, for the following reasons: (1) the IMF and IMFT frames at issue in the California action are not at issue in this action; (2) the Revolution auxiliary frames at issue in this action were not at issue in the California action; (3) Contour did not assert original claim 23 of the '545 Patent in the California action, nor was any auxiliary frame claim was asserted in the California action; and (4) New Claims 23 and 35 of the '545 Patent asserted in this action did not exist during pendency of the California action. If Revolution wants to assert some irrelevant structural correspondence between Revolution's IMF and IMFT auxiliary frames and the auxiliary frames accused of infringement in this action, Revolution can do so; but Contour has no discovery obligation to do so.

Without waiver of any objection, Contour contends that the accused Revolution auxiliary frames in this action differ, and may differ from the auxiliary frames used with the accused primary frames in the California Action in the following respects. It should be noted in this regard, that although the following differences in the auxiliary spectacle frames also make reference to primary spectacle frames sold by Revolution, Contour's infringement position in this action is not limited to the adaptability of Revolution's accused auxiliary frames to Revolution's primary frames. This is made clear by Contour's claim construction and preliminary infringement contentions in Exhibits 1 and 2, respectively.

- Revolution sells the auxiliary frames accused of infringement in this action with primary frames that have embedded magnets. As presently advised, the magnets

10

are embedded in monoblock structures, which also serve as the primary frame extensions or "end pieces". The magnets of the primary frames at issue in the California Action were housed in projections which were part of the primary frame, but which were separate pieces attached to the rear sides of the end pieces. As presently advised, the monoblock structures have a very different configuration than the projections, and are much thicker, wider, and bulkier than the projections to avoid decreasing the strength of the primary frame. Do to these different configurations, and as presently advised, Contour contends that the arms of the auxiliary frames in this action are not dimensioned identically to the arms of the auxiliary frames used with primary frames having projections. As a result, while Contour contends that the Revolution products identified in Contour's second supplemental response to interrogatory no. 1 literally infringe claims 23 and 35, Contour also contends that that the arms and magnets of the auxiliary frames at issue in this action are not "adapted to extend across respective side portions of a primary spectacle frame" in the identical manner as the auxiliary frames previously sold by Revolution with primary frames that included projections.

- Further, due to the presence of the monoblock structures, it is unclear whether the auxiliary frames at issue in this action magnetically attract Revolution's primary frame magnets through actual contact or simply through magnetic attraction without actual contact. However, both means of magnetic engagement would both fall within the scope of claims 23 and 35. Revolution's patents, which only illustrate and describe embodiments of its primary frames that use projections,

11

make it clear that the auxiliary frame magnets actually contact the primary frame magnets when the frames are joined. Thus, if the magnetic engagement in the monoblock products is facilitated through magnetic attraction, without actual contact, it cannot be concluded that the magnets of the auxiliary frames at issue in this action "vertically engage" corresponding magnetic surfaces on Revolution's primary frames in the identical manner as the auxiliary frames engage the magnets of the primary frames at issue in the California Action.

Respectfully submitted,

Dated:  March 15, 2010                By: _____

Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

and

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone:  (973) 360-7900
Facsimile:  (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc.*

12

## CERTIFICATION

I, David Chao, certify that I am the Director and Vice President of International Sales, of Contour Optik, Inc., one of the Plaintiffs in this action, that I have read the foregoing Plaintiff Contour Optik, Inc.'s Supplemental Responses to Defendant Revolution Eyewear, Inc.'s Interrogatory Nos. 2, 3 and 5, and Second Supplemental Response to Revolution's interrogatory. No. 1., and that I believe, to the best of my knowledge and based on information provided to me by others, that the matters stated therein are true and correct.

Dated:  March ____, 2010

_____
David Chao

13

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 15th day of March, 2010, the foregoing document is being

served on all counsel of record on the attached Service List *via email and first class U.S. Mail.*

Ericka Turk-Moore

## SERVICE LIST

*Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,*
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants*
*Hardy Way, LLC, Revolution Eyewear, Inc.*
*and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants*
*Revolution Eyewear, Inc. and Gary Martin*
*Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants*
*Marchon Eyewear, Inc. and Nike, Inc.*

