UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61515-CIV-COOKE
MAGISTRATE JUDGE BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

       Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

       Defendants.
_____

STATEMENT OF UNDISPUTED MATERIAL FACTS
IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT IN FAVOR OF DEFENDANTS
REVOLUTION EYEWEAR, INC. AND GARY MARTIN ZELMAN

1.      U.S. Patent No. 5,568,207 patent was reissued on February 12, 2002, as U.S. Patent No. RE37,545 ("the '545 patent) with 32 additional claims.  (The '545 patent is attached as Exhibit A to Memorandum of Law.)

2.      In September 2002, plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc. ("Plaintiffs") filed a counterclaim against defendant Revolution Eyewear, Inc. ("Revolution") for infringement of claims 6, 22 and 34 of the '545 patent in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Central District of California Case No. CV 02-1087 ("California Action").  (Hanle Ex. C;[1] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1363 (Fed. Cir. 2009).

3.      Revolution, in turn, counterclaimed for a declaratory judgment that it did not infringe any valid claim of the '545 patent.  (Hanle Ex. D.)  In response, plaintiffs did not assert infringement of any additional claims of the '545 patent.  (Hanle Ex. R; *Revolution*, 563 F.3d at 1363 (counterclaim limited to patent claims 6, 22 and 34).)

4.      Patent claims 6 and 34 claim both the primary spectacle frame and the auxiliary frame that attaches magnetically to the primary frame.  (Ex. A at cols. 4 (claim 6) and 8 (claim 34).)

_____

[1]    Hanle Ex. __ refers to exhibits to the Declaration of Steven M. Hanle filed concurrently herewith.

Patent claim 22 is primarily directed to the primary frame, but requires that the magnets of the primary frame be "capable of engaging" the magnets of the auxiliary frame.  (Ex. A at col. 6.)

5.      The Revolution products originally accused of infringement in the California Action included both a primary spectacle frame and an auxiliary frame.  (Hanle Ex. E, p. 11.)

6.      On May 6, 2003, the California court issued its claim construction order, holding:  "the invention disclosed in the '545 patent is limited to a top-mounting design."  (Hanle Ex. F p. 32.) The court explained:  "the invention described is clearly for a top-mounting design:  the written description only describes a top-mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned anything other than a top-mounting design."  (*Id.* p. 30)

7.      The '545 patent's specification explains that the front-mounting magnetic auxiliary frames in the prior art "have no supporting members for preventing the auxiliary lenses from moving downward relative to the frames such that the auxiliary lenses may easily move downward relative to the frames and may be easily disengaged from the frames when the users conduct jogging or jumping exercises."  (Ex. A col. 1, lines 27-32.)

8.      The invention claimed in the '545 patent solves that problem as follows:

> the auxiliary spectacle frame including two side portions each having an arm
> extended therefrom for extending over and for engaging with the upper portion of
> the primary spectacle frame, and a pair of second magnetic members secured to
> the arms respectively for engaging with the first magnetic members of the primary
> spectacle frame so as to secure the auxiliary spectacle frame to the primary
> spectacle frame. The arms are engaged with and supported on the upper portion of
> the primary spectacle frame so as to allow the auxiliary spectacle frame to be
> stably supported on the primary spectacle frame and so as to prevent the auxiliary
> spectacle frame from moving downward relative to and so as to prevent the
> auxiliary spectacle frame from being disengaged from the primary spectacle
> frame.
>
> … the second magnetic members are extended downward toward the projections
> for hooking on the primary spectacle frame.

Ex. A, col. 1, line 56 – col. 2, line 7.)

9.      The figures of the '545 patent clearly and solely show a top-mounting auxiliary frame:



The auxiliary frame in Fig. 4 attaches to the top of the primary frame in Fig. 3, as shown in Figs 5 and 6. (Ex. A Figs. 3-6; Hanle Ex. K (Aspex Depo.) p. 136.) "An auxiliary spectacle frame 20 … includes two side portions each having an arm 21 [shown in yellow] for extending over and for engaging with the upper portion of the primary spectacle frame 10 (FIGS. 5 and 6)." (Ex. A col. 2, lines 38-43.)

