UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

    Defendants.
_____/

**PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF THEIR CLAIM THAT DEFENDANTS REVOLUTION EYEWEAR, INC. AND MARCHON EYEWEAR, INC. LITERALLY INFRINGE CLAIMS 23 AND 35 OF THE '545 PATENT**

Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc. (collectively, the "Plaintiffs"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7.5, respectfully move the Court for an Order granting their Motion for Partial Summary Judgment that: (1) the auxiliary spectacle frames sold by Defendant Revolution Eyewear, Inc. ("Revolution") since March 3, 2009 under the Bling Bling Clips, Ed Hardy, Revolution, Revolution Airs, Revolution Titanium, Revolution Kids, and That's So Raven brand names (the "Revolution Accused Products") literally infringe Claims 23 and 35 of United States Patent Serial No. RE 37,545. ("'545 patent") and (2) the auxiliary spectacle frames sold by Defendant Marchon Eyewear, Inc. ("Marchon") since March 3, 2009 under the Flexon, Nike and Calvin Klein brand names (the "Marchon Accused Products") literally infringe claims 23 and 35 of the '545 patent. The grounds for this motion are set forth in detail in the Plaintiffs' accompanying memorandum of

1

law, Rule 7.5 Statement of Material Facts and declarations of Ericka Turk-Moore ("Turk-Moore Decl."), Thierry Ifergan ("Ifergan Decl.") and Lee Zaro ("Zaro Decl.") being filed concurrently herewith.

## I. INTRODUCTION

The '545 Patent is directed generally magnetic clip-on eyewear, in which an auxiliary spectacle frame (typically sunglass lenses) is magnetically secured to a primary spectacle frame (typically containing prescription lenses). The '545 patent contains claims covering the primary frame, the auxiliary frame and the combination of the auxiliary and primary frame.

The '545 Patent was issued with 34 claims on February 12, 2002. Turk-Moore Decl. at Exh. 1. On March 3, 2009, following a September 13, 2007 request for re-examination, the Patent Office issued Reexamination Certificate No. RE37,545 F1, which included a newly amended claim 23 and a new Claim 35, the claims as issue here. Turk-Moore Decl. at Exh. 2.

Claims 23 and 35 are directed to auxiliary, magnetic clip-on eyewear frames and read as follows:

> 23. An eyeglass device comprising:
>
> [a] An auxiliary spectacle frame for supporting auxiliary lenses therein,
>
> [b] said frame including a front side, a rear side, and oppositely positioned side portions,
>
> [c] each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface,
>
> [d] and a pair of magnetic members respectively secured in the free ends of said arms,
>
> [e] said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can

2

>   vertically engage corresponding magnetic member surfaces on a primary spectacle frame.[1]
>
>   35.  The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets.

Here, the ordinary meaning of Claims 23 and 35 as understood by a person of skill in the art is readily apparent and requires little more than the application of commonly understood words. As Plaintiffs will show below, upon comparing these commonly understood terms to the Revolution Accused Products and the Marchon Accused Products (collectively, the "Accused Products"), it is incontrovertible that the Accused Products meet each and every element of Claims 23 and 35.

Indeed, Revolution and Marchon (collectively, "Defendants") do not dispute that the Accused Products meet each and every element as the claims are written. Instead, in an effort to escape infringement, Defendants seek to rewrite claims. According to Defendants, the term "horizontal surface" in elements 23[c] and 23[e] should be read out of the claim altogether and replaced with "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame" and the term "corresponding magnetic member surfaces" in element 23[e] should be similarly read out of the claim and replaced with "upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame." Turk-Moore Decl. at Exh. 5 (Response to Special Interrogatory No. 1)

Defendants' arguments do not defeat summary judgment. Claim construction is an issue of law and no basis exists here for the Court to rewrite the claims. Moreover, even if the Court

---

[1] The sub lettering [a] through [e] was added to delineate the claim language into separate elements. It is not part of the actual claim language.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

were to accept the Defendants' rewrite of the claims, no genuine issue of fact exists because the Accused Products also meet Defendants' rewritten claim elements.

