**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-61515-CIV-COOKE/BANDSTRA**

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.

_____/

**PLAINTIFFS' LOCAL RULE 7.5(C) STATEMENT OF MATERIAL FACTS IN
SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT THAT
DEFENDANTS REVOLUTION EYEWEAR, INC. AND MARCHON EYEWEAR, INC.
LITERALLY INFRINGE CLAIMS 23 AND 35 OF THE '545 PATENT**

**I.     INTRODUCTION**

      Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc. (collectively, "Plaintiffs") submit

the following Local Rule 7.5(c) Statement of Material Facts In Support of Plaintiffs' Motion for

Partial Summary Judgment that Defendants Revolution Eyewear, Inc. ("Revolution") and

Marchon Eyewear, Inc. ("Marchon") Literally Infringe Claims 23 and 35 of the '545 Patent.

**II.    UNDISPUTED FACTS**

     **A.    The '545 Patent**

     1.     On February 12, 2002, the U.S. Patent Office issued U.S. Patent No. RE37,545

(the "'545 Patent). The '545 patent is a reissue of U.S. Patent No. 5,568,207, which has been

surrendered. Declaration of Ericka Turk-Moore ("Turk-Moore Decl.") at Exh. 1.

2.        Following a September 13, 2007 request for re-examination, the Patent Office

issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which included a newly

amended claim 23 and a new Claim 35.  Turk-Moore Decl. at Exh. 2.

3.        Claim 23 is directed to auxiliary, magnetic clip-on eyewear frames and reads as

follows:

> [a]n auxiliary spectacle frame for supporting auxiliary lenses
> therein, said frame including a front side, a rear side, and
> oppositely positioned side portions, each of said side portions
> having an arm extended therefrom, each of said arms having a
> rearwardly directed free end for securing a magnetic member
> having a horizontal surface, and a pair of magnetic members
> respectively secured in the free ends of said arms, said arms and
> said pair of magnetic members adapted to extend across respective
> side portions of a primary spectacle frame so that said pair of
> magnetic members having a horizontal surface can vertically
> engage corresponding magnetic member surfaces on a primary
> spectacle frame.

Turk-Moore Decl. at Exh. 2, Col. 1, line 29 to Col. 2, line 13.

4.        Claim 35 depends from claim 23 and claims an "eyeglass device

according to claim 23, wherein, said magnetic members of said auxiliary

spectacle frame are magnets."  Turk-Moore Decl. at Exh. 2, Col 2, lines 27-29.

**B.        The Accused Products**

**1.        The Revolution Accused Products.**

5.        All auxiliary spectacle frames sold by Revolution Eyewear, Inc. ("Revolution")

after March 3, 2009 are accused of infringing Claims 23 and 35 of the '545 patent.   Declaration

of Thierry Ifergan ("Ifergan Decl.") at ¶ 8 & Exh. 1 attached thereto.

6.        In response to a 30(b)(6) deposition notice that Revolution served on plaintiff

Aspex Eyewear, Inc. ("Aspex") asking that Aspex identify "[a]ll products accused of

infringement in this action … including all commercial designations ….," Aspex's corporate

2

designee Mr. Thierry Ifergan provided Revolution a catalog in which all the accused models were highlighted (hereinafter, the "Revolution Accused Products"). *Id.*

7.      The Revolution Accused Products all have the same design as they relate to the elements of claims 23 and 35.  Declaration of Lee Zaro ("Zaro Decl.") at ¶¶ 6-8.

### 2.      The Marchon Accused Products.

8.      All auxiliary spectacle frames sold by Marchon Eyewear, Inc. ("Marchon") after March 3, 2009 are accused of infringing Claims 23 and 35 of the '545 patent.  Ifergan Decl. ¶ 9, & Exh. 2, attached thereto.

9.      In response to a 30(b)(6) deposition notice that Marchon served on plaintiff Aspex Eyewear, Inc. ("Aspex") asking that Aspex identify "[a]ll products accused of infringement in this action … including all commercial designations ….," Aspex's corporate designee Mr. Thierry Ifergan provided Marchon a catalog in which all the accused models were highlighted (hereinafter, the "Marchon Accused Products"). *Id.*

10.     The Marchon Accused Products all have the same design as they relate to the elements of claims 23 and 35. Zaro Decl. ¶¶ 6-8.

### 3.      The Accused Products.

11.     The Revolution Accused Products and the Marchon Accused Products (collectively, the "Accused Products") all have the same design as they relate to the elements of claims 23 and 35.  Zaro Decl. ¶6.

### 4.      The Representative Frames.

12.     Aspex obtained three models of auxiliary spectacle frames sold by Revolution Eyewear (Revolution auxiliary spectacle frame, "Revolution Clip-on"); Marchon Eyewear, Inc. ( Marchon Flexon auxiliary spectacle frame, "Marchon Clip-on"); and by Marchon Eyewear, Inc.

under the Nike brand (Nike auxiliary spectacle frame, "Nike Clip-on") from retailers who returned these products to Aspex based on the mistaken belief that they were being offered for sale by Aspex.   These three models were not offered for sale by Aspex.   Ifergan Decl. ¶ 2.

