# EXHIBIT 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61515-CIV-COOKE
MAGISTRATE JUDGE BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

    Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

    Defendants. /

## DEFENDANT REVOLUTION EYEWEAR, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES

Subject to the objections set for in its initial responses, Revolution Eyewear, Inc. supplements its responses to Plaintiff's First Set of Special Interrogatories, as follows:

### SUPPLEMENTAL RESPONSES

SPECIAL INTERROGATORY NO. 1:

To the extent you contend that the Accused Products do not infringe claims 23 and 35 of the '545 Patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, state the full factual basis for your contention, including without limitation, by providing a claim chart for each limitation of claims 23 and 35, identifying all alleged differences between each of the Accused Products and each limitation of these claims.

## SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 1:

Responding party objects to the interrogatory as vague and ambiguous, particularly as to the term "Accused Products", for the reasons set forth above. Subject to and without waiving this objection and the general objections above, responding party responds as follows:

BB034, EHK101, EHK102, EHK103, EHK104, EHK105, EHK106, REV535, REV537, REV539, REV540, REV542, REV543, REV546, REV547, REV549, REV550, REV551, REV555, REV557, REV559, REV560, REV561, REV562, REV564, REV566, REV567, REV568, REV581, REVT62, REVT63, REVT64, REVT64, REVT66

| Claim 23 | Differences Between Specified Accused Products and Claim Limitations |
|---|---|
| An eyeglass device comprising: | To be determined based on claim construction. |
| an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms | The magnets having a "horizontal surface" do not have a "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame," as that term is properly construed. |
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame | The arms of the accused devices are not adapted to extend across side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic member surfaces on a primary spectacle frame as properly construed. The arm-like structures on the accused products extend underneath side portions of the primary frame and engage magnetic member surfaces on a primary spectacle frame from below. The magnets having a "horizontal surface" do not have a "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame," as that term is properly construed. The "corresponding magnetic members surfaces" on the primary |

| | spectacle frame do not have an "upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame," as that term is properly construed. |
|---|---|
| **Claim 35** | **Additional Differences Between Specified Accused Products and Claim Limitations (in addition to differences stated above)** |
| The eyeglass device according to claim 23, | See differences above |
| wherein said magnetic members of said auxiliary spectacle frame are magnets | To be determined based on claim construction |

### REV525, REV527, REV528, REV529, REV530, REV531, REV532

| Claim 23 | Differences Between Specified Accused Products and Claim Limitations |
|---|---|
| An eyeglass device comprising: | To be determined based on claim construction. The accused products lack a primary spectacle frame. |
| an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms | The magnets having a "horizontal surface" do not have a "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame," as that term is properly construed. |
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame | The arms of the accused devices are not adapted to extend across side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic member surfaces on a primary spectacle frame as properly construed. The arm-like structures on the accused products extend underneath side portions of the primary frame and engage magnetic member surfaces on a primary spectacle frame from below. The magnets having a "horizontal surface" do not have a "downwardly facing |

| Claim 35 | surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame," as that term is properly construed. The "corresponding magnetic members surfaces" on the primary spectacle frame do not have an "upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame," as that term is properly construed. |
|---|---|
| | **Additional Differences Between Specified Accused Products and Claim Limitations (in addition to differences stated above)** |
| The eyeglass device according to claim 23, | See differences above |
| wherein said magnetic members of said auxiliary spectacle frame are magnets | To be determined based on claim construction |

The '545 Patent relates to an eyeglass device including a primary and an auxiliary spectacle frame. ('545 Patent, Abstract.) The auxiliary frame in Fig. 4 attaches to the top of the primary frame in Fig. 3. (*Id.*, Figs. 3-5.) Note that arms 21 of the auxiliary frame rest on top of extensions 11 of the primary frame in Fig. 5.



In the California Action, in construing the claims of the '545 patent, the Court held that "the invention disclosed in the '545 patent is limited to a top-mounting design." (May 6, 2003 Claim Construction Order, p. 32.) The California court further observed: "the invention described is clearly for a top-mounting design: the written description only describes a top-mounting design, the drawings only show a top-mounting configuration and nothing in the

prosecution history shows that the inventor envisioned anything other than a top-mounting design." (May 6, 2003 Claim Construction Order, p. 31.) In construing Claim 6 of the '545 patent, the court construed "horizontal surface" in the auxiliary frame to mean "having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame." (*Id.* at 32) Similarly, the Court construed "horizontal surface" in the primary frame to mean "having an upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame." (*Id.* at 31.)

