UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

    Defendants.
_____/

## DECLARATION OF LEE ZARO

I, Lee Zaro, declare and state as follows:

1.     I have over twenty years of experience in the eyewear industry with particular expertise in the design and development of eyewear. I have personal knowledge of the facts set forth herein.

2.     I have been involved in the eyewear industry since the late 1980's. I started out working for my father's wholesale eyewear company, which was known as Metropolitan Eyewear. In the early 1990's, as the industry changed, Metropolitan moved into designing, manufacturing and finishing eyewear. I was responsible for the finishing plant located in the U.S. I learned from the ground-up how to design, manufacture and finish eyewear. In 1995, I moved to Morgenthal-Frederics in New York City where my responsibilities included the design and development of the Morgenthal-Frederics Eyewear Collection. The products included optical and sun product and materials used spanned the spectrum from metals, plastics, plastic/metal combinations and custom laminations.

3. In 2001, I was hired by Signature Eyewear in the Los Angeles area where I designed and developed the Eddie Bauer, Nicole Miller, and Dakota Smith Optical and Sun collections. In early 2004, I was hired by Marcolin USA to design, develop, manage and launch the global Kenneth Cole New York and Kenneth Cole Reaction eyewear collections. During my tenure at Marcolin, I was also in charge of the design and development of the Timberland, Timberland Youth and Marcolin Kids optical collections. In early 2008, I was hired by Viva International Group to design and develop the Tommy Hilfiger global eyewear collection.

4. In this case, I have been asked, among other things, to give my opinion as to whether the auxiliary spectacle frames sold by defendants Revolution Eyewear, Inc. ("Revolution") and Marchon Eyewear, Inc. ("Marchon") since March 3, 2009 contains all the elements of claims 23 and 35 of U.S. Patent No. Re 37,545 F1 (the '545 patent).

5. I have been informed that Plaintiffs have identified the auxiliary spectacle frames accused of infringement by highlighting pages from the Frames data catalog, which were made available to the defendants during the deposition of Thierry Ifergan. One set of these pages highlighted Revolution frames and another set of these pages highlighted Marchon frames. I have reviewed these highlighted pages. The pages relating to Revolution are attached hereto as Exhibit 1 and the pages relating to Marchon are attached hereto as Exhibit 2. In this declaration, I use the term "Accused Products" to refer to all the model numbers highlighted in the attached catalogs.

6. I am familiar with the design of the Accused Products. I have seen the products in the field. I have reviewed Revolution and Marchon on-line catalogs showing the Accused Products. I have examined several Revolution and Marchon auxiliary spectacle frames. The Accused Products all have the same design features as they relate to the elements of claims 23 and 35.

7. It is my opinion that the Accused Products contain all the elements of claims 23 and 35. In support of my opinion, I personally took photographs of three exemplary spectacle frames; (1) a Revolution auxiliary spectacle frame (the "Revolution clip-on"), (2) a Nike Flexon auxiliary spectacle frame (the "Nike clip-on"),[1] and (3) a Marchon Flexon auxiliary spectacle frame (the "Marchon clip-on"); and compared the exemplary frames to the claim elements as set forth in the chart below. Because all the Accused Products have the same design elements as the exemplary frames, the Accused Products meet the elements of claims 23 and 35 for the same reasons as the exemplary frames.

8. In the below chart, I have set forth the elements of claims 23 and 35 and the manner in which the Accused Products meet each of the elements.

| Claim 23 | |
|---|---|
| An eyeglass device comprising: | I have been informed that this term is not considered an element of the claim. But if it is considered an element of the claim, the Accused Products are eyeglass devices. |
| An auxiliary spectacle frame for supporting auxiliary lenses therein, | The Accused Products are auxiliary spectacle frames for supporting auxiliary lenses as the exemplary frames illustrate.<br><br>*Revolution clip-on*<br><br>"an auxiliary spectacle frame for supporting auxiliary lenses therein" |

---

[1] It is my understanding that the Nike Flexon auxiliary spectacle frame is a product made by Marchon pursuant to a license from Nike.

