PTO/SB/57 (02-09)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

90009451

(Also referred to as FORM PTO-1465)

## REQUEST FOR *EX PARTE* REEXAMINATION TRANSMITTAL FORM

04/14/09

| Address to: **Mail Stop *Ex Parte* Reexam Commissioner for Patents** P.O. Box 1450 Alexandria, VA 22313-1450 | Attorney Docket No.: 08-06-4994 REV |
|---|---|
| | Date: April 14, 2009 |

1. ☒ This is a request for *ex parte* reexamination pursuant to 37 CFR 1.510 of patent number   **RE37,545** issued **February 12, 2002**.  The request is made by:

   ☐ patent owner.   ☒ third party requester.

2. ☒ The name and address of the person requesting reexamination is:

   **REVOLUTION EYEWEAR, INC.**

   997 Flower Glen St.

   Simi Valley, CA 93065

3. ☐   a.   A check in the amount of $_____ is enclosed to cover the reexamination fee, 37 CFR 1.20(c)(1);

   ☐   b.   The Director is hereby authorized to charge the fee as set forth in 37 CFR 1.20(c)(1) to Deposit Account No. _____ ; or

   ☒   c.   Payment by credit card. Form PTO-2038 is attached.

4. ☒ Any refund should be made by ☐ check or ☒ credit to Deposit Account No. **500703** 37 CFR 1.26(c). If payment is made by credit card, refund must be to credit card account.

5. ☒ A copy of the patent to be reexamined having a double column format on one side of a separate paper is enclosed. 37 CFR 1.510(b)(4)

6. ☐ CD-ROM or CD-R in duplicate, Computer Program (Appendix) or large table
   ☐ Landscape Table on CD

7. ☐ Nucleotide and/or Amino Acid Sequence Submission
   *If applicable, items a. – c. are required.*

   a. ☐ Computer Readable Form (CRF)
   b. Specification Sequence Listing on:
      i.   ☐ CD-ROM (2 copies) or CD-R (2 copies); or
      ii.  ☐ paper
   c. ☐ Statements verifying identity of above copies

8. ☒ A copy of any disclaimer, certificate of correction or reexamination certificate issued in the patent is included.

9. ☒ Reexamination of claim(s) **22** is requested.

10. ☒ A copy of every patent or printed publication relied upon is submitted herewith including a listing thereof on Form PTO/SB/08, PTO-1449, or equivalent.

11. ☒ An English language translation of all necessary and pertinent non-English language patents and/or printed publications is included.

[Page 1 of 2]

This collection of information is required by 37 CFR 1.510. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO  to process) an application.  Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14.  This collection is estimated to take 2 hours to complete,  including gathering, preparing, and submitting the completed application form to the USPTO.  Time will vary depending upon the individual case.  Any comments  on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent  and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.  DO NOT SEND FEES OR COMPLETED FORMS TO THIS  ADDRESS. SEND TO: Mail Stop *Ex Parte* Reexam, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450.
*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

REV 02663

PTO/SB/57 (02-09)
Approved for use through 08/31/2010. OMB 0651-0033
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.

12. ☒ The attached detailed request includes at least the following items:

    a. A statement identifying each substantial new question of patentability based on prior patents and printed publications. 37 CFR 1.510(b)(1)

    b. An identification of every claim for which reexamination is requested, and a detailed explanation of the pertinency and manner of applying the cited art to every claim for which reexamination is requested. 37 CFR 1.510(b)(2).

13. ☐ A proposed amendment is included (only where the patent owner is the requester). 37 CFR 1.510(e)

14. ☒ a. It is certified that a copy of this request (if filed by other than the patent owner) has been served in its entirety on the patent owner as provided in 37 CFR 1.33(c).
The name and address of the party served and the date of service are:

DICKSTEIN SHAPIRO LLP

1825 Eye Street NW

Washington DC 20006-5403

Date of Service: _____ 4/14/09 _____ ; or

    ☐ b. A duplicate copy is enclosed because service on patent owner was not possible. An explanation of the efforts made to serve patent owner is attached. See MPEP 2220.

15. Correspondence Address: Direct all communications about the reexamination to:

☒ The address associated with Customer Number: | 23388

OR

☐ Firm or Individual Name _____

| Address | | |
|---|---|---|
| City | State | Zip |
| Country | | |
| Telephone | Email | |

16. ☒ The patent is currently the subject of the following concurrent proceeding(s):

    ☐ a. Copending reissue Application No. _____

    ☐ b. Copending reexamination Control No. _____

    ☐ c. Copending Interference No. _____

    ☒ d. Copending litigation styled:
Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., et al.,

Case No. 02-1087 VAP, Central District of California

**WARNING: Information on this form may become public. Credit card information should not be included on this form. Provide credit card information and authorization on PTO-2038.**

| | 4/14/09 | |
|---|---|---|
| Authorized Signature | Date | |
| R. Joseph Trojan | 34,264 | ☐ For Patent Owner Requester |
| Typed/Printed Name | Registration No. ☒ For Third Party Requester | |

[Page 2 of 2]

REV 02664

## TABLE OF CONTENTS FOR
## REQUEST FOR *EX PARTE* REEXAMINATION
## OF U.S. PATENT NO. RE37,545

PAGE

I.  Statement of Related Pending Litigation ..........................................................2

II. Identification of Claims for Which Reexamination is Requested and Citation of Prior Art Presented to Provide a Substantial New Question of Patentability ........................................................................3

    A.  Identification of Claim and Citation of Prior Art....................................3

    B.  Bases on Which Reexamination is Requested of Claim 22.....................................................................................................4

    C.  The Request for Reexamination is Based on New Prior Art .........................................................................................7

    D.  The Prior Art Are Presented in the New Light of *KSR*...........................8

III. Statement of Substantial New Questions of Patentability .................................9

    A.  Overview of the Prosecution History, the '545 Patent and Claim 22 for Which Reexamination is Requested ..................................9

    B.  Arguments Made by Patent Owner in the Litigation that Are Material to the Substantial New Question of Patentability Raised by this Request....................................................13

    C.  Claim 22 is Anticipated Under 35 U.S.C. § 102 by Sadanaga ..............................................................................................17

    D.  Claim 22 is Obvious Under 35 U.S.C. § 103 in Light of *KSR*.....................................................................................................20

        1)  Determining the Scope and Content of the Prior Art..............................................................................................22

i

REV 02665

2)    Ascertaining the Differences Between the Claimed Invention and the Prior Art.........................................................27

3)    Resolving the Level of Ordinary Skill in the Pertinent Art.................................................................................29

    a)    The Iwamoto Reference ...................................................31

    b)    The Twincome-Pentax Reference ...................................33

E.    The Combination of References Raises a Substantial New Question of Patentability as to the Obviousness of the Claimed Invention Under *KSR*.........................................................35

1)    Combining Prior Art Elements According to Known Methods to Yield Predictable Results is Obvious......................................................................................36

    a)    Chao's Claimed "Projections" Were Predictable Because the "Projections" Perform the Same Function as in Sadanaga ....................37

    b)    No Limit on the Orientation of the "Projections" in Claim 22................................................37

    c)    The Location of the "Projections" in Claim 22 Would Have Been Obvious to One of Ordinary Skill in the Art...................................................40

2)    Chao's Use of a Known Technique To Improve a Similar Primary Spectacle Frame in the Same Way is Obvious .....................................................................................42

3)    "Obvious To Try" - Choosing From a Finite Number of Identified, Predictable Solutions, With a Reasonable Expectation of Success.....................43

IV.  Detailed Explanation Under 37 CFR 1.510(b)...............................................45

V.  Conclusion.......................................................................................................67

REV 02666

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Patent No. **RE37,545**

Inventor:   Richard Chao

Issued:     February 12, 2002

Serial No.  09/182,862

Title: **AUXILIARY LENSES
          FOR EYEGLASSES**

Examiner: n/a

90009451

04/14/09

Atty. Docket No. 08-10-4994

## REQUEST FOR *EX PARTE* REEXAMINATION
## OF U.S. PATENT NO. RE37,545

Attn: Central Reexamination Unit
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Dear Sir/Madam:

    Revolution Eyewear, Inc. (hereinafter "Requester") respectfully

requests reexamination under 35 U.S.C. §§ 302-307 and 37 CFR 1.510 of

United States Patent No. RE37,545 (hereinafter "'545 Patent") entitled

*Auxiliary Lenses for Eyeglasses*. The '545 Patent has not yet expired and

remains enforceable.

1

The '545 Patent is a reissue of U.S. Patent No. 5,568,207 (hereinafter "'207 Patent"). A copy of the '545 Patent is submitted herewith pursuant to 37 CFR 1.510(b)(4) as **Exhibit 1**. A copy of the '207 Patent is submitted herewith as **Exhibit 2**. The application that issued as the '207 Patent was filed by Richard Chao (hereinafter "Chao") on November 7, 1995. *See* Exh. 2. Hence, the '545 Patent claims a priority date of November 7, 1995.

