**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 09-61515-CIV-COOKE/BANDSTRA**

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.
_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS REVOLUTION EYEWEAR, INC.'S**
**AND GARY MARTIN ZELMAN'S MOTION FOR SUMMARY JUDGMENT**

**I.**     **INTRODUCTION**

      Plaintiffs Aspex Eyewear, Inc. ("Aspex") and Contour Optik, Inc. ("Contour") (collectively, "Plaintiffs") submit this brief in opposition to Defendant Revolution Eyewear, Inc.'s ("Revolution") and Gary Martin Zelman's (collectively, the "Revolution Defendants") motion for summary judgment.

      This is an action for direct patent infringement and inducement of patent infringement of Plaintiffs' reexamined U.S. Patent No. RE37,545 ("the '545 Patent"). The Revolution Defendants are direct infringers of new claims 23 and 35 of the reexamined '545 Patent at issue. The reexamination certificate for the '545 Patent issued on March 9, 2009. Claims 23 and 35 did not exist in the '545 Patent before that date. The auxiliary spectacle frames sold by the Revolution Defendants since March 9, 2009 literally infringe claims 23 and 35. Prior acts of

infringement in connection with primary spectacle frames previously sold by Revolution resulted in an earlier infringement action by Plaintiffs in California under claim 22 of the un-reexamined '545 Patent ("First Revolution Action").  Plaintiffs were granted summary judgment on infringement in the First Revolution Action and later recovered over $5 million in damages and associated interest, fees and costs based on Revolution's litigation misconduct.

The Revolution Defendants seek summary judgment on two grounds: (1) the judgment against Revolution in the First Revolution Action bars this action under the doctrine of *res judicata*; and (2) new claims 23 and 35 are not infringed.

Fed. R. Civ. P. 56 provides that a Court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the case.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id.*  As we show below, the Revolution Defendants' summary judgment motion on *res judicata* should be denied because the products and patent claims at issue in this suit were not in existence when Plaintiffs filed their Counterclaim in the First Revolution Action.  As to infringement, the Revolution Defendants' motion for summary judgment should be denied, because, as shown in Plaintiffs' pending motion for summary judgment of infringement (DE 115), Plaintiffs are entitled to summary judgment that the Revolution Defendants literally infringe claims 23 and 35 as a matter of law.

## II.    <u>ARGUMENT</u>[1]

### A.    *Res Judicata* **Does Not Bar This Action Because the Claims At Issue Here Could Not Have Been Brought In the First Revolution Action.**

Because the application of *res judicata* in this case is not unique to patent law, the law of the Eleventh Circuit applies to the disposition of this aspect of the Revolution Defendants' motion.   *Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007). Under Eleventh Circuit precedent, to invoke *res judicata*, the Revolution Defendants must satisfy four requirements:   "(1) there must be a final judgment on the merits, (2) the decision must be rendered by a court of competent jurisdiction, (3) the parties, or those in privity with them, must be identical in both suits, and (4) the same cause of action must be involved in both cases." *L.A. Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986).

The Revolution Defendants contend that they satisfy this standard because this action is based on the same claims and products that existed at the time of the First Revolution Action.  In particular, they argue that Plaintiffs "could have brought" the claims at issue here in the First Revolution Action.  This argument fails for two reasons.  First, it ignores established Eleventh Circuit precedent holding that *res judicata* only bars claims that were in existence at the time of the original complaint in the prior action or that were actually brought in the prior action. Second, it ignores that the infringement action at issue here is based on new claims 23 and 35 of the reexamined '545 patent, which did not exist during the First Revolution Action.

### 1.    *Res Judicata* **Does Not Apply Because The Products and Causes of Action For Infringement Did Not Exist When Plaintiffs Filed Their Counterclaim in the First Revolution Action**

---

[1]    Submitted with this Memorandum is Plaintiffs' Response to the Revolution Defendants' Statement of Material Facts and Statement of Additional Facts.  Rather than repeat that statement verbatim as a separate Statement of Facts, Plaintiffs incorporate by reference the facts as if cited herein and individually cite to certain of the facts as appropriate.

