UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

   Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,

   Defendants.
_____/

**DEFENDANT MARCHON EYEWEAR, INC.'S RESPONSE MEMORANDUM IN OPPOSITION TO PLAINTIFFS ASPEX EYEWEAR, INC.'S AND CONTOUR OPTIK, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. INTRODUCTION

In its effort to show infringement of Claims 23 and 35 of the '545 Patent, Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc. (collectively "Aspex" or "Plaintiffs") misconstrue Claims 23 and 35, completely ignore an earlier binding California Court's claim construction of the same '545 Patent, and confuse the terms "construing" and "read out" with respect to claim construction principles. As set forth below, Plaintiffs' motion for partial summary judgment should be denied.

Marchon's bottom-mounted auxiliary frames do not infringe Claims 23 and 35 of the '545 Patent. It is undisputed that Marchon's products are bottom-mounted products. When the Marchon auxiliary frames are placed on top of a Marchon primary frame, the respective lenses are

not aligned, the nose bridges are misaligned, and the auxiliary frame is unstable and readily falls off of the primary frame. See Section III, Figures 2 and 4 below. Most telling, and further evidence of Marchon's non-infringement, Plaintiffs were required to make a special litigation-motivated primary frame to try and prove infringement. See Section III, Figure 5A below. They failed. Even with this non-Marchon primary frame, the auxiliary frames still fall off and are not securely attached. Amazingly, Aspex's brief fails to properly inform this Court that this litigation-created primary eyeglass frame is not a Marchon Product, was not made by Marchon, and was not sold by Marchon.

Aspex's arguments and tactics should be totally rejected. Marchon's pending motion and brief supporting summary-judgment of non-infringement (DE 102-109) demonstrate how, under either a claim construction by this Court or an earlier California Court's claim construction, Marchon's eyeglass products do not infringe the '545 Patent. Accordingly, this Court should deny Plaintiffs' motion for partial summary judgment of infringement in its entirety. This was a baseless case when brought, continues to be, and attorneys' fees and other costs are appropriate here.

## II. DISPUTED AND UNDISPUTED FACTS

Disputed facts which provide a basis for denial of Plaintiffs' Motion for Partial Summary Judgment are set forth in Defendant Marchon Eyewear, Inc.'s Response to Plaintiffs Aspex Eyewear, Inc.'s and Contour Optik, Inc.'s Statement of Material Facts filed herewith, and referenced below. The undisputed facts set forth in Marchon's Motion for Summary Judgment and Statement of Undisputed Material Facts (DE 102-109) and supporting evidence are incorporated herein by reference. There are no material facts in dispute preventing this Court from a ruling of non-infringement in Marchon's favor as to Claims 23 and 35 of the '545 Patent.

### III. ARGUMENT

Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). Thus, the task is to determine whether, considering the evidence in the light most favorable to the non-moving parties, there is evidence on which a jury could reasonably find a verdict in their favor. See Liberty Lobby, 477 U.S. at 251; Hilburn, 181 F.3d 1220, 1225 (11th Cir. 1999); Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). As set forth below, summary judgment for Plaintiffs is inappropriate.

Aspex asserts that the accused Marchon products contain every element of Claims 23 and 35. They don't. At least three (3) elements of Claims 23 and 35 are missing. Accordingly, there can be no infringement of Claims 23 or 35. As set forth in detail in Marchon's brief supporting its summary judgment motion (DE 102) and again in this brief, the correct finding is that Marchon's accused products (Flexon, Nike, and Calvin Klein styles) do not infringe Claims 23 and 35 of the '545 Patent.[1] However, should the Court somehow accept Plaintiffs' overly-broad and unsupported claim construction and ignore the binding California constructions of similar claim terms, there would exist genuine issues of material facts precluding a finding of summary judgment. In either event, this Court should deny Aspex's motion.

**A.   Marchon's products do not contain all the elements of Claims 23 and 35**

The necessary steps and requirements to show infringement were set forth in Marchon's brief supporting its summary judgment motion of non-infringement (DE 102) and will not be

---

[1] In an effort to not burden the Court with multiple copies of the same exhibits, many of the exhibits referenced in this brief have been previously submitted with Marchon's Motion for Summary Judgment and Appendix filed under seal (DE 102-109) (collectively these exhibits are referred to herein as DE 102 App. Ex "_").

