UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

    Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,

    Defendants.
_____/

**DEFENDANT MARCHON EYEWEAR, INC.'S
STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS ASPEX
EYEWEAR, INC.'S AND CONTOUR OPTIK, INC.'S STATEMENT OF MATERIAL
FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant Marchon Eyewear, Inc. ("Marchon"), pursuant to S.D. Fla. L.R. 7.5, hereby submits its Statement of Material Facts in Opposition to Aspex Eyewear, Inc.'s ("Aspex") and Contour Optik, Inc.'s ("Contour") Statement of Material Facts and states:

**A.**     **The '545 Patent**

1. On February 12, 2002, the U.S. Patent Office issued U.S. Patent No. RE37,545 (the "'545 Patent). The '545 patent is a reissue of U.S. Patent No. 5,568,207, which has been surrendered. Declaration of Ericka Turk-Moore ("Turk-Moore Decl.") at Exh. 1.

Marchon's Response: Admitted.

2. Following a September 13, 2007 request for re-examination, the Patent Office issued Reexamination Certificate No. RE37,545 Fl on March 3, 2009, which included a newly amended claim 23 and a new Claim 35. Turk-Moore Decl. at Exh. 2.

Marchon's Response: Admitted.

3. Claim 23 is directed to auxiliary, magnetic clip-on eyewear frames and reads as follows:

> [a]n auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

Turk-Moore Decl. at Exh. 2, Col. 1, line 29 to Col. 2, line 13.

Marchon's Response:  Admitted.

4. Claim 35 depends from claim 23 and claims an "eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets." Turk-Moore Decl. at Exh. 2, Col 2, lines 27-29.

Marchon's Response:  Admitted.

### B. The Accused Products

#### 1. The Revolution Accused Products

5. All auxiliary spectacle frames sold by Revolution Eyewear, Inc. ("Revolution") after March 3, 2009 are accused of infringing Claims 23 and 35 of the '545 patent. Declaration of Thierry Ifergan ("Ifergan Decl.") at ¶ 8 & Exh. 1 attached thereto.

Marchon's Response:  Denied.  This statement is more appropriately directed to Defendant Revolution Eyewear, Inc.

6. In response to a 30(b)(6) deposition notice that Revolution served on plaintiff Aspex Eyewear, Inc. ("Aspex") asking that Aspex identify "[a]ll products accused of infringement in this action…including all commercial designations….," Aspex's corporate designee Mr. Thierry Ifergan provided Revolution a catalog in which all the accused models were highlighted (hereinafter, the "Revolution Accused Products"). *Id.*

Marchon's Response:  Denied.  This statement is more appropriately directed to Defendant Revolution Eyewear, Inc.

1

7.      The Revolution Accused Products all have the same design as they relate to the elements of claims 23 and 35. Declaration of Lee Zaro ("Zaro Decl.") at ¶¶ 6-8.

Marchon's Response:  Denied.  This statement is more appropriately directed to Defendant Revolution Eyewear, Inc.

## 2.    The Marchon Accused Products

8.      All auxiliary spectacle frames sold by Marchon Eyewear, Inc. ("Marchon") after March 3, 2009 are accused of infringing Claims 23 and 35 of the '545 patent.  Ifergan Decl., 9, & Exh. 2, attached thereto.

Marchon's Response:   Denied.  Mr. Ifergan has not explicitly stated that "all" auxiliary spectacle frames sold by Marchon after any specific date are accused of infringing Claims 23 and 35 of the '545 Patent.

9.      In response to a 30(b)(6) deposition notice that Marchon served on plaintiff Aspex Eyewear, Inc. ("Aspex") asking that Aspex identify "[a]ll products accused of infringement in this action…including all commercial designations….," Aspex's corporate designee Mr. Thierry Ifergan provided Marchon a catalog in which all the accused models were highlighted (hereinafter, the "Marchon Accused Products").  *Id*.

Marchon's Response:  Admitted.

10.     The Marchon Accused Products all have the same design as they relate to the elements of claims 23 and 35. Zaro Decl. ¶¶ 6-8.

Marchon's Response: Denied.  The term "same design" is ambiguous.  Marchon admits only that the Marchon Accused Products all utilize magnetic bottom-mount auxiliary clip-on frames.  Further, ¶¶ 6-8 of the Zaro declaration refer to many propositions other than the "same design" proposition and are thus denied.

