# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61515-CIV-COOKE
MAGISTRATE JUDGE BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

    Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

    Defendants.

## DECLARATION OF GARY MARTIN ZELMAN IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1. I am the President of defendant Revolution Eyewear, Inc. I have personal knowledge of the facts stated herein and could and would competently testify thereto. I have been involved in the design and manufacture of magnetic clip-on eyewear, including Revolution's own products, since at least 1998. I am the named inventor on several issued U.S. patents relating to clip-on eyewear, including magnetic clip-on eyewear.

2. The auxiliary frames of Revolution's magnetic clip-on eyewear have always had magnets with upwardly facing surfaces. The arms of the auxiliary frames of Revolution's magnetic clip-on eyewear have always been adapted to extend underneath respective side portions of a primary spectacle frame so that they can engage corresponding downwardly facing magnetic member surfaces on the bottom of the primary spectacle frame. This configuration is often referred to in the industry as "bottom-mounting."

3. By April 2007, Revolution had redesigned its primary frames such that the magnets were embedded in the frames, rather than placed in projections attached to the frames. The design of the auxiliary frames remained unchanged, with magnetic member surfaces that face upwardly and arms that are adapted to extend underneath respective side portions of the primary frame.

4. The auxiliary frame of Revolution's magnetic clip-on eyewear are not made or configured or intended to mount and are not suitable for mounting to the top of Revolution's primary frame or any primary frame sold by anyone else. Such a configuration would be quite unstable because any magnetic attraction is weak, there is no projection to mate with a pocket on the primary frame and the epoxy surface is rounded and does not rest securely on the primary frame. Further, the aesthetics would be badly affected, with the arms on top of the end pieces making the eyewear "top heavy".

5. Revolution has never anticipated or intended that the consumers of its magnetic clip-on eyewear would modify the auxiliary frame of Revolution's magnetic clip-on eyewear so that the auxiliary frame would be mounted on top of a primary frame, and is not aware of any instance where a consumer has made such a modification. This would be exceedingly difficult since the bottom of the auxiliary frame arm is closed (the magnet is embedded in the auxiliary frame arm, and is only exposed on the top), and because the epoxy on the bottom of the arm is exceedingly difficult to remove.

6. Revolution is not aware of a single instance where a consumer has worn Revolution's magnetic clip-on eyewear with the auxiliary frame mounted to the top of a primary frame.

7. Revolution has not designed its magnetic clip-on eyewear so that the auxiliary frame can be altered or assembled to be mounted on top of Revolution's primary frame or any primary frame. The auxiliary and primary frames are each pre-assembled, and alteration would be exceedingly difficult for the reasons in paragraph 5 above.

8. Revolution's magnetic clip-on eyewear is sold as a set (except that Revolution occasionally sells its auxiliary clip-ons alone to replace those lost or damaged) and there is nothing that suggests that the auxiliary frame should be mounted to the top of the primary frame. Revolution's promotional and advertising materials have never shown Revolution's magnetic clip-on eyewear in a top-mounted configuration. All of Revolution's promotional and advertising materials have shown Revolution's magnetic clip-on eyewear worn as they were designed to be worn (i.e., auxiliary frames mounted to the bottom of the primary frame).

-3-

9. When the auxiliary frame of Revolution's magnetic clip-on eyewear is "mounted" to the top of a primary frame, it does not serve any functional purpose for at least the following reasons: (1) the top and bottom edges of the auxiliary frame are badly misaligned with the edges of the primary frame; (2) the user sees two edges wearing the eyewear; (3) the edge of the auxiliary frame blocks the user's line of vision; (4) the misalignment causes a portion of the primary lens to remain unshaded by the auxiliary lens, thereby allowing sunlight to come through; and (5) the auxiliary frames are not stably supported and are easily disengaged from the primary frame.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, in Thousand Oaks, California, on this 11th day of June, 2010.

*[signature]*
Gary Martin Zelman
Pres/CEO
Revolution Eyewear Inc.

Respectfully submitted,

s/ Steven M. Hanle

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: 714.513.5100
Telecopy: 714.513.5130

and

s/ Janet T. Munn
Janet T. Munn
jmunn@rascoklock.com
Florida Bar No. 501281
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL 33134
Telephone: 305.476.7100
Telecopy: 305.476.7102

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC and Gary Martin Zelman*

-4-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 11, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.

By: s/ Janet T. Munn
Janet T. Munn

W02-WEST:3JAT1\402698646.1

## SERVICE LIST

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
email: schindlerb@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

Todd Schleifstein, Admitted Pro Hac Vice
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, NJ 07932
email: schleifsteint@gtlaw.com
Telephone: 973.360.7900
Telecopy: 973.301.8410

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310

Scott W. Hansen, Admitted Pro Hac Vice
email: shansen@reinhartlaw.com
**REINHART BOERNER VAN DEUREN**
1000 N. Water Street
PO Box 2965
Milwaukee, WI 53201-2965
Telephone: 414.298.8123
Telecopy: 414.298.8097

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email: ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email: bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email: dherman@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
email: pfleming@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone: 212.588.0800
Telecopy: 212.588.0500

Mark P. Walters, Admitted Pro Hac Vice
email: mwalters@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
1191 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: 206.336.5690
Telecopy: 212.588.0500