# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.: 09-61515-CIV-COOKE**
**MAGISTRATE JUDGE BANDSTRA**

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

      Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

      Defendants.

_____

**DECLARATION OF JENNIFER A. TRUSSO IN**
**SUPPORT OF DEFENDANTS' OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

      Jennifer A. Trusso declares as follows.  I am a partner with Sheppard Mullin Richter & Hampton, counsel for Defendants Revolution Eyewear, Inc. and Gary Martin Zelman (collectively "Defendants").  I have personal knowledge of the following, and could and would testify competently thereto.

      1.      Attached hereto as Exhibit A is a true and correct copy of excerpts of the Deposition Transcript of Gary Martin Zelman taken on April 15, 2010.

      2.      Attached hereto as Exhibit B is a true and correct copy of excerpts of the Deposition Transcript of Lee Zaro taken on June 3, 2010.

      3.      Attached hereto as Exhibit C are true and correct copies of documents produced by Revolution Eyewear in this action consisting of catalog pages for the following models sold by Revolution:  REV525, REV527, REV528, REV529, REV530, REV531, REV532.

      4.      The photographs below are true and accurate representations of Revolution's accused product referenced in plaintiffs' motion for partial summary judgment.  In the photograph on the left, the auxiliary frame is mounted on the bottom of the primary frame, as

W02-WEST:3JAT1\402702756.1

it was configured to do.  Note that the lenses are properly aligned.  In the photograph on the right, the auxiliary frame is placed on the top of the primary frame in order to illustrate plaintiffs' contention that Revolution's auxiliary frames are "adapted to" or "suitable for" top mounting. The lenses of the auxiliary and primary frames are badly misaligned, demonstrating that Revolution's auxiliary frames are not adapted to, configured to, or suitable for top mounting.

 

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, in Costa Mesa, California, on this 14th day of June, 2010.

s/Jennifer A. Trusso
Jennifer A. Trusso

W02-WEST:3JAT1\402702756.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 14, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.

By: s/ Janet T. Munn
Janet T. Munn

W02-WEST:3JAT1\402702756.1

## SERVICE LIST

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310

Scott W. Hansen, Admitted Pro Hac Vice
email: shansen@reinhartlaw.com
**REINHART BOERNER VAN DEUREN**
1000 N. Water Street
PO Box 2965
Milwaukee, WI 53201-2965
Telephone: 414.298.8123
Telecopy: 414.298.8097

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
email: schindlerb@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

Todd Schleifstein, Admitted Pro Hac Vice
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, NJ 07932
email: schleifsteint@gtlaw.com
Telephone: 973.360.7900
Telecopy: 973.301.8410

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email: ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email: bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email: dherman@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
email: pfleming@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone: 212.588.0800
Telecopy: 212.588.0500

Mark P. Walters, Admitted Pro Hac Vice
email: mwalters@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
1191 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: 206.336.5690
Telecopy: 212.588.0500

EXHIBIT A

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

-------------------------------

ASPEX EYEWEAR, INC. and      )

CONTOUR OPTIK, INC.,         )

        Plaintiffs,      )

    vs.                      )    No. 09-61515-CIV-

HARDY LIFE, LLC, MARCHON     )      COOKE/BANDSTRA

EYEWEAR, INC., NIKE, INC.,   )

REVOLUTION EYEWEAR, INC.,    )

and GARY MARTIN ZELMAN, an   )

individual,                  )

        Defendants.      )

-------------------------------


    Deposition of GARY MARTIN ZELMAN, taken

    at 333 South Hope Street, 43rd Floor,

    Los Angeles, California, commencing at

    10:20 a.m., Thursday, April 15, 2010,

    before Xavier Mireles, CSR No. 5001.



