UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61515-CIV-COOKE

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

    Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

    Defendants.
_____

REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS
<u>REVOLUTION EYEWEAR, INC. AND GARY MARTIN ZELMAN</u>

## I. SUMMARY OF REPLY ARGUMENTS

Defendants Revolution Eyewear, Inc. and Gary Martin Zelman (collectively "Defendants") are entitled to summary judgment on counts II and V of plaintiffs' complaint for patent infringement, Defendants' first affirmative defense and first counterclaim for non-infringement and Defendants' third affirmative defense of *res judicata*/claim preclusion. Plaintiffs' opposition papers fail to create a genuine, triable issue of material fact and the essential facts remain undisputed.

As to claim preclusion, plaintiffs expressly concede that the California Action meets the first three elements of claim preclusion: (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; and (3) between the same parties. (Revolution UMF No. 21; Resp. No. 21.)[1] Plaintiffs also fail to create a triable issue as to the final element of claim preclusion, whether the same cause of action is involved in both cases. In patent infringement cases asserting the same patent, the cause of action in the second suit is the same cause of action as in an earlier suit if the accused products in the two suits are "essentially the same." *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379 (Fed. Cir. 2008). (As discussed in Section II below, plaintiffs are incorrect that this issue is decided under Eleventh Circuit law.) Defendants' evidence, including <u>the accused products themselves</u>, establishes beyond dispute that the accused auxiliary frames in this action are "essentially the same" as the accused auxiliary frames in the California Action. (UMF Nos. 25, 30, 31 and the evidence cited therein.)[2] Plaintiffs essentially concede this point, arguing – incorrectly -- that "it is unnecessary to analyze whether the products at issue here are 'essentially the same' as the products in the First Revolution Action." (Opp. p. 4 fn. 3 (Dkt. No. 124).) Further, the narrowing amendment or addition of claims during reexamination does not, as a matter of law, create a new cause of action for purposes of claim preclusion. *Hoffman v. Wisner Classic Manufacturing Co.*, 927 F.Supp. 67, 73 (E.D.N.Y. 1996).

Defendants' motion for summary judgment also establishes that plaintiffs are bound by the claim construction rulings in the California Action and that the accused products do not infringe based on those constructions. Specifically, the California Court ruled: (1) the invention

---

[1] "UMF No. __" refers to the numbered paragraphs in defendants' Statement of Undisputed Material Facts.

[2] As discussed below, the evidence cited by plaintiffs in response to UMF Nos. 25, 30 and 31 actually <u>supports</u> the fact that the accused products are essentially the same and does not create a triable issue of fact.

of the '545 patent was limited to a top-mounting auxiliary frame; (2) a magnetic member on the auxiliary frame "having a horizontal surface" means a magnetic member having a <u>downwardly facing surface</u>; and (3) arms "extending across a respective extension" means that the arms reach <u>across the top</u> of the corresponding extension of the primary frame.[3] It is undisputed that Revolution's auxiliary frames are <u>bottom-mounting</u>, **not** top-mounting; undisputed that the arms do **not** secure a magnetic member having a <u>downwardly facing surface</u>; and undisputed that the arms are adapted to extend <u>underneath,</u> **not** across the top of, the primary frame. (UMF Nos. 26 – 28, and supporting evidence, including the frames themselves.) As addressed below, the conclusory testimony of plaintiffs' expert is inconsistent with the indisputable physical evidence and does not create a triable issue of fact.

Further, arms "adapted to" extend across the top of the primary frames, does not mean the arms merely be "capable of" being placed across the top in some non-functional, unintended way. See section VII below. It is undisputed that when one attempts to place the arms across the top of the primary frame, the lenses are badly misaligned and the auxiliary frames are unstable and do not adhere to the primary frames – that is, the arms are specifically adapted <u>not to</u> extend across the top of the primary frames. (See section VIII below.)

