UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

 Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

 Defendants.
_____/

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION THAT DEFENDANTS REVOLUTION EYEWEAR, INC. AND MARCHON EYEWEAR, INC.  LITERALLY INFRINGE CLAIMS 23 AND 35 OF THE '545 PATENT**

 Plaintiffs' opening brief and supporting evidence demonstrates that the auxiliary spectacle frames of Defendants Revolution Eyewear, Inc. ("Revolution") and Marchon Eyewear, Inc. ("Marchon") (collectively, "Defendants") are "adapted" to reach across the top or bottom of "*a* primary spectacle frame," and therefore literally infringe new claims 23 and 35 of the reexamined '545 patent even under Defendants' proposed claim construction.

 Plaintiffs having met their burden initial burden on summary judgment, Defendants must present "specific facts" showing that there is a genuine issue for trial to defeat Plaintiffs' motion. Defendants' oppositions fail to present any such "specific facts", and instead, rely upon legally and factually irrelevant and illogical arguments as shown below.  Defendants' arguments should be rejected, and summary judgment of literal infringement should be granted.

**I.    Defendants' "Reach Across The Top" Claim Construction Does Not Defeat Summary Judgment.**

Defendants devote substantial portions of their oppositions arguing that the Court should limit claims 23 and 35 to cover only auxiliary frames that "reach across the top" of a primary frame.[1]  Their arguments are wrong.  As Plaintiffs have already explained, a California Court's construction of different claims of the '545 patent is not binding on this Court, and should not be used to re-write the plain and unambiguous language of new claims 23 and 35.  *See* Plaintiffs' Opposition To Revolution's Motion For Summary Judgment at pgs. 13 to 16.  Significantly, Defendants do not even argue that their auxiliary frames do not meet each and every element of new claims 23 and 35 as they are written.

But equally as significant for purposes of this motion, and as shown below, Defendants cannot defeat summary even if their claim construction is adopted.

**II.    Defendants' Auxiliary Frames Are Adapted To Reach Across The Top Of A Primary Frame.**

**A.    Defendants Offer No Specific Facts To Contest Infringement.**

It is undisputed that the plain language of new claims 23 and 35 merely require that the claimed auxiliary spectacle frame be adapted to magnetically engaging "*a* primary spectacle frame", and not any particular primary spectacle frame.  It is also undisputed that both the upper and lower horizontal surfaces of the magnetic members of Defendants' auxiliary frames exhibit magnetic attractive forces.  As a result, Defendants' auxiliary frames are adapted to being  stably bottom-mounted *or* top-mounted to a primary spectacle frame.

Based on the undisputed facts, and the plain language of new claims 23 and 35, Plaintiffs

---

[1]  Revolution also repeats the same *res judicata* arguments it makes in its motion for summary judgment. Plaintiffs have responded to the arguments elsewhere and incorporate that response herein by reference. *See* Plaintiffs' Opposition To Defendants Revolution Eyewear, Inc.'s and Gary Martin Zelman's Motion For Summary Judgment at pgs. 2-8.

demonstrated literal infringement of new claims 23 and 35 by: (a) constructing a primary spectacle frame for each of three exemplary infringing auxiliary frames; and (b) without modifying the auxiliary frames in any manner whatsoever, stably top-mounting each of Defendants' auxiliary frames to the primary frame such that the arms and magnetic members of the auxiliary frames extend across the top of the primary frame, and such that the auxiliary frame lenses perfectly align with the primary frame lenses[2]  *See* Ifergan Decl. ¶¶ 2-5 (describing the construction of the primary frames); Zaro Decl. ¶ 8 (at pg. 13) (showing that Defendants' auxiliary frames are adapted to extend across the top of a primary frame). The photographs below illustrate the stable top-mounting adaptability of Defendants' auxiliary frames:

  

Revolution Auxiliary          Marchon Auxiliary          Nike Branded Marchon Auxiliary

