# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

MARCHON EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.

_____/

### JOINT PRETRIAL STIPULATION

      Plaintiffs Aspex Eyewear, Inc. ("Aspex") and Contour Optik, Inc. ("Contour")

(collectively, "Plaintiffs") and Defendants Marchon Eyewear, Inc. ("Marchon"), Nike, Inc.

("Nike"), Revolution Eyewear, Inc. ("Revolution") and Gary Martin Zelman ("Zelman")

(collectively, "Defendants"),  by and through their respective counsel, and pursuant to the

Court's Order Setting Jury Trial Date and Pretrial Deadlines dated February 22, 2010 (DE 59)

and Local Rule 16.1E of the Local Rules of the Southern District of Florida, hereby submit their

Joint Pretrial Stipulation.

**1.**     **A short concise statement of the case by each party in the action[1]**

      **Plaintiffs' Statement:**

---

[1] Per the Court's scheduling order, the parties have included a joint, neutral summary of the claims and defenses in this case at Section 13 of the Joint Pretrial Stipulation.

The issues in the case have been set out in significant detail in the Defendants' motions to dismiss recently denied by the Court, and in the parties' pending motions for summary judgment..   Accordingly, Plaintiffs provide here a very brief summary of the issues to be tried.

This is an action for direct patent infringement and inducement of patent infringement of Plaintiffs' reexamined U.S. Patent No. RE37,545 ("the '545 Patent").  Revolution and Marchon are direct infringers of Claims 23 and 35, which are directed to an auxiliary spectacle frame (typically sunglasses), that is capable of attachment to a primary spectacle frame (typically eyeglasses) through the use of magnetic members  The reexamination certificate for the '545 Patent issued by the U.S. Patent and Trademark Office ("PTO") on March 9, 2009.  Claims 23 and 35 of the '545 Patent are new claims that did not exist in the '545 Patent before March 9, 2009.  New Claims 23 and 35 are different in scope from all of the original '545 Patent claims; Thus, under the Patent Law, new Claims 23 and 35 create new causes for infringement against the Defendants that did not exist before the March 9, 2009 reexamination certificate was issued.

Defendants do not dispute that their accused products meet each and every element of Claims 23 and 35, as these claims are written.  Instead, to escape infringement, Defendants seek to rewrite Claims 23 and 35 to limit their scope to an auxiliary spectacle frame: (a) that is adapted to magnetically engage only the top (and not the bottom) of a primary spectacle frame; and (b) that can be top-mounted only to the particular primary spectacle frames sold by the Defendants.  Such a rewrite of the plain language of Claims 23 and 35 is improper, for the reasons explained in Plaintiffs' pending motions for summary judgment of infringement..

But even if the Court were to construe Claims 23 and 35 as limited to an auxiliary spectacle frame adapted to engage the top of a primary frame, Defendants' accused auxiliary spectacle frames still infringe Claims 23 and 35 of the '545 Patent, because: (a) Defendants'

auxiliary frames are designed, constructed, and adapted to magnetically engage the top of "*a* primary spectacle frame*", as Claims 23 and 35 provide; and (b) there is no requirement in the plain language of Claims 23 and 35, or in the intrinsic record of the '545 Patent, that the claimed auxiliary spectacle frame must magnetically engage the particular primary spectacle frame with which it may be sold.  Because the subjective the "intent" of an accused infringer's product design is irrelevant as a matter of law to the objective standard for infringement set out in the Patent Laws (*see* 35 U.S.C. § 271), it matters not whether the Defendants may have intended their auxiliary spectacle frames to be used with a particular primary spectacle frame in a bottom-mounting configuration.  Because Defendants' auxiliary spectacle frames are adapted for top-mounting to a primary frame, infringement of Claims 23 and 35 is made out, plain and simple.

This concept of infringement is not a new one for Revolution.  The scope of a claim containing capability-type language was before the Federal Circuit in *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 563 F.3d 1358 (Fed. Cir. 2009) (*Revolution I*), which was the appeal of the California case discussed so extensively in the pending motions for summary judgment of non-infringement.  *Revolution I* involved Claim 22 of the '545 Patent, which is directed to a primary spectacle frame capable of magnetic engagement with an auxiliary spectacle frame.  The dispute was over the interpretation of the claim language "said first magnet members [of a primary spectacle frame] capable of engaging second magnetic members of an auxiliary spectacle frame."  In *Revolution I*, as here, Revolution argued that there was "no infringement because **Revolution's** primary frame is not capable of being top-mounted with its counterpart auxiliary frame or any commercially sold auxiliary frame."  *Id.* at 1369 (emphasis added).  The Federal Circuit rejected Revolution's argument, stating as follows:

> Revolution's argument misses the point.  Claim 22 recites "said first magnetic members **capable** of engaging second magnetic members of an auxiliary spectacle

frame. … Just like the accused products in *Intel*, Revolution's primary frames, although not specifically designed or sold to be used with top-mounting auxiliary frames, are nevertheless capable of being used in that way -- the three specially made auxiliary frames proved so.  It is irrelevant that Revolution's auxiliary frames, or any other commercially available auxiliary frames, are not actually used in a top-mounting configuration or cannot be so used.

*Id.* at 1369-70.

