## **Appendix 6**

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**CASE NO.: 09-61515-CIV-COOKE/BANDSTRA**

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

       Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

       Defendants.

_____/

**JOINT SUMMARY OF RESPECTIVE MOTIONS IN LIMINE**

**A.    DEFENDANTS MARCHON'S AND NIKE'S MOTIONS IN LIMINE**

1.    MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE ANY
TESTIMONY AND EVIDENCE CONCERNING PLAINTIFF'S SPECIALLY-MADE
PRIMARY EYEGLASS FRAMES
       a.  Plaintiffs' Opposition

2.    MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE ANY
TESTIMONY AND EVIDENCE CONCERNING WILLFUL INFRINGEMENT
       a.  Plaintiffs' Opposition

3.    MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE ANY
TESTIMONY AND EVIDENCE CONCERNING THE PURPORTED COMMERCIAL
SUCCESS OF ASPEX'S MAGNETIC EYEWEAR PRODUCTS
       a.  Plaintiffs' Opposition

4.    MARCHON'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY AND
EVIDENCE CONCERNING ITS PARENT COMPANY, VISION SERVICE PLAN
       a.  Plaintiffs' Opposition

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

5.      NIKE'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY AND EVIDENCE
        CONCERNING ITS ALLEGED INDUCEMENT
        a.   Plaintiffs' Opposition

6.      MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE PLAINTIFFS'
        EXPERT BRIAN W. NAPPER UNDER RULE 702 OF THE FEDERAL RULES OF
        EVIDENCE
        a.   Plaintiffs' Opposition

7.      MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE PLAINTIFFS'
        EXPERT BRIAN W. NAPPER ON THE BASIS OF GREENBERG TRAURIG'S AND
        MR. NAPPER'S VIOLATION OF THE PROTECTIVE ORDER
        a.   Plaintiffs' Opposition


**B.     DEFENDANTS REVOLUTION'S AND ZELMAN'S MOTIONS IN LIMINE**

1.      DEFENDANT REVOLUTION EYEWEAR, INC.'S AND GARY MARTIN
        ZELMAN'S MOTION IN LIMINE NO. 1
        a.   Plaintiffs' Opposition

2.      DEFENDANT REVOLUTION EYEWEAR, INC.'S AND GARY MARTIN
        ZELMAN'S MOTION IN LIMINE NO. 2
        a.   Plaintiffs' Opposition

3.      DEFENDANT REVOLUTION EYEWEAR, INC.'S AND GARY MARTIN
        ZELMAN'S MOTION IN LIMINE NO. 3
        a.   Plaintiffs' Opposition

4.      DEFENDANT REVOLUTION EYEWEAR, INC.'S AND GARY MARTIN
        ZELMAN'S MOTION IN LIMINE NO. 4
        a.   Plaintiffs' Opposition

5.      DEFENDANT REVOLUTION EYEWEAR, INC.'S AND GARY MARTIN
        ZELMAN'S MOTION IN LIMINE NO. 5
        a.   Plaintiffs' Opposition

6.      DEFENDANT REVOLUTION EYEWEAR, INC.'S AND GARY MARTIN
        ZELMAN'S MOTION IN LIMINE NO. 6
        a.   Plaintiffs' Opposition


**C.     PLAINTIFFS ASPEX AND CONTOUR'S MOTIONS IN LIMINE**

1.      PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY BY
        DEFENDANTS REGARDING ALLEGED DESIGN-AROUNDS

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

a.  Marchon's and Nike's Opposition

b.  Revolution's and Zelman's Opposition

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

2.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY BY DEFENDANTS THAT SUCCESS OF THEIR PRODUCTS WAS DUE TO NON-PATENT FEATURES
   a. Marchon's and Nike's Opposition
   b. Revolution's and Zelman's Opposition

3.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS FROM RELYING ON OPINIONS OF COUNSEL TO DEFEND CLAIMS OF WILLFUL INFRINGEMENT
   a. Marchon's and Nike's Opposition

4.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY BY JOEL SODANO REGARDING NATURE OF MAGNETIC SURFACE ON DEFENDANTS' PRODUCTS
   a. Revolution's and Zelman's Opposition
   b. Marchon's and Nike's Opposition

5.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY REGARDING NATURE OF MAGNETIC SURFACE ON DEFENDANTS' PRODUCTS
   a. Revolution's and Zelman's Opposition
   b. Marchon's and Nike's Opposition

6.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE DEFENDANTS' EFFORTS TO PROVE NON-INFRINGEMENT THROUGH DEMONSTRATIONS INVOLVING DIFFERENT COMPONENTS OF PLAINTIFFS' AND DEFENDANTS' PRODUCTS
   a. Marchon's and Nike's Opposition
   b. Revolution's and Zelman's Opposition

7.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESS JOEL SODANO REGARDING ANALYSES NOT DISCLOSED IN HIS JUNE 7, 2010 REPORT OR AT DEPOSITION
   a. Revolution's and Zelman's Opposition
   b. Marchon's and Nike's Opposition

8.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE COMPARISONS BETWEEN PLAINTIFFS' AND DEFENDANTS' PRODUCTS
   a. Revolution's and Zelman's Opposition
   b. Marchon's and Nike's Opposition

9.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESS JOEL SODANO ON OPINIONS NOT DISCLOSED IN HIS JUNE 7, 2010 REPORT
   a. Marchon's and Nike's Opposition
   b. Revolution's and Zelman's Opposition

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

**EXHIBITS CITED BY DEFENDANTS**

1. Expert Report of Gordon Rausser
2. Expert Report of Joel Sodano
3. Excerpts of Lee Zaro's Deposition Transcript
4. Docket Report of cases between Revolution and Aspex
5. Plaintiffs' Second Set of Supplemental Responses to Interrogatories
6. Publicly available catalogs with Revolution products
7. Deposition Testimony from Ifergan re monitoring Revolution's eyeglasses
8. Pictures of REV 607-609
9. 30(b)(6) Deposition Testimony of Plaintiffs May 13, 2010
10. 30(b)(6) Deposition Testimony of Plaintiffs April 23, 2010
11. Deposition Testimony of Plaintiffs' Expert Lee Zaro June 3, 2010
12. California Court's Order Granting Motion for Summary Judgment in Favor of Revolution (1999 California Case)
13. United States Patent No. RE 37,545
14. Dictionary definition of adapted
15. Plaintiffs' Interrogatory Responses to Defendant Gary Martin Zelman
16. Deposition testimony of Gary Martin Zelman
17. Plaintiffs' Responses to Revolution's Second Set of Interrogatories
18. Federal Circuit Opinion in 2002 California Case (563 F.3d 1358)
19. Deposition Testimony of Defendants' Expert Dr. Rausser September 15, 2010

1.    MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE ANY
       TESTIMONY AND EVIDENCE CONCERNING PLAINTIFFS' SPECIALLY-MADE
       PRIMARY EYEGLASS FRAMES

The '545 Patent and its claims cover only top-mounting auxiliary and primary eyeglass frames.[1] Marchon designs and sells only bottom-mounting products. When Marchon's auxiliary frames are improperly top-mounted on a Marchon primary frame, the respective lenses are misaligned, the nose bridges are misaligned, and the auxiliary frame is unstable and falls off of the primary frame.[2] It is clear that this is not how Marchon's products are designed to be used. Plaintiffs' attempted infringement arguments are questionable at best.

Plaintiffs, unable to prove that the bottom-mounting Marchon and Nike eyeglass frame products infringe the top-mounting claims of the '545 Patent, specially fabricated primary eyeglass frames solely for the purpose of the upcoming jury trial.[3] In a desperate attempt to prove infringement and confuse a jury into believing that these specifically-fabricated frames are Marchon products, or frames available to the public, Plaintiffs have made these specially-fabricated frames to "top-mount" Marchon's auxiliary frames and to try to overcome the misalignment, instability, and other factors that show that Marchon's products are only designed to be bottom-mounting. The jury should only be allowed to consider Marchon's products, i.e., Marchon's primary and auxiliary frames that are sold as a set and available to the public. Aspex should not be allowed to introduce its improper, confusing and prejudicial specifically-fabricated frames as evidence at trial.

