1.    PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY BY DEFENDANTS
      REGARDING ALLEGED DESIGN-AROUNDS

Plaintiffs respectfully submit this motion *in limine* to preclude Defendants from offering testimony, including through their proposed expert Dr. Gordon Rausser, regarding the availability of alleged "design arounds" of the '545 Patent at issue.  For example, Dr. Rausser has opined that a reasonable royalty should be capped at the "minimal expense" of re-designing Defendants' products, which he hypothesize might be done by adding a thicker bottom epoxy coating to inhibit magnetic attraction.  *See* Rausser Report ¶ 50.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602. Likewise, expert opinions based upon unsubstantiated theories and sheer speculation are inadmissible.  *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009).

Defendants have come forward with no competent evidence with respect to the re-designs or design arounds of their products.  For example, Dr. Rausser has made no effort to determine the feasibility of a design around, has failed to quantify the costs of any alleged design-around, and has failed to factor into his analysis the additional (and likely substantial) "disruption" costs associated with removing all of Defendants' existing infringing products from the market in favor of the re-designed products.  Rausser Dep. at 137-40.

In addition, Dr. Rausser is not an engineer, and admits that he lacks expertise with respect to the mechanical design of magnetic clip-on eyewear products.  *Id.* at 35, 138-39; Rausser Report ¶ 50 n.63.  Accordingly, Dr. Rausser (and all other witnesses) should be precluded from offering testimony with respect to the above topics.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO
PRECLUDE TESTIMONY BY DEFENDANTS REGARDING ALLEGED DESIGN-AROUNDS

Plaintiffs have failed to cite any authority that would justify the drastic relief to preclude any testimony regarding "design-arounds" of the '545 Patent. Defendants' technical expert, Joel Sodano, and Defendants' damages expert, Gordon Rausser, are qualified experts to testify under at least Fed. R. Evid. 602, 702, and 703 regarding possible design-around products.[1] Rule 703 provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."

Mr. Sodano's expert report states, on the basis of his own personal knowledge, that "the epoxy coating on the bottom of the arms of the accused products certainly impedes the magnetic properties of the magnets . . . [a]s even someone not skilled in the art can observe, the strength of magnetic attraction decreases as one increases the distance between magnetic materials." See Sodano Report at ¶ 49 (attached as Exhibit 2).[2] Mr. Sodano's opinion is that a relevant, easily-available design-around existed. This opinion is relevant to calculating a reasonable royalty.

Dr. Rausser's report states that "[i]t is my understanding that, by thickening this epoxy surface at the bottom [of the auxiliary frame magnets], the risk of top mounting, which is contrary to Revolution's and Marchon's design, could have been further reduced or potentially eliminated." See Rausser Report at ¶ 50 (attached as Exhibit 1). To the extent that Dr. Rausser's opinion is based on the technical expert report of Mr. Sodano, which is permissible under Rule 703, it is Dr. Rausser's own conclusion that "even if Revolution/Marchon's products were somehow construed to infringe the '545 patent because a customer misuses them and improperly top mounts the clipons, this risk could be further averted at minimal expense." Id.

Further, it would be highly prejudicial to Defendants to suppress testimony regarding design-arounds, as the matter is relevant to Dr. Rausser's opinions and to calculating a reasonable royalty rate. For example, it would have made no economic sense for Defendants at a hypothetical negotiation to have agreed to pay a royalty rate higher than the minimal cost of a redesign, i.e., by simply thickening the epoxy surfaces of the auxiliary frame magnets. See Rausser Report at ¶ 50. Such information should be before the jury.

Plaintiffs' assertion that Dr. Rausser's design-around opinions lack evidentiary support is incorrect. Based on his review of Mr. Sodano's report under Rule 703, and based on his own experience, Dr. Rausser concluded that a design-around would be a minimal expense. See Rausser Report at ¶ 50. Plaintiffs' concerns can be properly addressed by cross-examining Dr. Rausser and Mr. Sodano. This testimony and related opinions should be admissible, and the jury should be allowed to properly decide what weight to give it.

---

[1]   The Eberli case cited by Plaintiffs is inapposite. The relatively simple and well-supported design-around opinions advanced by Defendants' experts in this case do not bear any relation to the "unreasoned speculation" to which the Eberli case is concerned. See Eberli v. Cirrus Design Corp., 615 F.Supp.2d 1357 (S.D.Fla. 2009). Moreover, Plaintiffs' reliance on Rule 602 is misplaced. Mr. Sodano and Dr. Rausser are experts in this case. Rule 602 clearly states that it is "subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses."
[2]   In fact, Plaintiffs' own technical expert, Lee Zaro, admitted at his deposition that the strength of magnetic attraction decreases as the thickness of the epoxy increases.

<u>REVOLUTION'S AND ZELMAN'S OPPOSITION</u>

Defendants Revolution and Zelman join in Marchon's opposition. Revolution and Zelman make the following additional arguments in opposition to Plaintiffs' Motion. Plaintiffs do not contest Dr. Rausser's qualifications as a damages expert or whether the subject of his proposed testimony would aid the jury. Nor do they dispute that a reasonable royalty determination should take into account the possibility and costs of a design around. *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1576-77 (Fed. Cir. 1995) (The district court erred in failing to consider whether defendant would likely have turned to the other technology to design around the '847 invention if the royalty were too high).

Instead, Plaintiffs appear to contend that Rausser's <u>conclusions</u> are flawed because they are "based upon unsubstantiated theories and sheer speculation." In exercising its gatekeeping function, the trial court must specifically focus on the methodology <u>and not the conclusions</u>. See *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-93 (1993).    Further, "[a]s a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2009 U.S. Dist. LEXIS 30937, at *13 (N.D. Ga. Feb. 9, 2009) citing *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001). An expert's opinion should be excluded only if that "opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Bonner*, 259 F.3d at 929-30. Rausser's opinion regarding the feasibility of a design around is not based on "sheer speculation." Rausser's opinion is properly based on information provided by Defendants' technical expert Mr. Sodano as well as the defendants themselves. See Fed. R. Evid. 703. Plaintiffs do not dispute that Mr. Sodano and the defendants themselves have extensive experience in the design and costs associated with manufacturing eyewear.

As such, Dr. Rausser's opinions based on information he obtained from Mr. Sodano and the defendants is not unreliable or speculative. Rausser explained his methodology in calculating the damages, and Plaintiffs have an opportunity to challenge Rausser's assumptions and methodology, both through cross-examination and by presenting their own expert witness on damages. Plaintiffs' mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony on this topic. See *Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means" of attacking expert testimony); see also *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001).

In addition, Plaintiffs' motion improperly seeks to exclude testimony from <u>any</u> witness regarding the availability of design-arounds. Evidence should be excluded in limine only where it is clearly inadmissible on all potential grounds. *Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). The moving party has the burden of establishing that the evidence is not admissible for any purpose. *Id.* Other than attacking the methodology employed by Rausser, Plaintiffs have failed to offer any argument or explanation as to why testimony from any other witness is inadmissible. As such, the Court should deny Plaintiffs' motion to exclude all testimony regarding the availability of design-arounds.

2.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY BY DEFENDANTS THAT SUCCESS OF THEIR PRODUCTS WAS DUE TO NON-PATENT FEATURES

Plaintiffs respectfully submit this motion *in limine* to preclude Defendants from offering testimony, including through their proposed expert Dr. Gordon Rausser, that the financial success of their infringing products was due to elements not covered by the '545 Patent at issue, such as visual frame lines, balance and other aesthetic features. *See* Rausser Report ¶¶ 14, 49.

