# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,

      Defendants.

_____/

**DEFENDANTS MARCHON EYEWEAR, INC. AND NIKE, INC.'S CLAIM
CONSTRUCTION BRIEF OF CLAIMS 23 AND 35 OF U.S. PATENT NO. RE 37,545**

On October 15, 2010, the Court set a Markman hearing in this case for October 21, 2010 at 3:00 PM. Defendants Marchon Eyewear, Inc. ("Marchon") and Nike, Inc. ("Nike") (collectively "Marchon") herein submit this Claim Construction Brief in support of their proposed constructions of the following four terms of Claims 23 and 35 of U.S. Patent No. RE 37,545 ("the '545 Patent") (Ex. A):[1] "An eyeglass device" (Term 1); "a magnetic member having a horizontal surface" (Term 2); "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame" (Term 3); and "so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame" (Term 4).

## I. PREVIOUS DECISIONS OF THE DISTRICT COURT OF CALIFORNIA AND THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

This case involves in part Plaintiffs' allegations that certain Marchon and Nike products infringe Claims 23 and 35 of the '545 Patent. Most of the claim terms in dispute here have been construed by the District Court of California[2] and/or the Federal Circuit[3] in an earlier case involving the '545 Patent, the same Plaintiffs and Defendant Revolution.

Both the California Court and the Federal Circuit held in no uncertain terms that the '545 Patent is clearly for a top-mounted design. See Ex. B at 31 (the "invention described is clearly for a top-mounting design: the written description only describes a top mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned anything other than a top-mounting design") (emphasis added); Ex. C at 1368 ("We agree with the district court that, in pointing out the two deficiencies in the prior art, Chao disclaimed an auxiliary frame that is not stably supported in the top-mounting configuration.").

Certain of the claim terms that the California Court construed in Claims 6 and 34 are the same terms that are in dispute in this case with regard to Claims 23 and 35. For example, the terms "having a horizontal surface" and "said arms extending across a respective extension"

---

[1] The recited exhibits in this brief are attached hereto as Exs. "A" through "J."

[2] See Ex. B, May 6, 2003 Claim Construction Order in Revolution Eyewear, Inc. v. Aspex Eyewear, Inc. et al., Case No. 02-1087 (C.D. Ca.).

[3] See Ex. C, Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 563 F. 3d 1358 (Fed. Cir. 2009).

were construed by the California Court.[4]  This exact language is found in disputed Terms 2, 3, and 4 above.  The Federal Circuit also found the preamble "eyeglass device" to be described in the '545 Patent to "include [] a primary and an auxiliary spectacle frame for supporting lenses." See Ex. C at 1365.  The same preamble is disputed claim Term 1 above.  The Federal Circuit made additional binding statements with respect to the '545 Patent, including that Applicant Chao "disclaimed a primary frame that has embedded magnetic members."  Ex. C at 1368 (emphasis added).  The Federal Circuit went on to state that Chao's invention was to "a primary frame with the magnetic members supported by projections attached to the rear/sides of the frame."  Id.  To the extent this Court is being asked to construe the same limitations in Claims 23 and 35 in this case, the Markman rulings must be consistent with the prior rulings by the California Court and in the Federal Circuit affirmance.

District Courts are bound to follow substantive patent law as decided by the Federal Circuit.  See Wang Lab. v. Oki Elec. Indus. Co., 15 F. Supp. 2d 166, 175 (D. Mass. 1998) (citing Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1573 (Fed. Cir. 1984)).  With respect to Markman rulings, "the Federal Circuit stated, in no uncertain terms, that it would have the final say as to the meaning of words in a claim of a patent. . ."  Elf Atochem N. Am. v. Libbey-Owens-Ford Co., 894 F. Supp. 844, 857 (D. Del. 1995).  Accordingly, the previous constructions of the California Court, affirmed by the Federal Circuit, are binding.

