# EXHIBIT J

## U.S. REISSUE PATENT APPLICATION

| | O.G. PUBLICATION DATE | REISSUE PATENT DATE |
|---|---|---|
| O.I.P.E.  SCANNED | 12-22-99 | |

| SECTOR | CLASS | SUBCLASS | ART UNIT | EXAMINER |
|---|---|---|---|---|
| | 351 | 57 | 2873 | MAI |

FILED WITH: ☐ DISK (CRF)  ☐ FICHE

☐ SURRENDER OF ORIGINAL PATENT

## PREPARED AND APPROVED FOR ISSUE

### ISSUING CLASSIFICATION

| ORIGINAL | | CROSS REFERENCE(S) | | |
|---|---|---|---|---|
| CLASS | SUBCLASS | CLASS | SUBCLASS (ONE SUBCLASS PER BLOCK) | |
| | | | | |

INTERNATIONAL CLASSIFICATION

☐ Continued on Issue Slip Inside File Jacket

| TERMINAL DISCLAIMER | DRAWINGS | | | CLAIMS ALLOWED | |
|---|---|---|---|---|---|
| | Sheets Drwg. | Figs. Drwg. | Print Fig. | Total Claims | Print Claim for O.G. |
| | | | | | |

NOTICE OF ALLOWANCE MAILED

(Assistant Examiner)          (Date)

☐ The term of this patent shall not extend beyond the expiration date of Pat. No. _____

| ISSUE FEE | |
|---|---|
| Amount Due | Date Paid |
| | |

☐ The terminal _____ months this patent have been disclaimed.

(Primary Examiner)          (Date)

ISSUE BATCH NUMBER

FINAL SPRE REVIEW

(INITIALS)          (Legal Instruments Examiner)          (Date)

WARNING:
The information disclosed herein may be restricted. Unauthorized disclosure may be prohibited by the United States Code Title 35, Sections 122, 181 and 368. Possession outside the U.S. Patent & Trademark Office is restricted to authorized employees and contractors only.

Form PTO-2008
(R - 10/97)

(LABEL AREA)

(FACE)

PATENT APPLICATION    JC-540 U.S. ...
09/182862

09 182862                    10/21/98

When Entering a Paper See
Scanned Notice Inside File

## CONTENTS

INITIALS _____

| | Application ........ papers. | Date received (incl. C. of M.) or Date Mailed | | | Date received (incl. C. of M.) or Date Mailed |
|---|---|---|---|---|---|
| | I. D. S | 10-21-98 | 42. | | |
| | Letter re Abstract | 10-21-98 | 43. | | |
| | Assmnt of Assignee | 10-21-98 | 44. | | |
| 5. | Rejection (03 months) | 7-15-99 | 45. | | |
| 6. | | | 46. | | |
| 7. | | | 47. | | |
| 8. | PTOL-90 - Non Responsive Amdt (1 month) | 6/6/00 | 48. | | |
| 9. | | | 49. | | |
| 10. | Amdt la Query | | 50. | | |
| 11. | Suppl Amdt C | 7-30-00 | 51. | | |
| 12. | PTOL-413 Tel Interview Summary | 9-7-00 | 52. | | |
| 13. | PTOL-90 - Non-Resp Amdt (1 month) | 10/12/00 | 53. | | |
| 14. | Protest 1.291 | 11/5/00 | 54. | | |
| 15. | Misc. Letter Re Protest | 2/5/01 | 55. | | |
| 16. | | 11-29-00 | 56. | | |
| 17. | Amdt D #5 | 11-27-00 | 57. | | |
| 18. | I. D. S. | 2-1-00 | 58. | | |
| 19. | | 11 | 59. | | |
| 20. | | 11-27-00 | 60. | | |
| 21. | Power of Attorney | 2-21-01 | 61. | | |
| 22. | Supplemental Amdt E | 2-28-01 | 62. | | |
| 23. | Supplemental Amdt F | 3-1-01 | 63. | | |
| 24. | Letter re Litigation | 3-20-01 | 64. | | |
| 25. | Surrender Patent | 3-29-01 | 65. | | |
| 26. | PTOL-413 Interview Summary | 4-4-01 | 66. | | |
| 27. | Amdt G | 4-10-01 | 67. | | |
| 28. | Protest 1.291 | 10-25-00 | 68. | | |
| 29. | I. D. S. | 4-12-01 | 69. | | |
| 30. | Final Rejection (3 months) | 5-23-01 | 70. | | |
| 31. | PTOL 413 Interview Summary | 6-18-01 | 71. | | |
| 32. | Amdt H | 6-21-01 | 72. | | |
| 33. | Letter | 6-21-01 | 73. | | |
| 34. | Supp Nicht | 6-22-01 | 74. | | |
| 35. | PTOL 413 Interview Summary | 7-5-01 | 75. | | |
| 36. | PTOL-37/(=) + Reasons for (=) | 7-30-01 | 76. | | |
| 37. | Letter | | 77. | | |
| 38. | PTO-90C | 9/17/01 | 78. | | |
| 39. | | | 79. | | |
| 40. | | | 80. | | |
| 41. | | | 81. | | |
| | | | 82. | | |

(FRONT)

# RE37,545

# AUXILIARY LENSES FOR EYEGLASSES

## Transaction History

| Date | Transaction Description |
|---|---|
| 10/21/1998 | Miscellaneous Incoming Letter |
| 10/21/1998 | Information Disclosure Statement (IDS) Filed |
| 10/21/1998 | Information Disclosure Statement (IDS) Filed |
| 11/6/1998 | Initial Exam Team nn |
| 12/7/1998 | Preexamination Location Change |
| 12/22/1998 | Notice of Reissue Published in Official Gazette |
| 5/4/1999 | Case Reported Lost |
| 5/21/1999 | Official Search Conducted |
| 6/18/1999 | Termination of Official Search |
| 6/23/1999 | Case Found |
| 7/12/1999 | Case Docketed to Examiner in GAU |
| 7/15/1999 | Mail Non-Final Rejection |
| 7/15/1999 | Non-Final Rejection |
| 1/19/2000 | Informal or Non-Responsive Amendment after Examiner Action |
| 6/6/2000 | Mail Notice of Informal or Non-Responsive Amendment |
| 7/10/2000 | Informal or Non-Responsive Amendment after Examiner Action |
| 8/7/2000 | IFW Scan & PACR Auto Security Review |
| 8/30/2000 | Supplemental Response |
| 9/2/2000 | Date Forwarded to Examiner |
| 9/7/2000 | Examiner Interview Summary Record (PTOL - 413) |
| 10/12/2000 | Mail Notice of Informal or Non-Responsive Amendment |
| 10/25/2000 | Miscellaneous Incoming Letter |
| 11/27/2000 | Incoming Letter Pertaining to the Drawings |
| 11/27/2000 | Supplemental Papers - Oath or Declaration |
| 11/27/2000 | Response after Non-Final Action |
| 11/27/2000 | Request for Extension of Time - Granted |
| 12/1/2000 | Information Disclosure Statement (IDS) Filed |
| 12/1/2000 | Information Disclosure Statement (IDS) Filed |
| 2/5/2001 | Miscellaneous Incoming Letter |
| 2/8/2001 | Supplemental Response |
| 2/15/2001 | Date Forwarded to Examiner |
| 2/21/2001 | IFW Scan & PACR Auto Security Review |
| 3/1/2001 | Supplemental Response |

| | |
|---|---|
| 3/19/2001 | Date Forwarded to Examiner |
| 3/19/2001 | Date Forwarded to Examiner |
| 3/19/2001 | Change in Power of Attorney (May Include Associate POA) |
| 3/19/2001 | Correspondence Address Change |
| 3/19/2001 | Change in Power of Attorney (May Include Associate POA) |
| 3/20/2001 | Miscellaneous Incoming Letter |
| 4/2/2001 | Information Disclosure Statement (IDS) Filed |
| 4/2/2001 | Information Disclosure Statement (IDS) Filed |
| 4/4/2001 | Examiner Interview Summary Record (PTOL - 413) |
| 4/12/2001 | Information Disclosure Statement (IDS) Filed |
| 4/12/2001 | Information Disclosure Statement (IDS) Filed |
| 5/21/2001 | Final Rejection |
| 5/22/2001 | Mail Final Rejection (PTOL - 326) |
| 6/21/2001 | Miscellaneous Incoming Letter |
| 6/21/2001 | Amendment after Final Rejection |
| 6/22/2001 | Supplemental Papers - Oath or Declaration |
| 7/3/2001 | Date Forwarded to Examiner |
| 7/4/2001 | IFW Scan & PACR Auto Security Review |
| 7/5/2001 | Examiner Interview Summary Record (PTOL - 413) |
| 7/27/2001 | Miscellaneous Incoming Letter |
| 7/30/2001 | Mail Notice of Allowance |
| 7/30/2001 | Notice of Allowance Data Verification Completed |
| 8/13/2001 | IFW Scan & PACR Auto Security Review |
| 9/17/2001 | Mail Examiner's Amendment |
| 9/17/2001 | Examiner's Amendment Communication |
| 9/26/2001 | IFW Scan & PACR Auto Security Review |
| 10/1/2001 | Issue Fee Payment Verified |
| 10/10/2001 | Workflow - File Sent to Contractor |
| 10/17/2001 | Workflow - Customer Service Request - Begin |
| 1/3/2002 | Receipt into Pubs |
| 1/24/2002 | Application Is Considered Ready for Issue |
| 1/24/2002 | Workflow - Customer Service Request - Finish |
| 1/25/2002 | Issue Notification Mailed |
| 2/12/2002 | Recordation of Patent Grant Mailed |
| 2/12/2002 | Patent Issue Date Used in PTA Calculation |
| 7/16/2002 | Application scanned in CRU and can be accessed by the REPS system in the Public Search Room |
| 10/7/2004 | Correspondence Address Change |
| 11/22/2004 | Petition Entered |
| 11/22/2004 | Workflow Incoming petition IFW |
| 7/19/2005 | Mail-Petition Decision - Granted |
| 4/28/2008 | Statement Filed Indicating a Loss of Entitlement to Small Entity |

| | Status |
|---|---|
| 6/5/2008 | Change In Power of Attorney (May Include Associate POA) |
| 6/5/2008 | Correspondence Address Change |

ISSUE SLIP STAPLE AREA (for additional cross references)

| POSITION | INITIALS | | | DATE |
|---|---|---|---|---|
| FEE DETERMINATION | | | | |
| O.I.P.E. CLASSIFIER | CMC | 65214 | | 11-12-98 |
| FORMALITY REVIEW | | | | |

## INDEX OF CLAIMS

| | | | | |
|---|---|---|---|---|
| ✔ | ................................. Rejected | N | ................................. Non-elected |
| = | ................................. Allowed | I | ................................. Interference |
| — | (Through numeral) Canceled | A | ................................. Appeal |
| ÷ | ................................. Restricted | O | ................................. Objected |



If more than 150 claims or 10 actions
staple additional sheet here

(LEFT INSIDE)

US00RE37545E

(19) **United States**

(12) **Reissued Patent**

Chao

(10) Patent Number: **US RE37,545 E**

(45) Date of Reissued Patent: **Feb. 12, 2002**

(54) **AUXILIARY LENSES FOR EYEGLASSES**

(75) Inventor: **Richard Chao**, Chia Yi Hsien (TW)

(73) Assignees: **Contour Optik, Inc.**, Chiayi (TW); **Asahi Optical Co., Ltd.**

(21) Appl. No.: **09/182,862**

(22) Filed: **Oct. 21, 1998**

**Related U.S. Patent Documents**

Reissue of:
(64) Patent No.: **5,568,207**
Issued: **Oct. 22, 1996**
Appl. No.: **08/554,854**
Filed: **Nov. 7, 1995**

(51) Int. Cl.$^7$ ............................. G02C 7/08; G02C 9/00
(52) U.S. Cl. ............................................. **351/57**; 351/47
(58) Field of Search ............................. 351/47, 57, 41, 351/44; 2/441, 443

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 1,679,233 A | 7/1928 | Strauss | 351/47 |
| 2,737,847 A | 3/1956 | Tesauro | 351/41 |
| 2,770,168 A | 11/1956 | Tesauro | 351/41 |
| 3,498,701 A | 3/1970 | Miller | 351/57 |
| 3,531,188 A | 9/1970 | LeBlanc et al. | 351/48 |
| 3,531,190 A | 9/1970 | LeBlanc | 351/113 |
| 3,536,385 A | 10/1970 | Johnston | 351/47 |
| 3,565,517 A | 2/1971 | Gitlin et al. | 351/106 |
| 3,582,192 A | 6/1971 | Gitlin et al. | 351/52 |
| 3,838,914 A | 10/1974 | Fernandez | 351/106 |
| 4,070,103 A | 1/1978 | Meeker | 351/52 |
| 4,070,105 A | 1/1978 | Marzouk | 351/159 |
| 4,196,981 A | 4/1980 | Waldrop | 351/59 |
| 4,217,037 A | 8/1980 | Lemelson | 351/47 |
| 4,547,909 A | 10/1985 | Bell | 2/431 |
| 4,988,181 A | 1/1991 | Riach | 351/52 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| CH | 572222 | 1/1976 |
| CN | 76209045 | 9/1976 |
| CN | 107096 | 4/1985 |
| CN | 1117593 | 2/1996 |
| DE | 1797366 | 1/1971 |
| DE | G 85 07 761.5 | 6/1985 |
| DE | G 88 06 898.6 | 10/1988 |
| DE | 3905041 | 8/1990 |
| DE | 3919489 | 12/1990 |
| DE | 3920879 | 1/1991 |
| DE | 3921987 | 1/1991 |
| DE | 39333310 | 1/1991 |
| DE | 9216919 | 2/1993 |
| DE | 43 16 698 | 11/1994 |
| EP | 0469699 | 2/1992 |

(List continued on next page.)

OTHER PUBLICATIONS

English language abstract of Japanese Publication No. 55–50217.
English language abstract of Japanese Publication No. 54–111842.
English language abstract of Japanese Publication No. 54–111841.
English language abstract of Japanese Publication No. 1–136114.

(List continued on next page.)

*Primary Examiner*—Huy Mai
(74) *Attorney, Agent, or Firm*—Morgan & Finnegan, L.L.P.

(57) **ABSTRACT**

An eyeglass device includes a primary and an auxiliary spectacle frames for supporting lenses. The primary spectacle frame includes two legs pivotally coupled to two side extensions and includes two magnetic members secured in the rear and side portions. The auxiliary spectacle frame includes two legs engaged on the primary spectacle frame and each having a magnetic member for engaging with the magnetic members of the primary spectacle frame so as to secure the spectacle frames together and so as to prevent the auxiliary spectacle frame from moving downward relative to the primary spectacle frame.

**34 Claims, 2 Drawing Sheets**



**US RE37,545 E**

Page 2

## U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,181,051 A | | 1/1993 | Townsend et al. ............. 351/52 |
| 5,243,366 A | | 9/1993 | Blevins ........................ 351/57 |
| 5,321,442 A | | 6/1994 | Albanese ..................... 351/44 |
| 5,389,981 A | | 2/1995 | Riach ......................... 351/158 |
| 5,410,763 A | | 5/1995 | Bolle .............................. 2/436 |
| 5,416,537 A | * | 5/1995 | Sadler ......................... 351/47 |
| 5,642,177 A | | 6/1997 | Nishioka ...................... 351/47 |
| 5,682,222 A | | 10/1997 | Chao ......................... 351/111 |
| 5,696,571 A | | 12/1997 | Spencer et al. ............... 351/47 |
| 5,737,054 A | | 4/1998 | Chao .......................... 351/47 |
| 5,877,838 A | | 3/1999 | Chao .......................... 351/47 |
| 5,882,101 A | | 3/1999 | Chao .......................... 351/47 |
| 5,883,688 A | | 3/1999 | Chao .......................... 351/47 |
| 5,883,689 A | | 3/1999 | Chao .......................... 351/47 |
| 5,929,964 A | | 7/1999 | Chao .......................... 351/47 |
| 6,012,811 A | | 6/2000 | Chao et al. ................... 351/47 |
| 6,092,896 A | | 7/2000 | Chao et al. ................... 351/47 |
| 6,109,747 A | | 8/2000 | Chao .......................... 351/47 |
| 6,170,948 B1 | | 1/2001 | Chao .......................... 351/47 |

## FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| EP | 0743545 | 11/1996 |
| FR | 915421 | 11/1946 |
| FR | 1037755 | 9/1953 |
| FR | 1061253 | 4/1954 |
| FR | 2483632 | 4/1981 |
| FR | 1266652 | 12/1981 |
| FR | 2657436 | 7/1991 |
| GB | 846425 | 8/1960 |
| GB | 855268 | 11/1960 |
| JP | 44-15392 | 7/1969 |
| JP | 54-111841 | 9/1979 |
| JP | 54-111842 | 9/1979 |
| JP | 55-50217 | 4/1980 |
| JP | 56-29209 | 3/1981 |
| JP | 57-184910 | 11/1982 |
| JP | 612621 | 1/1986 |
| JP | 1-136114 | 5/1989 |
| JP | 2-109325 | 8/1990 |
| JP | 5-157997 | 6/1993 |
| JP | 5-40493 | 10/1993 |
| JP | 3011174 | * 5/1995 |
| JP | 7-128620 | 5/1995 |
| RU | 220885 | 6/1968 |
| TW | 274588 | 4/1996 |
| WO | WO 90/09611 | 8/1990 |
| WO | WO 96/23241 | 8/1996 |

## OTHER PUBLICATIONS

English language abstract of Japanese Publication No. 56-29209.

English language abstract of Japanese Publication No. 44-15392.

English language abstract of Japanese Publication No. 5-157997.

English language abstract of Japanese Publication No. 612621.

English language abstract of Japanese Publication No. 5-40493.

English language abstract of German Publication No. 9216919.

English language abstract of German Publication No. 1797366.

English language abstract of German Publication No. 43 16 698.

English language abstract of German Publication No.39333310.

English language abstract of German Publication No.3921987.

English language abstract of German Publication No.3920879.

English language abstract of German Publication No.3919489.

English language abstract of German Publication No.3905041.

English language abstract of French Publication No.1266652.

English language abstract of French Publication No.1037755.

English language abstract of French Publication No.2,657, 436.

English language abstract of French Publication No.2,483, 632.

English language abstract of French Publication No.915, 421.

English language abstract of Switzerland Publication No.572,222.

