*kisoku*) for the Le Coane Group contains two major errors.

    (20)    The first major error in the translation of the *kisoku* is that the translator called the Le Coane Group the Le Coane Company throughout the translation. However, in the Japanese, only the word "*kai*" (group) is used. The word "*sha*" (company) never appears.

    (21)    The second mistake in the translation is more significant . In the Japanese, the non-Pentax members of the Le Coane Group are called "regular members," and they pay 10,000 yen (approximately $85.00) per month to belong to the Le Coane Group. Pentax, on the other hand, is the only "special member" of the Le Coane Group, and it pays 100,000 yen (approximately $850.00) per month to belong to the Le Coane Group. The translation has it backwards, making it look as if the distributors are bearing the bulk of the burden of the costs of running the Le Coane Group. To the contrary: Pentax pays for most of the costs, and it is the site of the secretariat to boot. Moreover, it is Pentax employees who prepare the minutes, arrange the meetings, set the agenda, etc. Pentax is clearly in charge here.

    (22)    I read with great interest Mr. Fukuwa's statement that the designation Le Coane *sha* is reserved for the French company. Having read that I went back and re-read the minutes. In that document, the word "*sha*" appears only once, in the untranslated paragraph 9. It seemed clear to me on my initial reading (and it still seems clear to me upon re-reading that paragraph with Mr. Fukuwa's testimony in mind) that that paragraph refers to the Pentax-sponsored *kyōryokukai* and not to any French company! Thus, my earlier impression that the interchangeable use of the two terms "*kai*" and "*sha*" implies a close "in-house-relationship" between Pentax and the *kyōryokukai* is reinforced.

    (23)    I thought particularly telling Mr. Sudo's reaction to Mr. Gholz's question about whether he would feel free to disclose to a foreign competitor a Pentax disclosure to the Le

-9-

Coane Group that Pentax was going to introduce a new product to the next meeting of the IOFT. As Mr. Sudo said, so doing would be dishonorable. Thus, even Mr. Sudo recognized and admitted that the information conveyed to the members of the Le Coane Group by Pentax was subject to important "strings" of confidentiality.

(24)     As for Mr. Fukuwa's testimony, his professed confusion over the two meanings of the word *kyōryoku* (strong or powerful and a cooperative association) was startling -- and unbelievable. It is true that "*kyōryoku*" means "strong" when written with a different first character. However, when it is written that way, it is not combined with "*kai*" to refer to a group. Moreover, the word *kyōryokukai* is a familiar Japanese business term. In my opinion, it is totally unbelievable that Mr. Fukuwa did not know what Mr. Gholz was asking about.

(25)     I also think that Mr. Fukuwa's admission that there are no public announcements of the meetings of the Le Coane Group supports my opinion that the Le Coane Group is a closed group. (Of course, that answer was exactly what I expected. That is how *kyōryokukai* work.)

(26)     With respect to the exchange on page 60 of the transcript of Mr. Fukuwa's deposition, I wonder whether Mr. Fukuwa understood the question. I find it hard to believe that the Le Coane Group is the only *kyōryokukai* organized and run by Pentax. As is well known, Pentax is a large company with many products -- cameras being perhaps the best known in this country. I would expect that Pentax sponsors other *kyōryokukai*. It is a common (if not the modal) form of interaction among vertically related firms in Japan, some with a company and its sub-contractors and others with a company and its distributors

(27)     Finally, Mr. Fukuwa's claim (on page 71 of the transcript of his deposition) that the non-Pentax members of the Le Coane Group never tell Pentax anything confidential seems disingenuous to me. The non-Pentax members of the Le Coane Group are in that group to build

-10-

trust between themselves and Pentax, and sharing confidential information is a tried and true way to do that -- in Japan as in the United States.

## V.  My Opinion

(28)   In my opinion, the statements by Messrs. Sudo and Fukuwa that the members of the Le Coane Group were under no obligation to keep matters discussed at group meetings confidential is, at the very least, misleading.  It may well be that there was no written contract, articles of incorporation, or the like which contained an express obligation of secrecy.  However, given the customs and traditions of Japanese business, no such express written contract or the like was necessary or expected.  There was probably no express written contract, articles of incorporation, or the like that required the representatives of the distributors to wear clothes when they attended meetings of the Le Coane Group.  However, just as it was clearly understood that the members of the Le Coane Group would wear clothes when they came to meetings, it was clearly understood that they would maintain in confidence anything that they learned at those meetings about Pentax's business plans, new products, and the like.  Any non-Pentax company member of the Le Coane Group who "leaked" any such business-sensitive information could expect to be promptly "cut" from the group, and any individual representative of any member of the Le Coane Group (i.e., either any representative of Pentax or any representative of any non-Pentax member of the Le Coane Group) who "leaked" any such business-sensitive information could expect to be severely reprimanded by his or her company (presuming, of course, that the "leak" was not authorized).  As has been written many, many times, many things that have to be expressed in contractual form in the United States do not have to be "put in writing" in Japan.  That, however, does not mean that such things are not clearly understood by all.

-11-

VI.   **Jurat**

(29)   I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date: _23 January 1999_

Richard J. Samuels

-12-

**Referenced Documents**

**Index**

1.      **Meeker Patent**

2.      **First German Patent Application**

3.      **Second German Patent Application**

4.      **First Japanese Patent Application**

5.      **Second Japanese Patent Application**

6.      **Sunreeve Patent**

7.      **Chinese Patent**

8.      **PCT Patent**

9.      **French Patent**

10.     **Twincome from Pentax**

**APPENDIX 1**

PATENT- UND RECHTSANWALTSSOZIETÄT
## SCHMITT, MAUCHER & BÖRJES

Patentanwalt Dipl.-Ing. H. Schmitt
Patentanwalt Dipl.-Ing. W. Maucher
Patent- und Rechtsanwalt H. Börjes-Pestalozza

Dreikönigstraße 13
D-79102 Freiburg i. Br.

Telefon (07 61) 70 67 73
Telefax (07 61) 70 67 76

# Recherchebericht

| |
|---|
| **Patentfamilienrecherche nach parallelen Anmeldungen zur japanischen Patentanmeldung JP 09101489** |

Auftraggeber:        MIKO PATENT AND TRADEMARK CO.
                     P.O. Box 63-151
                     Taichung, Taiwan, R.O.C.


Unsere Akte:        P 95 602 B


Datum:              26. Juni 1997

WD1 \ NE06864

PATENT- UND RECHTSANWALTSSOZIETÄT
**SCHMITT, MAUCHER & BÖRJES**

Patentanwalt Dipl.-Ing. H. Schmitt
Patentanwalt Dipl.-Ing. W. Maucher
Patent- und Rechtsanwalt H. Börjes-Pestalozza

## Bemerkungen über Nachforschungen

1. Es kann keine Gewähr dafür gegeben werden, daß Nachforschungen (Recherchen) ein unbedingt richtiges und erschöpfendes Ergebnis haben. Die wichtigsten Gründe sind: Im Regelfall werden Patentanmeldungen bis etwa 18 Monate nach ihrem Anmeldungs- bzw. Prioritätstag geheimgehalten. Bei deutschen Gebrauchsmusteranmeldungen ist eine entsprechende Geheimhaltung bis zu 15 Monaten möglich.
Ferner ist das beim Deutschen Patentamt öffentlich zur Verfügung gehaltene Nachforschungsmaterial gelegentlich unvollständig und/oder unrichtig bzw. nicht übersehbar eingeordnet.

2. Bei Markenrecherchen werden nur ältere deutsche oder für Deutschland relevante international registrierte Marken berücksichtigt, wie sie in den entsprechenden Auslegestellen des Deutschen Patentamtes zugänglich sind. Eine Recherche nach älteren Firmennamen ist dort nicht möglich und müßte gesondert durchgeführt werden.

3. Im Rahmen eines Nachforschungs-Auftrages werden Rechtsfragen wegen materieller Rechtsbeständigkeit, Verletzung und Abhängigkeit von älteren Rechten nicht erörtert. Dies erfolgt nur aufgrund eines ausdrücklichen Auftrages darüber.

PATENT ATTORNEYS

**SCHAUMBURG, THOENES, THURN**

European Patent Attorneys


DE 195 43 346 C1

(195 43 346.7-51)

Patent holder: Richard Chao

Opponent: The Pentax Vision

Co., Ltd.

Karl-Heinz Schaumburg, Dipl.-Ing.

Dieter Thoenes, Dipl.-Phys., Dr. rer nat.

Gerhard Thurn, Dipl.-Ing. Dr.-Ing.

30 April 1997

A 8738 DE - WE/ih


**Attachments:**

Printed evidence as stated
in the memorandum, in
duplicate

For and on behalf of

The Pentax Vision Co. Ltd.

2-37-3, Chuo, Nakano-Ku

Tokyo, Japan

this is to lodge

**Opposition**

to the grant of patent DE 195 43
346 C1. A request is made:

1.   to revoke the patent entirely;

2.   that prior to making any
decision to reject the opposition,
an opportunity be granted to the
opponent to be heard once more;

To the German Patent Office

80297 Munich

3.   by way of assistance, to
schedule an oral hearing

The following documents are cited in support of the opposition:

D1: Statutory declaration by Mr. Fukuwa with Attachments A to G and German translation;

D2: JP-07 156 856 A with English translation;

D3: Perspective drawing of part of a "Twincome" pair of eyeglasses with clip-on frame;

D4: Copy of an information and data sheet distributed at the International Optical Fair of 03 to 05 October 1995 in Tokyo, with English translation;

D5: JP-7 128 620 A;

D6: FR-PS 10 61 253;

D7: DE-85 07 761 U1.

Documents D1 to D4 are in direct connection with prior notorious use by the Pentax Vision Co. Ltd. and are submitted in duplicate each. Also submitted is a list of attachments to the statutory declaration D1.

Documents D5 and D6 were already taken into account during the examination procedure and are held both in the official records and by the holder of the patent. Document D7 is enclosed in duplicate.

The witness for prior notorious use is

Mr. Yasuo Fukuwa
Miyamoto-cho, 1-4, 404
Minami-ku, Yokohama-shi
Kanagawa, Japan.

**Arguments in support of opposition:**

The opposition is supported as follows:

1. Regarding independent claim 1:

The disputed patent, as stated in claim 1, concerns

a)   a pair of eyeglasses comprising a spectacle frame and a clip-on frame for holding spectacle lenses;

b)   whereby the spectacle frame consists of two lateral sections, each comprising an extension to hingeably link a stay;

c)   whereby the spectacle frame comprises two projecting parts which, in order to hold two first magnetic members, are attached at the two lateral sections of the spectacle frame at its rear, i.e. on the side facing the eyes;

d)   whereby the clip-on frame comprises two arms for engaging the spectacle frame, and

e)   for holding two second magnetic members, as well as

f)   for engaging the first magnetic members; and

g)   whereby the arms prevent the clip-on frame from moving downward relative to the spectacle frame.

The subject of claim 1 of the contested patent with all its features was already known prior to the date of application of the contested patent, due to prior notorious use as well as due to printed publications by the opponent, The Pentax Vision Co. Ltd., and is thus no longer new.

Document D1, a statutory declaration by Mr. Fukuwa, serves to substantiate prior notorious use.

As can be seen in point 4 of the statutory declaration of Mr. Fukuwa, already in 1995, the opponent was developing a spectacle system called "Twincome". A patent application for this "Twincome" spectacle system was made by the Pentax Vision Co. Ltd. on 31 May 1995 in Japan, whereby Mr. Toshikazu Iwamoto was named as the inventor (compare Document D2, JP-07 156 856 A).

According to a statement by Mr. Fukuwa, the "Twincome" spectacle system which was presented and offered for sale in 1995 was a system in which a clip-on frame could be attached to the spectacle frame of a pair of eyeglasses. The spectacle frame had conventional lenses; the lenses of the clip-on frame were tinted, so that the eyeglasses could be used as sunglasses when the clip-on frame was attached to the spectacle frame. The clip-on frame was held to the spectacle frame by the attractive force of magnetic elements. For details of the "Twincome" eyeglasses system developed by the Pentax Vision Co. Ltd, see point 4 of the statutory declaration by Mr. Fukuwa as well as Attachment A to the statutory declaration, a schematic diagram of the "Twincome" spectacle system by the Pentax Vision Co. Ltd.

As is further stated in the statutory declaration of Mr. Fukuwa, under point 5, the "Twincome" eyeglasses system was presented on the occasion of a sales promotion by the Le Coane Group on 21 June 1995 in Osaka. Attachment B of the statutory declaration by Mr. Fukuwa is a protocol of this sales promotion of the Le Coane Group. Page 1 of Attachment B lists the names of a total of 21 members of the Le Coane Group who participated in this promotion. All participants are

representatives of Japanese firms who are wholesalers and intermediate dealer as well as retailers for eyeglasses, i.e. an audience of experts in this field. In the course of the sales promotion, as shown in point 9 of Attachment B, the Pentax Vision Co. Ltd. presented a new spectacle frame with inset magnets.

This spectacle system presented by the Pentax Vision Co. Ltd. was the newly-developed "Twincome" spectacle system, as is made plausible by point 6 of the statutory declaration made by Mr. Fukuwa. Thus, during the sales promotion, technical drawings of various "Twincome" spectacle models were displayed on information boards, and prototypes of the "Twincome" spectacle models were demonstrated to participants in the sales promotion. Attachments C1 to C12 to the statutory declaration are copies of technical drawings and photos of the "Twincome" eyeglasses models.

Thus, Attachments C1 to C5 show technical drawings of various "Twincome" eyeglasses models M-9502, M-9503, M-9504, M-9505 and M-9505A. Each of these technical drawings shows a front view of the respective "Twincome" eyeglasses model as well as a clip-on frame suitable from the point of view of design. In each instance, below the front views, the pair of eyeglasses without clip-on frame and the pair of eyeglasses with clip-on frame are shown.

Attachments C6 to C12 to the statutory declaration are photos of various prototypes of the "Twincome" spectacle models which were demonstrated to the participants of the sales promotion. Attachment C6 shows a "Twincome" spectacle model with a suitable clip-on frame. Attachment C7 shows the same "Twincome" spectacle model with the clip-on frame in place. Attachments C8 to C12 again show various clip-on frames

which can be placed on various "Twincome" spectacle models. As can be seen from the technical drawings as well as the enclosed photos, the "Twincome" eyeglasses presented by the Pentax Vision Co. Ltd. had all the features a) to g) of claim 1 of the contested patent.

The "Twincome" spectacle had a spectacle frame and a clip-on frame for holding spectacle lenses [feature a)]. The spectacle frame had two lateral sections, each of which comprised an extension for hingeably linking a stay [feature b)]. In addition, two projecting parts were provided at the spectacle frame which were attached to hold two first magnetic members at the two lateral sections of the spectacle frame at its rear, i.e. at the side facing the eyes [feature c)]. The clip-on frame had two arms for engaging the spectacle frame, for holding two second magnetic members as well as for engaging the first magnetic members [features d), e) and f)]. The arms of the clip-on frame obviously prevented the clip-on frame from moving downward relative to the spectacle frame [feature g)]. Attachment D3 to these arguments in support of opposition is a drawing made by the opponent; it shows the relevant design details of the "Twincome" spectacle systems in perspective, in order to further clarify agreement of the prior notorious use of the subject with the subject of the contested patent.

A spectacle system comprising all the features a) to g) of claim 1 of the contested patent had thus already been demonstrated, by the opponent, to an expert audience, without any obligations to maintain secrecy, prior to the day of application of the contested patent. As a result of this prior notorious use, the subject of claim 1 of the contested patent is no longer new.

In point 7 of the statutory declaration, Mr. Fukuwa states that the "Twincome" spectacle system was also presented at the International Optical Fair, in the following referred to as IOFT'95, which was held from 3-5 October 1995 in Tokyo and is among the largest trade fairs for spectacle manufacturers and spectacle sellers in Japan. The Pentax Vision Co. Ltd., too, had a presence at the IOFT'95. Attachment D of the statutory declaration shows a general plan of the IOFT'95. Among other things, this plan shows three trade fair booths of the Pentax Vision Co. Ltd. On two trade fair booths, marked on the general plan with the words "Magnet Frames", apart from other spectacle models, "Twincome" spectacle systems were displayed.

