UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-61515-CIV-COOKE
MAGISTRATE JUDGE BANDSTRA

ASPEX EYEWEAR, INC. AND
CONTOUR OPTIK, INC.

    Plaintiffs,

vs.

HARDY LIFE, LLC., MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC.,
AND GARY MARTIN ZELMAN,
AN INDIVIDUAL,

    Defendants.

**CLAIM CONSTRUCTION BRIEF OF DEFENDANTS
REVOLUTION EYEWEAR, INC. AND GARY MARTIN ZELMAN**

# I.  INTRODUCTION

The claim constructions in this case are dictated by issue preclusion and the clear and unambiguous teachings of U.S. Patent No. RE37,545 (the '545 Patent, Ex. A).[1]  In *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, Central District of California Case No. CV 02-1087 ("California Action"), the California court issued a claim construction ruling that "the invention disclosed in the '545 patent is limited to a top-mounting design."  The court explained:  "the invention described is clearly for a top-mounting design:  the written description only describes a top-mounting design, the drawings only show a top-mounting configuration and nothing in the prosecution history shows that the inventor envisioned anything other than a top-mounting design."  The Federal Circuit agreed:  "We agree with the district court that … [inventor] Chao disclaimed an auxiliary frame that is not stably supported in top-mounting configuration …"  563 F.3d 1358, 1368 (Fed. Cir. 2009).

Several claim construction issues here are the <u>same</u> as issues <u>fully, fairly</u> and <u>actually litigated</u> in the California Action and <u>necessary</u> to the final judgment that certain claims of the '545 Patent were not infringed.  See *Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1345 (Fed. Cir. 2002) (stating requirements of issue preclusion under 11th Circuit law).  Accordingly, issue preclusion applies and plaintiffs are bound by the applicable claim construction rulings in the California Action. See *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1323 (Fed. Cir. 1987).

Moreover, the California court was correct.  The written description and figures <u>only</u> teach a top-mounting configuration --- where the auxiliary frame attaches to the top of the primary frame, as shown in the figures from the patent below in section IV.  The '545 patent repeatedly explains that the arms of the auxiliary frame rest on top of the primary frame to prevent the downward movement of the auxiliary frames and the magnetic member surfaces in the arms face downwardly to engage with upwardly facing magnetic member surfaces on the primary frame.  (See *infra* Section IV.)

Because the claims of a patent can not "enlarge what is patented beyond what the inventor described as the invention," *Netword LLC v. Centraal Corp.*, 242 F.3d 1347, 1349 (Fed. Cir. 2001), the claim terms at issue must be construed consistently with this top-mounting configuration.  The arms and magnets on the auxiliary frame must be configured to extend <u>across the top</u> of the sides of the primary frame and the "horizontal surface" of the magnetic member of the auxiliary frame must be construed to face <u>downwardly</u> to <u>securely</u> engage the magnetic members on the primary frame.

---

[1]  The '545 Patent, Ex. A, is attached hereto.  All other Exhibits cited are attached to the Declaration of Steven M. Hanle filed herewith.

-1-

## II.  THE CLAIM CONSTRUCTION RULINGS OF THE CALIFORNIA COURT ARE BINDING

The law of the regional circuit applies to the issue of collateral estoppel/issue preclusion. *Bayer AG*, 279 F.3d at 1345.  Eleventh Circuit law requires that (1) the same issue was (2) actually litigated in the prior case, (3) a necessary part of the judgment, and (4) there was a full and fair opportunity to litigate the issue.  *Id.*, citing *In re McWhorter*, 887 F.2d 1564, 1566 (11th Cir.1989).  When the requirements of issue preclusion are met, "the prior determination of certain issues, including the issues of claim construction … bars judicial redetermination of those issues as between the parties to the prior actions." *Del Mar Avionics*, 836 F.2d at 1323.  All of these elements are met in this case.

