## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. and
CONTOUR OPTIK, INC.,

      Plaintiffs,

vs.

HARDY LIFE, LLC, MARCHON
EYEWEAR, INC., NIKE, INC.,
REVOLUTION EYEWEAR, INC., and
GARY MARTIN ZELMAN, an
individual,

      Defendants.

_____/

### PLAINTIFFS' CLAIM CONSTRUCTION MEMORANDUM

I.      **THE '545 PATENT AND DISPUTED ELEMENTS OF CLAIMS 23 AND 35**

The patent at issue is U.S. Patent No. RE 37, 545, entitled "Auxiliary Lenses For Eyeglasses" (the "'545 Patent") (Exh. 1).  The '545 Patent claims three embodiments of the invention are claimed: (1) a combination primary spectacle frame/auxiliary spectacle frame, in which the auxiliary frame is attached to the primary frame through the use of cooperating magnetic members; (2) the primary spectacle frame itself; and (3) the auxiliary spectacle frame itself.  Plaintiffs are asserting New Claims 23 and 35 of the '545 Patent against the Defendants.  These claims are directed to the auxiliary spectacle frame embodiment of the invention.[1]

II.     **PLAINTIFFS' PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED**

   A.      **The Law Of Claim Construction**

         1.      **Claims, Preambles, And Claim Differentiation**

Claim construction is a question of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 391 (1996). "'[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted); *accord Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Claims terms are generally given the "ordinary and customary meaning" they would have "to a person of ordinary skill in the art in question. . . as of the effective filing date of the patent application."  *Phillips*, 415 F.3d at 1313.

---

[1] The text of New Claims 23 and 35 is reproduced in Exhibit 2.  The proper constructions of the claim elements highlighted in Exhibit 2 are in dispute.  Exhibit 3 to this memorandum is a claim chart summarizing the Plaintiffs' constructions of all terms recited in New Claims 23 and 35, including intrinsic and extrinsic support for Plaintiffs' constructions.

The "preamble" of a patent claim consists of the words appearing before the recitation of  elements in the body of the claim; and typically ends with a transitional term such as "comprising".  Preambles generally do not limit the scope of patent claims.  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002).  A preamble may be limiting have when: (1) the limitations in the body of the claim rely upon and derive antecedent basis from the preamble; (2) the preamble recites essential structure or steps or is necessary to give life, meaning and vitality to the claim; and (3) there was clear reliance on the preamble during prosecution to distinguish the prior art.  *Id.*  Otherwise, the preamble should be non-limiting.  *American Medical Systems, Inc. v. Biolitec, Inc.*, 2010 WL 3564855, *4 (Fed. Cir. 2010).

"Differences among claims can also be a useful guide in understanding the meaning of particular claim terms. For example, the presence of a dependent claim that adds a particular limitation gives rise to  a presumption that the limitation in question is not present in the independent claim."  *Phillips*, 415 F.3d at 1314-15; *see also Forrest Laboratories, Inc. v. Abbott Laboratories*, 239 F.3d 1305, 1310 (Fed. Cir. 2001) ("Where claims use different terms, those differences are presumed to reflect a difference in the scope of the claims.").

## 2.    Claims Are Construed In Light Of The Intrinsic Record

The patent specification (which includes all parts of the patent) is "the primary basis for construing the claims."  *Phillips*, 415 F.3d at 1315.  Particular embodiments of the invention disclosed in the specification should not be ***imported*** into the claims where the claim language is broader than these embodiments.  *Id.* at 1323.  Thus, "the number of embodiments disclosed in the specification is not determinative of the meaning of disputed claim terms", even where only one embodiment of the invention is disclosed.  *Teleflex, Inc. v. Ficosa North America Corp.,* 299 F.3d 1313, 1325-26 (Fed. Cir. 2002); *accord SRI Int'l v.*

*Matsushita Electric Corp. of America*, 775 F.2d 1107, 1121 n. 14 (Fed. Cir. 1985) (*en banc*);

*Phillips*, 415 F.3d at 1323.  Conversely, a claim construction should not **exclude a preferred**

**embodiment** of the invention disclosed in the patent.  *Primos, Inc. v. Hunter's Specialties,*

*Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006).