14

**EXHIBIT 1**
## CONTOUR'S CLAIM CONSTRUCTION

| Claim | Plaintiffs' Construction | Support for Plaintiffs' Construction |
|---|---|---|
| 23. An eyeglass device comprising: | No construction required: the preamble is not a claim limitation. | N/A |
| An auxiliary spectacle frame for supporting auxiliary lenses therein, | *auxiliary spectacle frame* means a clip-on frame that includes at least a nose bridge, lens rims (if provided), partial rims (if provided), structures that support lenses in rimless frames (if provided), magnetic members, and arms for securing the auxiliary frame magnetic members.<br><br>*for supporting auxiliary lenses therein* means for maintaining the auxiliary lenses in position within the auxiliary spectacle frame. | *auxiliary spectacle frame*<br>Reexamined '545 Patent: Figures 2 and 4-7; col. 1, lines 54-62; col. 2, lines 38-48.<br><br><br><br>*for supporting auxiliary lenses therein*<br>Reexamined '545 Patent: Figure 2; col. 1, lines 54-55; col. 2, lines 38-40.<br><br>Webster's II New College Dictionary (1st Ed. 1999) at page 155, defining the term "support" to mean: "to maintain in position so as to keep from falling, sinking or slipping". |
| said frame including a front side, a rear side, and oppositely positioned side portions, | *front side* means the front side of the auxiliary spectacle frame when worn.<br><br>*rear side* means the side of the auxiliary spectacle frame generally opposite the front side when the frame is worn. | *front side*<br>Reexamined '545 Patent: Figure 2 illustrates the front side of one embodiment of the auxiliary spectacle frame of the invention.<br><br>*rear side*<br>Reexamined '545 Patent: Figures 4 and 6 illustrate the rear side of one embodiment of |

## EXHIBIT 1
## CONTOUR'S CLAIM CONSTRUCTION

| | | |
|---|---|---|
| | | the auxiliary spectacle frame of the invention. |
| | *oppositely positioned* means the side portions of the auxiliary spectacle frame are positioned oppositely of one another.<br><br>*side portions* means those portions of the auxiliary spectacle frame adjacent the lenses or lens rims (if provided) or other lens supporting structure, and which form part of the arms. | *oppositely positioned side portions*<br>Reexamined '545 Patent: Figures 2, and 4-6 illustrate the oppositely positioned side portions of one embodiment of the auxiliary spectacle frame of the invention; col. 1, lines 55-57; col. 2, lines 38-41. |
| each of said side portions having an arm extended therefrom, | *arm* means the portion of the auxiliary spectacle frame that secures one of the auxiliary frame magnetic members and extends outwardly and rearwardly of the auxiliary lenses.<br><br>*extended therefrom* means extended away from the side portions. | *arm*<br>Reexamined '545 Patent: Figures 2, 4, and 5-7; col. 1, lines 55-57; col. 2, lines 38-41.<br><br><br>*extended therefrom*<br>Reexamined '545 Patent: Figures 2, 4, and 5-7 illustrate the arms being extended away from the side portions of the auxiliary spectacle frame. |
| each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, | *rearwardly directed free end* means the end of the arm that extends substantially rearward of the lenses and is not attached to the side portions of the frame. | *rearwardly directed free end*<br>Reexamined '545 Patent: Figures 5-7 illustrate the rearwardly directed free ends of the auxiliary spectacle frame arms. |

**EXHIBIT 1**
**CONTOUR'S CLAIM CONSTRUCTION**

| | | |
|---|---|---|
| | *for securing* means for connecting in a manner such that the connection is not likely to fail or give way. | *for securing*<br>Reexamined '545 Patent: Figures 5-7 illustrate rearwardly directed free ends for securing the magnetic members of the auxiliary spectacle frame.<br><br>Webster's II New College Dictionary (1st Ed. 1999) at page 150, defining the term "secure" to mean: "not likely to fail or give way". |
| | *magnetic member* means a permanent magnet or a ferromagnetic member, but at least one magnetic member in each pair of corresponding auxiliary frame/primary frame magnetic members must be a permanent magnet. | *magnetic member*<br>Dependent Claim 35 limits the term "magnetic members" to "magnets".<br><br>Webster's II New College Dictionary (1st Ed. 1999) at page 140, defining the term "magnetic" to mean: "having the properties of a magnet", and "capable of being magnetized or of being attracted by a magnet".<br><br>Sadler, U.S. Patent No. 5,416,357, col. 3, lines 21-25: The Sadler '357 patent was prior art disclosed in the reexamined '545 Patent specification and considered during prosecution of the '545 Patent. Sadler discloses a primary frame having first magnetic members and a front-mounting auxiliary frame having second magnetic members. Sadler further discloses that the first and second magnetic members are made of a permanent magnetic material or a ferromagnetic |