10.     The inventor of the '545 patent Richard Chao, testified that his invention was for a top-mounting auxiliary frame where a magnet on the auxiliary frame extends downward toward the primary frame, and that he never even thought of a bottom-mounting auxiliary frame until he saw a Revolution's bottom-mounting auxiliary frame many years after he filed his patent application. (Hanle Ex. G (R. Chao Depo.) pp. 20-21, 33, 35-37, 115, 141-142.)

11.     The California court construed the term "magnetic members … having a horizontal surface" in the auxiliary frame (claim 6) to mean "having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame." (Hanle Ex. F p. 32.)

12.     Claim 23 asserted in this case contains language identical to claim 6, "magnetic member having a horizontal surface," which must be construed the same. (Ex. A, Reexam Cert. (last page of exhibit) col. 2, lines 4-5.)

13.     Claim 34 had the following limitation:  "said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]". (Ex. A col. 8.)  The California court construed this language to mean that at least some portion of each arm reaches across the top of the corresponding extension of the primary frame. (Hanle Ex. F p. 35.)

14.     Claim 23 asserted in this case contains almost identical language to claim 34: "said arms … adapted to extend across respective side portions," which must be construed the same. (Ex. A, Reexam Cert. (last page of exhibit) col. 2, lines 6-8.)

15.     Claim 22 requires that the magnetic members of the primary frame be "capable of engaging" the magnetic members of the auxiliary frame.  (Ex. A col. 6.)  The California court construed this term to mean that the primary frame magnets have the ability to magnetically attract the magnets of the auxiliary frame <u>when placed above</u> the primary frame magnets.  (Hanle Ex. F p. 34.)

16.     Claim 23 asserted in this case does not have a similar "capable of engaging" language, but requires instead that the arms of the auxiliary frame be specially "adapted to extend across [the top of] respective side portions of a primary spectacle frame."  (Ex. A, Reexam Cert. (last page of exhibit) col. 2, lines 8-10.)

17.     The magnet surfaces of Revolution's accused auxiliary frames in the California Action were upwardly, <u>not</u> downwardly, facing and the arms of those auxiliary frame extend <u>underneath</u> the corresponding extensions on the primary frame.

 



(Hanle Decl. ¶ 16, Ex. H, Ex. I pp. 7-8, 147-148; *Revolution Eyewear*, 563 F.3d at 1363.)

18.     The California court granted Revolution's motion for summary judgment that claims 6 and 34 were not infringed.  (Hanle Ex. E p. 34; *Revolution Eyewear*, 563 F.3d at 1364.)

19.     Plaintiffs later argued that Revolution's primary frames infringed claim 22 because they were "capable of engaging" auxiliary frame magnets when placed above the auxiliary frame magnets.  (563 F.3d at 1364, 1369.)  In support of their argument, plaintiffs did not use Revolution's auxiliary frames, which are bottom loading; rather, they specially made auxiliary frames with magnet surfaces facing downwardly towards the magnets on Revolution's primary frame.  (*Id.* at 1369; Hanle Ex. I pp. 7-8.)

20.     The California court ruled on April 30, 2007, that Revolution's *primary* frames infringed claim 22 of the '545 patent because they had the ability to attract the top-loading auxiliary frames specially made by plaintiffs.  (563 F.3d at 1364, 1369.)

21.     On February 25, 2008, the California court entered judgment consistent with its rulings. (Hanle Ex. J; 563 F.3d at 1365.)  This was a final judgment, by a court of competent jurisdiction, in an action between the same parties or their privies as in this case.

22.     Plaintiffs did not challenge on appeal the California court's grant of summary judgment in favor of Revolution on claims 6 and 34 or the California court's claim construction order.  (563 F.3d at 1365)  Plaintiffs admit that they are bound by the California court's claim construction order.  (Hanle Ex. K (Aspex Depo.) pp. 45-46; Hanle Ex. S (D. Chao Depo.) pp. 88-89.)