## II.     ARGUMENT[2]

### A.     Legal Standard For Granting Summary Judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©. Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the Court of the basis of the motion, and of demonstrating the absence of a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 373 (1986); *Katz v. Children's Hosp. of Orange County,* 28 F.3d 1520, 1534 (9th Cir. 1994). Once this initial burden is satisfied, the non-moving party must present "specific facts" showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "[T]here is not an issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is

---

[2] Submitted with this Memorandum is Plaintiffs' Statement of Material Facts as to which Plaintiffs contend there is no genuine issue to be tried. Rather than repeat that statement verbatim as a separate Statement of Facts, Plaintiffs incorporate by reference the facts as if cited herein and individually cites to certain of the undisputed facts as appropriate as part of the infringement analysis set forth in Section II(C) of this Memorandum.

4

merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50.

Consequently, the non-moving party must do more than raise some "metaphysical doubt" as to the existence of a genuine issue of material fact. Rather, the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Matsushita Elec. Induc. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1896). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be some evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 744 U.S. at 252. Thus, the non-movant's burden cannot be met by conclusory allegations or evidence setting out legal conclusions. *Bennett v. Parker,* 989 F.2d 1530, 1534 (11th Cir. 1990).

**B.     The Law Of Patent Infringement.**

The determination of patent infringement is a two-step process. First, the Court must construe the asserted claims as a matter of law to ascertain their meaning and scope. *Dawn Equip. Co. v. Kentucky Farms Inc.,* 140 F.3d 1009, 1014 (Fed. Cir. 1998). Second, the claims as construed are compared to the allegedly infringing device. *Id.*

   **1.     The Principles Of Claim Construction.**

      **a.     The Claims Define The Invention.**

Patent claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370, 391 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.,* 415 F.3d 1303, 1312 (Fed. Cir. 2005)(*en banc*). Thus, "it is the *claims*, not the written description, which define the scope of the patent right." *Laitram Corp. NEC Corp.,* 163 F.3d 1342, 1347 (Fed. Cir. 1998)(emphasis in

5

original); *see also Markman*, 52 F.3d at 980 ("The written description part of the specification itself does not delimit the right to exclude. That is the function and purpose of claims.").

### b. Claims Are Construed From The Standpoint Of A Person Of Ordinary Skill In The Art At The Time Of The Invention.

The words of a claim "are generally given their ordinary and customary meaning." *Vitronics*, 90 F.3d at 1582. The Federal Circuit has made clear that "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

The Court can construe the claims in the context of a summary judgment motion. *Markman v. Westview Instruments, Inc.*, 52 F.3d at 981. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001)(holding that the claims did "not require elaborate interpretation"). Such is the case here, and this Court may construe Claims 23 and 35 without the time and expense of a *Markman* hearing.

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

### c.   Particular Embodiments And Limitations Disclosed In The Patent Specification Should Not Be Imported Into The Claims.

Although patent claims are to be interpreted in light of the patent specification[3], it is well-settled that "particular embodiments appearing in a specification will not be read into the claims when the claim language is broader than such embodiments." *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

Because particular embodiments disclosed in the specification should not be read into the claims, the Federal Circuit has repeatedly held that "the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms." *See, e.g., Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1325-26 (Fed. Cir. 2002); *SRI Int'l v. Matsushita Electric Corp. of America*, 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985) (*en banc*) ("Specifications teach. Claims claim... That a specification describes only one embodiment does not require that each claim be limited to that one embodiment."); *Phillips*, 415 F.3d at 1323.

To be sure, "[i]f everything in the specification were required to be read into the claims, or if structural claims were to be limited to devices operated precisely as a specification-described embodiment is operated, there would be no need for claims. Nor could an applicant, regardless of the prior art, claim more broadly than that embodiment.... The law does not require the impossible. Hence, it does not require that the applicant describe in his specification every conceivable and possible future embodiment of his invention." *SRI Int'l*, 775 F.2d at 1121.