13.    In order to demonstrate that the auxiliary frames were suitable for mounting to the top of a primary without any modification to the auxiliary frame and whether primary frames could be constructed such that each of the three auxiliary frames were suitable for mounting to the top of the constructed primary frames without modifying the auxiliary frames in any way, Aspex had constructed newly constructed primary frames onto which the Revolution, Nike, and Marchon clip-on models -- in unmodified form-- could be attached.   The newly constructed frames were done without modification of the auxiliary spectacle frame models' magnets, removal of the decorative coating, or modification of any other part of the auxiliary spectacle frame model.  Ifergan Decl. ¶¶ 4 & 5.

14.    The Revolution, Nike, and Marchon clip-on models  were provided to Greenberg Traurig, LLP including the newly constructed primary frames and Plaintiffs' expert Lee Zaro analyzed the same representative clip-on models. Ifergan Decl. ¶¶ 2, 4-5 & 7.

**C.    Literal Correspondence Between Claims 23 and 35 and the Accused Products**

15.    Element [a] of claim 23 reads: **"[a]n auxiliary spectacle frame for supporting auxiliary lenses therein."**   As required by claim 23, the Accused Products all contain an auxiliary spectacle frame for supporting auxiliary lenses therein.   *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8; Ifergan Decl. ¶¶ 2, 4-5 & 7.

16.    Element [b] of claim 23 reads: **"said frame including a front side, a rear side, and oppositely positioned side portions."**   As required by claim 23, the Accused Products all

contain a front side, a rear side and oppositely positioned side portions. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶8; *see also* Zaro Decl. ¶8, Ifergan Decl. ¶¶2, 4-5 & 7.

17.    Element [c] of claim 23 reads: **"each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface."** As required by claim 23, the Accused Products all have two side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶8; *see also* Zaro Decl. ¶8, Ifergan Decl. ¶¶2, 4-5 & 7.

18.    Element [d] of claim 23 reads: **"and a pair of magnetic members respectively secured in the free ends of said arms."** As required by claim 23, the Accused Products all have a pair of magnetic members respectively secured in the free ends of said arms. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶8; *see also* Zaro Decl. ¶8, Ifergan Decl. ¶¶2, 4-5 & 7.

19.    Element [e] of claim 23 reads: **"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame."** As required by claim 23, the Accused Products all have said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a

primary spectacle frame.   *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶8; *see also* Zaro Decl. ¶8, Ifergan Decl. ¶¶2, 4-5 & 7.

20.    **Claim 35 reads:  "an eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets.**  The Accused Products all have magnetic members of said auxiliary spectacle frame that are magnets. Zaro Decl. ¶8.

D.    **Even Under Defendants Claim Construction, Accused Products Meet All The Elements Of Claim 23.**

21.    Defendants argue that "magnetic members having a horizontal surface" in elements 23[c] and 23[e] should be replaced with "magnetic members having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame."   *See e.g., Revolutions Supplemental Response to Special Interrogatory No.1 dated April 5, 2010,* Turk-Moore Decl., Exh. 5.

22.    The Accused Products all have a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame.   *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶8; *see also* Zaro Decl. ¶8, Ifergan Decl. ¶¶2, 4-5 & 7.

23.    The only difference between the downwardly facing surface of the magnets and the upwardly facing surface of the magnets is that the downwardly facing surface of the magnets has an epoxy coating.   The epoxy coating does not impede the magnetic properties of the downwardly facing surface. Zaro Decl., ¶8.

24.    Defendants also argue and the term "corresponding magnetic member surfaces" in element 23[e] should be replaced with "upwardly surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame." Under this construction, Defendants contend that an accused product must be adapted to engage the top surface of the

primary frame in order to meet this element.   *See e.g., Revolutions' Supplemental Response to Special Interrogatory No. 1 dated April 5, 2010;* , Turk-Moore Decl., Exh. 5.

25.    The Accused Products meet Defendants' construction because their products contain magnetic members with a downwardly facing surface which are adapted to being engaged with an "upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame."   *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶8; *see also* Zaro Decl. ¶8, Ifergan Decl. ¶¶2, 4-5 & 7.

26.    The Accused Products are adapted to being mounted to the top of a primary spectacle frame or the bottom of a primary spectacle frame.   *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Dated:   May 20, 2010                      Respectfully submitted,

By:  ___/s/Jacqueline Becerra_____
Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

And

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.
and Contour Optik, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 20th day of May, I electronically filed the foregoing document with the Court using CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Jacqueline Becerra
Jacqueline Becerra

# SERVICE LIST

Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
<u>United States District Court, Southern District of Florida</u>

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants Hardy Way, LLC,
Revolution Eyewear, Inc. and Gary Martin
Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants Revolution
Eyewear, Inc. and Gary Martin Zelman*

NJ 226,908,293v1 5-20-10

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants
Marchon Eyewear, Inc. and Nike, Inc.*

9