Similarly, claim 34 had the following limitation: *"said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]* from said front side to said rear side so that said first and second magnetic members engage one another whereby said auxiliary spectacle frame is supported by said primary spectacle frame." The Court construed this language to mean that at least some portion of each arm of the auxiliary frame <u>reaches across the top</u> of the corresponding extension of the primary frame. The Court granted Revolution's motion for summary judgment that claims 6 and 34 were not infringed; it was undisputed that the horizontal surfaces of Revolution's auxiliary frames were not downwardly facing and that the arms of Revolution's auxiliary frame attach to the *bottom* of the extensions on the primary frame and plaintiffs did not oppose the motion. *Revolution Eyewear*, 563 F.3d at 1364. The Federal Circuit agreed with the district court's construction, noting: "We agree with the district court that, in pointing out the two deficiencies in the prior art, **Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration** and a primary frame that has embedded magnetic members." *Revolution Eyewear, Inc.*, 563 F.3d at 1368 (emphasis added).

The claim asserted here, claim 23, contains language very similar to claims 6 and 34, whereby the arms and magnetic members on the auxiliary frames are *"adapted to extend across respective side portions* of a primary spectacle frame so that said pair of magnetic members *having a horizontal surface* can vertically engage *corresponding magnetic member surfaces on a primary spectacle frame.*" Based on the doctrine of issue preclusion and fundamental claim construction law, the nearly identical language of claim 23 must be construed consistently to require that the arms and magnetic members of the auxiliary frame have a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame and are adapted to reach across the top of the corresponding extension of the primary frame.[1] Thus, Revolution's auxiliary frames do not infringe claims 23 and 35, because they are adapted to extend <u>underneath</u> the corresponding extensions of the primary frame, do not to "reach across the top" of those extensions and the magnetic members having a horizontal surface do not have a "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame," as the term is properly construed.

## SPECIAL INTERROGATORY NO. 3:

To the extent you contend that claims 23 and 35 of the '545 Patent are invalid for anticipation under 35 U.S.C. § 102, state the full factual basis for your contention, including:

   a.   Identifying each piece of prior art that allegedly anticipates claims 23 and 35.

---

[1] *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 ("The prior determination of certain issues, including the issues of claim construction and of infringement by the type A and non-infringement by the type C models, bars judicial redetermination of those issues as between the parties to the prior actions.") Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent. See, e.g., *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999).

b.  For each such piece of prior art, identifying the particular sub-paragraph of 35 U.S.C. § 102 upon which your contention of anticipation is based.

c.  For each such piece of prior art, providing claim charts comparing each limitation of claims 23 and 35 with the specific disclosure of such prior art which you contend reads on each limitation.

## SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 3:

Responding party objects to the interrogatory as premature in that the asserted claims of the '545 patent have not been construed. See *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1195 n.4 (Fed. Cir. 2003). Responding party further objects to the extent the interrogatory calls for expert opinion before expert opinion is required to be disclosed pursuant to the Court's scheduling order, and responding party reserves the right to produce expert opinion and supporting facts regarding the subject matter of this interrogatory. Subject to and without waiving this objection, responding party responds as follows:

(a)  Claims 23 and 35 of the '545 patent are anticipated by Japanese Patent Application No. H07-156856 ("Iwamoto") and the Twincome-Pentax Documents (as identified in the '545 patent). Further, if claims 23 and 35 of the '545 patent are construed broadly to cover auxiliary frames regardless of the orientation between the arms of the auxiliary frame and the side portions of the primary frame (which construction is required to allege that Revolution's accused products infringe), such claims are anticipated by Japanese Patent No. 5-40493 to Sadanaga ("Sadanaga").

(b)  Sadanaga qualifies as prior art under 35 U.S.C. § 102(a) and 102(b); Iwamoto and the Twincome-Pentax Documents qualify as prior art under 35 U.S.C. § 102(a).