*Nike clip-on*



"an auxiliary spectacle frame for supporting auxiliary lenses therein"

*Marchon Clip-on*



"an auxiliary spectacle frame for supporting auxiliary lenses therein"

| | |
|---|---|
| said frame including a front side, a rear side, and oppositely positioned side portions, | The Accused Products include a front side, a rear side, and oppositely positioned side portions as illustrated in the exemplary products shown below.<br><br>*Revolution Clip-on*<br><br>"a rear side"<br>"a front side"<br>"oppositely positioned side portions"<br><br>*Nike Clip-on*<br><br>"a rear side"<br>"a front side"<br>"oppositely positioned side portions" |

| | |
|---|---|
| | *Marchon Clip-on*<br><br>"a rear side"<br><br>"a front side"<br><br>"oppositely positioned side portions" |
| each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, | The Accused Products have side portions having an arm extended with a rearwardly directed free end for securing a magnetic member having a horizontal surface as illustrated in the exemplary products shown below.<br><br>*Revolution Clip-on*<br><br>"each of said side portions having an arm extended therefrom"<br><br>"each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface" |

6

*Nike Clip-on*

"each of said side portions having an arm extended therefrom"



"each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"

*Marchon Clip-on*

"each of said side portions having an arm extended therefrom"



"each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"

I understand that the Defendants argue that the magnets having a "horizontal surface" in the Accused Products do not have a "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame." The claim does not require the "horizontal surface" to be downwardly facing. But even if the claim were construed to require the "horizontal surface" to be "downwardly facing", the Accused Products have a "downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame" the exemplary products illustrate.

*Revolution Clip-on*
*(downward facing horizontal surface of magnet)*



*Nike Clip-on*
*(downward facing horizontal surface of magnet )*



| | |
|---|---|
| | *Marchon Clip-on*<br>*(downward facing horizontal surface of magnet)*<br><br>The only difference between the upwardly facing surface of the magnets (which are shown in just prior photos) and the downwardly facing surface is an epoxy coating on the downwardly facing surface of the magnet. Epoxy coatings are generally used in the eyewear industry to protect one metal surface from touching another metal surface so as to prevent scratching. The epoxy coating does not impede the magnetic properties of the downwardly facing surface of the magnets in the auxiliary spectacle frame. |
| and a pair of magnetic members respectively secured in the free ends of said arms, | The Accused Products have magnetic member secured in the free end of each arm as illustrated in the exemplary products shown below.<br><br>*Revolution Clip-on*<br><br>"and a pair of magnetic members respectively secured in the free ends of said arms" |

*Nike Clip-on*



"and a pair of magnetic members respectively secured in the free ends of said arms"

*Marchon Clip-on*



"and a pair of magnetic members respectively secured in the free ends of said arms"

| | |
|---|---|
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. | The Accused Products have arms with a pair of magnetic members adapted to extend across the respective side portions of a primary spectacle frame so that the auxiliary frame magnetic members are adapted to vertically engage corresponding magnetic surfaces on a primary spectacle frame as illustrated in the exemplary products shown below.<br><br>*Revolution Clip-on*<br><br><br><br>"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"<br><br>*Nike Clip-on*<br><br> |

"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"

*Marchon Clip-on*



"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"

The Defendants claim that the Accused Products do not satisfy this element because their auxiliary spectacle frames do not have a downwardly facing surface which is adapted to being engaged with an upwardly facing surface of a primary frame.

As I stated previously, the claim is not limited to an auxiliary spectacle frame having a downwardly facing surface. But even if the claim were interpreted to require that the auxiliary frames contain magnetic members with a downwardly facing surface which is adapted to being engaged with an upwardly facing surface of a primary frame, the Accused Products would still satisfy this element. The Accused Products are adapted to being engaged via the downwardly facing surface of the

magnetic members of the auxiliary frame with the upwardly facing surface of a primary frame as shown in the exemplary frames below.

*Revolution Clip-on*



"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"

*Nike Clip-on*



"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members

|  | having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"<br>*Marchon Clip-on*<br><br>"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame" |
|---|---|
| **Claim 35** | |
| The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets. | The Accused Products meet this element because the auxiliary spectacle frames contain permanent magnets. |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Lee Zaro

Dated: ____5/20/2010____