On October 21, 1998, inventor Chao applied for a reissue of the '207 Patent, which issued as the '545 Patent on February 12, 2002. *See* Exh. 1. The '545 Patent is alleged to be owned by assignees Contour Optik, Inc. and Aspex Eyewear, Inc. (hereinafter collectively "Aspex").

**I.     Statement of Related Pending Litigation**

The '545 Patent is the subject of a patent infringement action in the Central District of California, captioned *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Case No. 02-CV-01087 (hereinafter the "Litigation"), which is presently pending appeal before the United States Court of Appeals for the Federal Circuit, Appeal No. 2008-1267, -1376. In the Litigation, the District Court made no adjudication of validity under 35 U.S.C. §§ 102 or 103 of the claim being presented for reexamination herein.

REV 02668

## II.    Identification of Claims for Which Reexamination is Requested and Citation of Prior Art Presented to Provide a Substantial New Question of Patentability

### A.    Identification of Claim and Citation of Prior Art

In accordance with 37 CFR 1.510, reexamination of claim 22 of the '545 Patent is requested.  Claim 22 recites:

> 22.    An eyeglass device comprising:
>
> a primary spectacle frame for supporting primary lenses therein and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections, said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses.

*See* Exh. 1 (6:46-59).

Reexamination of claim 22 is requested in view of the following references:

*//*

*//*

3

| Prior Art References | Exhibit Nos. |
|---|---|
| U.S. Patent No. 5,461,432 to Huang ("Huang") | Exh. 3 |
| U.S. Patent No. 4,685,782 to Lhospice ("Lhospice") | Exh. 4 |
| U.S. Patent No. 5,642,177 to Nishioka ("Nishioka") | Exh. 5 |
| U.S. Patent No. 5,416,537 to Sadler ("Sadler") | Exh. 6 |
| Japanese Patent No. 5-40493 to Sadanaga ("Sadanaga") | Exh. 7[1] |

The question of patentability as to claim 22 presented by this Request has **not** been decided by the United States Patent and Trademark Office ("Office") in a previous examination or pending reexamination of the patent or in a final holding of invalidity by the Federal Courts in a decision on the merits involving the claim.  *See* Manual of Patent Examining Procedure (MPEP), § 2242.

### B. Bases on Which Reexamination is Requested of Claim 22

1. Reexamination of claim 22 is requested under 35 U.S.C. § 102(a) as being anticipated by Sadanaga.

---

[1] Exhibit 7 contains both the Japanese Patent No. 5-40493 and a <u>certified</u> English translation of the same.

REV 02670

Sadanaga was laid open in Japan on August 31, 1990 and issued on October 14, 1993.  Thus, Sadanaga qualifies as prior art under 35 U.S.C. § 102(a).  Sadanaga[2] is of record in the file of the '545 Patent, but it was never cited or relied upon in the rejection of any claims, including claim 22.

2.     Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Sadanaga, which was never cited or relied upon to reject claim 22 under § 103.

3.     Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Nishioka in view of Sadanaga.

The application that issued as Nishioka was filed on December 9, 1994 and qualifies as prior art under 35 U.S.C. § 102(e).  Nishioka was cited during prosecution of the reissue application against claims that were subsequently cancelled; Nishioka was never cited against claim 22, the claim that is being presented for reexamination.

4.     Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Nishioka in view of Sadanaga, and further in view of Huang.

---

[2] Chao disclosed Sadanaga in an Information Disclosure Statement (IDS) on submitted on October 21, 1998, only for the teaching that, "[b]ased on the translated text and the figures, magnetic coupling again seems to occur at the plane of the lenses, and seems to be located close to the temple regions[.]" *See* Exh. 8.

5

REV 02671

The application that issued as Huang was filed on December 9, 1994 and qualifies as prior art under 35 U.S.C. § 102(e). Huang is not of record in the file of the '545 Patent.

5.       Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Nishioka in view of Sadanaga, and further in view of Lhospice.

Lhospice issued on August 11, 1987 and qualifies as prior art under 35 U.S.C. § 102(a). Lhospice is not of record in the file of the '545 Patent.

6.       Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Sadler in view of Sadanaga, and further in view of Huang.

Sadler issued on May 16, 1995 and qualifies as prior art under 35 U.S.C. § 102(a). Sadler is of record in the file of the '545 Patent, but it was never cited or relied upon in the rejection of any claims, including claim 22.

7.       Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Sadler in view of Sadanaga, and further in view of Lhospice.

The above references are listed in the Information Disclosure Citation submitted herewith, and copies of the references are attached pursuant to 37 CFR 1.510 (b)(3).

6

REV 02672

The other documents cited in this Request (Exhibits 8 - 18) consist either of (1) written evidence and prosecution histories cited solely to help explain claim 22 or (2) admissions by the patent owners and/or inventor used in connection with certain of the references identified above to establish a substantial new question of patentability. *See* MPEP § 2218.

### C.   The Request for Reexamination is Based on New Prior Art

The cited references above present a substantial new question as to the patentability of claim 22 under 35 U.S.C. §§ 102 & 103 on the grounds discussed below. *See* Sections III and IV. **None of the references were cited or relied upon in the rejection of claim 22 during prosecution of the '545 Patent.** Some of the references are newly provided, not of record in the file of the '545 Patent, and not cumulative to the art of record in the original file. Some of the references relied upon in this Request were disclosed during prosecution of the '545 Patent, but were never cited or relied upon in the rejection of claim 22. Regardless, "the existence of a substantial new question of patentability is not precluded by the fact that a patent or printed publication was previously cited by or to the Office or considered by the Office." *See* 35 U.S.C. § 303; *see generally*, MPEP § 2242. In fact, a substantial new question of patentability "may be based solely on old art where the old art is being presented/viewed in a new light,

7

REV 02673

or in a different way…in view of a material new argument or interpretation presented by the request." *See* MPEP § 2242.

### D.    The Prior Art Are Presented in the New Light of *KSR*

The references identified above are being presented for the first time in light of *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 127 S.Ct. 1727 (2007). As discussed more fully below, the only stated reason for the allowance of claim 22 was that the Examiner apparently determined that the prior art of record did not provide an express teaching-suggestion-motivation (TSM) that was generally required to establish obviousness prior to *KSR*. In *KSR*, however, the Supreme Court rejected just this sort of rigid application of the TSM test. Thus, the only stated reason for allowing claim 22 is no longer justified after *KSR*.

Moreover, in light of *KSR* the claimed invention is merely the predictable result of the combination of the prior art references. The Supreme Court in *KSR* particularly emphasized "the need for caution in granting a patent based on the combination of elements found in the prior art," particularly when the combination of familiar elements according to known methods "does no more than yield predictable results." *KSR*, 127 S.Ct. at 1739. Here, the combination of the references teaches all the elements of claim 22. *See In re Royka*, 490 F.2d 981, 180 USPQ 580

8

(CCPA 1974).  And the combination of known elements in claim 22 yields no more than a predictable result as discussed below.

## III.    Statement of Substantial New Questions of Patentability

Before turning to the substantial new question of patentability raised as to claim 22, the only claim for which reexamination is requested, it is important to note that claim 22 is directed to the primary frame spectacle *by itself* (not to the combination of a primary spectacle frame and an auxiliary spectacle frame covered by other claims in the '545 Patent). This Request does not seek reexamination of any claims in the '545 Patent for the *combination* of a primary spectacle frame *and* an auxiliary spectacle frame. This Request seeks reexamination only of the claimed invention for the claimed primary spectacle frame (*without* the auxiliary spectacle frame).

### A.    Overview of the Prosecution History, the '545 Patent and Claim 22 for Which Reexamination is Requested

The original '207 Patent contained only two claims, both of which were directed to the combination of a primary spectacle frame and an auxiliary spectacle frame. *See* Exh. 2.  Claim 1 recited in relevant part:

1.    An eyeglass device comprising:

a primary spectacle frame ... said primary spectacle frame including two rear and side portions each having a

9

projection secured thereto, said primary spectacle frame including an upper side portion,

a pair of first magnetic members secured in said projections respectively,

an auxiliary spectacle frame ... said auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with said upper side portion of said primary spectacle frame, and

a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame,

said arms being engaged with and supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame ... so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

*Id.* In short, claim 1 of the '207 Patent was directed to the *combination* of an auxiliary spectacle frame and a primary spectacle frame,[3] and specifically required that the "arms" of the auxiliary frame be supported on the "projections" of the primary frame. (This is called "top-mounting.")

---

[3] In fact, the entirety of the '207 Patent—from (1) the title, to (2) the described field of the invention, to (3) the teaching over the prior art, to (4) the stated primary objective, to (5) the detailed description of the singular embodiment, and through to (6) the claims—indicates that invention is for the combination of the primary spectacle frame and the auxiliary spectacle frame, not the primary spectacle frame alone. *See* Exh. 2.