"[F]or res judicata purposes, claims that 'could have been brought' are **claims in existence at the time the original complaint is filed** or claims actually asserted by supplemental pleadings or otherwise in the earlier action." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357-58 (11th Cir. 1998) (emphasis added) (quoting *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992)).  "In this Circuit, therefore, *res judicata* does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001).  The law of the Federal Circuit is consistent with Eleventh Circuit law. *Gillig v. Nike, Inc.*, 602 F.3d 1354, 1363 (Fed. Cir. 2010) ("'The *res judicata* doctrine does not apply to new rights acquired during the action which might have been, but which were not, litigated.'  A plaintiff may seek leave to file a supplemental pleading to assert those claims, but 'the doctrine of *res judicata* does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim.'") (citations omitted).  This controlling precedent, which the Revolution Defendants ignore, rebuffs the Revolution Defendants' *res judicata* arguments.[2]

As the following brief history of the First Revolution Action demonstrates, it cannot be disputed that the causes of action for infringement at issue here did not exist when Plaintiffs filed their counterclaim in the First Revolution Action.  In 2002, Revolution brought the First Revolution Action against Aspex for infringement of U.S. Patent No. 6,343,858. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1363 (Fed. Cir. 2009).  On September 10, 2002, Aspex answered Revolution's Complaint and, with Contour, counterclaimed against Revolution for infringement of the '545 Patent based on Revolution's sales of certain magnetic

---

[2] The cases cited by the Revolution Defendants from other Circuits precluding subsequent claims because they "could have been," but were not, brought in a prior action are contrary to Eleventh Circuit precedent and should, therefore, be disregarded.

clip-on eyewear. *Id*. In April 2007, the Court granted Plaintiffs' motion for summary judgment that Revolution literally infringed Claim 22 of the '545 Patent, and denied Revolution's motion for summary judgment that Claim 22 is invalid. *Id*. at 1364.

At or around the time of the Court's summary judgment ruling in April 2007, Revolution redesigned its existing product line with "New Designs" -- namely, designs where the magnets are ***embedded*** in the primary eyeglass frame, rather than being secured in ***projections.*** Zelman Decl., ¶3 (Ex. 1 to Revolution's Concise Statement of Material Facts). Plaintiffs did not amend their counterclaim to incorporate these New Designs, nor could they have reasonably been expected to, given the late procedural stage of the First Revolution Action by this point, in which only the amount of Plaintiffs' damages remained to be determined. Hanle Decl., Ex. R. Thus, because Plaintiffs could not have included the New Designs in their original counterclaim, which was filed in 2002, and Plaintiffs did not amend their counterclaim to include the New Designs, pursuant to *Pleming* and *Piper Aircraft*, the judgment in the First Revolution Action does not preclude Plaintiffs' claims as to the New Designs because these claims.[3]

## 2. ***Res Judicata* Does Not Apply Because New Claims 23 and 35 Did Not Exist At the Time of the First Revolution Action**

It is axiomatic that "*res judicata* does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1299 (11th Cir. 2001). Several courts have applied this concept in patent infringement actions in refusing to apply the bar of *res judicata* to subsequent litigation between parties arising from patents that covered separate and distinct inventions. *See,*

---

[3]   Because Plaintiffs could not have brought the claims at issue here in the First Revolution Action, it is unnecessary to analyze whether the products at issue here are "essentially the same" as the products in the First Revolution Action. Rev. Br. at 13-15.

*e.g., Kearns v. General Motors Corp.*, 94 F.3d 1553, 1556-57 (Fed. Cir. 1996); *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 1999 WL 33244568 *1 (N.D. Cal. May 17, 1999).[4]

As discussed above, the causes of action for patent infringement in this action concern new claims 23 and 35 of the reexamined '545 Patent. It is undisputed that those claims did not exist until March 2009 -- over 13 months after the judgment against Revolution in the First Revolution Action. The "claim 23" that existed at the time of the First Revolution Action is not the same patent claim as claim 23 at issue here, as claim 23 was amended in March 2009 as a result of a reexamination before the U.S. Patent and Trademark Office and is thus a new claim. Turk-Moore Decl. Ex. 2. Moreover, Plaintiffs allege that the Revolution Defendants infringe new claim 35 of the reexamined '545 Patent, which was first issued in March 2009 and therefore did not exist in any prior version at the time of the First Revolution Action. *Id*. It is inconceivable how Plaintiffs could be precluded from alleging infringement of these new patent claims based a litigation that ended over a year before the claims even came into being.