3

repeated here. However, a showing of infringement requires that each and every element in a claim be present in the accused the product. Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316, 1330 (Fed. Cir. 2001). That is not the case here. At least three (3) claim elements are missing in Marchon's products. Any one of the missing claim elements alone defeats Aspex's claims of infringement. A finding of non-infringement is warranted in this case.

Put simply, the alleged invention of the '545 Patent and its corresponding claims cover only top-mounting auxiliary eyeglass frames. Marchon designs and sells only bottom-mounting auxiliary eyeglass frames. More specifically, Claims 23 and 35 have limitations that, when properly construed, as has already been done by a California Court, require the claimed auxiliary frames be top-mounting. Marchon's products are not top-mounting. Marchon's products do not satisfy or meet the following Claim 23 limitations:

> "…each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface…";
>
> "…said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame…"; and
>
> "…so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame...."

Accordingly, Marchon's products do not contain each and every element of Claim 23, thus there can be no infringement. As Claim 35 depends on Claim 23 and imports these same three limitations, there can be no infringement of Claim 35 either.

### 1. The '545 Patent is limited to a top-mounting design

Since the 1970's, many patents have issued to multiple patent owners relating to different methods and devices used for attaching auxiliary eyeglass frames to a primary eyeglass frame. Each of these patents are directed to different ways to attach an auxiliary frame to a primary

frame. The '545 Patent is tailored to a specific way of supporting the arms of the auxiliary frames <u>on</u> the upper portion of the primary frame by <u>top-mounting</u>.[2]

Deposition testimony in this case further supports Marchon's proposed construction. Inventor Richard Chao testified that he never thought of a bottom-mounted magnetic clip-on until <u>after</u> he saw a co-defendant Revolution's bottom-mount magnetic clip-on, at some point in the last four years. <u>See</u> DE 102 Undisputed Facts at ¶ 39; <u>see also</u> DE 102 App. Ex. "J" at 141-42. In fact, Richard Chao also testified at the time of his "invention" that a bottom-mounted design such as Marchon's would not even work. Available magnets at that time of his "invention" were not strong enough to hold an auxiliary frame to the <u>bottom</u> of a primary frame. <u>See</u> DE 102 Undisputed Facts at ¶¶ 43-44; <u>see also</u> DE 102 App. Ex. "J" at 66. The intended purpose of the '545 Patent was to support and prevent auxiliary frames from falling off of a primary frame. The '545 Patent includes a summary of the invention, which states as follows: "The primary objective of the present invention is to provide auxiliary lenses which may be stably secured and <u>supported on</u> the frames." <u>See</u> DE 102 App. Ex. "A" at col. 1, lines 42 – 44 (emphasis added). Bottom-mounted designs (i) were not contemplated by inventor Chao, (ii) were not disclosed, (iii) were not claimed, and, according to Chao, (iv) would not have worked at the time. Any litigation-motivated attempts by Aspex to argue that the '545 Patent somehow now covers bottom-mounted designs should be rejected.

---

[2] In construing the claims of the '545 patent, the California Court in <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc. et al.</u>, Case No. 02-1087 (C.D. Ca.) (the "California case") correctly held that "the invention disclosed in the '545 patent is limited to a top-mounting design." <u>See</u> DE 102 App. Ex. "E" at 32. The California Court held that the '545 Patent "invention described is clearly for a top-mounting design: the written description <u>only</u> describes a top mounting design, the drawings <u>only</u> show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned <u>anything other than a top-mounting design</u>." <u>See</u> DE 102 App. Ex. "E" at 31 (emphasis added). The Federal Circuit agreed with the California district court's claim construction. <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.</u>, 563 F. 3d 1358, 1368 (Fed. Cir. 2009).