## 3.    The Accused Products

11.     The Revolution Accused Products and the Marchon Accused Products (collectively, the "Accused Products") all have the same design as they relate to the elements of claims 23 and 35. Zaro Decl. ¶ 6.

Marchon's Response: Denied.  The term "same design" is ambiguous, and Marchon does not have possession of "all" of the Revolution Accused Products.

### 4. The Representative Frames

12. Aspex obtained three models of auxiliary spectacle frames sold by Revolution Eyewear (Revolution auxiliary spectacle frame, "Revolution Clip-on"); Marchon Eyewear, Inc. (Marchon Flexon auxiliary spectacle frame, "Marchon Clip-on"); and by Marchon Eyewear, Inc. under the Nike brand (Nike auxiliary spectacle frame, "Nike Clip-on") from retailers who returned these products to Aspex based on the mistaken belief that they were being offered for sale by Aspex. These three models were not offered for sale by Aspex. Ifergan Decl. at ¶ 2.

Marchon's Response: Denied. Marchon has no knowledge of how Aspex obtained any Revolution, Marchon, or Nike auxiliary frames.

13. In order to demonstrate that the auxiliary frames were suitable for mounting to the top of a primary without any modification to the auxiliary frame and whether primary frames could be constructed such that each of the three auxiliary frames were suitable for mounting to the top of the constructed primary frames without modifying the auxiliary frames in any way, Aspex had constructed newly constructed primary frames onto which the Revolution, Nike, and Marchon clip-on models -- in unmodified form -- could be attached. The newly constructed frames were done without modification of the auxiliary spectacle frame models' magnets, removal of the decorative coating, or modification of any other part of the auxiliary spectacle frame model. Ifergan Decl. ¶¶ 4 & 5.

Marchon's Response: Denied. Marchon has no knowledge of how Plaintiffs' constructed primary frames and/or modified auxiliary frames. Further, "suitable for mounting" is not a claim element of either Claim 23 or 35 of the '545 Patent. The Marchon auxiliary frames are not suitable for top-mounting, as they are designed to be bottom-mounted. Accordingly it is incorrect to say that they "could be attached." Further, as the Marchon auxiliary frames easily fall off, they are not "attached."

14. The Revolution, Nike, and Marchon clip-on models were provided to Greenberg Traurig, LLP including the newly constructed primary frames and Plaintiffs' expert Lee Zaro analyzed the same representative clip-on models. Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response: Denied. Marchon has no knowledge of how Greenberg Traurig obtained any Revolution, Marchon, or Nike auxiliary frames. Mr. Zaro testified that he did not even know that the new primary frames were specially made for this litigation.

### C.     Literal Correspondence Between Claims 23 and 35 and the Accused Products

15.     Element [a] of claim 23 reads: "**[a]n auxiliary spectacle frame for supporting auxiliary lenses therein**."  As required by claim 23, the Accused Products all contain an auxiliary spectacle frame for supporting auxiliary lenses therein. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8; Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response:  Denied, as Claim 23 has not yet been construed by this Court.

16.     Element [b] of claim 23 reads: "**said frame including a front side, a rear side, and oppositely positioned side portions**."  As required by claim 23, the Accused Products all contain a front side, a rear side and oppositely positioned side portions. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response:  Denied, as Claim 23 has not yet been construed by this Court.

17.     Element [c] of claim 23 reads: "**each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface**."  As required by claim 23, the Accused Products all have two side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response:  Denied, as Claim 23 has not yet been construed by this Court. Moreover, under a proper construction, Claims 23 and 35 are not infringed by Marchon's bottom-mounted products on the basis that the '545 Patent is limited to top-mounted designs only.  The claimed horizontal surfaces refer to a downwardly facing surface.  The '545 Patent does not disclose horizontal surfaces of the magnetic members that face upwards.  The Marchon auxiliary frames do not have downwardly facing magnetic surfaces.  This limitation is not found in Marchon's products.

18.     Element [d] of claim 23 reads: "**and a pair of magnetic members respectively secured in the free ends of said arms**."  As required by claim 23, the Accused Products all have a pair of magnetic members respectively secured in the free ends of said arms. *See* Revolution

Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl.,¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response:  Denied, as Claim 23 has not yet been construed by this Court.