PAGES 1 - 230

d94be6c6-200c-4322-8e5a-4afb59ba5dd2

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Page 63

1    A.    You asked me how did I -- you asked, right,     11:42:00

2    and I am going to give you the answer.                11:42:06

3    Q.    Okay.                                           11:42:08

4    A.    Okay.  Number one, we made sure that the       11:42:08

5    magnets of the clip-on face upward.  We made sure     11:42:11

6    that the magnets of the primary frame face downward.  11:42:16

7    And I already told you that we added the epoxy        11:42:22

8    coloration on bottom to tell the wearer that they     11:42:27

9    weren't putting on it properly.                       11:42:30

10           By the way, I misspoke a little bit earlier   11:42:32

11   when I said that there was -- that the epoxy was a    11:42:36

12   protectant as the hole doesn't burrow through the     11:42:42

13   entire holder.  It just is like a pocket and then     11:42:46

14   it's placed on top of it.  So it doesn't really       11:42:51

15   protect the magnet the way I thought it did.          11:42:55

16   Q.    Okay.  Does it serve any other function in      11:42:58

17   light of the configuration you just described?        11:43:01

18   A.    What is that?  What other function?             11:43:04

19   Q.    Of the epoxy coating.  Any actual function,     11:43:07

20   or is this purely an aesthetic design in light of     11:43:10

21   that testimony?                                       11:43:14

22           MR. HANLE:  Objection.  Misstates his prior   11:43:14

23   testimony.  He told you a function before.  You want  11:43:15

24   to know about if are there any other functions other  11:43:18

25   than what he has already testified to?                11:43:19

# EXHIBIT B

1

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF FLORIDA
     ------------------------------------x
3    ASPEX EYEWEAR, INC., and
     CONTOUR OPTIK, INC.,
4
                         Plaintiffs,
5
         -against-
6
     HARDY LIFE, LLC., MARCHON
7    EYEWEAR, INC., NIKE, INC.,
     REVOLUTION EYEWEAR, INC., and
8    GARY MARTIN ZELMAN, an
     individual,
9
                         Defendants.
10   ------------------------------------x

11

12                       200 Park Avenue
                         New York, New York
13
                         June 3, 2010
14                       8:15 a.m.

15

16            Videotaped Deposition of LEE

17   ZARO, before Shari Cohen, a Notary Public of

18   the State of New York.

19

20

21

22

23        Ellen Grauer Court Reporting CO. LLC
              126 East 56th Street, Fifth Floor
24                New York, New York 10022
                       212-750-6434
25                     REF: 93717

38

```
 1                    ZARO
 2        Q.    Yes.
 3        A.    So when I hear example I think
 4   of frame type.   These are both three piece
 5   mounts.
 6        Q.    Are all three piece mounts
 7   identical in your view?
 8        A.    No, they are not.   There's
 9   different mounting systems.
10        Q.    So when you say different
11   mounting systems, what do you mean?
12        A.    Here we have two frames that
13   are identical in the fact that they have
14   pressure mounting systems, there is post
15   mounting systems, there's different mounting
16   systems that could be used as three piece
17   mounts.
18        Q.    That's not -- Exhibit 101 is
19   not a -- Exhibit 102 is not a Revolution
20   model, correct?
21        A.    It doesn't say Revolution which
22   would lead me to believe it's not a
23   Revolution model.
24        Q.    In that respect it's not a
25   frame sold by Revolution, correct?
```

1                           ZARO

2          A.      Then I would agree, yes, since

3     it doesn't say Revolution.

4          Q.      Similar questions with respect

5     to Exhibits 94, 95 and 96.  Hold up Exhibit

6     94, please.  That's an auxiliary frame that's

7     actually sold by Marchon or Nike, correct?

8          A.      I would think so, yes.

9          Q.      Hold up Exhibit 95.  That's a

10    frame that's actually a model of a frame

11    that's actually sold by Marchon or Nike,

12    correct?

13         A.      Yes.

14         Q.      Hold up Exhibit 96.  That's not

15    an example of a frame actually or a model

16    actually sold by Marchon or Nike, correct?

17         A.      Same thing.  It's a bottom

18    rimless frame.

19         Q.      I didn't ask that.  We are

20    going around in circles.

21              MR. WEIDER: We are not.  You

22         are asking him examples, he told you

23         what he views as examples. You want to

24         frame your question differently you

25         can.

57

ZARO

1

2     Exhibit 100, correct?

3          A.     That's correct.

4          Q.     We're looking at the -- where

5     is the horizontal surface of the magnet on

6     Exhibit 100?

7               MR. WEIDER: Objection to form.

8          A.     The magnet?

9          Q.     The horizontal surface of the

10    magnet on Exhibit 100?

11         A.     It would be here and here

12    (indicating).

13         Q.     I asked about the horizontal

14    surface of the magnet?

15         A.     Right.

16         Q.     So point to the horizontal

17    surface of the magnet and tell me what color

18    it is?

19         A.     Here it's silver.

20         Q.     Now turn it over on the bottom

21    and what color is it down there?

22         A.     Here there is an epoxy coating.

23         Q.     So that epoxy is not a magnet,

24    correct?