In sum, plaintiffs' causes of action for patent infringement are barred under the doctrine of *res judicata,* the accused products do not infringe based on issue preclusion or an independent claim construction, and the indisputable physical facts regarding the structure of the accused products.

## II. PLAINTIFFS' CLAIMS ARE BARRED BASED ON CLAIM PRECLUSION

Plaintiffs do not dispute that the California Action meets the first three elements of claim preclusion: "(1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; and (3) the parties, or those in privity with them, are identical in both suits." See *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999); UMF No. 21; Resp. No. 21 (Plaintiffs argue that the judgment in California Action is not material, but "otherwise do not dispute this paragraph.") Of course, the facts establishing the elements of res judicata are <u>highly material</u> to plaintiffs' infringement claims and defendants' defenses. See

---

[3] The claim construction ruling in a prior case <u>between the same parties</u> resulting in a final judgment is binding. See, e.g., *In re Freeman*, 30 F.3d 1459, 1469 (Fed. Cir. 1994); section IV below. Regardless, any contrary constructions would fail to meet the written description requirement of 35 U.S.C. § 112(1). See section V below.

2

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (the substantive law will identify which facts are material.)[4]

The final element of claim preclusion is whether the same cause of action is involved in both cases. *Ragsdale*, 193 F.3d at 1238. The Federal Circuit has repeatedly held that the issue of whether two claims for infringement constitute the "same claim" is an issue particular to patent law and thus Federal Circuit law applies.[5] Under Federal Circuit law, an infringement claim in a second suit is the "same claim" as in an earlier infringement suit if the accused products in the two suits are "essentially the same." *Roche*, 531 F.3d at 1379. Accused products "are 'essentially the same' where the differences between them are merely 'colorable' or 'unrelated to the limitations in the claim of the patent.'" *Roche*, 531 F.3d at 1379.

Defendants' evidence, including the accused products themselves, photographs of the accused products, the testimony of Revolution's CEO, and even the testimony of the plaintiffs themselves, establishes beyond dispute that the accused auxiliary frames in this action are "essentially the same" as the accused auxiliary frames in the California Action. (UMF Nos. 25, 30, 31 and the evidence cited therein.) There are no differences in any way related to the limitations of the claims in the '545 patent. (UMF No. 30, 31.) While plaintiffs purport to dispute these undisputed facts, the <u>evidence</u> they cite actually supports them. Specifically, in response to UMF Nos. 25 and 31, plaintiffs cite the Zelman Declaration, which <u>along with the photographs and samples of the frames themselves</u>, establish that the accused auxiliary frames are essentially the same; indeed, they are identical with respect to the limitations of claims 23 and 35 of the '545 patent. (Resp. Nos. 25, 30, 31, citing Zelman Decl. ¶ 4 (with respect to the limitations of asserted claims 23 and 35, "all of the auxiliary frames for both the old primary frames and the redesigned primary frames for the accused products are identical."))[6] Significantly, plaintiffs never identify

---

[4] When plaintiffs are unable to dispute a fact they often simply argue, without support, that the fact is not material (see, e.g., Resp. Nos. 4-25) and/or state that it is disputed, without even citing any evidentiary support (see, e.g., Resp. Nos. 15-17, 19-20). Argument, without citation to specific and sufficient evidence, does not create a triable issue of fact. See *Anderson*, 477 U.S. at 248-249.

[5] *Roche*, 531 F.3d at 1379; *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008); *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1294 (Fed. Cir. 2001); see also *SciMed Life Sys. v. Advanced Cardiovascular Sys., Inc.*, 1999 WL 33244568 at *1, n. 1 (N.D. Cal. 1999) (holding that Federal Circuit law, not Ninth Circuit law, applies to determine whether two causes of action for patent infringement are the same).

[6] Plaintiffs cite the Zaro Declaration in their Response to UMF No. 25, but not with respect to their contention that the accused products are not "essentially the same". Plaintiffs also cite in

3

any purported differences in the accused auxiliary frames from the two actions. (See Opp. p. 4.)