This same manner of proving literal infringement (*i.e.*, by constructing a frame to prove the claimed "capability" requirement) was specifically endorsed by the Federal Circuit in *Revolution Eyewear, Inc. v. Aspex Eyewear, et al*, 563 F.3d 1358, 1369-70 (Fed. Cir. 2009) (auxiliary spectacle frame constructed and stably top-mounted to an unmodified primary

---

[2] Defendants repeatedly suggest that Plaintiffs have somehow failed to inform the Court that it used primary frames other than Defendants' primary frames in establishing that their auxiliary frames are adapted to extend across the top of a primary frame. *See e.g.* Marchon Opp. Brief at 2.  They are wrong. The facts with respect to the construction of the specially made primary frames are set out fully in the Declaration of Thierry Ifergan and in Plaintiffs' Statement Of Undisputed Facts submitted in support of Plaintiffs' motion.

spectacle frame established literal infringement of claim 22 of the original '545 Patent, which is directed to a primary spectacle frame capable of magnetically engaging an auxiliary spectacle frame).

As discussed, Defendants' auxiliary frames are adapted to engage either the bottom or the top of a primary frame because the magnetic members have horizontal surfaces that are both upward and downward facing. Below are two photographs showing different views of the Nike Branded Marchon auxiliary frame, which are set out in the Zaro Decl. ¶ 8 (pgs. 7-8). The left side is a top view showing one of the upward facing surfaces and the right side is a bottom view showing one of the downward facing surfaces. Both top and bottom surfaces have magnetic attraction and thus are adapted to engage the top or bottom of a primary frame.




Top View                                                                                Bottom view

Defendants offer no "specific facts" to contest this factual showing. According to Marchon's attorneys, "the auxiliary frames still fall off and are not securely attached" when they are attached to the top of primary frames shown in the above photographs. Marchon Opp. Brief at 2. Similarly, Revolution's attorneys contend that the "attraction" of its auxiliary frame with the primary frame shown in the above photographs "is weak, and the auxiliary frames detach easily." Revolution Opp. Brief at 19 fn. 12. What is missing, however, is even a single factual citation to support these statements. Indeed, the Defendants have hired a technical expert for this case, Joel Sodano, yet they cite to no opinions from Sodano supporting the Defendants'

position.³  Thus, the Defendants rely exclusive on attorney argument to argue non-infringement, but attorney arguments do not constitute evidence or "specific facts" that can defeat summary judgment.  *Ferring B.V. v. Barr Laboratories, Inc.,* 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("Conclusory allegations and attorney arguments are insufficient to overcome a motion for summary judgment.").

The only other argument Defendants make with respect to the top-mounted engagement shown in the above photographs is their contention that their auxiliary frames do not have "magnetic member[s] having a [downwardly facing]⁴ horizontal surface" because the bottom of the magnet surface contains an epoxy coating.  *See e.g.* Marchon Opp. Brief at 9; Revolution Opp. Brief at 19 fn. 12.  This argument must fail for two reasons.

First, new claims 23 and 35 contain no requirement that the magnetic surfaces on the auxiliary frame be exposed without a coating.  The claims merely require that the magnetic members have a "horizontal surface."  Defendants cite nothing from the '545 patent or its prosecution history that would bring magnetic members having an epoxy coating outside the scope of new claims 23 and 35.  Second, the epoxy coating on Defendants' auxiliary frames does not in any way prevent the magnetic attraction exhibited by the downwardly facing horizontal magnetic surfaces of the Defendants' auxiliary frames.  Indeed, Defendants provide no support for their argument that the engagement is supposedly "weak."