The exact same logic and reasoning applies here.   The arms of the Defendants' accused auxiliary spectacle frames contain magnetic members that have significant magnetic attractive forces at both the top and bottom.  Thus, the Defendants' auxiliary frames are adapted to (*i.e.*, suitable, capable, etc.) to magnetically engage either the top or bottom of *a* primary spectacle frame.   Thus, being well aware of the Federal Circuit's decision in *Revolution I*, Defendants could have designed their accused products to prevent the auxiliary spectacle frames from being magnetically top-mounted to a primary spectacle frame, but chose not to do so.

Defendants' remaining *res judicata*/collateral estoppel and invalidity arguments are meritless.   Defendants' *res judicata*/collateral estoppel arguments fail as a matter of law, because new Claims 23 and 35 asserted in the action and the products accused accused of infringing those claims did not exist at the time of Plaintiffs' prior litigations with Marchon and Revolution.  Thus, the infringement claims brought by Plaintiffs in this action are ***entirely new*** causes of action against the Defendants, to which the doctrines of *res judicata* and collateral estoppel simply do not apply.  Indeed, the Court addressed and rejected Marchon's *res judicata*/collateral estoppel defenses in denying Marchon's motion to dismiss.

Defendants' invalidity arguments are equally flawed, because they rely exclusive upon prior art that was fully vetted by the PTO in allowing the original '545 Patent to issue, and further vetted by the PTO in confirming the patentability of new Claims 23 and 35 in the reexamination proceeding.  Most recently, on August 23, 2010, the PTO even confirmed the

patentability of Claim 22 at issue in *Revolution I*, in a reexamination proceeding instituted by Revolution itself.  If there was ever a patent that has successfully run the gauntlet of repeated prior art attacks by infringers in both the Federal Courts and the PTO, it is the '545 Patent.

Nike actively induced Marchon's infringement of the '545 Patent.  Nike frequently sues other companies, and is subject to suit by other companies, with respect to a wide variety of patent-related issues, and has even been involved in patent litigation over sunglass products sold by a non-party to this action.  Here, the license agreement between Nike and Marchon, which allows Marchon to use Nike's well-known brand name and trademarks in connection with the sale of Marchon's infringing products, expressly gives Nike the right to product and design approval, including over the Marchon's infringing products; and expressly states that Nike provides the design and manufacturing specifications for *all* eyewear products subject to the license agreement, including Marchon's infringing products.  In addition, the trial will show Nike's active involvement in the design and approval of Marchon's infringing products, and that Nike actively encouraged, aided and abbetted Marchon's infringement of the '545 Patent.

Finally, the evidence will show that Revolution's owner, Defendant Gary Zelman, is the alter ego of Revolution, and that he actively induced Revolution's and Marchon's infringement of the '545 Patent.  As to Revolution in particular, the evidence will show that (a) Zelman designs all of Revolution's products, including the infringing eyewear at issue; and (b) makes all significant company decisions, including whether to introduce or remove a product from the market.  As Mr. Zelman unabashedly boasted in *Revolution I*: "I am Revolution".

**Defendants Marchon's and Nike's Statement:**

This action was filed on September 23, 2009.  Plaintiffs assert that Marchon's Flexon[®], Calvin Klein[®], and Nike[®] clip-on eyeglass products literally infringe Claims 23 and 35 of

reissued/twice-reexamined U.S. Patent No. RE37,545 ("the '545 Patent").

The '545 Patent describes and claims primary eyeglass frames and auxiliary eyeglass frames, which are essentially sunglass frames that are designed to be supported and positioned over regular prescription eyeglass frames, otherwise referred to as the primary eyeglass frames. In recent years, scores of patents have issued to multiple patent owners relating to different methods and devices used for magnetically attaching auxiliary frames to primary frames. Each of these patents is narrowly directed to different variations for magnetically attaching an auxiliary frame to a primary frame.

The '545 Patent is specifically directed to an auxiliary frame supported <u>on</u> or <u>over the top</u> of a primary frame through magnetic engagement, generally referred to as a "top-mounted" design. Figures 5 and 6 of the '545 Patent are reproduced below and show a primary frame and a corresponding auxiliary frame in the disclosed and claimed top-mounting configuration.



Two years ago, the same plaintiffs, Aspex and Contour, settled a separate case involving the same patent and same products against defendant Marchon. The settlement provided a release of all claims and an Order was entered dismissing the earlier case with prejudice.

Plaintiffs are therefore legally barred from filing this second complaint under the doctrines of *res judicata, collateral estoppel*, and/or claim splitting.  Marchon agreed to settle the earlier case in good faith and should not be subjected to patent infringement claims a second time in a case involving the same '545 Patent and the same products.  Accordingly, Marchon has instituted a counterclaim for breach of contract, in that Plaintiffs breached the settlement agreement by bringing the present action.  Marchon's positions in this regard are similarly supported by its motion for summary judgment, DE 102-109, Section B.

In addition to the infringement claim against Marchon, Nike was also named as a defendant, with a single claim asserted for inducement of infringement, i.e., that Nike knew of the reexamined '545 Patent and actively/intentionally induced Marchon's infringement.  Neither is true.  Discovery has proven that Nike did not know of the reexamined '545 Patent, nor did it induce any infringement.  Moreover, despite clear mandates from the Federal Circuit that plaintiffs have an obligation to conduct pre-suit investigations to establish *prima facie* cases before filing, discovery has shown that none was conducted here in regards to the claim against Nike.   There was, and continues to be, no evidence whatsoever of induced infringement.