As one example of how Aspex may seek to confuse the jury, the auxiliary frame shown on page 16 of Plaintiffs' Motion for Partial Summary Judgment (DE 115) is not mounted on a Marchon primary frame, but instead on one of Plaintiffs' specifically-fabricated primary frames. Marchon has never made or sold such a primary frame. Instead, it is undisputed that Marchon's products are all bottom-mounting and are sold in sets of bottom-mounting primary and auxiliary frames. As in Plaintiffs' Motion for Partial Summary Judgment, it will be Plaintiffs' objective to make it unclear to the jury as to which primary frame is being used. Plaintiffs' specially-made primary frames are not a Marchon product, were not made by Marchon, and were not sold by Marchon. Further, the two patent claims at issue do not have the word "capable" or any other language that would allow the scope of coverage to include the "possibility" of top-mounting.

Allowing the jury to consider Plaintiffs' specially-fabricated non-Marchon frames would be highly prejudicial to Marchon and Nike, highly confusing to the jury, a waste of judicial resources, and should be excluded pursuant to Federal Rules of Evidence 402 and 403.

---

[1]  In construing the claims of the '545 Patent, the California Court in Revolution Eyewear, Inc. v. Aspex Eyewear, Inc. et al., Case No. 02-1087 (C.D. Ca.) (the "California case") held that "the invention disclosed in the '545 Patent is limited to a top-mounting design." See DE 102, App. Ex. "E" at 32.
[2]  Photographs to this effect were included in Section III of Marchon's Opposition to Plaintiffs' Motion for Partial Summary Judgment as Figures 2 and 4 (DE 127).
[3]  Plaintiffs have altered at least the position and orientation of the magnetic surfaces and the arms of Marchon's primary frames for the purpose of creating its specially-fabricated litigation-motivated frames.

## PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF MARCHON TO PRECLUDE EVIDENCE REGARDING PLAINTIFFS' CONSTRUCTED PRIMARY FRAMES

Plaintiffs respectfully oppose the motion *in limine* of Marchon to preclude any evidence regarding Plaintiffs' constructed primary frames.

These frames are relevant because they demonstrate the infringing capabilities of Marchon's products. Claims 23 and 35 of the '545 Patent at issue require that the auxiliary frame of the magnetic clip-ons be adapted to perform the claims' functions when engaged with "*a* primary frame." Although Marchon maintains that only the actual bottom-mounted Marchon products or other, similar commercially sold frames are relevant for purposes of determining infringement, the Federal Circuit rejected an identical argument by Defendant Revolution with respect to claim 22 of the Patent (which concerned infringing primary, rather than auxiliary, frames), and allowed Plaintiffs to demonstrate infringement through the use of the products with newly constructed auxiliary frames. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369-79 (Fed. Cir. 2009).

The same reasoning applies here with respect to claims 23 and 35 and Plaintiffs' newly constructed primary frames. Marchon seeks to avoid infringement and to preclude these frames by arguing that, unlike claim 22, claims 23 and 35 use the term "adapted" instead of "capable of engaging." But that is a distinction without a difference, as both of these terms have the same meaning with respect to a product's ability to perform a claim function. *See R.A.C.C. Indus., Inc. v. Stun-Tech, Inc.*, 1998 WL 834239 *2 (Fed. Cir. Dec. 2, 1998). Accordingly, this Court should follow *Revolution Eyewear* and permit the introduction of Plaintiffs' newly constructed primary frames and any related evidence.

2.      MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE ANY
        TESTIMONY AND EVIDENCE CONCERNING WILLFUL INFRINGEMENT

To prove willful infringement of a patent, the patentee must "show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent," and that "this objectively-defined risk . . . was either known or so obvious that it should have been known to the accused infringer." In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  Marchon and Nike served Rule 30(b)(6) deposition notices directed to Plaintiffs on the topic of willful infringement in an effort to discover and flush out Plaintiffs' position.[1]  Discovery confirmed that Plaintiffs have no evidence that would support a finding of willfulness.  Accordingly, any attempt by Plaintiffs to ambush Marchon and Nike at trial with "new" willful infringement proofs or claims should be rejected.  Having failed to set forth any evidence during discovery, Plaintiffs should be precluded from offering any willfulness allegations at trial.

Most telling, it is undisputed that Marchon and Nike did not know prior to being served with the Complaint that the reexamined '545 Patent at issue in this case existed.  Knowledge of the patent is a key and required element of a willfulness claim.  Having failed to provide any facts to support a willfulness claim in this case, Plaintiffs should not be allowed to introduce new evidence of willful infringement at trial.  In fact, Thierry Ifergan's Rule 30(b)(6) testimony on behalf of Plaintiffs Aspex and Contour supports Marchon's and Nike's position that Plaintiffs have failed to identify any evidence whatsoever that would support a finding of willful infringement.

Specifically, Mr. Ifergan testified that he didn't know whether Marchon or Nike had ever been put on notice of the reexamined '545 Patent, and that no one from Aspex or Contour had ever notified anyone at Marchon or Nike of the reexamination certificate, which was issued less than six months before Plaintiffs filed the current complaint.  See Marchon Br. App. Ex. "F" (Ifergan Dep. Tran.) at 57:5-63:9 (DE 102).  Further, at no point in his deposition did Mr. Ifergan offer any evidence to support that Marchon or Nike knew of the reexamined '545 Patent, or any evidence to otherwise support a claim of willful infringement against Marchon or Nike.

Even after being served with the complaint in this case, there can be no willful infringement as Plaintiffs and Marchon were both parties to the previous litigation involving the pre-reexamination '545 Patent and the same eyewear products in Aspex Eyewear, Inc. et al. v. Marchon Eyewear, Inc., Case No. 06-08000 (C.D. Ca.) (the "First Aspex Action").  The language of the Settlement Agreement in that case is a clear indication that the Parties intended to waive future claims that could have been brought, and thus Marchon could not have possibly willfully infringed in view of this settlement and associated releases.

Accordingly, any testimony or evidence referencing or attempting to prove willful infringement would constitute an unfair surprise at trial, would be prejudicial and should be excluded pursuant to Federal Rules of Evidence 402 and 403.

---

[1]  See topic XII of Marchon's and Nike's Rule 30(b)(6) notices to Aspex and Contour.

## PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF MARCHON TO PRECLUDE EVIDENCE REGARDING ACTS OF WILLFUL INFRINGEMENT

Plaintiffs respectfully oppose the motion *in limine* of Marchon to preclude any evidence regarding Marchon's acts of willful infringement of claims 23 and 35 of the '545 Patent at issue.

Plaintiffs asserted a cause of action against Marchon for willful infringement of claims 23 and 35. Following the denial of its Rule 12(b)(6) motion, Marchon answered the Complaint and took Rule 30(b)(6) depositions of both Plaintiffs. If Marchon believed, after taking this discovery, that there were no disputed issues of material fact and that they were entitled to judgment as a matter of law on the issue of willful infringement, they could have moved for summary judgment on that issue. Marchon, however, chose not to do so. It cannot now make what is essentially an untimely motion for summary judgment in the guise of a motion *in limine*. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964 *13 (M.D. Fla. Oct. 5, 2004) (denying motion *in limine* to preclude evidence in support of equitable defenses as untimely "disguised summary judgment motion").