"A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Likewise, expert opinions based upon unsubstantiated theories and sheer speculation are inadmissible. *Eberli v. Cirrus Design Corp.*, 615 F. Supp. 2d 1357, 1367 (S.D. Fla. 2009). Moreover, as part of the Court's gate-keeping function, it must initially determine "whether [an] expert is qualified to testify competently regarding the matters he intends to address . . . ." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

There is no competent evidence from either Dr. Rausser or any other source to support defendants' position that sales of Defendants' products were a function of anything other than the elements of the '545 Patent. Dr. Rausser did not speak directly with any employee of Defendants, and he concedes that he conducted no independent analysis of the issue, and relied on no supporting data. Nor does Dr. Rausser know how many competing products the parties each marketed, or the sales experience of any of the hundreds of vendors of such products. Rausser Dep. at 38-42, 49-53. Nor does he have any details with respect to the anecdotal reference to Pearl Vision. *Id.* In addition, Dr. Rausser admits that he lacks expertise with respect to the areas of marketing, eyewear licensing, mechanical design, or any related field. *Id.* at 35, 39-40, 138-39. Accordingly, Dr. Rausser (and any other witness) should be precluded from offering testimony with respect to the above topics.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO
PRECLUDE TESTIMONY BY DEFENDANTS THAT SUCCESS OF THEIR PRODUCTS
WAS DUE TO NON-PATENT FEATURES

Plaintiffs have failed to cite any authority justifying the extreme relief sought to preclude testimony that the success of Defendants' products was due to features other than those allegedly covered by the '545 Patent. Dr. Rausser's testimony on this very point is highly relevant to calculating a reasonable royalty under the widely-accepted Georgia-Pacific factors.[1]

Dr. Rausser concluded that the success of Marchon's, Nike's, and Revolution's magnetic clip-on products is clearly attributable to elements not covered by the '545 Patent. See Rausser Report at ¶ 49 (attached as Exhibit 1). Information from individual defendant and Revolution's founder and CEO, Mr. Zelman, forms the partial basis for Dr. Rausser's opinions that the bottom-mounted design employed by Marchon, Nike, and Revolution has aesthetic advantages due to the embedded magnets in the primary frame. Id. Mr. Zelman also explained to Dr. Rausser that when the Revolution bottom-mounted product competed with the Aspex top-mounted product, it outsold the Aspex product. Id. Further, Mr. Zelman detailed Revolution's successes with Pearle Vision, e.g., that Pearl Vision's sales of the Revolution magnetic frames were far higher than its sales of the Aspex magnetic frames. Id. Pursuant to Fed. R. Evid. 703, Dr. Rausser is permitted to testify on "facts or data . . . perceived by or made known to the expert at or before the hearing."

Dr. Rausser has served as an economic consultant to government agencies and private clients for more than thirty years, and is an expert in determining, under Georgia-Pacific, the portion of the realizable profit that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the alleged infringer. Dr. Rausser is an expert "qualified to testify competently regarding the matters he intends to address. . . ." Hendrix ex rel. G.P. v. Evenflo Co., 609 F.3d 1183, 1194 (11th Cir. 2010).

Moreover, Plaintiffs objections to Dr. Rausser's testimony is misleading at best, as Plaintiffs' own damages expert Brian Napper relies on conversations with Lee Zaro and Jose Pena. Plaintiffs cannot object to Dr. Rausser's reliance on conversations and information from Mr. Zelman and simultaneously seek to have their expert rely on conversations had with others.

Dr. Rausser's expert opinions are relevant to the issue of whether the success of Defendants' products was due to features other than those allegedly covered by the '545 Patent. Dr. Rausser's report serves as clear evidence that Dr. Rausser should be permitted to testify on this topic pursuant to Fed. R. Evid. 602, 702, and 703. Because sales by Marchon, Nike, and Revolution were driven by newly introduced features, rather than by the technology described in Claims 23 and 35 of the '545 Patent, it would be highly prejudicial to Defendants to suppress testimony related to this factor which would support a downward adjustment of the starting royalty rate. The testimony should be admissible, and the jury should be able to determine what weight to give it following any cross-examination by Plaintiffs on this subject.

---

[1] See Georgia-Pacific Corp v. United States Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970) mod'd and aff'd 446 F.2d 295 (2nd Cir. 1971).

## REVOLUTION'S AND ZELMAN'S OPPOSITION

Defendants Revolution and Zelman join in Marchon's opposition. Revolution and Zelman make the following additional arguments in opposition to Plaintiffs' Motion. Dr. Rausser's opinion that in determining an appropriate royalty rate one should take into account whether the alleged patented features are driving the sale of the accused products is a well-accepted principle in calculating patent damages. *Fonar Corp. v. General Electric Co.*, 107 F.3d 1543, 1552-53 (Fed. Cir. 1997); see also *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995).

Plaintiff's argument, without citation, that Rausser "concedes that he conducted no independent analysis… and relied on no supporting data" for his opinion is false. In addition to being fully supported by his report (See Marchon's Opp., ¶ 2), during his deposition, Rausser testified that his opinion is based on: (1) interviews with representatives of Defendants regarding the non-patented features of the accused products;[1] (2) a review of the actual products that determined (as consumers would) that the bottom-mounted Revolution products were superior to Aspex's top-mounted products;[2] (3) a review of Revolution's founder and CEO Mr. Zelman's deposition testimony;[3] (4) Revolution and Marchon's own market conduct in selling bottom-mounted auxiliary frames[4] and the fact that Marchon chose to license bottom-mounted technology;[5] (5) the fact that Aspex's and Revolution's profitability was similar, despite Aspex's first mover advantage, strongly suggesting that Revolution's product is superior;[6] and (6) the fact that Pearl Vision named Revolution their Vendor of the Year.[7][8]

Plaintiffs' mere disagreement with the factual basis for Rausser's opinion does not warrant exclusion of expert testimony on this topic. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2009 U.S. Dist. LEXIS 30937, at *13 (N.D. Ga. 2009) citing *Bonner v. ISP Tech., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) ("the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." Further, that Dr. Rausser is not an expert in the areas of marketing, licensing and mechanical design of eyewear does not mean he is not qualified to testify regarding damages associated therewith. See *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001).

Finally, Plaintiffs' motion improperly seeks to exclude testimony from <u>any</u> witness regarding product success being driven by non-patent features. Plaintiffs have failed to offer any argument or explanation as to why testimony from any other witness is inadmissible.

---

[1] Ex. 19 (Rausser Depo., pp: 25:14-23, 34:18-35:6).
[2] *Id.*, pp. 33:7-8, 34:13-17, 35:8-15.
[3] *Id.*, pp. 32:15-33:2.
[4] *Id.*, p. 36:2-8.
[5] *Id.*, p. 36:23-25.
[6] *Id.*, p. 50:4-22.
[7] "…the company [Revolution] has recently [in 1999] added such chains [to its customer base] as …Pearl Vision Centers". Garcia, S., "Made in Shades", *Los Angeles Business Journal*, December 1999.
[8] "Revolution Sunglasses received the prestigious Rookie Vender of the Year Award from Pearl Vision." www.framesdirect.com/framesfc/Revolution-lamcla-slb-l.html.