## II.  TECHNICAL BACKGROUND

The '545 Patent describes and claims eyeglass devices comprising a primary spectacle frame and an auxiliary spectacle frame.  Auxiliary spectacle frames (or "clip-ons") are essentially sunglass frames that are designed to be supported and positioned over regular prescription spectacle frames, (primary spectacle frames).  Prior to any efforts by the named inventor of the '545 Patent, eyeglasses with attachable (magnetic or clip-on) sunglass frames existed.  The '545 Patent is directed to a specific type of eyeglass devices where the auxiliary frame (sunglass portion) is supported on or over the top of a primary frame through magnetic

---

[4]  The California Court construed the "horizontal surface" of the magnetic member in the auxiliary frame as "having a downwardly facing surface."  Ex. B at 32 (emphasis added).  Similarly, the California Court construed the "horizontal surface" of the magnetic member in the primary frame to mean having an upwardly facing surface."  Id. at 31.  These same limitations of Claim 6 are found in Claim 23.  Also, the California Court, in construing Claim 34, found the limitation "said arms extending across a respective extension" to mean that "at least some portion of each arm [of the auxiliary frame] reaches across the top of the corresponding extension [of the primary frame]."  See Ex. B at 35.

2

engagement.  This type of engagement is generally referred to as a "top-mounted" design.

### III.  <u>THE LAW OF CLAIM INTERPRETATION</u>

Claim construction aims to give the patent claims the scope of protection intended by the Patent Office, and not more.  An infringement analysis requires the Court to construe the claims to determine their "scope and meaning."[5]   The claim construction process begins by considering the plain and ordinary meaning of the claims, which define the scope of the right to exclude.[6]   Significantly, "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'"  <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc).

This Court will need to consult the '545 Patent specification[7] to determine whether the patentee has disavowed or relinquished claim scope.[8]   The Court should further consult the patent's prosecution history[9] so it can exclude any interpretation that was disclaimed during prosecution.[10]   Thus, a patentee cannot recapture in litigation a claim scope surrendered during the prosecution of the patent, either by amendment or argument.[11]

Finally, in construing the claims of the '545 Patent, this Court should first look to the intrinsic evidence (the patent and prosecution history).  The Federal Circuit has advised district courts to "rely heavily on the written description for guidance as to the meaning of the claims."

---

[5]   <u>See</u> <u>Wolverine World Wide, Inc. v. Nike, Inc.</u>, 38 F.3d 1192, 1196 (Fed. Cir. 1994); <u>Markman v. Westview Instruments, Inc.</u>, 517 U.S. 370, 372 (1996).

[6]   <u>See</u> <u>Vitronics Corp. v. Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("When construing patent claims, there is a heavy presumption that the language in the claim carries its ordinary and customary meaning amongst artisans of ordinary skill in the relevant art at the time of the invention." <u>Housey Pharms., Inc. v. Astrazeneca UK Ltd.</u>, 366 F.3d 1348, 1352 (Fed. Cir. 2004) (citation and internal quotation marks omitted).

[7]   A patent's specification includes at least a description of the invention and embodiments of the invention, figures, and claims, which set out the scope of the protection.

[8]   <u>See</u> <u>SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys.</u>, Inc., 242 F.3d 1337, 1341 (Fed. Cir. 2001) ("Where the specification makes clear that the invention <u>does</u> <u>not</u> <u>include</u> a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims . . . might be considered broad enough to encompass the feature in question.").

[9]   A patent's prosecution history (or "file history") comprises the entire record of the examination of a patent application including all communications between an Applicant and the USPTO, such as Office Actions from the Examiner and responses and amendments made by an Applicant.  For the '545 Patent, <u>see</u> Ex. J.

[10]   <u>See</u> <u>Phillips v. AWH Corp.</u>, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).

[11]   <u>See</u> <u>Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.</u>, 170 F.3d 1373, 1376-77 (Fed. Cir. 1999); <u>see also</u> <u>Southwall Techs., Inc. v. Cardinal IG Co.</u>, 54 F.3d 1570, 1576 (Fed. Cir. 1995) ("Claims may not be construed one way in order to obtain their allowance and in a different way against accused infringers.").