English language abstract of Russian Publication No.220885.

English language abstract of Taiwan Publication No.274588.

English language abstract of Chinese Publication No.1117593.

Documents describing Twincome in a Patent Opposition Proceeding in Germany initiated by Pentax, on or around Apr. 30, 1997.

* cited by examiner

**U.S. Patent**        Feb. 12, 2002        Sheet 1 of 2        **US RE37,545 E**



FIG.1



FIG.2



FIG.3



FIG.4



F I G . 5



F I G . 6



F I G . 7

US RE37,545 E

**1**

## AUXILIARY LENSES FOR EYEGLASSES

Matter enclosed in heavy brackets [ ] appears in the original patent but forms no part of this reissue specification; matter printed in italics indicates the additions made by reissue.

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to auxiliary lenses, and more particularly to auxiliary lenses for eyeglasses.

2. Description of the Prior Art

A typical spectacle frame having an attachable one-piece slide-on rim is disclosed in U.S. Pat. No. 4,070,103 to Meeker. In Meeker, a spectacle frame includes a magnetic material secured to the peripheral portion thereof for facilitating attachment of the auxiliary lens rim cover to the spectacle frame. The lens rim cover also includes a magnetic strip for engaging with the magnetic material of the spectacle frame.

Another typical eyeglasses are disclosed in U.S. Pat. No. 5,416,537 to Sadler and comprise first magnetic members secured to the temporal portions of the frames and second magnetic members secured to the corresponding temporal portions of the auxiliary lenses.

In both of the eyeglasses, the auxiliary lenses are simply attached to the frames by magnetic materials and have no supporting members for preventing the auxiliary lenses from moving downward relative to the frames such that the auxiliary lenses may easily move downward relative to the frames and may be easily disengaged from the frames when the users conduct jogging or jumping exercises. In addition, the magnetic materials are embedded in the frames of the primary lenses and of the auxiliary lenses such that the frames should be excavated with four or more cavities for engaging with the magnetic members and such that the strength of the frames is greatly decreased.

The present invention has arisen to mitigate and/or obviate the afore-described disadvantages of the conventional spectacle frames.

### SUMMARY OF THE INVENTION

The primary objective of the present invention is to provide auxiliary lenses which may be stably secured and supported on the frames.

In accordance with one aspect of the invention, there is provided an eyeglass device comprising a primary spectacle frame for supporting primary lenses therein, the primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, the primary spectacle frame including two rear and side portions each having a projection secured thereto, the primary spectacle frame including an upper portion, a pair of first magnetic members secured in the projections respectively, an auxiliary spectacle frame for supporting auxiliary lenses therein, the auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with the upper portion of the primary spectacle frame, and a pair of second magnetic members secured to the arms respectively for engaging with the first magnetic members of the primary spectacle frame so as to secure the auxiliary spectacle frame to the primary spectacle frame. The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward relative to and so as to prevent the

**2**

auxiliary spectacle frame from being disengaged from the primary spectacle frame.

The projections and the first magnetic members are arranged lower than the upper portion of the primary spectacle frame, the second magnetic members are extended downward toward the projections for hooking on the primary spectacle frame so as to further secure the auxiliary spectacle frame to the primary spectacle frame. The auxiliary spectacle frame may be prevented from disengaging from the primary spectacle frame.

Further objectives and advantages of the present invention will become apparent from a careful reading of a detailed description provided hereinbelow, with appropriate reference to accompanying drawings.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1 and 2 are front views of a spectacle frame and of auxiliary lenses in accordance with the present invention respectively;

FIGS. 3 and 4 are top views of the spectacle frame and of the auxiliary lenses respectively;

FIG. 5 is a front view of the spectacle frame and the auxiliary lenses combination;

FIG. 6 is a top view of the spectacle frame and the auxiliary lenses combination; and

FIG. 7 is a cross sectional view taken along lines 7—7 of FIG. 6.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to the drawings, and initially to FIGS. 1 to 4, an eyeglass device in accordance with the present invention comprises a primary spectacle frame **10** for supporting primary lenses therein. The primary spectacle frame **10** includes two side portions each having an extension **11** extended rearward therefrom for pivotally coupling leg **12** thereto. The primary spectacle frame **10** includes two projections **13** secured to the rear and side portions thereof for supporting magnetic members **14** therein. An auxiliary spectacle frame **20** is provided for supporting the auxiliary lenses therein and includes two side portions each having an arm **21** extended rearward therefrom for extending over and for engaging with the upper portion of the primary spectacle frame **10** (FIGS. 5 and 6). The auxiliary spectacle frame **20** also includes two magnetic members **22** secured to the arms **21** therefor for engaging with the magnetic members **14** of the primary spectacle frame **10** such that the auxiliary spectacle frame **20** may be stably supported on the primary spectacle frame **10**, best shown in FIGS. 5 and 6.

It is to be noted that the arms **21** are engaged with and are supported on the upper portion of the primary spectacle frame **10** such that the auxiliary spectacle frame **20** may be stably supported and secured to the primary spectacle frame **10**. The auxiliary spectacle frame **20** will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises.

It is further to be noted that the projections **13** and the magnetic members **14** are secured to the primary spectacle frame **10** and the magnetic members **22** are secured in the arms **21**. The magnetic members **14**, **22** are not embedded in the frames **10**, **20** such that the frames **10**, **20** are not required to be formed with cavities therein and such that the strength of the frames **10**, **20** will not be decreased.

*As shown in FIGS. 3–7, the engaging surfaces between magnetic members 14 in primary spectacle frame 10 and the magnetic members 22 in the auxiliary spectacle frame 20 lie in a plane that is substantially horizontal when the eyeglass device is worn.*

US RE37,545 E

| 3 | 4 |

Referring next to FIG. 7, it is preferable that the projections 13 and the magnetic members 14 are located slightly lower than the upper portion of the primary spectacle frame 10; and the end portions of the arms 21 and/or the magnetic members 22 are slightly extended downward toward the projections 13 such that the arms 21 and the magnetic members 22 may hook on the primary spectacle frame 10 and such that the auxiliary spectacle frame 20 may further be stably supported and secured to the primary spectacle frame 10.

In one embodiment, as shown in FIG. 7, magnetic members 14 and 22 are not in contact with each other; magnetic members 14 and 22 are engaged with, but not supported on, each other. Instead, the arm 21 securing the magnetic member 22 is supported on an upper side portion of the primary spectacle frame 10. As shown in FIG. 7, the upper side portion can be an upper part of the side portion securing the projection 13.

Accordingly, the eyeglass device in accordance with the present invention includes an auxiliary spectacle frame that may be stably secured to the primary spectacle frame and will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises. In addition, the magnetic members are not embedded in the frames such that the strength of the frames will not be decreased.

Although this invention has been described with a certain degree of particularity, it is to be understood that the present disclosure has been made by way of example only and that numerous changes in the detailed construction and the combination and arrangement of parts may be resorted to without departing from the spirit and scope of the invention as hereinafter claimed.

I claim:

1. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, said primary spectacle frame including two rear and side portions each having a projection secured thereto, said primary spectacle frame including an upper side portion,

a pair of first magnetic members secured in said projections respectively,

an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with said upper side portion of said primary spectacle frame, and

a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame,

said arms being engaged with and supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame and so as to prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame and so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

2. An eyeglass device according to claim 1, wherein said projections and said first magnetic members are arranged lower than said upper side portion of said primary spectacle frame, said second magnetic members are extended downward toward said projections for hooking on said primary spectacle frame so as to further secure said auxiliary spectacle frame to said primary spectacle frame.

3. An eyeglass device as recited in claim 1 wherein the first and the second magnetic members are magnets.

4. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein with the lenses defining a vertical plane, the primary spectacle frame including two side portion extensions extended therefrom for pivotally coupling a leg thereto and a first magnet having a horizontal surface and secured to said side portion extensions of the primary spectacle frame, and

an auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary spectacle frame, the auxiliary spectacle frame including two auxiliary side portions, the auxiliary spectacle frame including two second magnets, each secured to one of the auxiliary side portions for respectively engaging the horizontal surface of one of the first magnets so as to secure the auxiliary spectacle frame to the primary spectacle frame.

5. An eyeglass device as recited in claim 4 wherein at least an end portion of one auxiliary side portion extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

6. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two side portion extensions extended therefrom for pivotally coupling a leg thereto; and

the primary spectacle frame including two first magnetic members respectively having a horizontal surface and being secured to one of the side portions extensions of the primary spectacle frame; and

an auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary spectacle frame, the auxiliary spectacle frame including two auxiliary side portions, wherein the auxiliary spectacle frame further includes two second magnetic members each secured to one of the auxiliary side portions and having a horizontal surface for coupling a corresponding horizontal surface of one of the first magnetic members so as to secure the auxiliary spectacle frame to the primary spectacle frame.

7. An eyeglass device as recited in claim 6 wherein the second magnetic members are magnets.

8. An eyeglass device as recited in claim 6 wherein the first magnetic members are magnets.

9. An eyeglass device as recited in claim 6 wherein the first and the second magnetic members are magnets.

10. An eyeglass device as recited in claim 9 wherein the auxiliary side portions are respectively supported on a corresponding extension and the first magnetic members are not in contact with the second magnetic members.

11. An eyeglass device as recited in claim 6 wherein the auxiliary side portions are respectively supported on a corresponding extension and the first magnetic members are not in contact with the second magnetic members.

12. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions having a front side, a rear side and a first magnetic member secured to said rear side,

US RE37,545 E

5

an auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending toward and beyond said rear side, each of said arms containing a second magnetic member, and

said arms and said first and second magnetic members cooperating to stably support said auxiliary spectacle frame on said primary spectacle frame.

13. The eyeglass device according to claim 12, wherein said first and second magnets members are magnets.

14. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portion extensions extended therefrom for pivotally coupling a leg, each of said extensions also including an outer side, an inner side, and a top side with a projection secured to said inner side, each of said projections respectively securing a first magnetic member, and

an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including two side portions each having an arm extended therefrom, said auxiliary spectacle frame further including a pair of second magnetic members secured to said arms respectively for engaging said first magnetic members of said primary spectacle, each of said arms adapted to extend over one of said top sides.

15. The eyeglass device according to claim 14, wherein said first and second magnets members are magnets.

16. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions having a front side and a rear side with a first magnetic member secured to said rear side, and

an auxiliary spectacle frame including two side portions, each of said side portions having an arm extended therefrom for extending beyond said rear side, said arms containing corresponding second magnetic members, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame.

17. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions extending laterally away from one another and rearwardly of said frame, each of said extensions having a top side, a front side and a rear side with a first magnetic member secured to said rear side, and

an auxiliary spectacle frame including two side portions each having an arm extending from said front side over said top side, said arms containing corresponding second magnetic members, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame.

18. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions extending rearwardly therefrom having a top side and a rear side with a first magnetic member secured thereto, and

an auxiliary spectacle frame including two arms for extending over a corresponding top side of said extensions, said arms respectively containing second magnetic members for cooperation with said first magnetic members and downwardly extended end portions for hooking said auxiliary spectacle frame to said primary spectacle frame, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame.

6

19. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein having two side portion extensions, said side portion extensions each having a top side and a projection attached to a rear side thereof, each of said projections securing a first magnetic member, and

an auxiliary spectacle frame including two arms for extending over and engaging a corresponding top side of said side portion extensions, said arms respectively containing second magnetic members and downwardly extended end portions, at least said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame.

20. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein having two side portion extensions having a top side and a rear side with a first magnetic member secured to said rear side, and

an auxiliary spectacle frame including two arms for extending over and engaging a corresponding top side of said extensions, said arms respectively containing downwardly extended second magnetic members for hooking said auxiliary spectacle frame to said primary spectacle frame, said arms and said first and second magnetic members cooperating to support said auxiliary spectacle frame on said primary spectacle frame.

21. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein having an extension at each side for pivotal coupling to a leg, each of said extensions having a front side, a rear side, a top side and a projection attached to said rear side, each of said projections securing first magnetic members, and

an auxiliary spectacle frame for supporting auxiliary lenses therein and including two side portions, each of said side portions having an arm extended therefrom and adapted to extend from said front side to beyond said rear side of said extension of said primary spectacle frame, said arms each containing corresponding second magnetic members, said arms locating each of said second magnetic members in an engagement position to engage respective first magnetic members of said primary spectacle frame and inhibit relative vertical movement therebetween.

22. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein and having two side portion extensions extending rearwardly therefrom and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections, said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame so that lenses of an auxiliary spectacle frame are located in front of said primary lenses.

23. An eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member, and a pair of magnetic members respectively secured in the free ends of

US RE37,545 E

7

said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic members on a primary spectacle frame.

24. An eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a front side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed end for securing a magnetic member, a pair of magnetic members respectively located at said ends of said arms, each of said ends further including a downwardly extended end portion for hooking onto a primary spectacle, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members can engage corresponding magnetic members on a primary spectacle frame.

25. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions extending therefrom and adapted to pivotally couple a leg thereto, said extensions each having a front side, a rear side, a top side and a projection extending from said rear side, each of said projections securing a first magnetic member, and

an auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over said top side, said arms containing corresponding second magnetic members, said arms with said second magnetic members engaging said first magnetic members thereby securing said auxiliary frame to said primary spectacle frame to prevent said auxiliary spectacle frame from moving downward relative to and/or disengaging from said primary spectacle frame.

26. An eyeglass device, comprising:

a primary spectacle frame for supporting primary lenses therein;

a pair of extensions mounted to said primary spectacle frame at laterally spaced locations and each projecting toward a wearer when the eyeglass device is worn;

a first pair of magnetic members, each affixed to a respective one of a pair of projections attached to a rear side of said extensions so as to be concealed by said extensions when said eyeglass is worn, said first pair of magnetic members each having a first surface;

an auxiliary spectacle frame for supporting auxiliary lenses therein;

a pair of spaced apart arms mounted to said auxiliary spectacle frame and projecting toward the wearer when the eyeglass device is worn; and

a second pair of magnetic members, each affixed to said pair of arms, said second pair of magnetic members each having a second surface, said auxiliary spectacle frame capable of being supported by said primary spectacle frame by mounting said second pair of magnetic members to said first pair of magnetic members, said first and second surfaces being oppositely directed so that said surfaces are juxtaposed.

27. An eyeglass device according to claim 26 wherein said auxiliary frame includes an abutment surface for engagement with an oppositely directed surface on said primary frame to inhibit relative movement therebetween.

28. An eyeglass device according to claim 27 wherein said abutment surface is provided on each of said arms on said auxiliary frame.

8

29. An eyeglass device according to claim 27 wherein said extensions are located adjacent respective ones of said arms.

30. An eyeglass device according to claim 29 wherein said auxiliary frame includes an abutment surface for engagement with an oppositely directed surface on said primary frame to inhibit relative movement therebetween.

31. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions extending rearwardly therefrom with a top side and a rear side with a first magnetic member secured thereto, and

an auxiliary spectacle frame including two arms for extending over a corresponding top side of said extensions, said arms respectively containing second magnetic members for cooperation with said first magnetic members and downwardly extended end portions for hooking said auxiliary spectacle frame to said primary spectacle frame, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary spectacle frame, wherein at least one of said first magnetic members and said second magnetic members are magnets.

32. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions having a front side, a rear side and a first magnetic member secured to said rear side,

an auxiliary spectacle frame including two side portions each having an arm extended therefrom and traversing said extension from said front side to said rear side, each of said arms containing a second magnetic member, and

said first and second magnetic members engaging one another to support said auxiliary spectacle frame on said primary spectacle frame.

33. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions having a front side, a rear side and a first magnetic member secured to said rear side,

an auxiliary spectacle frame including two side portions each having an arm extended therefrom, each of said arms containing a second magnetic member, said arms extending across said extension from said front side to said rear side, and

said arms and said first and second magnetic members stably support said auxiliary spectacle frame on said primary spectacle frame.

34. An eyeglass device comprising:

a primary spectacle frame having two side portion extensions with a front side, a rear side and a first magnetic member

an auxiliary spectacle frame including two side portions each having an arm extended therefrom, each of said arms containing a second magnetic member, said arms extending across a respective extension from said front side to said rear side so that said first and second magnetic members engage one another whereby said auxiliary spectacle frame is supported by said primary spectacle frame.

* * * * *

PATENT APPLICATION SERIAL NO. _____

U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
FEE RECORD SHEET

11/19/1998 NVILLARI 00000006 061325   09182862

01 FC:208                    395.00 OP
02 FC:209                    410.00 OP
03 FC:210        64.00 CH    101.00 OP

PTO-1556
(5/87)
*U.S. GPO: 1998-433-214/80404



**Bib Data Sheet**



**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address: COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

| SERIAL NUMBER 09/182,862 | FILING DATE 10/21/1998 RULE — | CLASS 351 | GROUP ART UNIT 2873 | ATTORNEY DOCKET NO. CONT1013SRM/ |
|---|---|---|---|---|

**APPLICANTS**
   RICHARD CHAO, TAWAIN, TAIWAN;

** CONTINUING DATA **************************
   THIS APPLICATION IS A REI OF 08/554,854 11/07/1995 PAT 5,568,207

** FOREIGN APPLICATIONS *********************

** SMALL ENTITY **

| Foreign Priority claimed ☐ yes ☐ no<br>35 USC 119 (a-d) conditions met ☐ yes ☐ no ☐ Met after Allowance<br>Verified and Acknowledged          Examiner's Signature          Initials | STATE OR COUNTRY TAIWAN | SHEETS DRAWING 3 | TOTAL CLAIMS 35 | INDEPENDENT CLAIMS 11 |
|---|---|---|---|---|

**ADDRESS**
SHELDON R MEYER
FLIESLER DUBB MEYER AND LOVEJOY
FOUR EMBARCADERO CENTER
SUITE 400
SAN FRANCISCO ,CA 941114156

**TITLE**
AUXILIARY LENSES FOR EYEGLASSES

| | | |
|---|---|---|
| **FILING FEE RECEIVED** 1264 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT No. _____ for following: | ☐ All Fees<br>☐ 1.16 Fees ( Filing )<br>☐ 1.17 Fees ( Processing Ext. of time )<br>☐ 1.18 Fees ( Issue )<br>☐ Other<br>☐ Credit |

| SERIAL NUMBER | FILING DATE | CLASS | GROUP ART UNIT | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/182,862 REISSUE | 10/21/98 | 351 | 2833 | CONT1013SRM/ |

**APPLICANT**

RICHARD CHAO, TAWAIN, TAIWAN.