In point 8 of the statutory declaration, Mr. Fukuda refers to Attachment E to the statutory declaration. It is a photo showing one of the trade fair booths of the Pentax Vision Co. Ltd. at the IOFT'95, at which booth the "Twincome" spectacle system was presented. Proof of the time when the photo was taken is the date stamp 3 October 1995, exposed at the time the photo was taken, at the right lower margin of the picture. In the picture on the right, a black briefcase is shown which holds four pairs of "Twincome" eyeglasses. At the right of the briefcase there is an information and data sheet in the Japanese language, which refers to the "Twincome" eyeglasses located in the briefcase. It is enclosed as document D4. As can be seen from the translation into English of this information and data sheet, four "Twincome" spectacle models were offered for sale, namely models 9201, 9202, 9203 and 9204.

In the course of the IOFT'95, the information and data sheet (document D4) in conjunction with Attachment F to the statutory declaration, a product announcement for "Twincome" spectacle systems, were distributed to a

large number of people. Among others, these documents were distributed to the representatives of Japanese firms, as listed in point 9 of the statutory declaration, among these were also representatives who had already been present at the sales promotion by the Le Coane Group. It is important to note also that the information and data sheet (document D4) as well as the product announcement for the "Twincome" spectacle system (Attachment F) were distributed to a large circle of people at the IOFT'95 without any secrecy agreement, so that these documents constitute public printed publications.

By way of Attachment F, the Pentax Vision Co. Ltd. presented its new "Twincome" spectacle system in which the clip-on frames could be attached to the spectacle frame by magnets. Thus, page 3 refers to the models, as listed in document D4, models 9201 and 9203 (compare also the English-language translation to Attachment F) and the "Twincome" spectacle system was illustrated in more detail by means of several figures. In this, in particular in the top view on page 3 left, a pair of "Twincome" eyeglasses is easily recognisable, in which an arm protrudes away from the clip-on frame in the direction of the spectacle frame to which a magnet is attached. In the figure shown on the bottom right, a spectacle frame with two magnetic elements in close proximity to the hinge points of the stays is shown.

Here too, it should be noted that the "Twincome" spectacle system presented by the Pentax Vision Co. Ltd. at the IOFT'95 showed all the features a) to g) of claim 1 of the contested patent, as is in particular proven by the figures shown on page 3 of Attachment F. As a result of this prior notorious use as well as the concurrent printed publication, the subject of claim 1 of the contested patent is no longer new.

Finally, in point 10 of the statutory declaration, Mr. Fukuwa also states that the Pentax Vision Co. Ltd. on 30 October 1995 had supplied prototypes of "Twincome" eyeglasses to a substantial number of Japanese dealers. Thus Attachment G to the statutory declaration shows a list of suppliers of the Pentax Sales Division, dated 24 October 1995, the English-language translation of which states that on Monday 30 October 1995 a total of 39 briefcases, each containing 4 pairs of the "Twincome" spectacle models, M-9201, M-9202, M-9203 and M-9204, were delivered to 27 dealers. "Twincome" spectacle models had thus already been made available to dealers in Japan prior to the date of application for the contested patent, to enable these dealers to engage in advertising on their premises for the new product by the Pentax Vision Co. Ltd. This represents at least a 27-fold prior notorious use.

However, the subject of claim 1 also results from a summary of the state of the art as determined already during the examination procedure, as explained below.

Document D5, JP-7 128 620 A, in Fig. 1 depicts a pair of eyeglasses with a spectacle frame which holds spectacle lenses. The spectacle frame comprises two lateral sections each of which has an extension for hingeably linking a stay. Furthermore, at the two lateral sections of the spectacle frame, two magnetic members are attached. In addition, Fig. 1 shows a clip-on frame for holding spectacle lenses. This clip-on frame has two laterally protruding arms, each of which holds a second magnetic member which interacts with the first magnetic member of the spectacle frame when the clip-on frame is placed onto the spectacle frame, as shown in Figs. 2 and 3.

It is thus important to note that features a), b), e) and f) are completely known, and feature c) is partially known, from document D5.

Based on a pair of eyeglasses with clip-on frame according to document D5, it is thus the object of the contested patent to provide a clip-on frame which can engage the spectacle frame in a stable way and which can be mounted to it with little effort (compare contested patent, column 1, lines 43 to 45).

In the contested patent, this object is to be met in that the two first magnetic members are held by two projecting parts attached to the spectacle frame at its rear, i.e. the side facing the eyes, and by the clip-on frame comprising two arms for interacting with the spectacle frame, by which the second magnetic members are held whereby the arms prevent the clip-on frame from moving downwards relative to the spectacle frame.

Document D6, FR-PS 10 61 253 describes a pair of eyeglasses comprising a spectacle frame and a clip-on frame for holding spectacle frames. The clip-on frame, in the area of the nose stay 6 comprises a first arm 2 which at its free end is bent hook-like, and at each of its lateral surfaces comprises a further arm 3 which is also bent hook-like downward. The clip-on frame with its hook-like bent arms 2, 3 engages the spectacle frame and thus prevents the clip-on frame from moving downward relative to the spectacle frame.

With the knowledge of the magnetic holding device according to document D5, an expert, without mental performance exceeding his expert knowledge, could arrive at a solution in which the magnetic members on the arms 2, 3 are attached according to document D6, so that this corresponds entirely with the solution stated

in claim 1 of the contested patent. The teaching according to claim 1 of the contested patent is therefore not based on an inventive step.

## 2. Regarding the dependent claim 2:

The solution stated in claim 2, to arrange the projecting parts and the first magnetic members lower than an upper section of the spectacle frame, and to design the second magnetic members in such a way a that they extend downwards for hooking in at the spectacle frame, is provided for example by document D7, DE-85 07 761 U1. Document D7 discloses a pair of eyeglasses 1 with exchangeable lenses 2, 3 which are attached to the frame 8 of the pair of eyeglasses 1 by means of a magnetic holding device 9, 10. To ensure that the lenses 2, 3 of the pair of eyeglasses 1 are held particularly well, safely and in the correct position on the spectacle frame 8, the magnetic holding device 9, 10 can comprise a positive-lock fit (compare D7, page 5, lines 14 to 18). The aim of using these positive-lock fitting devices is to safeguard the lenses 2, 3 from moving upward or downward as well as laterally, by the positive lock (compare D6, page 6, lines 29 to 34). The solution stated in claim 2 of the contested patent only represents a different embodiment of the positive-lock fit known from document D7, with a magnetic holding device.

Since once claim 1 has ceased to exist, claim 2 cannot establish protective ability of the subject of the patent, the request, made above, for complete revocation of the contested patent is well founded.

If the patent division is unable to decide on revocation of the contested patent straight away, then

we request that witnesses be heared; first of all Mr.
Fukuwa.

If required, German translations of Attachments B, F
and G to the statutory declaration can be handed in
later.

[Signature]
Dr. Thurn

<u>List of attachments to the statutory declaration of Mr. Fukuwa</u>

Attachment A:      Schematic  diagram  of  a  pair  of
                   "Twincome" eyeglasses;


Attachment B:      Protocol of the sales promotion of 12
                   June 1995 of the Le Coane Group with
                   English translation;


Attachment C1:     Technical  drawing  of  the  pair  of
                   "Twincome"  eyeglasses  M-9502  which
                   were   presented   at   the   sales
                   promotion;


Attachment C2:     Technical  drawing  of  the  pair  of
                   "Twincome"  eyeglasses  M-9503  which
                   were   presented   at   the   sales
                   promotion;


Attachment C3:     Technical  drawing  of  the  pair  of
                   "Twincome"  eyeglasses  M-9504  which
                   were   presented   at   the   sales
                   promotion;


Attachment C4:     Technical  drawing  of  the  pair  of
                   "Twincome"  eyeglasses  M-9505  which
                   were   presented   at   the   sales
                   promotion;


Attachment C5:     Technical  drawing  of  the  pair  of
                   "Twincome"  eyeglasses  M-9505A  which
                   were   presented   at   the   sales
                   promotion;

Attachment C6:    Photo of a pair of "Twincome" eyeglasses with clip-on frame which were presented at the sales promotion;

Attachment C7:    Photo of the same pair of "Twincome" eyeglasses with the clip-on frame in position, which were presented at the sales promotion;

Attachment C8:    Photo of four further clip-on frames which were presented at the sales promotion;

Attachment C9:    Photo of one of the clip-on frames which were presented at the sales promotion;

Attachment C10:   Photo of one of the clip-on frames which were presented at the sales promotion;

Attachment C11:   Photo of one of the clip-on frames which were presented at the sales promotion;

Attachment C12:   Photo of one of the clip-on frames which were presented at the sales promotion;

Attachment D:     General plan showing the three trade fair booths of the Pentax Vision Co. Ltd. at the International Optical Fair in Tokyo, with English translation;

Attachment E:    Photo taken on 3 October 1995 showing the trade fair booth of the Pentax Vision Co. Ltd;

Attachment F:    Product announcement, as distributed at the IOFT'95, for "Twincome" spectacle systems, with English translation;

Attachment G:    List of suppliers of the Pentax Sales Division, dated 24 October 1995, with English translation.

## ABSTRACT

The innovation provides a pair of eyeglasses 1 with exchangeable lenses 2, 3, characterised in that at the crosspiece 8 of the spectacle frame, between the two spectacle stays 4, 5, the first part 9 is a magnetic holding device 9, 10 whose other part is fixed to a connecting piece 10 holding the lenses 2, 3 and located between the said lenses of the eyeglasses, or constituting this connecting piece 10. The nose piece 11 can either be part of the crosspiece 8, or the connecting piece can be designed as a nose piece.

**APPENDIX 2**

Filed by:   Judge Jameson Lee                Paper No. 7
            Box Interference
            Washington, D.C. 20231
            Tel:  703-308-9793
            Fax:  703-308-7953

UNITED STATES PATENT AND TRADEMARK OFFICE

BEFORE THE BOARD OF PATENT APPEALS
AND INTERFERENCES
(Judge Jameson Lee)

**MAILED**

**OCT 6  1998**

PATENT OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

RICHARD CHAO[1]

Junior Party,

v.

TOSHIKAZU IWAMOTO[2]

Senior Party.

**RECEIVED**

**OCT 13 1998**

**FLIESLER DUBB,
MEYER & LOVEJOY**

Patent Interference No. 104,051

RE-DECLARATION OF INTERFERENCE

This interference was first declared on September 8, 1998.
Counsel to the senior party alerted the Administrative Patent
Judge (APJ) to the possibility that the count was incorrectly
stated, given the discussions in the examiner's initial
interference memorandum.

Upon consideration, the APJ finds the count as indicated in
the original declaration of interference to be incorrectly

---

[1]      Application 08/554,854, filed November 7, 1995, now
Patent No. 5,568,207, issued October 22, 1996.

[2]      Application 08/655,828, filed May 31, 1996.  Accorded the
benefit of Japanese application 07-156,856, filed May 31, 1995, and
Japanese application 08-153,172, filed May 24, 1996.

1

Interference No. 104,051
Chao v. Iwamoto

stated.  The interference is herein re-declared as follows:

### Count 1

In the alternative,
Iwamoto's application claim 1, or
Chao's patent claim 1.

Claims corresponding to count 1:
Iwamoto: claims 1, 3, 4, 14, 21, 22, and 27-29.
Chao:     claim 1

For count 1, Iwamoto is accorded the benefit of Japanese
application 7-156,856, filed May 31, 1995, and Japanese
application 8-153,172, filed May 24, 1996.

### Count 2

In the alternative,
Iwamoto's application claim 30, or
Chao's patent claim 2.

Claims corresponding to count 2:
Iwamoto:  claims 7-9, 15-18, 23-26, 30, and 31-47
Chao:     claim 2

For count 2, Iwamoto is accorded the benefit of Japanese
application 7-156,856, filed May 31, 1995, and Japanese
application 8-153,172, filed May 24, 1996.

The following parts of the original notice declaring the

interference are superceded by provisions set forth in this paper

and thus shall be disregarded by the parties:

1.    Time Periods A through E and the provision for

automatically extending Time Periods A through E (pp. 5-6).

2.    The requirement to call the Administrative Patent Judge

if any cross-examination of affiants is desired (p.6).

3.    The section on "Affidavits and exhibits" (pp. 8-9).

2

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Reissue Application | ) REISSUE PATENT APPLICATION |
| | ) |
| Inventor:    Richard Chao | ) |
| | ) Art Unit:    2873 |
| Reissue Application No.: 09/182,862 | ) |
| | ) Examiner:    Mai, H. |
| Filed:    10/21/98 | ) |
| | ) |
| Patent No.:    5,568,207 | ) Customer No.: 23910 |
| | ) |
| Title:    AUXILIARY LENSES FOR | ) |
| EYEGLASSES | ) |
| | ) |

**CERTIFICATE OF MAILING UNDER 37 C.F.R. § 1.8**

I hereby certify that this correspondence is being deposited in the United States Postal Service with sufficient postage as first class mail in an envelope addressed to Commissioner for Patents, Washington, DC 20231, on November 22, 2000.

_____ (Attorney Signature)

Brian I. Marcus, Reg. No. 34,511
Signature Date: November 22, 2000

### LETTER TO OFFICIAL DRAFTSPERSON

Official Draftsperson
Commissioner of Patents
Washington, DC  20231

Sir:

Filed herewith is a corrected Fig. 8 drawing sheet.  It is respectfully requested that the new drawing sheet be substituted for the originally filed drawing sheet for Fig. 8.

Respectfully submitted,

Date:  November 22, 2000                    By: _____

Brian I. Marcus
Reg. No. 34,511

FLIESLER, DUBB, MEYER & LOVEJOY LLP
Four Embarcadero Center, Suite 400
San Francisco, California 94111-4156
Telephone: (415) 362-3800

- 1 -

Attorney Docket No.. CONT-01013US1 SRM/BIM
bim/cont/1013usT.015.wpd





21

13

FIG. 8

Our Docket No. 4168-4001

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                                    :
                                                    :
  **Letters Patent 5,568,207**                      :
                                                    :
Richard **CHAO**                                    :         Examiner: H. Mai
                                                    :
Serial No.:      09/182,862                         :         Group Art Unit: 2873
                                                    :
Filed:   October 21, 1998                           :
                                                    :
For: AUXILIARY LENSES FOR EYEGLASSES  :

Commissioner for Patents
Washington, D.C. 20231

RECEIVED
FEB 21 2001
TECHNOLOGY CENTER 2800

### POWER OF ATTORNEY BY INVENTOR

SIR:

    I am the original and sole inventor of the subject matter which is described and claimed in U.S. Patent No. 5,568,207 ("the '207 patent") granted on October 22, 1996, and the above-identified reissue application.

    I hereby appoint the following attorneys and/or agents with full power of substitution and revocation, to prosecute this application, to receive the patent, and to transact all business in the Patent and Trademark Office connected therewith:

    Michael S. Marcus (Reg. No. 31,727) of Morgan & Finnegan, L.L.P., whose address is: 1775 Eye Street, Suite 400, Washington, D.C. 20006.