In the California Action, the same plaintiffs accused Revolution's primary and auxiliary frames of infringing claims 6, 22 and 34 of the '545 Patent.  563 F.3d at 1362.  Among the issues <u>actually litigated</u> in the California Action <u>and presented in this case</u> are:

- "whether or not the invention claimed in the '545 Patent is limited to a top-mounting design.  Counterclaimants [plaintiffs in this case] contend that the '545 Patent covers both a **top and bottom**-mounted design."  (Hanle Decl. Ex. B (Order Construing Claims in the California Action) at 29:3-6.)  Here, plaintiffs also contend that the '545 Patent covers both, arguing "at least some portion of the auxiliary spectacle frame arms are suitable for reaching across **the top or bottom** of the corresponding side portions of a primary spectacle frame." (Joint Claim Construction Chart (JCCC) pp.2-3.)
- The meaning of "magnetic members … having a horizontal surface." (Compare Ex. B p. 32 with JCCC p. 3.)
- The meaning of "extend[ing] across" a respective/corresponding extension or side portion.  (Compare Ex. B p. 35 with JCCC pp. 2-3.)

The determination of these issues was critical and necessary to summary judgment and judgment in the California Action that claims 6 and 34 were not infringed.  It was undisputed that Revolution's accused auxiliary frames in the California Action (and in this action) were bottom mounting.  See, e.g., *Revolution Eyewear*, 563 F.3d at 1363.  Accordingly, the California Court granted Revolution's motion for summary judgment that claims 6 and 34 were not infringed and entered judgment consistent with its rulings, which were not challenged on appeal and were affirmed.  *Id.* at 1364-65, 1374.  Finally, there is no dispute that these issues were fully and fairly litigated in the California Action, including through a joint claim construction statement, opening, responsive and reply briefs and a hearing.  (Ex. B p. 3; Ex. C (California Docket) DE 144.)

## III.  THE LAW OF CLAIM CONSTRUCTION

The interpretation of the claims of the patent, is a matter of law exclusively for the Court to determine. *Markman v.Westview Inst. Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). Since 2005, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), has been the

-2-

leading case on the Federal Circuit's claim construction methodology.  Significantly, the *Phillips* court held: "the specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the <u>single best guide</u> to the meaning of a disputed term.'"  *Id.* at 1315-16 (emphasis added; also citing written description requirement of 35 U.S.C. § 112(1)).

The written description must "clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Ariad Pharmaceuticals, Inc. v. Eli Lilly and Co.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010) (*en banc*) (and cases cited therein) ("requiring a written description of the invention plays a vital role in curtailing claims … that have not been invented, and thus cannot be described.")  The disclosure must reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.  *Ariad*, 598 F.3d at 1351.  In this case, we know that the inventor did **not** <u>have possession</u> of bottom-mounting auxiliary frames because he testified that he never thought of them until he saw Revolution's products years after he filed his patent application.  (Ex. D (Richard Chao Dep.) at 141-142.)  Because he did not invent bottom-mounting auxiliary frames, it is not surprising that the written description of the '545 patent does not describe or even hint at bottom-mounting auxiliary frames.

Furthermore, the Federal Circuit has repeatedly recognized that it is more than appropriate to construe claims with limitations found in the specification when the specification requires the limitations or assigns significance to those limitations.  *Bell Atlantic Network Servs., Inc. v. Covad Communs. Group, Inc.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001) (finding a claim term defined by "implication" where the specification used the term consistently throughout)[2]; *Kraft Foods Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1367-69 (Fed. Cir. 2000) (finding that the claim term "protecting back panel" was limited to a "relatively stiff" panel because the specification described the back panel as being "constructed of a relatively stiff material"); *Toro Co. v. White Consol. Indus.*, 199 F.3d 1295, 1300-02 (Fed. Cir. 1999); *Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1382-83 (Fed. Cir. 1999).