The prosecution history of a patent "consists of the complete record of the

proceedings before the PTO and includes the prior art cited during the examination of the

patent".  *Phillips*, 415 F.3d at 1317.  "Unless altering claim language to escape an examiner

rejection, a patent applicant only limits claims during prosecution by clearly disavowing

claim coverage."  *York Products, Inc. v. Central Tractor Farm & Family Center*, 99 F.3d

1568, 1575 (Fed. Cir. 1996).[2]

**B.**     **The Preamble Term "*An eyeglass device*" Is Not A Claim Limitation**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "**An eyeglass device**" is preamble term; not a claim limitation | "**An eyeglass device**" includes a primary spectacle frame and an auxiliary spectacle frame |

Here, the preamble the "*An eyeglass device*" is merely a descriptive statement of

intended use of the invention recited in Claims 23 and 35, and does not fall within any of the

general situations in which preamble language may have a limiting effect.  First, there are no

limitations in the body of Claims 23 and 35 that rely upon and derive antecedent basis from

the preamble.   Second, the preamble does not recite any essential steps, and it is not

necessary to give life, meaning, and vitality to the claims. Claims 23 and 35 recite

---

[2]  Courts "may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents."  *Vitronics*, 90 F.3d at 1584, n. 6, 1585.

structurally complete inventions without the preamble language. Finally, the '545 Patent inventor never relied upon the preamble to distinguish prior art. *See American Medical Systems*, 2010 WL 3564855, *4. Thus, the preamble of Claims 23 and 35 is not a limitation, and need not be construed. In any event, if the preamble were to be construed, it should be construed consistent with its ordinary meaning to mean an "eyepiece" (Exh. 4: *merriam-webster.com* definition of "eyeglass").[3]

C.   ***"each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"***

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "***rearwardly directed free end***" means – the end of the arm that extends substantially rearward of the lenses and is not attached to the side portions of the auxiliary spectacle frame.<br><br>"***for securing***" means – for connecting in a manner such that the connection is not likely to fail or give way.<br><br>"***magnetic member***" means – a permanent magnet or a ferromagnetic member, but at least one magnetic member in each pair of corresponding auxiliary frame/primary frame magnetic members must be a permanent magnet. | "***rearwardly directed free end***" and "***for securing***" to be given their ordinary and customary meaning.<br><br>"***magnetic member***" means -- "a member having the properties of a magnet, i.e., attracting iron and producing a magnetic field external to itself".<br><br>"***magnetic member having a horizontal surface***" means -- "a magnetic member of the auxiliary frame having a downwardly facing horizontal surface (exterior face)" |

---

[3] When the inventor wanted to claim a combination primary frame/auxiliary frame, he did so. *See* Exh. 1: '545 Patent, e.g., Claims 1, 12, 14, and 16. Moreover, Defendants' construction of the preamble improperly implies that Claims 23 and 35 are directed to a combination primary frame/auxiliary frame. However, Claims 23 and 35 are directed to the structure and functionality of the auxiliary frame ***only***. *See also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.,* 563 F.3d 1358, 1365 (Fed. Cir. 2009) ("*Revolution I*"), where Revolution conceded that Claim 22 of the '545 Patent, which also includes the preamble "*An eyeglass device*", is directed to the primary spectacle frame only -- thus conceding that the preamble is non-limiting. 563 F.3d at 1365.

| | |
|---|---|
| "*horizontal surface*" means – a surface in a substantially horizontal plane when the frame is worn (i.e., in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame). | |

Plaintiffs' constructions of the above claim terms are fully supported by the intrinsic record of the '545 Patent, as well as the ordinary meaning of the words.  First, consistent with Plaintiffs' construction of "*rearwardly directed free end*", Figure 4 of the '545 Patent illustrates a top view of an exemplary auxiliary spectacle frame 20 that has two arms 21, each arm including a free end extending rearwardly of the corresponding lens and is not attached to the corresponding side portion of the frame.  Figure 4 is reproduced below:



Second, Plaintiffs' construction of the term "*for securing*" to mean "not likely to fail or give way" is consistent with: (1) the ordinary meaning of the word "secure" (*Webster's II New College Dictionary* (1st Ed. 1999) at page 150 (Exh. 5)); and (3) this Court's construction of the term "secured" in the '545 Patent claims in *Aspex Eyewear, et al v. Concepts In Optics, Inc*. 00-7067-CIV Moreno/Dube (S.D. Fla. 2005) ("*Concepts*") (D.E. # 590 at 17) (Exh. 6).[4]

---

[4] Defendants do not agree with Plaintiffs' constructions of the terms "*rearwardly directed free end*" and "*for securing*", and contend that they should be construed in accordance with their ordinary meanings.  But Defendants do not propose ordinary meanings for these terms.  Because the constructions are in dispute, the Court must construe these terms, and cannot conclude that they should be construed based on some unidentified ordinary meaning.  *O2*