**EXHIBIT 1**
**CONTOUR'S CLAIM CONSTRUCTION**

| | | |
|---|---|---|
| | | material, but "[a]t least the one of the first and second magnetic members must be of a permanent magnetic material for a magnetic attraction to exist". |
| | *horizontal surface* means a surface in a substantially horizontal plane when the frame is worn (i.e., in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame). | <u>*horizontal surface*</u><br>Reexamined '545 Patent: Figures 3-7 illustrate auxiliary frame magnetic members having a horizontal surface; col. 2, lines 63-67. |
| and a pair of magnetic members respectively secured in the free ends of said arms, | *secured in the free ends of said arms* means connected to the free ends of the arms in a manner such that the connection is not likely to fail or give way. | <u>*secured in the free ends of said arms*</u><br>Reexamined '545 Patent: Figures 5-7 illustrate auxiliary spectacle frame magnetic members that are secured in the free ends of the arms; col. 2, lines 43-45, 57-60.<br><br>Webster's II New College Dictionary (1st Ed. 1999) at page 150, defining the term "secure" to mean: "not likely to fail or give way". |
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame | *primary spectacle frame* means the main frame and includes at least a nose bridge, legs which extend back over the wearer's ears, lens rims (if provided), partial rims (if provided), structures that support lenses in rimless frames (if provided), extensions, and primary frame magnetic members. | <u>*primary spectacle frame*</u><br>Reexamined '545 Patent: Figures 1, 3, and 5-7; col. 1, lines 46-56; col. 2, lines 31-39.<br><br>The primary spectacle frame does not have to be the particular primary frame sold for a particular product. *See Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009) (holding that Claim 22 of the '545 Patent, directed to the primary |

**EXHIBIT 1**
**CONTOUR'S CLAIM CONSTRUCTION**

| | | |
|---|---|---|
| | | spectacle requires, requires that it be capable of magnetically connecting to "an" auxiliary spectacle frame, not any particular auxiliary spectacle fame). |
| | *side portions* means those portions of the primary spectacle frame adjacent the lenses or lens rims (if provided) or other lens supporting structure, and which extend outwardly to connect to the legs that fit over the wearer's ears. | *adapted to extend across respective side portions of a primary spectacle frame* Reexamined '545 Patent: Figures 1-7 illustrate one embodiment of the invention in which the arms and magnetic members of an auxiliary spectacle frame are suitable for extending across respective side portions of a primary spectacle frame; col. 1, lines 46-56; col. 2, lines 31-39. |
| | *adapted to extend across respective side portions of a primary spectacle frame* means the magnetic members and at least some portion of the auxiliary spectacle frame arms are suitable for reaching across the top or bottom of the corresponding side portion of a primary spectacle frame. | *www.merriam-webster.com*: defining the term "adapted" to mean "to make fit (as for a specific or new use or situation) often by modification"; synonyms include, e.g., adjust, accommodate, and conform. |
| | | *www.thefreedictionary.com*: defining the term "adapted" to mean "[t]o make suitable to or fit for a specific use or situation. |
| | | *www.macmillandictionary.com*: defining the term "adapted" to mean "especially suitable for someone or something"; synonyms include, e.g., fitting, |

**EXHIBIT 1**
**CONTOUR'S CLAIM CONSTRUCTION**

| | | apt, and possible. |
|---|---|---|
| so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. | *vertically engage* refers to the orientation of the magnetic poles when the horizontal surfaces of the corresponding primary frame/auxiliary frame magnetic members are engaged, and means that the horizontal surfaces of the auxiliary spectacle frame magnetic members engage corresponding magnetic member surfaces on a primary spectacle frame through actual contact, or through magnetic attraction without actual contact, in a plane that is substantially parallel to the plane of the lenses of the primary spectacle frame. | <u>*vertically engage*</u><br>Reexamined '545 Patent: Figures 5-7 illustrate one embodiment of the invention in which the auxiliary spectacle frame magnetic members vertically engage corresponding magnetic surfaces on a primary spectacle frame; col. 2, lines 63-67 (further supporting Plaintiffs' construction of "vertically engage" by describing the "horizontal" magnetic surfaces shown in Figure 7).<br><br>*Aspex Eyewear, Inc., et al. v. Miracle Optics, Inc.,* CV 01-10396 LGB (C.D. Cal. 2003) (construing the magnetic engagement of required by the asserted '545 Patent claims as being facilitated through actual contact or through magnetic attraction without actual contact); *Aspex Eyewear, Inc., et al. v. Concepts In Optics, Inc.,* 00-7067 CIV Moreno/Dube (2005) (same). |
| 35. The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary frame are magnets | *magnets* means permanent magnets. | <u>*magnets*</u><br>*See* support for the term "magnetic member". |
| | | |