23.     In April 2009, the Federal Circuit affirmed the judgment.  (563 F.3d at 1374.)

24.     Before the California court granted summary judgment of infringement on claim 22 in April 2007, Revolution had redesigned its primary frames such that the magnets were embedded in the frames, rather than placed in projections attached to the frames.  (Zelman Decl. ¶ 3, attached hereto as Exhibit 1; Hanle Ex. K (Aspex Depo.) pp. 190-192.)  The redesigned primary frames do not infringe any claim of the '545 patent because, as noted by the Federal Circuit, the '545 patent "disclaimed … a primary frame that has embedded magnetic members." (563 F.3d at 1368.)

25.     The design of the auxiliary frames remained unchanged, with magnetic member surfaces that face upwardly and arms that are adapted to extend underneath the respective side portions of the primary frame.  (Zelman Decl. ¶ 3; Compare Hanle Exs. H and L; Hanle Decl. ¶¶ 16-18; see also photographs in Fact 30 below.)

26.     The magnets on Revolution's auxiliary frames have an upwardly facing surface **not** a downwardly facing surface.  (Zelman Decl. ¶ 2; Hanle Exs H and L; Hanle Decl. ¶¶ 16-18; Hanle Ex. K (Aspex Depo.) p. 119.)



*Revolution Auxiliary Frame Showing Upwardly Facing (Silver) Magnet Surface (Hanle Decl. ¶ 18)*



*Revolution Auxiliary Frame Showing (Red) Epoxy Covering Bottom of Arm (Hanle Decl. ¶ 18)*

27.     The arms and magnetic members of Revolution's auxiliary frames are adapted such that the entire arms extend underneath the respective side portions of the primary spectacle frame, and no part of the arms or magnetic members are adapted to extend across the top of the primary spectacle frame.  (*Id.*; Hanle Ex. K (Aspex. Depo.) p. 96-97, 100.)



**Auxiliary Frame Accused in California Action Bottom Mounted to Primary Frame (Hanle Decl. ¶ 16.)**



**Auxiliary Frame Accused in this Case Bottom-Mounted to Primary Frame (Hanle Decl. ¶ 18.)**

28.     The magnetic members of Revolution's auxiliary frames engage the bottom of corresponding magnetic member surfaces on a primary spectacle frame, not the top of the primary frame.  (*Id.*)  Revolution's auxiliary frames are bottom-mounting.  (*Id.*; Hanle Ex. K (Aspex Depo.) pp. 25-26, 58, 102.)  Note that the "corresponding magnetic member surfaces" are

on the bottom of the primary frame, not the top, which does not have a magnetic member surface.



**Auxiliary Frame of Accused Product Showing (Silver) Magnet Surface on Top (Hanle Decl. ¶ 18)**



**Primary Frame of Accused Product (Bottom View) Showing Magnet Surface in Pocket on Bottom of Primary Frame (Hanle Decl. ¶ 18.)**



**Auxiliary Frame of Accused Product Bottom-Mounted to Primary Frame – No Magnet On Top of Primary Frame (Hanle Decl. ¶ 18.)**

29.     Because there is variability in the size and shape of Revolution's various primary frames in both the old design and new embedded design, there is also variability in the angle and length of the arms in the various auxiliary frames that mate with the primary frames.  (Zelman Decl. ¶ 4.)

30.     All of the auxiliary frames for both the old primary frames and the redesigned primary frames for the Accused Products are identical with respect to the limitations in claim 23 and 35 (Zelman Decl. ¶ 4), as shown in the photographs below (Hanle ¶¶ 16, 18):



*California Accused Auxiliary Frame - TOP*



*Florida Accused Auxiliary– TOP Frame - TOP*



*California Accused Auxiliary Frame - BOTTOM*



*Florida Accused Auxiliary Frame – BOTTOM*

- said auxiliary frame including a front side, a rear side, and oppositely positioned side portions,
- each of said side portions having an arm extended therefrom,

- each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface,
- and a pair of magnetic members respectively secured in the free ends of said arms,
- said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

(See Ex. A, Reexam. Cert. (last page), claim 23.)