### d.   Extrinsic Evidence: Dictionary Definitions.

"Dictionaries or comparable sources are often useful to assist in understanding the commonly understood meaning of words and have been used both by our court and the Supreme

---

[3] The patent specification includes the: (1) "Abstract" of the invention; (2) "Background of the Invention"; (3) "Summary of the Invention"; (4) patent drawings, if any; and (5) "Detailed Description of the Preferred Embodiments". 37 C.F.R. §§1.71-1.74.

7

Court in claim interpretation." *Phillips*, 415 F.3d at 1323. "A dictionary definition has the value of being an unbiased source "accessible to the public in advance of litigation." *Vitronics*, 90 F.3d at 1585. As the Federal Circuit held in *Vitronics*, Courts are free to consult dictionaries and technical treatises "at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents." *Id.* at 1584 n.6; *see also Phillips*, 415 F.3d at 1322-23.

### 2. Comparing The Claims To The Accused Product.

To infringe a claim, each claim limitation must be present in the accused product, either literally or equivalently. *Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1220 (Fed. Cir. 1996). Literal infringement occurs when the accused device includes each element and limitation of the patent claim as properly construed. *Jergens v. McKasy*, 927 F.2d 1552, 1560 (Fed. Cir. 1991).

### C. The Accused Products Contain Every Element Of Claims 23 And 35.

The Accused Products are all auxiliary, magnetic clip-on eyewear sold by defendants Revolution and Marchon since March 3, 2009. The model numbers constituting the Accused Products were identified to counsel for Revolution and Marchon during the 30(b)(6) deposition of Plaintiff Aspex's designee Thierry Ifergan. Ifergan Decl. at ¶8 & Exh. 1 and ¶9 & Exh. 2. The Accused Products all have the same design with respect to the elements of Claim 23. Zaro Decl. ¶ 6.

Thus, the infringement analysis that applies to representative Accused Products applies to all the Accused Products. Shown in the pictures below is a representative accused product sold by Marchon under the Flexon brand (the "Marchon Clip-on"). Photographs of this representative product were taken by Plaintiffs' expert Lee Zaro and are attached to his

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

declaration, submitted in conjunction with this motion. His declaration also includes photographs of a representative product sold by Revolution (the "Revolution Clip-on") and a representative product sold by Marchon under the Nike brand (the "Nike Clip-on"). [4]

Comparing these representative frames to the claims, as properly construed, demonstrates that the Accused Products contain every element of Claims 23 and 35. Plaintiffs proposed claim construction as to each of the claim elements is set out in Exh.1 to its answers to interrogatories dated March 15, 2010 (Turk-Moore Decl., Exh. 3). Below, Plaintiffs have only set out their construction for elements (c) and (e), which are the two disputed elements.

1. **<u>The Accused Products contain all the elements of Claim 23.</u>**

    a. <u>"An auxiliary spectacle frame for supporting auxiliary lenses therein."</u>

Each of the Accused Products is "An auxiliary spectacle frame for supporting auxiliary lenses therein."

*Marchon Clip-on*



"an auxiliary spectacle frame for
supporting auxiliary lenses therein"

Zaro Decl. ¶ 8 & pg. 4; *See also Revolution Clip-on & Nike Clip-on,* Zaro Decl. ¶ 8 & pgs. 3-4.

---

[4] These frames were obtained by Aspex after Aspex customers returned the frames to Aspex under the mistaken belief that the products were Aspex products. Ifergan Decl. at ¶ 2.

9

  b. **"said frame including a front side, a rear side, and oppositely positioned side portions."**

Each of the Accused Product includes "a front side, a rear side, and oppositely positioned side portions.