(c)  Claim Chart based, in part, on construction set forth above.

| Claim 23 | Sadanaga and Iwamoto |
|---|---|
| An eyeglass device comprising: | Sadanaga discloses an eyeglass device including primary and auxiliary spectacle frames for supporting lenses. (See Ex. A, Figs. 1 and 2) |
| | Iwamoto discloses an eyeglass device including primary and auxiliary spectacle frames for supporting lenses. (Figs. 1 and 4). |
| | The Twincome-Pentax Documents (as identified in the '545 patent) disclose an eyeglass device including primary and auxiliary spectacle frames. |
| an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms | Sadanaga discloses an auxiliary spectacle frame for supporting auxiliary lenses, said auxiliary frame including a front side, a rear side, and oppositely positioned side portions (the sides of the rims). (See Fig. 2) The side portions have an arm extended therefrom (first projection member 14), each of said arms having a rearwardly directed free end for securing a magnetic member (14b), and a pair of magnetic members (14b) respectively secured in the free ends of said arms. |
| | Sadanaga teaches that the surface of the magnetic member can be horizontal as well as vertical ("these projection members may occupy any other suitable positions on the respective frames"). |
| | Iwamoto discloses an auxiliary spectacle frame for supporting auxiliary lenses, said auxiliary frame including a front side, a rear side, and oppositely positioned side portions. (See Figs. 4, 5 and 6) The side portions have an arm extended therefrom (42), each of said arms having a rearwardly directed free end for securing a magnetic member, having a downwardly facing horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms ("the magnet may be set in a portion of the second attractive portion 42a"). |

| | |
|---|---|
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame | The Twincome-Pentax Documents (as identified in the '545 patent) disclose an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions (F), each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms (H).<br><br>Sadanaga discloses arms and magnetic members adapted to extend across side portions of a primary spectacle frame (second projection member 5) so that said pair of magnetic members can engage corresponding magnetic member surfaces on a primary spectacle frame. Sadanaga teaches that the engagement between the magnetic members can be vertical as well as horizontal ("these projection members may occupy any other suitable positions on the respective frames").<br><br>Iwamoto discloses arms and magnetic members adapted to extend across side portions of a primary spectacle frame (Figs. 6-8) so that said pair of magnetic members having a downwardly facing surface can engage corresponding upwardly facing magnetic member surfaces on a primary spectacle frame ("the magnet may be set in both a portion of the first attractive portion 24a and a portion of the second attractive portion 42a").<br><br>The Twincome-Pentax Documents disclose a pair of arms and magnetic members (H) adapted to extend across respective side portions of a primary spectacle frame (B) so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. |

**Claim 35**

| | |
|---|---|
| The eyeglass device according to claim 23, | See above re elements of claim 23 |
| wherein said magnetic members of said auxiliary spectacle frame are magnets | Sadanaga discloses that the magnetic members in the auxiliary frames are magnets. |
| | Iwamoto discloses that the magnetic members in the auxiliary frames may be magnets ("the magnet may be set in a portion of the second attractive portion 42a"). |
| | The Twincome-Pentax Documents disclosed that the magnetic members of the auxiliary spectacle frame were magnets. |

SPECIAL INTERROGATORY NO. 4:

To the extent you contend that claims 23 and 35 of the '545 Patent are invalid for obviousness under 35 U.S.C. § 103, state the full factual basis for your contention, including:

    a.    Identifying each piece of prior art, or combination of prior art, that allegedly invalidates claims 23 and 34 for obviousness.

    b.    Stating your contention as to level of skill in the art of the '545 Patent.

    c.    For each such piece of prior art, or combination of prior art relied upon, providing claim charts comparing each limitation of claims 23 and 35 with the specific disclosure of such prior art which you contend reads on each limitation.

SUPPLEMENTAL RESPONSE TO SPECIAL INTERROGATORY NO. 4:

Responding party objects to the interrogatory as premature in that the asserted claims of the '545 patent have not been construed. See *Akamai Techs., Inc. v. Cable & Wireless Internet Servs., Inc.*, 344 F.3d 1186, 1195 n.4 (Fed. Cir. 2003). Responding party further objects to the extent the interrogatory calls for expert opinion before expert opinion is required to be disclosed pursuant to the Court's scheduling order, and responding party reserves the right to produce

expert opinion and supporting facts regarding the subject matter of this interrogatory. Subject to and without waiving this objection, responding party responds as follows:

(a) Claims 23 and 35 rendered obvious by Iwamoto or the Twincome-Pentax Documents, alone or in combination with Sadanaga, U.S. Patent Nos. 5,642,177 (Nishioka), 5,867,244 (Martin), and/or Japanese Patent No. 3011174 (Boston Club). If claims 23 and 35 of the '545 patent are construed broadly to cover auxiliary frames regardless of the orientation between the arms of the auxiliary frame and the side portions of the primary frame (which construction is required to allege that Revolution's accused products infringe), such claims are rendered obvious by Sadanaga, alone or in combination with U.S. Patent Nos. 5,642,177 (Nishioka), 5,867,244 (Martin), Japanese Patent No. 3011174 (Boston Club), Japanese Patent Application No. H07-156856 (Iwamoto), and/or the Twincome-Pentax Documents (identified in the '545 patent).