REV 02676

When Chao applied for the reissue, he amended claim 1 and added new claims 3-35, three of which—claim 14, claim 20 and claim 22[4]—were directed to just a "primary eyeglass device" by itself (instead of the combination of a primary frame and an auxiliary frame). *See* Exh. 9. In an Office Action dated July 15, 1999, the Examiner rejected claims 1-35 under, *inter alia*, § 112, ¶ 1.[5] *See* Exh. 10.

On April 20, 2001, Chao filed an "Amendment and Interview Summary," in which he cancelled, *inter alia*, claims 13-27, and added new claims 67-89. *See* Exh. 11. In particular, **new claim 75**—subsequently renumbered as **claim 22**, the claim being presented for reexamination—was the only new claim directed to just the primary spectacle frame by itself. *See* Exh. 11 (p. 10).

A Notice of Allowability was issued on July 30, 2001. *See* Exh. 12. In allowing the claims, the Examiner stated:

> Nishioka fails to disclose the limitations "said **auxiliary spectacle frame** including two side portions, each having an arm extending therefrom for extending over and engaging with said upper side portion of said primary spectacle frame…" in combination with the claimed subject matter in **claim 1**. Nishioka fails to disclose the

---

[4] Note that this is not the same as the claim 22 that is being presented for reexamination as it was re-numbered for issuance.

[5] Claims 12 and 34 were rejected under 35 U.S.C. § 102(e) as being anticipated by Nishioka, and later claims 36-41 were rejected under § 102(b) as being anticipated by Nishioka.

11

REV 02677

limitations "the **primary spectacle frame including two side portion extensions extended therefrom for pivotally coupling a leg thereto and a first magnet having a horizontal surface and secured to said side portion extension of the primary spectacle frame**" and "the auxiliary spectacle frame…" in combination with the claimed subject matter as claimed in **claim 12.** Nishioka also fails to disclose the limitations as claimed in claims 37, 67-78, 81, 86-89. **The prior art fails to disclose or suggest to combine with any other reference to meet the limitations as claimed in claims 1, 12, 36, 67-78, 81, 86-89.** Therefore claims 1, 12, 36, 67-78, 81, 86-89 are allowable over the prior art of record.

*See* Exh. 12 (emphasis added).

In summary, no claim was rejected during prosecution as being unpatentable under 35 U.S.C. §§ 102 & 103. **Claim 22, specifically, was never rejected as being anticipated by or obvious over any of the prior art of record or any of the prior art presented herein.**[6] In fact, claim 22 was allowed without being subject to any action by the Examiner.

---

[6] Of the references relied upon for this Request, the Examiner considered only Nishioka as it applied to claims 1 and 12. *See* Exh. 12. To the extent that Nishioka was considered at all in regards to claim 22, the Examiner disregarded Nishioka because it did not "disclose or suggest to combine with any other reference." *Id.* That is, the Examiner did not apply Nishioka because it did not provide the requisite teaching-suggestion-motivation that was generally required under Federal Circuit case law at the time the application was prosecuted, prior to *KSR*.

12

REV 02678

**B.    Arguments Made by Patent Owner in the Litigation that Are Material to the Substantial New Question of Patentability Raised by this Request**

The substantial new question of patentability raised by this Request arises in significant part from arguments made by the patent owners during the Litigation that implicate the prior art presented herein.

In the specification of the '545 Patent, Chao distinguished his invention over the prior art by identifying two purported problems in the prior art:[7] the first being the problem of stably supporting the auxiliary frame on the primary frame by magnetic attachment; the second being the problem of embedding magnets in the frames, *which had the effect of decreasing the strength of the frames*.[8]  *See* Exh. 1 (1:26-37).  The patent goes on to state that the claimed invention "has arisen to mitigate and/or obviate the afore-described disadvantages" of the prior art.  *Id.* (1:38-40).

The problem addressed by claim 22 was: how to secure magnets on the primary spectacle frame without embedding the magnets in the frame itself so as to avoid weakening the frame.  As a solution to this "decreased

---

[7] An applicant who alleges the discovery of the cause of a problem must "provide a clear and persuasive assertion in the specification."  *See* MPEP § 2141.02, citing *In re Wiseman*, 596 F.2d 1019, 201 USPQ 658 (CCPA 1979).

[8] The first problem is referred to as the "stable support" problem, and the second problem is referred to as the "decreased strength" problem.

13

REV 02679

strength" problem, Chao taught that the frame is provided with "projections" for housing the magnets, so that the magnets are not embedded *in* the frame itself:

> It is further to be noted that the projections 13 and the magnetic members 14 are secured to the primary spectacle frame 10 and the magnetic members 22 are secured in the arms 21. The magnetic members 14, 22 are not embedded in the frames 10, 20 such that the frames 10, 20 are not required to be formed with cavities therein and such that the strength of the frames 10, 20 will not be decreased.

*Id.* (2:56-62; *see also*, 3:24-26) As such, claim 22 is distinguishable over the prior art because it purports to solve the "decreased strength" problem inherent in the prior art by reciting "projections" on the primary spectacle frame for securing magnets.

In the Litigation, the patent owners repeatedly argued that the primary spectacle frame of claim 22 is patentable because it solves the "decreased strength" problem in this way:

> Here, one of the solutions to the weakening of the primary frames by embedding magnets is solved by providing "projections" or housing that are attached to the rear side of the side portion extensions of the primary frame. The claims are not required to address both of the problems of stability and weakening of the frames as Revolution contends.... As such, insofar as a claim properly addresses at least one of the problems present in the prior art, the examiner properly allowed claims to cover both the primary and auxiliary frames

14

REV 02680

> independently of each other consistent with Richard Chao's intent to claim each of the devices independently of each other.

*See* Exh. 13 (JA 01538).

> Claim 22 of the '545 patent does not contain express language directed to solving the **"*stable support*"** problem. However, claim 22 does contain the following express language directed to solving the **"*decreased strength*"** problem: **"each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections."**

*See* Exh. 14 (JA 02553-02554) (emphasis in original); *see also*, Exh. 15 (at

p. 8).

> It is undisputed that claim 22 has a separate utility – providing magnetic attraction for an auxiliary frame without weakening the primary frame through use of embedded magnets.

*See* Exh. 14 (JA 02562)

As the patent owners repeatedly admitted throughout the Litigation, claim 22 is only directed to the "decreased strength" problem.  It is not directed to solving the "stable support" problem.  Hence, the Examiner's stated reason for allowing the other claims in the '545 Patent—based on the fact that the prior art does not teach certain claimed elements for stably supporting an auxiliary spectacle frame on a primary spectacle frame in the

15

REV 02681

'top-mounting' configuration—does *not* apply to claim 22.  Claim 22 stands apart from all other claims in the '545 Patent.

Since claim 22 is for a primary spectacle frame only (absent any limitation for stably supporting the corresponding auxiliary frame), the only patentable element of the claimed primary spectacle frame is, according to the patent owners' own admissions, the "said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections."

**Sadanaga, however, clearly teaches eyewear using "projections" for securing magnets just as described and claimed in the '545 Patent.** *See* Exh. 7.  As discussed more fully below, Sadanaga teaches the use of projections attached to the sides of the respective frames for housing magnets that are capable of engagement, such that the auxiliary spectacle frame can be worn in front of the primary spectacle frame.  Thus Sadanaga had solved the "decreased strength" problem long before Chao described it in the specification of the '545 Patent.  Since the only basis on which claim 22 is distinguishable over the prior art was disclosed by Sadanaga, there is a substantial new question as to the patentability of claim 22 in view of Sadanaga.

16

REV 02682

### C.   Claim 22 is Anticipated Under 35 U.S.C. § 102 by Sadanaga

The Federal Circuit teaches that a claim is anticipated "if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California,* 814 F.2d 628, 631 (Fed. Cir. 1987).

Sadanaga anticipates claim 22 because it describes each and every element of the claim for the primary spectacle frame. (In Section IV below, the Requester sets forth a detailed claim chart showing that Sadanaga discloses each and every element of claim 22.) Specifically, Sadagana discloses a primary spectacle frame for supporting primary lenses therein. *See* Exh. 7 (Fig. 1). Sadanaga also discloses "two side portion extensions … pivotally coupling a leg configured to conform to a user at a distal end thereof" as shown in Figs. 1 and 4 depicting element 4. *See* Exh. 7 (Figs. 1, 3 and 4).

As discussed above, the key element of claim 22 is that "each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides…" In Sadanaga's <u>Means for Solution of the Problem</u>, he teaches:

> said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of

17

REV 02683

the sunglasses, **the second fixing part comprises at least one second projection member that is provided on each side of the spectacles,** projects to the position corresponding to the first fixing part and engages with the first fixing part…

*See* Exh. 7 (page 3, lines 31-36 (emphasis added)).    Further, in his

<u>Description of Practical Embodiments</u>, Sadanaga goes on to teach:

The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11. The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14.