The Revolution Defendants attempt to circumvent the effect of the reexamination by arguing that, because the reexamined '545 patent is narrower in scope than the original '545 patent, the reexamination should have no *res judicata* effect. This precise argument was rejected by the Tenth Circuit Court of Appeals in *Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885 (10th Cir. 1979). In *Plastic Container*, a prior court ruled that the plaintiff's patent was invalid. After that decision was entered, the patent was reexamined and reissued, and plaintiff brought an infringement claim as to the new claims in the reissued patent. Defendant argued that the invalidity ruling should have collateral estoppel effect because the patent claims at issue were

---

[4]   *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, 2205 WL 1869342 *2 (N.D. Cal. Aug. 5, 2005), which is cited in the Revolution Defendants' brief, is distinguishable because it appears to involve patents that covered separate and distinct inventions.

identical "except for slight differences of wording."  The Tenth Circuit rejected that argument because "the public interest in upholding valid patents, including reissued patents, outweighs the public interest underlying collateral estoppel where the issue or issues in each action are not substantially identical."  *Id.* at 894.  Accordingly, the Tenth Circuit recognized that its "review must take into account the differences between the claimed inventions of the" reissued patent and the original patent.  *Id.* at 895.  Although the new claims in the '545 Patent are the result of a reexamination rather than a reissue, the same logic of *Plastic Container* applies here.

As the Revolution Defendants admit, claim 23 changed after the reexamination, and claim 35 was added as a result of the reexamination.  Rev. Br. at 10.  These additions ***changed the scope*** of the claims, and it is incumbent upon the Court to "take into account the differences" between the original '545 patent claims and the reexamined '545 patent claims.  Thus, contrary to Revolution's assertion, the fact that new claim 23 is "narrower" than old claim 23 as a result of the reexamination does not invoke the *res judicata* doctrine under *Plastics Container*.

The Revolution Defendants' citation to *Hoffman v. Wisner Classic Mfg. Co.*, 927 F. Supp. 67 (E.D.N.Y. 2003), does not change this result.  First, *Hoffman* is unpersuasive because it is inconsistent with *Plastic Container*, a prior Circuit Court decision that the *Hoffman* court failed to distinguish.  Second, *Hoffman* is distinguishable because (i) the plaintiff in that case sought to bring a subsequent action for infringement of the reexamined patent on the same products and same patent claims at issue in the prior action; and (ii) the reexamined patent did not include any new claims.  Here, by contrast, this suit involves New Designs that were not at issue in the First Revolution Action, and involves a patent claim (claim 35) that was not at issue in the First Revolution Action.  Thus, unlike the plaintiff in *Hoffman*, Plaintiffs here are not attempting to take a "second bite at the apple."

### 3.   The Revolution Defendants' Compulsory Counterclaim Argument is Illogical And Meritless

In a last-ditch effort to preclude Plaintiffs' claims, the Revolution Defendants contend that Plaintiffs were required to bring the causes of action for infringement at issue here as compulsory counterclaims to Revolution's counterclaim alleging that it did not infringe any claim of the '545 Patent.

As an initial matter, this argument defies logic.  How could Plaintiffs have brought the infringement causes of action at issue here as compulsory counterclaims, when neither the New Designs, nor claims 23 and 35 of the '545 Patent, existed in February 2003 when Plaintiffs replied to Revolution's counterclaim, which was asserted as a counterclaim to Plaintiffs' counterclaim?  They could not have.  As discussed above, it is undisputed that the New Designs at issue in this case were not introduced until around April 2007 -- four years after Plaintiffs replied to Revolution's counterclaim in the First Revolution Action.  Similarly, new claims 23 and 35 of the reexamined '545 Patent, the only claims at issue here, did not exist until March 2009, *six years after* Plaintiffs replied to Revolution's counterclaim in the First Revolution Action.  Thus, it was literally impossible for Plaintiffs to bring a further counterclaim on these new products and new patent claims in the First Revolution Action.