Plaintiffs argue in their brief (DE 115) that Marchon is attempting to "read out" possible broader constructions of Claim 23. These arguments should be rejected in their entirety. The '545 Patent only discloses top-mounting configurations. There has been no attempt to "read out" other clip-on configurations. In Bell Atlantic Network Servs., Inc. v. Covad Communs. Group, Inc., 262 F.3d 1258, 1271 (Fed. Cir. 2001), the Federal Circuit addressed whether the district court had correctly construed the claim term "mode" by construing it to the embodiments described in the detailed description. Following a thorough review of the patent and all references to the term "mode," the Federal Circuit held that the claims were not entitled to any broader scope. Id. at 1270-73. The same is true here with respect to the terms of Claim 23. The California Court conducted a similar examination with respect to the '545 Patent and found that the '545 Patent is limited to top-mounting designs. See DE 102 App. Ex. "E" at 32. Whether bound by this analysis or not, this Court should come to the same conclusion that the '545 Patent is directed to only top-mounting designs.

> 2. **Marchon's products do not contain "each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"**

Claims 23 and 35 require as a claim element that "each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface." This limitation, when construed in view of the '545 Patent specification and drawings (intrinsic record) must mean that the "horizontal surface" refers to a "downwardly facing magnetic surface." The magnets of the auxiliary frames of the accused Marchon products do not have a downwardly facing surface.

Plaintiffs argue that the term "magnetic member having a horizontal surface" should be construed to include "horizontal surfaces that face upwards and downwards." (emphasis added).

6

This construction cannot be supported by the '545 Patent. The '545 Patent simply does not teach or disclose horizontal surfaces that "face upwards." Apparently recognizing their problem, Plaintiffs allege that Marchon has attempted to "read out" of Claim 23 horizontal surfaces of the magnetic members that face upwards. However, contrary to Plaintiffs' assertions, there is absolutely nothing to "read out" of the claim, as the '545 Patent offers no support whatsoever for anything other than a downwardly facing surface. The horizontal surface of the '545 Patent auxiliary magnet is <u>only</u> a downwardly facing surface. <u>See</u> DE 102 App. Ex. "A" passim.

At page 11 of Plaintiffs' brief (DE 115) the alleged "support" for the idea that the magnetic surfaces can face "upwards or downwards" is a reference to Figure 3 of the '545 Patent. This is absurd. First, '545 Patent Figure 3 is the <u>primary</u> frame. The Claim 23 element here refers to the magnets <u>on</u> the <u>auxiliary</u> frame. Since there is no figure in the '545 Patent that shows an "upwardly" facing magnet on the auxiliary frame, let alone any description or other teaching in the specification, Plaintiffs' proposed construction should be rejected.

Moreover, inventor Richard Chao, when testifying about his invention at his deposition, stated that the magnet of the auxiliary frame in the '545 Patent extends "<u>downward</u>" toward the primary frame, i.e., his invention is limited to only a <u>top-mounted</u> <u>configuration</u>. <u>See</u> DE 102 Undisputed Facts at ¶ 41-42; <u>see</u> <u>also</u> DE 102 App. Ex. "J" at 33. This is the correct claim construction for the horizontal surface of the auxiliary frame magnets.

Consistent with the inventor's own testimony and more specifically with the '545 Patent's specification and drawings, this Court should construe the "horizontal surface" claim limitation regarding the magnetic members of the auxiliary frame to mean that the magnetic member has a <u>downwardly</u> facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame. Consistent with Marchon's proposed

construction, the California Court construed a magnetic member having a horizontal surface as "having a <u>downwardly</u> facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame." <u>See</u> DE 102 App. Ex. "E" at 32 (emphasis added). Similarly, the California Court further construed "horizontal surface" of the magnetic member in the <u>primary</u> <u>frame</u> to mean having "an <u>upwardly</u> facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame." <u>See</u> <u>Id</u>. at 31 (emphasis added).[3] These <u>same</u> limitations are found in pending Claim 23 and the California Court's constructions should be binding in this case. Plaintiffs' failure to even mention the California Court's ruling to which they were parties is most telling. The positions advanced here by Plaintiffs are diametrically opposed to what the California Court and the Federal Circuit found. This Court should reject Plaintiffs' improper constructions.