19. Element [e] of claim 23 reads: "**said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame**."  As required by claim 23, the Accused Products all have said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response:  Denied, as Claim 23 has not yet been construed by this Court. Moreover, the arms of the auxiliary frames of the accused Marchon products are not adapted to extend over side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic member surfaces on a primary frame, as those claim elements are properly construed.  Instead, the arm-like structures of the auxiliary frames on the accused Marchon products extend underneath side portions of the primary frame and engage magnetic member surfaces on a primary spectacle frame from below.  Further, the phrase "can vertically engage" requires the top surface of the primary frame magnets to engage with the bottom surface of the auxiliary frame magnets.  Marchon's magnets do not "vertically engage" in this fashion.  The Marchon products are not top-mounted.  The primary frame of the Marchon products provides no support to the auxiliary frame.  Marchon's products are designed in an opposite way -- the top of the auxiliary frame magnet engages the bottom of the primary frame magnet.  This claim limitation is not found in any of the Marchon products.

20. **Claim 35 reads: "an eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets**."  The Accused Products all have magnetic members of said auxiliary spectacle frame that are magnets. Zaro Decl. ¶ 8.

Marchon's Response:  Denied, as Claim 35 has not yet been construed by this Court. Moreover, as Marchon does not infringe independent Claim 23, Marchon necessarily cannot be

5

found to infringe dependent Claim 35. See also Marchon's response of non-infringement positions in paragraphs 17 and 19 above.

### D. Even Under Defendants Claim Construction, Accused Products Meet All The Elements Of Claim 23

21. Defendants argue that "magnetic members having a horizontal surface" in elements 23 [c] and 23[e] should be replaced with "magnetic members having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame." *See e.g., Revolutions Supplemental Response to Special Interrogatory No.1 dated April 5, 2010, Turk-Moore Decl., Exh. 5*.

Marchon's Response: Denied that anything should be "replaced." Admitted, to the extent that Marchon's claim construction position is similar to co-defendant Revolution's, cited above by Plaintiffs.

22. The Accused Products all have a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response: Denied. The claim language above appears to refer to magnetic members. The magnetic members of Marchon's products do not have a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame. Marchon's products are bottom-mounted.

23. The only difference between the downwardly facing surface of the magnets and the upwardly facing surface of the magnets is that the downwardly facing surface of the magnets has an epoxy coating. The epoxy coating does not impede the magnetic properties of the downwardly facing surface. Zaro Decl., ¶ 8.

Marchon's Response: Denied. There are major differences between the magnet surfaces. In addition to shape, exposed surfaces, and non-exposed surfaces, the epoxy coating does indeed impede the magnetic properties of the downwardly facing surface. See Expert Report of Joel Sodano at ¶ 49 (App. Ex. "1").

24. Defendants also argue and the term "corresponding magnetic member surfaces" in element 23[e] should be replaced with "upwardly surface that lies in a plane that is substantially. perpendicular to the plane of the lenses of the primary spectacle frame." Under this construction,

6

Defendants contend that an accused product must be adapted to engage the top surface of the primary frame in order to meet this element. *See e.g., Revolutions' Supplemental Response to Special Interrogatory No.1 dated April 5, 2010*; , Turk-Moore Decl., Exh. 5.

Marchon's Response: Denied that anything should be "replaced." Admitted, to the extent that Marchon's claim construction position is similar to co-defendant Revolution's, cited above by Plaintiffs, and to correct for the typographical error which omits the word "facing" in "upwardly facing surface."

25. The Accused Products meet Defendants' construction because their products contain magnetic members with a downwardly facing surface which are adapted to being engaged with an "upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame." *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2, 4-5 & 7.

Marchon's Response: Denied. Marchon's products do not contain magnetic members with a downwardly facing surface which are adapted to being engaged with an "upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame."

26. The Accused Products are adapted to being mounted to the top of a primary spectacle frame or the bottom of a primary spectacle frame. *See* Revolution Clip-on, Marchon Clip-on, Nike Clip-on, photographs of which are shown at Zaro Decl., ¶ 8; *see also* Zaro Decl. ¶ 8, Ifergan Decl. ¶¶ 2 ,4-5 & 7.

Marchon's Response: Denied. Marchon's products are not adapted to being mounted to the top of a primary spectacle frame. There is no alignment of the respective lenses and nose bridges. Further, the auxiliary frames fall off easily and they fail to achieve the stated objective of the '545 Patent. See Defendant Marchon Eyewear, Inc.'s Memorandum of Law in Opposition to Plaintiffs Aspex Eyewear, Inc.'s and Contour Optik, Inc.'s Motion for Partial Summary Judgment, Figures 2 and 4.