25         A.     Epoxy is not a magnet.

58

ZARO

Q.    Thank you, so epoxy is not a
surface of a magnet, correct?

A.    Epoxy is epoxy, but --

Q.    Is epoxy the surface of a
magnet?

A.    It covers a surface of the
magnet.

Q.    Is epoxy the surface of a
magnet?

A.    Epoxy itself is not a magnet or
a surface of a magnet.

Q.    The silver magnet surface is on
the top of Exhibit 100, correct?

A.    No, there's a magnetic surface
here too.  Look, it can do that so it's a
magnet surface.

Q.    The silver magnet surface is on
top of Exhibit 100, correct?

A.    The silver -- there is a silver
magnet on the top and it has a surface, yes.

Q.    So the silver magnet surface is
on the top, correct?

A.    That's correct.

Q.    The bottom surface is epoxy,

59

ZARO

1
2   correct?
3          A.      There is epoxy on the bottom.
4          Q.      So the bottom surface is epoxy,
5   correct?
6          A.      There is epoxy on the bottom.
7          Q.      Is the bottom surface epoxy?
8          A.      Yes, there is epoxy on the
9   bottom surface, yes.
10         Q.      Would you agree that the magnet
11  surface, the silver magnet surface is
12  upwardly facing?
13         A.      The silver magnet -- this
14  silver magnet surface here, is it upwardly
15  facing?
16         Q.      Yes.
17         A.      I would agree yes.
18         Q.      The epoxy surface is downwardly
19  facing, correct?
20         A.      This is, yes, I would say the
21  magnetic surface --
22         Q.      I asked about the epoxy
23  surface, you misunderstood my question so is
24  the epoxy surface downwardly facing?
25         A.      The magnetic epoxy surface is

60

ZARO

1

2    downward facing.

3            MR. WEIDER: Mr. Hanle, the way

4        it works is --

5            MR. HANLE: You have an

6        objection, state it.

7            MR. WEIDER: I have an

8        objection.

9            MR. HANLE: State it.

10           MR. WEIDER: You are not

11       listening.  You keep doing it over and

12       over again and every other deposition

13       when you ask counsel to please allow

14       him to finish, you allow him to finish

15       his answer.  If he misunderstood the

16       question you think so, you ask a new

17       question, you don't get to cut him off

18       every time you don't like where his

19       answer is going.

20           Q.    The epoxy surface on the bottom

21   of the auxiliary frame is downwardly facing,

22   correct?

23           A.    The epoxy surface is downwardly

24   facing.

25           Q.    Thank you.  Were you aware --

```
 1                          ZARO
 2          Q.     I want you to take Exhibits
 3   100, 101 and 102 and I want you to -- first
 4   of all, 100 is the Revolution auxiliary
 5   frame, correct?
 6          A.     Correct.
 7          Q.     I want you to place that
 8   Exhibit 100 on the Revolution primary frame
 9   as it was intended, as it was made to be
10   placed.   Where did you attach the magnets in
11   relation -- where did you attach the
12   auxiliary in relation to the primary when you
13   just did it?
14                  MR. WEIDER: Objection.
15          A.     Where it's made to be placed?
16          Q.     Yes.
17          A.     Made to be placed, well --
18          Q.     Where did you just place it?
19          A.     It places on the bottom, but --
20          Q.     Is that where it was made to be
21   placed?
22          A.     Well, it's made to be placed or
23   it can be placed.
24          Q.     I want to know where it was
25   made to be placed?
```

94

ZARO

A.    Where was it made to be placed.

Q.    You just put it on the bottom?

A.    That's also subjective based on
the fact that it also sticks to the top too.

Q.    Boy, when you put it on there
in the first instance, when I asked you to
put it on, you put it on the bottom, why?

A.    Because it's one of the places
it can stick.

Q.    When you put it on the bottom,
the protruding magnets on the auxiliary frame
went into pockets on the primary frame,
right?

A.    If it's placed correctly.  If
you just place it sometimes it won't go, but
it can, yeah.

Q.    When you placed it on there
originally, the magnets went into the
pockets, right?

A.    I didn't see.  I didn't look
and see.

Q.    When you place it on the bottom
and the magnets are in the pockets, please do
that, the auxiliary and the primary lenses

95

ZARO

are aligned; is that correct?

    A.    That would be correct.

    Q.    When you placed the auxiliary frame on the top of the primary frame that was made by Revolution, the lenses are not aligned, correct?