Instead, plaintiffs argue that "[b]ecause Plaintiffs could not have brought the claims at issue here in the First Revolution Action, it is unnecessary to analyze whether the products at issue here are 'essentially the same' as the products in the First Revolution Action." (Opp. p. 4 fn. 3.) Plaintiffs are wrong in several respects. First, it <u>is</u> necessary to perform this analysis under the applicable law. Plaintiffs argue that the "same cause of action" issue must be analyzed under Eleventh Circuit law, citing *Transclean Corp. v. Jiffy Lube Intern., Inc.*, 474 F.3d 1298, 1304 (Fed. Cir. 2007). (Opp. p. 2.) In *Transclean*, the disputed issue was whether the plaintiff was bound by judicial admissions regarding privity. *Id.* The Federal Circuit applied Eighth Circuit law to that issue because it is not particular to patent law, while applying Federal Circuit law to issues that are particular to patent law. *Id.* at 1303-04 (applying Federal Circuit law to the issue of whether plaintiff could recover infringement damages from both manufacturer and user of accused product). As established above, the Federal Circuit has repeatedly held that the issue here, whether the two causes of action for <u>patent infringement</u> are the same, <u>is particular to patent law</u>, and Federal Circuit law applies. (*Roche, Acumed, Foster, supra*)

In any event, the result would be the same under Eleventh Circuit law because the cause of action asserted here <u>was</u> in existence and <u>could</u> have been brought at the time plaintiffs' claim of infringement was asserted in the California action. Indeed, under both the Eleventh Circuit and Federal Circuit standards, the cause of action asserted here <u>was brought</u> in the California Action. In the Eleventh Circuit, "[t]he doctrine of res judicata bars all subsequent suits raising allegedly new theories, unless a <u>substantial change</u> in the underlying facts or law has transpired." *Jaffree v. Wallace*, 837 F.2d 1461, 1469 (11th Cir. 1988) (emphasis added). This is quite similar to the Federal Circuit standard applicable here, where res judicata bars a second suit for patent infringement unless there was a substantial change in the accused products – i.e., unless the accused products are <u>not</u> "essentially the same". In *Jaffree*, the Eleventh Circuit found that a second action was barred by res judicata even where the focus of the second action concerned events that occurred <u>after the filing of the first action</u> because those events arose directly from the same "nucleus operative of facts", involving the same "primary right and duty." *Id.*

Events that arise out of a series of connected transactions (e.g., sales of substantively

---

Resp. Nos. 30 and 31 excerpts of the deposition transcript of Al Berg, the CEO of Marchon Eyewear, relating solely to <u>Marchon</u> products, <u>not Revolution</u> products.

4

identical products) are deemed to arise out of a common nucleus of operative fact. *Ragsdale*, 193 F.3d at 1239. In analyzing this issue, it is:

> appropriate to ask how far the witnesses or proofs in the second action would tend to overlap the witnesses or proofs relevant to the first. If there is a substantial overlap, the second action should ordinarily be held precluded. But the opposite does not hold true; even when there is not a substantial overlap, the second action may be precluded if it stems from the same transaction or series. Restatement (Second) of Judgments § 24(2) cmt. b (1980).

Here, the two causes of action involve: a common nucleus of operative fact consisting of a series of connected transactions (the sales of substantively identical products); substantial overlap of proofs (comparing the substantively identical products to the claims of the '545 patent); and the same primary rights and duties (plaintiffs' rights under the '545 patent).[7] Contrary to plaintiffs' argument, the <u>narrowing</u> amendment of claim 23 and the addition of the even narrower dependent claim 35 in reexamination do not create new primary rights or duties, and thus do not create a new cause of action for infringement. This precise issue was addressed in *Hoffman*, supra, 927 F.Supp. at 73, which held that the addition of new patent claims through reexamination does not create a new cause of action for purposes of res judicata because claims added through reexamination are necessarily, by statutory requirement, narrower than the original claims. 35 U.S.C. § 305. In other words, to the extent plaintiffs can now assert infringement of claim 23, they certainly could have asserted infringement of claim 23 as it existed before reexamination. Lacking a bona fide response to *Hoffman*, plaintiffs simply misrepresent it, stating that "the reexamined patent did not include any new claims." (Opp. p. 6.) Plaintiffs are simply wrong: "Because the '860 patent's claims were narrowed by the **addition of claims 4-7**, and because it has already been concluded that any prior action for infringement of the original patent has been adjudicated in favor of the defendant, Wisner cannot now be deemed guilty of infringing upon this new, narrower patent." *Id.* (emphasis added). It is beyond logic and plaintiffs have presented no legal authority that a <u>narrowing</u> amendment on reexamination revives a cause of action for infringement that was legally barred.[8]