---

³ Buried in Mr. Sodano's expert report at paragraph 55 is the unsupported conclusory line that "the attraction is weak, and the auxiliary frames detach easily."  No factual basis is provided for the statement.  Unsupported expert conclusions are not sufficient to defeat summary judgment.  Novartis Corp. v. Ben Venue Labs., 271 F.3d 1043, 1050-51(Fed. Cir. 2001) ("If all expert opinions on infringement or noninfringement were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation")

⁴ The phrase "downwardly facing" is language that Defendants themselves created for their construction of claim 23 based on their contention that claim 23 should be limited to an auxiliary frame adapted to "extend across the top of" a primary frame.

The extent of Defendants' "support" for this position is a citation to the conclusory opinion of their expert Sodano that epoxy does impede magnetic properties. Marchon Opp. Brief at 9. Glaring absent, however, is any evidence that epoxy coating impedes magnetic engagement to the point that Defendants' auxiliary frames cannot be stably top-mounted to a primary frame. It is black letter law that conclusory and irrelevant expert opinions cannot defeat summary judgment. *Novartis Corp. v. Ben Venue Labs.,* 271 F.3d 1043, 1050-51(Fed. Cir. 2001) ("If all expert opinions on infringement or noninfringement were accepted without inquiry into their factual basis, summary judgment would disappear from patent litigation")

Moreover, new claims 23 and 35 do not contain any language specifying the necessary strength of the magnetic engagement. Even under Defendants' proffered claim construction, the claim only requires that the auxiliary frames have arms with "magnetic member[s] having a [downwardly facing] horizontal surface" that are "adapted to extend [across the top] of a primary frame." That an epoxy coating might somehow weaken the magnet strength does not change the fact that Defendants' auxiliary frames have sufficient magnetic attraction at their downwardly facing surfaces to stably engage across the top of a primary spectacle frame.

**B.     Defendants' Non-Infringement Arguments Based On Their Own Commercially Sold Primary Frames Are Irrelevant.**

Unable to come forward with "specific facts" showing that their auxiliary frames are not adapted to "extend [across the top of] *a primary frame"*, Defendants argue at length that their auxiliary frames do not meet this limitation because the lenses are not aligned and the auxiliary frames are unstable and readily fall off when placed on top of *their* commercially sold primary frames. But new claims 23 and 35 do not require that the auxiliary frame must be adapted to engage any *particular* primary frame -- such as Revolution's or Marchon's primary frames. Rather, claims 23 and 35 simply require that the auxiliary frame be adapted to perform the

6

functions described in the claims when engaged with "*a* primary spectacle frame." The Federal circuit came to the very same conclusion with respect to claim 22 of the '545 Patent in *Revolution Eyewear, Inc. v. Aspex Eyewear, et al*, 563 F.3d at 1369-70.

The seminal case on the infringement of patent claims containing adaptability or capability language is *Intel Corp. v. United States Int'l Trade Com'n,* 946 F.2d 821 (Fed. Cir. 1991). In *Intel,* the patent claimed an EPROM memory chip with page mode addressing capability. The claim at issue required "programmable selection means." The infringer argued it did not infringe because: (1) although its chips were capable of being programmed to perform the claimed page mode addressing, the chips "were never sold to operate in page mode"; (2) "no customer was ever told how to convert the chip to page mode operation"; and (3) "an alleged infringer must intend its parts to be used in an infringing fashion." *Id.* at 832.

The Federal Circuit disagreed: "Because the language of claim 1 refers to *'programmable* selection means' and states 'whereby *when* said alternate addressing mode is selected', the accused device, to be infringing, need only be capable of operating in the page mode. Contrary to [the infringer's] argument, actual page mode operation in the accused device is not required." *Id*. (emphasis added). The Court further ruled that "there is no intent element to direct infringement," and that the authority relied upon by the infringer dealt "with induced and contributory infringement and is therefore inapposite." *Id.*