Even if the case against Marchon and Nike were to go forward, notwithstanding the Settlement Agreement between the Parties and the startling lack of evidence supporting an induced infringement claim against Nike, Marchon does not infringe either of the asserted claims 23 or 35 of the '545 Patent.  The '545 Patent is limited to a <u>top-mounting</u> design.   The inventor of the '545 Patent even testified that he never even thought of a <u>bottom-mounting</u> design until after he saw defendant Revolution's bottom-mounting products, years after the patent application underlying the '545 Patent was filed at the Patent Office.  Equally telling, a California court in a case involving the same Plaintiffs and co-defendant Revolution, when analyzing the '545 Patent,

found the patent to be limited only to <u>top-mounting</u> configurations.

Marchon, however, makes and sells only <u>bottom-mounting</u> designs.  Quite simply, there can be no infringement by Marchon.  Marchon's products do not meet at least three limitations of claims 23 and 35.  Marchon's positions in this regard are supported by its motion for summary judgment, DE 102-109, Section C, and the expert report of Joel P. Sodano.

Alternatively, if the asserted Claims 23 and 35 are construed broadly enough to cover top *and* bottom mount configurations, Claims 23 and 35 are then invalid in view of at least six prior art references.  Marchon's positions in this regard are similarly supported by its motion for summary judgment, DE 102-109, Section D, and the expert report of Joel P. Sodano.

Plaintiffs have alleged only literal infringement of Claims 23 and 35.  Following a Markman construction, should the jury find literal infringement, and we believe they should not, Plaintiffs have asserted that they are only entitled to a reasonable royalty.  Defendants' position is that a reasonable royalty rate is two percent.  Defendants' positions in this regard are supported by the expert report of Gordon Rausser.

**Defendants Revolution's and Zelman's Statement:**

Plaintiffs assert that 41 models of Revolution's magnetic clip-on eyeglass products literally infringe Claims 23 and 35 of the '545 Patent.  However, Plaintiffs' claims are barred under the doctrines of res judicata/claim preclusion and issue preclusion based on the rulings and judgment in a prior case involving the same patent, the same products (Revolution's bottom-mounting auxiliary frames) and the same parties, *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Central District of California Case No. CV 02-1087 ("California Action").  (See Revolution's MSJ, DE 111.)  Plaintiffs' contention that the reexamination of claims 23 and 35 give them another bite at the apple is frivolous under patent law.  Moreover, Defendants'

products do not meet at least three limitations of these claims under any permissible reading of the claims.  Claims 23 and 35 require that the accused products be specifically <u>adapted</u> for stable top-mounting, not merely capable of being placed on top in a way that that no reasonable user would ever do.  The applicable portions of co-defendant Marchon's statement are incorporated herein with minimal repetition for the Court's convenience.

The '545 Patent acknowledges the existence of magnetically attaching auxiliary frames in the prior art, including a patent to Sadler.  The point of novelty of the '545 patent, if any, is that the auxiliary frame includes arms extending over side portions of the primary frame to provide support in addition to the magnet.  In allowing the original patent, the USPTO said:  "Sadler does not disclose the side arm portion of the auxiliary lens frame extending <u>over</u> the upper side portion of the eyeglass frame."  The California Court and the Federal Circuit agreed, stating, respectively, "the invention disclosed in the '545 Patent is limited to a <u>top-mounting</u> design" and "[inventor] Chao disclaimed an auxiliary frame that is not stably supported in <u>top-mounting</u> configuration."  Indeed, Chao testified that he never even thought of a bottom-mounting design, where the arms extend underneath the primary frame, until years after his patent application <u>when he saw Revolution's bottom-mounting products</u>. Plaintiffs are now seeking to avoid the teachings of the patent itself, the admissions of the inventor, the reason for allowance in the first place, the claim construction in the California Action, and the ruling of the Federal Circuit to argue that their top-mounting patent covers bottom-mounting products.



*Revolution's bottom-mounting auxiliary
with arms extending underneath primary frame*

As set forth in Revolution's and Zelman's motion for summary judgment (DE 111) Plaintiffs cannot prevail as a matter of law.

Plaintiffs have also asserted claims against Zelman for direct infringement and inducing infringement.  The claim against Zelman for direct infringement fails for at least four independent reasons:  (1) res judicata applies because Zelman, as an officer of Revolution, is in privity with Revolution; (2) Revolution's products do not infringe based on issue preclusion as to the claim construction in the California Action; (3) there is a complete lack of evidence of any sales, uses, etc. by Zelman as an individual, and (4) there are insufficient facts to permit an alter-ego finding.

The claim against Zelman for inducing infringement fails for the additional reason that inducing infringement requires knowledge of the claimed infringement and Zelman was not aware of asserted claims 23 and 35 of the '545 Patent before the filing of this action.  Because this is the second action against Revolution on the '545 patent, Plaintiffs have attempted to avoid the application of claim preclusion/res judicata by arguing that claims 23 and 35 are "new claims" as a result of the reexamination proceeding culminating March 3, 2009.  While Plaintiffs are incorrect as a matter of law, their position necessarily defeats their inducing infringement claim.  Zelman testified that he was unaware of the reexamination until after the filing of this

case, and Plaintiffs have produced no evidence to the contrary.