Plaintiffs are prepared to demonstrate at trial, through admissible evidence, that Marchon (a) knew or should have known of the re-examination proceeding that resulted in claims 23 and 35; (b) as a result of prior litigation with Plaintiffs, knew of other claims under the Patent and of Plaintiffs' positions on infringement taken in that litigation; (c) took no action to re-design its products as to be non-infringing in light of that knowledge; and (d) has not produced evidence of reasonable reliance on the advice of counsel. Because Marchon has not asserted any challenge to this proof on any legitimate *evidentiary* grounds, its motion should be denied.

3.   MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE ANY
     TESTIMONY AND EVIDENCE CONCERNING THE PURPORTED COMMERCIAL
     SUCCESS OR OTHER INDICIA OF NONOBVIOUSNESS OF ASPEX'S
     MAGNETIC EYEWEAR PRODUCTS

An obviousness analysis in a patent case requires the evaluation of (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) objective indicia of nonobviousness. Merck & Co. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1369 (Fed. Cir. 2005). Objective indicia of non-obviousness, such as commercial success, long felt but unsolved needs, and failure of others can be relevant, so long as there is a causal relation or "nexus" between an invention and, for example, the commercial success of a product embodying that invention. Id. at 1376. However, Plaintiffs and Plaintiffs' expert, Brian Napper, have failed to offer during discovery any evidence of objective indicia of non-obviousness. Specifically, no offer concerning commercial success has been made for any of Aspex's products. Further, Plaintiffs have failed to link or even present a single fact to show a causal relation or nexus between the claimed invention of the '545 Patent and any success, let alone commercial success, of Plaintiffs' magnetic eyewear products. Accordingly, any evidence of objective indicia of nonobviousness including commercial success at trial should therefore be barred.

Specifically, Mr. Napper simply states in his expert report that, based on the profitability information produced by Revolution and Aspex, it appears that magnetic eyewear products have been profitable; that magnetic eyewear products have been popular among consumers due to perceived benefits and convenience over traditional prong clip-ons; and that magnetic clip-on products may have higher margins compared to non-magnetic clip-on products. No conclusions of commercial success are offered, and no attempts to show a causal relation or nexus between the claimed invention of the '545 Patent and any "successes" of Plaintiffs' magnetic eyewear products is attempted. At his September 16, 2010 deposition, Mr. Napper did not offer any further opinion with respect to the nexus requirement of commercial success. Mr. Napper, in fact, did not even know what the term "nexus" meant. See Napper Dep Tr. 216:14 to 217:8. Clearly, Mr. Napper was not prepared to discuss commercial success with respect to the claims at issue and should not be permitted to offer any such opinions at trial.

Marchon and Nike would be prejudiced by the admission of testimony relating to any purported commercial success of Aspex's magnetic eyewear products. In addition to not providing this information during discovery, if Aspex were to now attempt to offer this evidence at trial through its expert witnesses, fact witnesses, or documents, then Marchon and Nike would need to offer evidence and arguments in response.

Accordingly, any new testimony or new evidence offered by Plaintiffs to prove any objective indicia of nonobviousness, including commercial success, would constitute an unfair surprise at trial, would be prejudicial to both Marchon and Nike, and must be excluded pursuant to Federal Rules of Evidence 402 and 403.

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF MARCHON TO
PRECLUDE EVIDENCE REGARDING INDICIA OF NON-OBVIOUSNESS
OF PLAINTIFFS' PRODUCTS

Plaintiffs respectfully oppose the motion *in limine* of Marchon (and Nike) to preclude any evidence regarding the commercial success of Plaintiffs' magnetic clip-on eyewear products and other evidence indicating the non-obviousness of the patented design of those products.

Marchon's motion is premised entirely upon the argument that Plaintiffs' damages expert, Brian Napper, offered no opinion with respect to these issues. However, Marchon can point to no authority holding that evidence of non-obviousness is the exclusive province of expert testimony. The dearth of such authority is unsurprising, as expert opinion is not necessary where, as here, "scientific, technical, or other specialized knowledge" will not "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. Thus, expert testimony is unnecessary when it does not offer anything "beyond the understanding and experience of the average citizen." *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). In patent cases, expert opinions on obviousness or non-obviousness are similarly unnecessary when the disputed factual issues can be determined by "recourse to logic, judgment, and common sense available to the person of ordinary skill that do not necessarily require explication in any reference or expert opinion"). *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1329 (Fed. Cir. 2009).

Evidence regarding the commercial success of Plaintiffs' products due to the patented design features at issue, as well as other indicia of non-obviousness of that design, do not require expert opinion. Rather, Plaintiffs will rely on the testimony of Thierry Ifergan, an Executive Vice President of Aspex, who has personal knowledge of these facts, and to offer documents that will support Mr. Ifergan's testimony. The motion should thus be denied.

4.   MARCHON'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY
     AND EVIDENCE CONCERNING ITS PARENT COMPANY, VISION
     <u>SERVICE PLAN</u>

Any testimony or evidence potentially offered by Plaintiffs relating to Marchon's non-party parent company, Vision Service Plan ("VSP"), is irrelevant to any issue in this case and would be prejudicial to Marchon and Nike and should be excluded pursuant to Federal Rules of Evidence 402 and 403.  For example, Aspex's separate and unrelated litigation against Vision Service Plan, <u>Aspex Eyewear, Inc. v. Vision Service Plan et al.</u> (Case No. 2-10-cv-00632-JAM-GGH) (E.D. Cal.), which was brought on antitrust grounds and to which Marchon is no longer a party, is irrelevant to the patent infringement allegations at issue in the present action.

Further, to the extent that Plaintiffs attempt to offer evidence as to the size and nature of VSP's business, it will be for no purpose other than to portray the case as "David vs. Goliath" to the jury.  The size or nature of VSP's business has no relevance to any of the issues at hand or the facts of the case.  Such testimony is of course prejudicial to Marchon, and should not be permitted pursuant to Federal Rules of Evidence 402 and 403.

## PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF MARCHON TO PRECLUDE REFERENCES TO VISION SERVICE PLAN

Plaintiffs respectfully oppose the motion *in limine* of Marchon to preclude any reference to Marchon's parent company, Vision Service Plan ("VSP").

In brief, Marchon's motion is too vague and sweeps too broadly, as it is impossible for Plaintiffs or the Court to anticipate in a vacuum any of the ways in which a mere reference to VSP at trial might be deemed irrelevant or unduly prejudicial. Given the number of issues to be tried, Plaintiffs should not be asked to speculate as to every possible manner in which Marchon's corporate relationship with VSP might conceivably become relevant to a disputed factual issue, or might otherwise be potentially helpful to the jury.

If there is particular testimony regarding VSP offered during the course of the trial that Marchon believes is irrelevant or unduly prejudicial, such objections can be heard by the Court on an as-needed basis as each specific question and answer appears on the record. Marchon's hopelessly vague, ill-defined motion should be denied, as this issue is not one appropriate for the sort of global ruling sought by Marchon.

5.    NIKE'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY AND EVIDENCE
      CONCERNING ITS ALLEGED INDUCEMENT

Plaintiffs' single claim against Nike is based on a theory that Nike has induced Marchon's infringement of the '545 Patent. See DE 1 ¶¶ 30-34. Specifically, Aspex alleges "on information and belief" that Nike, "well knowing of the '545 Patent, has actively and knowingly aided and abetted Marchon's direct infringement of claims 23 and 35 of the '545 Patent. Marchon and Nike served Rule 30(b)(6) notices on both Aspex and Contour on the topic of inducement in an effort to learn of Plaintiffs' position.[1] Despite the opportunity to do so, Plaintiffs have failed to submit any evidence whatsoever to support a claim for inducement against Nike, and should therefore not be allowed to submit new evidence on this topic at trial.

First, Plaintiffs did not conduct a reasonable pre-filing investigation into facts underlying its complaint for inducement against Nike, in violation of Fed. R. Civ. P. 11. Accordingly, at the time of filing the present action, Plaintiffs did not possess any evidence to support a claim for inducement against Nike.