3.   **PLAINTIFFS' MOTION** *IN LIMINE* **TO PRECLUDE DEFENDANT MARCHON FROM RELYING ON OPINIONS OF COUNSEL TO DEFEND CLAIMS OF WILLFUL INFRINGEMENT**

Plaintiffs respectfully submit this motion *in limine* to preclude Defendant Marchon from offering any opinions of their counsel and from otherwise relying on any form of advice of counsel defense with respect to Plaintiffs' claims of willful infringement.

Defendants facing claims of willful infringement cannot have it both ways.  Rather, they must elect between either (1) foregoing an advice of counsel defense to such claims, or (2) waiving the attorney-client privilege and producing the relevant legal opinions that they received on the subject.  To hold otherwise would be inequitable.  *See, e.g., Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,* 219 F.R.D. 135, 147-48 (N.D. Iowa 2003); *Gaull v. Wyeth Labs., Inc.*, 687 F. Supp. 77, 83 (S.D.N.Y. 1988); *Board of Trs. of Leland Stanford Jr. Univ. v. Coulter Corp.*, 118 F.R.D. 532, 533 (S.D. Fla. 1987).

Despite multiple written document and other discovery requests, deposition questions posed to multiple witnesses, and requests for legal opinions made on the record of such depositions, Marchon has not produced to Plaintiffs any opinion of counsel with respect to either the validity of the '545 Patent at issue, or whether their respective magnetic clip-on eyewear products infringe claims 23 and 35 of the Patent.  Instead, Marchon has objected to all such requests on grounds of attorney-client privilege.  Since Marchon has elected to assert the privilege and to withhold any legal opinions from discovery, it should be held to have abandoned any form of advice of counsel defense.  Accordingly, Marchon should be precluded from offering any testimony or evidence in support of any such defense at trial.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE DEFENDANTS FROM RELYING ON OPINIONS OF COUNSEL TO
DEFEND CLAIMS OF WILLFUL INFRINGEMENT

Defendants Marchon and Nike have a pending joint motion in limine to strike Plaintiffs' allegations of willful infringement. As set forth in greater detail in Marchon's and Nike's motion in limine and Nike's motion for summary judgment (DE102-109), Plaintiffs Rule 30(b)(6) witness on willfulness was unable to set forth any facts supporting such an allegation. Accordingly, having failed to offer any evidence during discovery, Plaintiffs should not be permitted to raise any theories of willfulness for the first time at trial. Trial by ambush is impermissible and highly prejudicial to Marchon and Nike.

As clearly set forth by the Federal Circuit in In Re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), the perfunctory need for an opinion of counsel has been drastically reduced. Specifically, the Court held that "[b]ecause we abandon the affirmative duty of due care, we also reemphasize that there is no affirmative obligation to obtain opinion of counsel." Id. at 1371. It is undisputed, and Plaintiffs have failed to establish any evidence to the contrary, that Marchon and Nike were not aware of the reexamined '545 Patent, the subject of this suit, before being served with the Complaint in this action. Further, "willful infringement in the main must find its basis in prelitigation conduct." Id. at 1374. Under the facts of this case, specifically no knowledge of the reexamined '545 Patent and Claims 23 and 35, there can be no willful infringement by Marchon or Nike.

Should Plaintiffs be permitted to proceed with any willfulness arguments, Marchon and Nike at this time do not intend to rely on a written opinion of counsel. We note that Plaintiffs and Defendants Revolution and Zelman have moved to bifurcate the willfulness issue. Marchon and Nike do not join in that request.

4.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE EXPERT TESTIMONY BY
JOEL SODANO REGARDING NATURE OF MAGNETIC SURFACE ON
DEFENDANTS' PRODUCTS

Plaintiffs respectfully submit this motion *in limine* to preclude Defendants from offering

expert testimony by Joel Sodano as to what one who is skilled in the art would consider to be the

surface of a magnet, including whether one skilled in the art would consider an epoxy coating to be

the surface of a magnetic member.

As part of the Court's gate-keeping function in assessing proposed expert testimony, it must

initially determine "whether . . . the expert is qualified to testify competently regarding the matters

he intends to address . . . ." *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir.

2010).  Expertise in one field does not automatically translate into expertise in an entirely different

field touching the subject matter of the action, but in which the witness lacks the necessary

qualifications, knowledge and experience.  *See Montgomery v. Noga*, 168 F.3d 1282, 1303 (11th

Cir. 1999) (expert knowledgeable about commercial software licensing lacked expertise to offer

opinions as to "totally distinguishable" field of shareware and utility licensing).

The entire issue of whether the external surfaces of Defendants' magnetic clip-on eyewear

are not themselves magnets is irrelevant, and Plaintiffs have moved separately to exclude testimony

on such grounds.  Nonetheless, even if relevant, Mr. Sodano lacks expertise with respect to this area

to which he seeks to provide testimony.  Mr. Sodano admits that (a) he does not know what kind of

magnets are used in Defendants' products, Sodano Dep. at 98-99, (b) he has not studied the

magnets, *id.*, and (c) he does not know whether epoxy is a common magnetic coating.  *Id.* at 122-

23, 131-32.  Accordingly, Mr. Sodano should be precluded from offering testimony with respect to

the above topics.

REVOLUTION'S AND ZELMAN'S OPPOSITION

Plaintiffs' motion in limine concerns the issue of whether a person of ordinary skill in the art reviewing the '545 patent would consider a non-magnetic epoxy spacer to be the "horizontal surface" of a "magnetic member" as required by claim 23. Because plaintiffs have also asserted infringement of claim 35, which requires that the magnetic members are magnets, plaintiffs are necessarily contending that the epoxy spacers are the horizontal surfaces of magnets. Yet both parties' experts agree that they are not. (See Ex. 1 (Sodano Report ¶ 48); Ex. 11 (Zaro Depo. pp. 57:23-58:12): "Epoxy itself is not a magnet or a surface of a magnet".) Defendants' expert Joel Sodano is fully qualified to render that opinion.

Mr. Sodano opined that the field of art is, generally, clip-on eyewear that attaches to optical eyeglass frames as part of a matching set, and that one of ordinary skill in the art in this field would be a person with five or more years working in product design and development in the field of eyewear, including clip-on eyewear. (Ex. 1 ¶¶ 10-11.) Plaintiffs appear to concede that Mr. Sodano is a person of ordinary skill in the art as their own expert, like Mr. Sodano, was involved in the design and development of eyewear, including clip-on eyewear, albeit less extensively than Mr. Sodano.

Plaintiffs' motion, however, appears to contend that the relevant art is the scientific properties of magnets. This is simply not the case. There is nothing in the '545 patent regarding the chemical composition or scientific properties of magnets. Thus, the relevant construction of "horizontal surface" of a "magnetic member" does not depend on the composition of the magnets or the types of coatings used on magnets. Indeed, the issue of whether the upwardly facing silver surface of the magnet, shown below left, has a coating is irrelevant to this case. Rather, the issue is whether the downwardly facing pink surface of the epoxy spacer is the "horizontal surface" of a "magnet" or "magnetic member". Mr. Sodano's opinion that it is not is amply supported by his experience and observations, including that

  the epoxy is a different material than the magnet (i.e. epoxy), it is rounded (i.e., not horizontal) and it is not magnetic (i.e., it decreases the attraction between the magnets). See Ex. 1 ¶¶ 46-49; *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 156 (1999).