Id. at 1317.  In general, extrinsic evidence (external to the patent and prosecution history) is considered "less reliable than the patent and its prosecution history in determining how to read claim terms …." Id. at 1317-18.

## IV.  CLAIM TERMS IN DISPUTE[12]

| Claim Element (Term 1) | Defendants' Proposed Construction |
|---|---|
| An eyeglass device | An eyeglass device includes a primary spectacle frame and an auxiliary spectacle frame |

"An eyeglass device" is part of the preamble for both Claims 23 and 35.  As demonstrated below, it is necessary for the preamble to be construed.  These words are necessary to give life, meaning, and vitality to claims 23 and 35.[13]  Since the words "eyeglass device" are used throughout the '545 Patent specification and to the extent other preamble phrases were attempted, rejected by the Patent Office and canceled during prosecution, construction of this preamble/limitation is necessary.[14]

The Court should construe the term "an eyeglass device" to mean a primary spectacle frame and an auxiliary spectacle frame, in line with the binding holding from the Federal Circuit.[15]  Examples from the intrinsic record supporting Marchon's construction include the Abstract which states that "[a]n eyeglass device includes a primary and an auxiliary spectacle frames for supporting lenses."  (Emphasis added).  The Federal Circuit cited the same portion of the '545 Patent when it described "an eyeglass device." Ex. C at 1365.  The specification further

---

[12]  The Parties have submitted a Joint Claim Construction Chart.  Defendants seek construction of Terms 1-4.  Defendants have also proposed constructions, as shown on the Claim Chart, for the other terms raised by Plaintiffs ("magnetic members," "for securing," "side portions," etc.).  These additional terms, if not consumed in Defendants' constructions of Terms 1-4, should be given the constructions proposed by Defendants in the Joint Claim Construction Chart, for the reasons set forth herein.

[13]  A preamble is construed as limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim. . ." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808-09 (Fed. Cir. 2002) (quoting Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999)).

[14]  Repeated use of a preamble term to describe the invention throughout a patent specification weighs in favor of the term being construed as a claim limitation.  See Poly-America v. GSE Lining Technology, 383 F.3d 1303, 1310 (Fed. Cir. 2004).

[15]  The Federal Circuit observed that "the preamble of claim 22 recites 'an eyeglass device' and the '545 Patent describes an eyeglass device to 'include[] a primary and an auxiliary spectacle frames for supporting lenses." See Ex. C at 1365.  On appeal, former counsel for Revolution did not challenge the District Court's contrary construction of claim 22, and thus the Federal Circuit "decide[d] the case on the premise that claim 22 is directed only to the primary frame." Id. at 1365-66.

states that "the eyeglass device in accordance with the present invention includes an auxiliary spectacle frame that may be stably secured to the primary spectacle frame." See Ex. A, Col. 3, ll. 19-21. The '545 Patent specification clearly and repeatedly defines an "eyeglass device" as including a primary and an auxiliary spectacle frame for supporting lenses.

Further, during prosecution, Applicant attempted as part of its reissue declaration to add new claims that had different preamble language -- "a primary eyeglass device comprising" and "an auxiliary eyeglass device comprising." See Ex. G, pp. 7-11, 14, 19-20, 26 (proposed claims 14-22, 29-30, 44-46, and 57). Applicant also represented to the Patent Office that one of its reasons for filing a reissue was that it should have claimed "auxiliary frames without primary spectacle frames." Id. at page 33. These new claims (with different preambles) were rejected by the Patent Office and canceled by Applicant. See Ex. E, p. 8 (claims rejected); Ex. H, p. 4 (claims canceled).[16]

Plaintiffs proposed construction of this term is that "eyeglass device" should be construed as "an eyepiece." The term "eyepiece" is not even in the '545 Patent. Should Plaintiffs be attempting to argue that "an eyepiece" is only a "primary" or an "auxiliary" frame, they are estopped from doing so based on prosecution history estoppel. Specifically, Applicants canceled all claims which separately recited a "primary eyeglass device" or an "auxiliary eyeglass device." Id. Instead, Applicants proceeded with the current claims, all of which recite a preamble of "an eyeglass device" – again, defined in the '545 Patent specification and by the Federal Circuit to include both a primary and an auxiliary spectacle frame. In view of these claim rejections, amendments, specific canceled claims, and representations to the Patent Office, the preamble needs to be construed and is a necessary limitation of claims 23 and 35.