**CONTINUING DOMESTIC DATA*****Yes*************
VERIFIED      THIS APPLN IS A RE OF   08/554,854 11/07/95 PAT    5,568,207

*HM*

**371 (NAT'L STAGE) DATA***None****************
VERIFIED

*HM*

**FOREIGN APPLICATIONS*** None *******
VERIFIED

*HM*

***** SMALL ENTITY *****

| Foreign Priority claimed ☐yes ☒no 35 USC 119 (a-d) conditions met ☐yes ☐no ☐Met after Allowance Verified and Acknowledged    Examiner's Initials    Initials | STATE OR COUNTRY TWX | SHEETS DRAWING 2 | TOTAL CLAIMS 35 | INDEPENDENT CLAIMS 11 |
|---|---|---|---|---|

**ADDRESS**

SHELDON R MEYER
FLIESLER DUBB MEYER AND LOVEJOY
FOUR EMBARCADERO CENTER
SUITE 400
SAN FRANCISCO CA 94111-4156

**TITLE**

AUXILIARY LENSES FOR EYEGLASSES

| FILING FEE RECEIVED $970 | FEES: Authority has been given in Paper No. _____ to charge/credit DEPOSIT ACCOUNT NO. _____ for the following: | ☐ All Fees ☐ 1.16 Fees (Filing) ☐ 1.17 Fees (Processing Ext. of time) ☐ 1.18 Fees (Issue) ☐ Other _____ ☐ Credit |
|---|---|---|

182862

# ABSTRACT

An eyeglass device includes a primary and an auxiliary spectacle frames for supporting lenses. The primary spectacle frame includes two legs pivotally coupled to two side extensions and includes two magnetic members secured in the rear and side portions. The auxiliary spectacle frame includes two legs engaged on the primary spectacle frame and each having a magnetic member for engaging with the magnetic members of the primary spectacle frame so as to secure the spectacle frames together and so as to prevent the auxiliary spectacle frame from moving downward relative to the primary spectacle frame.

# AUXILIARY LENSES FOR EYEGLASSES

## BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to auxiliary lenses, and more particularly to auxiliary lenses for eyeglasses.

2 Description of the Prior Art

A typical spectacle frame having an attachable one-piece slide-on rim is disclosed in U.S. Pat. No. 4,070,103 to Meeker. In Meeker, a spectacle frame includes a magnetic material secured to the peripheral portion thereof for facilitating attachment of the auxiliary lens rim cover to the spectacle frame. The lens rim cover also includes a magnetic strip for engaging with the magnetic material of the spectacle frame.

Another typical eyeglasses are disclosed in U.S Pat No 5,416.537 to Sadler and comprise first magnetic members secured to the temporal portions of the frames and second magnetic members secured to the corresponding temporal portions of the auxiliary lenses

In both of the eyeglasses, the auxiliary lenses are simply attached to the frames by magnetic materials and have no supporting members for preventing the auxiliary lenses from moving downward relative to the frames such that the auxiliary lenses may easily move downward relative to the frames and may be easily disengaged from the frames when the users conduct jogging or jumping exercises. In addition, the magnetic materials are embedded in the frames of the primary lenses and of the auxiliary lenses such that the frames should be excavated with four or more cavities for engaging with the magnetic members and such that the strength of the frames is greatly decreased.

The present invention has arisen to mitigate and/or obviate the afore-described disadvantages of the conventional spectacle frames

## SUMMARY OF THE INVENTION

The primary objective of the present invention is to provide auxiliary lenses which may be stably secured and supported on the frames

In accordance with one aspect of the invention, there is provided an eyeglass device comprising a primary spectacle frame for supporting primary lenses therein, the primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, the primary spectacle frame including two rear and side portions each having a projection secured thereto, the primary spectacle frame including an upper portion, a pair of first magnetic members secured in the projections respectively, an auxiliary spectacle frame for supporting auxiliary lenses therein, the auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with the upper portion of the primary spectacle frame, and a pair of second magnetic members secured to the arms respectively for engaging with the first magnetic members of the primary spectacle frame so as to secure the auxiliary spectacle frame to the primary spectacle frame. The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward relative to and so as to prevent the

2

auxiliary spectacle frame from being disengaged from the primary spectacle frame.

The projections and the first magnetic members are arranged lower than the upper portion of the primary spectacle frame, the second magnetic members are extended downward toward the projections for hooking on the primary spectacle frame so as to further secure the auxiliary spectacle frame to the primary spectacle frame. The auxiliary spectacle frame may be prevented from disengaging from the primary spectacle frame.

Further objectives and advantages of the present invention will become apparent from a careful reading of a detailed description provided hereinbelow, with appropriate reference to accompanying drawings.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIGS. 1 and 2 are front views of a spectacle frame and of auxiliary lenses in accordance with the present invention respectively;

FIGS 3 and 4 are top views of the spectacle frame and of the auxiliary lenses respectively,

FIG. 5 is a front view of the spectacle frame and the auxiliary lenses combination;

FIG 6 is a top view of the spectacle frame and the auxiliary lenses combination; and

FIG 7 is a cross sectional view taken along lines 7—7 of FIG 6,

<u>FIG. 8 illustrates another embodiment of a cross sectional view taken along lines 7-7 of FIG. 6.</u>

## DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to the drawings, and initially to FIGS. 1 to 4, an eyeglass device in accordance with the present invention comprises a primary spectacle frame 10 for supporting primary lenses therein. The primary spectacle frame 10 includes two side portions each having an extension 11 extended rearward therefrom for pivotally coupling leg 12 thereto The primary spectacle frame 10 includes two projections 13 secured to the rear and side portions thereof for supporting magnetic members 14 therein. An auxiliary spectacle frame 20 is provided for supporting the auxiliary lenses therein and includes two side portions each having an arm 21 extended rearward therefrom for extending over and for engaging with the upper portion of the primary spectacle frame 10 (FIGS. 5 and 6). The auxiliary spectacle frame 20 also includes two magnetic members 22 secured to the arms 21 thereof for engaging with the magnetic members 14 of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be stably supported on the primary spectacle frame 10, best shown in FIGS. 5 and 6.

It is to be noted that the arms 21 are engaged with and are supported on the upper portion of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be stably supported and secured to the primary spectacle frame 10. The auxiliary spectacle frame 20 will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises.

It is further to be noted that the projections 13 and the magnetic members 14 are secured to the primary spectacle frame 10 and the magnetic members 22 are secured in the arms 21. The magnetic members 14, 22 are not embedded in the frames 10, 20 such that the frames 10, 20 are not required to be formed with cavities therein and such that the strength of the frames 10, 20 will not be decreased.

3

Referring next to FIGS 7 <u>and 8</u>, it is preferable that the projec-

tions 13 and the magnetic members 14 are located slightly
lower than the upper portion of the primary spectacle frame
10, and the end portions of the arms 21 and/or the magnetic
members 22 are slightly extended downward toward the  5
projections 13 such that the arms 21 and the magnetic
members 22 may hook on the primary spectacle frame 10
and such that the auxiliary spectacle frame 20 may further be
stably supported and secured to the primary spectacle frame
10.  10

<u>In one embodiment, as shown in FIG. 7, magnetic members 14 and 22 are not in contact
with each other; magnetic members 14 and 22 are engaged with, but not supported on, each
other.  Instead, the arm 21 securing the magnetic member 22 is supported on an upper side
portion of the primary spectacle frame 10.  As shown in FIG. 7, the upper side portion can be an
upper part of the side portion securing the projection 13.</u>

Accordingly, the eyeglass device in accordance with the present invention includes an auxiliary spectacle frame that may be stably secured to the primary spectacle frame and will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises. In addition, the magnetic members are not embedded in the frames such that the strength of the frames will not be decreased.

Although this invention has been described with a certain degree of particularity, it is to be understood that the present disclosure has been made by way of example only and that numerous changes in the detailed construction and the combination and arrangement of parts may be resorted to without departing from the spirit and scope of the invention as hereinafter claimed.

I claim:

1. An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, said primary spectacle frame including two rear and side

4

portions each having a projection secured thereto, said
primary spectacle frame including an upper side por-
tion,

5   a pair of first magnetic members secured in said projec-
tions respectively,

an auxiliary spectacle frame for supporting auxiliary
lenses therein, said auxiliary spectacle frame including
two side portions each having an arm extended there-

from, with at least one arm for extending over [and for engaging with] said

upper side portion of said primary spectacle frame, and

a pair of second magnetic members secured to said arms
respectively for engaging with said first magnetic mem-
bers of said primary spectacle frame so as to secure said

15  auxiliary spectacle frame to said primary spectacle
frame,

at least one of said arms being [engaged with and] supported on said upper

side portion of said primary spectacle frame so as to
20  allow said auxiliary spectacle frame to be stably sup-
ported on said primary spectacle frame and so as to
prevent said auxiliary spectacle frame from moving
downward relative to said primary spectacle frame and
so as to prevent said auxiliary spectacle frame from
being disengaged from said primary spectacle frame .

25  2  An eyeglass device according to claim 1, wherein said
projections and said first magnetic members are arranged
lower than said upper side portion of said primary spectacle
frame, said second magnetic members are extended down-
ward toward said projections for hooking on said primary
30  spectacle frame so as to further secure said auxiliary spec-
tacle frame to said primary spectacle frame



3. An eyeglass device as recited in claim 1 wherein the first and the second magnetic members are magnets.

4. An eyeglass device as recited in claim 1 wherein:
the primary spectacle frame includes two upper side portions, each upper side portion for supporting one of said arms.

5. An eyeglass device comprising:
a primary spectacle frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto;
the primary spectacle frame including a projection extending from each said side portion;
each projection securing a first magnetic member; and
the primary spectacle frame including an upper portion; and

an auxiliary spectacle frame for supporting auxiliary lenses therein;
the auxiliary spectacle frame including two auxiliary side portions;
each said auxiliary side portion having an arm extended therefrom;
with at least one arm being configured to extend over the upper portion of the primary spectacle frame;
each arm securing a second magnetic member;
each second magnetic member configured to engage with one of the first magnetic members of the primary spectacle frame; and
the upper portion supports at least one arm of the auxiliary frame.

6. An eyeglass device as recited in Claim 5 wherein the upper portion is an upper part of one of the side portions.

7. An eyeglass device as recited in Claim 5 wherein the first and the second magnetic members are magnets.

8. An eyeglass device as recited in Claim 7 wherein the first magnetic members are not in contact with the second magnetic members.

9. An eyeglass device as recited in Claim 8 wherein the upper portion is an upper part of one of the side portions.

10. An eyeglass device comprising:
a primary spectacle frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto;
the primary spectacle frame including a projection extending from each said side portion;
each projection securing a first magnetic member; and
the primary spectacle frame including an upper means) and

Page 7

an auxiliary spectacle frame for supporting auxiliary lenses therein;
the auxiliary spectacle frame including two auxiliary side portions;
each said auxiliary side portion having an arm extended therefrom;
with at least one arm being configured to extend over the upper means
of the primary spectacle frame;
each arm securing a second magnetic member;
each second magnetic member configured to engage with one of the
first magnetic members of the primary spectacle frame; and
the upper means supports at least one arm of the auxiliary frame.

11.   An eyeglass device as recited in claim 10 wherein:
the first and the second magnetic members are magnets; and
the upper means is an upper part of one of the side portions.

12.   An eyeglass device comprising:

a primary frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally
coupling a leg thereto; and
the primary spectacle frame including two first magnets, each secured
to one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for
disposing in front of the primary frame;
the auxiliary spectacle frame including two auxiliary side portions; and
the auxiliary frame including two second magnets, each secured to one
of the auxiliary side portions, for engaging on a horizontal position with one of
the first magnets so as to secure the auxiliary frame to the primary frame.

13.   An eyeglass device as recited in Claim 12 wherein:

the primary spectacle frame includes a projection extending from each
of its side portion;
each projection secures one of the first magnets;
the primary spectacle frame includes an upper portion;
each said auxiliary side portion has an arm extended therefrom;
at least one arm is configured to extend over the upper portion of the
primary spectacle frame;
each arm secures one of the second magnets; and
the upper portion is an upper part of one of the side portions.

14.   A primary eyeglass device adapted to stably support an auxiliary
spectacle frame, which includes two auxiliary side portions, each auxiliary side
portion having an arm extended therefrom, and each arm securing a first
magnetic member,
the primary eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two primary side portions;

each side portion having an extension extended therefrom for pivotally coupling a leg thereto;

the primary spectacle frame including a projection extending from each said side portion;

each projection securing a second magnetic member;

the primary spectacle frame including an upper portion; and

when the primary frame is supporting the auxiliary frame,

each second magnetic member engages with one of the first magnetic members;

the upper portion being extended over by at least one arm of the auxiliary frame; and

the upper portion supports at least one arm of the auxiliary frame.

15. A primary eyeglass device as recited in Claim 14 wherein the upper portion is an upper part of one of the primary side portions.

16. An auxiliary eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein;

the auxiliary spectacle frame including two auxiliary side portions;

each auxiliary side portion having an arm extended therefrom; and

each arm securing a first magnet;

the auxiliary spectacle frame being adapted to be stably supported on a primary spectacle frame, which includes two primary side portions, each side portion securing a second magnetic member, the primary spectacle frame also including an upper portion; and

when the auxiliary frame is supported by the primary frame,

each first magnet engages with one of the second magnetic members; and

at least one arm of the auxiliary frame extending over the upper portion.

17. An auxiliary eyeglass device as recited in Claim 16 wherein when the auxiliary frame is supported by the primary frame, at least one arm of the auxiliary frame is supported by the upper portion of the primary frame, which is an upper part of one of the primary side portions.

18. An auxiliary eyeglass device adapted to be stably supported on a primary spectacle frame, which includes two primary side portions, each said side portion securing a first magnetic member, the primary spectacle frame also including an upper portion, the auxiliary eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein;

the auxiliary spectacle frame including two auxiliary side portions;

each auxiliary side portion having an arm extended therefrom;

each arm securing a second magnet; and

when the auxiliary frame is supported by the primary frame,

each second magnet engages with one of the first magnetic members of the primary spectacle frame; and
at least one arm of the auxiliary frame extending over the upper portion.

19.    An auxiliary eyeglass device as recited in Claim 18 wherein when the auxiliary frame is supported by the primary frame, at least one arm of the auxiliary frame is supported by the upper portion of the primary frame, which is an upper part of one of the primary side portions.

20.    A primary eyeglass device comprising:
a primary spectacle frame for supporting primary lenses therein;
the primary spectacle frame including two primary side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto;
the primary spectacle frame including a projection extending from each said side portion;
each projection securing a first magnet; and
the primary spectacle frame including an upper portion;

the primary frame adapted to stably support an auxiliary spectacle frame, which includes two auxiliary side portions each securing a second magnetic member; and
when the primary spectacle frame is supporting the auxiliary spectacle frame,
the upper portion is extended over by at least one of the auxiliary side portions;
the upper portion supports at least one of the auxiliary side portions; and
each first magnet engages with one of the second magnetic members.

21.    A primary eyeglass device as recited in Claim 20 wherein the upper portion is an upper part of one of the primary side portions.

22.    A primary eyeglass device adapted to stably support an auxiliary spectacle frame, the auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame, the auxiliary spectacle frame including two auxiliary side portions, each auxiliary side portion having an arm extended therefrom, and each arm securing a first magnet,
the primary eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto;
the primary spectacle frame including a projection extending from each said side portion;
each projection securing a second magnet; and

when the primary frame is supporting the auxiliary frame, each second magnet is coupled to, but not in contact with, one of the first magnets on a horizontal position so as to secure the auxiliary frame to the primary frame.

23. An eyeglass device as recited in Claim 4 wherein each upper side portion is an upper part of one of the side portions of the primary spectacle frame.

24. An eyeglass device as recited in Claim 23 wherein the magnetic members are magnets.

25. An eyeglass device as recited in Claim 1 wherein at least the end portion of one arm extends downward toward one of the projections for hooking on the primary spectacle frame so as to further stably support and secure the auxiliary spectacle frame to the primary spectacle frame.

26. An eyeglass device as recited in Claim 5 wherein at least the end portion of one arm extends downward toward one of the projections for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

27. An eyeglass device as recited in Claim 10 wherein at least the end portion of one arm extends downward toward one of the projections for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

28. An eyeglass device as recited in Claim 12 wherein at least the end portion of one auxiliary side portion extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

29. An auxiliary eyeglass device as recited in Claim 16 wherein when the auxiliary frame is supported by the primary frame, at least the end portion of one arm extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame can be further stably supported and secured to the primary spectacle frame.

30. An auxiliary eyeglass device as recited in Claim 18 wherein when the auxiliary frame is supported by the primary frame, at least the end portion of one arm extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame can be further stably supported and secured to the primary spectacle frame.

31. An eyeglass device as recited in claim 25 wherein the first and the second magnetic members are magnets.

32. An eyeglass device as recited in claim 26 wherein the first and the second magnetic members are magnets.

33. An eyeglass device as recited in claim 27 wherein the first and the second magnetic members are magnets.

34. An eyeglass device comprising:

a primary frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and
the primary spectacle frame including two first magnets, each secured to one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;
the auxiliary spectacle frame including two auxiliary side portions; and
the auxiliary frame including two second magnets, each secured to one of the auxiliary side portions, for coupling on a horizontal position with one of the first magnets so as to secure the auxiliary frame to the primary frame.

35. An eyeglass device comprising:

a primary frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and
the primary spectacle frame including two first magnetic members, each secured to one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;
the auxiliary spectacle frame including two auxiliary side portions; and
the auxiliary frame including two second magnetic members, each secured to one of the auxiliary side portions, for coupling on a horizontal position, but not in contact, with one of the first magnets so as to secure the auxiliary frame to the primary frame.