21238_1

Supplemental Reissue Declaration
Serial No. 09/182,862

Docket No. 4168-4001

Please direct all correspondence concerning this and all related applications to the

following address:

        Michael S. Marcus
        MORGAN & FINNEGAN, L.L.P.
        345 Park Avenue
        New York, NY 10154-0053

**DIRECT TELEPHONE CALLS TO:**    Michael S. Marcus
                                       202-857-7887

**Richard CHAO**

Inventor's signature:

Date: 2-19-2001

09182862.070401

21238 1

Patent                                                      Docket No. 4168-4001

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                         :

  **Letters Patent 5,568,207**          :
                                         :
Richard **CHAO**                          :    Examiner: H. Mai
                                         :
Serial No.:   09/182,862          :    Group Art Unit: 2873
                                         :
Filed:  October 21, 1998            :
                                         :
For: AUXILIARY LENSES FOR EYEGLASSES     :

Commissioner of Patents
Washington, D.C. 20231

## SUPPLEMENTAL AMENDMENT

SIR:

    Kindly amend the above-identified application as follows:

## IN THE CLAIMS:

1.    **(Twice Amended)** An eyeglass device comprising:

    a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, said primary spectacle frame including two rear and side portions each having a projection secured thereto, said primary spectacle frame including an upper side portion,

    a pair of first magnetic members secured in said projections respectively,

    an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including two side portions each having an arm extended therefrom, for extending over and for engaging with said upper side portion of said primary spectacle frame, and

    a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame,

1

22096_1

Supplemental Amendment
Serial No. 09/182,8██

Docket No. 4168-4001

said arms being engaged with and supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame and so as to prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame and so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

## REMARKS

Claims 1-66 are pending in the application. Claim 1 has been revised and returned to its original form. Thus, upon entry of the above Amendment, reissue claim 1 will be identical to claim 1 of U.S. Patent 5,568,207. Entry and reconsideration are respectfully requested.

Applicant, on November 22, 2000, filed a response to the Examiner's July 15, 1999 Office Action. In that response, Applicant argued that the Examiner's rejections are improper, and should be withdrawn. Applicant hereby reaffirms those arguments.

## AUTHORIZATIONS:

No petition or fee is necessary.

The Commissioner is also hereby authorized to charge any additional fees which may be required for timely consideration of this Amendment under 37 C.F.R. §§ 1.16 and 1.17, or credit any overpayment to Deposit Account No. 13-4500 Order No. 4168-4001.

Respectfully submitted,

Date:  February 28, 2001

By: _Michael S. Marcus_

Michael S. Marcus, Esq.
Registration No. 31,727
(202)-857-7887 Telephone
(202)-857-7929 Facsimile

Correspondence Address:
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800 Telephone
(212) 758-6849 Facsimile

2

22096_1

Patent

Docket No. 4216-4000

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of : 

**Letters Patent 5,568,207** : 

Richard **CHAO** : Examiner: H. Mai

Serial No.: 09/182,862 : Group Art Unit: 2873

Filed: October 21, 1998 :

For: AUXILIARY LENSES FOR EYEGLASSES :

Commissioner of Patents
Washington, D.C. 20231

### SECOND SUPPLEMENTAL AMENDMENT

SIR:

    Kindly amend the above-identified application as follows:

### IN THE CLAIMS:

1. **(Thrice Amended)** An eyeglass device comprising:

    a primary spectacle frame for supporting primary lenses therein, said primary spectacle frame including two side portions each having an extension extended therefrom for pivotally coupling a leg means thereto, said primary spectacle frame including two rear and side portions each having a projection secured thereto, said primary spectacle frame including an upper side portion,

    a pair of first magnetic members secured in said projections respectively,

    an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary spectacle frame including two side portions each having an arm extended therefrom, with at least one arm for extending over [and for engaging with] said upper side portion of said primary spectacle frame, and

    a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame.

1

Supplemental Amendment
Serial No. 09/182,862

Docket No. 4216-4000

at least one of said arms being [engaged with and] supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame and so as to prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame and so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

## REMARKS

Claim 1 has been amended to be identical in scope with originally amended reissue claim 1. Entry is respectfully requested.

## AUTHORIZATIONS:

No petition or fee is necessary.

The Commissioner is also hereby authorized to charge any additional fees which may be required for timely consideration of this Amendment under 37 C.F.R. §§ 1.16 and 1.17, or credit any overpayment to Deposit Account No. 13-4500 Order No. 4216-4000.

Respectfully submitted,

Date: **March 1, 2001**

By: _Michael S Marcus_

Michael S. Marcus, Esq.
Registration No. 31,727
(202)-857-7887 Telephone
(202)-857-7929 Facsimile

**Correspondence Address:**
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800 Telephone
(212) 758-6849 Facsimile

22144_1

Patent                                                    Docket No. <u>4216-4000</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                              :
                                              :
**Letters Patent 5,568,207**                  :
                                              :
Richard **CHAO**                              :        Examiner: H. Mai
                                              :
Serial No.:    09/182,862                     :        Group Art Unit: 2873
                                              :
Filed:   October 21, 1998                     :
                                              :
For: AUXILIARY LENSES FOR EYEGLASSES   :

Commissioner of Patents
Washington, D.C. 20231

## <u>NOTICE OF PENDING LITIGATION</u>

SIR:

Applicant would like to bring to the attention of the Examiner the following pending litigations involving the above-identified patent, which "Notice of Pending Litigation" supplements applicant's original notice of concurrent proceedings provided in paragraph No. 10 of the Reissue Declaration filed on October 21, 1998:

1- <u>Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.</u>, C.A. No. 99-1623 CM (BQRx), (C.D. Cal. February 7, 1999).

2- <u>Aspex Eyewear, Inc. v. E'Lite Optik, Inc.</u>, C.A. No. 3:98-CV-2996-D (N.D. Tex. December 22, 1998).

3- <u>Aspex Eyewear, Inc., et al. v. Concept In Optics, Inc., et al.</u>, C.A. No. 00-7067 CIV (S.D. Fla. July 28, 2000).

4- <u>Aspex Eyewear, Inc., v. Cohen's Fashion Optical</u>, C.A. No. 99-5978 CIV (RWS) (S.D.N.Y. July 27, 1999). Stayed

5- <u>Aspex Eyewear, Inc., et al. v. Vetri and BLM&D</u>, C.A. No. 00-5533 CIV (S.D.N.Y. July 26, 2000).

1

22567_1

Notice of Pending Litigation                                    Docket No. 4216-4000
Serial No. 09/182,862

6-   Aspex Eyewear, Inc., et al. v. Regent Optical, C.A. No. 98-7829-RAP (BQRX)
     (C.D. Cal. September 28, 1998.)

7-   Regent Optical v. Aspex Eyewear, Inc., et al., C.A. No. 00-3639 (SEITZ) (S.D. Fla.
     September 28, 2000).

8-   Aspex Eyewear, Inc. v. Renditions Optical, C.A. No. 99-CV-2156- (N.D. Ga.
     August 23, 1999).

Applicant expressly requests that the U.S. Patent and Trademark Office continue

examination of the above-identified application.

Respectfully submitted,

Date: **March 20, 2001**                          By: _Michael S. Marcus_

                                                  Michael S. Marcus, Esq.
                                                  Registration No. 31,727
                                                  (202)-857-7887 Telephone
                                                  (202)-857-7929 Facsimile

**Correspondence Address:**
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800 Telephone
(212) 758-6849 Facsimile

2

22567_1

Patent

Docket No. 4216-4000

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                                    :

**Letters Patent 5,568,207**                        :

Richard **CHAO**                                    :          Examiner: H. Mai

                                                    :
Serial No.:     09/182,862                          :          Group Art Unit: 2873

                                                    :
Filed:   October 21, 1998                           :

For: AUXILIARY LENSES FOR EYEGLASSES               :

TECHNOLOGY CENTER 2800    MAR 29 2001    RECEIVED

## SUBMISSION OF OFFER TO SURRENDER PATENT

Commissioner of Patents
Washington, D.C. 20231

Sir:

    Attached herewith is an executed Offer to Surrender Patent by Asahi Kogaka Kogyo Kabushiki Kaisha (A.K.A. Asahi Optical Co., Ltd.), assignee in the above-identified U.S. Patent No. 5,568,207.

Respectfully submitted,
MORGAN & FINNEGAN, L.L.P.

Dated: ___March 29, 2001___          By: ___*Michael S Marcus*___

Michael S. Marcus
Registration No. 31,727
(202) 857-7887   Telephone
(202) 857-7929   Facsimile

CORRESPONDENCE ADDRESS:
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, NY 10154

-1-

22949 1

Patent                                                          Docket No. <u>4216-4000</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue of | : | |
| | : | |
| **Letters Patent 5,568,207** | : | |
| | : | |
| Richard CHAO | : | Examiner: H. Mai |
| | : | |
| Serial No.:    09/182,862 | : | Group Art Unit: 2873 |
| | : | |
| Filed:    October 21, 1998 | : | |
| | : | |
| For: AUXILIARY LENSES FOR EYEGLASSES | : | |

### OFFER TO SURRENDER PATENT

Commissioner for Patents
Washington, D.C. 20231

**SIR:**

    I am empowered to sign this OFFER TO SURRENDER PATENT pursuant to 37 C.F.R. § 1.178 on behalf of the undersigned assignee, Asahi Kogaka Kogyo Kabushiki Kaisha (A.K.A. Asahi Optical Co., Ltd.), who is the assignee of the entire right, title, and interest of a one-half part of United States Patent No. 5,568,207 recorded on **May 24, 2000, Reel 010848, Frame 0278.**

    The undersigned assignee offers to surrender United States Patent No. 5,568,207 for its reissue.

Respectfully submitted,

*Naoyuki Uno*

Naoyuki Uno
Senior Managing Director
Asahi Kogaka Kogyo Kabushiki Kaisha
(A.K.A. Asahi Optical Co., Ltd.)

Date: March 27, 2001

RECEIVED
MAR 29 2001
TECHNOLOGY CENTER 2800

22740_1

Patent                                                      Docket No. <u>4216-4000</u>

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                               :

  **Letters Patent 5,568,207**                 :

Richard **CHAO**                               :       Examiner: H. Mai

Serial No.:     09/182,862                     :       Group Art Unit: 2873

Filed:   October 21, 1998                      :

For: AUXILIARY LENSES FOR EYEGLASSES  :

### SUBMISSION OF SUPPLEMENTAL REISSUE DECLARATION BY INVENTOR

Commissioner of Patents
Washington, D.C. 20231

Sir:

   Attached herewith is an executed Supplemental Reissue Declaration by Inventor, Richard Chao, for the above-identified reissue of U.S. Patent No. 5,568,207.

                                     Respectfully submitted,
                                     MORGAN & FINNEGAN, L.L.P.


Dated: ___March 29, 2001_____        By: _Michael S. Marcus_
                                          Michael S. Marcus
                                          Registration No. 31,727
                                          (202) 857-7887   Telephone
                                          (202) 857-7929   Facsimile


CORRESPONDENCE ADDRESS:
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, NY 10154

RECEIVED
HAR 29 2001
TECHNOLOGY CENTER 2800

1

22951_1

Patent                                                    Docket No. 4216-4000

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                              :
                                              :
**Letters Patent 5,568,207**                  :
                                              :
Richard **CHAO**                              :        Examiner: H. Mai
                                              :
Serial No.:    09/182,862                     :        Group Art Unit: 2873
                                              :
Filed:   October 21, 1998                     :
                                              :
For: AUXILIARY LENSES FOR EYEGLASSES          :

RECEIVED
MAR 29 2001
TECHNOLOGY CENTER 2800

### SUBMISSION OF SUPPLEMENTAL REISSUE DECLARATION BY INVENTOR

Commissioner of Patents
Washington, D.C. 20231

Sir:

   Attached herewith is an executed Supplemental Reissue Declaration by Inventor, Richard Chao, for the above-identified reissue of U.S. Patent No. 5,568,207.

                                    Respectfully submitted,
                                    MORGAN & FINNEGAN, L.L.P.


Dated:    March 29, 2001            By: _Michael S. Marcus_
                                        Michael S. Marcus
                                        Registration No. 31,727
                                        (202) 857-7887   Telephone
                                        (202) 857-7929   Facsimile


CORRESPONDENCE ADDRESS:
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, NY 10154

1

22951_1

Mar-28-2001  03:25pm   From-MORGAN   FINEGAN                    +2028577929           T-504  P.002/004  F-750

Our Docket No. <u>4216-4000</u>

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

In re Reissue of                                :

   **Letters Patent 5,568,207**                 :

Richard CHAO                                    :           Examiner: H. Mai

Serial No.:    09/182,862                       :           Group Art Unit: 2873

Filed:  October 21, 1998                        :

For: AUXILIARY LENSES FOR EYEGLASSES  :

Commissioner for Patents
Washington, D.C. 20231

<u>SUPPLEMENTAL REISSUE DECLARATION BY INVENTOR</u>

SIR:

     **As a below named inventor, I hereby declare that:**

I.       My residence, post office address and citizenship are stated below next to my name.

II.      I believe I am the original and first inventor of the subject matter which is described and claimed in U.S. Patent No. 5,568,207 ("the '207 patent") granted on October 22, 1996, and for which a reissue patent is sought.

III.     I have reviewed and understand the contents of the '207 patent, including the claims as filed in this reissue and specifically referred to in either this supplemental oath or declaration, or the oath or declaration filed on October 21, 1998.

Supplemental Reissue Declaration
Serial No. 09/182,862

Docket No. <u>4216-4000</u>

IV.   I acknowledge the duty to disclose information known to me which is material to

patentability as defined in 37 C.F.R. §§ 1.56 and 1.175(a)(7).

V.   All errors corrected by this reissue application up to the time of filing this supplemental

oath or declaration under 37 C.F.R. §1.175 occurred without any deceptive intent on the

part of the applicant.

VI.   I verily believe the '207 patent is wholly or inoperative by failing to provide a figure of an

alternate embodiment of FIG. 7, labeled "FIG. 8" in which only "arm 21" extends

downward towards projection 13, as expressly disclosed at column 3, lines 1-10,

> ...and the end portions of the arms 21 ... are slightly extended
> downward toward the projections 13 such that the arms 21...or the
> magnetic members 22 may hook on the primary spectacle frame 10
> and such that the auxiliary spectacle frame 20 may further be
> stably supported and secured to the primary spectacle frame 10.

VII.   I verily believe the '207 patent is wholly or partly inoperative by failing to include the

following description of FIG. 7, that describes the spacing between the magnets 14 and

22 which "spacing" is clearly depicted in original application FIG. 7.

> *In one embodiment, as shown in FIG. 7, magnetic members
> 14 and 22 are not in contact with each other, magnetic members
> 14 and 22 are engaged with, but not supported on, each other.
> Instead, the arms 21 securing the magnetic member 22 is
> supported on an upper side portion of the primary spectacle frame
> 10. As shown in FIG. 7, the upper side portion can be an upper
> part of the side portion securing the projection 13.*

VIII.   I verily believe the '207 patent is wholly or partly inoperative by claiming less than I was

entitled to claim, which error arose without deceptive intent.  It was error, without

deceptive intent, to recite in patent claim 1 "each having an arm extended for extending

22832_1

Mar-23-2001 02:27pm From-MORGAN FINNEGAN +2028577929 T-504 P.004/004 F-750

Supplemental Reissue Declaration
Serial No. 09/182,862

Docket No. 4216-4000

over and for engaging with said upper side portion" instead of "at least one arm for

extending over said upper side portion."

IX.    I hereby declare that all statements made herein of my own knowledge are true and that

all statements made on information and belief are believed to be true; and further that

these statements were made with the knowledge that willful false statements and the like

so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18

of the United States Code and that such willful false statements may jeopardize the

validity of the application or any patent issued thereon.


X.    I hereby specify the following as the correspondence address to which all

communications about this application are to be directed:

**SEND CORRESPONDENCE TO:**      Michael S. Marcus
                                 MORGAN & FINNEGAN, L.L.P.
                                 345 Park Avenue
                                 New York, NY 10154-0053

**DIRECT TELEPHONE CALLS TO:**   Michael S. Marcus
                                 202-857-7887

Full name of sole or first inventor: Richard CHAO
Inventor's signature:                          Date: 3-23-2001
Residence: 6th Industrial Fifth Road, Tou Chiau Industrial Park, Chiayi 621, Taiwan
Citizenship: Taiwan
Post Office Address: No. 6th Industrial Fifth Rd., Tou Chiau Industrial Park, Chiayi 621, Taiwan

22832_1

Our Docket No. 4216-4000

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | |
|---|---|---|
| In re Reissue of | : | |
| **Letters Patent 5,568,207** | : | |
| | : | |
| Richard **CHAO** | : | Examiner: H. Mai |
| | : | |
| Serial No.: 09/182,862 | : | Group Art Unit: 2873 |
| | : | |
| Filed: October 21, 1998 | : | |
| | : | |
| For: AUXILIARY LENSES FOR EYEGLASSES | : | |

Commissioner for Patents
Washington, D.C. 20231

## SUPPLEMENTAL REISSUE DECLARATION BY INVENTOR

SIR:

**As a below named inventor, I hereby declare that:**

I.   My residence, post office address and citizenship are stated below next to my name.

II.   I believe I am the original and first inventor of the subject matter which is described and claimed in U.S. Patent No. 5,568,207 ("the '207 patent") granted on October 22, 1996, and for which a reissue patent is sought.