*Ariad* reconfirmed that, under these circumstances, the claims of the '545 patent <u>cannot</u> be construed to cover a bottom mounting auxiliary frame.  See *Ariad*, 598 F.3d at 1358 citing *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005) (holding that "[a]fter reading

---

[2]  This case is closely comparable to *Bell Atlantic*.  The district court construed the term "mode" to be limited to the modes described in the written description, and the Federal Circuit affirmed.  262 F.3d at 1271.  The Federal Circuit rejected the contention that this construction improperly imported a limitation from the specification into the claims.  *Id*. at 1270.  The court noted that the Summary of the Invention, the Detailed Description of the Preferred Embodiments, and every other reference to the term "mode" in the written description supported the district court's construction.  *Id*. at 1270-73.

the patent, a person of skill in the art would **not** understand" the patentee to have invented a generic method where the patent only disclosed one embodiment of it); *Reiffin v. Microsoft Corp.,* 214 F.3d 1342, 1345-46 (Fed. Cir. 2000) (noting that the "scope of the right to exclude" must **not** "overreach the scope of the inventor's contribution to the field of art as described in the patent specification"); *Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1126 (Fed. Cir. 2008); *Netword*, 242 F.3d at 1349.  Thus, the Federal Circuit has consistently upheld the rule that the claims must be construed in light of the specification and cannot be broader than what the written description describes as the invention.

## IV.  THE '545 PATENT

Here, the '545 patent specification acknowledges two prior art patents that disclosed the use of magnets to attach an auxiliary frame and/or lens to a primary spectacle frame, U.S. Pat. No. 4,070,103 to Meeker and U.S. Pat. No. 5,416,537 to Sadler.  ('545 patent Col. 1:14-25.)  Meeker and Sadler disclose what is sometimes referred to in the art as "front-mounting" clip-ons, where the magnets are on the *front* of the primary frame.  (Ex. E (Sodano Report) ¶¶ 12-13.)  The '545 patent specification explains that the front-mounting magnetic auxiliary frames in the prior art "have no supporting members for preventing the auxiliary lenses from moving downward relative to the frames such that the auxiliary lenses may easily move downward relative to the frames and may be easily disengaged from the frames when the users conduct jogging or jumping exercises.…  The present invention has arisen to mitigate and/or obviate the afore-described disadvantages of the conventional spectacle frames."  (Col. 1:27-40.)

The '545 patent then includes a summary of the invention, which starts as follows:  "The primary objective of the present invention is to provide auxiliary lenses which may be stably secured and supported on the frames."  The summary goes on to explain how the auxiliary frames are stably secured and supported on the primary frames by an arm and magnetic member extending over and engaging the top of primary frame extensions.  (Col. 1:56 –2:7; Sodano Report ¶ 16.)

The '545 patent then includes a description of the drawings and a detailed description of the preferred embodiment.  Below are figures 3 through 6, in which the arms of the auxiliary frame (21) are shown in yellow resting on top of extensions (11) on the primary frame.



The detailed description explains that:

> "An auxiliary spectacle frame 20 is provided for supporting the auxiliary lenses therein and includes two side portions each having an arm 21 extended rearward therefrom for extending over and for engaging with the upper portion of the primary spectacle frame 10 (FIGS. 5 and 6). The auxiliary spectacle frame 20 also includes two magnetic members 22 secured to the arms 21 therefor for engaging with the magnetic members 14 of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be stably supported on the primary spectacle frame 10, best shown in FIGS. 5 and 6.
>
> It is to be noted that the arms 21 are engaged with and are supported on the upper portion of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be stably supported and secured to the primary spectacle frame 10. The auxiliary spectacle frame 20 will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises." (Col. 2:38-55.)

The patent and figures also explain that the magnetic members on the auxiliary frame extend downward toward the primary frame, which can only take place in a top-mounting configuration. (See Fig. 7; col. 3:1-17.)

Thus, the "present invention" is consistently described as top-mounting, and all aspects of the invention require a top-mounting auxiliary frame to achieve the "primary objective" of the invention: "to provide auxiliary lenses which may be stably secured and supported on the frames." (See Ex. E ¶ 19.) The '545 patent does not teach a bottom-mounting or any other configuration which achieves the stated objectives. (Sodano Report ¶ 20.)