Third, Plaintiffs' construction of the term "*magnetic members*" is consistent with: (1) the claim differentiation doctrine, because dependent Claim 35 limits the term "magnetic member" to a "magnet" (thus, "magnetic member" cannot be limited to permanent magnet); (2) the ordinary dictionary meaning of the word "magnetic" (*Webster's II New College Dictionary* (1st Ed. 1999) at page 140 (Exh. 7); (3) the prior art U.S. Patent No. 5,416,357 to Sadler, which was considered during prosecution of the '545 Patent (Exh. 8), and which discloses at col. 3, lines 21-25 that the first and second magnetic members are made of a permanent magnetic material or a ferromagnetic material, but "[a]t least the one of the first and second magnetic members must be of a permanent magnetic material for a magnetic attraction to exist";[5] and (4) the *Concepts* Court's construction of the term "magnetic member", which relies on Sadler (Exh. 6 at 9-10). Defendants' construction of "*magnetic member*" fails to take the Sadler reference into account.

Finally, consistent with Plaintiffs' construction of the term "*horizontal surface*" is the illustrative embodiment shown in Figures 4 and 7 of the '545 Patent. Figures 4 and 7 of the '545 Patent illustrate top and side views, respectively, of an auxiliary frame 20 that has two arms 21, each arm including a magnetic member 22. These Figures are reproduced below:



*Micro Intern., Ltd. v. Beyond Innovation Technology Co.*, Ltd., 521 F.3d 1351, 1361-63 (Fed. Cir. 2008).

[5] Prior art considered during prosecution of a patent is relevant to the proper construction of claim language. *Kumar v. Ovonic Battery Co., Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003).

Each magnetic member 22 has a surface located in a substantially horizontal plane when the auxiliary frame is worn (*i.e.*, substantially perpendicular to the plane of the auxiliary lenses). The '545 Patent describes Figure 7 as showing "engaging surfaces" for magnetic members 14 and 22 that "lie in a substantially horizontal plane when the eyeglass device is worn" (Col. 2, lines 63-67). Defendants construe the "*horizontal surface*" to mean a "***downwardly facing*** horizontal surface ***(exterior face)***", but no such limitations are required by the intrinsic record, and as discussed above, specification-disclosed embodiments cannot be read into claims.[6]

Notably, Defendants' requirement that the "*horizontal surface*" be the "exterior surface" of the magnetic member would mean, if adopted, that the magnetic engaging surfaces of the auxiliary spectacle frame magnetic members could not include any protective or aesthetic coatings. But there is nothing in the  intrinsic record to support such a narrow construction.

D.    "***said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame***"

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "***adapted to extend across respective side portions of a primary spectacle frame***" means -- the magnetic members and at least some portion of the auxiliary spectacle frame arms are suitable for reaching across the top or bottom of the corresponding side portion of a primary spectacle frame | "***adapted to extend across respective side portions of a primary spectacle frame***" means -- "said arms and said pair of magnetic members are made to extend across the top of respective side portions or extensions of the primary spectacle frame" |

---

[6]  Defendants seek to support their claim construction of "*horizontal surface*" and others based on the *Revolution I* District Court's construction of an entirely different set of claims containing somewhat overlapping language to the claims at issue here. As Plaintiffs set out in their (continued) opposition to Revolution's motion for summary judgment of non-infringement, a prior Court's claim construction is not binding (*see* D.E. # 124 at page 14).

Plaintiffs' construction of the term "*adapted*" to mean "suitable for" is consistent with the ordinary dictionary definition of the term. *See www.merriam-webster.com*, *www.thefreedictionary.com*, and *www.macmillandictionary.com* definitions of "adapted" in Exhibits 9-11.  Figures 6-7 of the '545 Patent illustrate one embodiment of the claim element "*adapted to extend across respective side portions of a primary spectacle frame*", in which auxiliary frame arms 21 and magnetic members 22 extend across the top of side portions (*e.g.* extensions 11) of a primary spectacle frame 10.  The plain language of the element "*adapted to extend across respective side portions of a primary spectacle frame*" does not require arms/magnetic members to extend across the top of a primary spectacle frame.