**EXHIBIT 2: PLAINTIFFS' PRELIMINARY INFRINGEMENT CONTENTIONS**

| Claim 23 | Accused Revolution Products Indentified In Contour's Second Supplemental Response To Interrogatory No. 1 (not a claim limitation) |
|---|---|
| An eyeglass device comprising: | |
| An auxiliary spectacle frame for supporting auxiliary lenses therein, | Each of Revolution's products includes an auxiliary spectacle frame (e.g., a sunglass frame) for supporting auxiliary lenses (e.g., sunglass lenses) therein. Each auxiliary spectacle frame is an eyeglass device. <br><br> "an auxiliary spectacle frame for supporting auxiliary lenses therein" |

| said frame including a front side, a rear side, and oppositely positioned side portions, | Each of Revolution's auxiliary frames includes a front side, a rear side, and oppositely positioned side portions disposed substantially at the outer ends of the frame. |
|---|---|



| each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, | Each side portion of Revolution's auxiliary frame has an arm extended therefrom, and each arm has a rearwardly directed free end that secures a magnetic member having a horizontal surface. |

"each of said side portions having an arm extended therefrom"



"each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"

| and a pair of magnetic members respectively secured in the free ends of said arms, | Each of Revolution's auxiliary frames has a magnetic member secured in the free end of each arm. |
|---|---|
| | "and a pair of magnetic members respectively secured in the free ends of said arms"  |

The arms with secured magnetic members of each Revolution auxiliary frame are adapted to extend across to top or bottom of respective side portions of a primary spectacle frame so that the auxiliary frame magnetic members can vertically engage corresponding magnetic surfaces on a primary spectacle frame.



said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"

"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"



| Claim 35 | Accused Revolution Products Indentified In Contour's Supplemental Response To Interrogatory No. 1 |
|---|---|
| The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets. | Each of Revolution's auxiliary spectacle frames includes all the requirements of Claim 23. The magnetic members of Revolution's auxiliary spectacle frame are permanent magnets. |

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.

_____/

### PLAINTIFF CONTOUR OPTIK, INC.'S NOTICE OF SERVING CERTIFICATION OF DAVID CHAO

Plaintiff, Contour Optik, Inc. ("Contour"), by and through undersigned counsel, hereby gives notice of serving the certification of David Chao attesting to Contour's Supplemental Responses to Defendant Revolution's Interrogatory Nos. 2, 3, and 5, and Second Supplemental Response to Revolutions Interrogatory No. 1.

Respectfully submitted,

By: _____

Jacqueline Becerra
Florida Bar No. 025135
Ericka Turk-Moore
Florida Bar No. 0038198
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717
Email: BecerraJ@gtlaw.com
       TurkMooreE@gtlaw.com



DEPOSITION EXHIBIT

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

and

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.*
*and Contour Optik, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on this 19<u><sup>th</sup></u> day of March, 2010, the foregoing document is being

served on all counsel of record on the attached Service List *via email and first class U.S. Mail.*

Ericka Turk-Moore

2

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

## SERVICE LIST

*Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,*
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@feldmangale.com
Feldman Gale, P.A.
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone: 305-397-0798
Facsimile: 305-358-3309

*Attorneys for Defendants*
*Hardy Way, LLC, Revolution Eyewear, Inc.*
*and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants*
*Revolution Eyewear, Inc. and Gary Martin*
*Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants*
*Marchon Eyewear, Inc. and Nike, Inc.*

3

## CERTIFICATION

I, David Chao, certify that I am the Director and Vice President of International Sales, of Contour Optik, Inc., one of the Plaintiffs in this action, that I have read the foregoing Plaintiff Contour Optik, Inc.'s Supplemental Responses to Defendant Revolution Eyewear, Inc.'s Interrogatory Nos. 2, 3 and 5, and Second Supplemental Response to Revolution's interrogatory. No. 1., and that I believe, to the best of my knowledge and based on information provided to me by others, that the matters stated therein are true and correct.

Dated: March 18, 2010

_____
David Chao

13