31.      Claims 23 and 35 contain no limitations regarding the size or angle of the arms of the auxiliary frame or regarding the size of the magnets.  (*Id.*; Hanle Ex. K (Aspex Depo.) pp. 40-42.)

32.      Plaintiffs became aware of the redesigned products at the time they were released, which was before the summary judgment ruling in April 2007 and trial in the California Action.  (Hanle Ex. K (Aspex Depo.) pp. 190-192; Hanle Ex. P p. 7.)  Plaintiffs formed the belief at that time that the auxiliary frames infringed the '545 patent.  (Hanle Ex. K (Aspex Depo.) pp. 197-198.)

33.      Nevertheless, from August 7, 2003 – the date the California court granted summary judgment of non-infringement of primary/auxiliary claims 6 and 34 – until they filed this case on September 23, 2009, plaintiffs never asserted that Revolution's bottom-mounting auxiliary frames infringed the '545 patent, and never asserted that Revolution infringed claim 23.  (Zelman Decl. ¶ 5; Complaint (DE 1).)

34.      In September 2007, a third party filed with the PTO a request for reexamination of numerous claims of the '545 patent, including claim 23 asserted here, based on several prior art patents, including U.S. Patent No. 5,867,244 to defendant Gary Martin.  (Hanle Ex. M p. 2.)

35.      The PTO initially rejected all of the subject claims as obvious.  (Hanle Ex. N pp. 1-3.)

36.      In response, plaintiffs amended claim 23 to specify that the magnetic members of claim 23 "having a horizontal surface" engage corresponding magnetic "member surfaces" on the primary frame.  (Hanle Ex. O p. 3.) At the time plaintiffs added this language to claim 23, "having a horizontal surface" had already been construed in the California Action to mean a "having a downwardly facing surface …"  (Hanle Ex. F p. 32.)

37.      Because the amendment adds a limitation, amended claim 23 is certainly no broader than pre-amendment claim 23.  (Ex. A, Reexam Cert. last page; 35 U.S.C. § 305; Hanle Ex. P p. 12.) Plaintiffs also added claim 35, which Plaintiffs admit is narrower than claim 23.  (Hanle Ex. O p. 4.)

-8-

38.     The PTO issued a reexamination certificate including these amended claims on March 3, 2009.  (Ex. A, Reexam Cert.)

39.     Plaintiffs filed this lawsuit on September 23, 2009, against, among others, Revolution, the same party involved in the California Action, alleging infringement of the same '545 patent as asserted in the California Action.  (Complaint (DE 1).)

40.     Gary Martin Zelman does not make, use, sell or offer to sell any eyewear products. (Zelman Decl. ¶ 6.)


s/ Steven M. Hanle


Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:     714.513.5100
Telecopy:      714.513.5130

and

s/ Janet T. Munn
Janet T. Munn
jmunn@rascoklock.com
Florida Bar No. 501281
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL  33134
Telephone: 305.476.7100
Telecopy: 305.476.7102

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC and Gary Martin Zelman*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on May 20, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.

By: <u>s/ Janet T. Munn</u>
Janet T. Munn

W02-WEST:3SMH1\402658551.1

## SERVICE LIST

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
email: schindlerb@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

Todd Schleifstein, Admitted Pro Hac Vice
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, NJ  07932
email: schleifsteint@gtlaw.com
Telephone:  973.360.7900
Telecopy:  973.301.8410

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310

Scott W. Hansen, Admitted Pro Hac Vice
email:  shansen@reinhartlaw.com
**REINHART BOERNER VAN DEUREN**
1000 N. Water Street
PO Box 2965
Milwaukee, WI  53201-2965
Telephone:  414.298.8123
Telecopy:  414.298.8097

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email:  ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email:  bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email:  dherman@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
email:  pfleming@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone:  212.588.0800
Telecopy:  212.588.0500

Mark P. Walters, Admitted Pro Hac Vice
email:  mwalters@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
1191 2nd Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206.336.5690
Telecopy:  212.588.0500