*Marchon Clip-on*

"a rear side"

"a front side"

"oppositely positioned side portions"

Zaro Decl. ¶ 8 & pg. 6, *see also Revolution Clip-on & Nike Clip-on*, Zaro Decl. ¶ 8 & pg. 5

  c. **"each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface."**

The term "horizontal surface" in the phrase "magnetic member having a horizontal surface" means a surface in a substantially horizontal plane when the frame is worn (i.e., in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame). Support for this construction is found at Figures 3-7, which illustrate auxiliary frame magnetic members having a horizontal surface. Turk-Moore Decl. at Exh. 1, col. 2, lines 63-67.

Each of the Accused Products includes "side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface."

10



*Marchon Clip-on*

"each of said side portions having an arm extended therefrom"

"each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"

Zaro Decl. ¶ 8 & pg. 7; *see also Revolution Clip-on & Nike Clip-on,* Zaro Decl. ¶ 8 & pgs. 6-7.

Defendants argue that the term "magnetic member having a horizontal surface" in elements 23[c] and 23[e] should be read out of the claim altogether and replaced with "magnetic member having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame." *See e.g.* Turk-Moore Decl. at Exh. 5 (Revolution's Response to Special Interrogatory No. 1). Defendants alleged "support" for this rewrite of the claim element is their contention that the embodiment in the '545 patent only disclosed an auxiliary frame in a top-mounted configuration and thus they contend that element must be construed to require a magnet member with "a downwardly facing surface."

Defendants' construction of "horizontal surface" should be rejected. Figure 3 of the '545 Patent plainly discloses an auxiliary spectacle frame with horizontal surfaces that face upwards and downwards. Turk-Moore Decl. at Exh. 1. Thus, the disclosed embodiment is broader than defendants' proposed construction. In addition, claims are not limited to a particular embodiment disclosed in the patent. *See* Section II(B)(1)(c) *supra.*

11

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

But even under the Defendants' claim construction, the Accused Products meet this element. As the photograph of the exemplary Marchon Clip-on shows, the Accused Products do, in fact, have magnets with a downwardly-facing surface.



*Marchon Clip-on*
*(downward facing horizontal surface of magnet)*

Zaro Decl. ¶ 8 & pg. 9; see also *Revolution Clip-on & Nike Clip-on,* Zaro Decl. ¶ 8 & pg. 8.

The only difference between the upwardly facing surface of the magnets (*see* photos at II(C)(1)(c) *supra*) and the downwardly facing surface is an epoxy coating on the downwardly facing surface of the magnet. Zaro Decl. ¶ 8 & pg. 9. Epoxy coatings do not impede the magnetic properties of the downwardly facing surface of the magnets in the auxiliary spectacle frame. *Id.*

    d.    **"and a pair of magnetic members respectively secured in the free ends of said arms."**

Each of the Accused Products includes "a pair of magnetic members respectively secured in the free ends of said arms."

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com



*Marchon Clip-on*

"and a pair of magnetic members respectively secured in the free ends of said arms"

Zaro Decl. ¶ 8 & pg. 10 ; *see also Revolution Clip-on & Nike Clip-on*, Zaro Decl. ¶ 8 & pg. 9-10.

      e.    <u>"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame."</u>

Plaintiffs construe "adapted to extend across respective side portions of a primary spectacle frame" to mean that "the magnetic members and at least some portion of the auxiliary spectacle frame arms are suitable for reaching across the top or bottom of the corresponding side portion of a primary spectacle frame. Support for this construction can be found at Figures 1-7 of the '545 patent, which illustrate one embodiment of the invention in which the arms and magnetic members of an auxiliary spectacle frame are suitable for extending across respective side portions of a primary spectacle frame. Turk-Moore Decl. at Exh. 1, col. 1, lines 46-56; col. 2, lines 31-39. Further support for construction is the definition of the commonly understood term "adapted" which means "to make fit (as for a specific or new or situation) often by modification"; synonyms include, e.g., adjust, accommodate, and conform." Turk-Moore Decl. at Exh. 4 (www.merriam-webster.com definition of "adapted"); *see also* Turk-Moore Decl. at Exh. 3 (citing additional definitions of "adapted").