(b) Sadanaga, as well as what have been identified as contemporary prior art references Iwamoto (Japanese Patent Application No. H07-156856) and the Twincome-Pentax Documents (identified in the '545 patent), establish that the auxiliary spectacle frame of claims 23 and 35 was well within the level of ordinary skill in the art at the time of the invention.

(c) Claim Chart based, in part, on construction set forth above

| **Claim 23** | **Prior Art** |
|---|---|
| An eyeglass device comprising: | Sadanaga discloses an eyeglass device including primary and auxiliary spectacle frames for supporting lenses. (See Ex. A, Figs. 1 and 2) |
| | Nishioka also discloses an eyeglass device including primary and auxiliary spectacle frames. (See Fig 1) |
| | Martin also discloses an eyeglass device |

| | |
|---|---|
| | including primary and auxiliary spectacle frames. (See Fig 2) |
| | Japanese Patent No. 3011174 (Boston Club) discloses an eyeglass device including primary and auxiliary spectacle frames. (See Figs. 1 and 2.) |
| | Japanese Patent Application No. H07-156856 (Iwamoto) discloses an eyeglass device including primary and auxiliary spectacle frames. |
| | The Twincome-Pentax Documents (as identified in the '545 patent) disclose an eyeglass device including primary and auxiliary spectacle frames. |
| an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms | Sadanaga discloses an auxiliary spectacle frame for supporting auxiliary lenses, said auxiliary frame including a front side, a rear side, and oppositely positioned side portions (the sides of the rims). (See Fig. 2) The side portions have an arm extended therefrom (first projection member 14), each of said arms having a rearwardly directed free end for securing a magnetic member (14b), and a pair of magnetic members (14b) respectively secured in the free ends of said arms. |
| | Sadanaga teaches that the surface of the magnetic member can be horizontal as well as vertical ("these projection members may occupy any other suitable positions on the respective frames"). |
| | Nishioka also discloses an auxiliary spectacle frame for supporting auxiliary lenses, said auxiliary frame including a front side, a rear side, and oppositely positioned side portions (the sides of the rims). (See Fig. 1) The side portions have an arm extended therefrom (the protrusion containing magnet 3), each of said arms having a rearwardly directed free end for securing a magnetic member (3), and a pair of magnetic members (3) respectively secured in the free ends of said arms. |
| | Martin discloses an auxiliary spectacle frame |

for supporting auxiliary lenses (22), said auxiliary frame including a front side, a rear side, and oppositely positioned side portions. (See Fig. 2) The side portions have an arm extended therefrom 40, each of said arms having a rearwardly directed free end. Martin discloses that the arm may have a horizontal surface.

Japanese Patent No. 3011174 (Boston Club) discloses an eyeglass device including primary and auxiliary spectacle frames. (See Figs. 1 and 2.) Boston Club discloses an auxiliary spectacle frame for supporting auxiliary lenses, said auxiliary frame including a front side, a rear side, and oppositely positioned side portions. (See Figs. 1 and 2) The side portions have an arm extended therefrom (13), each of said arms having a rearwardly directed free end and a horizontal surface (16).

Iwamoto discloses an auxiliary spectacle frame for supporting auxiliary lenses, said auxiliary frame including a front side, a rear side, and oppositely positioned side portions. (See Figs. 4, 5 and 6) The side portions have an arm extended therefrom (42), each of said arms having a rearwardly directed free end for securing a magnetic member, having a downwardly facing horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms ("the magnet may be set in a portion of the second attractive portion 42a")

The Twincome-Pentax Documents (as identified in the '545 patent) disclose an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions (F), each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms (H).