*See* Exh. 7 (page 5, lines 4-11) The "projection members" (14) are shown in

Figure 3 of Sadanaga, reproduced below:



Although Sadanaga does not expressly teach that the "projection

members 5,5" are "attached to each of said rear sides" of the extensions, he

teaches that the projections are not limited to any particular location:

18

REV 02684

> [A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**

*See* Exh. 7 (page 6, lines 29-34) (emphasis added)  As such, it is inherent in Sadanaga that the "projection members" can be "attached to each of said rear sides" of the extensions as in claim 22.

And as in claim 22, Sadanaga teaches "a pair of magnetic members respectively secured in the projections…" *See* Exh. 7 (Figs. 2 and 7). Again, in his Description of Practical Embodiments, Sadanaga teaches that "[e]ach first projection member 14 consists of a caulking pin 14a, a magnet 14b…" *See* Exh. 7 (page 5, lines 19-20).  Though "the magnets are shown in the first projection members 14, 14 of the sunglasses… if necessary, **the magnets can be installed in the projection members of the spectacles 1."** *See* Exh. 7 (page 6, lines 36-38).

Lastly, claim 22 recites: "said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses." Sadanaga discloses this limitation as well, teaching:

19

REV 02685

> Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to them in the correct position… and by simply superimposing the sunglasses 11 onto the spectacles 1.**

*See* Exh. 7 (page 5, lines 34-40) (emphasis added); *see also,* Fig. 4.

Because each and every element as set forth in claim 22 is found, either expressly or inherently described, in Sadanaga, the claim is anticipated by Sadanaga.

**D.    Claim 22 is Obvious Under 35 U.S.C. § 103 in Light of *KSR***

Claim 22 is obvious under 35 U.S.C. § 103 in view of the combination of prior art references upon which *KSR* has shed new light.

At the outset, it must be understood that he original reason for the allowance of claim 22 is no longer justified after *KSR*. The Examiner's only stated reason for allowing claim 22 was that the "prior art fails to disclose or suggest to combine with any other reference to meet the limitations as claimed." *See* Exh. 12. However, under *KSR*, the prior art is no longer required to expressly provide some teaching, suggestion, or motivation to combine the references. *See* 127 S.Ct. at 1731-32. In *KSR*, the Supreme Court rejected just the sort of rigid application of the TSM test made by the

20

REV 02686

Examiner in allowing claim 22. *Id.; see also, DyStar Textilfarben GmbH & Co. Deutschland Kg v. C.H. Patrick Co.*, 464 F.3d 1356, 1366 (Fed. Cir. 2006) (*"[W]e have stated explicitly that evidence of a motivation to combine need not* be found in the prior art themselves," citing *In re Dembiczak*, 175 F.3d 994, 999 (Fed. Cir. 1999) (emphasis in original)). Therefore, the stated reason that the prior art did not expressly provide the requisite teaching/suggestion/motivation to combine the references no longer supports the allowance of claim 22.

Moreover, the Supreme Court in *KSR* reaffirmed that "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1731. When considering obviousness of a combination of known elements, the operative question is "whether the improvement is more than the predictable use of prior art elements according to their established functions." *Id.* Here, the claimed primary spectacle frame of claim 22 is comprised of no more than the predictable use of elements from the prior art according to their established functions.

The Supreme Court in *KSR* reiterated that the framework for an objective analysis of obviousness, set forth in *Graham v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966), requires:

21

REV 02687

(1)    determining the scope and content of the prior art;

(2)    ascertaining the differences between the claimed
        invention and the prior art; and

(3)    resolving the level of ordinary skill in the pertinent art.

127 S.Ct. at 1729-30. Once the *Graham* factual inquiries are resolved, it
must be determined whether the claimed invention would have been obvious
to one of ordinary skill in the art. *Id.*

### 1)    Determining the Scope and Content of the Prior Art

All the prior art references disclose "a primary spectacle frame for
supporting primary lenses therein" as recited by claim 22. *See* Exhs. 5-7.
For example, Figure 1 of Nishioka shows a primary spectacle frame (5a)
supporting primary lenses (6) therein:



*See* Exh. 5.

22

As the Examiner noted in the Notice of Allowability, Nishioka does not "disclose the limitations 'the primary spectacle frame including two side portion extensions extended therefrom for pivotally coupling a leg thereto and...'" *See* Exh. 12.   However, Huang and Lhospice each discloses a primary spectacle frame "having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof" as recited by claim 22. *See* Exhs. 3-4. For example, Figure 1 of Huang shows:



**FI G.1**

*See* Exh. 3.

Though neither Huang nor Lhospice discloses "projections" on the two "side portion extensions," Sadanaga discloses a primary spectacle frame having "projections," which are "capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary

23

spectacle frame are located in front of said primary lenses." *See* Exh. 7.[9]

More particularly, as shown in Figures 1 and 2 reproduced below, Sadanaga teaches a "second projection member" (5) on each side of the primary spectacle frame (1) and a "first projection member" (14) on each side of the auxiliary spectacle frame (11). *See* Exh. 7.



Furthermore, Sadanaga teaches "wherein the first projection member and the second member are mutually attachable by means of magnetic interaction." *See* Exh. 7 (Abstract, at p. 1).

> [S]ince the first projection members 14, 14 and the
> second projection members 5, 5 interact through
> magnetic forces and can be secured to each other by
> merely applying the first projection members 14, 14 onto
> the second projection members 5, 5, the sunglasses can
> be attached to the spectacles 1 and secured to them in the
> correct position without the need to remove the

---

[9] All references to the specification of Sadanaga are to the certified English translation of the same submitted herewith as Exhibit 7.

24

> spectacles from the user's face and by simply superimposing the sunglasses 11 on the spectacles 1.

*See* Exh. 7 (Description of Practical Embodiments, at p. 5).

It is noted that Sadanaga does not disclose that the "projection[s] [are] attached to each of said rear sides" of the "two side portion extensions." In Sadanaga, the projections (5) are attached to the sides of the primary frame (1). However, Sadanaga expressly teaches that its "projections" are not limited to any particular position or location:

> [A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**

*See* Exh. 7 (at page 6, lines 29-34) (emphasis added). Since Sadanaga clearly teaches that the "projections" can "occupy any other suitable positions on the respective frames," claim 22 reads on Sadanaga. *See In re Japikse*, 181 F.2d 1019, 86 USPQ 70 (CCPA 1950) (claims to a hydraulic power press which read on the prior art except with regard to the position of the starting switch were held unpatentable because shifting the position of the starting switch would not have modified the operation of the device); *In re Kuhle*, 526 F.2d 553, 188 USPQ 7 (CCPA 1975) (the particular

25

REV 02691

placement of a contact in a conductivity measuring device was held to be an obvious matter of design choice).

Also, it is noted that in the preferred embodiment of Sadanaga the magnets (14b) are housed in projections (14) on the auxiliary spectacle frame (11) as shown in Figures 2 and 7.  However, Sadanaga states:

> In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses. However, if necessary, **the magnets can be installed in the projection members of the spectacles 1.**

See Exh. 7 (page 6, lines 36-38) (emphasis added).  See In re Gazda, 219 F.2d 449, 104 USPQ 400 (CCPA 1955) (prior art disclosed a clock fixed to the stationary steering wheel column of an automobile while the gear for winding the clock moves with steering wheel; mere reversal of such movement, so the clock moves with wheel, was held to be an obvious expedient).  Thus, it was well within Sadanaga's contemplation that the magnets can be secured in the "projections" of the primary spectacle frame, just as in claim 22 of the '545 Patent.  Therefore, claim 22 reads on Sadanaga.

//

//

//

26

## 2)   Ascertaining the Differences Between the Claimed
## Invention and the Prior Art

In determining the differences between the prior art and the claims, the question "is not whether the differences <u>themselves</u> would have been obvious, but whether the claimed invention <u>as a whole</u> would have been obvious." *See* MPEP § 2141.02 (emphasis in original), citing *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed. Cir. 1983). The discovery of the cause of a problem is part of the "as a whole" inquiry. *See In re Sponnoble*, 405 F.2d 578, 585, 160 USPQ 237, 243 (CCPA 1969); *see generally*, MPEP § 2141.02. Here, according to admissions made in the Litigation, the patentability of the primary spectacle frame in claim 22 is based on the fact Chao had purported to solve a problem encountered in the prior art, wherein the strength of the primary spectacle frame was weakened by the use of magnets embedded in the frame itself.