The Revolution Defendants' argument also is directly at odds with the plain language of Fed. R. Civ. P. 13(a), which states, "A pleading shall state as a counterclaim any claim which *at the time of serving the pleading* the pleader has against any opposing party . . . ."  (Emphasis added).  The logic behind this requirement is obvious:  a party cannot bring a counterclaim that did not exist at the time that the original pleading was filed.  Accordingly, the Revolution Defendants' compulsory counterclaim argument should be rejected.

Finally, accepting the Revolution Defendants' argument would engender endless counterclaims in patent cases. According to the Revolution Defendants, the First Revolution Action would have proceeded as follows: Revolution files a complaint for infringement of the '848 Patent; Plaintiffs file a counterclaim for infringement of certain claims in the '545 Patent; Revolution files a counterclaim for noninfringement of the '545 Patent; Plaintiffs file a counterclaim for infringement of any other claim of the '545 Patent; etc. This potentially endless pleading nightmare could not have been intended by the drafters of Fed. R. Civ. P. 13(a).

**B.     Revolution's Accused Products Infringe Claims 23 and 25 of the '545 Patent**

Revolution's non-infringement argument can be distilled to two basic points: (1) claims 23 and 35 should be construed to require that "the arms and magnetic members of the auxiliary frame are adapted to reach across the top [of a primary frame]" (Rev Br. at 16), and (2) the arms of the Revolution auxiliary frames are not adapted to reach across the top because the auxiliary frames are sold in conjunction with Revolution primary frames in which the arms of the auxiliary frames reach across the bottom of the primary frame. Rev Br. at 18.[5] Both points are required to make out Revolution's non-infringement defense. But both points are wrong. Accordingly, the Court should grant Plaintiffs' motion for partial summary judgment of infringement for the reason set forth in Plaintiff' the moving brief and supporting declarations.

**1.     The Revolution Auxiliary Frames Literally Infringe Claims 23 And 35 Even Under Revolution's Claim Construction Because Its Auxiliary Frames Are Adapted to Extend Across The Top Of A Primary Frame**

The declaration of Plaintiff's expert Lee Zaro establishes that Revolution's accused products literally infringe new claims 23 and 35 of the reexamined '545 Patent whether

---

[5]  Revolution's non-infringement arguments do include other elements, such as whether or not its auxiliary frames have downwardly facing horizontal magnet surfaces, but, as discussed below, these other elements all relate to the same concept of whether Revolution's auxiliary frames are adapted to reach across the top of a primary frame.

Revolution's accused auxiliary frames are top-mounted or bottom-mounted to a primary frame Declaration of Lee Zaro submitted in support of Plaintiffs' motion for partial summary judgment. Revolution's contrary contention stems from:  (1) its flawed legal premise that its auxiliary frame is not adapted to extend across the top of "*a* primary frame" simply because it extends across the bottom of the particular primary frames that Revolution sells in conjunction with the auxiliary frames, and (2) its deliberate disregard of the Mr. Zaro's declaration testimony and expert analysis (which was earlier provided to Revolution in his expert report).

### a.   The Functional Adaptability Of Revolution's Auxiliary Frames Governs Over The Commercial Use Of Its Auxiliary Frames

Claims 23 and 35 covers an auxiliary frame in which the arms and magnetic members are "adapted to extend across respective side portions of *a primary frame*."  Turk Moore Decl., Ex. 2.  Adding Revolution's further claim limitation that this adaptability must be across the top of the primary frame does not change the fact that claim 23 does not require that the auxiliary frame must be adapted to engage any particular primary frame -- such as Revolution's primary frame. Rather, claims 23 and 35 simply require that the auxiliary frame be adapted to perform the functions described in the claims when engaged with "*a* primary frame"