The Federal Circuit agreed with the California Court's claim construction Order, specifically stating "We agree with the district court that, in pointing out the two deficiencies in the prior art, Chao disclaimed an auxiliary frame that is not stably supported in the <u>top-mounting</u> configuration and a primary frame that has embedded magnetic members." <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.</u>, 563 F. 3d 1358 (Fed. Cir. 2009) (emphasis added). Plaintiffs cannot ignore these previous binding claim constructions and their applicability to this case.

---

[3] Claims 6, 22, and 34 were at issue in the California case. Based on the doctrine of issue preclusion and fundamental claim construction law, the nearly identical language of Claim 23 must be construed consistently by this Court. Plaintiffs failed to inform this Court that Revolution prevailed on summary judgment and that its bottom-mounted products did <u>not</u> infringe claims 6 and 34. Likewise, summary judgment of non-infringement is appropriate for Marchon's bottom-mounted designs in this case.

Irrespective of whether this Court adopts the California Court's claim constructions or undertakes its own constructions, this Court should find that the '545 Patent is limited to a top-mounting design.[4]

Bottom-mounted designs <u>do not meet</u> the limitations of Claims 23 and 35. This Court should find that Claims 23 and 35 are not infringed by Marchon's bottom-mounted products. Moreover, Plaintiffs, on page 12 of their brief, admit that the downwardly facing surface of the arms having a rearwardly directed free end comprises an "epoxy coating" and not a magnetic member. In an attempt to mitigate this admission, Plaintiffs attempt to convince this Court that epoxy coatings do not impede the magnetic properties of the downwardly facing surface of the magnets in the auxiliary spectacle frame. Not only is this factually incorrect, it is also a genuine issue of material fact. Marchon's and Revolution's expert, Joel Sodano, has opined that the epoxy <u>does</u> impede magnetic properties. <u>See</u> Expert Report of Joel Sodano at ¶ 49 (App. Ex. "1").[5]

As stated above, Claims 23 and 35 are not infringed by Marchon's bottom-mounted products on the basis that the '545 Patent is limited to top-mounted designs and because the '545 Patent completely fails to disclose or claim any other configured products. In the event that this Court does not accept Marchon's positions and also rejects the California Court's construction, the issue of whether the epoxy coatings impede the magnetic properties of the downwardly facing surface of the magnets creates a trialworthy factual issue.

---

[4] Should this court choose not to adopt the California Court's claim construction, which Marchon asserts is dispositive, Marchon requests that this Court undertake its own construction pursuant to <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967 (Fed. Cir. 1995), <u>aff'd</u>, 517 U.S. 370 (1996).

[5] Filed concurrently with this opposition is an Appendix in Support of Defendant Marchon Eyewear, Inc.'s Memorandum of Law in Opposition to Plaintiffs Aspex Eyewear, Inc.'s And Contour Optik, Inc.'s Motion for Partial Summary Judgment (App. Ex "_").

### 3. Marchon's products do not contain "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame"

Claims 23 and 35 require that "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame." The arms of the auxiliary frames of the accused Marchon products are not adapted to extend <u>over</u> side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic member surfaces on a primary frame, as those claim elements are properly construed. Instead, the arm-like structures of the auxiliary frames on the accused Marchon products extend <u>underneath</u> side portions of the primary frame and engage magnetic member surfaces on a primary spectacle frame from below. <u>See</u> <u>e.g.</u>, Section III, Figures 1, 3, and 5B below.

Plaintiffs argue that the claim element "adapted to extend across respective side portions of a primary spectacle frame" should be construed to mean that the "magnetic members and at least some portion of the auxiliary spectacle frame arms are suitable for reaching across the <u>top</u> or <u>bottom</u> of the corresponding side portion of a primary spectacle frame." (emphasis added). However, contrary to Plaintiffs' assertions, the '545 Patent offers absolutely no support for a construction including auxiliary spectacle frame arms "suitable for" reaching across the <u>bottom</u> of the corresponding side portion of a primary spectacle frame. A proper construction requires this claim element to be limited to "reaching across the top." Marchon's products do <u>not</u> reach across the top. The Marchon primary frames provide no support for the Marchon auxiliary frames. This element is missing in Marchon's products. As this element is not present, there can be no infringement of Claims 23 or 35.