**DEFENDANT MARCHON EYEWEAR, INC.'S COUNTER STATEMENT OF MATERIAL FACTS IN OPPOSITION TO PLAINTIFFS ASPEX EYEWEAR, INC.'S AND CONTOUR OPTIK, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

1. Marchon's products do not satisfy the following limitation of Claim 23 of the

'545 Patent: "…each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface…"

2. Marchon's products do not satisfy the following limitation of Claim 23 of the '545 Patent: "…said arms and said pair of magnetic members adapted to extend ac<u>ross</u> respective side portions of a primary spectacle frame…"

3. Marchon's products do not satisfy the following limitation of Claim 23 of the '545 Patent: "…so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame..."

4. Marchon's products do not satisfy the claim elements of paragraphs 1-3 above to the extent they are elements of Claim 35 of the '545 Patent.

5. Marchon's auxiliary frame products, when placed on Aspex's specially-made primary frames, do not satisfy the following limitation of Claim 23 of the '545 Patent: "…each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface…"

6. Marchon's auxiliary frame products, when placed on Aspex's specially-made primary frames, do not satisfy the following limitation of Claim 23 of the '545 Patent: "…said arms and said pair of magnetic members adapted to extend <u>across</u> respective side portions of a primary spectacle frame…"

7. Marchon's auxiliary frame products, when placed on Aspex's specially-made primary frames, do not satisfy the following limitation of Claim 23 of the '545 Patent: "…so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame..."

8. Marchon's products do not satisfy the claim elements of paragraphs 5-7 above to the extent they are elements of Claim 35 of the '545 Patent.

9. The epoxy coating on Marchon's products impedes the magnetic properties of the magnets by increasing the distance between the magnets of the auxiliary frame and the magnets on the primary frame.  <u>See</u> Expert Report of Joel Sodano at ¶ 49 (App. Ex. "1").

10. Mr. Zaro admitted that the strength of magnetic attraction decreases as the thickness of the epoxy increases.  <u>See</u> Expert Report of Joel Sodano at ¶ 49 (App. Ex. "1").

11. Marchon's products do not infringe Claim 23 of the '545 Patent.

13. Marchon's products do not infringe Claim 35 of the '545 Patent.


Dated: June 14, 2010
Miami, Florida

Respectfully submitted,

**s./ Martin J. Keane**
_____
W. Barry Blum
bblum@gjb-law.com
Florida Bar No.: 379301
Martin J. Keane
Florida Bar No.: 524239
mkeane@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
100 Southeast Second Street
Miami, Florida  33131
Telephone:  (305) 349-2300
Facsimile:  (305) 349-2310

-- and --

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
pfleming@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York 10151
Telephone:  (212) 588-0800
Facsimile:  (212) 588-0500

*Attorneys for Defendants Marchon Eyewear, Inc. and Nike, Inc.*

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 14, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                         s./ Martin J. Keane

                                                         Attorney

| | |
|---|---|
| **Jacqueline Becerra, Esq.**<br>becerraj@gtlaw.com<br>**Ericka Yolanda Turk, Esq.**<br>turkmooree@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>1221 Brickell Avenue<br>Miami, FL 33131<br>Telephone: (305) 579-0534<br>Facsimile: (305) 579-0717 | **Michael Nicodema, Esq.**<br>nicodemam@gtlaw.com<br>GREENBERG TRAURIG, LLP<br>MetLife Building<br>200 Park Avenue<br>New York, NY 10166-1400<br>Telephone: (212) 801-9200<br>Facsimile: (212) 801-6400 |

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optix, Inc.*


| | |
|---|---|
| **Janet T. Munn, Esq.**<br>jmunn@rascoklock.com<br>RASCO KLOCK REININGER PEREZ<br>ESQUENAZI VIGIL & NIETO, P.L.<br>283 Catalonia Avenue<br>Suite 200<br>Coral Gables, FL 33134<br>Telephone: (305) 476-7121<br>Facsimile: (305) 476-7102 | **Steven M. Hanle, Esq.**<br>shanle@sheppardmullin.com<br>**Jennifer A. Trusso, Esq.**<br>jtrusso@sheppardmullin.com<br>**Aaron M. Fennimore, Esq.**<br>afennimore@sheppardmullin.com<br>SHEPPARD MULLIN RICHTER &<br>HAMPTON LLP<br>650 Town Center Drive – Fourth Floor<br>Costa Mesa, CA 92626<br>Telephone: (714) 513-5100<br>Facsimile: (714) 513-5130 |

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC, and Gary Martin Zelman*

10289 – 001 / 312