    A.    That's correct.

    Q.    So would you agree that those auxiliary frames were made to be bottom mounting?

    A.    Yes, I would agree with that.

    Q.    Put the auxiliary frames back on the primary frames as they were made to be placed?

    A.    On the Revolution one?

    Q.    On the Revolution primary frames.

    A.    Okay.

    Q.    And you placed them on the bottom, correct?

    A.    That's correct.

    Q.    Shake those frames and see if the auxiliary frames fall off.  Are they falling off?

96

```
1                         ZARO
2            A.    No.
3            Q.    Shake them a little harder. Are
4      they falling off?
5            A.    No.
6            Q.    Shake them really hard. Are
7      they falling off?
8            A.    No.
9            Q.    Take the auxiliary frames off,
10     this is Exhibit 100, auxiliary frames off of
11     the Revolution primary frames Exhibit 101
12     and I want you to put the Revolution
13     auxiliary frames 100 onto the Aspex primary
14     frames Exhibit 102.  I want you to hold them
15     up as you did before and I want you to shake
16     them, shake them hard.
17           A.    How hard do you want me to
18     shake them?
19           Q.    What's happening?
20           A.    They are slightly moving a
21     little bit.
22           Q.    Shake them hard enough so it
23     falls off.
24           A.    Okay, after much times, okay.
25           Q.    So what happened to the
```

97

ZARO

1
2  auxiliary frames when you shook -- that were

3  mounted on the Aspex primary frames when you

4  shook them?

5        A.    It fell off.

6        Q.    Would you agree that it fell

7  off because the strength of the magnetic

8  attraction was weaker when you put the

9  auxiliary frames on top than when you put

10  them on the bottom?

11        A.    That would have to be the case.

12        Q.    Would you agree that the

13  Revolution auxiliary frames were not made to

14  be mounted to the top of primary frames?

15        MR. WEIDER: Objection.

16        A.    Not made to or can?

17        Q.    I want to know my question. My

18  question would you agree they are not made to

19  mount on the top of the primary frames?

20        MR. WEIDER: Objection.

21        A.    The fact that it can be mounted

22  both ways as far as made or technically can

23  be mounted.

24        Q.    You keep wanting to come back

25  to can be.

311

ZARO

1

2    claim, but as far as claim construction goes,

3    how to construct a claim, I don't know.

4          Q.    You are not offering any claim

5    construction opinions, are you?

6          A.    Claim construction opinions, I

7    looked at the claim so I really don't know.

8                MR. WEIDER: We are not

9          offering him as an expert on claim

10         construction purposes.

11         Q.    We talked quite a bit earlier

12   today about some specially designed primary

13   frames, do you recall that?

14         A.    Are you referring to the

15   exhibits over here?

16         Q.    Yes.

17         A.    Yes.

18         Q.    Am I correct that no one

19   informed you where those specially made

20   frames came from?

21         A.    I was informed and I think we

22   talked about this before that they came from

23   the Aspex side.

24         Q.    When you say they came from the

25   Aspex side, do you understand they were made

312

ZARO

1

2    at Aspex's direction?

3          A.    Yes.

4          Q.    You also understood that those

5    primary frames were not made or sold by

6    Marchon or Revolution, correct?

7          A.    Correct.

8          Q.    You also understand that those

9    primary frames made by Aspex are not accused

10   infringing products in this case?

11         A.    What do you mean by not accused

12   of?  I want to understand what you mean by

13   that?

14                MR. WEIDER: I need the

15         question read back.

16                (Record read.)

17         A.    They are not infringing

18   products in this case, can you repeat that

19   again.

20                (Record read.)

21         A.    Yes.

22         Q.    They are not accused infringing

23   products because they were not made or sold

24   by Marchon or Revolution, correct?

25         A.    That would be correct.

```
                          ZARO
 1
 2    make it a fair judgment to put them up
 3    against each other because you don't have the
 4    same staple support by having a cavity on top
 5    where the magnet joins into and in the case
 6    of the frame that was made by Aspex, there
 7    was a cavity that was downwards with the
 8    magnet downwards because of the fact that it
 9    was so far away it took away from the
10    magnetic strength of it so it was not equal
11    in the test.
12          Q.    If you wanted to design a test
13    that would compare the magnetism if you are
14    mounting, top mounting that auxiliary on a --
15    if you wanted to design -- withdrawn.
16              MR. WEIDER: I have no further
17          questions.
18               MS. TRUSSO: I have none.
19    FURTHER EXAMINATION
20    BY MR. FLEMING:
21          Q.    One last point, the primary
22    frames made by Aspex are not sold by Marchon,
23    Revolution or Nike, correct?
24          A.    From what I know, no, they are
25    not, you are correct.
```

332

ZARO

1

2     Q.     So there is no one in America

3     who could buy that Aspex specially made

4     primary frame that you did your test with

5     today, correct?