---

[7] Under plaintiffs' argument, every sale of an identical product after the filing of a patent infringement lawsuit would create a new cause of action for infringement because the plaintiff "could not have brought" claims for the subsequent sales. Even plaintiffs do not contend this is the law.

[8] Plaintiffs' reliance on *Plastic Container Corp. v. Continental Plastics*, 607 F.2d 885 (10th Cir. 1979), is fundamentally misplaced. That case involved reissue, not reexamination, and a prior adjudication of invalidity. Because the patent claims were amended by reissuance specifically to

5

Plaintiffs also argue that "several courts have [refused] to apply the bar of res judicata to subsequent litigation between parties arising from patents that covered separate and distinct inventions." (Opp. pp. 4-5.) Again, plaintiffs are wrong on both the law and its application to this case.[9] The *Biogenex* case that plaintiffs attempt to distinguish at page 5, footnote 4, plainly did not "involve patents that covered separate and distinct inventions." Rather, it held that a patent plaintiff was barred from asserting patent claims in a new patent action that it had failed to assert in an earlier case on the same patent. Here, the same patent that was asserted in the California Action is being asserted here, and res judicata plainly applies.

Thus, under both Federal Circuit and Eleventh Circuit authority, the cause of action for infringement asserted in this case <u>was</u> in existence and was <u>actually brought</u> in the California Action, Plaintiffs had a "full and fair opportunity to litigate" a cause of action for infringement of claim 23 and res judicata "protects [Revolution] from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Ragsdale*, 193 F.3d at 1238.

### III. PLAINTIFFS' CLAIMS ARE BARRED AS UNASSERTED COMPULSORY COUNTERCLAIMS

Defendants' motion established that plaintiffs' cause of action for infringement of claim 23 was a compulsory counterclaim in the California Action. *Polymer Indus. Products Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003); *CIVIX-DDI, LLC v. Expedia, Inc.*, 2005 U.S. Dist. LEXIS 9493 at *13 (N.D. Ill. 2005); UMF Nos. 2-3. Plaintiffs' opposition is a rehash of its incorrect claim preclusion arguments and simply assumes that plaintiffs could not have asserted claim 23 in the California Action. Once again, if plaintiffs can assert infringement of narrowed claim 23 and narrower claim 35 in this action, they certainly could have asserted infringement of broader claim 23 against the essentially identical auxiliary frames at issue in the California Action. Plaintiffs' attempt to re-litigate infringement claims against Revolution's

---

cure the bases for the prior invalidity ruling, the Tenth Circuit held that the patentee was not collaterally estopped as to invalidity. In other words, the narrowing of an invalid patent claim can render it valid, but the narrowing of a patent claim cannot create an infringement if the broader claim was not infringed in the first place.

[9] *Biogenex Labs., Inc. v. Ventana Med. Sys., Inc.*, 2005 WL 1869342 at *3 (N.D. Cal. 2005). The *Kearns* and *Scimed* cases cited by plaintiffs declined to apply res judicata <u>only</u> with respect to patents not asserted in a prior action. *Kearns v. General Motors Corp.*, 94 F.3d 1553, 1556-57 (Fed. Cir. 1996); *SciMed*, 1999 WL 33244568 at *2. Indeed, the *Kearns* case barred claims for infringement of five patents that had been asserted in the prior action. 94 F.3d at 1557.