"Adapted" to perform a function is not analyzed any differently than "capable" of performing a function. In *R.A.C.C. Indus., Inc. v. Stun-Tech, Inc.,* 178 F.3d 1309, 1998 WL 834329 (Fed. Cir. 1998), the patent was directed to remotely activated stun belts for restraining prisoners. The claims at issue required the belt to be "*adapted* for concealment beneath garments ordinarily worn by ordinary persons," and "concealable beneath said appropriate clothing of said prisoner." *Id.* at *2 (emphasis added). The District Court granted summary judgment of

infringement to RACC. On appeal, Stun-Tech argued non-infringement for the following reasons: (1) the claims required actual concealment during actual use; and (2) Stun-Tech's belts were "primarily used in open prisoner transport situations often in combination with handcuffs and shackles -- far from a concealment situation." *Id*. Citing *Intel,* the Federal Circuit affirmed the District Court, ruling that the claims did not require actual concealment, but only the ability of being concealed: "Claim 1 recites a mounting means 'adapted for concealment' while claim 4 recites a 'means concealable beneath said appropriate clothing.' *Id.* In short, the adaptability language in claims 1 and 4 broadened the scope of the claims to include devices ***adaptable*** to being concealed, whether or not the devices were ***actually concealed in use***.

Indeed, this concept is not a new one for the parties. The scope of a claim containing capability-type language was before the Federal Circuit in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., supra*. That case involved the scope of claim 22 of the '545 Patent, which is directed to a primary frame. The dispute was over the interpretation of the language "said first magnet members [of a primary frame] capable of engaging second magnetic members of an auxiliary spectacle frame." There, similar to here, Revolution argued that there was "no infringement because Revolution's primary frame is not capable of being top-mounted with its counterpart auxiliary frame or any commercially sold auxiliary frame." *Id.* at 1369. The Federal Circuit rejected Revolution's argument and reaffirmed *Intel*, stating:

> Revolution's argument misses the point. Claim 22 recites "said first magnetic members ***capable*** of engaging second magnetic members of an auxiliary spectacle frame. … Just like the accused products in *Intel*, Revolution's primary frames, although not specifically designed or sold to be used with top-mounting auxiliary frames, are nevertheless capable of being used in that way -- the three specially made auxiliary frames proved so. It is irrelevant that Revolution's auxiliary frames, or any other commercially available auxiliary frames, are not actually used in a top-mounting configuration or cannot be so used.

*Id.* at 1369-70.

The same reasoning applies here. Defendants cannot avoid infringement through their half-hearted contention that new claims 23 and 35 do not have similar "capable of engaging" language because they use the term "adapted" instead. *See e.g.* Revolution Opp. Brief at 14. Defendants dispute Plaintiffs' proposed construction of adapted as "suitable for," notwithstanding the dictionary support offered by Plaintiffs for the meaning of "adapted", and instead argue that "adapted to" means "configured to." *Id.;* Marchon Opp. Brief at 12.[5] Defendants' attempt at word games here merely boils down to a distinction without a meaningful difference. Whether "adapted to" is construed to mean "suitable for", or "capable of", or "configured to" is of no moment, because all these phrases have similar meanings. Indeed, the Federal Circuit's decision in *R.A.C.C.* found that the same capability concept applies to a claim that uses the terminology "adapted" rather than "capable of." In any event, as we have shown, Defendants' auxiliary frames are suitable for, capable of, and configured to magnetically engage a primary frame under both the plain and unambiguous claim language, and even under Defendants' proposed claim construction.

Defendants' cases are all easily distinguishable. Revolution cites to the district court opinion in *Aspex Eyewear, Inc. v. Revolution, Inc.,* 2001 U.S. Dist. LEXIS 25831 at *23-24, 26 (C.D. Cal. June 4, 2001), claiming that the court found that Revolution's auxiliary frames are not "reasonably capable" of top-mounting. What Revolution fails to explain is that the issue in that case involved claim 1 of the '207 patent (which is now claim 1 of the '545 patent after reissue), which claimed the combination of an auxiliary frame top-mounted to a primary frame. The issue there was whether purchasers of Revolution's eyewear were "reasonably capable" of the

---

[5] Revolution's selective citation of cases construing "adapted to" fails to mention that the Court in *Boston Scientific v. Micrus Corp.*, 556 F.Supp.2d 1045, 1064 (N.D. Cal. 2008) construed "adapted to" to mean "to be made suitable for" based on its ordinary and plain meaning or that the Court in *Berg Technology v. Foxconn International*, 1999 WL 96414, * 3-4 (Fed. Cir. 1999) found that "[t]he term 'adapted to' is often used in claim drafting to indicate 'capable of'."