In addition, if the asserted Claims 23 and 35 are construed broadly enough to cover bottom-mounting configurations, those claims are invalid as anticipated or obvious in view of at least six prior art references, and invalid for lack of enablement, inadequate written description, and indefiniteness. (See the expert report of Joel P. Sodano, Ex. 133-4.) As observed by the California Court, "the invention described is clearly for a top-mounting design: the written description only describes a top-mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned anything other than a top-mounting design." In other words, bottom-mounting is not enabled or described, and if the claim language is at odds with the specification, it is indefinite. Plaintiffs simply cannot have it both ways. If their claims are not limited to top-mounting, they are invalid.

3. **Pleadings Raising the Issues**

    a.    Complaint [DE 1] (the "Complaint")

    b.    Answer, Defenses, and Counterclaims of Defendants Revolution Eyewear, Inc. and Gary Martin Zelman to Plaintiffs' Complaint [DE 15] ("Revolution's Answer")

    c.    Answer, Defenses, and Counterclaims of Defendants Marchon Eyewear, Inc. and Nike, Inc. to Plaintiffs' Complaint [DE 162] ("Marchon's Answer")

    d.    Plaintiffs' Answer to Counterclaim of Defendants Marchon Eyewear, Inc. and Nike, Inc. [DE 166]

4. **Undisposed of Motions and Other Matters Requiring Action by the Court**

    a.    Plaintiffs' Motion for Partial Summary Judgment in Support of their Claim that Defendants Revolution Eyewear, Inc. and Marchon Eyewear, Inc. Literally Infringe Claims 23 and 35 of the '545 Patent [DE 115]

    b.    Marchon Eyewear, Inc.'s Motion for Summary Judgment [DE 102-109]

c. Nike, Inc.'s Motion for Summary Judgment [DE 102-109]

d. Marchon Eyewear, Inc.'s and Nike, Inc.'s Request for a Hearing on Their Motions for Summary Judgment [DE 110]

e. Motion for Summary Judgment in Favor of Defendants Revolution Eyewear, Inc. and Gary Martin Zelman [DE 111]

f. Request of Defendants Revolution Eyewear, Inc. and Gary Martin Zelman for Oral Argument on Defendants' Motion for Summary Judgment [DE 114]

g. Claim construction of Claims 23 and 35 of Reexamination Certificate No. RE37,545 F1; see Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). The Court should construe at least the following disputed limitations of Claims 23 and 35 before the case is presented to a jury:

"An eyeglass device comprising";

"…each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface…";

"…said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame…"; and

"…so that said pair of magnetic members  having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame...."

h. The Parties' Joint Summary of Respective Motions In Limine is attached as Appendix 6.  The referenced exhibits to these papers have been filed under seal at DE 168.

i. Plaintiff and Defendants Revolution and Zelman jointly request to bifurcate the issue of willfulness to be tried after the trial on infringement, invalidity and all Defendants' counterclaims.  Defendants Marchon and Nike do not join in the request.

## 5.   A concise statement of facts which require no proof at trial, with reservations, if any[2]

---

[2] By listing facts in this section and in Section 6 (issues of fact that remain to be litigated), the parties do not concede: (a) that issues in this case are not amenable to disposition by the Court as set forth in pending motions for summary judgment, (b) that the listed issues of fact are material or relevant to the disposition of the pending motions for summary judgment, (c) that the listed issues of fact are indeed "issues of fact", (d) that the listed issues of fact represent all the issues of fact that may be necessary for the determination of the issues in this case, (e) that all the listed

a.  On February 12, 2002, the United States Patent and Trademark Office ("USPTO") issued United States Patent No. RE37,545, entitled "Auxiliary Lenses for Eyeglasses" which is a reissue of United States Patent No. 5,568,207 (the "'207 patent") that issued on October 22, 1996 to inventor Richard Chao.

b.  Following a September 13, 2007 request for re-examination, the Patent Office issued Reexamination Certificate No. RE37,545 F1 on March 3, 2009, which included an amended claim 23 and a new claim 35.

c.  On December 15, 2006, Plaintiffs filed suit against Marchon in the United States District Court for the Central District of California (the "California Marchon case"), asserting infringement of the '545 Patent.

d.  In the California Marchon case, the only claim asserted against Marchon was claim 22 of the '545 Patent.

e.  In a separate case, <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc. et al.</u>, Case No. 02-1087 (C.D. Ca.) (the "California Revolution case"), Plaintiffs asserted claims 6, 22 and 34 of the '545 Patent against Revolution.

f.  In the California Revolution case, the Court granted summary judgment of non-infringement of claims 6 and 34 of the '545 patent.

g.  In the California Revolution case, the Court granted summary judgment that Revolution's primary frames infringed claim 22.

h.  In the California Revolution case, the Court entered final judgment.

i.  Japanese Patent No. 5-40493 (Sadanaga) predates the invention date of the '545 Patent.

j.  On September 23, 2009, Plaintiffs filed the Complaint in this action.

k.  In the California Revolution case, the Court stated that the '545 Patent "invention described is clearly for a top-mounting design: the written description only describes a top mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor

---

issues are for the jury rather than the Court or (f) that inclusion of these facts are admissible for all purposes

envisioned anything other than a top-mounting design."[3]

l.      In the California Revolution case, the Court, in construing claim 34, also found the limitation "said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]" to mean that at least some portion of each arm of the auxiliary frame reaches across the top of the corresponding extension of the primary frame.