Second, after the completion of all depositions, Plaintiffs still do not possess any evidence to support a claim for inducement against Nike. Discovery has confirmed that:

(i)    Nike does not make or design ophthalmic products of any kind. See Declaration of Phil Sibbet in Support of Nike's Motion for Summary Judgment ¶ 5 (DE 102).

(ii)    Instead, Nike relies on Marchon's expertise in this area, and Nike's involvement with ophthalmic products like those claimed in the '545 Patent is limited to a visual inspection of Marchon's finished products for brand control and a cursory review for quality and safety. Id. ¶ 7; see also Nike Br. App. Exs. "G" (Sibbet Dep. Tran.) at 44:2-45:22; "C" (Berg Dep. Tran.) at 138:24-140:8; and "F" (Silver Dep. Tran.) at 13:18- 14:23 (DE 102).

(iii)    Nike had no knowledge of the '545 Patent until after it was served with the complaint in this matter. Id. ¶ 8; see also Nike Br. App. Exs. "G" (Sibbet Dep. Tran.) at 67:15-23; "F" (Silver Dep. Tran.) at 147:18-22 (DE 102).

Moreover, Thierry Ifergan testified as Plaintiffs' Rule 30(b)(6) witness that he did not even know whether Marchon or Nike had ever been put on notice of the reexamined '545 Patent, and that no one from Plaintiffs had ever notified anyone at Marchon or Nike of the reexamination certificate, which was issued less than six months before Plaintiffs filed the current complaint. See Marchon Br. App. Ex. "F" (Ifergan Dep. Tran.) at 57:5-63:9 (DE 102).

Plaintiffs' claim for inducement against Nike is therefore objectively baseless and unsupported by any evidence. Accordingly, any new evidence or testimony that Plaintiffs may attempt to introduce to show inducement would constitute an unfair surprise at trial, would be prejudicial to both Marchon and Nike, and must be excluded pursuant to Federal Rules of Evidence 402 and 403. Plaintiffs' inducement claim is also the subject of Nike's Motion for Summary Judgment (DE102-109).

---

[1] See topics X of Marchon's and Nike's Rule 30(b)(6) notices to Aspex and Contour.

## PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF NIKE TO PRECLUDE EVIDENCE REGARDING ITS LIABILITY FOR INDUCING INFRINGEMENT

Plaintiffs respectfully oppose the motion *in limine* of Nike to preclude any evidence regarding Nike's liability for inducing infringement of claims 23 and 35 of the '545 Patent.

This is now the third motion made by Nike directed to this issue. On November 30, 2009, Nike moved to dismiss Plaintiffs' cause of action against it for inducing infringement of claims 23 and 35. DE 24. That motion was denied in its entirety by Order dated July 23, 2010. DE 159. On May 20, 2010, Nike moved for summary judgment on the inducement of infringement cause of action. DE 102-109 (filed under seal). That motion has been fully briefed, and is *sub judice*.

Nike cannot now seek a third bite at the apple by re-arguing its summary judgment motion in the guise of a motion *in limine*. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964 *13 (M.D. Fla. Oct. 5, 2004) (denying motion *in limine* to preclude evidence in support of equitable defenses as untimely "disguised summary judgment motion"). Such a motion is improper and should be denied, as there is no **evidentiary** dispute with respect to the cause of action asserted against Nike. Rather, Plaintiffs will prove the elements of that cause of action through admissible evidence.

Specifically, as detailed in its opposition papers to Nike's motion for summary judgment, Plaintiffs will argue that the provisions of the license agreement between Nike and Marchon raise material issues of disputed fact as to Nike's role in the design and manufacturing processes for Marchon's infringing products, and Nike's role as a litigant in prior patent infringement actions raise disputed factual issues as to the active and knowing nature of Nike's actions. *See* DE 134-138 (filed under seal).

6.   MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE PLAINTIFFS'
EXPERT BRIAN W. NAPPER UNDER RULE 702 OF THE FEDERAL RULES
OF EVIDENCE

Defendants seek to preclude the expert report and opinion testimony of Plaintiffs'
damages expert, Brian W. Napper, on the basis that Mr. Napper's expert report and expected
testimony lack reliability and should be inadmissible.  Specifically, Mr. Napper's opinions rest
on unreliable methodology that is not generally accepted in the relevant community for the
purpose of calculating damages, and which is not an appropriate basis for expert opinion in this
case.  Rule 702 of the Federal Rules of Evidence allows the admission of scientific or technical
knowledge only if that testimony "will assist the trier of fact to understand the evidence or to
determine a fact in issue."  A trial court must therefore act as a "gatekeeper" of any such
proffered testimony, a role which requires a "preliminary assessment of whether the reasoning or
methodology underlying the testimony is scientifically valid and of whether the reasoning or
methodology properly can be applied to the facts in issue."  Daubert v. Merrell Dow Pharms.,
509 U.S. 579, 596 (1993).

In Daubert, the Supreme Court listed several factors that a trial court may look to in
assessing the reliability of proposed expert testimony, including whether the expert's testimony
is capable of being tested; whether the theory proffered by the expert has been subjected to peer
review; and whether the theory employed by the expert is generally accepted in the relevant
scientific community.  509 U.S. at 592-94.  Mr. Napper fails to meet any of these standards set
forth in Daubert.  Instead, Mr. Napper, in stark contrast to Defendants' expert witness, employed
an unreliable methodology and strayed from well-established practices and standards for
calculating a royalty rate in this case.

One standard method of calculating a royalty rate is to use quantitative factors to
calculate a starting royalty rate, and to then adjust that starting royalty rate to account for the
upward or downward effect of qualitative factors.  The widely-accepted Georgia-Pacific factors
point to two methods for arriving at the starting royalty rate, both of which are widely applied.[1]
Mr. Napper's expert report and deposition testimony confirm that Mr. Napper used neither.  In
fact, Mr. Napper failed to designate any starting royalty rate whatsoever.  See Napper Dep. Tr. at
at 85:18 - 86:9.  By ignoring the widely accepted approach of Georgia-Pacific, Mr. Napper's
calculations are clearly arbitrary and cannot be reproduced.  Mr. Napper all but admitted this
during his testimony that without a starting point, another expert would not know how to
reproduce his calculations.  See Napper Dep. Tr. 299:8 to 300:15.  As a result of using an
unrecognized or irreproducible methodology, Mr. Napper arrived at a royalty rate of 10% that is
out of line with industry standards, is inconsistent with the profitability of the allegedly
infringing technology, and fails to accurately reflect the conditions that would have prevailed in
a hypothetical negotiation.

This Court should preclude Mr. Napper's testimony as his methodology is unreliable, not
generally acceptable, prejudicial to Defendants, and thus not helpful to the trier of fact.

---

[1]  The Georgia-Pacific case established the broadly-accepted framework for determining a reasonable royalty as a
patent infringement remedy.  See Georgia-Pacific Corp v. United States Plywood Corp., 318 F. Supp. 1116
(S.D.N.Y. 1970) mod'd and aff'd 446 F.2d 295 (2nd Cir. 1971).

### PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF MARCHON TO PRECLUDE TESTIMONY BY BRIAN NAPPER PURSUANT TO FED. R. EVID. 702

Plaintiffs respectfully oppose the motion *in limine* of Marchon (and Nike) to preclude any testimony by Plaintiffs' damages expert, Brian Napper, pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

Marchon seeks to preclude Mr. Napper because his analysis of a reasonable royalty "employed an unreliable methodology," as he did not start with a base rate and then make adjustments to that figure, and because other experts cannot mathematically recreate his analysis. They offer no authority, however, for the proposition that either using such a base rate as a starting point, or employing a "re-creatable methodology," are required under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 446 F.2d 295 (2d Cir. 1971).