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE EXPERT TESTIMONY BY JOEL SODANO REGARDING NATURE
OF MAGNETIC SURFACE ON DEFENDANTS' PRODUCTS

Marchon and Nike join the opposition of co-defendants Revolution.  Plaintiffs contend that the epoxy spacers on the bottom of Marchon's and Nike's auxiliary eyeglass frames are horizontal surfaces of magnets.  A person of ordinary skill in the art reviewing the '545 Patent would <u>not</u> consider a non-magnetic epoxy spacer of Marchon's and Nike's auxiliary frame products to be the "horizontal surface" of a "magnetic member" as required by Claims 23 and 35.  It would be highly prejudicial to Defendants to suppress the testimony of Mr. Sodano.  There is no legal support for such a drastic ruling.

Specifically, Marchon and Nike note the following factual issues that the jury should be permitted to hear testimony on:  (i) the epoxy spacers of Marchon's and Nike's auxiliary frames are not magnetic members; (ii) the epoxy spacers of Marchon's and Nike's auxiliary frames are not horizontal surfaces of magnetic members; and (iii) there is no vertical engagement of horizontal magnetic surfaces.

Plaintiffs' motion attempts to argue that Defendants' non-infringement arguments are "irrelevant" and premised on an "incorrect construction."  Plaintiffs attempt to argue that Defendants' proposed constructions are incorrect is premature as the Court has not yet construed Claims 23 and 35.  These arguments are flawed, and clearly Defendants should be permitted to set forth their non-infringement positions.  There is no basis for this testimony to be excluded.  To illustrate Marchon's and Nike's position, below is an exemplary Nike auxiliary frame, with the upward facing magnet and downward facing <u>non-magnetic</u> epoxy shown.



If Plaintiffs continue to contend that the epoxy spacers on the bottom of Marchon's and Nike's auxiliary frames are horizontal surfaces of magnets, a position which Plaintiffs must take to show infringement of Claims 23 and 35, Mr. Sodano, an expert in the design and development of eyewear, should be allowed to rebut this incorrect contention.  Mr. Sodano's testimony is permissible pursuant to Fed. R. Evid. 602, 702 and 703

5.    PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY REGARDING NATURE OF MAGNETIC SURFACE ON DEFENDANTS' PRODUCTS

Plaintiffs respectfully submit this motion *in limine* to preclude Defendants from offering testimony that the external surfaces of their magnetic clip-ons are not actual magnets, but only epoxy coatings covering magnets.

Only relevant evidence -- i.e., that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" -- is admissible. Fed. R. Evid. 401, 402.

Defendants' proposed expert Joel Sodano opined that the external surfaces of their clip-ons are not themselves magnets, in an effort to argue that these products do not infringe claim 23 of the '545 Patent at issue because that claim allegedly requires that the products' arms each secure a magnet. Sodano Report ¶¶ 31, 46. Such testimony is entirely irrelevant because it is premised on an incorrect construction of claim 23. *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1362-63 (Fed Cir. 1998) (affirming exclusion of evidence on grounds of potential jury confusion, where evidence was based upon erroneous claim construction).

Under its plain language, claim 23 does not require that the surface of Defendants' clip-ons *"is"* or *"be"* a magnet, but only that the products' arms have "a rearwardly directed free end for securing a magnetic member having a horizontal surface" -- i.e., that there is ***some magnetic attraction with*** the horizontal surface. Accordingly, Defendants should be precluded from offering such irrelevant testimony to prove non-infringement.

## REVOLUTION'S AND ZELMAN'S OPPOSITION

Defendants' and plaintiffs' experts agree that epoxy is not a magnet. (See Ex. 1 (Sodano Report) ¶ 48; Ex. 11 (Zaro Depo. pp. 57:23-58:12): "Epoxy itself is not a magnet or a surface of a magnet".) But incredibly, plaintiffs' motion seeks to preclude defendants' expert from testifying that an *epoxy surface* is not the surface of a *magnetic member*. Claim 23 includes the following limitation: "each of said arms having a rearwardly directed free end for securing a **magnetic member having a horizontal surface**, and a pair of magnetic members respectively secured in the free ends of said arms." The magnetic member is not the arm itself, but rather a separate component "secured in the free ends of the arms". Thus, according to the plain language of the claim, the relevant surface is the surface of a "magnetic member", not the surface of the arms or the magnetic clip-ons generally, as contended in plaintiffs' motion. Moreover, because plaintiffs have also asserted infringement of claim 35, which requires that the magnetic members are magnets, the relevant surface is necessarily the surface of a *magnet*.

The relevant inquiry based on the claim language is not whether there is "some magnetic attraction" at a horizontal surface as contended by plaintiffs – i.e., claim 23 does **not** claim a horizontal surface at which there is *some magnetic attraction*. As commonly known, magnetic attraction can permeate non-magnetic surfaces, e.g., paper, skin; but the mere existence of some magnetic attraction does not make those *surfaces of a magnetic member*. Therefore, the opinion of defendants' expert that a non-magnetic epoxy surface is not the surface of a magnetic member is not only relevant and admissible based on a proper construction of the claim language, it is unassailable.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE TESTIMONY REGARDING NATURE OF MAGNETIC SURFACE
ON DEFENDANTS' PRODUCTS

Marchon and Nike join the opposition of co-defendants Revolution. Additionally, Marchon and Nike note that Plaintiffs' motion seeks to preclude Defendants' expert, Joel Sodano, from testifying that an epoxy surface is not the surface of a magnetic member on the basis that such testimony is premised on an incorrect construction of Claim 23. Such an argument is premature at best, and presupposes that the Court will adopt Plaintiffs' proposed construction – a construction Defendants vigorously oppose. Just because Plaintiffs disagree with Mr. Sodano's conclusions, this is not a proper basis to exclude his testimony. To summarily exclude Mr. Sodano's opinion on epoxy, which was addressed in his expert report and at his deposition, is highly prejudicial to Defendants and improperly impedes Defendants' ability to set forth its non-infringement arguments.

This Court has not yet construed any of the patent claim elements of either Claim 23 or 35 of the '545 Patent. To attempt to limit an expert to an as of yet unknown Markman claim construction makes no sense. All parties are in the dark as to how the Court may or may not ultimately construe the disputed claim terms of Claims 23 and 35. Clearly Defendants are of the view that this Court should follow and be consistent with the California court that found the '545 Patent is limited to top-mounting designs. To prematurely limit an expert's testimony prior to the Court's Markman rulings is highly prejudicial and improper.

Marchon and Nike further note that there is nothing in the '545 Patent that would support Plaintiffs' construction that Claim 23 requires a horizontal surface at which there is "some magnetic attraction." Such a construction is not only flawed, it is baseless. Even more surprising is that this latest construction has never before been advanced by Plaintiffs and appears to be a reactionary response to the admission of Plaintiffs' own expert, and common sense, that epoxy is not a magnet or a surface of a magnet. See Zaro Depo. pp. 57:23-58:12 (attached as Exhibit 3).

Plaintiffs argue that Mr. Sodano's testimony regarding the epoxy on Defendants' products is or is not a surface of a magnet is "irrelevant." They are wrong. Mr. Sodano's expected testimony goes directly to a claim limitation and the issue of non-infringement. Mr. Sodano is qualified and a person of skill in the art. Plaintiffs' complaints regarding Mr. Sodano's knowledge of "magnets" is an issue more appropriately addressed during cross-examination. Mr. Sodano should be permitted to testify and Plaintiffs can cross-examine him. The jury can then decide how much weight to give his testimony.