| Claim Element (Term 2) | Defendants' Proposed Construction |
|---|---|
| a magnetic member having a horizontal surface | a magnetic member of the auxiliary frame having a downwardly facing horizontal surface (exterior face) |

---

[16]   All of the claims directed to "a primary eyeglass device" or "an auxiliary eyeglass device" were rejected as anticipated by a reference referred to as Twincome-Pentax. App Ex. E, p. 8. In an effort to overcome the rejection, Applicant disavowed an eyeglass device consisting of only a primary frame or only an auxiliary frame, arguing the Twincome-Pentax documents "do not show eyeglasses with a pair of frames – auxiliary frame with primary frame. The exhibits only show eyeglasses with one frame." Ex. F, p. 28; Ex. G, p. 49. The Examiner maintained the anticipation rejection based on Twincome-Pentax. Applicant abandoned the claims directed to "a primary eyeglass device" or "an auxiliary eyeglass device." Prosecution proceeded with all claims directed to "an eyeglass device." See Ex. H.

Consistent with the teachings of the '545 Patent, the Court should construe the term "a magnetic member having a horizontal surface" to mean a magnetic member (of the auxiliary frame) having a <u>downwardly</u> facing horizontal surface (exterior face).

Since the 1970's, many patents have issued to multiple patent owners relating to different methods and devices used for attaching auxiliary spectacle frames to a primary spectacle frame. Each of these patents are directed to different ways to attach the auxiliary frame to the primary frame. The '545 Patent is tailored to a specific way of supporting the arms of the auxiliary frames <u>on</u> the upper portion of the primary frame by <u>top-mounting</u>.

As shown in the '545 Patent drawings and as described throughout the specification, the patent is directed to only a top-mounting configuration. This was confirmed by the California Court and the Federal Circuit. <u>See</u> Ex. B at 31; Ex. C at 1368.

Throughout the '545 Patent specification, all descriptions and teachings go to a top mounted design: "[t]he primary objective of the present invention is to provide auxiliary lenses which may be stably <u>secured</u> and <u>supported on</u> the frames" (Ex. A at Col. 1, l. 43); the arms of the auxiliary frame "are engaged with and <u>supported</u> <u>on</u> the <u>upper portion</u> of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward…" (Ex. A at Col. 1, ll. 62-67); "the auxiliary spectacle frame 20 may be <u>stably supported</u> on the primary spectacle frame 10, best shown in FIGS. 5 and 6" (Ex. A at Col. 2, ll. 46-48); and "[i]t is to be noted that the arms 21 are engaged with and are supported on the <u>upper portion</u> of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be <u>stably supported</u> and secured to the primary spectacle frame." (Ex. A at Col. 2, ll. 49-53) (Emphasis added throughout). The '545 Patent specification <u>only</u> teaches and describes a magnetic member of an auxiliary frame having a <u>downwardly</u> facing surface, for top-mounting.

Consistent with Marchon's proposed construction, the California Court also construed the horizontal surface of the auxiliary frame as "having a <u>downwardly</u> facing surface." Ex. B at 32 (emphasis added). The California Court also construed "horizontal surface" of the magnetic member of the <u>primary</u> <u>frame</u> to mean having "an <u>upwardly</u> facing surface." <u>Id</u>. at 31 (emphasis

added).[17]  These <u>same</u> limitations are found in Claim 23.  The California Court's constructions should be followed in this case.