Page 12

OIPE

OCT 21 1998

PATENT & TRADEMARK OFFICE

*The*
*United*
*States*
*of*
*America*

### The Commissioner of Patents and Trademarks

*Has received an application for a patent for a new and useful invention. The title and description of the invention are enclosed. The requirements of law have been complied with, and it has been determined that a patent on the invention shall be granted under the law.*

*Therefore, this*

### United States Patent

*Grants to the person(s) having title to this patent the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States of America or importing the invention into the United States of America for the term set forth below, subject to the payment of maintenance fees as provided by law.*

*If this application was filed prior to June 8, 1995, the term of this patent is the longer of seventeen years from the date of grant of this patent or twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*If this application was filed on or after June 8, 1995, the term of this patent is twenty years from the earliest effective U.S. filing date of the application, subject to any statutory extension.*

*Bruce Lehman*

Commissioner of Patents and Trademarks

*Marjorie V. Turner*

Attest

US005568207A

# United States Patent [19]

**Chao**

[11]   Patent Number:   **5,568,207**

[45]   Date of Patent:   **Oct. 22, 1996**

[54]   **AUXILIARY LENSES FOR EYEGLASSES**

[76]   Inventor:   **Richard Chao**, No. 43-4, Yi Hsin Tsuen, Shui San Hsiang, Chia Yi Hsien, Taiwan

[21]   Appl. No.: **554,854**

[22]   Filed:   **Nov. 7, 1995**

[51]   Int. Cl.⁶ .......................... G02C 7/08; G02C 9/00
[52]   U.S. Cl. ..................................... 351/57; 351/47
[58]   Field of Search .......................... 351/41, 44, 47, 351/57, 158; 2/441, 443

[56]   **References Cited**

### U.S. PATENT DOCUMENTS

5,416,537   5/1995   Sadler ..................................... 351/47

*Primary Examiner*—Huy Mai
*Attorney, Agent, or Firm*—Peterson, Wicks, Nemer & Kamrath, P.A.

[57]                    **ABSTRACT**

An eyeglass device includes a primary and an auxiliary spectacle frames for supporting lenses. The primary spectacle frame includes two legs pivotally coupled to two side extensions and includes two magnetic members secured in the rear and side portions. The auxiliary spectacle frame includes two legs engaged on the primary spectacle frame and each having a magnetic member for engaging with the magnetic members of the primary spectacle frame so as to secure the spectacle frames together and so as to prevent the auxiliary spectacle frame from moving downward relative to the primary spectacle frame.

**2 Claims, 2 Drawing Sheets**






# FIG.5



# FIG.6



# FIG.7





FIG. 8

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue Application ) REISSUE PATENT APPLICATION

Inventor:     Richard Chao )

Reissue Application No.: Unknown )                  Art Unit:      Unknown

Filed:     Herewith )                  Examiner:     Unknown

Patent No.: 5,568,207 )

Title:     AUXILIARY LENSES FOR )
           EYEGLASSES )

---

**CERTIFICATE OF MAILING BY "EXPRESS MAIL" UNDER 37 C.F.R. §1.10**

"Express Mail" mailing label number:TB687080988US
Date of Mailing: October 21, 1998.

I hereby certify that this correspondence is being deposited with the United States Postal Service, utilizing the "Express Mail Post Office to Addressee" service addressed to Assistant Commissioner for Patents, Washington, DC 20231 and mailed on the above Date of Mailing with the above "Express Mail" mailing label number.

_____ (Signature)
Peter P. Tong
Signature Date: October 21, 1998.

## REISSUE APPLICATION DECLARATION OF RICHARD CHAO AND POWER OF ATTORNEY

Box DAC
Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

     I, Richard Chao, hereby declare that:

     1.     I am the sole inventor of the subject matter described and claimed in the attached U.S. Patent No. 5,568,207, issued on October 22, 1996, for an invention entitled, "Auxiliary Lenses for Eyeglasses" (the "Patent"), for which invention I solicit a reissue patent.

- 1 -

2.     I am a citizen of Taiwan, R.O.C., and my address is No. 43-4, Yi Hsin Tsuen, Shui San Hsiang, Chia Yi Hsien, Taiwan.

3.     I have reviewed and understand the contents of the above identified specification, including the claims.

4.     I acknowledge the duty to disclose information that is material to the examination of this application (the "Reissue Application"), namely, information where there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the Reissue Application to issue as a patent. In compliance with this duty, there is attached an information disclosure statement in accordance with 37 CFR 1.98.

5.     I believe the Patent to be partly inoperative because of errors without any deceptive intent on my part.

The statement below specifies the errors relied upon, and how they arose (37 CFR 1.175(a)(5)), namely, why the Patent is believed to be partly inoperative (37 CFR 1.175(a)(1)); and more distinctly, the excess or insufficiency in the claims that make the patent partly inoperative "by reason of the patentee claiming less than he had a right to claim in the patent" (37 CFR 1.175(a)(3)).

As hereinafter more fully explained, I believe that through error, without any deceptive intent, subject matter was disclosed in the figures of the Patent, but not described in text; and vice versa. Though the Patent was not appropriately claimed, the disclosed figures and text show my intent to claim. The circumstances giving rise to the aforesaid error, to the best of my information and belief, are set forth below.

6.     At the time the application for the Patent was being prepared (the "Original Application"), I requested that the Original Application protect my magnetic frames invention. I provided my Taiwan patent counsel with sketches and descriptions, and requested the Original Application preparation move forward. My Taiwan patent counsel ensured me that my invention would be protected. I was not versed in patent application and patent law. As a result, I posited the utmost trust in my Taiwan patent counsel to ensure that my invention would be safeguarded.

7.     When the Original Application was completed, I reviewed it and understood the disclosure with the claims. I relied upon my Taiwan patent counsel's assurances that my invention would be protected in the market place based on the Original Application as prepared.

8.     While I understood the disclosure and the claims, I was not really able to thoroughly understand US patent law and procedure. For example, I believed that as long as an embodiment was in the disclosure, such as in the figures or the detailed description of the preferred embodiment, of the Patent, I would have got protection for it. At all times during the preparation and prosecution of the Original Application, I was assured by my Taiwan patent counsel that the Original Application would protect my invention.

9.     The Patent was allowed and issued on October 22, 1996.

- 2 -

10.    Recently, my Patent has been opposed by third parties. Specifically, as shown in the attached German opposition (Appendix I), Pentax Vision Co. (hereinafter "Pentax") opposed to the grant of the Patent's corresponding German patent. Also, the U.S. Patent and Trademark Office has notified me that an interference has been declared on my Patent. A copy of the declaration is enclosed (Appendix II). Both of these events have caused me to be concerned that the Patent may be partly inoperative by reason of my inappropriate claiming, including claiming less than what I have a right to claim.

11.    Based on further investigation, I was advised that my Taiwan patent counsel failed to appreciate the full scope and breadth of the invention. I should both broaden and narrow my claims.

12.    I was advised, for example, that (1) I should include as dependent claims magnetic members being magnets; (2) I should include as dependent claims two upper side portions, and the gap between the first magnetic members and the second magnetic members; (3) I should claim magnetic members engaging on a horizontal position; (4) I should claim primary spectacle frames without auxiliary frames; (5) I should claim auxiliary frames without primary spectacle frames; (6) I should include as dependent claims the end portion of an arm extending downward for hooking on the primary spectacle frame; and (7) I should broaden the issued Claim 1.

13.    I was also advised that I should (a) Describe one embodiment disclosed in FIG. 7 of the Patent, for example, the magnetic members 14 and 22 not being in contact with each other, the arm 21 being supported on an upper side portion of the primary spectacle frame 10, and the upper side portion being an upper part of the side portion securing the projection 13; and (b) Include a new FIG. 8 illustrating one embodiment of "the end portions of the arms 21 ... extended downward toward the projections 13 such that the arms 21 ... may hook on the primary spectacle frame 10..." See Col. 3, lines 4-7 of the specification.

14.    I was further advised of the ability to seek reissue of my invention in the Patent in order to correct the errors.

15.    Failure to describe embodiments shown in the figure and the text, and to suggest broader and narrower claim language were errors. They resulted from the fact that I did not understand the procedure of patent prosecution and the law of patent. The errors occurred without any deceptive intent on my part, nor do I believe that there was any deceptive intent on the part of any other person.

16.    I also believe that the invention as claimed in this Reissue Application was disclosed in the Patent, and no new matter has been introduced in this Reissue Application.

17.    I believe that this Reissue Application seeks to correct the above-described errors through the following changes:

Add a new FIG. 8, as attached.

A new informal FIG. 8 is submitted herewith. Upon the acceptance of the figure, a formal FIG. 8 will be submitted.

- 3 -

At column 2, line 30, insert a new paragraph as follows:

--FIG. 8 illustrates another embodiment of a cross sectional view taken along lines 7-7 of FIG. 6.--

At column 3, line 10, insert at the end of the line the following:

--In one embodiment, as shown in FIG. 7, magnetic members 14 and 22 are not in contact with each other; magnetic members 14 and 22 are engaged with, but not supported on, each other. Instead, the arm 21 securing the magnetic member 22 is supported on an upper side portion of the primary spectacle frame 10. As shown in FIG. 7, the upper side portion can be an upper part of the side portion securing the projection 13.--

Amend Claim 1 and Add new claims 3-35 as follows:

1. **(Once Amended)** An eyeglass device comprising:
   a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, said primary spectacle frame including two rear and side portions each having a projection secured thereto, said primary spectacle frame including an upper side portion,  -
   a pair of first magnetic members secured in said projections respectively,
   an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including two side portions each having an arm extended therefrom, with at least one arm for extending over [and for engaging with] said upper side portion of said primary spectacle frame, and
   a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame,
   at least one of said arms being [engaged with and] supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame and so as to prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame and so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

3. **(New)**     An eyeglass device as recited in claim 1 wherein the first and the second magnetic members are magnets.

4. **(New)**     An eyeglass device as recited in claim 1 wherein:
   the primary spectacle frame includes two upper side portions, each upper side portion for supporting one of said arms.

5. **(New)**     An eyeglass device comprising:
   a primary spectacle frame for supporting primary lenses therein;
   the primary spectacle frame including two side portions;

- 4 -

Attorney Docket No.: CONT1013REI1SRM/PPT
ppt/cont/1013-1.001

207.001:100396

each side portion having an extension extended therefrom for pivotally coupling a leg thereto;

the primary spectacle frame including a projection extending from each said side portion;

each projection securing a first magnetic member; and

the primary spectacle frame including an upper portion; and

an auxiliary spectacle frame for supporting auxiliary lenses therein;

the auxiliary spectacle frame including two auxiliary side portions;

each said auxiliary side portion having an arm extended therefrom;

with at least one arm being configured to extend over the upper portion of the primary spectacle frame;

each arm securing a second magnetic member;

each second magnetic member configured to engage with one of the first magnetic members of the primary spectacle frame; and

the upper portion supports at least one arm of the auxiliary frame.

6. **(New)**     An eyeglass device as recited in Claim 5 wherein the upper portion is an upper part of one of the side portions.

7. **(New)**     An eyeglass device as recited in Claim 5 wherein the first and the second magnetic members are magnets.

8. **(New)**     An eyeglass device as recited in Claim 7 wherein the first magnetic members are not in contact with the second magnetic members.

9. **(New)**     An eyeglass device as recited in Claim 8 wherein the upper portion is an upper part of one of the side portions.

10. **(New)**     An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two side portions;

each side portion having an extension extended therefrom for pivotally coupling a leg thereto;

the primary spectacle frame including a projection extending from each said side portion;

each projection securing a first magnetic member; and

the primary spectacle frame including an upper means; and

an auxiliary spectacle frame for supporting auxiliary lenses therein;

the auxiliary spectacle frame including two auxiliary side portions;

each said auxiliary side portion having an arm extended therefrom;

with at least one arm being configured to extend over the upper means of the primary spectacle frame;

each arm securing a second magnetic member;

each second magnetic member configured to engage with one of the first magnetic members of the primary spectacle frame; and

- 5 -

the upper means supports at least one arm of the auxiliary frame.

11. **(New)**      An eyeglass device as recited in claim 10 wherein:
the first and the second magnetic members are magnets; and
the upper means is an upper part of one of the side portions.

12. **(New)**      An eyeglass device comprising:

a primary frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for  pivotally
coupling a leg thereto; and
the primary spectacle frame including two first magnets, each secured to
one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for disposing
in front of the primary frame;
the auxiliary spectacle frame including two auxiliary side portions; and
the auxiliary frame including two second magnets, each secured to one of
the auxiliary side portions, for engaging on a horizontal position with one of the
first magnets so as to secure the auxiliary frame to the primary frame.

13. **(New)**      An eyeglass device as recited in Claim 12 wherein:

the primary spectacle frame includes a projection extending from each of
its side portion;
each projection secures one of the first magnets;
the primary spectacle frame includes an upper portion;
each said auxiliary side portion has an arm extended therefrom;
at least one arm is configured to extend over the upper portion of the
primary spectacle frame;
each arm secures one of the second magnets; and
the upper portion is an upper part of one of the side portions.

14. **(New)**      A primary eyeglass device adapted to stably support an auxiliary
spectacle frame, which includes two auxiliary side portions, each auxiliary side
portion having an arm extended therefrom, and each arm securing a first magnetic
member,
the primary eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;
the primary spectacle frame including two primary side portions;
each side portion having an extension extended therefrom for pivotally
coupling a leg thereto;
the primary spectacle frame including a projection extending from each
said side portion;
each projection securing a second magnetic member;

- 6 -

the primary spectacle frame including an upper portion; and
when the primary frame is supporting the auxiliary frame,

> each second magnetic member engages with one of the first magnetic members;

> the upper portion being extended over by at least one arm of the auxiliary frame; and

> the upper portion supports at least one arm of the auxiliary frame.

15. **(New)**     A primary eyeglass device as recited in Claim 14 wherein the upper portion is an upper part of one of the primary side portions.

16. **(New)**     An auxiliary eyeglass device comprising:
an auxiliary spectacle frame for supporting auxiliary lenses therein;
the auxiliary spectacle frame including two auxiliary side portions;
each auxiliary side portion having an arm extended therefrom; and
each arm securing a first magnet;
the auxiliary spectacle frame being adapted to be stably supported on a primary spectacle frame, which includes two primary side portions, each side portion securing a second magnetic member, the primary spectacle frame also including an upper portion; and

> when the auxiliary frame is supported by the primary frame,

> each first magnet engages with one of the second magnetic members; and

> at least one arm of the auxiliary frame extending over the upper portion.

17. **(New)**     An auxiliary eyeglass device as recited in Claim 16 wherein when the auxiliary frame is supported by the primary frame, at least one arm of the auxiliary frame is supported by the upper portion of the primary frame, which is an upper part of one of the primary side portions.

18. **(New)**     An auxiliary eyeglass device adapted to be stably supported on a primary spectacle frame, which includes two primary side portions, each said side portion securing a first magnetic member, the primary spectacle frame also including an upper portion, the auxiliary eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein;
the auxiliary spectacle frame including two auxiliary side portions;
each auxiliary side portion having an arm extended therefrom;
each arm securing a second magnet; and
when the auxiliary frame is supported by the primary frame,

> each second magnet engages with one of the first magnetic members of the primary spectacle frame; and

> at least one arm of the auxiliary frame extending over the upper portion.

- 7 -

19. **(New)**      An auxiliary eyeglass device as recited in Claim 18 wherein when the auxiliary frame is supported by the primary frame, at least one arm of the auxiliary frame is supported by the upper portion of the primary frame, which is an upper part of one of the primary side portions.

20. **(New)**      A primary eyeglass device comprising:
        a primary spectacle frame for supporting primary lenses therein;
        the primary spectacle frame including two primary side portions;
        each side portion having an extension extended therefrom for pivotally coupling a leg thereto;
        the primary spectacle frame including a projection extending from each said side portion;
        each projection securing a first magnet; and
        the primary spectacle frame including an upper portion;

        the primary frame adapted to stably support an auxiliary spectacle frame, which includes two auxiliary side portions each securing a second magnetic member; and
        when the primary spectacle frame is supporting the auxiliary spectacle frame,
                the upper portion is extended over by at least one of the auxiliary side portions;
                the upper portion supports at least one of the auxiliary side portions; and
                        each first magnet engages with one of the second magnetic members.

21. **(New)**      A primary eyeglass device as recited in Claim 20 wherein the upper portion is an upper part of one of the primary side portions.

22. **(New)**      A primary eyeglass device adapted to stably support an auxiliary spectacle frame, the auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame, the auxiliary spectacle frame including two auxiliary side portions, each auxiliary side portion having an arm extended therefrom, and each arm securing a first magnet,
        the primary eyeglass device comprising:

        a primary spectacle frame for supporting primary lenses therein;
        the primary spectacle frame including two side portions;
        each side portion having an extension extended therefrom for pivotally coupling a leg thereto;
        the primary spectacle frame including a projection extending from each said side portion;
        each projection securing a second magnet; and
        when the primary frame is supporting the auxiliary frame, each second magnet is coupled to, but not in contact with, one of the first magnets on a horizontal position so as to secure the auxiliary frame to the primary frame.

- 8 -

Attorney Docket No.: CONT1013REI1SRM/PPT
ppt/cont/1013-1.001

207.001:100396

23. **(New)** An eyeglass device as recited in Claim 4 wherein each upper side portion is an upper part of one of the side portions of the primary spectacle frame.

24. **(New)** An eyeglass device as recited in Claim 23 wherein the magnetic members are magnets.

25. **(New)** An eyeglass device as recited in Claim 1 wherein at least the end portion of one arm extends downward toward one of the projections for hooking on the primary spectacle frame so as to further stably support and secure the auxiliary spectacle frame to the primary spectacle frame.

26. **(New)** An eyeglass device as recited in Claim 5 wherein at least the end portion of one arm extends downward toward one of the projections for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

27. **(New)** An eyeglass device as recited in Claim 10 wherein at least the end portion of one arm extends downward toward one of the projections for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

28. **(New)** An eyeglass device as recited in Claim 12 wherein at least the end portion of one auxiliary side portion extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

29. **(New)** An auxiliary eyeglass device as recited in Claim 16 wherein when the auxiliary frame is supported by the primary frame, at least the end portion of one arm extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame can be further stably supported and secured to the primary spectacle frame.

30. **(New)** An auxiliary eyeglass device as recited in Claim 18 wherein when the auxiliary frame is supported by the primary frame, at least the end portion of one arm extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame can be further stably supported and secured to the primary spectacle frame.

31. **(New)** An eyeglass device as recited in claim 25 wherein the first and the second magnetic members are magnets.

32. **(New)** An eyeglass device as recited in claim 26 wherein the first and the second magnetic members are magnets.

- 9 -

33. **(New)** An eyeglass device as recited in claim 27 wherein the first and the second magnetic members are magnets.