III.   I have reviewed and understand the contents of the '207 patent, including the claims as filed in this reissue and specifically referred to in either this supplemental oath or declaration, or the oath or declaration filed on October 21, 1998.

22832_1

Mar-23-2001 03:26pm From-MORGAN FINNEGAN   +2028577828   T-504 P.003/004 F-750

Supplemental Reissue Declaration                                  Docket No. 4216-4000
Serial No. 09/182,862

IV.   I acknowledge the duty to disclose information known to me which is material to

patentability as defined in 37 C.F.R. §§ 1.56 and 1.175(a)(7).

V.    All errors corrected by this reissue application up to the time of filing this supplemental

oath or declaration under 37 C.F.R. §1.175 occurred without any deceptive intent on the

part of the applicant.

VI.   I verily believe the '207 patent is wholly or inoperative by failing to provide a figure of an

alternate embodiment of FIG. 7, labeled "FIG. 8" in which only "arm 21" extends

downward towards projection 13, as expressly disclosed at column 3, lines 1-10,

> ...and the end portions of the arms 21 ... are slightly extended
> downward toward the projections 13 such that the arms 21...or the
> magnetic members 22 may hook on the primary spectacle frame 10
> and such that the auxiliary spectacle frame 20 may further be
> stably supported and secured to the primary spectacle frame 10.

VII.  I verily believe the '207 patent is wholly or partly inoperative by failing to include the

following description of FIG. 7, that describes the spacing between the magnets 14 and

22 which "spacing" is clearly depicted in original application FIG. 7.

> *In one embodiment, as shown in FIG. 7, magnetic members*
> *14 and 22 are not in contact with each other, magnetic members*
> *14 and 22 are engaged with, but not supported on, each other.*
> *Instead, the arms 21 securing the magnetic member 22 is*
> *supported on an upper side portion of the primary spectacle frame*
> *10. As shown in FIG. 7, the upper side portion can be an upper*
> *part of the side portion securing the projection 13.*

VIII. I verily believe the '207 patent is wholly or partly inoperative by claiming less than I was

entitled to claim, which error arose without deceptive intent.  It was error, without

deceptive intent, to recite in patent claim 1 "each having an arm extended for extending

22232_1

Supplemental Reissue Declaration
Serial No. 09/182,862

Docket No. 4216-4000

over and for engaging with said upper side portion" instead of "at least one arm for
extending over said upper side portion."

IX.   I hereby declare that all statements made herein of my own knowledge are true and that
all statements made on information and belief are believed to be true; and further that
these statements were made with the knowledge that willful false statements and the like
so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18
of the United States Code and that such willful false statements may jeopardize the
validity of the application or any patent issued thereon.

X.   I hereby specify the following as the correspondence address to which all
communications about this application are to be directed:

**SEND CORRESPONDENCE TO:**          Michael S. Marcus
                                     MORGAN & FINNEGAN, L.L.P.
                                     345 Park Avenue
                                     New York, NY 10154-0053

**DIRECT TELEPHONE CALLS TO:**       Michael S. Marcus
                                     202-857-7887

Full name of sole or first inventor: Richard CHAO

Inventor's signature: _____   Date: 3-23-200/

Residence: 6th Industrial Fifth Road, Tou Chiau Industrial Park, Chiayi 621, Taiwan

Citizenship: Taiwan

Post Office Address: No. 6th Industrial Fifth Rd., Tou Chiau Industrial Park, Chiayi 621, Taiwan

22832_1

255

Patent                                                          Docket No. 4216-4000

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of                              :
                                              :        **VIA HAND CARRY**
  **Letters Patent 5,568,207**                :
                                              :
Richard **CHAO**                              :        Examiner: H. Mai
                                              :
Serial No.:    09/182,862                     :        Group Art Unit: 2873
                                              :
Filed:   October 21, 1998                     :
                                              :
For: AUXILIARY LENSES FOR EYEGLASSES          :

RECEIVED APR - 2 2001 TECHNOLOGY CENTER 2800

### INFORMATION DISCLOSURE STATEMENT

Commissioner of Patents
Washington, D.C. 20231

Sir:

   Pursuant to Rule 56, applicant hereby calls the attention of the Patent Office to the references listed on the attached Form PTO 1449. Copy(ies) of these references ☒ are attached ☐ were filed in related application U.S. Serial No(s)   , filed   , respectively.

☐  This document is being filed within three (3) months of the filing date of the application

☒  Please charge the $180 fee to Deposit Account No. 13-4500, Order No. 4216-4000.

☐  This document is being concurrently filed with the above-identified application

☐  This document is being concurrently filed with an Request for Continued Examination (RCE)

☐  This document is being filed prior to a first Office Action

☐  This document is accompanied by a Search Report/Communication cited in a corresponding PCT or

   foreign counterpart application.

☒  The Commissioner is hereby authorized to charge any additional fees which may be required for this Information Disclosure Statement, or credit any overpayment to Deposit Account No. 13-4500, Order No. 4216-4000. A DUPLICATE COPY OF THIS SHEET IS ATTACHED.

              Respectfully submitted,
              MORGAN & FINNEGAN, L.L.P.

Dated:  April 2, 2001       By: _____

              Michael S. Marcus
              Registration No. 31,727
              (202)857-7887   Telephone
              (202)857-7929   Facsimile

**CORRESPONDENCE ADDRESS:**
MORGAN & FINNEGAN, LLP
345 Park Avenue
New York, NY 10154

23074 1

[AFFIX CUSTOMER NO. LABEL ABOVE [

Page 1 of 1

| FORM PTO-1449 | | Attorney Docket: 4216-4000 | | Serial No.: 09/182,862 | |
|---|---|---|---|---|---|
| **INFORMATION DISCLOSURE CITATION** | | Applicant: R. Chao | | | |
| | | Filing Date: 10/21/98 | | Group Art Unit: 2873 | |

### U.S. PATENT DOCUMENTS

| Examiner Initial | | Document Number | Date | Name | Class | Sub-Class | Filing Date |
|---|---|---|---|---|---|---|---|
| ✓ | AA | 1,679,233 | 7/31/28 | Strauss | 351 | 47 | |
| ✓ | AB | 5,696,571 | 12/9/97 | Spencer et al. | 351 | 47 | |
| ✓ | AC | 3,531,190 | 9/29/70 | LeBlanc | 351 | 113 | |
| ✓ | AD | 3,536,385 | 10/27/70 | Johnston | 351 | 47 | |
| ✓ | AE | 4,070,105 | 1/24/78 | Marzouk | 351 | 159 | |
| ✓ | AF | 4,217,037 | 8/12/80 | Lemelson | 351 | 47 | |
| ✓ | AG | 4,547,909 | 10/22/85 | Bell | 2 | 431 | |
| ✓ | AH | 5,682,222 | 10/28/97 | Chao | 351 | 111 | |
| ✓ | AI | 5,737,054 | 4/7/98 | Chao | 351 | 47 | |
| ✓ | AJ | 5,877,838 | 3/2/99 | Chao | 351 | 47 | |
| ✓ | AK | 5,882,101 | 3/16/99 | Chao | 351 | 47 | |
| ✓ | AL | 5,883,688 | 3/16/99 | Chao | 351 | 47 | |
| ✓ | AM | 5,883,689 | 3/16/99 | Chao | 351 | 47 | |
| ✓ | AN | 5,929,964 | 7/27/99 | Chao | 351 | 47 | |
| ✓ | AO | 6,012,811 | 6/11/00 | Chao et al. | 351 | 47 | |
| ✓ | AP | 6,092,896 | 7/25/00 | Chao et al. | 351 | 47 | |
| ✓ | AQ | 6,109,747 | 8/29/00 | Chao | 351 | 47 | |
| ✓ | AR | 6,170,948 | 1/9/01 | Chao | 351 | 47 | |

### FOREIGN PATENT DOCUMENTS

| | | Document Number | Date | Country | Class | Sub-Class | Translation |
|---|---|---|---|---|---|---|---|
| | AS | | | | | | ☐ Yes ☐ No |

### OTHER DOCUMENTS (Including Author, Title, Date, etc.)

| | | |
|---|---|---|
| | AT | |
| | AU | |

| Examiner Max | Date Considered 5/9/01 |
|---|---|

EXAMINER:   Initial if reference considered, whether or not citation is in conformance with MPEP §609.
Draw line through citation if not in conformance and not considered.
Include copy of this form with next communication to Applicant.

23078_1

*(margin, vertical)* RECEIVED APR - 2 2001 TECHNOLOGY CENTER 2800

*(left margin, vertical)* 09182862.070401

*Interview Summary*

| Application No. | Applicant(s) |
|---|---|
| 09/182,862 | CHAO, RICHARD |
| Examiner | Art Unit |
| Huy K. Mai | 2873 |

All participants (applicant, applicant's representative, PTO personnel):

(1) _Huy K. Mai._

(2) _Michael S. Marcus._

(3) _Georgia Epps, SPE_.

(4) _Clayton LaBalle, SPRE_.& Ed. Glick.

Date of Interview: 4/4/01

Type:  a)☐ Telephonic   b)☐ Video Conference
        c)☒ Personal [copy given to: 1)☐ applicant   2)☒ applicant's representative]

Exhibit shown or demonstration conducted: d)☐ Yes   e)☐ No.
    If Yes, brief description:

Claim(s) discussed: 1- 35

Identification of prior art discussed:

Agreement with respect to the claims f)☒ was reached.   g)☐ was not reached.   h)☐ N/A.

Substance of Interview including description of the general nature of what was agreed to if an agreement was reached, or any other comments: (See the attachment)

(A fuller description, if necessary, and a copy of the amendments which the examiner agreed would render the claims allowable, if available, must be attached.  Also, where no copy of the amendments that would render the claims allowable is available, a summary thereof must be attached.)

   i)☒ It is not necessary for applicant to provide a separate record of the substance of the interview(if box is checked).

Unless the paragraph above has been checked, THE FORMAL WRITTEN REPLY TO THE LAST OFFICE ACTION MUST INCLUDE THE SUBSTANCE OF THE INTERVIEW.  (See MEPEP Section 713.04).  If a reply to the last Office action has already been filed, APPLICANT IS GIVEN ONE MONTH FROM THIS INTERVIEW DATE TO FILE A STATEMENT OF THE SUBSTANCE OF THE INTERVIEW.  See Summary of Record of Interview requirements on reverse side or on attached sheet.

4/5/01
tim

Huy  Mai
Primary Examiner

Examiner Note:  You must sign this form unless it is an
Attachment to a signed Office action

Examiner's signature, if required

U.S. Patent and Trademark Office
PTO-413 (Rev. 03- 98)

Interview Summary

Paper No. 26.

**Summary of Record of Interview Requirements**

**Manual of Patent Examining Procedure (MPEP), Section 713.04, Substance of Interview Must be Made of Record**
A complete written statement as to the substance of any face-to-face, video conference, or telephone interview with regard to an application must be made of record in the application whether or not an agreement with the examiner was reached at the interview.

**Title 37 Code of Federal Regulations (CFR) § 1.133 Interviews**
**Paragraph (b)**
In every instance where reconsideration is requested in view of an interview with an examiner, a complete written statement of the reasons presented at the interview as warranting favorable action must be filed by the applicant. An interview does not remove the necessity for reply to Office action as specified in §§ 1.111, 1.135. (35 U.S.C. 132)

**37 CFR §1.2 Business to be transacted in writing.**
All business with the Patent or Trademark Office should be transacted in writing. The personal attendance of applicants or their attorneys or agents at the Patent and Trademark Office is unnecessary. The action of the Patent and Trademark Office will be based exclusively on the written record in the Office. No attention will be paid to any alleged oral promise, stipulation, or understanding in relation to which there is disagreement or doubt.

The action of the Patent and Trademark Office cannot be based exclusively on the written record in the Office if that record is itself incomplete through the failure to record the substance of interviews.

It is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file, unless the examiner indicates he or she will do so. It is the examiner's responsibility to see that such a record is made and to correct material inaccuracies which bear directly on the question of patentability.

Examiners must complete an Interview Summary Form for each interview held where a matter of substance has been discussed during the interview by checking the appropriate boxes and filling in the blanks. Discussions regarding only procedural matters, directed solely to restriction requirements for which interview recordation is otherwise provided for in Section 812.01 of the Manual of Patent Examining Procedure, or pointing out typographical errors or unreadable script in Office actions or the like, are excluded from the interview recordation procedures below. Where the substance of an interview is completely recorded in an Examiners Amendment, no separate Interview Summary Record is required.

The Interview Summary Form shall be given an appropriate Paper No., placed in the right hand portion of the file, and listed on the "Contents" section of the file wrapper. In a personal interview, a duplicate of the Form is given to the applicant (or attorney or agent) at the conclusion of the interview. In the case of a telephone or video-conference interview, the copy is mailed to the applicant's correspondence address either with or prior to the next official communication. If additional correspondence from the examiner is not likely before an allowance or if other circumstances dictate, the Form should be mailed promptly after the interview rather than with the next official communication.

The Form provides for recordation of the following information:
- Application Number (Series Code and Serial Number)
- Name of applicant
- Name of examiner
- Date of interview
- Type of interview (telephonic, video-conference, or personal)
- Name of participant(s) (applicant, attorney or agent, examiner, other PTO personnel, etc.)
- An indication whether or not an exhibit was shown or a demonstration conducted
- An identification of the specific prior art discussed
- An indication whether an agreement was reached and if so, a description of the general nature of the agreement (may be by attachment of a copy of amendments or claims agreed as being allowable). Note: Agreement as to allowability is tentative and does not restrict further action by the examiner to the contrary.
- The signature of the examiner who conducted the interview (if Form is not an attachment to a signed Office action)

It is desirable that the examiner orally remind the applicant of his or her obligation to record the substance of the interview of each case unless both applicant and examiner agree that the examiner will record same. Where the examiner agrees to record the substance of the interview, or when it is adequately recorded on the Form or in an attachment to the Form, the examiner should check the appropriate box at the bottom of the Form which informs the applicant that the submission of a separate record of the substance of the interview as a supplement to the Form is not required.

It should be noted, however, that the Interview Summary Form will not normally be considered a complete and proper recordation of the interview unless it includes, or is supplemented by the applicant or the examiner to include, all of the applicable items required below concerning the substance of the interview.

A complete and proper recordation of the substance of any interview should include at least the following applicable items:
1) A brief description of the nature of any exhibit shown or any demonstration conducted,
2) an identification of the claims discussed,
3) an identification of the specific prior art discussed,
4) an identification of the principal proposed amendments of a substantive nature discussed, unless these are already described on the Interview Summary Form completed by the Examiner,
5) a brief identification of the general thrust of the principal arguments presented to the examiner,
   (The identification of arguments need not be lengthy or elaborate. A verbatim or highly detailed description of the arguments is not required. The identification of the arguments is sufficient if the general nature or thrust of the principal arguments made to the examiner can be understood in the context of the application file. Of course, the applicant may desire to emphasize and fully describe those arguments which he or she feels were or might be persuasive to the examiner.)
6) a general indication of any other pertinent matters discussed, and
7) if appropriate, the general results or outcome of the interview unless already described in the Interview Summary Form completed by the examiner.

Examiners are expected to carefully review the applicant's record of the substance of an interview. If the record is not complete and accurate, the examiner will give the applicant an extendable one month time period to correct the record.

**Examiner to Check for Accuracy**

If the claims are allowable for other reasons of record, the examiner should send a letter setting forth the examiner's version of the statement attributed to him or her. If the record is complete and accurate, the examiner should place the indication, "Interview Record OK" on the paper recording the substance of the interview along with the date and the examiner's initials.