## V. DEFENDANTS' CONSTRUCTIONS AND SUPPORT

### A. "An eyeglass device"

#### 1. The Written Description

The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Markman*, 52 F.3d at 979; *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, the specification of the '545 patent <u>expressly</u> defines "an eyeglass device" as including "a primary and an auxiliary spectacle frames for supporting lenses." ('545 Patent, Abstract; see *Revolution*, 563 F.3d at 1365 ("the '545 patent describes an eyeglass device to 'include[] a primary <u>and</u> an auxiliary spectacle frames for supporting lenses'"; emphasis in original).) Indeed, each reference to the "eyeglass device" in the written description refers at least to the primary frame in combination with the auxiliary frame. (Col. 1:47-48 ("an *eyeglass device* comprising a primary spectacle frame …"); col. 2:32-33 ("an *eyeglass device* in accordance with the present invention comprises a primary spectacle frame …"); col. 2:63-67; col. 3:18-24.); see *Poly-America v.*

-5-

*GSE Lining Technology*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (repeated use of a preamble term to describe the invention throughout a patent specification supports construing the term as a claim limitation).

While preamble language is often treated as nonlimiting, it is often limiting where, as here, the description of the invention requires it. *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006). Whether a preamble recitation is a limitation or just a statement of purpose "can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,* 868 F.2d 1251, 1257 (Fed. Cir. 1989). To determine the inventor's intent, a court may review the claims, specification, drawings, and prosecution history. See *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997).[3]

2.  **Prosecution History Disclaimer**

Further, plaintiffs disavowed an eyeglass device consisting of only an auxiliary frame (or only a primary frame) to distinguish prior art during prosecution of the '545 patent. See, e.g., *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1333 (Fed. Cir. 2009) ("Edwards cannot now reclaim what it disclaimed during prosecution and throughout the specification"). While the claims of the predecessor '207 patent specifically provided that the "eyeglass device" included both a primary spectacle frame and an auxiliary spectacle frame (see Ex. A, claims 1 and 2), the reissue application initially included claims directed to "an eyeglass device", to "a *primary* eyeglass device", and to "an *auxiliary* eyeglass device". (Ex. F pp. 8-11, claims 14-22, 29-30.) However, all of the claims directed to "a *primary* eyeglass device" or "an *auxiliary* eyeglass device" were rejected as anticipated by a reference referred to as Twincome-Pentax. (Ex. G p. 8.) In an effort to overcome the rejection, the applicants clearly disavowed an eyeglass device consisting of only a primary frame or only an auxiliary frame, arguing the Twincome-Pentax documents "do not show eyeglasses with a pair of frames – auxiliary frame with primary frame. The exhibits only show eyeglasses with one frame." (Ex. H p. 28, Ex. I p. 49.) When the examiner maintained the anticipation rejection based on Twincome-Pentax, the applicants abandoned the claims directed to "a *primary* eyeglass device" or "an *auxiliary* eyeglass device". All of the remaining and new claims were directed to "an eyeglass device …", the terminology used all along for the combination of the primary and auxiliary frames. (Ex. J pp.

---

[3] The subsequent occurrence of a preamble term in a claim is another indicator as to whether the inventor intended the preamble to be limiting. See *Pitney Bowes, Inc. v. Hewlett-Packard Co.,* 182 F.3d 1298, 1305 (Fed. Cir. 1999) Here, claim 23 refers to a "primary spectacle frame" without antecedent basis, unless "eyeglass device" is construed to include a primary frame.

4 (canceled claims), 2-15 (amended and new claims) and 20 (examiner maintained anticipation rejection.)  Thus, the applicant disclaimed an eyeglass device consisting of only one spectacle frame

### 3. Defendants' Proposed Construction

- **An eyeglass device** means "An eyeglass device includes a primary spectacle frame and an auxiliary spectacle frame"

## B. "a magnetic member having a horizontal surface"

### 1. Issue Preclusion

The California court construed "magnetic members … having a horizontal surface" in the auxiliary frame (claim 6) as "having a downwardly facing surface that lies in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame".  (Ex. B p. 32.)  Claim 23 asserted in this case contains language identical to claim 6.  Unless the patent otherwise provides, a claim term cannot be given a different meaning in the various claims of the same patent.  See, e.g., *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1331 (Fed. Cir. 1999).  Because the requirements of issue preclusion are met, the California court's construction that the magnetic member surface is downwardly facing is binding on plaintiffs.