Defendants construe the term "*adapted to*" to mean "made to", and change the claim term "***a*** primary spectacle frame" to "***the*** primary spectacle frame".  However, the ordinary meaning of the word "adapted" is not so narrow as to be restricted to an auxiliary frame "made to" extend across the side portion of a particular primary frame (as the Defendants' construction requires). The motivation underlying the Defendants' construction is clear. Defendants argued in their summary judgment briefing that their accused products do not satisfy "*adapted to extend across respective side portions of a primary spectacle frame*" requirement, because when Defendants' auxiliary frames are magnetically engaged to the top of ***Defendants'*** commercially sold primary frames, the primary/auxiliary lenses are not aligned, and the auxiliary frames are not stably supported on ***Defendants'*** primary frames. However, Claims 23 and 35 simply require that the auxiliary frame arms/magnetic members

be adapted to perform the claimed functions in connection with "*a* primary spectacle frame";

meaning *any* primary frame.[7]

     C.     **"*primary spectacle frame*" and "*side portions*" [of the primary frame]**

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "***primary spectacle frame***" means -- the main frame and includes at least a nose bridge, legs which extend back over the wearer's ears, lens rims (if provided), partial rims (if provided), structures that support lenses in rimless frames (if provided), extensions, and primary frame magnetic members. | "***primary spectacle frame***" -- "includes two side portions each having an extension extended rearward therefrom for pivotally coupling a leg thereto, and two projections secured to the rear and side portions thereof for supporting magnetic members therein (i.e., the magnetic members are not embedded in the frame)." |
| "**side portions**" means – those portions of the primary spectacle frame adjacent the lenses or lens rims (if provided) or other lens supporting structure, and which extend outwardly to connect to the legs that fit over the wearer's ears. | "**side portions**" means -- those portions of the primary spectacle frame extending from the sides of the lens rims |

     Defendants' construction limits the primary spectacle frame to one that has "non-embedded" magnetic members.   However, since the invention of Claims 23 and 35 is directed to the structure and functionality of the ***auxiliary spectacle frame only***, it does not matter whether the primary frame magnetic members are embedded.   For those claims directed to the primary frame only (Claim 22), and to a combination primary frame/auxiliary frame, the inventor included language to indicate that the primary frame magnetic members

---

[7] The same issue arose in *Revolution I*.   That case involved Claim 22 of the '545 Patent, which is directed to the primary spectacle frame of the invention.   The dispute was over the claim language "said first magnet members [of a primary frame] capable of engaging second magnetic members of *an* auxiliary spectacle frame."   In *Revolution I*, as here, Revolution argued that there was "no infringement because Revolution's primary frame is not capable of being top-mounted with its counterpart auxiliary frame or any commercially sold auxiliary frame."   563 F.3d at 1369.   The Federal Circuit rejected Revolution's argument based on the clear claim language (*i.e.*, Claim 22 recited "*an* auxiliary spectacle frame").   *Id.* at 1369-70.

were non-embedded.  *See, e.g.*, Claim 22 ("a pair of first magnetic members. . . secured in said projections"); Claim 12 ("a first magnetic member secured to said rear side [of the primary frame extensions]).[8]

      **E.**     ***"so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"***

| Plaintiffs' Construction | Defendants' Construction |
|---|---|
| "***horizontal surface***" means – a surface in a substantially horizontal plane when the frame is worn (i.e., in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame).<br><br>"***vertically engage***" means -- that the horizontal surfaces of the auxiliary spectacle frame magnetic members engage corresponding magnetic member surfaces on a primary spectacle frame through actual contact, or through magnetic attraction without actual contact, in a plane that is substantially parallel to the plane of the lenses of the primary spectacle frame. | "***so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame***" means -- "so that said pair of magnetic members having a downwardly facing horizontal surface can be stably supported and secured on top of the upwardly facing non-embedded magnetic member surfaces on a primary spectacle frame." |

Consistent with Plaintiffs' construction of the term "*vertically engage*", Figures 5 and 7 of the '545 Patent illustrate one embodiment of auxiliary frame 20 in which the magnetic members 22 vertically engage corresponding magnetic members 14 on a primary frame 10 in a plane substantially parallel to the plane of the primary frame lenses:

---

[8] Figure 3 of the '545 Patent shows a top view of an exemplary primary frame 10 which includes side portions (extensions 11, by way of example) that are structurally consistent with (although not limiting of) Plaintiffs' construction of "*side portions*".  Defendants' construction of "*side portions*" requires the primary frame to include lens rims.  However, the intrinsic record contains no such requirement.  Moreover, Defendants' construction of "*side portions*" contradicts their construction of the term "*primary spectacle frame*", which does not require lens rims.