Plaintiffs further construe "vertically engage" to refer to the orientation of the magnetic poles when the horizontal surfaces of the corresponding primary frame/auxiliary frame magnetic members are engaged, and means that the horizontal surfaces of the auxiliary spectacle frame magnetic members engage corresponding magnetic member surfaces on a primary spectacle frame through actual contact, or through magnetic attraction without actual contact, in a plane that is substantially parallel to the plane of the lenses of the primary spectacle frame. Support for this construction is found at Figures 5-7 of the '545 patent, which illustrate one embodiment of the invention in which the auxiliary spectacle frame magnetic members vertically engage corresponding magnetic surfaces on a primary spectacle frame. Turk-Moore Decl. at Exh. 1, Figures 5-7; *see also* col. 2, lines 63-67 (further supporting Plaintiffs' construction of "vertically engage" by describing the "horizontal" magnetic surfaces shown in Figure 7).

Each of the Accused Products includes arms and a "pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame."

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com



*Marchon Clip-on*

"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"

Zaro Decl. ¶8 & pg. 12; *see also Revolution Clip-on and Nike Clip-on*, Zaro Decl. ¶8 & pgs. 11-12.

Defendants argue that the term "horizontal surface" in elements 23[e] (like with 23[c]) should be read out of the claim altogether and replaced with "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame" and that the term "corresponding magnetic member surfaces" in element 23[e] should be similarly read out of the claim and replaced with "upwardly surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame." *See e.g.* Turk-Moore Decl. at Exh. 5 (Revolution's Response to Special Interrogatory No. 1). Again, Defendants seek to support this claim construction by arguing that the vertical engagement of the auxiliary frame has to be between the upwardly facing surface of the primary frame and the downwardly facing surface of the auxiliary frame (i.e., it has to be top-mounted) because the '545 patent disclosed a top-mounted configuration. As with element 23(c), this construction

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

should be rejected because claim scope is not limited to a particular embodiment disclosed in the patent. *See* Section II(B)(1)(c) *supra*.

But even if the Court accepts Defendants' construction of element 23(e), there is no genuine issue of material fact because the Accused Products have magnets with a downward facing surface (*see* element 23(c) *supra*) and thus are adapted to engage the top or bottom of a primary spectacle frame. That the Accused Products are adapted to engage the top of a primary-spectacle frame is shown in the below photograph of the Marchon Clip-on.

*Marchon Clip-on*



"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"

Zaro Decl. ¶8 & pg. 14; *see also Revolution Clip-on & Nike Clip-on*, Zaro Decl. ¶8 & pg. 13. This is the exact same clip-on that was shown engaged to the bottom of a primary frame in the just prior photo.

### 2. The Accused Products meet the element of Claim 35.

Claim 35, which is a dependent claim to claim 23, has one element: "[t]he eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame

16

are magnets." Each of the Accused Products includes magnetic members of said auxiliary spectacle frame that are magnets. Zaro Decl., ¶8 & pg. 14.

In short, there is no genuine issue of fact that the Accused Products meet all the elements of Claims 23 and 35 even under Defendants' claim construction.

### III.   CONCLUSION

For all of the above reasons, Plaintiffs respectfully submit that their motion for partial summary judgment the Defendants literally infringe New claims 23 and 35 of the '545 patent be granted.

Dated:   May 20, 2010                    Respectfully submitted,

By: _/s/_ Jacqueline Becerra
Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

And

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone:  (973) 360-7900
Facsimile:  (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.
and Contour Optik, Inc.*

Greenberg Traurig, P.A. | Attorneys at Law | 1221 Brickell Avenue | Miami, FL 33131 | Tel 305.579.0500 | Fax 305.579.0717 | www.gtlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Jacqueline Becerra*
JACQUELINE BECERRA

## SERVICE LIST

Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants Hardy Way, LLC, Revolution Eyewear, Inc. and Gary Martin Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants Revolution Eyewear, Inc. and Gary Martin Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants Marchon Eyewear, Inc. and Nike, Inc.*

NJ 226,908,294v2 5-20-10

18