| | |
|---|---|
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame | Sadanaga discloses arms and magnetic members adapted to extend across (using plaintiffs' apparent construction) side portions of a primary spectacle frame (second projection member 5) so that said pair of magnetic members can engage corresponding magnetic member surfaces on a primary spectacle frame. Sadanaga teaches that the engagement between the magnetic members can be vertical as well as horizontal ("these projection members may occupy any other suitable positions on the respective frames"). |
| | Nishioka discloses arms and magnetic members (3) adapted to extend across (using plaintiffs' apparent construction) side portions of a primary spectacle frame (protrusions holding magnet 7) so that said pair of magnetic members can engage corresponding magnetic member surfaces on a primary spectacle frame. |
| | Martin discloses arms (40) adapted to extend across the top of side portions (18) of a primary spectacle frame so that said pair of arms can vertically engage corresponding surfaces on a primary spectacle frame. (See Col. 3:19-28: "clips 40 and 42 that clip ... adjacent and above temple blocks 18 and 20. ... a <u>downward</u> force is applied to maintain outer clips 40 and 42 in firm contact with frames 12 and 13 of conventional eyewear 10.") |
| | Japanese Patent No. 3011174 (Boston Club) discloses arms (13) adapted to extend across respective side portions of a primary spectacle frame (18) so that a horizontal surface (16) can vertically engage corresponding surfaces on a primary spectacle frame ("horizontal piece in direct contact with the upper surface of the block"). |
| | Iwamoto discloses arms and magnetic members adapted to extend across side portions of a primary spectacle frame (Figs. 6-8) so that said pair of magnetic members having a downwardly facing surface can |

| | |
|---|---|
| | engage corresponding upwardly facing magnetic member surfaces on a primary spectacle frame ("the magnet may be set in both a portion of the first attractive portion 24a and a portion of the second attractive portion 42a"). |
| | The Twincome-Pentax Documents disclose a pair of arms and magnetic members (H) adapted to extend across respective side portions of a primary spectacle frame (B) so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. |
| **Claim 35** | |
| The eyeglass device according to claim 23, | See above re elements of claim 23 |
| wherein said magnetic members of said auxiliary spectacle frame are magnets | Sadanaga discloses that the magnetic members in the auxiliary frames are magnets. |
| | Nishioka discloses that the magnetic members in the auxiliary frames are magnets. |
| | Iwamoto discloses that the magnetic members in the auxiliary frames may be magnets ("the magnet may be set in a portion of the second attractive portion 42a"). |
| | The Twincome-Pentax Documents disclosed that the magnetic members of the auxiliary spectacle frame were magnets. |

## **CERTIFICATION**

I, Gary Martin Zelman, certify that I am the President of Revolution Eyewear, Inc., that I have read the foregoing REVOLUTION EYEWEAR, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES, and that I believe, to the best of my knowledge and based on information provided to me by others, that the matters stated therein are true and correct.

Dated: April ____, 2010

_____

Janet T. Munn
jmunn@rascoklock.com
Florida Bar No. 501281
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL 33134
Telephone: 305.476.7100
Telecopy: 305.476.7102

and

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:   714.513.5100
Telecopy:    714.513.5130

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC and Gary Martin Zelman*

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE

I am employed in the County of Orange; I am over the age of eighteen years and not a party to the within entitled action; my business address is 650 Town Center Drive, 4th Floor, Costa Mesa, California 92626-1993.

On **April 2, 2010**, I served the following document(s) described as **DEFENDANT REVOLUTION EYEWEAR, INC.'S SUPPLEMENTAL RESPONSES TO PLAINTIFF'S FIRST SET OF SPECIAL INTERROGATORIES** on the interested party(ies) in this action by placing true copies thereof enclosed in sealed envelopes and/or packages addressed as follows on the attached Service List.

- ☒ **BY MAIL:** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. postal service on that same day with postage thereon fully prepaid at Costa Mesa, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

- ☒ **BY E-MAIL:** I transmitted via e-mail by PDF format to the e-mail addresses listed on the attached Service List.

- ☐ **BY HAND DELIVERY:** I caused such envelope(s) to be delivered by hand to the office of the addressee(s).

- ☒ **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 2, 2010, at Costa Mesa, California.

_____
Jeanette Francis

## SERVICE LIST

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
**By e-mail only:**
Todd Schleifstein, Esquire
email: schleifsteinT@gtlaw.com
David Joyal, Esquire
email: joyalD@gtlaw.com
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, New Jersey 07932-0677
Telephone: 973.360.2357
Telecopy: 973.295.1267

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email: ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email: bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email: dherman@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone: 212.588.0888
Telecopy: 212.588.0500

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Esquire
email: schindlerB@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310