As discussed above, Chao distinguished his invention over the prior art by describing "projections" for housing the magnets, so that "[t]he magnetic members 14, 22 are not embedded in the frames 10, 20 such that the frames 10, 20 are not required to be formed with cavities therein and such that the strength of the frames 10, 20 will not be decreased." *Id.* (2:56-62; *see also*, 3:24-26) Hence, the only distinguishable feature of the claimed

27

invention over the prior art are the "projections" on the primary spectacle frame for securing magnets which purport to solve the "decreased strength" problem.

The patent owners admitted in the Litigation that the only basis for the patentability of claim 22 is that it solves the "decreased strength" problem:

> Here, one of the solutions to the weakening of the primary frames by embedding magnets is solved by providing "projections" or housing that are attached to the rear side of the side portion extensions of the primary frame. The claims are not required to address both of the problems of stability and weakening of the frames as Revolution contends.... As such, insofar as a claim properly addresses at least one of the problems present in the prior art, the examiner properly allowed claims to cover both the primary and auxiliary frames independently of each other consistent with Richard Chao's intent to claim each of the devices independently of each other.

*See* Exh. 13 (JA 01538).

> Claim 22 of the '545 patent does not contain express language directed to solving the **"*stable support*"** problem. However, claim 22 does contain the following express language directed to solving the **"*decreased strength*"** problem: **"each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections."**

*See* Exh. 14 (JA 02553-02554) (emphasis in original); *see also*, Exh. 15 (at p. 8).

REV 02694

Therefore, under the second *Graham* inquiry, **the only difference between the claimed primary spectacle frame and the prior art is that: the primary spectacle frame of claim 22 has magnets secured in "projections," whereas in the prior art the magnets are embedded in the frames.  Sadanaga, however, teaches eyewear using "projections" for securing magnets just as described and claimed in the '545 Patent.** *See* Exh. 7.  More particularly, Sadanaga teaches the use of projections attached to the sides of the respective frames for housing magnets, which are capable of engaging the magnets of an auxiliary spectacle frame so that lenses of the auxiliary spectacle frame are located in front of the primary lenses just as in claim 22.  Thus, Sadanaga had solved the "decreased strength" problem long before Chao did in the '545 Patent.  Since the only basis on which claim 22 is distinguishable over the prior art was disclosed by Sadanaga, there is a substantial new question of patentability as to whether the claim is obvious in view of Sadanaga and the other references.

> 3)    **Resolving the Level of Ordinary Skill in the Pertinent Art**

Under the third *Graham* inquiry, factors that may be considered in determining the level of ordinary skill in the art may include the "type of problems encountered in the art" and the "prior art solutions to those

REV 02695

problems." *See In re GPAC*, 57 F.3d 1573, 1579, 35 USPQ2d 1116, 1121 (Fed. Cir. 1995); *see generally*, MPEP § 2141.[10]  In determining the type of problems encountered in the art and the solutions to those problems, references which do not qualify as prior art may be relied upon to show the level of ordinary skill in the art at the time of the invention:

> References which do not qualify as prior art because they postdate the claimed invention may be relied upon to show the level of ordinary skill in the art at or around the time the invention was made. *Ex parte Erlich*, 22 USPQ 1463 (Bd. Pat. App. & Inter. 1992).  Moreover, documents not available as prior art because the documents were not widely disseminated may be used to demonstrate the level of ordinary skill in the art. For example, the document may be relevant to establishing "a motivation to combine which is implicit in the knowledge of one of ordinary skill in the art." *National Steel Car Ltd. v. Canadian Pacific Railway Ltd.*, 357 F.3d 1319, 1338, 69 USPQ2d 1641, 1656 (Fed. Cir. 2004)(holding that a drawing made by an engineer that was not prior art may nonetheless "be used to demonstrate a motivation to combine implicit in the knowledge of one of ordinary skill in the art").

*See* MPEP § 2141.03.

Here, there are two important references contemporaneous with the '545 Patent which show the level of ordinary skill in the art at or around the

---

[10]In addition to the factors above, "Office personnel may rely on their own technical expertise to describe the knowledge and skills of a person of ordinary skill in the art. The Federal Circuit has stated that examiners and administrative patent judges on the Board are 'persons of scientific competence in the fields in which they work' and that their findings are 'informed by their scientific knowledge, as to the meaning of prior art references to persons of ordinary skill in the art.'" *See* MPEP § 2141, citing *In re Berg*, 320 F.3d 1310, 1315, 65 USPQ2d 2003, 2007 (Fed. Cir. 2003).

REV 02696

time the invention was made.  Though these two references do not qualify as prior art, they clearly establish that those of ordinary skill in the art were addressing the types of problems described in the '545 Patent at the time of the invention.

### a)     The Iwamoto Reference

Japanese Patent Application No. H07-156856 to Toshikazu Iwamoto (hereinafter "Iwamoto reference"), having a filing date of May 31, 1995, discloses each and every element of claim 22. *See* Exh. 16.  In fact, United States Application No. 08/655,828, which claims priority to the Iwamoto reference, was the subject of an interference proceeding against Chao's original '207 Patent before the Board of Patent Appeals and Interferences. *See* Exh. 17.  (The interference proceeding concluded when the parties thereto, having reached a settlement agreement, filed a joint request for an adverse entry of judgment against senior party Iwamoto. *Id.*)  Even though the Iwamoto reference antedates the '545 Patent,[11] it does not qualify as prior art because it was apparently withdrawn prior to publication in Japan.[12]

---

[11] The Iwamoto reference has a priority date of May 31, 1995.  The '545 Patent has a priority date of November 7, 1995.

[12] It is worth noting, however, that Toshikazu Iwamoto later filed Japanese Patent Application No. 08-153172, published on April 15, 1997, claiming priority to the Iwamoto reference.  An English translation of the Abstract of the Japanese Patent Application No. 08-153172 is included in Exhibit 16.

31

Nonetheless, it can be relied upon to show the level of ordinary skill in the art at or around the time the invention was made.

As shown in Figure 6 of the Iwamoto reference reproduced below, the Iwamoto reference clearly discloses each and every element of claim 22.

【図6】.



*See* Exh. 16.  According to the translated Abstract of the Iwamoto reference,

> A sunglasses fitting part consists of 1st endpiece parts brazed to rim 24 for the spectacles and 2nd endpiece parts 42 brazed to rim for sunglasses.  The endpiece part 24 is equipped with a 1st fixation part 24a (reception part) which has a magnet embedded partially....the magnetic body metal of the fixation part 42a is mounted so that it is attracted by the magnet of the fixation part 24a.

*See* Exh. 16.

32

REV 02698

Accordingly, the Iwamoto reference irrefutably demonstrates that it was well within the level of those skilled in the art at the time of the invention to develop a primary spectacle frame having two side portion extensions with projections that house magnets capable of engaging the magnets of an auxiliary spectacle frame. *See KSR*, 127 S.Ct. at 1731. In other words, the Iwamoto reference demonstrates not only the type of problems that Chao describes in the '545 Patent, but also the solution to those problems. Therefore, it is clear that the primary spectacle frame of claim 22 would have been well within the level of ordinary skill in the art at the time of Chao's invention in light of the Iwamoto reference.

### b)      The Twincome-Pentax Reference

In addition to the Iwamoto reference, the Twincome-Pentax reference that was disclosed during prosecution of the '545 Patent also shows that the primary spectacle frame of claim 22 was well within the level of ordinary skill in the art at the time of the invention. *See* Exh. 8.

During prosecution of the '545 Patent, Chao disclosed the Twincome-Pentax reference, stating:

> Pentax has initiated a patent opposition proceeding in Germany, challenging another one of Applicant's invention. In it, Pentax included a number of publications, and alleged that they described their product, Twincome. According to a Pentax declaration

REV 02699

> in the opposition, Pentax had made Twincome public before November 7, 1995.... According to Pentax, this last set of publications describes Twincome, which has magnets at the temples of a spectacle frame.

*See* Exh. 8.   The Examiner subsequently applied the Twincome-Pentax reference against certain of the then-pending claims,[13] noting:

> Claims 1, 3-7, 10-21, 23, 24, 34 are rejected under 35 U.S.C. § 102(a) as being anticipated by Twincome-Pentax....The documents of the Twincome-Pentax constitute a "printed publication".... It appears that the Twincome documents including products, at least models, were delivered to the individuals as well as the large retails and displayed at the IOFT (International Optical Fair Tokyo).   Thus, the documents of the Twincome-Pentax have been disseminated and were public[ly] accessible.   The evident [*sic*], shown in the Twincome-Pentax, are sufficient to constitute a "printed publication" as long as a presumption is raised that the portion of the pubic concerned with the art would know of the invention...

*See* Exh. 10 (at p. 8).   In the Notice of Allowability, however, the rejection under § 102(a) over the Twincome-Pentax reference was withdrawn because it was apparently deemed not to meet the requirements of a printed publication. *See* Exh. 12.