The seminal case on the infringement of patent claims containing adaptability or capability language is *Intel Corp. v. U.S. Int'l Trade Com'n,* 946 F.2d 821 (Fed. Cir. 1991).  In *Intel,* the patent claimed an EPROM memory chip with page mode addressing capability.  The claim at issue required "programmable selection means."  The infringer argued it did not infringe because:  (1) although its chips were capable of being programmed to perform the claimed page mode addressing, the chips "were never sold to operate in page mode"; (2) "no customer was ever told how to convert the chip to page mode operation"; and (3) "an alleged infringer must intend its parts to be used in an infringing fashion."  *Id.* at 832.

The Federal Circuit disagreed:   "Because the language of claim 1 refers to *'programmable* selection means' and states 'whereby ***when*** said alternate addressing mode is selected', the accused device, to be infringing, need only be capable of operating in the page mode.  Contrary to [the infringer's] argument, actual page mode operation in the accused device is not required."  *Id*. (emphasis added).  The Court further ruled that "there is no intent element to direct infringement," and that the authority relied upon by the infringer dealt "with induced and contributory infringement and is therefore inapposite." *Id.*

"Adapted" to perform a function is not analyzed any differently than "capable" of performing a function.  In *R.A.C.C. Industries, Inc. v. Stun-Tech, Inc.,* 178 F.3d 1309, 1998 WL 834329 (Fed. Cir. 1998), the patent was directed to remotely activated stun belts for restraining prisoners.  The claims at issue required the belt to be "***adapted*** for concealment beneath garments ordinarily worn by ordinary persons," and "concealable beneath said appropriate clothing of said prisoner."  *Id.* at 2 (emphasis added).   The District Court granted summary judgment of infringement to RACC.  On appeal, Stun-Tech argued non-infringement for the following reasons:  (1) the claims required actual concealment during actual use; and (2) Stun-Tech's belts were "primarily used in open prisoner transport situations often in combination with handcuffs and shackles -- far from a concealment situation."  1998 WL 834329, *2.  Citing *Intel,* the Federal Circuit affirmed the District Court, ruling that the claims did not require actual concealment, but only the ability of being concealed:  "Claim 1 recites a mounting means 'adapted for concealment' while claim 4 recites a 'means concealable beneath said appropriate clothing.'  *Id.*  In short, the adaptability language in claims 1 and 4 broadened the scope of the claims to include devices adaptable to being concealed, whether or not the devices were actually concealed in use.

Indeed, this concept is not a new one for either of the parties.  The scope of a claim containing capability-type language was before the Federal Circuit in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 563 F.3d 1358 (Fed. Cir. 2009), which was the appeal of the California case discussed so extensively in Revolution's motion.  That case involved the scope of claim 22 of the '545 Patent, which is directed to a primary frame.  The disputes was over the interpretation of the language "said first magnet members [of a primary frame] capable of engaging second magnetic members of an auxiliary spectacle frame."  There, similar to here, Revolution argued that there was "no infringement because Revolution's primary frame is not capable of being top-mounted with its counterpart auxiliary frame or any commercially sold auxiliary frame."  *Id.* at 1369.  The Federal Circuit rejected Revolution's argument and reaffirmed *Intel*, stating:

> Revolution's argument misses the point.  Claim 22 recites "said first magnetic members ***capable*** of engaging second magnetic members of an auxiliary spectacle frame. … Just like the accused products in *Intel*, Revolution's primary frames, although not specifically designed or sold to be used with top-mounting auxiliary frames, are nevertheless capable of being used in that way -- the three specially made auxiliary frames proved so.  It is irrelevant that Revolution's auxiliary frames, or any other commercially available auxiliary frames, are not actually used in a top-mounting configuration or cannot be so used.

*Id.* at 1369-70.

The exact same reasoning applies here.  Revolution cannot avoid infringement through its half-hearted contention that new claims 23 and 35 do not have similar "capable of engaging" language because they use the term "adapted" instead.  Rev Br. at 7.  Adapted cannot be construed to mean that auxiliary frame must be engaged to any particular primary frame.  Moreover, the Federal Circuit's decision in *R.A.C.C. Industries* demonstrates the same capability concept applies to a claim that uses the terminology "adapted" rather than "capable of."