Plaintiffs cite to column 1, lines 46-56 and column 2, lines 31-39 of the specification, as "support" for their position that the '545 Patent discloses auxiliary spectacle frame arms suitable for reaching across the <u>bottom</u> of the corresponding side portion of a primary spectacle frame. However, nothing in those columns or lines offers any such support. The word "bottom" is not even mentioned. In fact, Plaintiffs' citations are further suspect, as the text immediately following each of Plaintiffs' citations relates to "the auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending <u>over</u> and for engaging with the <u>upper</u> potion of the primary spectacle frame." <u>See</u> DE 102 App. Ex. "A", column 1, lines 56-58 and column 2, lines 44-47 (emphasis added). If anything, these passages further support Marchon's proposed constructions and confirm that '545 Patent is limited to top-mounting designs.

Plaintiffs also attempt to rely on '545 Patent Figures 1-7. However, these patent figures do not show auxiliary spectacle frame arms suitable for reaching across the <u>bottom</u> of corresponding side portions of a primary spectacle frame. '545 Patent Figures 5-7 only depict auxiliary spectacle frames which reach across the <u>top</u> of corresponding side portions of a primary frame. Again, the California Court, which Plaintiffs were parties in but chose not to cite in their brief, also found that "the drawings <u>only</u> show a top-mounting configuration." <u>See</u> DE 102 App. Ex. "E" at 31 (emphasis added). None of the '545 Patent figures support Plaintiff's proposed construction. However, they <u>do</u> support Marchon's construction. Marchon does not meet this claim limitation. There is no infringement of Claims 23 or 35.

      *a.*  ***The claim limitation "adapted to" should not be construed to mean "suitable for"***

Plaintiffs' attempted reliance on extrinsic dictionary definitions for the term "adapted" is irrelevant and unnecessary to this Court's analysis. The Federal Circuit has advised district

courts to "rely heavily on the written description for guidance as to the meaning of the claims." Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc). In the '545 Patent, the specification makes clear that the magnetic members and at least some portion of the auxiliary spectacle frame arms reach across the top of the corresponding side portion of a primary spectacle frame. The specification does not teach or disclose the arms reaching across the bottom of the primary frame. Plaintiffs attempt to avoid the clear teachings of the specification and patent figures should be seen for what it is and rejected.

While extrinsic evidence such as dictionaries and treatises may shed some light in understanding the meanings of terms and phrases to be construed, extrinsic evidence plays a limited role and is subordinate to the intrinsic evidence in determining the meaning of disputed claim language. Id. In the present case, the intrinsic evidence (specification and drawings of the '545 Patent) is so overwhelming that there is no need for this Court to resort to extrinsic evidence such as the dictionary definitions.

Further, Plaintiffs attempt to construe the term "adapted to" as "suitable for" is inconsistent with the plain meaning of the term, inconsistent with the written description of the '545 Patent, and has been rejected by other courts. See, e.g., Boston Sci. Corp. v. Cordis Corp., 2006 U.S. Dist. LEXIS 94329 (N.D. Cal. Dec. 20, 2006) (rejecting the exact argument presented by Plaintiffs here and holding that "adapted to" does not mean "suitable for," but can mean "configured to.") The Federal Circuit has also repeatedly rejected claim constructions that would merely require that infringing devices be capable of being modified to conform to a specified claim limitation. See, e.g., Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310-11 (Fed. Cir. 2005) (rejecting argument that "to directly infringe, Medtronic need only make devices that are capable of being converted into infringing devices.")

### b. The claim limitation "extend across" should not mean "reaches across the top or bottom"

In construing Claim 34, the California Court found the limitation "said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]" to mean that at least some portion of each arm of the auxiliary frame reaches across the top of the corresponding extension of the primary frame. See DE 102 App. Ex. "E" at 35. [6] Claims 23 and 35 at issue in this case have similar, or exactly the same, limitations that need to be construed in a consistent manner as the California Court construed Claim 34. Marchon's proposed constructions here are consistent. Plaintiffs' constructions are inconsistent – further evidence of why Plaintiffs attempt to totally ignore the California Order.