6             MR. WEIDER: Objection.

7     A.     What I tested today were

8     prototypes so those prototypes one of a kinds

9     are not available on the market.

10    Q.     Those were one of a kind

11    products, those primary frames that Aspex had

12    made just for this litigation, correct?

13    A.     I would assume yes.

14    FURTHER EXAMINATION

15    BY MS. TRUSSO:

16    Q.     Just one question on that

17    point, the male and female contact that you

18    just described in your testimony in response

19    to Mr. Weider's question, that female

20    component was made specifically to attach to

21    the male component on the auxiliary frames by

22    Nike, Marchon and Revolution, correct?

23            MR. WEIDER: Objection.

24    A.     From what I'm seeing today it's

25    there today as you showed me those pieces.

EXHIBIT C



### REV525

| Colors | Codes |
|--------|-------|
| Gunmetal | GUN |
| Mahogany | MHGY |
| Pale Copper | PCOP |
| Slate Grey | SLGR |
| Shiny Silver | SSIL |

| Sizes | Bridge | Temples |
|-------|--------|---------|
| 48 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount

PCOP • G-15

Lens Color:



GUN • GREY    MHGY • BROWN    SLGR • GREY    SSIL • GREY

### REV526

| Colors | Codes |
|--------|-------|
| Cocoa | COCO |
| Matte Gun | MGUN |
| Mahogany | MHGY |
| Pale Copper | PCOP |
| Shiny Silver | SSIL |

| Sizes | Bridge | Temples |
|-------|--------|---------|
| 49 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount



PCOP • G-15

Lens Color



MGUN • GREY    MHGY • GREY    COCO • BROWN    SSIL • GREY

48



### REV527

| Colors | Codes |
|---|---|
| Brushed Pewter | BRPT |
| Cocoa | COCO |
| Olive Brown | OLBN |
| Pale Lavender | PLAV |
| Red Lust | RDLS |

| Sizes | Bridge | Temples |
|---|---|---|
| 50 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount

OLBN • G-15                                        Lens Color:





BRPT • GREY      COCO • BROWN      PLAV • GREY      RDLS • BROWN



### REV528

| Colors | Codes |
|---|---|
| Espresso | ESPR |
| Gunmetal | GUN |
| Mahogany | MHGY |
| Matte Black | MBLK |
| Shiny Silver | SSIL |

| Sizes | Bridge | Temples |
|---|---|---|
| 51 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount

SSIL • GREY                                        Lens Color:





MHGY • BROWN      ESPR • BROWN      GUN • GREY      MBLK • GREY

REV 02840



### REV529

| Colors | Codes |
|--------|-------|
| Brushed Pewter | BRPT |
| Cocoa | COCO |
| Mahogany | MHGY |
| Pale Lavender | PLAV |
| Shiny Gold | SGOL |

| Sizes | Bridge | Temples |
|-------|--------|---------|
| 51 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount



SGOL • BROWN                                    Lens Color:






BRPT • GREY      COCO • BROWN      MHGY • GREY      PLAV • GREY



### REV530

| Colors | Codes |
|--------|-------|
| Espresso | ESPR |
| Red Lust | RDLS |
| Satin Black | STBK |
| Shiny Beige | SBEI |
| Shiny Gun | SGUN |

| Sizes | Bridge | Temples |
|-------|--------|---------|
| 51 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount



SBEI • G-15                                      Lens Color:






ESPR • BROWN      RDLS • BROWN      SGUN • GREY      STBK • GREY

50

REV 02841



**REV531**

| Colors | Code |
|--------|------|
| Gunmetal | GUN |
| Lucky Mist | LMST |
| Matte Black | MBLK |
| Pale Plum | PPLM |
| Red Lust | RDLS |

| Sizes | Bridge | Temple |
|-------|--------|--------|
| 51 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount

LMST • G-15    Lens Color:

GUN • GREY    MBLK • GREY    PPLM • GREY    RDLS • BROWN



**REV532**

| Colors | Code |
|--------|------|
| Brushed Pewter | BRP |
| Bronze | BRZ |
| Matte Black | MBLK |
| Shiny Brown | SBRN |
| Shiny Gun | SGUN |

| Sizes | Bridge | Temple |
|-------|--------|--------|
| 51 | 18 | 140 |

Spring Hinge
Magnetic Clip
Polarized Lens
Full Rimless
3-Piece Drill Mount

BRZ • BROWN    Lens Color:

BRP1 • GREY    SBRN • BROWN    MBLK • GREY    SGUN • GREY

52