6

auxiliary frames is precluded by established law and sound policy.

## IV. THE CLAIM CONSTRUCTION IN THE CALIFORNIA ACTION IS BINDING

The claim construction ruling in a prior case <u>between the same parties</u> resulting in a final judgment is binding based on issue preclusion/collateral estoppel. *In re Freeman*, 30 F.3d 1459, 1469 (Fed. Cir. 1994); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987); *Molinaro v. Fannon/Courier Corp.*, 745 F.2d 651, 655 (Fed. Cir. 1984). Judge Baird's claim construction ruling in the California Action addressed identical issues (magnetic members "having horizontal surfaces" and arms "extending across" the primary frame), was fully and fairly litigated, resulted in partial summary judgment of non-infringement of claims 6 and 34 and a final judgment, and was upheld on appeal. (Hanle Decl. Exs. E, F.) Once again, plaintiffs attempt to evade established Federal Circuit law by misleading citations to completely inapplicable district court cases addressing the effect of claim construction rulings in earlier cases <u>between different parties</u>. (Opp. p. 14)[10] However, plaintiffs admit that "a claim term <u>cannot</u> be given a different meaning in the various claims of the same patent". *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999) (emphasis added); see Opp. p. 14, n. 7. Thus, because the California Court's constructions of "having a horizontal surface" and "extending across" are binding for claims 6 and 34, those constructions are also binding with respect to claim 23.[11]

## V. AN INDEPENDENT CLAIM CONSTRUCTION REQUIRES TOP-MOUNTING AUXILIARY FRAMES

As more fully set forth in defendants' opposition to plaintiffs' motion for partial summary judgment, the California Court's claim constructions are confirmed by an independent construction of the claims. (See DE 131 § IV.B-C.) Judge Baird aptly summarized the relevant facts concerning claim construction of the '545 patent as follows: "the invention described is

---

[10] *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 2006 WL 1751779, *1 (E.D. Tex. June 21, 2006); *Nilssen v. Motorola, Inc.*, 80 F. Supp. 2d 921, 924 n. 4 (N.D. Ill. 2000); *Texas Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 582-83 (E.D. Tex. 2002). In *800 Adept, Inc. v. Murex Securities, Ltd.*, 2006 WL 2228925, *13 (M.D. Fla. April 3, 2006), defendants provided no details of the claim construction by the earlier court and did not even contend that issue preclusion should apply.

[11] Plaintiffs' argument that the California Court made inconsistent constructions of claims 6 and 22 is both wrong and misleading. (See Opp. pp. 14-15.) Because claim 22 does not have a "horizontal surface" limitation (or even mention a "surface") (see claim 22 at col. 6), there was no basis for the California Court to construe such a surface as either upwardly or downwardly facing. Here, claim 23 contains the identical limitation of claim 6 -- "having a horizontal surface" -- that was construed by the California Court.

7

clearly for a top-mounting design: the written description only describes a top-mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned anything other than a top-mounting design." (DE 112-4 p. 32 of 40.)[12] Accordingly, claim 23 must be construed to require a *downwardly facing* surface on the auxiliary frame magnets, arms that are configured to extend *across the top* of the primary frame, and vertical engagement of the auxiliary frames *from the top* of the primary frames. Any contrary constructions would render claims 23 and 35 invalid for failure to meet the written description requirement of 35 U.S.C. § 112(1), and would be contrary to the binding claim constructions in the California Action.