9

infringing use of mounting the commercially sold auxiliary frame to the top of the commercially sold primary frame. *Id.* at *15. That issue has nothing to do with new claims 23 and 35 of the reexamined '545 Patent-in-suit and the dispute now before this Court -- namely, whether Defendants' auxiliary frames are "adapted to" extend across *a* primary spectacle fram*e*" as required by claims 23 and 35, not **Revolution's** primary spectacle frame.

Defendants also rely upon on *High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551 (Fed. Cir. 2005), to challenge Plaintiffs' use of specially-constructed primary frames to prove infringement. That reliance is misplaced. In *High Tech,* the Court found that infringement was not supported where the product was altered by removing set screws that otherwise prevented the accused camera from being "rotatably coupled" to its housing. *Id.* at 1555. Plaintiffs, however, have not made any modifications or alterations to Defendants' auxiliary frames. That Plaintiffs used primary frames other than Defendants' primary frames to show that their auxiliary frames are "adapted to [extend across the top of] *a primary frame*" does not change this undisputed fact.[6] As discussed, the Federal Circuit specifically endorsed the Plaintiffs' method of proving literal infringement of a claim of the original '545 Patent containing a capability requirement in *Revolution Eyewear,* 563 F.3d at 1369-70.

### III.   CONCLUSION

For all the above reasons, Plaintiffs respectfully submit that their motion for partial summary judgment that Defendants literally infringe new claims 23 and 35 of the reexamined '545 patent should be granted.

---

[6] Defendants' reliance on *Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316 (Fed. Cir. 2001), and *Stryker Corp. v. Davol, Inc.,* 10 F. Supp. 2d 841 (W.D. Mich. 1998), is similarly misplaced. Like *High Tech*, these cases held that defendants' products required alteration to infringe. *Telemac*, 247 F.3d at 1330 (claim limitation of billing for international calls could not be performed without removing restriction in software program that prevented the placement of international calls); *Stryker*, 10 F. Supp. at 844 (hand held surgical device will not perform the simultaneous function of suction and irrigation without modification).

Dated: July 2, 2010					Respectfully submitted,

By: /s/ Jacqueline Becerra
Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 579-0500
Facsimile: (305) 579-0717

And

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone: (973) 360-7900
Facsimile: (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ *Jacqueline Becerra*
JACQUELINE BECERRA

**SERVICE LIST**

Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

| | |
|---|---|
| Janet T. Munn | W. Barry Blum |
| jmunn@rascoklock.com | bblum@gjb-law.com |
| Rasco Klock Reininger Perez | Martin J. Keane |
| Esquenazi Vigil & Nieto | mkeane@gjb-law.com |
| 283 Catalonia Avenue | Genovese Joblove & Battista, P.A. |
| Second Floor | 100 S.E. 2nd Street, Suite 4400 |
| Miami, Florida 33134 | Miami, Florida 33131 |
| Telephone: 305-476-7101 | Telephone: 305-349-2300 |
| Facsimile: 305-476-7102 | Facsimile: 305-349-2310 |

*Attorneys for Defendants Hardy Way, LLC, Revolution Eyewear, Inc. and Gary Martin Zelman*

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants*
*Marchon Eyewear, Inc. and Nike, Inc.*

*Attorneys for Defendants Revolution Eyewear, Inc. and Gary Martin Zelman*