**6.**      **A statement in reasonable detail of issues of fact which remain to be litigated at trial**

a.      Which models of Revolution's magnetic clip-on eyewear products constitute the products accused of infringing claims 23 and 35 of the '545 patent (the "Revolution Accused Products").[4]

b.      Whether the Revolution Accused Products and the Marchon magnetic clip-on eyewear products accused of infringing Claim 23 and 35 (the "Marchon Accused Products") (collectively, the "Accused Products") meet the "each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface" element of claim 23.

c.      Whether the Accused products meet the "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame" element of claim 23.

d.      Whether the Accused products meet the "so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame" element of claim 23.

e.      Whether Zelman is the alter ego of Revolution.

f.      Whether Zelman induced infringement of claims 23 and 35 of the '545 patent.

g.      Whether Nike induced infringement of claims 23 and 35 of the '545 patent.

---

[3] Plaintiffs do not believe that the California Court's claim construction is relevant to this case for the reasons set forth in its oppositions to Defendants' motions for summary judgment or that the construction is properly a fact to be tried.

[4] Although listed as an issue of fact, this is an issue for the Court to decide. In addition, it is Revolution's position that this should be listed as an issue of law. The nature of this dispute is that Revolution alleges that Plaintiffs failed to timely identify certain accused products. Plaintiffs dispute that contention. This issue is subject of a Revolution's Motion *In Limine.*.

h.      If the Accused Products are found to infringe claims 23 and 35 of the '545 patent, what is the reasonable royalty damages that Defendants should pay for the infringement.

m.      Whether Plaintiffs are entitled to a permanent injunction barring Defendants from making, using, selling, or offering for sale the accused products.

i.      Whether Marchon, Revolution and/or Zelman willfully infringed Claims 23 and 35 of the '545 patent.

n.      Whether Aspex is now the sole owner of the '545 patent.[5]

o.      Whether amended claim 23 issued on March 3, 2009 is a different claim than the claim 23 that existed in the '545 patent prior to the re-examination.

p.      Whether amended claim 23 is narrower than the claim 23 that existed in the '545 patent prior to the re-examination.

q.      In the California Revolution case, whether Plaintiffs did not accuse Revolution's auxiliary frames of infringing the claim 23 of the '545 patent.

r.      Whether following a dispute between the Plaintiffs and Marchon as to which frames infringed which claims, the California Court directed Marchon to provide physical samples of all of its magnetic clip-on eyewear products.

s.      Whether Marchon in the California Marchon case provided physical samples of all of its magnetic clip-on eyewear products, and the designs were divided into "old designs" and "new designs" depending on whether the magnets were visible or embedded in the frames.

t.      Whether Plaintiffs in the California Marchon case alleged that Marchon's "old designs" infringed Claim 22 of the '545 Patent and amended its Complaint accordingly.

u.      Whether Plaintiffs in the California Marchon case did not allege that Marchon's "old designs" infringed Claim 23 of the '545 Patent.

v.      Whether Plaintiffs in the California Marchon case did not allege that any of Marchon's "new designs" infringed Claim 23 or any other claim of the '545 Patent.

w.      Whether Plaintiffs and Marchon entered a settlement agreement with respect to

---

[5]  With Asex now the sole owner of the '545 patent, Plaintiffs will ask the Court to dismiss Contour as a party.   Plaintiffs have represented to Defendants that Contour witnesses will be produced for trial as if Contour was a party.

the California Marchon case and the case was dismissed with prejudice as to the causes of action released by virtue of the settlement agreement.

x.  Whether the Court in the California Revolution case construed the "horizontal surface" of the magnetic member in the auxiliary frame to mean the magnetic member "having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame."[6]

y.  Whether the Court in the California Revolution case construed "horizontal surface" of the magnetic member in the primary frame to mean having "an upwardly facing surface that lies in a plane that is substantially perpendicular to the plane of the lenses of the primary spectacle frame."

z.  Whether Revolution's accused auxiliary frames in this action are essentially the same as the auxiliary frames accused in the California Revolution case.

aa.  Whether Revolution's and Marchon's accused auxiliary frames in this action are bottom mounting.

bb.  Whether the arms and magnetic members of Revolution's and Marchon's accused auxiliary frames in this action are not made to extend across the top of respective side portions of Revolution's primary frames.

cc.  Whether the primary frames of the accused product in this case have embedded magnetic members.

dd.  Whether the inventor of the '545 Patent first thought of a bottom-mount magnetic clip-on approximately a decade or more after he filed the patent application underlying the '545 Patent in 1995.

ee.  Whether Revolution, Zelman, Marchon and Nike were aware of amended claim 23 or claim 35 until after this lawsuit was filed.

ff.  Whether Nike knew of the reexamined '545 Patent prior to this lawsuit.

gg.  Whether Nike had any responsibility for the concept or design of ophthalmic products involved in the present action according to the terms of the Nike/Marchon License Agreement.

hh.  Whether Nike induced infringement of claims 23 and 35 of the '545 patent.

ii.  In California Revolution case, whether the Federal Circuit ruled: "We agree with

---

[6]  Plaintiffs do not believe that the California Court's claim construction is relevant to this case for the reasons set forth in its oppositions to Defendants' motions for summary judgment or that the construction is properly a fact to be tried.