To the contrary, *Georgia-Pacific* sets forth a multi-factor analysis consisting of both objective and subjective criteria, and does not direct district courts on how to weigh, balance or apply any of these factors, nor does it require that other experts be able to re-create any one expert's analysis. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1335 (Fed. Cir. 2009) (noting "flexible analysis" of *Georgia-Pacific* factors as "a useful and legally-required framework for assessing [a] damages award"), *cert. denied*, 130 S. Ct. 3324 (2010). Indeed, Marchon's own damages expert, Dr. Gordon Rausser, agrees with Plaintiffs that *Georgia-Pacific* does not require a damages expert to employ a base royalty, even though this is how Dr. Rausser started his analysis. Rausser Dep. at 54.

Thus, what the Court is left with is a classic difference of opinion between competing experts. Which of those differing opinions and approaches is more credible is for the jury to decide. *See Worsham v. A.H. Robins Co.*, 734 F.2d 676, 682 (11th Cir. 1984).

7.     MARCHON'S AND NIKE'S MOTION IN LIMINE TO PRECLUDE PLAINTIFFS'
       EXPERT BRIAN W. NAPPER ON THE BASIS OF GREENBERG TRAURIG'S AND
       MR. NAPPER'S VIOLATION OF THE PROTECTIVE ORDER

       Defendants seek to preclude the expert report and opinion testimony of Plaintiffs'
damages expert, Brian W. Napper, on the basis that Mr. Napper and Plaintiffs' law firm,
Greenberg Traurig, astonishingly and indisputably violated of the Protective Order in this case.

       Paragraph 5 of the Protective Order, which Mr. Napper executed on April 7, 2010, reads
in part that "All Confidential Information that has been obtained from a party during the course
of this proceeding shall be used only for the purpose of this litigation and not for any other
business purpose, proceeding, litigation, or other purpose whatsoever.  Further such information
may not be disclosed to anyone except as provided in this Order."

       Despite agreeing to be bound, Mr. Napper admitted at his deposition that both he and the
Greenberg Traurig firm violated the Protective Order at least by referring to, using, paraphrasing,
and/or quoting "Confidential" and "Highly Confidential" materials from this case in another case
involving Aspex.  Even more shocking is that Aspex's counsel in this case, Greenberg Traurig,
advised Mr. Napper that this was appropriate.  Greenberg Traurig is counsel to Aspex in this case
and to Aspex in the other case in which Mr. Napper is an expert.[1]  Both cases are in Florida and
have overlapping Greenberg Traurig attorneys involved.  Much to the detriment of Marchon and
Revolution, Mr. Napper admitted that Confidential and Highly Confidential deposition testimony
of Mr. Albert Berg and Mr. Gary Martin Zelman, CEOs of Marchon and Revolution, was
included in an expert report submitted to at least counsel and experts for Zenni Optical, a
competitor of Marchon and Revolution, in an unrelated case.

       Mr. Napper's conduct in disclosing confidential information repeatedly, and Greenberg
Traurig's authorizing, condoning, and participating in such violations of the Protective Order, is
inexcusable and sanctionable.  First, Mr. Napper was retained by Plaintiff Aspex as a damages
expert in both cases.  Second, Mr. Napper and his staff were aware of the pending cases and that
Marchon and Revolution deposition transcripts contained confidential information.  Third, Mr.
Napper and his same staff prepared the expert reports in both cases.  Fourth, Mr. Napper was
clearly aware that the Defendants in each case are competitors.  Fifth, Greenberg Traurig is
counsel to Aspex in both this case and the Zenni case.  Nonetheless, both Mr. Napper and
Greenberg Traurig attorneys acted with complete disregard for Defendants' confidential
information.

       Mr. Napper and Greenberg Traurig failed to inform Marchon or Revolution that a breach
of the Protective Order had occurred (despite apparent representations to the contrary to Zenni's
counsel).  Such conduct further reinforces Defendants' position that Plaintiffs' callous disregard
of the Protective Order should be addressed by this Court.  The admitted violations of the
Protective Order cannot be cured, as Marchon's and Revolution's Confidential Information has
already been disclosed.  Instead, striking Mr. Napper's expert report and testimony in this case is
a proper remedy for the clear and undisputed violation of the Protective Order in this case.

---

[1] See Napper Dep. Tr. At 47:8 to 59:11; see also Aspex Eyewear, Inc. et al v. Levente Tibor Laczay dba Zenni
Optical, Case No. 0:09-cv-61468-JIC (S.D. Fla.).

### PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF MARCHON TO PRECLUDE TESTIMONY BY BRIAN NAPPER BASED UPON ALLEGED PROTECTIVE ORDER VIOLATION

Plaintiffs respectfully oppose the motion *in limine* of Marchon to preclude any testimony by Plaintiffs' damages expert, Brian Napper, as a result of Mr. Napper's alleged violation of the March 23, 2010 Protective Order regarding confidentiality of documents (the "Protective Order").  (DE 67.)

Marchon (and Nike) complain that the original version of an expert report authored by Mr. Napper in *Aspex Eyewear, Inc. v. Laczay*, Case No. 09-cv-61468-JIC (S.D. Fla.), contained brief references to deposition testimony taken in this action, and to a settlement agreement in an earlier litigation, that had been designated as "Confidential-Attorneys' Eyes Only" pursuant to the Protective Order.  Plaintiffs admit that these references should not have appeared in Mr. Napper's *Laczay* report, but within days of its production, Plaintiffs instructed him to issue a corrected report with the references redacted, and ensured that all copies of the original report had been destroyed.  Moreover, because the original report was produced in *Laczay* on an "attorneys' eyes only" basis, it could not have been seen by any of Marchon's or Nike's competitors, thus causing no prejudice to them.

Sanctions, such as the preclusion of testimony, are unavailable under Fed. R. Civ. P. 37(b)(2) (which governs failures to comply with a court order) for alleged violation of a protective order.  Rather, the only remedy is to hold a separate hearing to determine whether the accused party is in contempt of court, and if so, to award attorneys' fees to the aggrieved party .  *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001).  Even this relief, however, is unwarranted under the above circumstances, given the utter lack of any prejudice to Marchon or Nike as a result of this minor -- and immediately rectified -- departure from the terms of the Protective Order.

## DEFENDANT REVOLUTION EYEWEAR, INC.'S AND ZELMAN'S MOTION IN LIMINE NO. 1

Defendants move this Court for an order excluding from the trial on infringement Exhibit Nos. 23, 24, 26 and any and all evidence, references to evidence, testimony or argument pertaining to the previous lawsuits between the parties.[1]  This Motion is made pursuant to Rules 402, 403 and 404 of the Federal Rules of Evidence.

The parties have been litigating over their respective patent rights for over a decade. (Ex. 4.) In two cases, Revolution was found <u>not</u> to infringe several claims of the asserted '545 patent and its predecessor patent, and in one case Revolution was found to infringe a single claim <u>not asserted in this case</u>.  While the judgments and orders in some of these lawsuits are relevant to the legal and equitable issues before the <u>Court</u> (e.g., claim preclusion, claim construction, issue preclusion), these judgments, orders, evidence, argument, testimony and the details of the allegations of the prior suits are irrelevant to the issues of infringement and invalidity under Federal Rule of Evidence 401 and should be excluded outright under Federal Rule of Evidence 402.

Plaintiffs' true purpose in introducing such evidence would be to attempt to prove that Revolution infringed claims 23 and 35 because it was found to infringe claim 22 in the prior lawsuit.  However, FRE 404(b) is clear that evidence of prior acts or wrongs, including prior lawsuits, is inadmissible to show action in conformity therewith.  See *Outley v. New York*, 837 F.2d 587, 593-594 (2d Cir. 1988).  Moreover, the parties' litigation history should be excluded pursuant to Rule 403 because any potential relevance is vastly outweighed by the high risk of undue prejudice, confusion of the issues, misleading the jury, and undue consumption of time. Presumably Plaintiffs will try to introduce evidence of the prior infringement finding in order to mislead the jurors that Revolution routinely engages in bad acts and to induce jurors to act upon prejudice or passion against Revolution.  Further, introduction of evidence relating to the lengthy litigation history would result in an undue consumption of time as defendants would be forced to present all the <u>favorable</u> rulings from these prior suits, including that it twice prevailed on summary judgment of <u>non-infringement</u>.  Lastly, it may cause the jury to confuse the accusations alleged in those lawsuits with those involved in this one.