Mr. Sodano, an expert in the design and development of eyewear, should be allowed to rebut Plaintiffs' infringement contentions. His testimony on these subjects is permissible under Fed. R. Evid. 602, 702 and 703. To exclude Mr. Sodano's testimony on these relevant non-infringement proofs would be highly prejudicial to Defendants' non-infringement arguments.

6.      PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS' EFFORTS TO PROVE NON-INFRINGEMENT THROUGH DEMONSTRATIONS INVOLVING DIFFERENT COMPONENTS OF PLAINTIFFS' AND DEFENDANTS' PRODUCTS

Plaintiffs respectfully submit this motion *in limine* to preclude Defendants from offering testimony as to their alleged non-infringement of claims 23 and 35 of the '545 Patent at issue by means of "top mounting" magnetic clip-ons offered for sale by Defendants to the corresponding primary frames that they also offer for sale.

Only relevant evidence -- i.e., that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence" -- is admissible. Fed. R. Evid. 401, 402.

Defendants' proposed expert Joel Sodano opined that their magnetic clip-ons do not infringe claim 23 of the '545 Patent at issue because the clip-ons "easily fall off" and the lenses do not align when Defendants' clip-ons are engaged to the top of the corresponding primary frames that Defendants sell with the clip-on frames.  Sodano Rep. ¶ 52.  Any testimony to this effect would be entirely irrelevant because it is premised on an incorrect construction of claim 23.  *See Johns Hopkins Univ. v. CellPro, Inc.*, 152 F.3d 1342, 1362-63 (Fed Cir. 1998) (affirming exclusion of evidence on grounds of potential jury confusion, where evidence was based upon erroneous claim construction).  Even under defendants' construction of Claim 23 as limited to top-mounting (which Plaintiffs' dispute), claim 23 does not require that Defendants' clip-ons align with *Defendants'* primary frames, but only *"a"* primary frame -- which can include Plaintiffs' constructed primary frames.  Accordingly, Defendants should be precluded from presenting any testimony or demonstrations that its clip-ons do not infringe based on how they function with Defendants' primary frames.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE DEFENDANTS' EFFORTS TO PROVE NON-INFRINGEMENT THROUGH
DEMONSTRATIONS INVOLVING DIFFERENT COMPONENTS OF PLAINTIFFS'
AND DEFENDANTS' PRODUCTS

Plaintiffs seek to prevent Marchon and Nike from top-mounting Marchon/Nike's own auxiliary frames on Marchon/Nike's own primary frames – exactly how the products are designed to be used and how they are sold. It is clear, by way of motions in limine, that Plaintiffs are attempting to hide the fact that the Marchon and Nike products are bottom-mounting and do not infringe Claims 23 and 35.

Instead, Plaintiffs hope to convince this Court that the jury should see only Marchon's and Nike's auxiliary frames (not primary frames) top-mounted on a series of "bogus" primary frames created by Plaintiffs in an attempt to prove infringement where none exists. The litigation-motivated and Plaintiff-constructed "bogus" frames are not made or sold by Marchon, Nike, or Revolution. In fact, these "bogus" frames did not even exist until Plaintiffs fabricated them for purposes of this litigation, apparently to make arguments for and against pending summary judgment motions. Defendants have filed motions in limine seeking to exclude these specially-made, litigation-motivated frames.

Marchon's and Nike's eyeglass devices are sold in sets of primary eyeglass frames, i.e., the base, and matching bottom-mounting auxiliary eyeglass frames, i.e., the clip-on. Plaintiffs want to pretend that Marchon's and Nike's primary eyeglass frames do not exist as part of the set, and instead want to replace Marchon's and Nike's own primary eyeglass frames with Plaintiffs' specially-made primary frames. Marchon's and Nike's frames were designed to be used in a bottom-mounting configuration. When Marchon's and Nike's auxiliary frames are placed on top of a Marchon or Nike primary frame, the respective lenses are not aligned, the nose bridges are misaligned, and the auxiliary frame is unstable and readily falls off of the primary frame. Plaintiffs are desperate to hide any demonstration or comparison with Marchon's and Nike's primary frames properly bottom-mounted on Marchon and Nike auxiliary frames. It is clear to anyone that Defendants' auxiliary frames are designed to be only bottom-mounted. Plaintiffs' problem – as clearly set forth by the California Court when construing the '545 Patent – is that the '545 Patent and its claims are limited to top-mounting configurations. Defendants' products are not top mounting. They are only bottom mounting.

To the extent that this Court even allows Plaintiffs to introduce these specially-made frames to the jury, it would be highly prejudicial to prevent Marchon and Nike from demonstrating and showing how Marchon's and Nike's own accused products work. The accused eyeglass devices are Defendants' primary and auxiliary frames.

The motion to exclude highly relevant demonstrations showing Defendants' auxiliary frames falling off the primary frames when improperly top-mounted goes to the key elements of the case and Defendants' non-infringement arguments. To preclude this highly relevant evidence would be prejudicial to Defendants' defenses. The motion should be denied.

<u>REVOLUTION'S AND ZELMAN'S OPPOSITION:</u>

Plaintiffs seek to prove their infringement claim against Defendants by "top mounting" Defendants' auxiliary frames on a bogus primary frame that <u>Plaintiffs</u> fabricated solely for this lawsuit. (Ex. 9.) Remarkably, at the same time, Plaintiffs seek to exclude Defendants own primary frames that are sold with the accused auxiliary frames. Plaintiffs do not dispute that Defendants' accused auxiliary frames are sold as a set with Defendants' primary frames. Plaintiffs also do not dispute that this set is made to be bottom-mounted. (Ex. 10.) Yet, Plaintiffs want to exclude and shield from the jury any and all evidence regarding how the accused products were specifically *adapted* to be used, i.e., how the accused products fit on their corresponding primary frame. Plaintiffs' attempt to hide Defendants' primary frames from the jury must be denied as they are highly relevant to this case and exclusion would be reversible error.

The claims at issue, Claims 23 and 35, **require** that the "arms and said pair of magnetic members [are] adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame." Thus, based on the claim construction briefed elsewhere, the arms and magnetic members must be "adapted to" mount on top, not merely capable of being placed on top. (See Ex. 13.) Moreover, the adaptation must result in the auxiliary frame being "stably supported in top-mounting configuration." ('545 Patent, *e.g.*, cols. 1:65, 2:47, 2:52, 3:9, 3:20; Ex. 18, Fed. Cir. Opinion, p. 13 the "Chao [the inventor] disclaimed an auxiliary frame that is not stably supported in top-mounting configuration….") Demonstrating Defendants' auxiliary frames mounted to the bottom of Defendants' primary frames shows that the auxiliary frames are stably supported and thus adapted to extend <u>underneath</u> Defendants' primary frames, which is the opposite of what is required by the asserted claims. Demonstrating Defendants' auxiliary frames placed on the top of Defendants' primary frames shows that the auxiliary frames are <u>not</u> adapted to <u>or capable of</u> being stably supported, <u>not</u> adapted to extend across the top of Defendants' (or any other) primary frames, and thus do not infringe. Defendants' expert Joel Sodano thoroughly explains why this is the case, including the fact that the auxiliary frames easily fall off. (Ex. 1 (Sodano Expert Report ¶52-55).)