Although not intrinsic evidence, but certainly worthy of consideration by the Court, the deposition testimony of Applicant Richard Chao confirms that he never even thought of a bottom-mounted magnetic clip-on until <u>after</u> he saw co-defendant Revolution's bottom-mount magnetic clip-on product, at some point in the last four years.  <u>See</u> DE 102 Undisputed Facts at ¶ 39; <u>see</u> <u>also</u> DE 102 Ex. "J" at 141-42.  At the same deposition, Mr. Chao also testified that at the time of his "invention" a bottom-mounted design such as Marchon's would not even work, as available magnets were not strong enough to hold an auxiliary frame to the <u>bottom</u> of a primary frame.  <u>See</u> DE 102 Undisputed Facts at ¶¶ 43-44; <u>see</u> <u>also</u> DE 102 Ex. "J" at 66.  Such testimony confirms the '545 Patent is a <u>top-mounted</u> design where the auxiliary fame is <u>supported</u> <u>on</u> a primary frame.  This Court should follow the findings of the District Court in California, the affirmance by the Federal Circuit, and the clear teachings of the '545 Patent specification and adopt Marchon's constructions.

Plaintiffs argue that the term "magnetic member having a horizontal surface" should be construed to have no specific orientation, i.e., horizontal surfaces can face upwards <u>and</u> downwards.  This construction is not supported by the '545 Patent and should be rejected.  The '545 Patent simply does not teach or disclose magnetic member surfaces on the auxiliary frame that "face upwards."  There is no disclosure whatsoever in the '545 Patent that shows an "upwardly" facing magnet on the auxiliary frame.  The proper and only construction is that the surface has to be "downwardly" facing.[18]

Likewise, Marchon disagrees with Plaintiffs' additional proposed constructions of "rearwardly directed free end," "for securing," "magnetic member," "primary spectacle frame," and "side portions."  Each construction adds unnecessary, unsupported limitations such as "substantially rearward" and "ferromagnetic" member, while at the same time deliberately leaving out the California Court's ruling that the horizontal surface of the auxiliary frames are

---

[17]  Pre-reexamined Claims 6, 22, and 34 were at issue in the California case.  Based on the doctrine of issue preclusion and fundamental claim construction law, the nearly identical language of Claim 23 should be construed consistently by this Court.

[18]  Bottom-mounted designs (i) were not contemplated by applicant Chao, (ii) were not disclosed, (iii) were not claimed, and, according to applicant Chao, (iv) would not have worked at the time of the "invention."  Any litigation-motivated attempts by Plaintiffs to argue that the '545 Patent somehow now covers bottom-mounted designs should be rejected.

"downwardly facing."  See Ex. B at 32.  Plaintiffs' improper and unsupported constructions in the Joint Claim Construction Chart should be rejected.

| Claim Element (Term 3) | Defendants' Proposed Construction |
|---|---|
| said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame | said arms and said pair of magnetic members are made to extend across the top of respective side portions or extensions of the primary spectacle frame |

Claims 23 and 35 include the limitation that "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame."  As discussed above, in a top-mounting design, "adapted to extend across" must be construed to mean "made to extend across the top" of the primary frame.  The '545 Patent offers absolutely no support for a construction where the auxiliary spectacle frame arms are adapted or made to extend across the bottom of the corresponding side portion of a primary spectacle frame.  A proper construction requires this claim element to be limited to extend across the top of the corresponding side portion of a primary spectacle frame.

It is expected that Plaintiffs may attempt to rely on extrinsic dictionary definitions for the term "adapted to."  The Federal Circuit has advised district courts to "rely heavily on the written description [intrinsic evidence] for guidance as to the meaning of the claims."  Phillips v. AWH Corp., 415 F.3d 1303, 1317 (Fed. Cir. 2005) (en banc).  In the '545 Patent, the specification (intrinsic evidence) makes clear that the magnetic members of the auxiliary spectacle frame arms reach across the top of the corresponding side portion of a primary spectacle frame.  There simply is no teaching, disclosure, or any figure in the '545 Patent specification that shows the arms reaching across the bottom of the primary frame.  Plaintiffs attempt to avoid the clear teachings of the '545 Patent specification should be seen for what it is and rejected.