34. **(New)** An eyeglass device comprising:

a primary frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and
the primary spectacle frame including two first magnets, each secured to one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;
the auxiliary spectacle frame including two auxiliary side portions; and
the auxiliary frame including two second magnets, each secured to one of the auxiliary side portions, for coupling on a horizontal position with one of the first magnets so as to secure the auxiliary frame to the primary frame.

35. **(New)** An eyeglass device comprising:

a primary frame for supporting primary lenses therein;
the primary spectacle frame including two side portions;
each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and
the primary spectacle frame including two first magnetic members, each secured to one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;
the auxiliary spectacle frame including two auxiliary side portions; and
the auxiliary frame including two second magnetic members, each secured to one of the auxiliary side portions, for coupling on a horizontal position, but not in contact, with one of the first magnets so as to secure the auxiliary frame to the primary frame.

18. As a result of these corrections, the amended claim, the new claims and the amended specification more closely represent my invention. The specification and the claims in the Patent caused the Patent to be partly inoperative. My invention is better represented by the amended specification, the amended claim, and the new claims for reissue.

- 10 -

## POWER OF ATTORNEY

As the sole named inventor, I hereby appoint the following attorneys to prosecute and transact all business in the U.S. Patent and Trademark Office regarding this Reissue Application: Sheldon R. Meyer, Reg. No. 27,660, and Peter P. Tong, Reg. No. 35,757.

Please address all correspondence to:
Sheldon R. Meyer
FLIESLER, DUBB, MEYER & LOVEJOY LLP
Four Embarcadero Center, Suite 400
San Francisco, CA 94111-4156

Please direct all telephone calls to:
Peter P. Tong
(415) 362-3800

I hereby declare that I am authorized to sign for Contour and that all statements made herein of my knowledge are true, and that all statements made on information and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements, and the like so made, are punishable by fine or imprisonment, or both, under Section 1001, Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of the Reissue Application and any patent issuing thereon.

Full Name:   Richard Chao

Signature: _____   Dated: 10-18-98

- 11 -



OIPE JC57
OCT 21 1998
PATENT & TRADEMARK OFFICE

T-540 U.S. PTO
09/182862
10/21/98

| REISSUE APPLICATION BY THE ASSIGNEE, OFFER TO SURRENDER PATENT | Docket Number (Optional) CONT1013 |
|---|---|

This is part of the application for a reissue patent based on the original patent identified below.

Name of Patentee(s).   Richard Chao

| Patent Number | 5,568,207 | Date Patent Issued | October 22, 1996 |
|---|---|---|---|

Title of Invention   AUXILIARY LENSES FOR EYEGLASSES

Contour Optik, Inc. _____ is the assignee of the entire interest in the original patent.

I offer to surrender the original patent.

**[XX]** **The reel and frame number of the assignment being:**

**Reel 8334, frames 0766-7**

I am authorized to act on behalf of the assignee.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U S.C. 1001 and that such willful false statements may jeopardize the validity of the application, any patent issued thereon, or any patent to which this declaration is directed.

Name of assignee   Contour Optik, Inc.

| Signature of person signing for assignee | Date |
|---|---|
| *[signature]* | May 28 1998 |

Typed or printed name and title of person signing for assignee

DAVID Y. CHAO ⇒ DIRECTOR OF INTERNATIONAL SALES

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue Application )   REISSUE PATENT APPLICATION

Inventor:      Richard Chao )

Reissue Application No.: Unknown )      Art Unit:      Unknown

Filed:         Herewith )      Examiner:   Unknown

Patent No.: 5,568,207 )

Title:         AUXILIARY LENSES FOR )
               EYEGLASSES )

### CERTIFICATE OF MAILING BY "EXPRESS MAIL" UNDER 37 C.F.R. §1.10

"Express Mail" mailing label number:TB 687080988US
Date of Mailing: October 21, 1998.

I hereby certify that this correspondence is being deposited with the United States Postal Service, utilizing the "Express Mail Post Office to Addressee" service addressed to Assistant Commissioner for Patents, Washington, DC 20231 and mailed on the above Date of Mailing with the above "Express Mail" mailing label number.

_____ (Signature)
Peter P. Tong
Signature Date: October 21, 1998.

### REISSUE APPLICATION TRANSMITTAL LETTER

BOX DAC
Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Transmitted herewith is the application for reissue of U.S. Patent No. 5,568,207, issued on October 22, 1996.  Inventor is Richard Chao.  The title is AUXILIARY LENSES FOR EYEGLASSES.

Enclosed with this communication in connection with the above-identified reissue application are the following:

- 1 -

Attorney Docket No.:CONT1013SRM/PPT
/ppt/cont1013.006

201.001:120197
10/21/98-18:57

___     A Statement pursuant to 37 C.F.R. §1.27 to establish small entity status under 37 C.F.R. §1.9(f).

_x_     An Information Disclosure Statement pursuant to 37 C.F.R. §1.56.

_x_     Specification, claims and drawings: 4 pages of specification; 9 pages of claim(s); 1 page of abstract; 3 sheet(s) of drawing(s).

_X_     No changes in the drawings, upon which the original patent was issued, are to be made. Therefore, in accordance with 37 CFR 1.174, please find attached, in the size required for original drawings:

      ___    a copy of the printed drawings of the patent.

      _X_    a photoprint of the original drawings.

_X_     Declaration and power of attorney.

___     An Assignment

___     A certified copy of a priority application.

_X_     Offer to surrender the original letters patent in accordance with 37 CFR 1.178 is attached.

      ___    Offer to surrender is by the inventor,

      _x_    Offer to surrender is by the assignee of the entire interest,
           _x_ along with assent of assignee.

___     Letters patent

      ___    Original letters patent are attached.
      ___    Declaration that original letters patent lost or inaccessible.

_X_     Title. In accordance with 37 CFR 1.171, this application for reissue is accompanied by

      ___    a certified copy of an abstract of title

      or
      _X_    an order for an abstract of title.

- 2 -

The fee associated with this communication has been calculated as shown below:

_____ Small entity status of this application under 37 C.F.R. §1.9 and §1.27 has been established.

__X__ A fee of $240.00 is due for the submission of the accompanying Information Disclosure Statement.

The filing fee pursuant to 37 C.F.R. §1.16 is determined as follows:

| | No. Filed | No. Extra | Rate Small Entity/ Other Than Small Entity | | |
|---|---|---|---|---|---|
| Basic Fee | | | $395.00 $790.00 | = | $395 |
| Total Claims __35__ - 20 | = | __5__ * X | $ 11.00 $ 22.00 | = | $ 55 |
| Independent Claims __11__ - 3 = | __8__ * | X | $ 41.00 $ 82.00 | = | $328 |
| First Presentation of Multiple Dependent Claim(s) ___ | | | $135.00 $270.00 | = | $ |
| | | | Total | = | $778 |

*If the difference is less than zero, enter "0".

Additional Fee = $ 265

The total fee required with this communication is $ 1,043 and is to be paid as follows:

__x__ Please charge Deposit Account No. 06-1325 in the amount of $ 137.00 . A duplicate copy of this authorization is enclosed.

__X__ A check in the amount of $ 906 is enclosed.

- 3 -

Attorney Docket No.:CONT1013SRM/PPT
/ppt/cont1013.006

201.001:120197
10/21/98-18:57

__X__   The Commissioner is hereby authorized to charge underpayment of any additional
fees (including those listed below) or credit any overpayment associated with this
communication to Deposit Account No. 06-1325.   A duplicate copy of this
authorization is enclosed.

   __X__   Any additional filing fees under 37 C.F.R. §1.16.

   __X__   Any patent issue application processing fees under 37 C.F.R. §1.17.

This application is filed pursuant to 37 C.F.R. §1.53(b) in the name of the above-
identified Inventor(s).

Please direct all correspondence concerning the above-identified application to the
following address:

Sheldon R. Meyer, Esq.
**FLIESLER, DUBB, MEYER & LOVEJOY LLP**
Four Embarcadero Center, Suite 400
San Francisco, California 94111-4156
Telephone: (415) 362-3800

Respectfully submitted,

Date: __October 21, 1998__                By: _____
                                              Peter P. Tong
                                              Reg. No.  35,757

**FLIESLER, DUBB, MEYER & LOVEJOY LLP**
Four Embarcadero Center, Suite 400
San Francisco, California 94111-4156
Telephone: (415) 362-3800

- 4 -

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**

| | |
|---|---|
| Reissue Application | ) **REISSUE PATENT APPLICATION** |
| | ) |
| Inventor:      Richard Chao | ) |
| | )      Art Unit:      Unknown |
| Reissue Application No.: Unknown | ) |
| | )      Examiner:      Unknown |
| Filed:          Herewith | ) |
| | ) |
| Patent No.: 5,568,207 | ) |
| | ) |
| Title:          AUXILIARY LENSES FOR | ) |
|                 EYEGLASSES | ) |
| | ) |

# 2

<u>**CERTIFICATE OF MAILING BY "EXPRESS MAIL" UNDER 37 C.F.R. §1.10**</u>

"Express Mail" mailing label number:TB 687080988US
Date of Mailing: October 21, 1998.

     I hereby certify that this correspondence is being deposited with the United States Postal Service, utilizing the "Express Mail Post Office to Addressee" service addressed to **Assistant Commissioner for Patents, Washington, DC 20231** and mailed on the above Date of Mailing with the above "Express Mail" mailing label number.

_____(Signature)
Peter P. Tong
Signature Date: October 21, 1998..

<u>**INFORMATION DISCLOSURE STATEMENT UNDER 37 C.F.R. §1.56**</u>

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

     It is requested that the information identified in this statement be considered by the Examiner and made of record in the above-identified application.  This statement is not intended to represent that a search has been made or that the information cited in the statement is, or is considered to be, material to patentability as defined in 37 C.F.R. §1.56.

*Enclosed with this statement are the following:*

  X    Form PTO-1449. The Examiner is requested to initial the form and return it to the undersigned in accordance with M.P.E.P. §609.

  X    A copy of each cited document as required by 37 C.F.R. §1.98.  Copies are not submitted of U.S. applications, 37 C.F.R. §1.98(a)(2)(iii), and copies are not

- 1 -

submitted of documents already cited or submitted in a parent application from which benefit under 35 U.S.C. §120 is claimed, 37 C.F.R. §1.98(d). If any of the cited/submitted documents is in a foreign language, a concise explanation of relevancy is provided pursuant to 37 C.F.R. §1.98(a)(3). For foreign language documents cited in a search report by a foreign patent office, the requirement for a concise explanation of relevance is satisfied by the submission herewith of an English language version of the search report. 57 F.R. 2021 (1/17/92). If a written English-language translation of a non-English language document, or portion thereof, is within the possession, custody or control of, or is readily available to any individual designated in §1.56(c), a copy of the translation accompanies this statement. 37 C.F.R. §1.98(c).

***This statement should be considered because:***

____   This statement qualifies under 37 C.F.R. §1.97, <u>subsection (b)</u> because:

        (1)   It is being filed within 3 months of the application filing date;
               -- OR --

        (2)   It is being filed within 3 months of entry of a national stage;
               -- OR --

        (3)   It is being filed before the mailing date of the first Office action on the merits,

whichever occurs last.

__X__   Although it may not qualify under subsection (b), this statement qualifies under 37 C.F.R. §1.97, <u>subsection (c)</u> because:

        (1)   It is being filed before the mailing date of a FINAL Office Action and before a Notice of Allowance (whichever occurs first)

               -- AND *(check at least one of the following)* --

  __X__  (1)   It is accompanied by the $240 fee set forth in 37 C.F.R. §1.17(p)
               -- OR --

  ____  (2)   It is accompanied by a STATEMENT as set forth in 37 C.F.R. §1.97(e)

____   Although it may not qualify under subsection (b) or (c), this statement qualifies under 37 C.F.R. §1.97, <u>subsection (d)</u> because:

        (1)   It is accompanied by a STATEMENT as set forth in 37 C.F.R. §1.97(e);
               -- AND --

        (2)   It is accompanied by a PETITION TO ACCEPT INFORMATION DISCLOSURE STATEMENT UNDER 37 C.F.R. §1.97(d);
               -- AND --

        (3)   It is accompanied by the $130 fee set forth in 37 C.F.R. §1.17(i)(1);
               -- AND --

        (4)   The Issue Fee has not yet been paid.

- 2 -

__X__  **_Fee Authorization._**  The Commissioner is hereby authorized to charge underpayment of any additional fees or credit any overpayment associated with this communication to Deposit Account No. 06-1325.  A duplicate copy of this authorization is enclosed.

Respectfully submitted,

FLIESLER, DUBB, MEYER & LOVEJOY LLP

Date: _Oct. 21, 1998_          By: _Peter Tong_

Peter P. Tong
Reg. No. 35,757

- 3 -

Sheet __1__ of __1__

| Form PTO-1449 | U.S. DEPARTMENT OF COMMERCE | Attorney Docket Number | Serial/Patent Number |
|---|---|---|---|
| *(Substitute)* | PATENT AND TRADEMARK OFFICE | CONT1013SRM/PPT | Unknown |

**INFORMATION DISCLOSURE STATEMENT BY APPLICANT**
*(Use several sheets if necessary)*

| Applicant/Patent Owner | |
|---|---|
| David Yinkai Chao | |

| Filing/Issue Date | Group Art Unit |
|---|---|
| Herewith | Unknown |

## U.S. PATENT DOCUMENTS

| Examiner Initial | Document Number | Date | Name | Class | Subclass | Filing Date |
|---|---|---|---|---|---|---|
| HM | 4,070,103 | 1/24/78 | Meeker | 351 | 52 | |
| HM | 5,642,177 | 6/24/97 | ~~Sumroeve~~ Nishioka | 351 | 47 | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## FOREIGN PATENT DOCUMENTS

| Examiner Initial | Document Number | Date | Country | Class | Subclass | Translation Yes | No |
|---|---|---|---|---|---|---|---|
| HM | G 85 07 761.5 . | June, 1985 | Germany | — | | X | |
| HM | G 88 06 898.6 | October, 1988 | Germany | — | | X | |
| HM | 2-109325 | August, 1990 | Japan | — | | X | |
| HM | 7-128620 | May, 1995 | Japan | — | | X | |
| HM | 76,209,045 | September, 1976 | China | — | | X | |
| HM | WO 90/09611 | August, 1990 | PCT | — | | X | |
| HM | 1,061,253 | April, 1954 | ~~Europe~~ France | — | | X | |

## OTHER DOCUMENTS (Include Author, Title, Date, Pertinent pages, etc. )

| HM | Documents describing Twincome in a Patent Opposition Proceeding in Germany initiated by Pentax, on or around April 30, 1997. |
|---|---|
| | |
| | |
| | |
| | |

| Examiner | Mai | Date Considered | 6/30/99 |
|---|---|---|---|

*EXAMINER: Initial if citation considered, whether or not citation is in conformance with MPEP 609. Draw line through citation if not in conformance and not considered. Include copy of this form with next communication to applicant.

*1 = Copy not submitted because it was submitted in prior application SN __/_____, filed _____, 19___.
*2 = Copy not submitted because it was submitted in prior application SN __/_____, filed _____, 19___.

- 4 -

104.001:120197
10/21/98-14:58

## REMARKS

The following Remarks are supplied as part of or in supplement to this Information Disclosure Statement.

Recently, a number of references have surfaced. As will be discussed below, those references should not have affected the allowability of the application as claimed.

Altogether tens sets of publications are submitted. All of them, except the last two, appears to describe magnetic coupling at the plane of the lenses. The second to the last set does not even seem to describe magnets as means for attachment. The last set is from an opposition proceeding initiated by Pentax Vision Company Limited ("Pentax").

### 1. The Meeker Patent

U.S. Patent number 4,070,103, by Meeker was issued on January 24, 1978 ("the Meeker Patent"). It describes attachable-rim covers to a spectacle unit. One attachment approach is by magnetic strips, with magnetic coupling seeming to occur on the plane of the lenses.

### 2. The First German Patent Application

German patent number G 85 07 761.5, has a publication date of June 13, 1985 ("the First German Patent Application"). As shown by its figures and a translation of its summary in its page 10, it describes a spectacle frame that is composed of two parts--detachable lenses and a frame. Lenses can be exchanged and attached on the frame magnetically. However, magnetic coupling again seems to occur on the plane of the lenses.

A paragraph (page 5, lines 14 to 18) in the Application was called to Applicant's attention. As shown in a translation of that paragraph, Applicant believes, it describes a form-fitting seal such as for alignment purposes, and should not have any relevancy to the allowability of the claims.

### 3. The Second German Patent Application

German patent number G 88 06 898.6, has a publication date of October 27, 1988 ("the Second German Patent Application"). As shown by its figures and its English translation the Application seems to describe attaching auxiliary frames to primary frames based on strips of magnetic materials. Again, magnetic coupling seems to occur on the plane of the lenses.

### 4. The First Japanese Patent Application

Japanese patent number 2-109325, has a publication date of August 31, 1990 ("the First Japanese Patent Application"). Based on the translated text and the figures, magnetic coupling again seems to occur at the plane of the lenses, and seems to be located close to the temple regions.

- 5 -

## 5. The Second Japanese Patent Application

Japanese patent number 7-128620, has a publication date of May 19, 1995 ("the Second Japanese Patent Application"). As shown by its figures and the official translation of its abstract, the Application seems to describe sunglasses with magnets close to the temple regions of a primary and an auxiliary frame. There also seems to be a hinge at the bridge of the auxiliary frame. Again, magnetic coupling appears to occur at the plane of the lenses.

## 6. The Sunreeve Patent

U.S. Patent number 5,642,177 by Sunreeve was issued on June 24, 1997 ("the Sunreeve Patent"). This Patent seems to cover subject matter similar to the above Japanese Application No. 7-128620.

## 7. The Chinese Patent

Chinese patent number 76,209,045, has an application date of September 16, 1976 ("the Chinese Patent"). As shown in its figures and a translation of its abstract on page 2, the Patent seems to describe attaching auxiliary frames to primary frames through magnets. Magnetic coupling again appears to occur at the plane of the lenses.

## 8. The PCT Patent

The PCT patent number WO 90/09611, has a publication date of August 23, 1990 ("the PCT Patent"). As shown in its figures and its English translation, the Patent again seems to describe attaching auxiliary frames to primary frames through magnets. Magnetic coupling again appears to occur at the plane of the lenses.