2

# Interview Summary

1. The applicant will file a new Fig. 8 as shown during the interview to replace the Figure 8 filed on 10/21/98 and 11/27/01

2. Both the attorney and the examiner agreed that the language in the amendment filed on 11/27/01 and 5/1/01 overcome the 112, first paragraph, i.e. the new matter as discussed in the office action, paragraphs # 8,4 will be withdrawn.

3. The attorney will consider to remove the phrase "at least one" in claims because the specification does not support for the embodiment of "at least one arm".

4. The applicant intends to change the language in claim 12 in consideration of the Nishioka patent, because of "the horizontal position.

5. The supplemental declaration filed on 3/29/01 comply with the rule 37 CFR 1.175(a)(1).

6. The applicant intend to file an amendment to reduce a number of claims.

7. The examiner will consider the declaration filed by Richard J. Samuels a person from Twincome - Pentax, on 8/2000

8. The examiner maintains the position "at least one arm" and the 102(a) rejection over Twincome - Pentax, but will reconsider with the declaration from Richard Samuels.



FIG. 8
(REISSUE VERSION)

FIG. 8
(ALTERNATIVE VERSION)

Our Docket No. 4216-4000

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re Reissue of          :

  Letters Patent 5,568,207     :

Richard CHAO            :          Examiner: H. Mai

Serial No.:    09/182,862    :          Group Art Unit: 2873

Filed:   October 21, 1998    :

For: AUXILIARY LENSES FOR EYEGLASSES  :

Commissioner of Patents  ;
Washington, D.C. 20231

RECEIVED
APR 20 2001
TECHNOLOGY CENTER 2800

## AMENDMENT AND INTERVIEW SUMMARY

SIR:

Kindly amend the above-identified application in response to the April 4, 2001 Interview as follows:

## IN THE DRAWINGS:

Please cancel Figure 8.

## IN THE SPECIFICATION:

Column 2, after line 30, delete "Figure 8 illustrates another embodiment of a cross sectional view taken along lines 7-7 of FIG. 6." in its entirety.

-1-

23484 v2

Amendment and Interview Summary                           Docket No. 4216-4000
Serial No. 09/182,862

Column 3, delete and rewrite the first paragraph as follows:

Referring next to FIG. 7, it is preferable that the projections

13 and the magnetic members 14 are located slightly lower

than the upper portion of the primary spectacle frame 10; and

the end portions of the arms 21 and/or the magnetic members

22 are slightly extended downward toward the projections 13

such that the arms 21 and the magnetic members 22 may hook

on the primary spectacle frame 10 and such that the auxiliary

spectacle frame 20 may further be stably supported and secured

to the primary spectacle frame 10.

## IN THE CLAIMS:

For the sake of clarity, all of the claims pending in this reissue,
"original, amended and new" are being reproduced below for housekeeping
purposes.

1. (Four Times Amended)    An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein, said primary spectacle

frame including two side portions each having an extension extended therefrom for pivotally

coupling a leg means thereto, said primary spectacle frame including two rear and side portions

each having a projection secured thereto, said primary spectacle frame including an upper side

portion,

a pair of first magnetic members secured in said projections respectively,

an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary

spectacle frame including two side portions each having an arm extended therefrom for

-2-

23484 v2

Amendment and Interview Summary                                    Docket No. 4216-4000
Serial No. 09/182,862

extending over [and for engaging with] said upper side portion of said primary spectacle frame, and

a pair of second magnetic members secured to said arms respectively for engaging with said first magnetic members of said primary spectacle frame so as to secure said auxiliary spectacle frame to said primary spectacle frame,

said arms being [engaged with and] supported on said upper side portion of said primary spectacle frame so as to allow said auxiliary spectacle frame to be stably supported on said primary spectacle frame and so as to prevent said auxiliary spectacle frame from moving downward relative to said primary spectacle frame and so as to prevent said auxiliary spectacle frame from being disengaged from said primary spectacle frame.

2. **(Original)**   An eyeglass device according to Claim 1, wherein said projections and said first magnetic members are arranged lower than said upper side portion of said primary spectacle frame, said second magnetic members are extended downward toward said projections for hooking on said primary spectacle frame so as to further secure said auxiliary spectacle frame to said primary spectacle frame.

3. (NEW)      An eyeglass device as recited in Claim 1 wherein the first and the second magnetic members are magnets.

**Please cancel claims 4 – 11 without prejudice or disclaimer.**

-3-

23484 v2

Amendment and Interview Summary

Docket No. 4216-4000

Serial No. 09/182,862

**Please amend the claim 12 as follows:**

12. (Once Amended) An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein with the lenses defining a vertical plane, the primary spectacle frame including two side portions, each of the side portions having an extension extended therefrom for pivotally coupling a leg thereto and a first magnet having a horizontal surface and secured to a rear side of each of the side portions of the primary spectacle frame, and

an auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary spectacle frame, the auxiliary spectacle frame including two auxiliary side portions, the auxiliary spectacle frame including two second magnets, each secured to one of the auxiliary side portions for respectively engaging the horizontal surface of one of the first magnets so as to secure the auxiliary spectacle frame to the primary spectacle frame.

**Please cancel claims 13 – 27 without prejudice or disclaimer.**

**Please amend the claim 28 as follows:**

28. (Once Amended) An eyeglass device as recited in Claim 12 wherein at least an end portion of one auxiliary side portion extends downward toward one of the side portions of the primary spectacle frame for hooking on the primary spectacle frame such that the auxiliary spectacle frame is further stably supported and secured to the primary spectacle frame.

**Please cancel claims 29-35 without prejudice or disclaimer.**

-4-

23484 v2

Amendment and Interview Summary
Serial No. 09/182,862

Docket No. 4216-4000

**Please amend the claim 36 as:**

36. **(Once Amended)** An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein;

the primary spectacle frame including two side portions, each side portion having an extension extended therefrom for pivotally coupling a leg thereto; and

the primary spectacle frame including two first magnetic members, each secured to one of the side portions of the primary spectacle frame; and

an auxiliary spectacle frame for supporting auxiliary lenses therein, and for disposing in front of the primary spectacle frame, the auxiliary spectacle frame including two auxiliary side portions, wherein the auxiliary spectacle frame further includes two second magnetic members, each secured to one of the auxiliary side portions, for coupling on a horizontal position with one of the first magnetic members so as to secure the auxiliary spectacle frame to the primary spectacle frame, the horizontal position being substantially perpendicular to a front surface of the primary spectacle frame.

37. (NEW)     An eyeglass device as recited in Claim 36 wherein the second magnetic members are magnets.

38. (NEW)     An eyeglass device as recited in Claim 36 wherein the first magnetic members are magnets.

39. (NEW)     An eyeglass device as recited in Claim 36 wherein the first and the second magnetic members are magnets.

-5-

23484 v2

Amendment and Interview Summary                                    Docket No. 4216-4000
Serial No. 09/182,862

        40. (NEW)    An eyeglass device as recited in Claim 36 wherein the first magnetic

members are not in contact with the second magnetic members.

        41. (NEW)    An eyeglass device as recited in Claim 39 wherein the first magnetic

members are not in contact with the second magnetic members.

---

**Please cancel claims 42- 66 without prejudice or disclaimer.**

**Please add the following new claims:**

        67. (NEW)    An eyeglass device comprising:

        a primary spectacle frame having two side portion extensions, each of said extensions

having a front side, a rear side and a first magnetic member secured to said rear side,

        an auxiliary spectacle frame including two side portions each having an arm extended

therefrom for extending toward and beyond said rear side, each of said arms containing a second

magnetic member, and

        said arms and said first and second magnetic members cooperating to stably support said

auxiliary spectacle frame on said primary spectacle frame.

        68. (NEW)    An eyeglass device comprising:

        a primary spectacle frame for supporting primary lenses therein, said primary spectacle

frame including two side portions each having an extension extended therefrom for pivotally

coupling a leg, each of said extensions also including an outer side, an inner side, and a top side

with a projection secured to said inner side, each of said projections respectively securing a first

magnetic member, and

23484 v2

Amendment and Interview Summary                    Docket No. 4216-4000
Serial No. 09/182,862

an auxiliary spectacle frame for supporting auxiliary lenses therein, said auxiliary

spectacle frame including two side portions each having an arm extended therefrom, said

auxiliary spectacle frame further including a pair of second magnetic members secured to said

arms respectively for engaging said first magnetic members of said primary spectacle, each of

said arms adapted to extend over one of said top sides.

69. (NEW)    An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions

having a front side and a rear side with a first magnetic member secured to said rear side, and

an auxiliary spectacle frame including two side portions, each of said side portions

having an arm extended therefrom for extending beyond said rear side, said arms containing

corresponding second magnetic members, said arms and said first and second magnetic members

supporting said auxiliary spectacle frame on said primary spectacle frame.

70. (NEW)    An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions

extending laterally away from one another and rearwardly of said frame, each of said extensions

having a top side, a front side and a rear side with a first magnetic member secured to said rear

side, and

an auxiliary spectacle frame including two side portions each having an arm extending

from said front side over said top side, said arms containing corresponding second magnetic

members, said arms and said first and second magnetic members supporting said auxiliary

spectacle frame on said primary spectacle frame.

-7-

23484 v2

Amendment and Interview Summary
Serial No. 09/182,862

Docket No. 4216-4000

71. (NEW)     An eyeglass device comprising:

a primary spectacle frame having two side portions, said side portions each having an

extension extending rearwardly therefrom having a top side and a rear side with a first magnetic

member secured thereto, and

an auxiliary spectacle frame including two arms for extending over a corresponding top

side of said extensions, said arms respectively containing second magnetic members for

cooperation with said first magnetic members and downwardly extended end portions for

hooking said auxiliary spectacle frame to said primary spectacle frame, said arms and said first

and second magnetic members supporting said auxiliary spectacle frame on said primary

spectacle frame.

72. (NEW)     An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein having two side portion

extensions, said side portion extensions each having a top side and a projection attached to a rear

side thereof, each of said projections securing a first magnetic member, and

an auxiliary spectacle frame including two arms for extending over and engaging a

corresponding top side of said side portion extensions, said arms respectively containing second

magnetic members and downwardly extended end portions, at least said arms and said first and

second magnetic members supporting said auxiliary spectacle frame on said primary spectacle

frame.

23484 v2

Amendment and Interview Summary                     Docket No. 4216-4000
Serial No. 09/182,862

73. (NEW)      An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein having two side portions, said side portions each having an extension with a top side and a rear side with a first magnetic member secured to said rear side, and

an auxiliary spectacle frame including two arms for extending over and engaging a corresponding top side of said extensions, said arms respectively containing downwardly extended second magnetic members for hooking said auxiliary spectacle to said primary spectacle frame, said arms and said first and second magnetic members cooperating to support said auxiliary spectacle frame on said primary spectacle frame.

74. (NEW)      An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein having an extension at each side for pivotal coupling to a leg, each of said extensions having a front side, a rear side, a top side and a projection attached to said rear side, each of said projections securing first magnetic members, and

an auxiliary spectacle frame for supporting auxiliary lenses therein and including two side portions, each of said side portions having an arm extended therefrom and adapted to extend from said front side to beyond said rear side of said extension of said primary spectacle frame, said arms each containing corresponding second magnetic members, said arms locating each of said second magnetic members in an engagement position to engage respective first magnetic members of said primary spectacle frame and inhibit relative vertical movement therebetween.

-9-

Amendment and Interview Summary
Serial No. 09/182,862

Docket No. 4216-4000

75. (NEW)     An eyeglass device comprising:

a primary spectacle frame for supporting primary lenses therein and having two side portions, an extension extending rearwardly from each of said side portions and having a front side, a rear side, a top side, and a rear end, each of said rear ends pivotally coupling a leg configured to conform to a user at a distal end thereof, each of said extensions of said primary spectacle frame further having a projection attached to each of said rear sides, and a pair of first magnetic members respectively secured in said projections, said first magnetic members capable of engaging second magnetic members of an auxiliary spectacle frame.

76. (NEW)     An eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members can vertically engage corresponding magnetic members on a primary spectacle frame.

-10-

23484 v2

Amendment and Interview Summary                         Docket No. 4216-4000
Serial No. 09/182,862

77. (NEW)     An eyeglass device comprising:

an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including

a front side, a rear side, and oppositely positioned side portions, each of said side portions having

an arm extended therefrom, each of said arms having a rearwardly directed end for securing a

magnetic member, a pair of magnetic members respectively located at said ends of said arms,

each of said ends further including a downwardly extended end portion for hooking onto a

primary spectacle, said arms and said pair of magnetic members adapted to extend across

respective side portions of a primary spectacle frame so that said pair of magnetic members can

engage corresponding magnetic members on a primary spectacle frame.


78. (NEW)     An eyeglass device comprising:

a primary spectacle frame having two side portions each having an extension extending

therefrom and adapted to pivotally couple a leg thereto, said extensions each having a front side,

a rear side, a top side and a projection extending from said rear side, each of said projections

securing a first magnetic member, and

an auxiliary spectacle frame including two side portions each having an arm extended

therefrom for extending over said top side, said arms containing corresponding second magnetic

members, said arms with said second magnetic members engaging said first magnetic members

thereby securing said auxiliary frame to said primary spectacle frame to prevent said auxiliary

spectacle frame from moving downward relative to and/or disengaging from said primary

spectacle frame.


-11-

Amendment and Interview Summary                                    Docket No. 4216-4000
Serial No. 09/182,862

79. (NEW)      The eyeglass device according to claim 67, wherein said first and second

magnets members are magnets.

80. (NEW)      The eyeglass device according to claim 68, wherein said first and second

magnets members are magnets.

81. (NEW)      An eyeglass device, comprising:

a primary spectacle frame for supporting primary lenses therein;

a pair of extensions mounted to said primary spectacle frame at laterally spaced locations

and each projecting toward a wearer when the eyeglass device is worn;

a first pair of magnetic members, each affixed to a respective one of a pair of projections

attached to a rear side of said extensions so as to be concealed by said extensions when said

eyeglass is worn, said first pair of magnetic members each having a first surface;

an auxiliary spectacle frame for supporting auxiliary lenses therein;

a pair of spaced apart arms mounted to said auxiliary spectacle frame and projecting

toward the wearer when the eyeglass device is worn; and

a second pair of magnetic members, each affixed to said pair of arms, said second pair of

magnetic members each having a second surface, said auxiliary spectacle frame capable of being

supported by said primary spectacle frame by mounting said second pair of magnetic members to

said first pair of magnetic members, said first and second surfaces being oppositely directed so

that said surfaces are juxtaposed.

-12-

82. (NEW)   An eyeglass device according to claim 81 wherein said auxiliary frame includes an abutment surface for engagement with an oppositely directed surface on said primary frame to inhibit relative movement therebetween.

83. (NEW)   An eyeglass device according to claim 82 wherein said abutment surface is provided on each of said arms on said auxiliary frame.

84. (NEW).   An eyeglass device according to claim 82 wherein said extensions are located adjacent respective ones of said arms.

85. (NEW)   An eyeglass device according to claim 84 wherein said auxiliary frame includes an abutment surface for engagement with an oppositely directed surface on said primary frame to inhibit relative movement therebetween.

86. (NEW)   An eyeglass device comprising:

a primary spectacle frame having two side portions, said side portions each having an extension extending rearwardly therefrom with a top side and a rear side with a first magnetic member secured thereto, and

an auxiliary spectacle frame including two arms for extending over a corresponding top side of said extensions, said arms respectively containing second magnetic members for cooperation with said first magnetic members and downwardly extended end portions for hooking said auxiliary spectacle frame to said primary spectacle frame, said arms and said first and second magnetic members supporting said auxiliary spectacle frame on said primary

-13-

Amendment and Interview Summary                                    Docket No. 4216-4000
Serial No. 09/182,862

spectacle frame, wherein at least one of said first magnetic members and said second magnetic

members are magnets.

87. (NEW)      An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions

having a front side, a rear side and a first magnetic member secured to said rear side,

an auxiliary spectacle frame including two side portions each having an arm extended

therefrom and traversing said extension from said front side to said rear side, each of said arms

containing a second magnetic member, and

said first and second magnetic members engaging one another to support said auxiliary

spectacle frame on said primary spectacle frame.