### 2. The Written Description Requires That The Magnetic Member Surfaces on the Auxiliary Frame Are Downwardly Facing

As set forth above, the written description and the drawings require the horizontal surface of the magnetic members on the auxiliary frame to be downwardly facing so that this horizontal surface can engage corresponding upwardly facing horizontal surfaces on the primary frame.  As set forth above, this is the only way the features and advantages of the invention of the '545 patent can be achieved.

Plaintiffs have contended that rounded epoxy surfaces on the bottom of the arms of defendants' auxiliary frames are downwardly facing magnetic member surfaces.  Accordingly, the parties agree that it would be helpful for the Court to construe "magnetic member".  Defendants propose that "magnetic member" be construed according to its plain meaning as "a member having the properties of a magnet, i.e., attracting iron and producing a magnetic field external to itself." (See http://www.merriam-webster.com/dictionary/magnet.)[4]  Plaintiffs' contention also requires the court to clarify that the "surface" referred to is the *exterior face* of the magnetic member, not some other

---

[4] Plaintiffs' proposed construction – "a permanent magnet or a ferromagnetic member, but at least one magnetic member in each pair of corresponding auxiliary frame/primary frame magnetic members must be a permanent magnet" – is unsupported by the specification and raises more questions than it answers, e.g., the definition of "ferromagnetic".

surface that allows magnetic forces to pass through.  (See Webster's II New College Dictionary (1995) (defining "surface" as the exterior face of an object).)

    3.    **Defendants' Proposed Construction**

- **magnetic member** means "a member having the properties of a magnet, i.e., attracting iron and producing a magnetic field external to itself"

- **magnetic member having a horizontal surface** means "a magnetic member of the auxiliary frame having a downwardly facing horizontal surface (exterior face)"

C.    <u>**"said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame"**</u>

    1.    **Issue Preclusion**

The California court construed *"said arms extending across a respective extension"* (claim 34) to mean that "at least some portion of each arm <u>reaches across the top</u> of the corresponding extension".  (Ex. B p. 35.)  Claim 23 asserted in this case contains almost identical language to claim 34:  "said arms … adapted to extend across respective side portions," which must be construed consistently.  See *Georgia-Pacific*, 195 F.3d at 1331; *Bayer AG*, 279 F.3d at 1345; *Del Mar Avionics*, 836 F.2d at 1323.

    2.    **The Written Description Requires That the Arms Extend Across the Top of the Side Portions or Extensions of a Primary Frame**

The specification, including the drawings and the written description, requires that the arms and magnetic members of the auxiliary frame extend across the top of side portions of the primary spectacle frame.  As set forth above, this is the only way the features and advantages of the '545 patent invention can be achieved.  The parties agree that **side portions** means those portions of the primary spectacle frame extending from the sides of the lens rims; however plaintiffs' proposed construction adds issues and terms not addressed in the specification: "lens supporting structure", extending "outwardly", and "legs that fit over the wearer's ears".

    3.    **"adapted to"**

Plaintiffs ostensibly construe "adapted to extend across" as "suitable for extending across", but in application attempt to conflate "adapted to extend across" with "capable of extending across".  (See DE 124 (Pltf's Opp to MSJ) pp. 9-11.)  This very argument was rejected by the court in *Boston Sci. Corp. v. Cordis Corp.*, 2006 U.S. Dist. LEXIS 94329 (N.D. Cal. Dec. 20, 2006) (construing "adapted to" as "configured to").  The *Boston Scientific* court's construction was based in part on the same dictionary definition relied on by plaintiffs here:  "to make fit (as for a specific new use or situation) …"  *Id.* at *6-7; see http://www.merriam-webster.com/dictionary/adapted; see also *Agilent Techs., Inc. v. Affymetrix, Inc.*, 567 F.3d 1366, 1378 (Fed. Cir. 2009) (**rejecting** district court's claim construction that "a closed chamber . . . <u>adapted to</u> retain a quantity of fluid" means "an enclosed cavity … which is

-8-

capable of being sealed or set apart from its surroundings to retain a quantity of fluid."); *Sta-Rite Indus., LLC v. ITT Corp.*, 2010 U.S. Dist. LEXIS 10790 at *30-32 (E.D. Tex., Jan. 19, 2010) (construing "adapted to" as "designed or configured to" and rejecting construction as "having the capacity to"). "Adapted to" means "made to", and not merely "capable of".