Defendants' construction of the subject claim elements requires the auxiliary frame magnetic members to be supported "on top of" the primary frame magnetic members; implying that the magnetic members must touch. Claims 10-11, however, require that the engaged magnetic members are "not in contact".  Thus, under the claim differentiation doctrine, the term "*engage*" in Claims 23 and 35 includes magnetic engagement with or without contact.  This is consistent with the *Concepts* Court's construction of the term "*engage*" (Exh. 6 at 11-14).[9]

## IV.   <u>CONCLUSION</u>

For all the above reasons, we respectfully submit that the Plaintiffs' constructions of the disputed elements of Claims 23 and 35 of the '545 Patent be adopted in their entirety.

Dated:   October 19, 2010          Respectfully submitted,

By:    /s/ *Jacqueline Becerra*
Jacqueline Becerra
BecerraJ@gtlaw.com
Ericka Turk-Moore
TurkMooreE@gtlaw.com
GREENBERG TRAURIG, P.A.
1221 Brickell Avenue
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

---

[9] Defendants' construction further attempts to: (1) read into the claims the terms "upwardly facing" and "downwardly facing" with respect to the primary spectacle frame and auxiliary spectacle frame magnetic members, so as to limit Claims 23 and 35 to top-mounting configurations in which the auxiliary frame is magnetically engaged to the top of the primary frame.; and (2) limit the primary spectacle frame to one that has "non-embedded" magnetic members.  We have addressed the fallacies of these constructions above.

And

Michael A. Nicodema, Admitted *Pro Hac Vice*
NicodemaM@gtlaw.com
Barry J. Schindler, Admitted *Pro Hac Vice*
SchindlerB@gtlaw.com
Todd L. Schleifstein, Admitted *Pro Hac Vice*
SchleifsteinT@gtlaw.com
GREENBERG TRAURIG, LLP
200 Park Avenue
Florham Park, New Jersey 07932
Telephone:  (973) 360-7900
Facsimile:  (973) 301-8410

*Attorneys for Plaintiffs Aspex Eyewear, Inc.*
*and Contour Optik, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 19<u>th</u> day of October 2010, I electronically filed the
foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the
foregoing document is being served this day on all counsel of record or pro se parties
identified on the attached Service List in the manner specified, either via transmission of
Notices of Electronic Filing generated by CM/ECF or in some other manner for those
counsel or parties who are not authorized to receive electronically Notices of Electronic
Filing.

                    /s/ *Jacqueline Becerra*
                    JACQUELINE BECERRA

## SERVICE LIST

Aspex Eyewear, Inc., et al., v. Hardy Life, LLC, et al.,
Case No. 09-61515-CIV-Cooke/ Bandstra
United States District Court, Southern District of Florida

Janet T. Munn
jmunn@rascoklock.com
Rasco Klock Reininger Perez
Esquenazi Vigil & Nieto
283 Catalonia Avenue
Second Floor
Miami, Florida 33134
Telephone: 305-476-7101
Facsimile: 305-476-7102

*Attorneys for Defendants Hardy Way, LLC,
Revolution Eyewear, Inc. and Gary Martin
Zelman*

Steven M. Hanle, Admitted Pro Hac Vice
shanle@sheppardmullin.com
Jennifer A. Trusso, Admitted Pro Hac Vice
jtrusso@sheppardmullin.com
Aaron Fennimore, Admitted Pro Hac Vice
afennimore@sheppardmulli.com
Sheppard, Mullin, Richter & Hampton LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626
Telephone: 714-513-5100
Facsimile: 714-513-5130

*Attorneys for Defendants Revolution
Eyewear, Inc. and Gary Martin Zelman*

W. Barry Blum
bblum@gjb-law.com
Martin J. Keane
mkeane@gjb-law.com
Genovese Joblove & Battista, P.A.
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
Telephone: 305-349-2300
Facsimile: 305-349-2310

Edgar H. Haug, Admitted Pro Hac Vice
ehaug@flhlaw.com
Brian S. Goncalves, Admitted Pro Hac Vice
bgoncalves@flhlaw.com
David Herman, Admitted Pro Hac Vice
dherman@flhlaw.com
Frommer Lawrence & Haug LLP
745 Fifth Avenue
New York, NY 10151
Telephone: 212-588-0888
Facsimile: 212-588-0500

*Attorneys for Defendants
Marchon Eyewear, Inc. and Nike, Inc.*