Even if the Twincome-Pentax reference does not qualify as a prior art printed publication, it nonetheless demonstrates the level of ordinary skill in the art at the time of the invention, and that those of ordinary skill in the art

---

[13] As noted above, then-pending claims 14 and 20 were directed to the primary spectacle frame, though these claims were later cancelled.

REV 02700

would have found motivation implicit in the knowledge available in the art at that time to develop the primary spectacle frame that is claimed by Chao in the '545 Patent.

**E.     The Combination of References Raises a Substantial New Question of Patentability as to the Obviousness of the Claimed Invention Under *KSR***

The MPEP teaches that "[o]nce the *Graham* factual inquiries are resolved, Office personnel must determine whether the claimed invention would have been obvious to one of ordinary skill in the art." *See* MPEP § 2141(III).   In making this determination, the Supreme Court in *KSR* reiterated that combining prior art elements according to known methods to yield predictable results is obvious. *See KSR*, 127 S.Ct. at 1731.  Here, the combination of Sadanaga and the other prior art references raises at least a substantial new question of patentability regarding claim 22—indeed, the combination of references compels a *prima facie* conclusion that claim 22 is obvious—since claim 22 is no more than the predictable result of combining these references.

//

//

//

35

REV 02701

### 1)   Combining Prior Art Elements According to Known Methods to Yield Predictable Results is Obvious

"[A] combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." 127 S.Ct. at 1731; *see generally*, MPEP § 2143(A). As discussed above and in more detail in Section IV below, all of the component parts of the primary spectacle frame claimed by Chao were familiar in the prior art. In particular, the "projections," which distinguish the claimed primary spectacle frame over the prior art, had been disclosed by Sadanaga.

As exemplified by the Iwamoto reference and the Twincome-Pentax reference, one of ordinary skill in the art could have combined the elements as claimed by known methods. One of ordinary skill in the art would have had motivation to combine Sadanaga's "projections" with the other elements already familiar in the art because the "decreased strength" problem was simple and the possible approaches to solving the problem were known and finite. The problem encountered by Chao was simple: how to secure magnets on the primary spectacle frame without embedding the magnets in the frame itself so as not to weaken the frame. The solution that Chao recited in claim 22 was equally simple: to use "projections" for securing the magnets. Since Chao's solution to the "decreased strength" problem was

36

predictable, as demonstrated by Sadanaga, particularly in light of the Iwamoto reference, such a solution would have been obvious even absent an express "teaching, suggestion, or motivation" in the prior art.

### a) Chao's Claimed "Projections" Were Predictable Because the "Projections" Perform the Same Function as in Sadanaga

Chao's claimed invention was predictable because, in combination, each element of claim 22 merely performs the same function as it does separately. *See* KSR, 127 S.Ct. at 1740. In particular, the "projections" in claim 22 perform exactly the same function as the "projections" in Sadanaga: namely, to secure magnets for coupling with another spectacle frame. By its terms, there is nothing in claim 22 to distinguish the function of the claimed "projections" from the function of the "projections" disclosed by Sadanaga. The "projections" in claim 22 have no special function that was not predictable in view of Sadanaga.

### b) No Limit on the Orientation of the "Projections" in Claim 22

The only difference between Sadanaga and the '545 Patent is in the orientation and location of the "projections." In Sadanaga, the "projections" are oriented in a 'front-mounting' configuration, whereas in the '545 Patent

REV 02703

the "projections" are oriented in a 'top-mounting' configuration. However, claim 22 contains **no** limitation specifying the orientation of the "projections." In fact, on appeal of the Litigation, the patent owners argued that claim 22 should be given the broadest possible interpretation such that the claimed primary spectacle frame is *not* limited to the 'top-mounting configuration':

> Claim 22, by its terms, is directed to the primary spectacle frame embodiment of the '545 Patent invention, not the combination primary frame/auxiliary frame embodiment of other claims. The plain language of claim 22 requires the primary frame to be *capable* of magnetically engaging *an* auxiliary spectacle frame, and not necessarily a top-mounting auxiliary frame. Moreover, claim 22 is directed to the "decreased strength" problem of prior art primary frames, and **the '545 Patent's "projections" solution to the "decreased strength" problem is not dependent upon the primary frame's ability to magnetically engage a particular type of auxiliary frame, let alone only a top-mounting auxiliary frame.**

> ....Pursuant to this Court's power of de novo review of District Court claim constructions, we respectfully submit that the District Court's construction of **claim 22 should be revised so as not to limit the claim to primary spectacle frames capable of magnetically engaging top-mounting auxiliary frames.**

*See* Exh. 15 (at pp. 45-46) (bold italicized emphasis in original and bold underlined emphasis added).  In accordance with the patent owners' argument, claim 22 must be given the broadest reasonable interpretation

REV 02704

such that the "projections" can be configured to engage an auxiliary spectacle frame in any orientation. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1306 (Fed. Cir. 2005) (the scope of the claimed invention must be determined by giving the claims the "broadest reasonable interpretation consistent with the specification").[14]

Under the patent owners' broad interpretation of their own claim, claim 22 covers within its scope the projections described by Sadanaga because the solution to the "decreased strength" problem in claim 22 is not dependent upon or limited by any configuration. Therefore, the orientation of the projections in claim 22 would have been obvious in view of Sadanaga since the claimed projections can be configured in any orientation, including the 'front-mounting' configuration, to perform the same function of attaching an auxiliary spectacle frame as in Sadanaga.

//

//

---

[14] It should be noted that when the Examiner allowed the claims in the '545 Patent over Nishioka, the Examiner stated that Nishioka does not disclose "**a first magnet having a horizontal surface** and secured to said side portion extension of the primary spectacle frame..." *See* Exh. 12 (emphasis added). As such, the Examiner allowed the claims based in part on the limitation regarding the horizontal orientation of the magnets in the projections. In the Litigation, however, Aspex argued that there is no such horizontal limitation on the projections in claim 22. Therefore, the reason for allowing the claims over Nishioka is negated by Aspex's admissions during the Litigation.

REV 02705

c) **The Location of the "Projections" in Claim 22 Would Have Been Obvious to One of Ordinary Skill in the Art**

Likewise, the location of the projections on the "rear sides" of the extensions in claim 22 would have been obvious to one of skill in the art. As noted above, Sadanaga taught that the "projection members may occupy any other suitable positions on the respective frames." *See* Exh. 7 (at page 6, lines 29-34) (emphasis added). As such, it would have been obvious to one of skill in the art from reading Sadanaga to change or modify the location of the projections to the rear sides of the extensions. *See Eversharp, Inc. v. Philip Morris, Inc.*, 256 F.Supp. 778, 783 (E.D. Va. 1966) ("It was obvious to one of ordinary skill in the art to modify a known injector razor blade by adding holes of a size and location for a particular purpose."); *Allen v. Standard Crankshaft & Hydraulic Co.*, 210 F.Supp. 844, 849 (D.C.N.C. 1962) (it is not an "invention to change the location of the thrust bearing surface so as to, in effect, 'lengthen' or 'shorten' the shaft so that it will fit into an engine block for the reason that this is an obvious expedient to a mechanic skilled in automotive work"); *Metropolitan Body Co. v. Divco Corp.*, 94 F.Supp. 731, 738 (E.D. Mich. 1951) ("Merely changing the **location** of the old sliding door of the old combination from outside to

40

inside the body is but an obvious expedient. The inside sliding door provides no new function and no new result whether it be used in the step well of a truck or the step well of a streetcar." (emphasis added)).

Moreover, the location of the projections on the rear sides of the extensions as recited in claim 22 provides no new function or new result over Sadanaga. Since claim 22 is directed to only the primary spectacle frame (without the auxiliary spectacle frame), the location of projections is irrelevant. In claim 22, the projections have no function in supporting the auxiliary spectacle frame since the auxiliary spectacle frame is not a limitation of the claim.

In fact, since claim 22 is directed to the primary spectacle frame by itself, the projections have no functional purpose whatsoever. The only purpose for the projections is to engage the "magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses." But since the auxiliary spectacle frame is not a limitation of claim 22, the projections serve no functional purpose without the auxiliary spectacle frame.

In sum, one of ordinary skill in the art would have recognized that Chao's solution of using projections to house the magnets in order to avoid

41

REV 02707

weakening the primary spectacle frame was predictable.[15]   Therefore, claim 22 is obvious because it comprises nothing more than the combination of prior art elements yielding a very predictable result.

2) **Chao's Use of a Known Technique To Improve a Similar Primary Spectacle Frame in the Same Way is Obvious**

The Supreme Court in *KSR* also states that, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond that person's skill. A court must ask whether the improvement is more than the predictable use of prior-art elements according to their established functions." 127 S.Ct. at 1731; *see generally*, MPEP § 2143(C).