> **b.      Revolution's Auxiliary Frames Are Adapted To Extend Across The Top Of A Primary Frame**

Plaintiffs have shown here that the arms and magnetic members of the Revolution auxiliary frames are adapted to extend across the top of "a primary frame" by constructing "a primary frame" in which the arms and magnetic members of the unmodified Revolution auxiliary frame extend across the top of "a primary frame." *See* Ifergan Decl. ¶¶ 2-5 (describing the construction of the primary frames); Zaro Decl. ¶ 8 (at pg. 13) (showing that Revolution's auxiliary frames are adapted to extend across the top).[6]  This engagement is shown in the picture below:



Revolution's auxiliary frames are adapted to engage either the bottom or the top of a primary frame because the magnetic members have horizontal surfaces that are both upward and downward facing.  Shown below are two photographs showing different views of a Revolution auxiliary frame, which are set out in the Zaro Decl. ¶ 8 (pgs. 8-9).  The left side is a top view showing the upward facing surfaces and the right side is a bottom view showing one of the downward facing surfaces.  Both top and bottom surfaces have magnetic attraction and thus are adapted to engage the top or bottom of a primary frame.

---

[6]   The Ifergan Declaration and Zaro Declaration were submitted in support of Plaintiffs' motion for partial summary judgment.

 

The only difference between the upward and downward facing horizontal surfaces of the Revolution auxiliary frames is that the downward facing surfaces have an epoxy coating. But this coating does not block the magnetic attraction. Zaro Decl. ¶ 8 (at pg. 9) (epoxy coatings are used for decorative purpose and do not impede magnetic attraction). Thus, like their adaptability arguments, Revolution's non-infringement contention that their auxiliary frames do not contain magnetic members having horizontal surfaces that are downwardly facing is simply wrong.

Plaintiffs have shown that the Revolution products meet all the elements of Claims 23 and 35 even under the Revolution's claim construction. *See* Zaro Decl., ¶ 8 (showing how the Revolution products meet each and every limitation of claims 23 and 35 even under the defendants' claim construction). Summary judgment of infringement should be granted in favor of Plaintiffs.

## 2. Claims 23 and 35 Should Not Be Limited To Arms Adapted To Extend Across The Top Of A Primary Frame

### a. The California Court's Construction Is Not Binding Or Applicable To This Case

Revolution contends that this Court must construe new claims 23 and 35 to be limited to auxiliary frames with arms and magnetic members adapted to extend across the top of a primary frame as a consequence of a California court's construction of entirely different claims containing some overlapping language to the claims at issue here. Revolution is wrong.

A prior court's claim construction is generally not considered binding even when it involves the exact same claims.  *800 Adept, Inc. v. Murex Securities, Ltd.,* 2006 WL 2228925, *13 (M.D. Fla. April 3, 2006) ("Although the Court recognizes that a uniform treatment of claim construction is desirable, the claim construction of another district court in no way binds this Court under the instant circumstances."); *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 2006 WL 1751779, *3-4 (E.D. Tex. June 21, 2006) (finding that prior construction of same claim is not binding); *Nilssen v. Motorola, Inc.,* 80 F. Supp. 2d 921, 924 n. 4 (N.D. Ill. 2000) (same); *Texas Instruments, Inc. v. Linear Techs. Corp.,* 182 F. Supp. 2d 580 (E.D. Tex. 2002) (same). Not surprisingly, Revolution fails to cite to a single case in which a Court held that an earlier construction of certain words in different claims is binding.[7]

Indeed, the inapplicability and inappropriateness of simply cutting and pasting the construction of a word in one claim and applying it to a word in another claim, without consideration of the differences and nature of the respective claims, is illustrated by the fact that California Court rejected the same kind of cut and paste argument Revolution is making here. There, Revolution argued that construction of "magnetic members" in claim 6, which was a combination claim (*i.e.*, a claim covering a primary and auxiliary combination), should govern the Court's construction of "magnetic member" in claim 22.  The Court rejected the argument:

---

[7]   The cases cited by revolution for the proposition that the California Court's claim construction is binding are not on point.  *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999), held that "a claim term cannot be given a different meaning in the various claims of the same patent."  But that case involved one particular court's construction across several claims.  It did not even address the issue of whether one court's claim construction was binding on another court.  *Del Mar Avionics, Inc. v. Quinton Instr. Co.*, 836 F.2d 1320 (Fed. Cir. 1987), did not hold that the prior claim construction was binding.  Rather, the *Del Mar* Court analyzed the prior court's claim construction and the arguments raised by the parties and independently concluded that "we have been shown no error in the Washington district court's construction of the '934 claims in accord with that of the prior adjudications."  *Id.* at 1324.

> Although the Court did state in its Claim Construction Order that the first magnetic members, located in the primary frame, must each have an upwardly facing surface, and the second magnetic members, located in the auxiliary frame, must each have a downwardly facing surface, that construction was in relation to claim 6 and not to claim 22 of the '545 Patent.

August 7, 2003 Order at 15:22 to 16:1 (Becerra Opp. Decl., Ex. 15) .

In any event, as shown, Revolution's products literally infringe new claims 23 and 35 even under Revolution's construction of the "arms adapted to extend across the top" limitation.

### b. The Court Should Construe Claims 23 and 35 To Cover Auxiliary Frames In Which The Arms Are Adapted To Extend Across The Top Or The Bottom Of The Primary Frames

Plaintiffs previously set out their construction of the disputed claim elements and why it is improper for the Court to limit claim language to embodiments disclosed in the patent and incorporates those arguments herein by reference.  Pls. Moving Br. at 7, 10-11 and 13-16. Plaintiffs will not repeat all those arguments here but will respond to certain additional arguments by Revolution.

A significant aspect of Revolution's arguments that the claim should be limited to "top-mounted" is their contention that the patent does not show an auxiliary frame in which the arms are extended across the bottom of a primary frame.  But an important distinction with respect to claims 23 and 35 and many of the other claims in the '545 Patent is that claims 23 and 35 are directed to an auxiliary frame only and not the combination of an auxiliary and primary frame.

The auxiliary frame is shown at Figure 4 of the '545 patent and pictured below along with a picture of Revolution's primary (Zaro Decl., ¶ 8 [at pg. 5]):



FIG.4



Figure 4 shows an auxiliary frame with arms (21) and magnetic members (22) that are adapted to extend across the top or bottom of a primary frame.   Like the Revolution auxiliary frame pictured above, its a top view of an auxiliary frame so the magnetic members disclosed therein show an upwardly facing surface (which is adapted to engage the bottom of a primary frame) in addition to a downwardly facing surface (which is adapted to engage the top of a primary frame).

Thus, just like the words in claims 23 and 35, the auxiliary frame shown in the '545 patent's specification does not contain a limitation as to whether it has to engage the top or bottom of a primary frame.  The Court should not read such a limitation into the claim.

Even Revolution concedes that its products infringe if claims 23 and 35 are construed as written because all their non-infringement defenses are based on adding limitations not found in the claims.  Accordingly, the Court should also grant partial summary judgment of infringement based on a proper construction of claim 23 and 35 that does not read into the claims limitations not found in the claims.

III.   **CONCLUSION**

For the above reasons, the Revolution Defendants' motion for summary judgment should be denied.


Dated:   June 14, 2010

Respectfully submitted,

By: _____

Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

and

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.*
*and Contour Optik, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this <u>14th</u> day of June 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/EFC or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

<u>/s/Jacqueline Becerra</u>
JACQUELINE BECERRA

**SERVICE LIST**

Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants Hardy Way, LLC,
Revolution Eyewear, Inc. and Gary Martin
Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants Revolution
Eyewear, Inc. and Gary Martin Zelman*
MIA 226,923,940v1 6-14-10

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants
Marchon Eyewear, Inc. and Nike, Inc.*