Plaintiffs also ignored binding Federal Circuit authority, which weighed in on the '545 Patent's claim construction. The Federal Circuit agreed with the California district court's claim construction, noting "We agree with the district court that, in pointing out the two deficiencies in the prior art, Chao disclaimed an auxiliary frame that is not stably supported in the top-mounting configuration and a primary frame that has embedded magnetic members." Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F. 3d 1358, 1368 (Fed. Cir. 2009). Plaintiffs' constructions that would cover bottom-mounted products should be rejected.

---

[6] In the California case, the Court granted Revolution's motion for summary judgment on the basis that Claims 6 and 34 were not infringed. It was undisputed that the horizontal surfaces of Revolution's auxiliary frames were not downwardly facing and the arms of Revolution's auxiliary frame attach to the bottom of the extensions on the primary frame, and plaintiffs did not oppose that motion. Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F.3d 1358, 1364 (Fed. Cir. 2009). Marchon's auxiliary frames are similar to Revolution's. Based on the doctrine of issue preclusion and claim construction law, the nearly identical language of Claim 23 (to that of Claims 6 and 34) must be construed consistently here. Unless the patent otherwise provides, which the '545 Patent does not, a claim term cannot be given a different meaning in the various claims of the same patent. See, e.g., Georgia-Pacific Corp. v. U.S. Gypsum Co., 195 F.3d 1322, 1331 (Fed. Cir. 1999). Marchon's products do not infringe. Summary judgment in Marchon's favor of non-infringement is the appropriate and correct outcome here.

### 4.     **Marchon's products do not contain "said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"**

Moreover, the claim element "a horizontal surface can vertically engage" when properly construed requires that the top surface of the primary frame magnets to engage with the bottom surface of the auxiliary frame magnets. As discussed in Section III. 2, the '545 Patent is limited to magnetic engagement whereby the downwardly facing horizontal surface of the auxiliary frame magnet engages with the upwardly facing horizontal surface of the primary frame magnet. Marchon's magnets do not "vertically engage" in this fashion. The Marchon products are not top-mounted. Marchon's products are designed to work in an opposite way – the top of the auxiliary frame magnet engages with the bottom of the primary frame magnet. This claim element is missing in Marchon's products. There is no infringement of Claims 23 or 35.

### B.     **Summary judgment of non-infringement is appropriate in this case**

As stated above and in DE 102, Marchon's products do not infringe Claims 23 or 35 of the '545 Patent, as they are adapted to extend underneath the corresponding extensions of the primary frame and thus do not reach across the top of those extensions. To the extent the magnetic members have horizontal surfaces, they do not vertically engage, as the term is properly construed. There is simply no infringement of Claim 23 or 35. Accordingly, summary judgment of non-infringement is appropriate here. Should the Court accept Aspex's proposed constructions (i.e., construing the claims broadly enough to encompass bottom-mounted designs), summary judgment of infringement would be inappropriate. The unsupported and overly broad constructions offered by Plaintiffs create trialworthy issues.

The Court should fully appreciate that the auxiliary frame shown on page 16 of Plaintiffs' brief (DE 115) is not mounted on a Marchon primary frame. The primary frame shown, instead, was specifically fabricated by Plaintiffs for this litigation, a fact not set forth in Plaintiffs' brief.

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

Marchon has never made or sold any such primary frames. The Marchon auxiliary frame products that it *does* make and sell are not top-mounting designs. The differences between Aspex's specially made primary frames and the ones that Marchon actually sells are significant and further demonstrate Marchon's non-infringement. See Figure 5 below (5A vs. 5B).

The Marchon auxiliary frames do not work as top-mounted products with Marchon's primary frames. The primary and auxiliary lenses are not aligned. The nose bridges on the primary and auxiliary frames are also misaligned. And, the auxiliary frames fall off of the primary frame when top-mounting is attempted. See Figures 1 and 3 (Marchon's bottom-mounted frame products - aligned); Figures 2 and 4 (Misaligned auxiliary frame placed on top).

| Marchon's Bottom-Mounted Frame (Auxiliary and Primary) **Aligned** as Intended to Be Used | Marchon's Auxiliary Frame Placed on Top of Primary Frame **Misaligned** per Plaintiffs' Theories |
|---|---|
|  |  |
| Figure 1 | Figure 2 |



| Figure 3 | Figure 4 |

Aspex had to modify the dimensions of the primary frame and create a <u>new</u> primary frame to attempt alignment with (i) the auxiliary lenses, (ii) the primary lenses, and (iii) the respective nose bridges. Even when the Marchon auxiliary frames are put on the Aspex-made litigation primary frames, they are not supported, they fall off, and they do not achieve the objectives of the '545 Patent. There is no infringement here.