## VI. THE ACCUSED AUXILIARY FRAMES LACK MAGNETIC MEMBERS HAVING DOWNWARDLY FACING SURFACES

It is undisputed that the magnetic member surfaces on the accused auxiliary frames are upwardly facing, and that the downwardly facing surface on the auxiliary frames is epoxy, not a magnetic member. (Hanle Decl. (DE 112) ¶ 18, Ex. L; Zelman Decl. (DE 133-1) ¶¶ 2-4.) Plaintiffs seek to gloss over this fatal flaw in their case with the cavalier statement that "these other elements all relate to the same concept of whether Revolution's auxiliary frames are adapted to reach across the top of a primary frame." (Opp. p. 8 n. 5.) Of course, defendants are entitled to summary judgment if <u>any</u> limitation of claim 23 is not met. The self-serving, uncorroborated and, frankly, bizarre testimony of plaintiffs' expert that an epoxy covering an arm covering a magnet is a magnetic member surface does not create a triable issue of fact, particularly in light of the deposition admissions of plaintiffs' own expert. (Zaro Depo. pp. 57-60 (DE 133-2 pp. 13-16 of 30)); see *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993) ("When an expert opinion is not supported by sufficient evidence to validate it in the eyes of the law, or when indisputable record facts render the opinion unreasonable, it cannot support a jury verdict" or establish a genuine issue of material fact);

---

[12] It is established law that the claims of a patent do not "enlarge what is patented beyond what the inventor described as the invention." *Netword LLC v. Centraal Corp.*, 242 F.3d 1347, 1349 (Fed. Cir. 2001). The invention described and depicted in the specification <u>requires</u> top-mounting auxiliary frames. Only this configuration allows arms on the auxiliary frame "for extending over and for engaging with the upper portion of the primary spectacle frame" and magnets on the auxiliary frame "extended downward toward ... the primary spectacle frame." ('545 patent Col. 1:55-58; Col. 2:5-7, Figs. 1-7; see Sodano Decl. (DE 133-3) ¶¶ 15-20.) Indeed, the inventor never even thought of bottom-mounting auxiliary frames until he saw Revolution's frames many years after he applied for and received a patent and, thus, had no reason to describe them in the specification. (UMF No. 10.)

8

*Ralston Purina Co. v. Hobson*, 554 F.2d 725, 729 (5th Cir. 1977) ("Evidence manifestly at variance with the laws of nature and the physical facts is of no probative value and may not support a jury verdict.").[13]

## VII. "ADAPTED TO" DOES NOT MEAN "CAPABLE OF"

Plaintiffs attempt to salvage their doomed argument that Revolution's bottom-mounting products can infringe plaintiffs' top-mounting patent by arguing that "adapted to extend across the top" means merely "capable of extending across the top". Plaintiffs are incorrect as a matter of law, as more fully set forth in defendants' opposition to plaintiffs' motion for partial summary judgment. (See DE 131 § IV.D, and the cases cited therein holding that "adapted to" should be construed as "configured to").) Plaintiffs' additional arguments in their opposition are easily rejected. Plaintiffs' attempt to morph the words of the claim from "adapted to" to "adaptability" to "capability" (Opp. p. 9) is as transparent as it is disingenuous. The '545 patent specifically uses "adapted to" in claim 23 and "capable of" in claim 22; these different words are presumed to have different meanings. Similarly, *Intel Corp. v. U.S. Int'l Trade Com'n*, 946 F.2d 821, 832 (Fed. Cir. 1991), simply does not apply because the claim at issue there "called for a 'programm*able* selection means' and thus required only that an accused device be capable of operating in the enumerated mode." (Italics added.) Several cases have recognized that the result in *Intel* was dependent on the permissive language of the claim. *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293 (Fed. Cir. 2005); *Fantasy Sports, Inc. v. SportsLine.com, Inc.*, 287 F.3d 1108, 1117-18 (Fed. Cir. 2002); *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555-56 (Fed. Cir. 1995). The result in *Intel* would have been entirely different if the claim required the accused device to be "programmed to" or "adapted to" operate in the enumerated mode, because it was undisputed that the accused device was <u>not</u> programmed to operate in the claimed mode. See 946 F.2d at 832.