the district court that, in pointing out the two deficiencies in the prior art, [inventor] Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration and a primary frame that has embedded magnetic members."[7]

jj.     What is the invention date of the '545 patent.

kk.     Whether the invention date of the '545 patent predates any or all of the Twincome-Pentax documents.

ll.     Whether the Twincome-Pentax documents were sufficiently publicly available to be prior art.

mm.     Whether the Twincome-Pentax documents are prior art.

nn.     Whether the invention date of the '545 patent predates Japanese Patent Application No. H07-156856 (Iwamoto).

oo.     Whether Iwamoto is prior art.

pp.     Whether the invention date of the '545 patent predates U.S. Patent No. 5,642,177 (Nishioka).

qq.     Whether Nishioka is prior art to the '545 Patent.

rr.     Whether the invention date of the '545 patent predates U.S. Patent No. 5,867,244 (Martin).

ss.     Whether Martin is prior art.

tt.     Whether the invention date of the '545 patent predates Japanese Patent No. 3011174 (Boston Club).

uu.     Whether Boston Club is prior art.

vv.     Whether the Twincome-Pentax documents disclose each limitation of claims 23 and 35 of the '545 patent.

ww.     Whether Iwamoto discloses each limitation of claims 23 and 35 of the '545 patent

xx.     Whether Sadanaga discloses each limitation of claims 23 and 35 of the '545 patent.

---

[7] Plaintiffs do not dispute that Court's opinion is accurately quoted.  What Plaintiffs disputed is whether what it ruled is a fact or whether it has any bearing on this case.

yy.    The level of skill in the art at the time of the invention.

zz.    Whether Iwamoto, Twincome-Pentax, Sadanaga, Nishioka, Martin and/or Boston Club, alone or in combination, disclose or render obvious each limitation of claims 23 and 35 of the '545 patent.

aaa.    Whether Plaintiffs breached the Settlement Agreement and/or the implied covenant of good faith and fair dealings between Plaintiffs and Marchon by filing the present action.

bbb.    If Plaintiffs breached the Settlement Agreement, what are Marchon's damages.

ccc.    Whether Plaintiffs' claims against Marchon are barred by the doctrine of equitable estoppel.

ddd.    Whether Plaintiffs' claims against Marchon are barred by the doctrine of laches.

eee.    Whether Plaintiffs' claims against Marchon are barred or limited by the doctrine of intervening rights.

fff.    Whether Plaintiffs' claims against Marchon are barred by the doctrine of unclean hands.

ggg.    Whether Plaintiffs' claims against Marchon are barred by the doctrine of waiver.

hhh.    Whether Marchon is entitled to attorneys' fees, costs, and expenses incurred pursuant to paragraph 4.3 of the Settlement Agreement.

**7.**    <u>**A concise statement of issues of law on which there is agreement**</u>

a.    This Court has subject matter jurisdiction over this action.

b.    This Court has personal jurisdiction over the parties.

c.    Patent claim construction is a question of law for the Court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 391 (1996).

**8.**    <u>**Issues of Law Which Remain for Determination By the Court**</u>

a.     Claim construction of the disputed terms of Claims 23 of the '545 patent (*see Markman v. Westview Instruments, Inc.*), 517 U.S. 370 (1996), which include:

"An eyeglass device comprising"

"...each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface...";

"...said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame..."; and

"...so that said pair of magnetic members  having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame...."

b.     Whether Revolution's sale of the Revolution Accused Products literally infringes claims 23 and 35 of the '545 patent, entitling Plaintiffs to a reasonable royalty based upon Revolution's sales of the Revolution Accused Products.

c.     Whether Marchon's sale of the Marchon Accused Products literally infringes claims 23 and 35 of the '545 patent, entitling Plaintiffs to a reasonable royalty based upon Marchon's sales of the Marchon Accused Products.

d.     If Marchon Accused Products literally infringe claims 23 and 35 of the '545 patent, whether Nike is liable for inducing the infringement of claims 23 and 35 of the '545 patent with respect to the Nike-branded Marchon Accused Products.

e.     If Revolution is found to have literally infringed claims 23 and 35, whether Zelman is liable as the alter ego of Revolution.

f.     If Revolution is found to have literally infringed claims 23 and 35, whether Zelman is liable for inducing the infringement.

g.     Whether Plaintiffs are entitled to prejudgment interests and costs.

h.     Whether Defendants should be enjoined from making, using, selling, or offering to sell the Accused Products.

i.     Whether Defendants' infringement of claims 23 and 35 of the '545 patent  was willful such that Plaintiff is entitled to enhanced damages of up to three times actual damages.

j.     Whether this is an exceptional case such that Plaintiffs are entitled to an award of their attorneys' fees.

k.      Whether Plaintiffs' claims against Marchon are barred by the doctrine of *res judicata*.

l.      Whether Plaintiffs' claims against Marchon are barred by the doctrine of *collateral estoppel*.

m.     Whether Plaintiffs' claims against Marchon are barred by the doctrine of claim splitting.

n.      Whether Plaintiffs' claims against Marchon are barred by the doctrine of equitable estoppel.

o.      Whether Plaintiffs' claims against Marchon are barred by the doctrine of laches.

p.      Whether Plaintiffs' claims against Marchon are barred or limited by the doctrine of intervening rights.

q.      Whether Plaintiffs' claims against Marchon are barred by the doctrine of unclean hands.