---

[1] The parties have stipulated to bifurcation of Plaintiffs' willful infringement claim.  Revolution agrees that some what transpired in the prior lawsuits is relevant to its lack of willfulness.

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF DEFENDANTS REVOLUTION EYEWEAR, INC. AND GARY MARTIN ZELMAN TO PRECLUDE EVIDENCE <u>REGARDING PRIOR LITIGATION BETWEEN THE PARTIES</u>

Plaintiffs respectfully oppose the motion *in limine* of Revolution to preclude certain unspecified evidence regarding any prior litigation between the parties.

Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. All relevant evidence is admissible, unless otherwise precluded by federal law. Fed. R. Evid. 402.

Revolution's broad-brush motion is as vague as it is unhelpful. Revolution's own pretrial submissions are littered with supposed "evidence" from prior litigation between the parties on a wide variety of topics, ranging from the construction of certain words used in claims 23 and 35 of the '545 Patent at issue, to their affirmative defense of *res judicata*. While Plaintiffs contest the relevance of much of this "evidence," the fact is that Revolution does not hesitate to cite to the prior litigation when in its interest.

The problem with Revolution's ill-defined motion is that there is no way for the Court to determine on a global basis from the face of the motion what particular evidence should or should not be precluded. Much of the prior testimony should be admissible as admissions. But if there are particular documents, testimony or other evidence generated during the course of the prior proceedings that Revolution (or Plaintiffs) believe are irrelevant or unduly prejudicial, such objections can be heard by the Court on an item-by-item basis as each specific piece of evidence is sought to be introduced. If Revolution wanted to file an *in limine* motion as to specific evidence it sough to exclude, it could have done so here. A global exclusion of all evidence is not proper.

<u>DEFENDANT REVOLUTION EYEWEAR'S AND ZELMAN'S MOTION IN LIMINE NO. 2</u>

Defendants move this Court for an order excluding Exhibit Nos. 27 and 28 and any and all evidence, references to evidence, testimony or argument pertaining to Revolution products not identified in response to Revolution's written discovery requests.  This Motion is made pursuant to the Federal Rules of Civil Procedure, Rule 37(c)(1).

Plaintiffs have belatedly attempted to add <u>hundreds</u> of accused products to this case in violation of several court orders.  On November 25, 2009, the earliest date that discovery was permitted, Defendants served a focused set of six interrogatories directed to the major issues in this case.  Interrogatory No. 1 asked plaintiffs to "Identify by name and all other available commercial designations each accused product" in this case.  Plaintiffs' original and supplemental responses were deficient, and Defendants moved to compel.  On March 3, 2010, the Court granted Defendants' motion and ordered that "plaintiff Contour shall provide full and complete responses to the interrogatories at issue within ten (10) days of the date of this Order."  (DE 63.)  On March 15, 2010, Plaintiffs served second supplemental responses identifying 41 accused products and stating "Contour does not presently contend that any other Revolution eyewear infringes claims 23 and 35." (Ex. 5.)  Defendants relied on this response as the complete list of accused products in analyzing this case and providing their own discovery responses, including their extensive non-infringement analysis as set forth in response to plaintiffs' Interrogatory No. 1 (DE 89-3 and 89-5), and gathering and producing sales data and cost data for the accused products.  (Id.,¶ 3.)[1]  Fact discovery closed two weeks later on April 2, 2010.  (DE 59.)  A month later, Plaintiffs moved to compel Defendants to provide discovery on an additional 256 products.  (DE 89, 94.)  The Court denied Plaintiffs' motion as untimely.  (DE 100.)

Plaintiffs' attempt to add additional products would violate both the order granting Defendants' motion to compel (DE 63) and the scheduling order, which required plaintiffs to supplement their discovery responses "within ten days of receipt or other notice of new or revised information" (DE 59). Plaintiffs have not supplemented their discovery responses, nor could they since Plaintiffs' information on <u>all</u> of Revolution's products is not new. This information is publicly known and was admittedly monitored by Plaintiffs.  (Exs. C and D.) The Court should exclude all evidence relating to products not specifically identified in Plaintiffs' responses to interrogatories.

---

[1] For example, belatedly accused Revolution frames REV 607-609 differ substantially from the 41 accused products. (Ex. 8.)

### PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF REVOLUTION TO PRECLUDE EVIDENCE OF PRODUCTS NOT REFERENCED IN INTERROGATORY RESPONSES

Plaintiffs oppose the motion *in limine* of Revolution to preclude reference to any particular model or line of magnetic clip-on eyewear not specifically referenced in response to the Revolution's first set of interrogatories to Contour.

Contour's supplemental interrogatory responses were never limited to specific products, but instead provided Revolution with examples and information regarding the identity of their accused products. Contour thus put Revolution on notice that Plaintiffs had accused an entire product family of instrumentalities whose members are indistinguishable with respect to the infringement alleged by Contour. This position has been recognized as a full and complete identification of the universe of infringing products in a patent infringement action by numerous federal courts. *See, e.g.*, *Renesas Tech. Corp. v. Nanya Tech. Corp.,* 2005 WL 2000926 *4 (N.D. Cal. Aug. 18, 2005).

Moreover, Revolution took the Rule 30(b)(6) depositions of both Plaintiffs, during the course of which they received a binder containing catalogues of their products. The specific products accused of infringement were highlighted in that binder. Plaintiffs' counsel also advised Revolution's counsel by e-mail that all of the accused products of Revolution had been specifically identified during the course of the Rule 30(b)(6) depositions of Plaintiffs. Finally, Defendants' proposed expert Joel Sodano opined that all of Revolution's magnetic clip-on products have the same characteristics. Sodano Report ¶ 43. Accordingly, the Revolution Defendants know exactly which of their products are accused of infringement. Their motion should be denied, and they should be ordered to produce all sales-related records and other documents as to each of their accused products.

DEFENDANT REVOLUTION EYEWEAR'S AND ZELMAN'S MOTION IN LIMINE NO. 3

Defendants move this Court for an order excluding Exhibit Nos. 11, 25 and any and all evidence, references to evidence, testimony or argument pertaining to Exhibit Nos. 11 and 25. This Motion is made pursuant to Rules 402 and 403 of the Federal Rules of Evidence.

Approximately six months after this lawsuit was filed, <u>Plaintiffs</u> fabricated primary frames in an attempt to show that Defendants' auxiliary frames (the accused product) infringe Claims 23 and 35 of RE 37,545 patent ("'545 patent"). In particular, Plaintiffs have argued that Defendants' auxiliary frames are "suitable for" or "capable of" being mounted on top of Plaintiffs' bogus primary frame. (Ex. 9.) Plaintiffs admit that Defendants' auxiliary frames are not "adapted" or *made* to be top-mounted as required by the asserted claims. (Ex. 10.) Plaintiffs admit that neither their fabricated primary frames nor similar frames are commercially available. (Ex. 11.) Plaintiffs' assertion that Defendants' auxiliary frames can be placed atop modified primary frames that are not even commercially available is irrelevant to any issue in this case. *High Tech Med. Instrumentation, Inc. v. New Image Indus.*, 49 F.3d 1551, 1555; *Stryker Corp. v. Davol, Inc.*, 10 F. Supp. 2d 841 (W.D.Mich. 1998) (surgical device that could perform as required by patent holder's claims only if attached to a probe that was not commercially available found to be non-infringing). Indeed, even if mere capability were required, a California court has already found that the accused auxiliary frames are not "reasonably capable of" an infringing use. (Ex. 12.)