Further, the preamble of Claim 23 recites "an eyeglass device" and the '545 patent repeatedly describes an eyeglass device to "include[] a primary <u>and</u> an auxiliary spectacle frames for supporting lenses." (Ex. 13.) Indeed, the preamble provides the antecedent for the "primary spectacle frame mentioned later in claim 23. Therefore, Claim 23 covers both the auxiliary frame and its corresponding primary spectacle frame. Accordingly, Defendants' primary frames are highly material to the issues in this case to show whether their auxiliary frames are "adapted" to top-mount on any primary frames, as well as whether they are adapted to top-mount on the specific primary frames required to satisfy a limitation of the claims in order to prove infringement. Plaintiffs' motion in limine to exclude the <u>actual</u> primary frames sold by Defendants is desperate, frivolous, and should be denied.

7. PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESS JOEL SODANO REGARDING ANALYSES NOT DISCLOSED IN HIS JUNE 7, 2010 REPORT OR AT DEPOSITION

Plaintiffs respectfully submit this motion *in limine* to preclude Joel Sodano from relying at trial upon any analyses not disclosed in his June 7, 2010 report or testified to at his August 25, 2010 deposition. Of concern is Mr. Sodano's proffered opinion regarding the strength of the engagement of Defendants' magnetic clip-ons to Plaintiffs' constructed primary frames, in which he asserts that the clip-ons "easily fell off when" attempted to be mounted on top of Defendants' primary frames, thus allegedly demonstrating non-infringement of the '545 Patent at issue. Sodano Rep. ¶ 52. When pressed at his deposition for the analytical support for this opinion, Mr. Sodano could offer none other than an observation as to an epoxy coating that was responsible for the supposed weak attachment. He could not identify any testing he conducted and instead stated he needed to consult his notes and give it "further study." Sodano Dep. at 122-28.

A testifying expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Failure to do so precludes later trial testimony as to the undisclosed information. Fed. R. Civ. P. 37(c)(1). As the Eleventh Circuit has explained, "because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006). Because Mr. Sodano's report and deposition testimony do not set forth any analysis supporting the above non-infringement argument, he should not be permitted to offer any for the first time at trial.

<u>REVOLUTION'S AND ZELMAN'S OPPOSITION:</u>

Plaintiffs' motion seeks to exclude testimony and testing comparing Defendants' <u>actual</u> products (i.e., the eyeglass device itself—auxiliary frame and primary frames as sold) with Defendants' auxiliary frames attached to Plaintiffs' specially made frames. Plaintiffs' argument is contrary to common sense, as well as the relevant facts and law.

First, the claims at issue, Claims 23 and 35, **require** that the "arms and said pair of magnetic members [are] adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame." Thus, based on the claim construction briefed elsewhere, the arms and magnetic members must be "adapted to" mount on top, not merely capable of being placed on top. (See Ex. 13.) Moreover, the adaptation must result in the auxiliary frame being "stably supported in top-mounting configuration." ('545 Patent, *e.g.*, cols. 1:65, 2:47, 2:52, 3:9, 3:20; Ex. 18, Fed. Cir. Opinion, p. 13 the "Chao [the inventor] disclaimed an auxiliary frame that is not stably supported in top-mounting configuration….") Demonstrating Defendants' auxiliary frames mounted to the bottom of Defendants' primary frames shows that the auxiliary frames are stably supported and thus adapted to extend <u>underneath</u> Defendants' primary frames, which is the opposite of what is required by the asserted claims. Demonstrating, by comparison, Defendants' auxiliary frames placed on the top of Plaintiffs' bogus primary frames shows that the auxiliary frames are <u>not</u> adapted to <u>or capable of</u> being stably supported, <u>not</u> adapted to extend across the top of Plaintiffs' bogus primary frames (or any other primary frames), and thus do not infringe. Defendants' expert Joel Sodano thoroughly explains why this is the case, including the fact that the auxiliary frames easily fall off. (Ex. 1 (Sodano Expert Report ¶ 55).)

Further, the preamble of Claim 23 recites "an eyeglass device" and the '545 patent repeatedly describes an eyeglass device to "include[] a primary <u>and</u> an auxiliary spectacle frames for supporting lenses." (Ex. 13.) Indeed, the preamble provides the antecedent for the "primary spectacle frame" mentioned later in claim 23. Therefore, Claim 23 covers both the auxiliary frame and its corresponding primary spectacle frame. Accordingly, Defendants' primary frames are highly material to the issues in this case to show whether their auxiliary frames are "adapted" to top-mount on any primary frames, as well as whether they are adapted to top-mount on the specific primary frames required to satisfy a limitation of the claims in order to prove infringement. Finally, Plaintiffs' legal citations regarding comparisons between <u>Plaintiffs'</u> commercially available product and the accused device are totally inapplicable. Here, Defendants' are comparing the <u>actual</u> accused devices to the Plaintiffs' bogus devices to show that a limitation of the asserted claim is not met.

Plaintiffs' motion in limine to exclude a demonstration of the <u>actual</u> primary frames sold by Defendants is desperate, frivolous, and should be denied.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESS
JOEL SODANO REGARDING ANALYSES NOT DISCLOSED IN HIS
JUNE 7, 2010 REPORT OR AT DEPOSITION

Marchon and Nike join the opposition of co-defendants Revolution. Mr. Sodano's assertion that Defendants' auxiliary frames "easily fell off when" attempting to mount them on top of Defendants' primary frames indeed demonstrates further evidence of non-infringement of Claims 23 and 35 the '545 Patent at issue. Further, Mr. Sodano's opinion is supported by at least his report (attached as Exhibit 2), which reads as follows:

Third, when one mounts the accused auxiliary spectacle frames on the bottom of their matching primary frame, the auxiliary frames are securely attached to the primary frames; when one attempts to mount the auxiliary frames on top, the auxiliary frames are not securely attached and easily fall off. In fact, Mr. Zaro could not shake the auxiliary lenses off the primary frame when mounted on the bottom, but they easily fell off when he attempted to mount them on top, even when he merely turned the primary frames upside down. Thus, the arms and magnetic members of the auxiliary frame are not adapted to extend across the top of side portions of the auxiliary frame. See Sodano Report at ¶ 52.

Marchon and Nike are at a loss as to what additional support would be required other than Mr. Sodano's clear contention that, when top-mounted, the auxiliary frames are not securely attached and easily fall off – a contention which was confirmed by Plaintiffs' own expert, Mr. Zaro. Mr. Sodano was present at Mr. Zaro's deposition. The videotape clearly shows the auxiliary frame falling off. Nonetheless, Plaintiffs' attempts to limit Mr. Sodano's observations, testimony, and analysis of the eyeglasses at issue should be rejected. Clearly the strength of the magnet, or lack thereof, was demonstrated by how the auxiliary frame either stayed attached to the primary frame when bottom-mounted, or fell off when top-mounted. Any of Plaintiffs' issues with Mr. Sodano's testimony and opinions on this key issue can and should be raised as part of their cross examination.