This Court should also reject Plaintiffs' attempt to construe the term "adapted to" to mean "suitable for."  Such a construction is inconsistent with the plain meaning of the term, inconsistent with the written description of the '545 Patent, and has been specifically rejected by other courts.  See, e.g., Boston Sci. Corp. v. Cordis Corp., 2006 U.S. Dist. LEXIS 94329 (N.D. Cal. Dec. 20, 2006) (rejecting the exact argument presented by Plaintiffs here and holding that "adapted to" does not mean "suitable for," but can mean "configured to.")  The Federal Circuit has also repeatedly rejected claim constructions that would merely require that infringing devices be capable of being modified to conform to a specified claim limitation.  See, e.g., Cross Med.

Prods., Inc. v. Medtronic Sofamor Danek, Inc., 424 F.3d 1293, 1310-11 (Fed. Cir. 2005) (rejecting argument that "to directly infringe, Medtronic need only make devices that are capable of being converted into infringing devices.")

The California Court, in construing Claim 34, found the limitation "said arms [of the auxiliary frame] extending across a respective extension [of the primary frame]" to mean that at least some portion of each arm of the auxiliary frame reaches across the top of the corresponding extension of the primary frame. See Ex. B at 35. Likewise, the Federal Circuit also limited the '545 Patent to a "top mounting configuration." See Ex. C at 1368. Claims 23 and 35, at issue here, have similar or exactly the same limitations and should be consistently construed to require that the arm auxiliary frame arms extend across the top of the primary frame, as found by the California Court in construing Claim 34.[19]

Plaintiffs' proposed construction that the auxiliary frame is "suitable for reaching across the top or bottom of the corresponding side portion of the primary spectacle frame" should be rejected. As discussed above, the term "suitable" is not a proper construction of the claim term "adapted." Further, the '545 Patent is limited to top-mounted designs. Plaintiffs continued attempts, already rejected in California and by the Federal Circuit, to construe this limitation as "top or bottom" should be again rejected.

| Claim Element (Term 4) | Defendants' Proposed Construction |
| --- | --- |
| so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame | so that said pair of magnetic members having a downwardly facing horizontal surface can be stably supported and secured on top of the upwardly facing non-embedded magnetic member surfaces on a primary spectacle frame |

Term 4 must be construed consistently with Terms 1-3. Accordingly, the claim element "a horizontal surface can vertically engage" when properly construed requires that the bottom surface of the auxiliary frame spectacle magnetic members engage with the top surface of the primary frame spectacle magnetic members. Thus, the "horizontal surfaces" of the auxiliary magnetic members must be downwardly facing. Likewise, the magnetic members of the

---

[19]  In the California case, the Court granted Revolution's motion for summary judgment on the basis that Claims 6 and 34 were not infringed. It was undisputed that the horizontal surfaces of the magnetic members of Revolution's auxiliary frames were not downwardly facing and attach to the bottom of the primary frame. Plaintiffs did not even oppose that portion of Revolution's Summary Judgment motion. See Ex. C at 1364. Marchon's auxiliary frames are similar to Revolution's and a consistent construction of Claims 23 and 35 would confirm Marchon's non-infringement in this case.

"corresponding magnetic member surfaces" of the primary frame spectacle must be <u>upwardly</u> facing. This configuration <u>is</u> a top-mounted design – the only configuration taught or described by the '545 Patent and confirmed by the Federal Circuit as the means of addressing the deficiencies in the prior art. <u>See</u> Ex. C at 1368.