## 9. The French Patent

French patent number 1,061,253, has a publication date of April 12, 1954 ("the French Patent"). As shown in its English translation, the Patent seems to describe attaching auxiliary frames to primary frames based on pins and hooks, bent in opposite directions. There does not seem to be any discussion on attachment schemes based on magnets.

## 10. Twincome from Pentax

Pentax has initiated a patent opposition proceeding in Germany, challenging another one of Applicant's invention. In it, Pentax included a number of publications, and alleged that they described their product, Twincome. According to a Pentax declaration in the opposition, Pentax had made Twincome public before November 7, 1995. Applicant is challenging the opposition. However, just in case the Examiner might consider the materials in the opposition relevant to the allowability of Applicant's patent application, Applicant has included in this last set of publications, disclosures asserted by Pentax to be public information on Twincome.

According to Pentax, this last set of publications describes Twincome, which has magnets at the temples of a spectacle frame.

- 6 -

Applicant believes that none of the above sets of publications, singly or in any combination, teaches Applicant's claimed invention. Thus, these publications should not have affected the allowability of Applicant's patent application.

- 7 -

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue Application )

Inventor:    Richard Chao )

Reissue Application No.: Unknown )

Filed:       Herewith )

Patent No.: 5,568,207 )

Title:       AUXILIARY LENSES FOR )
             EYEGLASSES )

Art Unit:    Unknown    #3

Examiner:    Unknown

### REQUEST FOR ABSTRACT OF TITLE

Assistant Commissioner for Patents
Washington, DC 20231

Sir:

Please prepare a certified Abstract of Title, in respect of the above-identified patent for placing in the official file of the Reissue Application which is filed herewith.

Title in the name of Contour Optik, Inc. was recorded on Reel 8334, Frames 0766-7.

For the fee required by 37 CFR 1.19(b)(4) please find enclosed a check in the amount of $25.

Respectfully submitted,

FLIESLER, DUBB, MEYER & LOVEJOY LLP

Date:   October 21, 1998       By: _____
                                    Peter P. Tong
                                    Reg. No. 35,757

- 1 -

RECEIVED

OCT 21 1998

FLIESLER, DUBB,
MEYER & LOVEJOY

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue Application )
)
Inventor: Richard Chao )
)
Reissue Application No.: Unknown )
)
Filed: Herewith )
)
Patent No.: 5,568,207 )
)
Title: AUXILIARY LENSES FOR )
EYEGLASSES )

Art Unit: Unknown

Examiner: Unknown

#4

**ASSENT OF ASSIGNEE**

Assistant Commissioner for Patents
Washington, DC 20231

Sir:

Contour Optik, Inc., of 43-4 Yi-Hsing Chun, Suishang Hsiang, Chiavi, Taiwan 608, Republic of China, is the sole Assignee of United states Patent No. 5,568,207, granted on October 22, 1996, by an assignment executed by the inventor Richard Chao and in the United States Patent and Trademark Office at Reel 8334, Frames 0766-7, and hereby assents to the reissue of United States Patent No. 5,568,207. The attached evidentiary documents have been reviewed and Assignee certifies that to the best of Assignee's knowledge and belief, title to the above-identified application is in Assignee.

I hereby declare that I am authorized to sign for Contour Optik, Inc. and that all statements made herein of my knowledge are true, and that all statements made on information and belief are believed to be true; and further, that these statements are made with the knowledge that willful false statements, and the like so made, are punishable



- 1 -

by fine or imprisonment, or both, under Section 1001, Title 18 of the United states Code, and that such willful false statements may jeopardize the validity of the application and any patent issuing thereon.

CONTOUR OPTIK, INC.

Date: October 21, 1998.                    By _____

                                                David Chao,
                                           Director of International Sales

Attorney Docket No.:CONT1013SMB.PPT
/ppt/cont1013.007

201.001:120197
10/21/98-15:45

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Address:   COMMISSIONER OF PATENTS AND TRADEMARKS
           Washington, D.C. 20231

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | | ATTORNEY DOCKET NO. |
|---|---|---|---|---|
| 09/182,862 | 10/21/98 | CHAO | R | CONT1013SRM/ |

MM42/0715

SHELDON R MEYER
FLIESLER DUBB MEYER AND LOVEJOY
FOUR EMBARCADERO CENTER
SUITE 400
SAN FRANCISCO CA 94111-4156

| EXAMINER |
|---|
| MAI.H |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2873 | 5 |

DATE MAILED:   07/15/99

Please find below and/or attached an Office communication concerning this application or proceeding.

Commissioner of Patents and Trademarks

| *Office Action Summary* | Application No. 09/182,862 | Applicant(s) Chao |
| --- | --- | --- |
| | Examiner Huy Mai | Group Art Unit 2873 |

☒ Responsive to communication(s) filed on *Oct 21, 1998*                                                          .

☐ This action is **FINAL**.

☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11; 453 O.G. 213.

A shortened statutory period for response to this action is set to expire __*three (3)*__ month(s), or thirty days, whichever is longer, from the mailing date of this communication. Failure to respond within the period for response will cause the application to become abandoned. (35 U.S.C. § 133). Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

**Disposition of Claims**

☒ Claim(s) *1-35*                                                          is/are pending in the application.

  Of the above, claim(s) _____ is/are withdrawn from consideration.

☐ Claim(s) _____ is/are allowed.

☒ Claim(s) *1-35*                                                          is/are rejected.

☐ Claim(s) _____ is/are objected to.

☐ Claims _____ are subject to restriction or election requirement.

**Application Papers**

☐ See the attached Notice of Draftsperson's Patent Drawing Review, PTO-948.

☐ The drawing(s) filed on _____ is/are objected to by the Examiner.

☒ The proposed drawing correction, filed on __*Oct 21, 1998*__ is   ☐approved   ☒disapproved.

☐ The specification is objected to by the Examiner.

☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. § 119**

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

  ☐ All   ☐ Some*   ☐None   of the CERTIFIED copies of the priority documents have been

  ☐ received.

  ☐ received in Application No. (Series Code/Serial Number) _____ .

  ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

  *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

**Attachment(s)**

☒ Notice of References Cited, PTO-892

☒ Information Disclosure Statement(s), PTO-1449, Paper No(s). __*2*__

☐ Interview Summary, PTO-413

☐ Notice of Draftsperson's Patent Drawing Review, PTO-948

☐ Notice of Informal Patent Application, PTO-152

--- *SEE OFFICE ACTION ON THE FOLLOWING PAGES* ---

Application/Control Number: 09/182,862                                    Page 2

Art Unit: 2873

## DETAILED ACTION

### Information Disclosure Statement

1.      The Information Disclosure Statement filed on October 21, 1998 is acknowledged.

### Reissue Declaration

2.      The reissue oath/declaration filed with this application is defective because it fails to identify at least one error which is relied upon to support the reissue application.  See 37 CFR 1.175(a)(1) and MPEP § 1414.

The applicant does not specifically identify the at least one error.

The reissue declaration filed with the application on October 21, 1998 refers to, on page 2, "3. I have review and understand the contents of the above-identified specification, including claims." is not acceptable because the declaration refers only to the patent specification and patent claims, and not to the reissue specification and reissue claims (no serial number for the reissue application was assigned at that time). Applicant should submit another supplemental reissue declaration that corrects this error.

A reissue oath or declaration *inter alia* must state at least one error for reissue. The statement included in paragraphs 12 and 13 of the declaration do not state an error that renders the patent invalid or inoperative for reissue. The statements regarding the fact that some limitations should have been claimed and some aspect of the invention should have been described are not adequate to meet the requirement that the declaration states "at least one error being relied upon as basis for reissue" pursuant to 37 CFR 1.175(a)(1).

It is not sufficient for an oath/declaration to merely state "As herein after more fully explained, ... , subject matter was disclosed in the figures of the Patent, but not described in the text; and vice versa. Through the Patent was not appropriately claimed, the disclosed figures and text show my intent to claim" and "failure to describe 'embodiments' ... and suggest broader and narrower claim language were errors." Rather, the oath/declaration must specifically identify an error. In addition,

Application/Control Number: 09/182,862                                          Page 3

Art Unit: 2873

it is not sufficient to merely reproduce the claims with brackets and underlining and state that such will identify the error. See In re Constant, 827 F.2d 728, 729, 3 USPQ2d 1479 (Fed. Cir.), cert. denied, 484 U.S. 894 (1987).

3.      Claims 1-35 are rejected as being based upon a defective reissue declaration under 35 U.S.C. § 251.  See 37 C.F.R. § 1.175.

4.      Claims 8,9,12,13,16-22,25-35 are rejected under 35 U.S.C. 251 as being based upon new matter added to the patent for which reissue is sought.  The added material which is not supported by the prior patent is as follows:

        The subject matter of the first magnetic members being coupled, but not in contact, with the second magnetic member as claimed in claims 8,9,22,35 is new matter. Nowhere in the original specification provide support for such subject matter as claimed in claims 8,9,22,35.

        The subject matter of the end portion of the arm of the auxiliary spectacle frame extended downward toward the projection for hooking on the primary spectacle frame as claimed in claims 25-33 and of  newly added phrases in pages 2 and 3 of the original specification is new matter. Nowhere in the original specification provide support for such subject matter as claimed in claims 25-33.

        Regarding claims 12,16,18,20,34,35, the subject matter of securing the magnetic members to the side portions of the primary spectacle frame and of the auxiliary spectacle frame is not supported in the original specification. Therefore, it is new matter.

        The remaining claims are dependent upon the rejected base claims and thus inherit the deficiency thereof.

Application/Control Number: 09/182,862                                      Page 4

Art Unit: 2873

### *Drawings*

5.      The proposed drawing correction and/or the proposed substitute sheets of drawings, filed

on 10/21/1998, have been disapproved because they introduce new matter into the drawings. 37

CFR 1.121(a)(6) states that no amendment may introduce new matter into the disclosure of an

application. The original disclosure does not support the showing of the end portion, but not the

magnetic member 22, of the arm extends downward toward the projection for hook on the primary

spectacle frame as shown in the newly added Fig.8.

Applicant is notified that any changes to the drawings must comply with 37 CFR 1.121(b)(3).

### *Specification*

6.      . The amendment filed 10/21/1998 is objected to under 35 U.S.C. 132 because it introduces

new matter into the disclosure. 35 U.S.C. 132 states that no amendment shall introduce new matter

into the disclosure of the invention. The added material which is not supported by the original

disclosure is as follows: The newly added phrases in pages 2 and 3 of the original disclosure are new

matter.

Applicant is required to cancel the new matter in the reply to this Office action.

### *Claim Rejections - 35 USC § 112*

7.      The following is a quotation of the first paragraph of 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and
> process of making and using it, in such full, clear, concise, and exact terms as to enable any
> person skilled in the art to which it pertains, or with which it is most nearly connected, to make
> and use the same and shall set forth the best mode contemplated by the inventor of carrying out
> his invention.

8.      Claims 8,9,22,25-33,35 are rejected under 35 U.S.C. 112, first paragraph, as containing

subject matter which was not described in the specification in such a way as to reasonably convey to

one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession

of the claimed invention.

Application/Control Number: 09/182,862                                    Page 5

Art Unit: 2873

The original specification fails to disclose and/or discuss the reasons why the first magnetic member being coupled, but not in contact, with the second magnetic member as now claimed in claims 8,9,22,35. This renders how the auxiliary spectacle frame being stably supported on the primary spectacle frame as now claimed.

The original specification fails to disclose the subject matter of the end portion of the arm of the auxiliary spectacle frame extended downward toward the projection for hooking on the primary spectacle frame as claimed in claims 25-33 and of newly added phrases in pages 2 and 3 of the original specification is new matter. Nowhere in the original specification provide support for such subject matter as claimed in claims 25-33.

The original specification fails to disclose the subject matter of securing the magnetic members to the side portions of the primary spectacle frame and of the auxiliary spectacle frame as claimed in claims 12,16,18,20,34,35. Nowhere in the original specification provide support for such subject matter as claimed in claims 12,16,18,20,34,35. Therefore, this subject matter is new matter.

The remaining claims are dependent upon the rejected base claims and thus inherit the deficiency thereof.

9.      Claims 1-35 are rejected under 35 U.S.C. 112, first paragraph, as containing subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the relevant art that the inventor(s), at the time the application was filed, had possession of the claimed invention.

Regarding claim 1, adding the phrase "at least one of" before the phrase "said arms" and deleting the function "engaged with" of the arms not only enlarge the scope of the claimed invention, but also render the invention, as a whole, as claimed become inoperative. The above-mentioned adding and deleting render whether or not "a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame" (claim 1, lines 17-19) because the "at least one of said arms" may be supported on along the upper side portion of the lens rim of the primary spectacle frame. The above-mentioned adding and deleting also

Application/Control Number: 09/182,862                                      Page 6

Art Unit: 2873

render whether or not all the functions "so as to allow ... and so as to prevent ... and so as to prevent ..." (claim 1, lines 23-29) are existed.

Regarding newly added claims 5,10,12,14,16,18,20,22,34,35, the phrase "at least one of" before the word "arms" and missing the function "engaged with" of the arms not only enlarge the scope of the patent claimed invention, but also render the invention, as a whole, as claimed become inoperative. The discussion of these claims is the same as that discussed in claim 1. Therefore, repeating such a discussion is unnecessary.

The remaining dependent claims are dependent upon the rejected base claims and thus inherit the deficiency thereof.

10.      Claims 5-9,10-13,22,32-35 are rejected under 35 U.S.C. 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

The limitation "configured to engage" (claim 5, line 17 and claim 10, line 16) is unclear. What does the Applicant mean by "configured to engage"? Since the second magnetic member engages with the first magnetic member by the magnetic attraction, it is unclear how the second magnetic member coupled, but not in contact, with the first magnetic member in order to the auxiliary frame stably supported by the primary frame as claimed in claim 8 and 22. The phrase "the side portions" (claim 6, line 2; claim 9, line 2; claim 13, line 10) should read -- the side portions of the primary frame--; otherwise, the feature "the side portion" is undefined. The feature "each side portion" (claim 22, line 8) is undefined clearly. Which side portions? The phrases "the primary spectacle frame" (claim 12, lines 3,6; claim 13, line 2; claim 35, lines 3,6) and "the auxiliary spectacle frame (claim 12, line 10; claim 35, line 10) have no antecedent basis. The limitations in claim 12, 34 and 35 are unclear because of "engaging on a horizontal position" and of "coupling on a horizontal position, but not in contact with...". The structure of the eyeglass device in claims 12,34,35 does not draw such a horizontal position.

Application/Control Number: 09/182,862                                        Page 7

Art Unit: 2873

Regarding claim 10, the word "means" is preceded by the word "upper" in an attempt to use a "means" clause to recite a claim element as a means for performing a specific function. However, since no function being specified by the word preceding "means." It is impossible to determine the equivalent of the claim element, as set forth by 35 U.S.C. 112, sixth paragraph. See *Ex Parte Klumb*, 159 USPQ 694 (Bd. App. 1967).

The remaining claims are dependent upon the rejected base claims and thus inherit the deficiency thereof.

### *Claim Rejections - 35 USC § 102*

11.    The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless --

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.

(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or on an international application by another who has fulfilled the requirements of paragraphs (1), (2), and (4) of section 371© of this title before the invention thereof by the applicant for patent.

12.    Claims 12,34 are rejected under 35 U.S.C. 102(e) as being anticipated by Nishioka (5,642,177).

The limitations in claims 12,34 are shown in Nishioka's Figs 1-3, column 2, lines 10-64. Nishioka discloses an eyeglass device comprising a primary frame 5a having two side portions, each side portion having an extension extended therefrom for pivotally coupling a temple thereto, the primary frame 5a including two first magnets 7, each secured to one of said side portion; and an auxiliary frame 1a for disposed in front of the primary frame 5a, the auxiliary frame including two auxiliary side portions, the auxiliary frame including two second magnets 3, each secured to one of the auxiliary side portions, for engaging on a horizontal position with one of the first magnets 7 so as to secure the auxiliary frame 1a to the primary frame 5a.

Application/Control Number: 09/182,862                                          Page 8

Art Unit: 2873

13.     Claims 1,3-7,10-21,23,24,34 are rejected under 35 U.S.C. 102(a) as being anticipated by
Twincome-Pentax.

        The Applicant's claimed invention as claimed in claims 1,3-7,10-21,23,24,34 is anticipated
over Twincome-Pentax (Pentax). While the applicant is challenging on the publication date of the
documents of the Twincome-Pentax, a rejection under 35 U.S.C. 102 (a) is applicable because the
claimed invention  meets the quotation "the invention was known ... by others ... described in a
"printed publication" (see discussion below) in this or foreign country before the invention thereof
by the applicant for a patent" as set forth 35 U.S.C.102(a) over the described Twincome in the
documents of the Pentax.

        The documents of the Twincome-Pentax constitute a "printed publication" in view of *In re
Wyer*, 655 F.2d 221, 210 USPQ 790 (CCPA 1981) and *In re Bayer*, 568 F.2d 1357, 196 USPQ 670
(CCPA 1978).

        According to *In re Wyer*, 655 F.2d 221, 210 USPQ 790 (CCPA 1981), "A reference is proven
to be a "printed publication" upon a satisfactory showing that such document has been disseminated
or otherwise made available to the extent that persons interested and ordinarily skilled in the subject
matter or art, exercising reasonable diligence, can locate it." and "in any event, interpretation of the
words 'printed' and 'publication' to mean 'probability of dissemination' and 'public accessibility'
respectively."

        It appears that the Twincome documents including products, at least models, were delivered
to the individuals as well as the large retails and displayed at the IOFT (International Optical Fair
Tokyo). Thus, the documents of the Twincome-Pentax have been disseminated and were public
accessible.

        The evident, shown in the Twincome-Pentax, are sufficient to constitute a "printed
publication" as long as a presumption is raised that the portion of the public concerned with the art
would know of the invention. *In re Bayer*, 568 F.2d 1357, 196 USPQ 670 (CCPA 1978).

Application/Control Number: 09/182,862                                          Page 9

Art Unit: 2873

14.     Applicant is reminded of the continuing obligation under 37 CFR 1.56 to timely apprise the
Office of any litigation information, or other prior or concurrent proceeding, involving Patent No.
5,568,207, which is material to patentability of the claims under consideration in this reissue
application.  This obligation rests with each individual associated with the filing and prosecution of
this application for reissue.  See MPEP §§ 1404, 1442.01 and 1442.04.