88. (NEW)      An eyeglass device comprising:

a primary spectacle frame having two side portion extensions, each of said extensions

having a front side, a rear side and a first magnetic member secured to said rear side,

an auxiliary spectacle frame including two side portions each having an arm extended

therefrom, each of said arms containing a second magnetic member, said arms extending across

said extension from said front side to said rear side, and

said arms and said first and second magnetic members stably support said auxiliary

spectacle frame on said primary spectacle frame.

-14-

Amendment and Interview Summary
Serial No. 09/182,862

Docket No. 4216-4000

89. (NEW)     An eyeglass device comprising:

a primary spectacle frame having two side portions, each of said portions having an

extension with a front side, a rear side and a first magnetic member secured to said rear side,

an auxiliary spectacle frame including two side portions each having an arm extended

therefrom, each of said arms containing a second magnetic member, said arms extending across a

respective extension from said front side to said rear side so that said first and second magnetic

members engage one another whereby said auxiliary spectacle frame is supported by said

primary spectacle frame.

## REMARKS

Upon entry of the above Amendment, claims 4 – 11, 13 – 27, 29 – 35 and 41- 66 will

have been canceled, claims 12, 28 and 36 will have been amended and claims 67 – 89 will have

been added.  As a result of the above Amendment, claims 1-3, 12, 28, 36-41 and 67 – 89 will be

pending in the reissue application, and the number of claims for consideration will have been

reduced from 66 to 34.  No new matter has been introduced by this Amendment.  Entry and

reconsideration are respectfully requested.

**I-     THE APRIL 4, 2001 INTERVIEW:**

On April 4, 2001, an Interview was conducted with Primary Examiner Mai, Supervisor

Ms. Georgia Epps, and SPREs Ed Glick and Clayton LaBalle.  During the Interview the Office

Action dated July 15, 1999, the Richard Chao Supplemental Reissue Declaration filed May 29,

2001, Applicant's November 22, 2000 response, and a set of proposed claims were discussed.

-15-

23484 v2

Amendment and Interview Summary                                        Docket No. 4216-4000
Serial No. 09/182,862

1.    **DISCUSSION OF APPLICANT'S COMPLIANT**
      **SUPPLEMENTAL REISSUE OATH 35 USC § 251**

The Richard Chao supplemental reissue declaration filed on March 29, 2001 was

discussed during the interview, at which time both Examiner Mai and SPRE Glick indicated that

the declaration was in complete compliance with the reissue rules. As a result, it is applicant's

understanding that the Examiner's observations/rejections set forth at ¶s 2 and 3 of the July 1999

Office Action are moot and withdrawn, as indicated in the Examiner's Interview Summary

Record.

2.    **DISCUSSION OF REJECTION OF REISSUE CLAIMS 8, 9, 12, 13,**
      **16-22, 25-35 AS CONTAINING NEW MATTER UNDER 35 USC § 251**

The rejection of claims 8, 9, 12, 13, 16-22, 25-35 under 35 USC § 251 as containing new

matter, set forth in ¶(4) of the July 1999 Office Action, was discussed, and has been withdrawn.

During the Interview, reissue claims 8, 9, 12, 13, 16-22, 25-35 as filed, and the claims set forth in

the November 2000 Amendment were discussed.  Applicant's representative argued that reissue

claims 8, 9, 12, 13, 16-22, 25-35 presented when the reissue was filed on October 21, 1998, and

the corresponding claims in Applicant's November 2000 Amendment, and the phrases objected

to in the ¶(4) rejection under 35 USC § 251, do not contain new matter, and that each phrase

objected to is in fact fully supported by the original application which matured into the Chao

'207 patent.

For example, the "first magnetic members being coupled, but not in contact, with the

second magnetic member," recited in claims 8, 9, 22 and 35 does not constitute new matter, and

is fully supported by the original specification, claims and drawings. Similarly, the subject

matter "the end portion of the arm of the auxiliary spectacle frame extended downward toward

Amendment and Interview Summary          Docket No. 4216-4000
Serial No. 09/182,862

the projection for hooking on the primary spectacle frame" in claims 25-33 does not constitute

new matter, and is expressly taught at column 3 of the Chao patent for which reissue is sought.

Similarly, the "securing the magnetic members to the side portions of the primary spectacle"

feature recited in claims 12, 16, 18, 20, 34 and 35 does not constitute new matter, and is fully

supported by the original specification, claims and drawings.

Further, according to the Interview Summary Record, the Examiner and applicant's

representative agreed that the language in the November 27, 2000 and March 1, 2001

Amendments overcame this rejection, and therefore the Examiner has expressly withdrawn the

rejection under 35 USC § 251.


3.    **DISCUSSION OF PROPOSED FIGURE 8**

Proposed Figure 8 was discussed during the Interview and objected to in ¶(5) of the July

1999 Office Action. At the interview the Examiner acknowledged that the Chao '207 patent at

column 3 expressly teaches, "and the end portions of the arms 21 and/or the magnetic members

22 are slightly extended downward toward the projections 13 such that the arms 21 and the

magnetic members 22 may hook on the primary spectacle frame 10…" However, in the ¶(5)

objection to the drawing as containing new matter, set forth in the July 1999 Office Action, the

Examiner indicated "the original disclosure does not support an arm which extends downward

toward the projection for hook on the primary spectacle frame as shown in the newly added Fig.

8." During the Interview, the Examiner clarified his objection by stating that he was not

objecting to a downwardly extending end portion per se, but to the fact that the end portion

extends laterally past the rear edge of the projection.

17

23484 v2

Applicant is of the opinion that the original specification supports new Figure 8 for at least the following reason. The disclosure at column 3 expressly states that the end portion of the arm extends downward towards the projection. In addition, the original specification expressly discloses that the end portion may hook onto the spectacle frame. The original Chao '207 patent also expressly discloses that the projection is part of the spectacle frame, to wit, "the primary spectacle frame including two rear and side portions each having a projection secured thereto." Since the original patent expressly states that the end portion of the arm can hook to the frame, this disclosure conveys to the skilled practitioner that the end portion can hook onto the frame, e.g., via the "extension 11" which is part of the frame, or to "the end of the projection" which is also part of the frame, to help retain the auxiliary frame on the primary frame.

In any event, during the interview, the Examiner indicated that claims directed to the feature, "the end portion of the arm of the auxiliary spectacle frame extended downward towards the projection for hooking on the primary spectacle frame," are supported by the original disclosure, and would not require a separate drawing figure to show this feature. Thus, the Examiner expressly waived the requirements of 37 CFR 1.83 with respect to this feature. Accordingly, Figure 8 and its corresponding description in the specification have been deleted.

4. **DISCUSSION OF NEW MATTER IN THE SPECIFICATION**

During the interview, applicant's representative discussed the objection to the specification set forth in ¶(6) of the July 1999 Office Action relating to the description of Figure 8. In view of the above Amendment, and as discussed above, reference to Figure 8 and its corresponding description in the reissue application have been eliminated. Accordingly, this objection is moot.

-18-

23484 v2

Amendment and Interview Summary
Serial No. 09/182,862

Docket No. 4216-4000

### 5.   DISCUSSION OF REJECTION OF REISSUE CLAIMS 8, 9, 12, 13, 16-22, 25-35 AS CONTAINING NEW MATTER UNDER 35 USC § 112, 1ST ¶

The rejection of claims 8, 9, 12, 13, 16-22, 25-35 under 35 USC § 112, 1st ¶, as containing new matter, as set forth in ¶(8) of the July 1999 Office Action is withdrawn. During the April 4, 2001 Interview, Applicant's representative argued that reissue claims 8, 9, 12, 13, 16-22, 25-35, presented when the reissue was filed on October 21, 1998, and the phrases objected to in the ¶(8) rejection under 35 USC § 112, 1st ¶, do not contain new matter, and that each phrase objected to is in fact fully supported by the original specification, claims and drawings. Further, according to the Interview Summary Record, the Examiner and applicant's representative agreed that the language in the November 27, 2000 and March 1, 2001 Amendments overcame this rejection, and therefore the Examiner has expressly withdrawn the ¶(8) rejection under 35 USC § 112, 1st ¶.

### 6.   DISCUSSION OF REJECTION OF REISSUE CLAIMS 1-35 UNDER 35 USC § 112, 1ST ¶

During the interview the phrases "at least one" and "engaged with," deleted from original patent claim 1 and its dependent claims were discussed. As the Examiner's Interview Summary Record indicates, Examiner Mai was insistent that the specification does not support a spectacle device where "at least one arm" extends over the side portion of the primary spectacle frame, i.e., that only one arm extends over the side portion. However, the Examiner did agree that it was not necessary for applicant to recite in claim 1 that the arms which extend over the upper side portion, also "engage with" the upper side portion. Although applicant does not share the Examiner's opinion that there is no support for reciting "at least one arm" in the claims, the

23484 v2

Amendment and Interview Summary          Docket No. 4216-4000
Serial No. 09/182,862

reissue claims have been amended to delete reference to "at least one" to advance prosecution of

this reissue application. Accordingly, this rejection should be withdrawn.

### 7. DISCUSSION OF REJECTIONS BASED ON THE NISHIOKA PATENT AND TWINCOMB DOCUMENT

Each of the rejections under 35 USC §102 set forth in the July 1999 Office Action was

discussed at the Interview, but no agreement was reached, except to the extent that the Examiner

agreed to reconsider the declarations submitted by applicant in support of applicant's position

that the Twincomb documents are not available as prior art under 35 USC § 102(a) or any other

provision of 35 USC § 102.

### II- RESPONSES TO REJECTIONS/OBJECTIONS RAISED IN THE JULY 1999 OFFICE ACTION

### 1. APPLICANT'S REISSUE OATH - 35 USC § 251

In the July 1999 Office Action, the Examiner in ¶s 2 and 3 thereof objected to the reissue

declaration, and rejected the claims under 35 USC § 251. These objections/rejections are moot

and have been withdrawn. In addition, during the April 4, 2001 interview, SPRE Ed Glick

indicated that should all the specific errors identified in the supplemental reissue declaration be

eliminated, a second, supplemental reissue declaration may be necessary.

Applicant respectfully submits that the supplemental reissue declaration filed in March

2001 specifically identifies at least one error still being corrected by this reissue, to wit:

VII.   I verily believe the '207 patent is wholly or partly inoperative by failing to

include the following description of FIG. 7, that describes the spacing

-20-

between the magnets 14 and 22 which "spacing" is clearly depicted in

original application FIG. 7.

> *In one embodiment, as shown in FIG. 7, magnetic members*
> *14 and 22 are not in contact with each other, magnetic members*
> *14 and 22 are engaged with, but not supported on, each other.*
> *Instead, the arms 21 securing the magnetic member 22 is*
> *supported on an upper side portion of the primary spectacle frame*
> *10. As shown in FIG. 7, the upper side portion can be an upper*
> *part of the side portion securing the projection 13.*

Thus, applicant respectfully submits that no additional supplemental declaration should

be required. In addition, applicant respectfully submits that the supplemental reissue declaration

filed on March 29, 2001, when combined with the intent of the original reissue declaration, is

sufficiently adequate to comply with the requirements of the rules, particularly in view of at least

paragraphs 12 and 13 of the original declaration which identify numerous errors in the original

Chao '207 patent, e.g., numerous features that were not expressly claimed in the Chao '207

patent.

2.    **RESPONSE TO REJECTION OF REISSUE CLAIMS 8, 9, 12, 13,**
      **16-22, 25-35 AS CONTAINING NEW MATTER UNDER 35 USC § 251**

Claims 8, 9, 12, 13, 16-22, 25-35 have been rejected under 35 USC § 251 as containing

new matter as set forth in ¶(4) of the July 1999 Office Action. This rejection has been

withdrawn, in view of applicant's arguments that these claims do not contain new matter and are

fully supported by the "original specification, claims and drawings," and as acknowledged by the

Examiner in the Interview Summary Record dated April 4, 2001.

Amendment and Interview Summary                                    Docket No. 4216-4000
Serial No. 09/182,862

3.   **DISCUSSION OF PROPOSED FIGURE 8**

Proposed Figure 8 has been canceled and thus the objection to Figure 8 is moot. In addition, as discussed <u>supra</u>, Figure 8 is supported by the original Chao '207 patent disclosure. Since the Examiner indicated during the April 4, 2001 interview that he would waive the requirements of the rule to have a specific Figure for claims drawn to the downwardly extended end portion of the arm, 37 CFR § 1.83, applicant has decided not to provide any Figure 8 showing this feature.

4.   **RESPONSE TO REJECTION OF REISSUE CLAIMS 8, 9, 12, 13, 16-22, 25-35 AS CONTAINING NEW MATTER UNDER 35 USC § 112, 1ST ¶**

Reissue claims 8, 9, 12, 13, 16-22 and 25-32 have been rejected under 35 USC § 112, 1st paragraph as containing new matter. According to the Examiner's Interview Summary Record, the Examiner and applicant's representative agreed that these claims and the phrases objected to in the ¶(8) rejection under 35 USC § 112, 1st ¶, do not contain new matter, and each phrase objected to is in fact fully supported by the original "specification, claims and drawings." Accordingly, this rejection is improper, and has been withdrawn.

5.   **RESPONSE TO REJECTION OF REISSUE CLAIMS 1-35 UNDER 35 USC § 112, 1ST ¶**

Claim 1, and all other claims including the phrase "at least one" have been amended and the phrase deleted. The phrase "engaged with," deleted from original patent claim 1, and its dependent claims remain. During the Interview, the Examiner indicated that he no longer objected to the deletion of the phrase "engaged with." Therefore, it is respectfully submitted that this rejection is no longer applicable and the rejection should be withdrawn.

-22-

23484 v2

Amendment and Interview Summary                                  Docket No. 4216-4000
Serial No. 09/182,862

6.   **RESPONSE TO REJECTION UNDER 35 USC § 112, 2ND ¶**

Claims 5-9, 10-13, 22 and 32-35 have been rejected under 35 USC § 112, 2nd ¶.

Applicant respectfully submits that the November 27, 2000 Amendment corrects the form of the

claims and does not narrow the claimed invention.  See Festo Corp. v. Shoketsu Kinzoku Kogyo

Kabushiki Co., 234 F.3d 558 (Fed. Cir. 2000).

7.   **RESPONSE TO THE REJECTION BASED ON THE**
     **NISHIOKA PATENT**

Claims 12 and 34 have been rejected under 35 USC § 102 (e) as being anticipated by

U.S. patent No. 5,642,177 (Nishioka).  Applicant respectfully submits that the Nishioka patent

does not teach or suggest the invention of claims 12 and 34 for reasons of record.  Claim 34 has

been canceled without prejudice or disclaimer for the subject matter recited therein.

The Nishioka patent, as previously argued in the November 27, 2000 Amendment, shows

magnetic engagement along a vertical plane, which is not being recited in Claim 12.  Further, a

clarifying amendment to claim 12 has been made to more clearly distinguish the horizontal

attraction between the first and second magnets.  Accordingly, in view of the above Amendment

to claim 12, it is respectfully submitted that this rejection is improper and should be withdrawn.

8.   **RESPONSE TO THE REJECTION BASED ON**
     **THE TWINCOMB DOCUMENTS**

Claims 1, 3-7, 10-21, 23, 24 and 34 have been rejected under 35 USC § 102(a) as being

anticipated by Twincome-Pentax.  Applicant respectfully traverses this rejection for all the

reasons of record.

-23-

23484 v2

Amendment and Interview Summary                                   Docket No. 4216-4000
Serial No. 09/182,862

During the Interview, Examiner Mai informed the undersigned that he had not as of yet had an opportunity to evaluate the Richards Samuel's declaration filed in support of applicant's position, i.e., a declaration in support of the argument that with respect to the Le Coane meeting, any documents provided to the attendees do not constitute a publication because it was not a "public meeting." Applicant requests that the Examiner consider the Samuel's declaration which supports the proposition that any document provided during the Le Coane meeting does not constitute "a publication."