    4.    **"primary spectacle frame"**

Defendants construe a "primary spectacle frame" to include two side portions each having an extension extended rearward therefrom for pivotally coupling a leg thereto, and two projections secured to the rear and side portions thereof for supporting magnetic members therein. This is precisely how the primary spectacle frame is defined in the specification. (See col. 2:33-38.) The specification clarifies that the magnetic members are not embedded in the primary frames, which would decrease the strength of the frames. (Col. 2:59-60; col. 3:24-26.) Yet again, plaintiffs' construction adds issues and terms not even mentioned in the specification: a nose bridge, partial rims, and "structures that support lenses in rimless frames".

    5.    **Defendants' Proposed Construction**

- **adapted to extend across respective side portions of a primary spectacle frame** means that said arms and said pair of magnetic members are made to extend across the top of respective side portions or extensions of the primary spectacle frame

**D.**    **"so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"**

    1.    **Issue Preclusion and Written Description**

As addressed above, the California court held that "the invention disclosed in the '545 patent is limited to a top-mounting design". (Ex. B. p. 32.) Because the elements of issue preclusion are met, this ruling is binding on the parties in this case. Further, the '545 patent specification, including the drawings and the written description, requires top mounting, which is the only way the features and advantages of the invention can be achieved. Accordingly, magnetic member surfaces on the auxiliary frame must be downwardly facing, and must engage the upwardly facing magnetic member surfaces of the primary frame from the top. Further, the '545 patent makes abundantly clear that the primary frame magnetic members are secured in projections attached to the frame, and are not embedded in the primary frame. (Col. 2:36-38; col. 2:59-60; col. 3:24-26.)

    2.    **The Written Description Requires That Engagement Result in Stable and Secure Support**

The written description repeatedly makes clear that the engagement between the magnetic members of the primary and auxiliary spectacle frames result in stable support and secure attachment of the auxiliary frames:

-9-

- "a magnetic member for engaging with the magnetic members of the primary spectacle frame so as to secure the spectacle frames together"  (Abstract.)
- "The primary objective of the present invention is to provide auxiliary lenses which may be stably secured and supported on the frames."  (Col. 1:43-45.)
- "The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward relative to and so as to prevent the auxiliary spectacle frame from being disengaged from the primary spectacle frame."  (Col. 1:62-2:2.)
- "The auxiliary spectacle frame 20 also includes two magnetic members 22 secured to the arms 21 therefor for engaging with the magnetic members 14 of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be stably supported on the primary spectacle frame …"  (Col. 2:43-48.)
- "It is to be noted that the arms 21 are engaged with and are supported on the upper portion of the primary spectacle frame 10 such that the auxiliary spectacle frame 20 may be stably supported and secured to the primary spectacle frame 10. The auxiliary spectacle frame 20 will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises."  (Col. 2:48-56.)
- "the arms 21 and the magnetic members 22 may hook on the primary spectacle frame 10 and such that the auxiliary spectacle frame 20 may further be stably supported and secured to the primary spectacle frame 10."  (Col. 3:6-10.)
- "Accordingly, the eyeglass device in accordance with the present invention includes an auxiliary spectacle frame that may be stably secured to the primary spectacle frame and will not move downward relative to the primary spectacle frame and will not be easily disengaged from the primary spectacle frame when the users conduct jogging or jumping exercises."  (Col. 3:18-24.)

Accordingly, the Federal Circuit agreed with the California court that the '545 Patent "disclaimed an auxiliary frame that is not <u>stably supported in top-mounting configuration</u> …" *Revolution*, 563 F.3d at 1368 (emphasis added).