Chao's claimed technique of using projections to secure magnets is merely an obvious "improvement" over the prior art primary spectacle frames.   More particularly, Sadler taught a primary spectacle frame capable of magnetically engaging an auxiliary spectacle frame.   *See* Exh. 6.   In

---

[15] To the extent that Chao taught a combination that can be said to yield an unpredictable result, it would be the combination of a primary spectacle frame and an auxiliary spectacle frame as claimed in claim 1. The Requester does not seek reexamination of any claims other than claim 22, which is for the primary spectacle frame only.

REV 02708

respect to claim 22, Chao improved over Sadler by securing the magnets in projections so as not to weaken the frame. *See* Exh. 1. However, Sadanaga teaches a comparable spectacle frame, one also having projections for securing magnets therein. *See* Exh. 7. Sadanaga improves over Sadler in the same way as the claimed invention.

One of ordinary skill in the art could have applied Sadanaga to Sadler and the results would have been predictably the same. Thus, Chao's solution for improving over Sadler was part of the ordinary capabilities of one skilled in the art based upon the teaching of Sadanaga. One of ordinary skill in the art could have applied Sadanaga to any primary spectacle frame in the prior art and the result would have been, predictably, the primary spectacle frame of claim 22. *See, e.g., In re Nilssen*, 851 F.2d 1401, 7 USPQ2d 1500 (Fed. Cir. 1988).

### 3) "Obvious To Try" - Choosing From a Finite Number of Identified, Predictable Solutions, With a Reasonable Expectation of Success

"When there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions," the Supreme Court stated in *KSR*, "a person of ordinary skill in the art has good reason to pursue the known options within his or her technical grasp. If this

43

leads to the anticipated success, it is likely the product not of innovation but of ordinary skill and common sense." 127 S.Ct. at 1732.

At the time of the invention, there were a finite number of identified, predictable solutions to the "decreased strength" problem.  As exemplified by the Iwamoto reference and the Twincome-Pentax reference, those of skill in the art had recognized the solution to the problem of how to secure magnets on a spectacle frame without embedding the magnets in the frame itself was to use projections in order to avoid weakening the frame.  Nothing in the prior art taught away from the use of such "projections."  It would have been obvious for one of ordinary skill in the art to try putting the magnets in "projections" attached to the spectacle frame, as taught by Sadanaga, with a reasonable expectation of success.  It was thus merely "ordinary skill and common sense" that led Chao to use "projections" on the spectacle frame in the same way as Sadanaga used them.

//

//

//

//

//

//

44

## IV.   Detailed Explanation Under 37 CFR 1.510(b)

1.     Reexamination of claim 22 is requested under 35 U.S.C. 102(a) as being anticipated by Sadanaga (Exh. 7), as shown by the following claim chart:

| Claim 22 of '545 Patent | Sadanaga |
|---|---|
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Sadagana discloses a primary spectacle frame for supporting primary lenses therein. *See* Fig. 1; *see also*, <u>Description of Practical Embodiments</u>, teaching: "The spectacles 1 with lenses consist of the front frame 9…The front frame 9 of the spectacles 1, in turn, consists of left and right lens frames 2 and a bridge 3 through which the left and right lens frames are interconnected." (page 4, lines 37-40) |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, | Sadanaga teaches "two side portion extensions … pivotally coupling a leg configured to conform to a user at a distal end thereof" as shown in Figs. 1 and 4 depicting element 4 that pivotally couple with legs. |
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | *See* Figs. 1 - 3.<br><br>*See also*, <u>Means for Solution of the Problem</u>, teaching: "said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side |

REV 02711

of the front frame of the sunglasses, the second fixing part comprises at least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part and engages with the first fixing part..." (page 3, lines 31-36)

*See also*, <u>Description of Practical Embodiments</u>, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11. The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11)

Sadanaga does not teach that the "projection members" are "attached to each of said rear sides" of the "extensions". However, Sadanaga teaches that the projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the

46

REV 02712

| | |
|---|---|
| | transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**" (page 6, lines 29-34) (emphasis added) Therefore, it is inherent in Sadanaga that the "projection members" can be "attached to each of said rear sides" of the "extensions". |
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections. *See* Figs. 2 and 7; *see also*, Description of Practical Embodiments, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b..." (page 5, lines 19-20)<br><br>Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses. However, if necessary, **the magnets can be installed in the projection members of the spectacles 1.**" (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses. | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to** |

REV 02713

<table>
<tr><td></td><td>the spectacles 1 and secured to them in the correct position… and by simply superimposing the sunglasses 11 onto the spectacles 1." (page 5, lines 34-40) (emphasis added); <em>see also,</em> Fig. 4.</td></tr>
</table>

2.      Reexamination of claim 22 is requested under 35 U.S.C. § 103(a) as being obvious over Sadanaga (Exh. 7), as shown by the following claim chart:

| Claim 22 of '545 Patent | Prior Art |
|---|---|
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Sadagana discloses a primary spectacle frame for supporting primary lenses therein. <em>See</em> Fig. 1; <em>see also,</em> <u>Description of Practical Embodiments</u>, teaching: "The spectacles 1 with lenses consist of the front frame 9…The front frame 9 of the spectacles 1, in turn, consists of left and right lens frames 2 and a bridge 3 through which the left and right lens frames are interconnected." (page 4, lines 37-40) |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, | Sadanaga teaches "two side portion extensions … pivotally coupling a leg configured to conform to a user at a distal end thereof." Figs. 1 and 4 appear to show "side portion extensions" that pivotally couple with legs. |

48

REV 02714

| | |
|---|---|
| | Regardless, extensions for pivotally coupling legs (*i.e.* temples) were common knowledge in the art. |
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | Sadanaga teaches a "projection." *See* Figs. 1 and 2.

*See also*, <u>Means for Solution of the Problem</u>, teaching: "said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of the sunglasses, the second fixing part comprises at least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part and engages with the first fixing part..." (page 3, lines 31-36)

*See also*, <u>Description of Practical Embodiments</u>, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11. The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11) |

49

REV 02715

| | |
|---|---|
| | Sadanaga does not teach that the "projection" is "attached to each of said rear sides" of the "extensions." However, Sadanaga teaches that the projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**" (page 6, lines 29-34) (emphasis added) |
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections.  *See* Figs. 2 and 7; *see also*, Description of Practical Embodiments, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b…" (page 5, lines 19-20) |
| | In Sadanaga's preferred embodiment, the magnets are secured in projections on the auxiliary spectacle frame.  *See* Figs. 2 and 7.  However, Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses.  However, if necessary, **the magnets can be installed in the** |

50

REV 02716

| | |
|---|---|
| | **projection members of the spectacles 1.**" (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses. | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to them in the correct position… and by simply superimposing the sunglasses 11 onto the spectacles 1.**" (page 5, lines 34-40) (emphasis added); *see also,* Fig. 4. |

3.     Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Nishioka (Exh. 5) in view of Sadanaga.

| **Claim 22 of '545 Patent** | **Prior Art** |
|---|---|
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Nishioka teaches a primary spectacle frame for supporting primary lenses therein. *See* Fig. 1. |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform | Nishioka teaches two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform |

51

REV 02717

| to a user at a distal end thereof, | to a user at a distal end thereof. *See* Fig. 1.<br><br>In Nishioka, the side portion extensions appear to be integral to the primary spectacle frame. *But see*, *In re Larson*, 340 F.2d 965, 968, 144 USPQ 347, 349 (CCPA 1965) (A claim to a fluid transporting vehicle was rejected as obvious over a prior art reference which differed from the prior art in claiming a brake drum integral with a clamping means, whereas the brake disc and clamp of the prior art comprise several parts rigidly secured together as a single unit. The court affirmed the rejection holding, among other reasons, "that the use of a one piece construction instead of the structure disclosed in [the prior art] would be merely a matter of obvious engineering choice.") |
|---|---|
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | Sadanaga teaches a "projection." *See* Figs. 1 and 2.<br><br>*See also*, <u>Means for Solution of the Problem</u>, teaching: "said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of the sunglasses, the second fixing part comprises at least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part |

REV 02718

and engages with the first fixing part..." (page 3, lines 31-36)

*See also*, Description of Practical Embodiments, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11.