Additionally, as shown in Figure 5 below, the specifically fabricated Aspex primary frame (Figure 5A, shown on the left) has top-mounted magnets with visible surfaces, again, a feature not found in Marchon's products (as exemplified by the frame shown on the right with no exposed magnet, Figure 5B). Plaintiffs have also lowered (altered) the side arms on this primary frame in an attempt to make their infringement case. Compare the respective arm locations and heights of Figure 5A to 5B. Plaintiffs failed to even identify these differences, let alone explain them to the Court. The Marchon auxiliary frames, when put on the Aspex-made primary frame, are unstable and fall off when shaken. These litigation-motivated specially-made Aspex frames and associated arguments should be resoundly rejected.

16



Figure 5

(5A – Aspex specially-made modified primary frame;
5B – Marchon primary and auxiliary frames)

## IV. CONCLUSION

Plaintiffs are <u>not</u> entitled to summary judgment of infringement as a matter of law. The Court should deny Aspex's motion because Marchon's Flexon, Nike, and Calvin Klein products do not contain at least three (3) elements of Claims 23 and 35. Further, to the extent that Plaintiffs' improper claim constructions are accepted, material issues of fact exist as to whether Marchon's products meet these limitations.

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

| | |
|---|---|
| Dated:  June 14, 2010<br>　　　　Miami, Florida | Respectfully submitted,<br><br>**s./ Martin J. Keane**<br>_____<br>W. Barry Blum<br>bblum@gjb-law.com<br>Florida Bar No.: 379301<br>Martin J. Keane<br>Florida Bar No.: 524239<br>mkeane@gjb-law.com<br>GENOVESE JOBLOVE & BATTISTA, P.A.<br>100 Southeast Second Street<br>Miami, Florida  33131<br>Telephone:  (305) 349-2300<br>Facsimile:  (305) 349-2310<br><br>-- and --<br><br>Edgar H. Haug, Admitted Pro Hac Vice<br>ehaug@flhlaw.com<br>Porter F. Fleming, Admitted Pro Hac Vice<br>pfleming@flhlaw.com<br>Brian S. Goncalves, Admitted Pro Hac Vice<br>bgoncalves@flhlaw.com<br>FROMMER LAWRENCE & HAUG LLP<br>745 Fifth Avenue<br>New York, New York 10151<br>Telephone:  (212) 588-0800<br>Facsimile:  (212) 588-0500<br><br>*Attorneys for Defendants Marchon Eyewear, Inc. and Nike, Inc.* |

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

## CERTIFICATE OF SERVICE

I hereby certify that on June 14, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

s./ Martin J. Keane
_____
Attorney

**Jacqueline Becerra, Esq.**
becerraj@gtlaw.com
**Ericka Yolanda Turk, Esq.**
turkmooree@gtlaw.com
GREENBERG TRAURIG, LLP
1221 Brickell Avenue
Miami, FL 33131
Telephone: (305) 579-0534
Facsimile: (305) 579-0717

**Michael Nicodema, Esq.**
nicodemam@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166-1400
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optix, Inc.*

**Janet T. Munn, Esq.**
jmunn@rascoklock.com
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL 33134
Telephone: (305) 476-7121
Facsimile: (305) 476-7102

**Steven M. Hanle, Esq.**
shanle@sheppardmullin.com
**Jennifer A. Trusso, Esq.**
jtrusso@sheppardmullin.com
**Aaron M. Fennimore, Esq.**
afennimore@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
650 Town Center Drive – Fourth Floor
Costa Mesa, CA 92626
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC, and Gary Martin Zelman*

10289 – 001 / 311