## VIII. REVOLUTION'S ARMS ARE NOT CONFIGURED TO EXTEND ACROSS THE TOP OF *ANY* PRIMARY FRAMES

---

[13] If the parties only dispute claim construction and the relevant facts concerning the structure and operation of the accused products are undisputed, as here, "the question of literal infringement collapses into claim construction and is amenable to summary judgment." *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997); see also *Mymail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1378 (Fed. Cir. 2007). Summary judgment on a claim of literal infringement issue is appropriate "when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device." *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998).

9

Similarly here, it is undisputed that: (1) the arm on the accused auxiliary frame is configured to extend <u>underneath</u> the primary frame; and (2) when one attempts to place the arm across the top of the primary frame, the lenses are badly misaligned and the auxiliary frames do not adhere to the primary frames – that is, the arms are specifically adapted <u>not to</u> extend across the top of the primary frames.. (Hanle Decl. ¶ 18, Ex. L; Zelman Decl. (DE 133-1) ¶¶ 4, 9; Trusso Decl. (DE 133-2) ¶ 4; Chao Depo. pp. 217-219.[14]) Again, the conclusory and unsupported declaration statement of plaintiffs' expert that the arms are adapted to extend across the top simply because one can put them there does not create a <u>genuine</u> issue of fact in light of the indisputable physical evidence (see *Brooke Group, supra; Ralston Purina, supra*) and the plaintiffs' expert's own deposition admissions.[15] (Zaro Depo. pp. 93-97 (DE 133-2 pp. 17-21 of 30) (when the auxiliary frames are top-mounted, they are misaligned and easily fall off).)[16]

## IX. CONCLUSION

Based on the applicable law and the undisputed facts, Defendants Revolution Eyewear, Inc. and Gary Martin Zelman are entitled to summary judgment on counts II and V of plaintiffs' complaint for patent infringement, their first affirmative defense and first counterclaim for non-infringement, and their third affirmative defense based on res judicata.

---

[14] A true and correct copy of the cited pages of the deposition transcript of David Chao are attached hereto as Exhibit A.

[15] Under plaintiffs' argument, any physical object would be "adapted to extend across" the top of the primary frame extensions if it could be balanced in that position

[16] Plaintiffs desperate attempt efforts to place Revolution's auxiliary frame on top of a bogus primary frame made by Aspex does not change the result. Because the magnetic surface is on top and the rounded epoxy surface is on the bottom, the auxiliary frames still do not "vertically engage corresponding magnetic members on a primary spectacle frame" as required by the claim; that is, they easily fall off, contrary to the written description of the invention. (Sodano Decl. (DE 133-2) ¶ 55.) In other words, there is not a single adaptation which makes the arms suitable for top-mounting, and they are not "adapted to extend across" the top of the primary frame.


Respectfully submitted,

s/ Steven M. Hanle
Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone:   714.513.5100
Telecopy:    714.513.5130

and

s/ Janet T. Munn
Janet T. Munn
jmunn@rascoklock.com
Florida Bar No. 501281
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL 33134
Telephone: 305.476.7100
Telecopy: 305.476.7102

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC and Gary Martin Zelman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.

By: s/ Janet T. Munn
Janet T. Munn

## SERVICE LIST

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310

Scott W. Hansen, Admitted Pro Hac Vice
email: shansen@reinhartlaw.com
**REINHART BOERNER VAN DEUREN**
1000 N. Water Street
PO Box 2965
Milwaukee, WI 53201-2965
Telephone: 414.298.8123
Telecopy: 414.298.8097

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
email: schindlerb@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

Todd Schleifstein, Admitted Pro Hac Vice
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, NJ 07932
email: schleifsteint@gtlaw.com
Telephone: 973.360.7900
Telecopy: 973.301.8410

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email: ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email: bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email: dherman@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
email: pfleming@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone: 212.588.0800
Telecopy: 212.588.0500

Mark P. Walters, Admitted Pro Hac Vice
email: mwalters@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
1191 2nd Avenue, Suite 2000
Seattle, WA 98101
Telephone: 206.336.5690
Telecopy: 212.588.0500