r.      Whether Plaintiffs' claims against Marchon are barred by the doctrine of waiver.

s.      Whether Plaintiffs' claims against Defendants Revolution and Zelman are barred by the doctrines of res judicata/claim splitting.

t.      Whether Plaintiffs' claims against Defendants Revolution and Zelman are barred by the doctrine of issue preclusion/collateral estoppel.

u.      Whether Plaintiffs' claims against Defendants Revolution and Zelman are barred by Federal Rules of Civil Procedure, Rule 13 (compulsory counterclaim requirement).

v.      Whether Plaintiffs' claims against Defendants are barred, in whole or in part, under the doctrine of prosecution history estoppel.

w.     Whether Plaintiffs' claims against Defendants are barred, in whole or in part, under the doctrine of equitable estoppel.

x.      Whether Plaintiffs claims are barred, in whole or in part, under the doctrine of laches.

y.      Whether Plaintiffs are barred, in whole or in part, from obtaining the relief they seek under the doctrines of absolute and equitable intervening rights.

z.      Whether the California Court's claim construction in <u>Revolution Eyewear, Inc. v. Aspex Eyewear, Inc. et al.</u>, Case No. 02-1087 (C.D. Ca.) is binding on Plaintiffs

in this case.

aa. All issues brief in the parties respective motions for summary judgment

bb. The doctrine of *res judicata*, or claim preclusion, bars the filing of claims which were raised or could have been raised in an earlier proceeding.  *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)[8]

cc. "A claim will be barred by prior litigation if the four following elements are present: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Id.*

dd. Res judicata applies in patent cases on the same patent and between the same parties where the accused products are essentially the same.  See *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1379-80 (Fed. Cir. 2008)

ee. Amended claim 23 is no broader than claim 23 of the '545 Patent as is existed during the California Action.  35 U.S.C. § 305.

ff. Claim 35 is narrower than claim 23 of the '545 Patent as is existed during the California Action.

gg. Claim preclusion applies to attempts to assert amended or new claims of a reexamined patent.  *Hoffman v. Wisner Classic Manufacturing Co.*, 927 F.Supp. 67, 73 (E.D.N.Y. 1996).

hh. The prior determination of certain issues, including the issues of claim construction and of infringement and non-infringement, bars judicial

---

[8] Defendants believe that bb - nn are undisputed issues of law where there should have been agreement between the parties. Plaintiffs do not agree to this list of legal principles as undisputed law because many do not apply and, even ones that do apply, have exceptions. For example, the law on *res judicata* cited by Defendants take into account that the parties intent in entering a settlement agreement takes precedent.  In addition, others are not cited correctly or contrary to other authority that exists, which plaintiffs cited in their summary judgment motion papers. Finally, plaintiffs believe this is a level of granularity beyond what the Court is looking for from the parties in a pretrial submission.

redetermination of those issues as between the parties to the prior actions. *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323.

ii.     Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent. See, e.g., *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999).

jj.     The claims of a patent cannot "enlarge what is patented beyond what the inventor described as the invention." *Netword LLC v. Centraal Corp.*, 242 F.3d 1347, 1349 (Fed. Cir. 2001).

kk.     The written description of a patent must enable persons of ordinary skill in the art to practice the full scope of the claimed invention without undue experimentation.

ll.     A preamble limits the invention if it recites essential structure or steps, or if it is necessary to give life, meaning, and vitality to the claim. *Catalina Mktg. Intl. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).

mm.     During reexamination, a patent's claims may be narrowed by amendment but not broadened. See 35 U.S.C. §305 relating to reexamination.

nn.     The addition of new patent claims through reexamination does not create a new cause of action because claims added through reexamination are necessarily, by statutory requirement, narrower than the original claims. See Hoffman v. Wisner Classic Manufacturing Co., 927 F.Supp. 67, 73 (E.D.N.Y. 1996).

**9.     Each party's numbered list trial exhibits**

Plaintiffs' Trial Exhibit List is attached hereto as Appendix 1. Marchon's and Nike's Trial Exhibit List is attached hereto as Appendix 2. Revolution's and Zelman's Trial Exhibit List is attached hereto as Appendix 3.

**10.     Each party's numbered list of trial witnesses**

Plaintiffs' Trial Witness List is attached hereto as Appendix 4. Defendants' Trial Witness List is attached hereto as Appendix 5.

**11.     Estimated Trial Time**

The Parties estimate that the trial of this case will require 7 days.

12.    **Attorneys' Fees**

Should it prevail at trial and this case be found an exceptional case pursuant to 35 U.S.C. § 285, Plaintiffs contend that they are entitled to recover reasonable attorneys fees in an estimated amount through trial in excess of $1,500,000.

Defendants submit that this case is "exceptional" pursuant to 28 U.S.C. § 285 for the purposes an award of attorneys' fees, costs, and expenses to Defendants.  Marchon further submits that it is entitled to attorneys' fees, costs, and expenses pursuant to the Settlement Agreement entered into with Plaintiffs.

Marchon and Nike estimate that the amount of its attorneys' fees that are properly allowable in an amount in excess of $ 2,000,000 through trial.

Revolution and Zelman estimate that the amount of its attorneys' fees that are properly allowable in an amount in excess of $ 2,000,000 through trial.