Rather, Claims 23 and 35 **require** that the auxiliary frames be "adapted to" mount on top, not the mere capability of being placed on top. (See Ex. 13.) Indeed, under such a definition, <u>any object</u> – a feather, an anvil -- would have such a capability and thus be infringing. The dictionary definition of "adapted" is "made fit (as for a specific or new use or situation)" (Ex. 14) and "adapted to" is not synonymous with "capable of" or "suitable for." *Boston Sci. Corp. v. Cordis Corp.*, 2006 U.S. Dist. LEXIS 94329 (N.D. Cal. Dec. 20, 2006); see also *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1378 (Fed. Cir. 2009); *Sta-Rite Indus., LLC v. ITT Corp.*, 2010 U.S. Dist. LEXIS 10790 at *30-32 (E.D. Tex., Jan. 19, 2010).

Presenting Plaintiffs' specially fabricated frames to the jury would be confusing and highly prejudicial. Remarkably, Plaintiffs even seek to exclude Revolution's <u>actual</u> primary frame that further demonstrates that Revolution's auxiliary frame is neither adapted to <u>nor</u> capable of top-mounting. There is a high probability of misleading the jury into concluding that Plaintiffs' bogus frames were made for or sold with Defendants' accused products. These specially fabricated frames and all evidence and testimony related thereto are irrelevant, prejudicial and must be excluded.

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF REVOLUTION TO PRECLUDE
EVIDENCE REGARDING PLAINTIFFS' CONSTRUCTED PRIMARY FRAMES

Plaintiffs respectfully oppose the motion *in limine* of Revolution to preclude evidence

regarding any of Plaintiffs' constructed primary frames.

These frames are relevant because they demonstrate the infringing capabilities of

Revolution's products. Claims 23 and 35 of the '545 Patent at issue require that the auxiliary frame

of the magnetic clip-ons be adapted to perform the claims' functions when engaged with "*a* primary

frame." Although Revolution maintains that only its actual bottom-mounted products or other,

similar commercially sold frames are relevant for purposes of determining infringement, the Federal

Circuit rejected an identical argument by Revolution with respect to claim 22 of the Patent (which

concerned infringing primary, rather than auxiliary, frames), and allowed Plaintiffs to demonstrate

Revolution's infringement through the use of its products with newly constructed auxiliary frames.

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1369-79 (Fed. Cir. 2009).

The same reasoning applies here with respect to claims 23 and 35 and Plaintiffs' newly

constructed primary frames. Revolution seeks to avoid infringement and to preclude these frames

by arguing that, unlike claim 22, claims 23 and 35 use the term "adapted" instead of "capable of

engaging." But that is a distinction without a difference, as both of these terms have the same

meaning with respect to a product's ability to perform a claim function. *See R.A.C.C. Indus., Inc. v.*

*Stun-Tech, Inc.*, 1998 WL 834239 *2 (Fed. Cir. Dec. 2, 1998). Accordingly, this Court should

follow *Revolution Eyewear* and permit the introduction of Plaintiffs' newly constructed primary

frames and any related evidence.

DEFENDANT REVOLUTION EYEWEAR'S AND ZELMAN'S MOTION IN LIMINE NO. 4

Defendants move this Court for an order excluding any and all evidence, references to evidence, testimony or argument that Gary Martin Zelman is directly liable for infringement. Plaintiffs' complaint accuses Zelman, the president of Defendant Revolution Eyewear, Inc., of directly infringing the '545 patent.  (DE 1 ¶¶ 36-37.)  Plaintiffs' claim of Zelman's personal liability under "35 U.S.C. § 271(a) requires sufficient evidence to justify piercing the corporate veil" by showing that Revolution is the alter ego of Zelman. *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1331-32 (Fed. Cir. 1999), citing *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990).  Plaintiffs' evidence proffered on this issue is insufficient as a matter of law to pierce the corporate veil, and such evidence should be excluded pursuant to FRE 401, 402 and 403.

The alter ego doctrine is a "drastic remedy," which courts apply only "reluctantly and cautiously."  *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007).  Plaintiffs bear the heavy burden of showing "that the financial setup of the corporation is just a sham, and accomplishes injustice."  *Id.* (quotations and citation omitted).  As the state of incorporation, California law applies to this inquiry.  *See id.*; *International Ins. Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989).  Courts examine the following factors: inadequate capitalization, commingling of assets, eschewing corporate formalities, concentrating assets in the individual while concentrating liabilities in the corporation, and intent to use the corporate identity to defraud creditors.  *See Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th 1269, 1285 (1994); *see also Wechsler*, 486 F. 3d at 1295-97.  ***It is well-settled law that acts of an officer within the scope of her employment are protected by the corporate veil against charges of direct patent infringement.***  *Al-Site*, 174 F.3d at 1331-32; *Manville*, 917 F.2d at 553.

Plaintiffs' interrogatory responses state the <u>entire basis</u> of their direct infringement/alter-ego argument as follows:  Mr. Zelman, "in his capacity as president, owner and operator of Revolution," (i) makes all major corporate decisions; (ii) designs products and decides which ones to sell and when to take them off the market; and (iii) negotiates and signs agreements.  (Ex. 15.)  This evidence is insufficient to find alter ego liability as a matter of law.  Plaintiffs' response admits that the alleged acts were done within scope of Mr. Zelman's employment as CEO.  These facts, even if true, are inadequate.  *Al-Site.*, 174 F.3d at 1331 (CEO making sole decision to continue using infringing product not liable); *Manville*, 917 F.3d at 553 (participation in design of infringing product not sufficient to support liability).  Plaintiffs' "evidence" is irrelevant as having no bearing on any "fact of consequence" to determining the issues, and, even if some meager relevance exists, it poses a high risk of unfair prejudice and confusion of the issues.

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF ZELMAN TO PRECLUDE
EVIDENCE REGARDING ZELMAN'S LIABILITY FOR DIRECT INFRINGEMENT

Plaintiffs respectfully oppose the motion *in limine* of Revolution and Gary Martin Zelman ("Zelman") to preclude any evidence regarding Zelman's personal liability for direct infringement of claims 23 and 35 of the '545 Patent at issue.

Plaintiffs asserted a cause of action against Zelman in his individual capacity for direct infringement of claims 23 and 35. Zelman answered the Complaint in his individual capacity, took Rule 30(b)(6) depositions of both Plaintiffs, and served interrogatories as to the factual basis for the cause of action. In their March 31, 2010 interrogatory responses, Plaintiffs provided that basis, namely, that "Zelman himself uses, sells, and/or offers for sale products infringing Claims 23 and 35 of the '545 patent." Response to Rog. No. 6 (cross-references to other responses omitted).

If Zelman believed, after taking this discovery, that there were no disputed issues of material fact and that he was entitled to judgment as a matter of law on Plaintiffs' cause of action against him, he could have moved for summary judgment. Zelman, however, chose not to do so. He cannot now make what is essentially an untimely motion for summary judgment in the guise of a motion *in limine*. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964 *13 (M.D. Fla. Oct. 5, 2004) (denying motion *in limine* to preclude evidence in support of equitable defenses as untimely "disguised summary judgment motion"). This motion is not an **evidentiary** based motion, its improper, and should be denied.

## DEFENDANT REVOLUTION EYEWEAR'S AND ZELMAN'S MOTION IN LIMINE NO. 5

Defendants move this Court for an order excluding any and all evidence, references to evidence, testimony or argument that Gary Martin Zelman is liable for inducing infringement. Plaintiffs' complaint accuses Zelman, the president of Defendant Revolution Eyewear, Inc., of inducing infringement of claims 23 and 35 of the '545 patent. (DE 1 ¶¶ 38-39.) However, plaintiffs have taken irreconcilable positions that preclude such a finding based on the evidence of record, and the lack of evidence proffered by plaintiffs in discovery.