To the extent that Plaintiffs challenge the sufficiency of Mr. Sodano's expert opinions on the basis that it is not bolstered by certain tests that Plaintiffs may envision, Defendants note that "While Daubert's principles have valuable application in determining the admissibility of controversial and novel scientific hypotheses, they have less use in fields like design engineering where 'general acceptance' is the norm, not the exception." Officer v. Teledyne Republic, 870 F. Supp. 408, 410 (D. Mass. 1994). Clearly, it is not a "controversial and novel scientific" hypothesis that, when top-mounted, Marchon's and Nike's auxiliary frames are not securely attached and easily fall off. This generally accepted norm is valid, obvious, and repeatable, and should be demonstrated before a jury by at least Mr. Sodano. To hold otherwise would prejudice Defendant's ability to prove non-infringement. There is no dispute that Mr. Sodano examined Defendants' primary and auxiliary frames. He attempted, among other things, to both top-mount and bottom-mount the auxiliary frames on Defendants' primary frames and Plaintiffs' "bogus" primary frames. His testimony regarding this and whether the auxiliary frames are stable is consistent with his expert report, deposition testimony, and that of a person of ordinary skill in the art. His testimony is permissible under Fed. R. Evid. 702 and 703.

8.      PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE COMPARISONS BETWEEN PLAINTIFFS' AND DEFENDANTS' PRODUCTS

Plaintiffs respectfully submit this motion *in limine* to preclude Defendants from offering testimony as to their alleged non-infringement of claims 23 and 35 of the '545 Patent at issue by means of comparing magnetic clip-ons mounted on the primary frames of Defendants' products to the mounting of such clip-ons on Plaintiffs' constructed primary frames through a test, pursuant to which Plaintiffs' expert, Lee Zaro, was asked to turn the glasses parallel to the ground (rather than perpendicular, as they are normally worn) and then to vigorously shake them in an effort to dislodge the clip-ons.

Only evidence that compares the components and design of an accused infringing product to the relevant **claims** of the patent at issue is relevant for purposes of determining infringement -- how such products compare to other **products** is irrelevant.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.,* 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("A claim is construed in the light of the claim language . . . not in light of the accused device."); *Elan Corp., PLC v. Andrx Pharm., Inc.*, 2008 WL 4709251 *18-*19 (S.D. Fla. Aug. 13, 2008) (excluding evidence of comparisons to plaintiff's commercial product as part of defendant's infringement analysis).

Whether or not the magnets in Defendants' clip-ons fall off of Plaintiffs' constructed primary frames based on vigorous shaking that is parallel to the ground, but not Defendants' primary frames,[1] has nothing to do with the elements of claim 23, which only require that the auxiliary clip-on frame be adapted to engage "a" primary frame.   Accordingly, Defendants should be precluded from testifying about or offering any demonstrations or product-to-product comparisons, including those as to which Mr. Zaro was cross-examined, such as the above "shake test" comparison.

---

[1]   This result is unsurprising, as the magnet in Defendants' clip-ons sit in a recessed, cup-like area.

## REVOLUTION'S AND ZELMAN'S OPPOSITION:

Plaintiffs seek to prove their infringement claim against Defendants by "top mounting" Defendants' auxiliary frames to a bogus constructed primary frame that Plaintiffs fabricated for this lawsuit. However, simply placing Defendants' auxiliary frames onto Plaintiffs' specially fabricated primary frames does not support an infringement claim. (See Revolution MIL # 3.) Claims 23 and 35 **require** that the auxiliary frames be "adapted to" mount on top, not the mere capability of being placed on top. (See Ex. 13.) This means that the auxiliary frames must be "stably supported" on the primary frames. ('545 Patent, *e.g.*, cols. 1:65, 2:47, 2:52, 3:9, 3:20; Ex. 18, Fed. Cir. Opinion, p. 13 the "Chao [the inventor] disclaimed an auxiliary frame that is not stably supported in top-mounting configuration....")

Plaintiffs acknowledge in this motion that Defendants' expert has identified at least several grounds supporting his opinion and analysis that Defendants' auxiliary frames are not "adapted to" or made to be top mounted: (1) they easily fall off when top mounted; (2) there is an epoxy spacer on the bottom of the end piece of the arm of the auxiliary frame that separates the magnetic member (in this instance the magnet) from the horizontal surface the magnetic member of a primary frame; and (3) that epoxy spacer weakens the engagement between the primary frame and auxiliary frame when one attempts to misuse it by top mounting. Yet, despite this disclosure, Plaintiffs' seek to preclude Mr. Sodano from providing <u>any</u> analysis relating to his opinion.

Plaintiffs' motion fails for additional reasons as well. First, experts are allowed to expand and elaborate on their opinions during trial. See *Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 167 (D.C. Cir. 2007); *Keach v. U.S. Trust Co.*, 419 F.3d 626 (7th Cir. 2005). Rule 26(a)(2)(B) "does not limit an expert's testimony simply to reading his report. . . . The rule contemplates that the expert will supplement, elaborate upon, [and] explain . . . his report" in his oral testimony. *Id.* citing *Thompson v. Doane Pet Care Co.*, 470 F.3d 1201, 1203 (6th Cir. 2006). Second, even if new information or grounds arose requiring disclosure prior to trial, Rule 26(e)(2) provides that such supplementation is proper even after an expert's report or deposition. Although unnecessary, Defendants have supplemented Mr. Sodano's report to avoid any arguments of unfair surprise. Third, Mr. Sodano's testimony is in response to questions posed regarding only one of Plaintiffs' specially made primary frames, Depo. Ex. 97. Using Mr. Sodano's testimony regarding a narrow hypothetical limited to only one of the specially made primary frames to exclude analysis regarding the strength of the engagement for <u>all</u> primary frames (specially made or Defendants' primary frames) is simply improper. Lastly, Plaintiffs' suggestion that Mr. Sodano's analysis based on his own observations and experience is improper is out of line with what is specifically contemplated by Rule 702.

## MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE COMPARISONS BETWEEN PLAINTIFFS' AND DEFENDANTS' PRODUCTS

Marchon and Nike join the opposition of co-defendants Revolution. Further, Marchon and Nike note that Plaintiffs are running and hiding from the relevant issues in this case by creating a series of "bogus" primary frames in an attempt to prove infringement where none exists. Defendants' eyeglass devices, including the primary frames and auxiliary frames, do not infringe Claims 23 and 35. The litigation-motivated and Plaintiff-constructed "bogus" frames are not made or sold by Marchon, Nike, or Revolution. In fact, these "bogus" frames did not even exist until Plaintiffs fabricated them for purposes of this litigation, apparently to make arguments for and against pending summary judgment motions. Defendants have filed motions in limine seeking to exclude these specially-made, litigation-motivated frames.

Marchon's and Nike's eyeglass devices are sold in sets of primary eyeglass frames, i.e., the base, and matching bottom-mounting auxiliary eyeglass frames, i.e., the clip-on. Plaintiffs want to pretend that Marchon's and Nike's primary eyeglass frames do not exist as part of the set, and instead want to replace Marchon's and Nike's own primary eyeglass frames with Plaintiffs' specially-made primary frames. Marchon's and Nike's frames were designed to be used in a bottom-mounting configuration. When Marchon's and Nike's auxiliary frames are placed on top of a Marchon or Nike primary frame, the respective lenses are not aligned, the nose bridges are misaligned, and the auxiliary frame is unstable and readily falls off of the primary frame.[1] Plaintiffs are desperate to hide any demonstration or comparison with Marchon's and Nike's primary frames properly bottom-mounted on Marchon and Nike auxiliary frames. It is clear to anyone that Defendants' auxiliary frames are designed to be only bottom-mounted. Plaintiffs' problem – as clearly set forth by the California Court when construing the '545 Patent – is that the '545 Patent and its claims are limited to only top-mounting configurations. Defendants' products are not top mounting. They are only bottom mounting.