Finally, the Court should also construe this term to include a primary spectacle frame with magnetic members that are <u>not</u> <u>embedded</u>, i.e., magnetic members are secured in projections, <u>not</u> in the frame. Such a holding is required in view of the Federal Circuit's binding decision that the magnetic members of the primary frame had to <u>not</u> be embedded. <u>Id.</u> at 1363, 1368. The '545 Patent specification also requires that the primary frame have magnetic members that are <u>not</u> embedded.[20] The magnetic members <u>must</u> be in projections. The '545 Patent repeatedly states that the magnetic members of the primary frame are <u>not</u> to be embedded in the primary frame. <u>See</u> Ex. A, Col. 2, ll. 60-63 ("[t]he magnetic members 14, 22 are not embedded in the frames 10, 20 such that the frames 10, 20 are not required to be formed with cavities therein and such that the strength of the frames 10, 20 will not be decreased"); Col. 3, ll. 24-26 ("In addition, the magnetic materials are embedded in the frames of the primary lenses and of the auxiliary lenses such that the frames should be excavated with four or more cavities for engaging with the magnetic members and such that the strength of the frames is greatly decreased.") The specification does disclose where the magnetic members must be -- "the primary spectacle frame including an upper portion, a pair of first magnetic members secured <u>in</u> the <u>projections</u> respectively." <u>See</u> Ex. A, Col. 1, ll. 51-54.

Plaintiffs have deliberately ignored the California Court, which held that the horizontal surface of the auxiliary frame have "a downwardly facing surface." Ex. B at 32. Plaintiffs have also ignored the Federal Circuit's binding decision that the magnetic members of the primary frame had to be non-embedded. Ex. C at 1363, 1368. Accordingly, Plaintiffs' proposed constructions of "horizontal surface" and "vertically engage" should be rejected.

## V. CONCLUSION

For the foregoing reasons, supported by the intrinsic record and consistent with the District Court of California and the Federal Circuit's affirmance, Marchon's and Nike's constructions as set forth in the Joint Claim Construction Chart should be adopted.

---

[20] Embedded magnets were well known in the prior art. See, for example, U.S. Pat. No. 5,416,537 to Sadler (Ex. I).

CASE NO.: 09-61515-CIV-COOKE/BANDSTRA

Dated: October 19, 2010

Respectfully submitted,

**s./ Martin J. Keane**

_____

W. Barry Blum
bblum@gjb-law.com
Florida Bar No.: 379301
Martin J. Keane
Florida Bar No.: 524239
mkeane@gjb-law.com
GENOVESE JOBLOVE & BATTISTA, P.A.
4400 Miami Tower
100 Southeast Second Street
Miami, Florida 33131
Telephone:       305-349-2300
Facsimile:       305-349-2310

-- and --

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
pfleming@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
FROMMER LAWRENCE & HAUG LLP
745 Fifth Avenue
New York, New York  10151
Telephone:       212-588-0888
Facsimile:       212-588-0500

*Attorneys for Defendants*
*Marchon Eyewear, Inc. and Nike, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on October 19, 2010, the foregoing document is being served this day on the following counsel by electronic and First Class U.S. Mail.

s./ Martin J. Keane

_____
Attorney

**Jacqueline Becerra, Esq.**
becerraj@gtlaw.com
**Ericka Yolanda Turk, Esq.**
turkmooree@gtlaw.com
GREENBERG TRAURIG, LLP
1221 Brickell Avenue
Miami, FL 33131
Telephone:  (305) 579-0534
Facsimile:  (305) 579-0717

**Michael Nicodema, Esq.**
nicodemam@gtlaw.com
**Douglas R. Weider, Esq.**
weiderd@gtlaw.com
GREENBERG TRAURIG, LLP
MetLife Building
200 Park Avenue
New York, NY 10166-1400
Telephone:  (212) 801-9200
Facsimile:  (212) 801-6400

*Attorneys for Plaintiffs Aspex Eyewear, Inc. and Contour Optix, Inc.*

**Janet T. Munn, Esq.**
jmunn@rascoklock.com
RASCO KLOCK REININGER PEREZ
ESQUENAZI VIGIL & NIETO, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL 33134
Telephone:  (305) 476-7121
Facsimile:  (305) 476-7102

**Steven M. Hanle, Esq.**
shanle@sheppardmullin.com
**Jennifer A. Trusso, Esq.**
jtrusso@sheppardmullin.com
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
650 Town Center Drive – Fourth Floor
Costa Mesa, CA 92626
Telephone:  (714) 513-5100
Facsimile:  (714) 513-5130

*Attorneys for Defendants Revolution Eyewear, Inc. and Gary Martin Zelman*

10289 – 001 / 403