15.     Any inquiry concerning this communication or earlier communications from the examiner
should be directed to Huy Mai whose telephone number is (703) 308-4874. The fax phone number
for the organization where this application or proceeding is assigned is (703) 308-7722 (or 7724).
        Any inquiry of a general nature or relating to the status of this application or proceeding
should be directed to the receptionist whose telephone number is (703) 308-0956.



Huy Mai
Primary Examiner
Technology Center 2800

HM/
July 14, 1999

| *Notice of References Cited* | | Application No. 09/182,862 | | Applicant(s) Chao | | |
|---|---|---|---|---|---|---|
| | | Examiner Huy Mai | | Group Art Unit 2873 | | Page 1 of 1 |

### U.S. PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|
| x | A | 5,416,537 | 5/1995 | Sadler | 351 | 47 |
| | B | | | | | |
| | C | | | | | |
| | D | | | | | |
| | E | | | | | |
| | F | | | | | |
| | G | | | | | |
| | H | | | | | |
| | I | | | | | |
| | J | | | | | |
| | K | | | | | |
| | L | | | | | |
| | M | | | | | |

### FOREIGN PATENT DOCUMENTS

| * | | DOCUMENT NO. | DATE | COUNTRY | NAME | CLASS | SUBCLASS |
|---|---|---|---|---|---|---|---|
| | N | | | | | | |
| | O | | | | | | |
| | P | | | | | | |
| | Q | | | | | | |
| | R | | | | | | |
| | S | | | | | | |
| | T | | | | | | |

### NON-PATENT DOCUMENTS

| * | | DOCUMENT (Including Author, Title, Source, and Pertinent Pages) | DATE |
|---|---|---|---|
| | U | | |
| | V | | |
| | W | | |
| | X | | |

\* A copy of this reference is not being furnished with this Office action.
(See Manual of Patent Examining Procedure, Section 707.05(a).)

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue Application )

Inventor(s): Richard Chao )

SC/Serial No.: 09/182,862 )

Filed: October 21, 1998 )

Title: AUXILIARY LENSES FOR )
EYEGLASSES )

REISSUE PATENT APPLICATION

Art Unit: 2873

Examiner: Huy Mai

#6
Ext of time
2 pgs
3/31/10

### CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8

I hereby certify that this correspondence is being deposited in the United States Postal Service with sufficient postage as first class mail in an envelope addressed to Assistant Commissioner for Patents, Washington, D.C. 20231, on January 14, 2000.

_____(Attorney Signature)

Peter P. Tong, Reg. No.
Signature Date: January 14, 2000

## PETITION FOR EXTENSION OF TIME UNDER 37 C.F.R. §1.136

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

In the Office Action dated 07/15/99, a shortened period for response was set to expire on 10/15/99.

Pursuant to 37 C.F.R. §1.136(a), Applicant hereby petitions the Commissioner for an extension of time for responding to the Office Action up to and including 01/15/00.

- 1 -

Attorney Docket No.: CONT-01013REI/SRM/PPT
ppt/cont/1013.010.wpd

203.001:112098
01/13/0-18:07

01/21/2000 SLM46  0000005S 09182862    435.00 0P

01 FC:217

The amount of the petition fee set by 37 C.F.R. §1.17 is determined as follows:

| Fee (Large Entity/Small Entity) | | Extended Month |
|---|---|---|
| _____ | $110.00/$55.00 | First |
| _____ | $380.00/$190.00 | Second |
| ✓ | $870.00/$435.00 | Third |
| _____ | $1,360.00/$680.00 | Fourth |
| _____ | $1,850.00/$925.00 | Fifth |

**TOTAL PETITION FEE $ 435.00**

The **TOTAL PETITION FEE** is included with the payment of other papers filed together with this petition.

The Commissioner is authorized to charge any underpayment or credit any overpayment associated with this communication to Deposit Account No. 06-1325. A duplicate copy of this authorization is enclosed.

The other papers enclosed or associated with this communication include:

_____    A reply to the Office action was previously filed on _____.

✓    A reply to the Office action is filed herewith.

_____    A reply will be filed subsequently.

_____    A continuation application is filed herewith.

_____    A divisional application is filed herewith.

_____    A continuation-in-part application is filed herewith.

_____    A continued prosecution application is filed herewith.

_____    "Small Entity" status for this application has been established by a statement previously filed.

Attorney Docket No.: CONT-01013REI/SRM/PPT
ppt/cont/1013.010.wpd

203.001:112098
01/13/0-18:07

_____   "Small Entity" status for this application is being established by a statement submitted herewith.

_____   Other: _____

Respectfully submitted,

Date: _January 14, 2000_          By: _~Peter Tong_____
                                       Peter P. Tong
                                       Reg. No. 35,757
                                       (408) 748-7300

FLIESLER, DUBB, MEYER & LOVEJOY LLP
Four Embarcadero Center, Suite 400
San Francisco, California 94111-4156
Telephone: (415) 362-3800

- 3 -

Attorney Docket No.: CONT-01013REI/SRM/PPT          203.001:112098
ppt/cont/1013.010.wpd                               01/13/0-18:07

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

#6

| | | |
|---|---|---|
| In re Application | ) | PATENT APPLICATION |
| | ) | |
| Inventor(s):   Richard Chao | ) | |
| | ) | Art Unit:  2873 |
| SC/Serial No.: 09/182,862 | ) | |
| | ) | Examiner: Huy Mai |
| Filed:         October 21, 1998 | ) | |
| | ) | |
| Title:  AUXILIARY LENSES FOR EYGLASSES | ) | |
| | ) | |

RECEIVED

### CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8

I hereby certify that this correspondence is being deposited in the United States Postal Service with sufficient postage as first class mail in an envelope addressed to Assistant Commissioner for Patents, Washington, D.C. 20231, on January 14, 2000.

_____ (Attorney Signature)
Peter P. Tong, Reg. No. 35,757
Signature Date: January 14, 2000

### RESPONSE TRANSMITTAL LETTER

Assistant Commissioner for Patents
Washington, D.C.  20231

Sir:

Transmitted with this communication in connection with the above-identified application are the following:

✓    A Response under 37 C.F.R. §1.111 to the Office Action dated 07/15/99.

＿    A Response under 37 C.F.R. §1.116 to the Office Action dated ___.

✓    A Petition for an Extension of Time under 37 C.F.R. §1.136.

＿    A Statement pursuant to 37 C.F.R. §1.27 to establish small entity status under 37 C.F.R. §1.9(f).

✓    The declaration of Professor Richard Samuels.

- 1 -

Attorney Docket No.: CONT1013REI SRM/PPT
ppt/cont/1013rei.012.wpd

201.001:112098
01/13/0-18:14

The fee associated with this communication has been calculated as shown below:

__   No fee is required with this communication.

_✓_   Small entity status of this application under 37 C.F.R. §1.9 and §1.27 has been established.

_✓_   A fee for extension of time for response under 37 C.F.R. §1.136 filed within _3_ month(s) after the original time for response of $_435.00_ is due.

__   A fee of $240.00 is due for the submission of the accompanying Information Disclosure Statement.

_✓_   A fee for addition of claims under 37 C.F.R. §1.17 is due as follows:

| Claims Remaining After Amendment | Highest Previously Paid For | | Number Extra | | Rate Small Entity/ Other Than Small Entity | | |
|---|---|---|---|---|---|---|---|
| Total Claims _46_ | - _35_ | = | _11_ * | X | $ 9.00 $18.00 | = | $ 99.00 |
| Independent Claims _16_ | - _11_ | = | _5_ * | X | $39.00 $78.00 | = | $ 195.00 |
| First Presentation of Multiple Dependent Claim(s) __ | | | | | $130.00 $260.00 | = | $ |

*If the difference is less than zero, enter "0".

Additional Fee   =   $ _294.00_

The total fee required with this communication is $ _729.00_ and is to be paid as follows:

__   Please charge Deposit Account No. 06-1325 in the amount of $___. A duplicate copy of this authorization is enclosed.

_✓_   A check in the amount of $ _729.00_ is enclosed.

- 2 -

Attorney Docket No.: CONT1013REI SRM/PPT
ppt/cont/1013rei.012.wpd

201.001:112098
01/13/0-18:14

 ✓   The Commissioner is hereby authorized to charge underpayment of any fees, including the following fees, associated with this communication or credit any overpayment to Deposit Account No. 06-1325. A duplicate copy of this authorization is enclosed.

   ✓   Any filing fees under 37 C.F.R. §1.16 for the presentation of additional claims.

   ✓   Any patent application processing fees under 37 C.F.R. §1.17 including any applicable fee for extension of time.

Respectfully submitted,

Date: _January 14, 2000_     By: _____

Peter P. Tong
Reg. No. 35,757
(408) 748-7300

FLIESLER, DUBB, MEYER & LOVEJOY LLP
Four Embarcadero Center, Suite 400
San Francisco, California 94111-4156
Telephone: (415) 362-3800

- 3 -

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Reissue Application | ) REISSUE PATENT APPLICATION |
| Inventor: Richard Chao | ) |
| Reissue Application No.: 09/182,862 | ) Art Unit: 2873 |
| Filed: 10/21/98 | ) Examiner: Huy Mai |
| Patent No.: 5,568,207 | ) |
| Title: AUXILIARY LENSES FOR EYEGLASSES | ) |

**CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8**

I hereby certify that this correspondence is being deposited in the United States Postal Service with sufficient postage as first class mail in an envelope addressed to Assistant Commissioner for Patents, Washington, D.C. 20231, on January 14, 2000.

_____ (Attorney Signature)

Peter P. Tong, Reg. No. 35,757
Signature Date: January 14, 2000

**RESPONSE TO OFFICE ACTION UNDER 37 C.F.R. § 1.111**

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

This RESPONSE is in reply to the Office action mailed July 15, 1999.

In the Specification

On column 2, after line 30, please replace "FIG. 8 illustrates another embodiment of a cross sectional view", with --FIG. 8 illustrates another embodiment of a part of a cross sectional view--.

- 1 -

Attorney Docket No.: CONT1013REISRM/PPT
ppt/cont1013rei.009

<u>In the Drawings:</u>

A proposed drawing amendment to FIG. 8 is submitted to replace the original drawing sheet for FIG. 8.

<u>In the Claims:</u>

Please AMEND claims 6, 9, 12, 13, 22, 34, and 35, and ADD NEW claims 36-46 as follows:

**6. (Once Amended)**   An eyeglass device as recited in Claim 5 wherein the upper portion is an upper part of one of the side portions <u>of the primary frame</u>.

**9. (Once Amended)**   An eyeglass device as recited in Claim 8 wherein the upper portion is an upper part of one of the side portions <u>of the primary frame</u>.

**12. (Once Amended)**  An eyeglass device comprising:

a primary <u>spectacle</u> frame for supporting primary lenses therein<u>, with the lenses defining a vertical plane</u>;

the primary spectacle frame including two side portions;

each side portion having an extension extended therefrom for  pivotally coupling a leg thereto; and

the primary spectacle frame including two first magnets, each secured to one of the side portions of the primary frame; and

an auxiliary <u>spectacle</u> frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;

the auxiliary spectacle frame including two auxiliary side portions; and

- 2 -

the auxiliary <u>spectacle</u> frame including two second magnets, each secured to one of the auxiliary side portions, for engaging on a horizontal position with one of the first magnets so as to secure the auxiliary frame to the primary frame.

13. **(Once Amended)**  An eyeglass device as recited in Claim 12 wherein:

the primary spectacle frame includes a projection extending from each of its side portion;

each projection secures one of the first magnets;

the primary spectacle frame includes an upper portion;

each said auxiliary side portion has an arm extended therefrom;

at least one arm is configured to extend over the upper portion of the primary spectacle frame;

each arm secures one of the second magnets; and

the upper portion is an upper part of one of the side portions <u>of the primary spectacle frame</u>.

22. **(Once Amended)**  A primary eyeglass device adapted to stably support an auxiliary spectacle frame, the auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame, the auxiliary spectacle frame including two auxiliary side portions, each auxiliary side portion having an arm extended therefrom, and each arm securing a first magnet,

the primary eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two side portions;

- 3 -

each of the two side portions having an extension extended therefrom for pivotally coupling a leg thereto;

the primary spectacle frame including a projection extending from each said side portion;

each projection securing a second magnet; and

when the primary frame is supporting the auxiliary frame,

each second magnet is coupled to, but not in contact with, one of the first magnets on a horizontal position so as to secure the auxiliary frame to the primary frame; and

the auxiliary frame is supported by at least an upper portion of the primary frame.

34. (Once Amended)  An eyeglass device comprising:

a primary frame for supporting primary lenses therein, with the lenses defining a vertical plane;

the primary spectacle frame including two side portions;

each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and

the primary spectacle frame including two first magnets, each secured to one of the side portions of the primary frame; and

an auxiliary frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;

the auxiliary spectacle frame including two auxiliary side portions; and

- 4 -

the auxiliary frame including two second magnets, each secured to one of the auxiliary side portions, for coupling on a horizontal position with one of the first magnets so as to secure the auxiliary frame to the primary frame.

35. **(Once Amended)**  An eyeglass device comprising:

a <u>spectacle</u> primary frame for supporting primary lenses therein, <u>with the primary lenses defining a vertical plane;</u>

the primary spectacle frame including two side portions;

each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and

the primary spectacle frame including two first magnetic members, each secured to one of the side portions of the primary frame; and

an auxiliary <u>spectacle</u> frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;

the auxiliary spectacle frame including two auxiliary side portions;

[and]

the auxiliary frame including two second magnetic members, each secured to one of the auxiliary side portions, for coupling on a horizontal position, but not in contact, with one of the first [magnets] <u>magnetic members</u> so as to secure the auxiliary frame to the primary frame<u>; and</u>

<u>the auxiliary spectacle frame being supported by at least an upper portion of the primary spectacle frame.</u>

36. **(New)**  An eyeglass device comprising:

- 5 -

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two side portions;

each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and

the primary spectacle frame including two first magnetic members, each secured to one of the side portions of the primary frame; and

an auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary frame;

the auxiliary spectacle frame including two auxiliary side portions; and

the auxiliary spectacle frame including two second magnetic members, each secured to one of the auxiliary side portions, for coupling on a horizontal position with one of the first magnetic members so as to secure the auxiliary frame to the primary frame, the horizontal position being substantially perpendicular to a front surface of the primary frame.

37. (New)  An eyeglass device as recited in claim 36 wherein the second magnetic members are magnets.

38. (New)  An eyeglass device as recited in claim 36 wherein the first magnetic members are magnets.

39. (New)  An eyeglass device as recited in claim 36 wherein the first and the second magnetic members are magnets.

- 6 -

40. **(New)**  An eyeglass device as recited in Claim 36 wherein the first magnetic members are not in contact with the second magnetic members.

41. **(New)**  An eyeglass device as recited in Claim 39 wherein the first magnetic members are not in contact with the second magnetic members.

42. **(New)**  An eyeglass device as recited in Claim 36 further comprising at least one projection extending from said primary frame, said projection being configured to secure one of said first magnetic members.

43. **(New)**  An eyeglass device comprising:

> a primary spectacle frame for supporting primary lenses therein;

> the primary spectacle frame including two side portions;

> each side portion having an extension extended therefrom for pivotally coupling a leg thereto;

> the primary spectacle frame including a projection extending from each said side portion;

> each projection securing a first magnetic member; and

> the primary spectacle frame including an upper portion; and

> an auxiliary spectacle frame for supporting auxiliary lenses therein;

> the auxiliary spectacle frame including two auxiliary side portions;

> each said auxiliary side portion having an arm extended therefrom;

- 7 -

Attorney Docket No.: CONT1013REISRM/PPT
ppt/cont1013rei.009

200.001:100197

with at least one arm being configured to extend over the upper portion of the primary spectacle frame;

each arm securing a second magnetic member;

each second magnetic member configured to couple with one of the first magnetic members of the primary spectacle frame; and

the upper portion supports at least one arm of the auxiliary frame.

44. **(New)** An auxiliary eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein;

the auxiliary spectacle frame including two auxiliary side portions;

each auxiliary side portion having an arm extended therefrom; and

each arm securing a first magnetic member;

the auxiliary spectacle frame being adapted to be stably supported on a primary spectacle frame, which includes two primary side portions, each side portion securing a second magnetic member, the primary spectacle frame also including an upper portion; and

when the auxiliary frame is supported by the primary frame,

each first magnetic member engages with one of the second magnetic members; and

at least one arm of the auxiliary frame extending over the upper portion.

Attorney Docket No.: CONT1013REISRM/PPT
ppt/cont1013rei.009

200.001:100197

45. **(New)**  A primary eyeglass device for securing an auxiliary spectacle frame, which includes two auxiliary side portions, each auxiliary side portion securing to a first magnetic member, the primary eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two side portions;

each side portion having an extension extended therefrom for  pivotally coupling a leg thereto;

the primary spectacle frame including two first magnetic members, each secured to one of the side portions of the primary spectacle frame; and

when the auxiliary spectacle frame is secured to the primary spectacle frame, each second magnetic member couples on a horizontal position with one of the first magnetic members, the horizontal position being substantially perpendicular to a front surface of the primary frame.

46.  **(New)**  An auxiliary eyeglass device adapted to be secured to a primary spectacle frame, which includes two primary side portions, each said side portion securing a first magnetic member, the auxiliary eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein;

the auxiliary spectacle frame including two auxiliary side portions;

each auxiliary side portion configured to secure a second magnetic member; and

when the auxiliary frame is secured to the primary frame, each second magnetic member couples on a horizontal position with one of the first magnetic

- 9 -

members of the primary spectacle frame, the horizontal position being substantially perpendicular to a front surface of the auxiliary frame.

## REMARKS

Applicant presented claims 1 through 35 for examination. In the above-identified Office Action, the Examiner has rejected all of the claims, and has disapproved the proposed drawing.

Applicant appreciates the Examiner's detailed and meticulous comments in his Office Action to the above-identified application. Because of the care that the Examiner has exhibited in his Office Action, Applicant has been able to fully appreciate and understand the Examiner's reasons and grounds for the rejections. For the reasons to be stated below, however, Applicant respectfully traverses the Examiner's rejections of the claims.