In addition, applicant respectfully submits that neither the documents provided during the Le Coane group meeting, nor those allegedly presented at the 1995 IOFT meeting constitute prior art. The Le Coane group meeting allegedly occurred on June 21, 1995, and the 1995 IOFT Meeting occurred in October 1995.

On October 8, 1998, Interference No. 104,051 (the '051 Interference) was declared between the Chao '207 patent (the involved Chao patent) and Iwamoto application Serial No. 08/655,828 (the involved Iwamoto application). The involved Iwamoto application had a filing date of May 31, 1996, and was accorded benefit of its Japanese priority applications, the earliest of which had a filing date of May 31, 1995. (Exhibit No. 1). Thus, Iwamoto was initially designated the senior party of the interference. Applicant's reissue declaration filed on October 21, 1998 notified the USPTO of the declared interference. The notice identified the opposing party, Iwamoto; the involved Iwamoto application serial number; and the counts of the interference. A copy of the index for party Chao's pleadings in the '051 Interference is attached for the Examiner's convenience. (Exhibit No. 2).

-24-

23484 v2

Amendment and Interview Summary
Serial No. 09/182,862

Docket No. 4216-4000

On April 23, 1999, the Board of Patent Appeals and Interferences (BPAI) issued their

decision on Iwamoto's Revised Preliminary Motion 2. (Exhibit No. 3). In "denying" Iwamoto's

Preliminary Motion 2, the BPAI set forth at least the following findings of fact:

    5.     Live testimony of Messrs. Richard and David Chao was taken by direct examination on February 24 and 25, 1999, in the presence of Judges McKelvey and Lee. ("Chao Interference Exhibit 1112")

    6.     Richard Chao came up with the idea within the scope of claim 1 in September or October of 1994 while taking a shower. (Chao Interference Exhibit 1112, page 191, lines 14-21).

    7.     Richard Chao considered his invention as that of creating a "hook" type engagement between the primary spectacle frame and the auxiliary spectacle frame. To Richard Chao, so long as the hook function is achieved, it did not matter to Richard Chao from what material the hook is made. (Chao Interference Exhibit 1112, page 206, lines 14-16).

    8.     After having initially thought of the idea of a hooked arrangement between the primary and auxiliary spectacle frames, Richard Chao shared his idea with other persons in discussions about his invention. The other persons included family members, for example, David Chao, a brother of Richard Chao. (Chao Interference Exhibit 1162, page 198, line 2 to page 199, line 22).

    9.     David Chao, after hearing Richard Chao's idea and discussing the same with Richard Chao, drew in his 1994 Day Planner, as an entry for September 5, 1994, a figure to depict what he thought Richard Chao had invented and communicated to him. (Chao Interference Exhibit 1105).

    10.    David Chao also drew in his 1994 day Planner, in the entry for October 20, 1994, another figure to depict what he thought Richard Chao had invented and communicated to him. (Chao Interference Exhibit 1106).

    11.    The drawings of David Chao on the September 5 and October 20, 1994, i.e., the entries of his Day Planner, illustrate a magnetic member extending downward from an auxiliary frame toward a projection on the primary spectacle frame holding a magnetic member, as does Figure 7 of the Chao patent. (Chao Interference Exhibits 1105 and 1106).

On April 7, 2000, the BPAI issued an Order that stated that the results of forensic ink-

testing of David Chao's "Day Planner" "be unsealed and disclosed to the parties." (Exhibit No.

-25-

23484 v2

4) In the Order, the BPAI stated that "Counsel for the parties indicated that precisely which party will prevail depends on the results of the ink-testing that was performed previously by an independent expert." (Exhibit No. 4, p. 2.)

On or about May 26, 2000, Senior Party Iwamoto and Junior Party Chao filed a "Joint Motion for Entry of Adverse Judgment Against Senior Party Iwamoto." (Exhibit 5).  On May 30, 2000, the BPAI entered judgment against senior party Iwamoto.  According to the Judgment, Administrative Judge Lee ordered that "the subject matter of both counts 1 and 2 is herein entered against the senior party Toshikazu Iwamoto" and "senior party is not entitled to its application claims" 1, 3, 4, 7-9, 14-18 and 21-47. (Exhibit No. 6, p. 2)

In addition, as indicated by the attached David Y. Chao Declaration under 37 CFR § 1.131, David Y. Chao brought the same Day Planner referred to above in the finding of facts by the BPAI, which included the drawings of Chao Interference Exhibits 1105 and 1106 (Exhibits 8 and 9), and expressly mentioned in Exhibit No. 3, and at least one spectacle prototype device embodying Richard Chao's concepts, into the United States before May 31, 1995. (Exhibit No. 7).  In addition, David Y. Chao stated in his declaration that "shortly before March 25, 1995, active exercise began and continued in a diligent effort toward reducing the inventive concepts illustrated in my Day Planner to practice in the US."

It is respectfully submitted that in view of the above evidence, the documents distributed at the Le Coane meeting and the IOFT '95 Tradeshow are not "prior art."  Accordingly, the rejection of 1, 3-7, 10-21, 23, 24 and 34, or any of the pending claims under 35 USC § 102(a) based on the Twincomb documents is improper and should be withdrawn

-26-

Amendment and Interview Summary                          Docket No. 4216-4000
Serial No. 09/182,862

## AUTHORIZATIONS:

No petition or fee is necessary.

The Commissioner is also hereby authorized to charge any additional fees which may be

required for timely consideration of this Amendment under 37 C.F.R. §§ 1.16 and 1.17, or credit

any overpayment to Deposit Account No. 13-4500, Order No. 4216-4000.

Respectfully submitted,

Date: __April 20, 2001__                    By: _____
                                                 Michael S. Marcus, Esq.
                                                 Registration No. 31,727
                                                 (202)-857-7887 Telephone
                                                 (202)-857-7929 Facsimile

**Correspondence Address:**
MORGAN & FINNEGAN, L.L.P.
345 Park Avenue
New York, New York 10154
(212) 758-4800 Telephone
(212) 758-6849 Facsimile

-27-

23484 v2

REISSUE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Reissue Application<br>Inventor:  Richard Chao | REISSUE PATENT APPLICATION |
| Reissue Application No.: 09/182,862 | Art Unit:  2873 |
| Filed: 10/21/98 | Examiner:  Huy Mai |
| Patent No.: ~~5,568,207~~ | |
| Title:  AUXILIARY LENSES FOR<br>EYEGLASSES | |

### CORRECTED PROOF OF SERVICE FOR

### PROTEST UNDER 37 CFR §1.291(a)

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

Attached please find a corrected proof of service duly executed October 19, 2000 reflecting service of PROTEST UNDER 37 CFR §1.291(a) to Mr. Chao's current counsel of record:

Fliesler Dubb Meyer and Lovejoy
Four Embarcadero Center, Fourth Floor
San Francisco, California 94111-4156
Telephone: 415.362.3800
Facsimile: 415.362.2928

Respectfully submitted,
TROJAN LAW OFFICES

Dated: 10/19/2000            By _____
Lee Fredric Sharra
Attorneys for Applicant
9250 Wilshire Blvd. Suite 325
Beverly Hills, CA 90212
Telephone: (310) 777-8399
Facsimile:  (310) 777-8348

RECEIVED
NOV 13 2000
TC 2800 MAIL ROOM

RECEIVED
FEB 22 2001
TC 2800 MAIL ROOM

RECEIVED
OCT 27 2000
TC 2800 MAIL ROOM

## CORRECTED PROOF OF SERVICE

I am over the age of 18 years, employed in the County of Los Angeles, and not a party to the above entitled action. My business address is 9250 Wilshire Blvd., Suite 325, Beverly Hills, CA 90212.

On October 19, 2000, I served the attached document(s) entitled:

PROTEST UNDER 37 CFR §1.29(a)

on the interested parties in the above action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Fliesler Dubb Meyer and Lovejoy
Four Embarcadero Center, Fourth Floor
San Francisco, California 94111-4156
Telephone: 415.362.3800
Facsimile: 415.362.2928

BOX - PROTESTS
COMMISSIONER OF PATENTS AND TRADEMARKS
Washington, D.C. 20231

[X]  BY MAIL  I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on the same day with postage thereon fully prepaid at Beverly Hills, CA in the ordinary course of business. I am aware that on the motion of the party served, service is presumed invalid if the postal cancellation date or postage meter date is more than one day after the date of deposit for mailing shown on this proof of service.

[ ]  BY PERSONAL SERVICE :[ ] (Federal Court): I caused such envelope to be delivered by hand to the offices of addressee(s); [ ] (State Court): By personally delivering by hand to the offices of the addressee(s).

[ ]  BY FACSIMILE:  I caused a copy of such document to be sent via facsimile machine to the office of the addressee(s) at the phone number shown above.

[ ]  BY FEDERAL EXPRESS or [ ]  BY U.S. EXPRESS MAIL  I caused such envelope to be delivered by the above-noted service to the offices of the addressee(s).

[X]  FEDERAL  I declare, under penalty of perjury under the laws of the United States that the foregoing is true and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on October 19, 2000, at Beverly Hills, California.

Lee F. Sharra

REISSUE

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| In re Reissue Application )<br>Inventor:  Richard Chao )<br> )<br>Reissue Application No.:  09/182,862 )<br> )<br>Filed: 10/21/98 )<br> )<br>Patent No. 5,568,207 )<br> )<br>Title:   AUXILIARY LENSES FOR )<br>         EYEGLASSES )<br>_____ ) | **REISSUE PATENT APPLICATION**<br><br>Art Unit:        2873<br><br>Examiner:       Huy Mai |

### CERTIFICATE OF MAILING

I hereby certify that the following correspondence:

1.    Cover Letter for Correct Proof of Service;

2.    Corrected Proof of Service;

3.    This Certificate of Mailing; and

4.    Return postcard.

is being deposited with the United States Postal Service, First Class Mail postage prepaid, pursuant to 37 C.F.R. 1.8(a) and is addressed to the Commissioner of Patents and Trademarks, Box - Protests, Washington, D.C. 20231, on October 19, 2000.

TROJAN LAW OFFICES

By _____
Lee Fredric Sharra, Esq.

**EXHIBIT 1**

0918286207040 1

Paper No.   21

*All communications respecting this
case should identify it by number
and names of parties.*



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Trademark Office

Address:  BOX INTERFERENCE
Commissioner of Patents and Trademarks
Washington, D.C. 20231

Telephone:  (703) 308-9797
Facsimile:  (703) 308-7953

**RECEIVED**

OCT 13 1998

FLIESLER, ~~~~,
MEYER & LOVEJOY

Filed by:   Judge Jameson Lee

OCT – 8 1998

Interference No. 104,051

Applicant: ¯Iwamoto
Serial No.:  08/655,828
Filed:  05/31/96
FOR:  SPECTACLE ACCESSORY
     MOUNTING DEVICE
Accorded Benefit of:  Japanese
     Application 07-156,856,
     filed 05/31/95, and Japanese
     application 08/153,172,
     filed 05/24/96

## RE-DECLARATION OF INTERFERENCE

This interference is hereby re-declared as follows:

The count is modified as follows:

### Count 1

In the alternative,

Iwamoto's application claim 1,
                  or
Chao's patent claim 1.

Claims corresponding to count 1:
     Iwamoto:  claims 1, 3, 4, 14, 21, 22, and 27-29
     Chao:     claim 1

For count 1, Iwamoto is accorded the benefit of Japanese
application 7-156,856, filed May 31, 1995, and Japanese
application 8-153,172, filed May 24, 1996.

1

Form PTO 78B
(5-95)

Application No. 08/655,828
Chao v. Iwamoto


Count 2

In the alternative,

      Iwamoto's application claim 30,
               or
    Chao's patent claim 2.


    Claims corresponding to count 2:
       Iwamoto:  claims 7-9, 15-18, 23-26, 30, and 31-47
       Chao:      claim 2

For count 2, Iwamoto is accorded the benefit of Japanese
application 7-156,856, filed May 31, 1995, and Japanese
application 8-153,172, filed May 24, 1996.


Jameson Lee
Administrative Patent Judge

2

Application No. 08/655,828
Chao v. Iwamoto


Martin C. Fiesler
Fliesler, Dubb, Meyer & Lovejoy
Four Embarcadero Center, Suite 400
San Francisco, CA  94111-4156

Greenblum & Bernstein
1941 Roland Clarke Place
Reston, VA  20191

3

# EXHIBIT 2

TORA070.2988860

CHAO V. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE I

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 1 | Re-Declaration of Interference Notice from PTO | 10/08/98 |
| 2 | Re-Declaration of Interference (Modification of Claims) PTO Notice | 10/08/98 |
| 3 | Replacement of Paper No. 1 | 10/22/98 |
| 4 | Declaration of Interference | 10/22/98 |
| 5 | Order Revising Schedule for Filing of Preliminary Motions & Statements | 10/22/98 |
| 6 | PTO Order Pursuant to 10/22/98 Conference Call | 10/22/98 |
| 7 | Party Iwamoto Preliminary Statement | 11/25/98 |
| 8 | Party Iwamoto Preliminary Motion 2 37 CFR§§1.633 (a) and 1.639 | 11/25/98 |
| 9 | Party Iwamoto's Preliminary Motion 3 (To add Claims to Senior Party Iwamoto's application, and designate such claims as corresponding to the counts, under 37 CFR §1.633(c)(2) | 11/25/98 |
| 10 | Party Chao's Preliminary Motion 3 37 CFR §1.633(a)/102(a) Motion | 11/25/98 |
| 11 | Party Chao's Preliminary Motion 4 37 CFR §1.633(c)(1) Motion | 11/25/98 |
| 12 | Party Chao's Objection to the Admissability of the Party Iwamoto's Evidence Contained in or Submitted With Its Preliminary Motions Under 37 CFR§1.633 | 12/03/98 |
| 13 | PTO Order Pursuant to 12/04/98 Conference Call | 12/07/98 |
| 14 | PTO Response to Iwamoto Preliminary Motion 2 | 12/09/98 |
| 15 | Party Chao's 37 CFR §1.624 Preliminary Statement (Revised) | 12/10/98 |
| 16 | Party Chao's Preliminary Motion 2 37 CFR §1.633(a)/112 & 102 Motion (Revised) | 12/10/98 |
| 17 | Party Chao's Preliminary Motion 5 37 CFR 1.633(h) Motion (Revised) | 12/10/98 |
| 18 | Party Chao's Preliminary Motion 6 37 CFR 1.633(g) Motion | 12/10/98 |

| 19 | Party Iwamoto's Response to the Party Chao's Objection to the Admissibility of the Party Iwamoto's Evidence Contained in or Submitted with its Preliminary Motions Under 37 CFR §1.633 | 12/16/98 |
|---|---|---|
| 20 | Party Iwamoto Preliminary Motion 4 (37 C.F.R. §§1.633(f) and (j)) | 12/16/98 |
| 21 | Party Iwamoto Preliminary Motion 5 (To add claims to Senior Party Iwamoto's application, and to designate such claims as corresponding to the counts under 37 CFR §§1.633(c)(2) & (i) | 12/16/98 |
| 22 | Party Chao's Miscellaneous Motion #7 (To amend Motion #5) | 12/16/98 |
| 23 | The Party Iwamoto's Objections to the Admissibility of the Party Chao's Evidence Contained in or Submitted with Chao's Response to the APJ's Order of 12/09/98 | 12/21/98 |
| 24 | Party Iwamoto Reply (Relating to Judge's Order Dated 12/09/98 | 12/21/98 |
| 25 | The Party Chao's Objection to the Admissibility of the Party Iwamoto's Evidence Contained in or Submitted with its Preliminary Motions 4 and 5 | 12/25/98 |