    3.    **Defendants' Proposed Construction**

- "so that said pair of magnetic members having a downwardly facing horizontal surface can be stably supported and secured on top of the upwardly facing non-embedded magnetic member surfaces on a primary spectacle frame"

**E.**    <u>"rearwardly directed free end</u>

Plaintiffs' construction changes the plain meaning of the term.  The free ends of the arms are rearwardly <u>directed</u>, not rearwardly extended (contrast with "an arm <u>extended</u> therefrom"). Further, since the arms extend from the side portions of the frame, the ends of the arms <u>must be</u> attached to the side portions of the frame.  This term should be given its plain and ordinary meaning.

**F.**    <u>"for securing"</u>

This term does not require construction and should also be given its plain and ordinary meaning.

DATED: October 19, 2010

    s/ Steven M. Hanle

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron M. Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1993
Telephone:    714.513.5100
Telecopy:    714.513.5130

and

    s/ Janet T. Munn

Janet T. Munn
jmunn@rascoklock.com
Florida Bar No. 501281
Rasco, Klock, Reininger, Perez, Esquenazi, Vigil & Nieto, P.L.
283 Catalonia Avenue
Suite 200
Coral Gables, FL  33134
Telephone: 305.476.7100
Telecopy: 305.476.7102

*Attorneys for Defendants Revolution Eyewear, Inc., Hardy Way, LLC and Gary Martin Zelman*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 19, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/EFC system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified on the Notice of Electronic Filing generated by CM/ECF.

      By: s/ Janet T. Munn
          Janet T. Munn

**SERVICE LIST**

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Jacqueline Becerra, Esquire
email: becerraj@gtlaw.com
Ericka Yolanda Turk, Esquire
email: turkmooree@gtlaw.com
**GREENBERG TRAURIG**
1221 Brickell Avenue
Miami, Florida 33131
Telephone: 305.379.0534
Telecopy: 305.579.0717

*Attorney for Plaintiffs Aspex Eyewear, Inc., and Contour Optik, Inc.*
Michael Nicodema, Esquire
email: nicodemam@gtlaw.com
Barry J. Schindler, Admitted Pro Hac Vice
email: schindlerb@gtlaw.com
MetLife Building
**GREENBERG TRAURIG**
200 Park Avenue
New York, New York 10166-1400
Telephone: 212.801.9200
Telecopy: 212.801.6400

Todd Schleifstein, Admitted Pro Hac Vice
**GREENBERG TRAURIG**
200 Park Avenue
Florham Park, NJ  07932
email:  schleifsteint@gtlaw.com
Telephone:  973.360.7900
Telecopy:  973.301.8410

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
W. Barry Blum, Esquire
email: bblum@gjb-law.com
Martin J. Keane, Esquire
email: mkeane@gjb-law.com
**GENOVESE JOBLOVE & BATTISTA, P.A.**
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305.349.2300
Telecopy: 305.349.2310

Scott W. Hansen, Admitted Pro Hac Vice
email:  shansen@reinhartlaw.com
**REINHART BOERNER VAN DEUREN**
1000 N. Water Street
PO Box 2965
Milwaukee, WI 53201-2965
Telephone:  414.298.8123
Telecopy:  414.298.8097

*Attorney for Defendants Marchon Eyewear, Inc., and Nike, Inc.*
Edgar H. Haug, Admitted Pro Hac Vice
email:  ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
email:  bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
email:  dherman@flhlaw.com
Porter F. Fleming, Admitted Pro Hac Vice
email:  pfleming@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
745 Fifth Ave.
New York, New York 10151
Telephone:  212.588.0800
Telecopy:  212.588.0500

Mark P. Walters, Admitted Pro Hac Vice
email:  mwalters@flhlaw.com
**FROMMER LAWRENCE & HAUG LLP**
1191 2nd Avenue, Suite 2000
Seattle, WA  98101
Telephone:  206.336.5690
Telecopy:  212.588.0500

4823-4114-8679, v.  1