The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11)

Sadanaga does not teach that the "projection" is "attached to each of said rear sides" of the "extensions." However, Sadanaga teaches that its projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**" (page 6, lines 29-34)

REV 02719

| | (emphasis added) |
|---|---|
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections. *See* Figs. 2 and 7; *see also,* <u>Description of Practical Embodiments</u>, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b..." (page 5, lines 19-20)<br><br>In Sadanaga's preferred embodiment, the magnets are secured in projections on the auxiliary spectacle frame. *See* Figs. 2 and 7. However, Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses. However, if necessary, **the magnets can be installed in the projection members of the spectacles 1.**" (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses. | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to them in the correct position... and by simply superimposing the sunglasses 11 onto the spectacles 1.**" (page 5, lines 34-40) (emphasis added); *see also,* Fig. 4. |

54

REV 02720

4.    Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Nishioka in view of Sadanaga, and further in view of Huang (Exh. 3).

| Claim 22 of '545 Patent | Prior Art |
|---|---|
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Nishioka teaches a primary spectacle frame for supporting primary lenses therein. *See* Fig. 1. |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, | Huang teaches two side portion extensions extending rearwardly from the primary spectacle frame and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof. *See* Fig. 1; *see also*, Description of the Preferred Embodiment (col. 2, ll. 1-27) |
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | Sadanaga teaches a "projection." *See* Figs. 1 and 2.<br><br>*See also*, Means for Solution of the Problem, teaching: "said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of the sunglasses, the second fixing part comprises at |

REV 02721

least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part and engages with the first fixing part…" (page 3, lines 31-36)

*See also*, Description of Practical Embodiments, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11.

The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11)

Sadanaga does not teach that the "projection" is "attached to each of said rear sides" of the "extensions." However, Sadanaga teaches that its projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis

56

REV 02722

| | |
|---|---|
| | – translator's note], **these projection members may occupy any other suitable positions on the respective frames."** (page 6, lines 29-34) (emphasis added) |
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections. *See* Figs. 2 and 7; *see also*, <u>Description of Practical Embodiments</u>, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b…" (page 5, lines 19-20)<br><br>In Sadanaga's preferred embodiment, the magnets are secured in projections on the auxiliary spectacle frame. *See* Figs. 2 and 7.  However, Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses.  However, if necessary, **the magnets can be installed in the projection members of the spectacles 1."** (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses. | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to them in the correct position… and** |

57

REV 02723

| | |
|---|---|
| | by simply superimposing the sunglasses 11 onto the spectacles 1." (page 5, lines 34-40) (emphasis added); *see also,* Fig. 4. |

5.   Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Nishioka in view of Sadanaga, and further in view of Lhospice (Exh. 4).

| Claim 22 of '545 Patent | Prior Art |
|---|---|
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Nishioka teaches a primary spectacle frame for supporting primary lenses therein. *See* Fig. 1. |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, | Lhospice teaches two side portion extensions extending rearwardly from the primary spectacle frame and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof. *See* Fig. 1. |
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | Sadanaga teaches a "projection." *See* Figs. 1 and 2.<br><br>*See also,* Means for Solution of the Problem, teaching: "said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of the sunglasses, |

58

REV 02724

the second fixing part comprises at least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part and engages with the first fixing part..." (page 3, lines 31-36)

*See also*, Description of Practical Embodiments, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11.

The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11)

Sadanaga does not teach that the "projection" is "attached to each of said rear sides" of the "extensions." However, Sadanaga teaches that its projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the

59

REV 02725

| | |
|---|---|
| | direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames."** (page 6, lines 29-34) (emphasis added) |
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections. *See* Figs. 2 and 7; *see also*, <u>Description of Practical Embodiments</u>, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b…" (page 5, lines 19-20) |
| | In Sadanaga's preferred embodiment, the magnets are secured in projections on the auxiliary spectacle frame. *See* Figs. 2 and 7. However, Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses. However, if necessary, **the magnets can be installed in the projection members of the spectacles 1."** (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses. | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to** |

60

| | them in the correct position… and by simply superimposing the sunglasses 11 onto the spectacles 1." (page 5, lines 34-40) (emphasis added); *see also,* Fig. 4. |

6.   Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Sadler (Exh. 6) in view of Sadanaga, and further in view of Huang.

| Claim 22 of '545 Patent | Prior Art |
|---|---|
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Sadler teaches a primary spectacle frame for supporting primary lenses therein. *See* Fig. 1. |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, | Huang teaches two side portion extensions extending rearwardly from the primary spectacle frame and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof. *See* Fig. 1; see also, Description of the Preferred Embodiment (col. 2, ll. 1-27) |
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | Sadanaga teaches a "projection." *See* Figs. 1 and 2.<br><br>*See also,* Means for Solution of the Problem, teaching: "said attachment |

61

device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of the sunglasses, the second fixing part comprises at least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part and engages with the first fixing part..." (page 3, lines 31-36)

*See also*, <u>Description of Practical Embodiments</u>, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11.

The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11)

Sadanaga does not teach that the "projection" is "attached to each of said rear sides" of the "extensions." However, Sadanaga teaches that its projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and the second projection members 5, 5,

62

REV 02728

| | which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**" (page 6, lines 29-34) (emphasis added) |
| --- | --- |
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections. *See* Figs. 2 and 7; *see also*, <u>Description of Practical Embodiments</u>, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b..." (page 5, lines 19-20)<br><br>In Sadanaga's preferred embodiment, the magnets are secured in projections on the auxiliary spectacle frame. *See* Figs. 2 and 7. However, Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses. However, if necessary, **the magnets can be installed in the projection members of the spectacles 1.**" (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through magnetic forces and can be secured |

63

REV 02729

| of said primary lenses. | to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to them in the correct position… and by simply superimposing the sunglasses 11 onto the spectacles 1.**" (page 5, lines 34-40) (emphasis added); *see also,* Fig. 4. |

7.     Reexamination of claim 22 is requested under 35 U.S.C. § 103 as being obvious over Sadler in view of Sadanaga, and further in view of Lhospice.

| Claim 22 of '545 Patent | Prior Art |
| --- | --- |
| 22. An eyeglass device comprising:<br><br>a primary spectacle frame for supporting primary lenses therein | Sadler teaches a primary spectacle frame for supporting primary lenses therein. *See* Fig. 1. |
| and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, | Lhospice teaches two side portion extensions extending rearwardly from the primary spectacle frame and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof. *See* Fig. 1. |
| each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, | Sadanaga teaches a "projection." *See* Figs. 1 and 2.<br><br>*See also,* <u>Means for Solution of the</u> |

REV 02730

|  | Problem, teaching: "said attachment device for sunglasses being characterized by the fact that the first fixing part comprises at least one first projection member on each side of the front frame of the sunglasses, the second fixing part comprises at least one second projection member that is provided on each side of the spectacles, projects to the position corresponding to the first fixing part and engages with the first fixing part…" (page 3, lines 31-36)<br><br>See also, Description of Practical Embodiments, teaching: "The first fixing part 34 consists of a pair of first projection members 14, 14 that protrude outward in the transverse direction from both sides of the front frame of the sunglasses 11.<br><br>The second fixing part 25 consists of a pair of second projection members 5, 5 that protrude outward in the transverse direction from both sides of the front frame 9 of the spectacles 1 and engage with the first projection members 14, 14 when they are aligned with the members 14, 14." (page 5, lines 4-11)<br><br>Sadanaga does not teach that the "projection" is "attached to each of said rear sides" of the "extensions." However, Sadanaga teaches that its projections are not limited to any particular location: "[A]lthough the first projection members 14, 14 and |

65

| | |
|---|---|
| | the second projection members 5, 5, which are used for attachment, extend from the front frame 9 of the spectacles 1 and from the front fame 15 of the sunglasses 11 outwards in the transverse direction [in the direction of the main transverse axis – translator's note], **these projection members may occupy any other suitable positions on the respective frames.**" (page 6, lines 29-34) (emphasis added) |
| and a pair of first magnetic members respectively secured in said projections, | Sadanaga teaches a pair of magnetic members respectively secured in the projections. *See* Figs. 2 and 7; *see also*, <u>Description of Practical Embodiments</u>, teaching: "Each first projection member 14 consists of a caulking pin 14a, a magnet 14b…" (page 5, lines 19-20)<br><br>In Sadanaga's preferred embodiment, the magnets are secured in projections on the auxiliary spectacle frame. *See* Figs. 2 and 7. However, Sadanaga states: "In the above embodiments, the magnets are shown in the first projection members 14, 14 of the sunglasses. However, if necessary, **the magnets can be installed in the projection members of the spectacles 1.**" (page 6, lines 36-38) |
| said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary | Sadanaga teaches: "Furthermore, since the first projection members 14, 14 and the second projection members 5, 5 interact through |

REV 02732

| spectacle frame are located in front of said primary lenses. | magnetic forces and can be secured to each other by merely applying the first projection members 14, 14 onto the second projection members 5, 5, **the sunglasses can be attached to the spectacles 1 and secured to them in the correct position...** and by simply superimposing the sunglasses 11 onto the spectacles 1." (page 5, lines 34-40) (emphasis added); *see also*, Fig. 4. |

## V.   Conclusion

For the foregoing reasons, reexamination of claim 22 of the '545 patent is requested.


Respectfully submitted,

TROJAN LAW OFFICES
By

Date: 4/13/09

R. Joseph Trojan, Reg. No. 34,264
Dylan C. Dang, Reg. No. 55,797
Attorneys for Requester,
Revolution Eyewear, Inc.

REV 02733