13.    **Joint Neutral Summary of Claims and Defenses**

The claims and defense in this case are as follows:

- **Count I**: Plaintiffs allege that Marchon's sale of accused auxiliary magnetic clip-on sunglasses frames infringe claims 23 and 35 of the re-examined U.S. Patent No. 37,545 (the '545 patent) issued on March 9, 2009 and seeks a reasonably royalty on Marchon sales.  In defense, Marchon alleges that its primary and auxiliary frames do not infringe, that patent claims 23 and 35 are invalid, and that Plaintiffs' infringement claims are barred under a number of theories based on a 2008 settlement agreement between the same parties.

- **Count II:**  Plaintiffs allege that Revolution's sale of accused auxiliary magnetic clip-on sunglasses frames infringe claims 23 and 35 of the '545 patent and seeks a reasonably royalty on Revolution's sales.  Plaintiffs further allege that the prior litigation with Revolution does not apply here.   In defense, Revolution alleges that Plaintiff's infringement claims are legally barred because plaintiffs previously sued Revolution's products on the '545 patent in an earlier case, and that rulings in the earlier case require judgment in favor of Revolution. Revolution also alleges that its primary and auxiliary frames do not infringe claims 23 and 35 and that these claims are invalid.

- **Count IV:**[9]  Plaintiffs allege that Nike has induced the infringement of claims 23 and 35 of the '545 patent by aiding and abetting Marchon's alleged infringement of claims 23 and 35 of the '545 patent.  In defense, Nike denies that it aided and abetted Marchon's alleged infringement of claims 23 and 35 of the '545 patent.  Nike also claims that it did not know of the '545 patent and that plaintiffs failed to conduct any pre-suit  investigation prior to filing this law suit.[10]

- **Count V:**  Plaintiffs allege that Zelman is the alter ego of Revolution and has infringed claims 23 and 35 of the '545 patent, has aided and abetted Revolution's alleged infringement of claims 23 and 35 of the '545 patent and has aided and abetted Marchon's alleged infringement of claims 23 and 35 of the '545 patent.  In defense, Revolution and Zelman allege that plaintiffs' claims are barred based on the prior lawsuit, and that there is no basis to find alter ego liability and no basis to find that Zelman knew of or induced infringement of reexamined claims 23 and 35 of the '545 patent.  Zelman also claims that plaintiffs conducted an inadequate investigation of Zelman's knowledge of claims 23 and 35 prior to filing this lawsuit.[11]

---

[9]   Plaintiffs and defendant Hardy agreed to a dismissal as to Count III.
[10]   Plaintiffs do not believe the adequacy of the pre-suit investigation is a relevant issue for the jury.
[11]   Plaintiffs do not believe the adequacy of the pre-suit investigation is a relevant issue for the jury.

- **Marchon counterclaim**: Defendant Marchon has filed a counterclaim against Plaintiffs for breaching a 2008 agreement between Marchon and Plaintiffs which Marchon alleges covers the same products and the same patent. Marchon contends that Plaintiffs should not be permitted to bring this lawsuit.  As a consequence of Plaintiffs' bringing this lawsuit, Marchon asserts that it is entitled to an award of its reasonable attorneys' fees, costs, and expenses incurred.   Plaintiffs deny that the 2008 agreement covers the infringement claim and accused products in this case and that the 2008 agreement precluded bring this suit and that Marchon is entitled to attorneys fees, costs and expenses incurred.

Dated: October 1, 2010                           Respectfully submitted,


                                 _____/s/_____
                                 W. Barry Blum
                                 bblum@gjb-law.com
                                 Florida Bar No.: 379301
                                 Martin J. Keane
                                 Florida Bar No.: 524239
                                 mkeane@gjb-law.com
                                 GENOVESE JOBLOVE & BATTISTA, P.A.
                                 100 S.E. 2nd Street, Suite 4400
                                 Miami, Florida 33131
                                 Telephone: 305-349-2300
                                 Facsimile: 305-349-2310

                                 *and*

                                 Edgar H. Haug, Admitted Pro Hac Vice
                                 ehaug@flhlaw.com
                                 Porter F. Fleming, Admitted Pro Hac Vice
                                 pfleming@flhlaw.com
                                 Brian S. Goncalves, Admitted Pro Hac Vice
                                 bgoncalves@flhlaw.com
                                 FROMMER LAWRENCE & HAUG LLP
                                 745 Fifth Avenue
                                 New York, NY 10151
                                 Telephone: 212-588-0888
                                 Facsimile: 212-588-0500

                                 *Attorneys for Defendants*

*Marchon Eyewear, Inc. and Nike, Inc.*


_____/s/_____

Janet T. Munn
jmunn@rascoklock.com
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*and*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
SHEPPARD MULLIN RICHTER & HAMPTON
LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants Revolution Eyewear, Inc.
and Gary Martin Zelman*


_____/s/_____

Jacqueline Becerra
becerraj@gtlaw.com
Ericka Yolanda Turk
turkmooree@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, FL 33131
Phone: (305) 579-0500
Facsimile: (305) 579-0717

*and*

Michael A. Nicodema, Admitted Pro Hac Vice
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
SchindlerB@gtlaw.com
Douglas R. Weider, Admitted Pro Hac Vice
WeiderD@gtlaw.com
Todd L. Schleifstein, Admitted Pro Hac Vice
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone:  (973) 360-7900
Facsimile:  (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.*
*and Contour Optik, Inc.*

*MIA 181,486,052v1 10-1-10*