Because this is the second action against Revolution on the '545 patent, Plaintiffs have attempted to avoid the application of claim preclusion/res judicata by arguing that claims 23 and 35 are "new claims" as a result of the reexamination proceeding culminating March 3, 2009.[1]  Thus, to show inducing infringement, plaintiffs must show that Zelman had knowledge of "new" claims 23 and 35 and specific intent to encourage infringement of those claims.  See *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (*en banc*).  However, it is undisputed that Zelman was not aware of the reexamination proceeding or the purportedly new claims until Revolution was served with the complaint in this action in September 2009.  (Ex. 16.)  Plaintiffs can present no evidence to the contrary.  When asked the full basis for their inducing infringement allegations and all evidence in support, plaintiffs' interrogatory responses state, <u>without any evidentiary support</u>, that Zelman had "actual knowledge of the '545 Patent, including Claims 23 and 35" and the intent to induce Revolution and Marchon to "infringe Claims 23 and/or 35 of the '545 Patent." (Ex. 15, Resp. Nos. 7 and 8.)  Such an unsupported statement is insufficient as a matter of law.

In *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553-54 (Fed. Cir. 1990), the Federal Circuit reversed a finding that corporate officers induced infringement where they were not aware of the patent and alleged infringement until suit was filed.  This is precisely the case here. Accordingly plaintiffs have proffered insufficient evidence on which a reasonable jury could find that Zelman induced infringement of claims 23 and 35.  Any such "evidence" is therefore irrelevant as having no bearing on any "fact of consequence" to determining the issues, and, even if some meager relevance exists, it poses a high risk of unfair prejudice and confusion of the issues.

---

[1] Plaintiffs are incorrect as a matter of law.  See *Hoffman v. Wisner Classic Manufacturing Co.*, 927 F.Supp. 67, 73 (E.D.N.Y. 1996) (causes of action for infringement of "new" and amended claims resulting from reexamination barred by earlier lawsuit on the same patent).

PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF ZELMAN TO PRECLUDE
EVIDENCE REGARDING ZELMAN'S LIABILITY FOR INDUCING INFRINGEMENT

Plaintiffs respectfully oppose the motion *in limine* of Revolution and Gary Martin Zelman ("Zelman") to preclude any evidence regarding Zelman's personal liability for inducing infringement of claims 23 and 35 of the '545 Patent at issue.

Plaintiffs asserted a cause of action against Zelman in his individual capacity for inducing infringement of claims 23 and 35. Zelman answered the Complaint in his individual capacity, took Rule 30(b)(6) depositions of both Plaintiffs, and served interrogatories as to the factual basis for the cause of action. In their March 31, 2010 interrogatory responses, Plaintiffs provided that basis, namely, that Zelman is the alter ego of Revolution, and instructed both Revolution and Defendant Marchon Eyewear, Inc. to make, use, sell, or offer for sale the infringing products at issue, with either knowledge of or reckless disregard as to the Patent, and intent to induce such infringement. Response to Rog. Nos. 7-8 (cross-references to other responses omitted).

If Zelman believed, after taking this discovery, that there were no disputed issues of material fact and that he was entitled to judgment as a matter of law on Plaintiffs' cause of action against him, he could have moved for summary judgment. Zelman, however, chose not to do so. He cannot now make what is essentially an untimely motion for summary judgment in the guise of a motion *in limine*. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964 *13 (M.D. Fla. Oct. 5, 2004) (denying motion *in limine* to preclude evidence in support of equitable defenses as untimely "disguised summary judgment motion"). This motion is not an **evidentiary** based motion, its improper, and should be denied.

## DEFENDANT REVOLUTION EYEWEAR'S AND ZELMAN'S MOTION IN LIMINE NO. 6

Defendants move this Court for an order excluding any and all evidence, references to evidence, testimony or argument that Gary Martin Zelman or Revolution Eyewear is liable for willful infringement.  Plaintiffs have taken irreconcilable positions that preclude such a finding based on the evidence of record, and the lack of evidence proffered by plaintiffs in discovery. Because this is the second action against Revolution on the '545 patent, Plaintiffs have attempted to avoid the application of claim preclusion/res judicata by arguing that claims 23 and 35 are "new claims" as a result of the reexamination proceeding culminating March 3, 2009.[1]  Thus, to show willful infringement, plaintiffs must show by clear and convincing evidence both an <u>objectively high likelihood</u> that defendants' actions constituted infringement of "new" claims 23 and 35 and that <u>this risk was known to defendants before the filing of this case</u>.  *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371, 1374 (Fed. Cir. 2007) (a willfulness claim must necessarily be grounded exclusively in the accused infringer's <u>pre-filing</u> conduct).  Plaintiffs can show neither.

First, under *Seagate*, "legitimate defenses to infringement claims … demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. App'x 284, 291 (Fed. Cir. 2008). Defendants have irrefutably established two or more legitimate defenses to plaintiffs' infringement claims, including claim preclusion and issue preclusion/non-infringement based on the judgment and rulings in the prior action between the parties on the '545 patent. (See DE 111.)  Second, it is undisputed that Zelman and Revolution were <u>not aware</u> of the reexamination proceeding or the purportedly new claims until Revolution was served with the complaint in this action.  (Ex. 16.) Plaintiffs can present no evidence to the contrary.  When asked the full basis for their willful infringement allegations and all evidence in support, plaintiffs' interrogatory response states, <u>without any evidentiary support,</u> that "Revolution had knowledge of the reexamination proceeding that resulted in new Claims 23 and 35 of the '545 Patent-in-suit." (Ex. 17, Resp. No. 9.)  Such an unsupported statement is insufficient as a matter of law.  Plaintiffs have proffered insufficient evidence on which a reasonable jury could find willful infringement of purported new claims 23 and 35 by clear and convincing evidence.  Any such "evidence" is therefore irrelevant and poses a high risk of unfair prejudice and confusion of the issues.

---

[1] Plaintiffs are incorrect as a matter of law.  See *Hoffman v. Wisner Classic Manufacturing Co.*, 927 F.Supp. 67, 73 (E.D.N.Y. 1996) (causes of action for infringement of "new" and amended claims resulting from reexamination barred by earlier lawsuit on the same patent).

## PLAINTIFFS' OPPOSITION TO MOTION *IN LIMINE* OF REVOLUTION TO PRECLUDE EVIDENCE REGARDING ACTS OF WILLFUL INFRINGEMENT

Plaintiffs respectfully oppose the motion *in limine* of Revolution to preclude any evidence regarding the Revolution's acts of willful infringement of claims 23 and 35 of the '545 Patent at issue.

Plaintiffs asserted causes of action against Revolution (including Zelman individually) for willful infringement of claims 23 and 35. Revolution answered the Complaint, took Rule 30(b)(6) depositions of both Plaintiffs, and served interrogatories as to the factual basis for the allegations of willful infringement. In their March 31, 2010 interrogatory responses, Plaintiffs provided that basis, namely, that the Revolution Defendants (a) knew of the re-examination proceeding that resulted in the claims; (b) knew of other claims under the Patent and of Plaintiffs' positions on infringement taken in prior litigation with them; (c) took no action to re-design their products as to be non-infringing; and (d) had not produced evidence of reasonable reliance on the advice of counsel. Response to Rog. No. 15.

If Revolution believed, after taking this discovery, that there were no disputed issues of material fact and that they were entitled to judgment as a matter of law on the issue of willful infringement, they could have moved for summary judgment on that issue. Revolution, however, chose not to do so. They cannot now make what is essentially an untimely motion for summary judgment in the guise of a motion *in limine*. *See Hi Ltd. P'ship v. Winghouse of Fla., Inc.*, 2004 WL 5486964 *13 (M.D. Fla. Oct. 5, 2004) (denying motion *in limine* to preclude evidence in support of equitable defenses as untimely "disguised summary judgment motion"). This motion is not an **evidentiary** based motion, its improper, and should be denied.