To the extent that this Court even allows Plaintiffs to introduce these specially-made frames to the jury, it would be highly prejudicial to prevent Marchon and Nike from demonstrating and showing Marchon's and Nike's own accused products. The accused eyeglass devices are Defendants' primary and auxiliary frames.

Further, the language of Claim 23 requires both a primary frame and an auxiliary frame. The preamble, which breathes life into the claim, recites an eyeglass device comprising," among other things, "an" auxiliary spectacle frame and "a" primary spectacle frame. The Court should construe the "eyeglass device" of Claims 23 and 35 to be an auxiliary frame and a primary frame. Defendants' bottom-mounting eyeglass devices do not infringe Claims 23 and 35. The motion to exclude highly relevant testing and demonstrations showing Defendants' auxiliary frames falling off the primary frames when improperly top-mounted goes to the key elements of the case and Defendants' non-infringement arguments. To preclude this highly relevant evidence would be prejudicial to Defendants' defenses. The motion should be denied.

---

[1] Contrary to Plaintiffs' assertion, Mr. Zaro was never asked to "vigorously" shake top-mounting auxiliary frames. Top-mounted Marchon or Nike auxiliary eyeglass frames easily fall off when the eyeglasses are flipped.

9.   PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESS JOEL SODANO ON OPINIONS NOT DISCLOSED IN HIS JUNE 7, 2010 REPORT

Plaintiffs respectfully submit this motion *in limine* to preclude Joel Sodano from offering any expert opinions not disclosed in his June 7, 2010 report. Among other such opinions, Plaintiffs seek to preclude Mr. Sodano from offering testimony to the effect that Defendants' products do not infringe the '545 Patent at issue even if their proposed claim construction is not adopted by the Court.

A testifying expert's written report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).  Failure to do so precludes later trial testimony as to the undisclosed information.  Fed. R. Civ. P. 37(c)(1).  As the Eleventh Circuit has explained,  "because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise . . . compliance with the requirements of Rule 26 is not merely aspirational." *Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006).

While Mr. Sodano's report claims to rebut the claim construction and opinions on infringement offered by Plaintiffs' expert Lee Zaro, Sodano Rep. ¶ 2, Mr. Sodano refused to offer opinions at his deposition as to whether Defendants' clip-ons would infringe under Plaintiffs' proposed claim construction, claiming that the issue needed further study.  Sodano Dep. at 91-95. Defendants offer no justification for the absence of this position from Mr. Sodano's report.  Nor could Defendants possibly claim surprise, in light of the numerous occasions on which Plaintiffs have provided their proposed claim construction (including through the Zaro expert report that Mr. Sodano purports to rebut).  Accordingly, Mr. Sodano should be precluded from offering any opinion testimony at trial regarding this subject.

MARCHON'S AND NIKE'S OPPOSITION TO PLAINTIFFS' MOTION IN
LIMINE TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT
WITNESS JOEL SODANO ON OPINIONS NOT DISCLOSED IN HIS JUNE 7, 2010 REPORT

Mr. Sodano's June 7, 2010 expert report (attached as Exhibit 2) sets forth Defendants' non-infringement positions based on Defendants' proposed claim construction position. Defendants' construction is based in part on the California Court's ruling in Revolution Eyewear, Inc. v. Aspex Eyewear, Inc. et al., Civil Action 02-1087 (C.D. Cal), limiting the '545 Patent to a top-mounting design. Relying on Defendants' proposed constructions, Mr. Sodano has concluded and will testify and offer his opinions that Marchon's, Nike's, and Revolution's products do not literally infringe Claims 23 or 35 of the '545 Patent. Plaintiffs do not assert a doctrine of equivalents infringement theory in this case.

Plaintiffs' motion is premature, unfounded and lacking in merit. To the extent we understand Plaintiffs' motion, it appears to attempt to limit Mr. Sodano's opinion only to one claim construction - the one put forth by Defendants. As the Court is well aware, and as the parties have set forth in their Joint Pre-Trial Statement, the Court still needs to conduct a Markman Hearing to construe the claim terms of the '545 Patent in dispute. To attempt to limit an expert to an as of yet unknown Markman claim construction makes no sense. All parties are still in the dark as to how the Court may or may not ultimately construe the disputed claim terms of Claims 23 and 35.

Pursuant to well-established Federal Circuit authority, the Court must construe the terms of the '545 Patent before the literal infringement issues are put to the jury. It is expected and not uncommon to anticipate that experts, including Mr. Sodano, will seek to supplement his expert report depending on the as of yet unknown Markman rulings. Mr. Sodano's report makes clear that he "reserve[s] the right to supplement and amend this report to the extent new information becomes available, law applicable to the opinions I have rendered changes, or as otherwise permitted by the Court or the applicable rules." See Sodano Report at ¶ 88. Of course, it may be unnecessary to supplement the Sodano report, should the Court adopt Defendants' proposed constructions.

Defendants note that Plaintiffs themselves may need to supplement their reports and opinions subject to the Court's ultimate construction of the claim terms in dispute. Neither party should be prejudiced depending on the as of yet unknown Markman determinations by this Court.

Plaintiffs' attempt at this stage, pre-Markman, to exclude expert infringement testimony is prejudicial to Defendants' rights. The proper course here is for the Court to conduct the required Markman analysis and findings. The experts – for both sides – will then supplement their reports and opinions as necessary. To the extent that further limited depositions are necessary, this can be addressed at that time. Under this approach, neither party is prejudiced and the jury gets the benefit of both sides' expert opinions on the infringement issues.

REVOLUTION'S AND ZELMAN'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE
TO PRECLUDE TESTIMONY FROM DEFENDANTS' PROPOSED EXPERT WITNESS
<u>JOEL SODANO ON OPINIONS NOT DISCLOSED IN HIS JUNE 7, 2010 REPORT</u>

Defendants Revolution and Zelman join in Marchon's opposition, and make the following additional arguments in opposition to Plaintiffs' motion.  At the heart of Plaintiffs' motion is a series of improper hypothetical questions regarding whether one of Defendant's products would infringe if Defendants' claim construction is **not** adopted by the Court:

Q You're not able to offer any opinions if the claimed construction **isn't** the claim construction you're offering today?

Q If you are **incorrect** on your claim construction, those additions and substitutions you made as reflected by the court, does the Marchon sample, Exhibit No. 97, have arms and a pair of magnetic members adapted to extend across respective side portions of a primary frame?

Q If you turn out to be **incorrect** on your claim construction, does the Marchon example, Exhibit No. 97, have a pair of magnetic members having a horizontal surface that can vertically engage corresponding magnetic surfaces on a primary frame?

Ex. 3 (Sodano Depo. pp. 92-96.)

The fundamental flaw in each of these questions, of course, is that they do not say what construction **is adopted** by the Court.  In each case, the question simply cannot be answered because Mr. Sodano was not provided the claim construction he was to apply.  Thus, not only is Plaintiff's motion premature and inconsistent with a party's legal and logical right to supplement based on a court's claim construction, it is also fundamentally flawed as the questions upon which it is based simply cannot reasonably be answered.