By this amendment, Applicant has added claims 36-46, enclosed a declaration of Professor Richard J. Samuels, and submitted a proposed drawing amendment to Figure 8. Subject to the approval of the Examiner, it is respectfully requested that the new drawing sheet be substituted for the originally filed drawing sheet for FIG. 8. Accordingly, claims 1-46 are now in the application. Applicant believes that no new matter has been introduced by the amendment and no additional fees are required for the application.

Reissue Declaration

At Least One Error Has Been Identified

On page 2, the Rejection stated that the reissue declaration was defective because it failed to identify at least an error in the declaration. Applicant respectfully disagrees because Applicant has stated at least one error in the declaration.

- 10 -

"A reissue applicant must acknowledge the existence of an error in the specification, drawings, or claims, which error causes the original patent to be defective.... See MPEP § 1402 for a discussion of grounds for filing a reissue that may constitute the 'error' required by 35 U.S.C. 251.... Applicant need only specify in the reissue oath/declaration one of the errors upon which reissue is based.  Where applicant specifies <u>one</u> such error, this requirement of a reissue oath/declaration is satisfied." MPEP § 1414, with emphasis added.

MPEP § 1402 states, with emphasis added, that: "In accordance with 35 U.S.C. 251, the error upon which a reissue is based must be one which causes the patent to be 'deemed wholly or partly inoperative or invalid ... by reason of the patentee claiming more or less than he had a right to claim in the patent.' .... The most common bases for filing a reissue applications are: (A) <u>the claims are too narrow or too broad</u> .... <u>An attorney's failure to appreciate the full scope of the invention was held to be an error</u> correctable through reissue ...."

As stated in the MPEP, (1) Claims being too broad or too narrow is one of the most common bases for filing a reissue; (2) An attorney's failure to appreciate the full scope of the invention was held to be an error; and (3) Applicant only needs to specify one error in the declaration.

The Federal Circuit has applied even more liberal standards than an attorney's failure to appreciate the full scope, as shown in the following decision:

"Similarly, in In re Wesseler, the CCPA stated that error is established where there is no evidence that the appellant intentionally omitted or abandoned the claimed subject matter. Thus, the CCPA has construed the term error under section 251 broadly.  The Ninth Circuit employed a more rigid standard in *Riley v. Broadway-Hale Stores, Inc*....  We decline to adopt the rigid standard applied in *Riley*, in favor of the more liberal approach

- 11 -

taken by the CCPA." *Ball v. United States* 729 F.2d 1429, 1435, 221 USPQ 289, 294 (Fed. Cir. 1984).

In the declaration, Applicant states the following:

11.     Based on further investigation, I was advised that my Taiwan patent counsel failed to appreciate the full scope and breadth of the invention. I should both broaden and narrow my claims.

As discussed in the above paragraph 11, Applicant has identified at least one error, which is its Taiwan patent counsel's failure to appreciate the full scope and breadth of the invention. Such an error is correctable through reissue.

MPEP 1414 further explains with emphasis added, that: "If the initial reissue oath/declaration 'states at least one error' in the original patent, and, *in addition*, recites the specific corrective action taken in the reissue application, the oath/declaration would be considered acceptable, <u>even though the corrective action statement is not required</u>."

Following MPEP 1414's suggestion, Applicant further includes a number of corrective actions in the declaration. They are, for example, as follows:

12.     I was advised, for example, that (1) I should include as dependent claims magnetic members being magnets; (2) I should include as dependent claims two upper side portions, and the gap between the first magnetic members and the second magnetic members; (3) I should claim magnetic members engaging on a horizontal position; (4) I should claim primary spectacle frames without auxiliary frames; (5) I should claim auxiliary frames without primary spectacle frames; (6) I should include as dependent claims the end portion of an arm extending downward for hooking on the primary spectacle frame; and (7) I should broaden the issued Claim 1.

- 12 -

Thus, Applicant not only has stated at least one error, but also a number of planned corrective actions to be taken in the reissue application, though the corrective action statement is not required.

### Declaration Did Refer To The Reissue Specification and Claims

The office action further stated that the declaration was defective because of its paragraph 3, which states, "I have reviewed and understand the contents of the above-identified specification, including claims." The office action's argument was that in view of paragraph 3, the declaration referred only to the patent specification and patent claims, and not to the reissue specification and reissue claims. Applicant respectfully disagrees. Paragraph 17 of the declaration describes changes made in both the specification and the claims in the reissue. Paragraph 18 then states the following:

> As a result of these corrections, the amended claims, the new claims and the amended specification more closely represent my invention.... My invention is better represented by the amended specification, the amended claim and the new claims for reissue.

Thus, Applicant, in the declaration, refers specifically to changes made in the reissue--Both in the reissue specification and the reissue claims. Not only has Applicant reviewed and understood the content of the reissue application, Applicant has reproduced the changes submitted in the reissue application in the declaration. The declaration that the amended claim, the new claims and the amended specification more closely represent his invention, indicates that Applicant has reviewed and understood the reissue specification and the reissue claims.

However, if the Examiner insists on Applicant submitting a supplemental reissue declaration on this issue, please so indicate.

- 13 -

<u>New Matter Rejection</u>

    <u>Magnetic Members Coupled and Not in Contact Is Not New Matter</u>

The Office Action rejected Claims 8, 9, 22 and 35 based on the argument that nowhere in the original specification provided support for magnetic members being coupled, but not in contact, with each other.  See the third paragraph on page 3 of the Office Action.  Applicant respectfully disagrees.

As clearly shown in FIG. 7 of the '207 patent, the two magnetic members, 14 and 22, are in proximity of, coupled to, but not in contact with each other.  Magnets are coupled to each other when they are in proximity of each other.  The introduction of the phrase magnetic members coupled to each other cannot be considered new matter.  Another reason why magnetic members coupling cannot be new matter is because there are numerous recitations of the magnetic members engaging with each other in the specification.

    <u>End Portion Of An Arm Extended Downward Is Not New Matter</u>

In the fourth paragraph on page 3 of the Office Action, Claims 25-33 were rejected based on the argument that the original specification failed to disclose the "subject matter of the end portion of the arm of the auxiliary frame extended downward toward the projection for hooking on the primary spectacle frame".

Applicant respectfully disagrees.  Lines 4-7, column 3 of the original specification states:

[T]he end portions of the arms 21 ... are slightly extended downward toward the projections 13 such that the arms 21 ... may hook on the primary spectacle frame 10.

Thus, the original specification provides support for the subject matter of the end portion of the arm of the auxiliary frame extended downward toward the projection for hooking on the primary spectacle frame.

- 14 -

Attorney Docket No.: CONT1013REISRM/PPT
ppt/cont1013rei.009

200.001:100197

<u>Phrases Added In Pages 2 and 3 Are Not New Matter</u>

In the second half of the fourth paragraph on page 3 of the Office Action, phrases added in pages 2 and 3 of the original specification were considered new matter. Applicant again respectfully disagrees.

On page 2, Applicant has added the following paragraph:

FIG. 8 illustrates another embodiment of a <u>part of a</u> cross sectional view taken along lines 7-7 of FIG. 6.

As to be explained below, the original FIG. 8 cannot be considered new matter. FIG. 8 has been amended to further eliminate any possibility of introducing any new matter. With FIG. 8 not being new matter, the added paragraph on page 2 cannot be new matter.

On page 3, Applicant added the following paragraph:

In one embodiment, as shown in FIG. 7, magnetic members 14 and 22 are not in contact with each other; magnetic members 14 and 22 are engaged with, but not supported on, each other. Instead, the arm 21 securing the magnetic member 22 is supported on an upper side portion of the primary spectacle frame 10. As shown in FIG. 7, the upper side portion can be an upper part of the side portion securing the projection 13.

The above paragraph cannot be considered new matter because at least it is supported by FIG. 7 of the original specification. To more clearly show that no new matter has been introduced, Applicant has separated the above paragraph into the following sections.

(1)     Magnetic members 14 and 22 are not in contact with each other; magnetic members 14 and 22 are engaged with, but not supported on, each other.

- 15 -

(2)      Instead, the arm 21 securing the magnetic member 22 is supported on an upper side portion of the primary spectacle frame 10.

(3)      As shown in FIG. 7, the upper side portion can be an upper part of the side portion securing the projection 13.

In one embodiment, each of the above sections is identified in FIG. 7 as shown in the following drawing:



# FIG. 7

Thus, the original FIG. 7 clearly supports all three sections.  Regarding section 2, it is also supported by the original claim 1.


<u>Securing Magnetic Members To The Side Portions Is Not New Matter</u>

In the fifth paragraph on page 3 of the Office Action, the subject matter of securing the magnetic members to the side portions of the primary spectacle frame and of the auxiliary spectacle frame was considered not supported.  Applicant respectfully disagrees.

For example, as shown in FIG. 3, each magnetic member is secured to a portion at each side of the primary frame.  In other words, the subject matter of securing magnetic members to side portions of the primary frame is shown in FIG. 3.  Similarly in FIG. 4, each magnetic member is secured to a portion at each side of the auxiliary frame.  Again, the subject matter of securing magnetic members to side portions of the auxiliary frame is shown in FIG. 4.

- 16 -

Drawings Rejection

FIG. 8 was rejected as being new matter, based on the argument that the original disclosure did not support "the showing of the end portions, but not the magnetic member 22, of the arm extends downward toward the projection for hook on the primary spectacle frame."

The specification has recited the embodiment of the end portions of the arm extending downward toward the projection for hooking on the primary spectacle frame. This is shown, for example, in the following:

"[T]he end portions of the arms 21 ... extended downward toward the projections 13 such that the arms 21 ... may hook on the primary spectacle frame 10..." See Col. 3, lines 4-7 of the specification.

The rejection stated that, "the magnetic member 22, of the arm extends downward toward the projection for hook on the primary spectacle frame." The rejection may be somehow related to the magnetic member 22 in the figure. To expedite the prosecution of this reissue application, Applicant has amended FIG. 8 so that it does not show the magnetic members. Upon the Examiner's acceptance of the amendment, Applicant will submit the formal drawing for Figure 8.

Rejections Based on § 112

Claims 8, 9, 22 and 23 on Coupling and No Contact

In the first paragraph on page 5 of the Office Action, Claims 8, 9, 22, 35 were rejected based on the argument that (1) "the original specification fails to disclose and/or discuss the reasons why the first magnetic member being coupled, but not in contact, with the second magnetic member;" and (2) The structure "renders how the auxiliary spectacle frame being stably supported on the primary frame as now claimed."

- 17 -

35 USC 112 states that:

The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The laws, the rules, and the teachings in the MPEP do not require the discussion of reasons behind an embodiment before one can claim the embodiment. Whether or not the reasons behind the embodiment are discussed in the specification is immaterial.

Regarding the second argument, Applicant does not fully understand the rejection. At least in one embodiment, the structure does not require the magnetic members to be in contact in order to have the auxiliary frame stably supported by the primary frame. To expedite the prosecution, Applicant has amended Claims 22 and 35 to include the limitation of the auxiliary frame being supported by at least an upper portion of the primary frame.

<u>End Portion Extended Downward as in Claims 25-33</u>

In the second paragraph on page 5 of the Office Action, Claims 25-33 were rejected based on the argument that the original specification failed "to disclose the subject matter of the end portion of the arm of the auxiliary frame extended downward toward the projection for hooking on the primary spectacle frame". Applicant respectfully disagrees. As explained above in the New Matter Rejection section, the end portion of the arm extended downward has been fully disclosed in the specification.

<u>Newly Added Phrases in Pages 2 and 3</u>

Attorney Docket No.: CONT1013REISRM/PPT
ppt/cont1013rei.009

200.001:100197

Also in the second paragraph on page 5 of the Office Action, Claims 25-33 were rejected based on the argument that the added phrases in pages 2 and 3 were new matter. As explained above in the New Matter Rejection section, the paragraphs introduced in pages 2 and 3 have full support in the original specification.

Securing Magnetic Members to the Side Portions as in Claims 12, 16, 18, 20, 34 and 35

In the third paragraph on page 5 of the Office Action, Claims 12, 16, 18, 20, 34 and 35 were rejected based on the argument that the original specification failed to disclose the subject matter of securing the magnetic members to the side portions of the primary spectacle frame and of the auxiliary frame. Again, as explained above in the New Matter Rejection section, such disclosures have full support in the original specification.

Claims 1, 5, 10, 12, 14, 16, 18, 20, 22, 34 and 35: At Least One Arm and Engaged With

In the paragraph bridging page 5 and 6, together with the first paragraph in page 6 of the Office Action, Claims 1, 5, 10, 12, 14, 16, 18, 20, 22, 34 and 35 were rejected based on the following argument: "[A]dding the phrase 'at least one of' before the phrase 'said arms' and deleting the function 'engaged with' of the arms ... render the invention, as a whole, as claimed become inoperative." The reasons cited in the office action are that (a)"[T]he 'at least one arms' may be supported on along the upper side portion of the lens rim of the primary spectacle frame"; and (b) "The above-mentioned adding and deleting also render whether or not all the functions 'so as to allow ... and so as to prevent ... and so as to prevent ...' (claim 1, lines 23-29) are existed."

Applicant does not understand how the amendments would have rendered the invention inoperative.

- 19 -

Before the amendment, Claim 1 recited the following limitations:

said auxiliary frame including two side portions each having an arm extended therefrom for extending over and for engaging with said upper side portion of said primary spectacle frame, ... said arms being engaged with and supported on said upper side portion of said primary spectacle frame ...

Claim 1, before amendment, includes the limitation of two side portions of the auxiliary frame, each having an arm extending over, engaging with and supported on the upper side portion of the primary frame. Applicant amends the claim to state that "at least one arm" is supported on the upper side portion.

The Office Action seems to argue such an amendment is defective because, "the 'at least one of said arms' may be supported on along the upper side portion of the lens rim of the primary spectacle frame." Applicant does not understand how such a modification would render the invention inoperative. Applicant respectfully requests the Examiner to clarify the rationale behind the rejection so as to help Applicant respond to the rejection.

Second, the removal of the words, "engaged with", also would not render the invention inoperative. As shown in FIG. 6, one embodiment of the invention depicts an arm extending over a side portion. Applicant does not understand the reason why removing the words, "engaging with", but leaving the term, "extending over" in the claim would render the invention inoperative. Also, according to the second edition of Random House Unabridged Dictionary, the word "engage" can have the following meanings:

2. to secure for aid, employment, use, etc...

3. to attract and hold fast ...

4. to attract or please ...

- 20 -

5. to attach or secure...

In one embodiment, the word, engaging, can be interpreted to mean "attaching". One embodiment of the invention, as shown in FIG. 7, depicts an arm being supported by an upper side portion. Again, Applicant does not understand why removing the words, "engaged with", but leaving the terms, "supported on", in the claim would render the invention inoperative.

The Office Action further stated that the modification also rendered "whether or not all the functions 'so as to allow ... and so as to prevent ... and so as to prevent ...' (claim 1, lines 23-29) are existed". Applicant does not fully understand the argument. The Office Actions referred to the following three functions:

a.    Allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame;

b.    Prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame; and

c.    Prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

Though the amendments should not have affected these functions, Applicant respectfully requests the Examiner to clarify the rejection so as to help Applicant respond.


Claims 5 and 10: The Term Configured to Engage

In the last paragraph on page 6, Claims 5 and 10 were rejected because "the limitation 'configured to engage' (claim 5, line 17 and claim 10, line 16) is unclear." In one embodiment, the sentence, "X is configured to engage with Y", in a mechanical setting typically denotes that X includes a structural configuration to engage with Y. The meaning of the limitation "configured

- 21 -

to engage" should be quite clear. Applicant again requests the Examiner to clarify the rejection so that Applicant can better respond.

### Claims 8 and 22: Coupled, But Not in Contact

In the last paragraph on page 6, Claims 8 and 22 were rejected because "it is unclear how the second magnetic member coupled, but not in contact, with the first magnetic member in order to the auxiliary frame stably supported by the primary frame as claimed in claim 8 and 22." It seems the argument is that the auxiliary frame cannot be stably supported by the primary frame if the second magnetic member is coupled to, but not in contact, with the first magnetic member.

This issue has previously been addressed above in the New Matter Rejection section.

### Claims 6, 9 and 13: The Side Portions of The Primary Frame

Claims 6, 9 and 13 were rejected in view of possible ambiguity in the claims. Applicant has followed the Examiner's suggestion, and has amended those claims accordingly, with the "side portions" replaced by the "side portions of the primary frame."

### Claim 22: Each Of The Two Side Portions

In the last paragraph on page 6, the feature "each side portion" has been replaced by "each of the two side portions" to clarify any ambiguity in the claim.

### Claims 12, 13 and 35: Primary and Auxiliary Spectacle Frame

In the last paragraph on page 6, claims 12, 13 and 35 were rejected because the terms primary and auxiliary spectacle frames lacked antecedent basis. Applicant has amended the claims accordingly.

- 22 -

<u>Claims 12, 34 and 35: Engaging/Coupling On A Horizontal Position</u>

In the last paragraph on page 6, Claims 12, 34 and 35 were rejected because "of 'engaging on a horizontal position' and of 'coupling on a horizontal position, but not in contact with...'. The structure of the eyeglass device in claims 12, 34 and 35 does not draw such a horizontal position."

Applicant does not fully understand the rejection, but believes that the rejection may be on the issue of the term horizontal being relative.   To prevent any possibility of ambiguity, Applicant has amended Claims 12, 34 and 35 to include the limitation of the lenses in the primary frame defining a vertical plane, as opposed to horizontal coupling or engagement as specified. Such structural limitations should be sufficient to clarify any indefiniteness, if there were one.

<u>Means Limitation</u>

In the first paragraph on page 7, the Office Action rejected claim 10 based on the argument that Applicant is attempting to use "a 'means' clause to recite a claim element as a means for performing a specific function.  However, since no function being specified by the word preceding 'means.'  It is impossible to determine the equivalent of the claim element, as set forth by 35 U.S.C. 112, sixth paragraph."

The Office Action might have misinterpreted 35 U.S.C. § 112, ¶ 6, regarding means-plus-function claim.

While there is a widespread convention of using the term "means" to express a claim element in means-plus-function language, the absence or presence of the word "means" in the claim does not seem to be dispositive on the issue whether the language is means-plus-function language. In *Haney v. Timesavers, Inc.*, 29 U.S.P.Q.2d 1605, 1607-09 (D. Or. 1993), a district court held that a claim element, "a double-drive mechanism .  .  .  where the double-drive mechanism imparts at least one translational orbital movement superimposed on another

- 23 -