CHAO V. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE II

| TAB # | DOCUMENT | DATE |
|-------|----------|------|
| 26 | PTO Order Regarding Iwamoto Motion 2 | 12/22/98 |
| 27 | PTO Decision on Chao's Miscellaneous Motion 7 | 12/22/98 |
| 28 | Party Iwamoto Preliminary Motion 1 (For Judgment based on prior art) | 12/29/98 |
| 29 | Party Chao's Opposition Re Documentary Evidence | 12/31/98 |
| 30 | Party Chao's Motion 8 (Request that the APJ Ignore or Discard an Inadvertently filed Draft) | 12/31/98 |
| 31 | Party Iwamoto Reply to Chao's Opposition Re Documentary Evidence (Relating to Judge's Order Dated 12/22/98) | 01/06/99 |
| 32 | Party Iwamoto's Response to the Party Chao's Objection to the Admissibility of the Party Iwamoto's Evidence Contained in or Submitted With Its Preliminary Motions 4 and 5 | 01/06/99 |
| 33 | Party Chao's Response to the Party Iwamoto's Objections to Admissibility of Chao's Evidence | 01/06/99 |
| 34 | PTO Memorandum Opinion and Order | 01/11/99 |
| 35 | Party Iwamoto's Opposition 2 (To Chao's Preliminary Motion 2) | 01/25/99 |
| 36 | Party Iwamoto's Opposition 4 (To Chao's Preliminary Motion 4) | 01/25/99 |
| 37 | Party Iwamoto's Opposition 5 (To Chao's Preliminary Motion 5) | 01/25/99 |
| 38 | Party Iwamoto's Preliminary Motion 6 (37 CFR §§1.633 (a)-For Judgment Based on Inequitable Conduct) | 01/25/99 |
| 39 | Party Iwamoto's Motion for Leave to Belatedly File Iwamoto Preliminary Motion 6 (37 CFR §§1.635 and 1.645 (b)) | 01/25/99 |
| 40 | Party Iwamoto Opposition 6 (To Chao Preliminary Motion 6) | 01/25/99 |
| 41 | Party Chao's Revised Opposition No. 1 | 01/25/99 |
| 42 | Party Chao's Opposition No. 3 | 01/25/99 |
| 43 | Party Chao's Opposition No.4 | 01/25/99 |

CHAO V. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE III

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 44 | Party Chao's Opposition No. 5 | 01/25/99 |
| 45 | Chao's Contingent Motion 9 (37 C.F.R. §1.634) | 01/25/99 |
| 46 | Iwamoto's Request to Cross-Examine Chao's Declarants On Oral Deposition | 02/01/99 |
| 47 | Party Iwamoto's Objections to the Admissibility of Chao's Evidence Contained in or Submitted with its Oppositions 1-5 | 02/01/99 |
| 48 | Party Chao's Associate Power of Attorney by Attorney of Record Under 37 C.F.R. §1.34 (and Certificate of Service) | 02/04/99 |
| 49 | Party Chao's Designation of Lead Attorney | 02/04/99 |
| 50 | Party Chao's Notice of Service of Production of Documents | 02/08/99 |
| 51 | Party Chao's Response to Iwamoto's Second Objections to Evidence | 02/16/99 |
| 52 | PTO Order Regarding Testimony of Chao Brothers | 02/19/99 |
| 53 | Iwamoto Cover Letter Accompanying Deposition Transcript of Ira Lerner Requested by APJ Lee's Order of February 19, 1999 | 02/19/99 |
| 54 | Iwamoto's Objections to the Admissibility of Chao's Exhibit 1111 Served With Chao's Response to Iwamoto's Second Objections to Evidence | 02/23/99 |
| 55 | Iwamoto's Notice of Deposition | 02/26/99 |
| 56 | Chao's Second Notice of Deposition | 03/02/99 |
| 57 | Chao's Request Pursuant to 37 CFR 1.672 (d) | 03/03/99 |
| 58 | Chao's Section 1.660 Notice of Litigation | 03/08/99 |
| 59 | Notice of Chao's Withdrawal of Request for Cross Examination | 03/10/99 |
| 60 | Iwamoto Miscellaneous Motion Requesting an Order Directing Chao to Provide David Chao's 1994 Day Panner for Testing By a Forensic Documentary Expert; | 03/15/99 |
| 61 | Proposed Order Stipulation and Proposed Order | 03/16/99 |

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 62 | PTO Order Re: Ink Testing Request & Deposition Transcripts | 03/18/99 |
| 63 | Iwamoto Submission of The Deposition Transcripts of David Chao and Richard Chao Pursuant to APJ Lee's Order of March 18, 1999 | 03/18/99 |
| 64 | Iwamoto's Notice Under 37 CFR §1.602(c) | 03/19/99 |
| 65 | Iwamoto's Response to Order of March 18, 1999 Explaining Timeliness of Iwamoto's Request For Testing of David Chao's 1994 Day Planner By a Forensic Expert | 03/19/99 |
| 66 | Revised Chao's Revised Opposition 3 | 03/26/99 |
| 67 | Revised Chao's Revised Opposition 5 | 03/26/99 |
| 68 | Chao Miscellaneous Motion 9 | 03/26/99 |
| 69 | Joint Miscellaneous Motion 1 | 03/26/99 |
| 70 | Chao Reply 2 (To Iwamoto Opposition 2) (See separate file for exhibits) | 03/29/99 |
| 71 | Chao Reply 4 (To Iwamoto Opposition 2) (See separate file for exhibits) | 03/29/99 |

CHAO V. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE IV

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 72 | Chao Reply 5 (To Iwamoto Opposition 2) (See separate file for exhibits) | 03/29/99 |
| 73 | Iwamoto's Reply No. 1 (To Chao's Opposition 1 and To Chao's Revised Opposition No. 1) | 03/29/99 |
| 74 | Iwamoto's Reply No. 3 | 03/29/99 |
| 75 | Iwamoto's Reply No. 5 | 03/29/99 |
| 76 | Iwamoto's Revised Preliminary Motion 2 (37 C.F.R. § § 1.633(a)) | 03/29/99 |
| 77 | Iwamoto's Proposed Order Granting Iwamoto's Revised Preliminary Motion 2 | 03/29/99 |
| 78 | Iwamoto's Objections to Chao's Evidence Referenced in Chao's Replies 2, 4 & 5 | 04/05/99 |
| 79 | PTO Decision on Miscellaneous Motion | 04/16/99 |
| 80 | Chao's Opposition 2 (See folders for exhibits) | 04/19/99 |
| 81 | Chao's Response to Iwamoto's Objections to Chao's Evidence in Replies | 04/19/99 |
| 82 | Chao's Notice of Filing Exhibits Relied Upon in Opposition 2 | 04/21/99 |
| 83 | Iwamoto Submission of the Evidence Relied Upon in Iwamoto Revised Preliminary Motion 2 Pursuant to APJ Lee's Request of April 21, 1999 | 04/21/99 |
| 84 | Iwamoto Submission of The Audio Testimony of Richard and David Chao from the Depositions Conducted on February 24 and 25 | 04/21/99 |
| 85. | Decision on Iwamoto's Revised Preliminary Motion 2 | 04/23/99 |
| 86. | Iwamoto Request for Oral Hearing on Revised Iwamoto Preliminary Motion 1 | 04/29/99 |
| 87. | Iwamoto Request for Oral Hearing on Chao's Preliminary Motion 4 and Iwamoto Opposition 4 | 04/29/99 |

CHAO v. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE IV

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 88. | Iwamoto Request for Oral Hearing on Chao's Revised Preliminary Motion 5 and Iwamoto Opposition 5 | 04/29/99 |
| 89. | Iwamoto Request for Oral Hearing on Iwamoto Preliminary Motion 6 | 04/29/99 |
| 90. | Iwamoto Motion to Suppress the Testimony of Richard J. Samuels | 04/29/99 |
| 91. | Iwamoto Motion to Suppress the Testimony of John William Morris, Jr. | 04/29/99 |
| 92. | Iwamoto Motion to Suppress the Testimony of Icek Benz (Exhibits 1080 and 2091) Pursuant to 37 C.F.R. §1.635 and Order of Oct. 22, 1998, Paper No. 10 | 04/29/99 |
| 93. | Iwamoto's Observations with Respect to the Cross-Examination of John William Morris, Jr.(Whose Testimony is referenced in Chao Replies 4 & 5) Pursuant to Order of Oct. 22, 1998, Paper No. 10) | 04/29/99 |
| 94. | Iwamoto's Observations with Respect to the Cross-Examination of Icek Benz (Whose Testimony is Referenced in Chao Replies 4 & 5) Pursuant to Order of Oct. 22, 1998, Paper No. 10 | 04/29/99 |
| 95. | Iwamoto's Observations with Respect to the Cross-Examination of Richard J. Samuels, (Whose Testimony is Referenced in Chao Replies 4 & 5) Pursuant to Order of Oct. 22, 1998, Paper No. 10 | 04/29/99 |
| 96. | Iwamoto's Observations With Respect to the Cross-Examination of Thierry Ifergen (Whose Testimony is Referenced in Chao Replies 4 & 5) Pursuant to Order of Oct. 22, 1998, Paper No. 10 | 04/29/99 |
| 97. | Chao Request for Hearing | 04/29/99 |
| 98. | Iwamoto Request for Reconsideration of Decision on Miscellaneous Motion, Dated April 16, 1999 and Request to Preserve Evidence | 04/30/99 |
| 99. | Iwamoto Request for Reconsideration of Decision on Iwamoto's Revised Preliminary Motion 2 (37 C.F.R. §1.640 (c)) | 05/07/99 |
| 100. | Chao's Response to Iwamoto's Observations of Ifergen's Examination | 05/13/99 |

CHAO V. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE V

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 101. | Chao's Response to Iwamoto's Observations of Prof. Morris' Cross Examination | 05/13/99 |
| 102. | Chao's Opposition to Iwamoto's Motion to Suppress Morris' Testimony | 05/13/99 |
| 103. | Chao's Response to Iwamoto's Observations of Prof. Samuels' Cross-Examination | 05/13/99 |
| 104. | Chao's Opposition to Iwamoto's Motion to Suppress Benz's Testimony | 05/13/99 |
| 105. | Chao's Response to Iwamoto's Observations of Benz's Cross-Examination | 05/13/99 |
| 106. | Chao's Opposition to Iwamoto's Motion to Suppress Morris' Testimony | 05/13/99 |
| 107. | PTO Response to Iwamoto Request for Reconsideration | 05/24/99 |
| 108. | Reply to Chao's Opposition to Iwamoto Motion to Suppress the Testimony of John William Morris, Jr. | 05/21/99 |
| 109. | Iwamoto's Reply to Chao's Opposition to Iwamoto's Motion to Suppress the Testimony of Icek Benz | 05/21/99 |
| 110. | Reply to Chao's Opposition to Iwamoto Motion to Suppress the Testimony of Richard J. Samuels | 05/21/99 |
| 111. | PTO Respone to Iwamoto's Request for Reconsideration on Iwmato's Preliminary Motion 2 | 05/26/99 |

CHAO V. IWAMOTO
FLIESLER-032598-001
INTERFERENCE NO. 104,051
PLEADINGS FILE V

| TAB # | DOCUMENT | DATE |
|---|---|---|
| 112. | Chao Miscellaneous Motion 10 | 06/02/99 |
| 113. | Resubmission of Chao Opposition 2 | 06/15/99 |
| 114. | Chao Submission of Documents | 06/15/99 |
| 115. | Submission of Richard & David Chao's Declaration Statements | 06/16/99 |
| 116. | Decision on Chao's Miscellaneous Motion 10 | 06/10/99 |
| 117. | Office Action regarding reissue application | 07/15/99 |
| 118. | Chao's Section 1.660 Notice of Litigation | 06/29/99 |
| 119. | Iwamoto Notice of Filing Supplemental Information Disclosure Statement In U.S. Patent Application No. 08/655,828 | 10/13/99 |
| 120. | Decision on Miscellaneous Motions | 2/8/00 |
| 121. | Joint Miscellaneous Motion No. 2 | 2/28/00 |
| 122. | Decision on Joint Miscellaneous Motion 2 and Setting of Oral Hearing Time | 3/1/00 |
| 123. | Order Dismissing Motions, Authorizing Disclosure of Test Results, and for Entry of Adverse Judgment | 4/7/00 |
| 124. | Settlement Agreement | |
| 125. | Joint Request for Entry of Adverse Judgement Pursuant to 37 C.F.R. 1.662 | 05/26/00 |
| 126. | Joint Submission of Interference Settlement Agreement Pursuant to 37 C.F.R. 1.666(a) and Request to Keep Settlement Agreement Separate from File of Interference Pursuant to 37 C.F.R. 1.666(b) | 05/26/00 |
| 127. | Judgement | 05/30/00 |

**EXHIBIT 3**

09182862.070401

THIS OPINION WAS NOT WRITTEN FOR PUBLICATION

The opinion in support of the decision being entered today (1) was not written
for publication in a law journal and (2) is not binding precedent of the Board.

Paper No. 149

Filed by:   Trial Section Motions panel
            Box Interference
            Washington, D.C. 20231
            Tel:  703-308-9797
            Fax:  703-305-0942

## UNITED STATES PATENT AND TRADEMARK OFFICE

-----

### BEFORE THE BOARD OF PATENT APPEALS
### AND INTERFERENCES

-----

RICHARD CHAO

**Junior Party,**
(Patent No. 5,568,207)

v.

TOSHIKAZU IWAMOTO

**Senior Party.**
(Application 08/655,828)

-----

Patent Interference No. 104,051

-----

**MAILED**

**APR 2 3 1999**

PAT. & T.M. OFFICE
BOARD OF PATENT APPEALS
AND INTERFERENCES

Before: McKELVEY, Senior Administrative Patent Judge, and SCHAFER
and LEE, Administrative Patent Judges.

PER CURIAM

### DECISION ON IWAMOTO'S
### REVISED PRELIMINARY MOTION 2

#### Introduction

By authorization from the Board, Iwamoto's original

preliminary motion 2 was substituted by its revised preliminary

motion 2 (Paper 134), to permit Iwamoto to rely on additional

1

Interference No. 104,051
Chao v. Iwamoto

evidence obtained in connection with the taking of testimony of

Messrs. David and Richard Chao.  Hereinafter, revised preliminary

motion 2 will be referred to simply as preliminary motion 2.

Chao filed an opposition (Paper No. 145) and Iwamoto's reply is

not yet due.

Preliminary motion 2 (page 2) states the relief requested as

follows:

> Senior party Iwamoto moves under 37 C.F.R. §
> 1.633(a) for judgment against junior party Chao because
> Richard Chao, the inventor named on the Chao patent,
> did not himself invent the subject matter claimed in
> claim 2 of the Chao patent, U.S. Patent No. 5,568,207,
> and because the Chao patent is invalid under 35 U.S.C.
> §§ 102(f), 116 and 256.

According to Iwamoto, inventorship of the Chao patent is

incorrect.  Iwamoto believes that Richard Chao, the sole named

inventor on the Chao patent, did not solely invent the subject

matter of claim 2, and that instead, David Chao is the true

inventor of the subject matter of claim 2.

The motion is based largely on the direct testimony of

Messrs. Richard and David Chao (Exhibit 1112), which was taken

live in the presence of Judges Mckelvey and Lee who observed the

demeanor of the witnesses.  Testimony is usually not taken live

in an interference proceeding, but in this case it was felt that

it should be because inventorship and derivation are issues where

the demeanor of the witnesses may be quite telling as to their

2

Interference No. 104,051
Chao v. Iwamoto

credibility.  In addition, the interrogation of Richard Chao was
conducted in Mandarin Chinese through an interpreter.  Because
Judge Lee understands that foreign language it was beneficial for
him to hear the actual questions and answers that were made in
Chinese prior to their being interpreted into English.  The
entire live testimony was recorded on audio-tape.

### Findings of Fact

1.    The Chao patent is U.S. Patent No. 5,568,207, based on
an application filed on November 7, 1995, and names Richard Chao
as the sole inventor.

2.    The Chao patent includes claims 1 and 2 which are drawn
to an eyeglass device having a primary spectacle frame and an
auxiliary spectacle frame.  The auxiliary spectacle frame
includes two side portions each having an arm extended therefrom
for extending over and for engaging with an upper side portion of
the primary spectacle frame.

3.    Further according to claim 1, a first pair of magnetic
members are secured in projections on the rear and side portions
of the primary spectacle frame and a second pair of magnetic
members are secured to arms extending from the two side portions
of the auxiliary frame.  The second pair of magnetic members are
engaged with the first pair of magnetic members.

3