UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

Case No.: 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC., *et al.*,

    Plainitffs
vs.

MARCHON EYEWEAR, INC. *et al.*,

    Defendants.
_____/

## **OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

THIS CASE is before me on the Parties' cross motions for summary judgment. I have reviewed the record, the arguments and the relevant legal authorities. For the reasons stated below, Plaintiffs' Motion for Partial Summary Judgment [ECF No. 115] is denied, Marchon's Motion for Summary Judgment [ECF No. 107] is granted in part and denied in part, Revolution and Zelman's Motion for Summary Judgment [ECF No. 111] is granted in part and denied in part, and Nike's Motion for Summary Judgment [ECF No. 103] is granted.

### *I. BACKGROUND*

The technology in this case involves a primary spectacle frame that supports a top mounted auxiliary frame that is attached magnetically. In 1996, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 5,568,207 (the "'207 Patent") to inventor Richard Chao. The '207 Patent was later assigned to Plaintiffs Aspex Eyewear, Inc. ("Aspex") and Contour Opik, Inc. ("Contour").

The following facts are not disputed. In 1999, Plaintiffs sued Revolution Eyewear, Inc. ("Revolution") for infringement of the '207 Patent in the United States District Court for the Central District of California. The district court granted Revolution's motion for summary

judgment of non-infringement and found that claim 1 of the '207 Patent was directed to the "top-mounted" primary and auxiliary frame combination and that Revolution's products were in a "bottom-mounted" configuration. The Federal Circuit summarily affirmed the district court's ruling. *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 42 F. App'x 436 (Fed. Cir. 2002).

In 2002, Revolution sued Plaintiffs for infringement of U.S. Patent No. 6,343,858 (the "'858 Patent") in the United States District Court for the Central District of California (the "Revolution California Action"). *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. 02-CV-01087 (C.D. Cal.). Also in 2002, around the time when the Revolution California Action was filed, the '207 Patent was reissued with 32 additional claims as U.S. Patent No. RE37,545 (the "'545 Patent") entitled "Auxiliary Lenses for Eyeglasses." (*Pl.'s Statement of Mat. Facts* ¶ 1 [ECF No. 116]; *Def. Revolution Eyewear, Inc.'s Statement of Mat. Facts* ¶ 1 [ECF No. 113]; *Def. Marchon Eyewear, Inc.'s Statement of Mat. Facts* ¶ 4 [ECF No. 108]). The invention claimed in the '545 Patent solves the following problem:

> The auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with the upper portion of the primary spectacle frame, and a pair of second magnetic members secured to the arms respectively for engaging with the first magnetic members of the primary spectacle frame so as to secure the auxiliary spectacle frame to the primary spectacle rams. The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward relative to and so as to prevent the auxiliary spectacle frame from being disengaged from the primary spectacle frame.

(*RE37,545 Col. 1-2, lines 55-67, 1-2* [ECF No. 1, Ex. A]).

After the reissue, Plaintiffs filed a counterclaim alleged that Revolution infringed claims 6, 22 and 34 of the '545 Patent. [ECF No. 113 ¶ 2]. Patent claims 6 and 34 claim both the primary spectacle frame and the auxiliary frame that attached magnetically to the primary frame.

[*Id.* ¶ 4]. Patent claim 22 is directed to the primary frame, but requires that magnets of the primary frame be "capable of engaging" the magnets of the auxiliary frame. [*Id.*]. In 2003, Revolution filed a counterclaim for declaratory judgment that it did not infringe any valid claim of the '545 patent. [*Id.* ¶ 3]. The district court dismissed Revolution's patent infringement action for lack of standing and granted summary judgment in favor of Plaintiffs, finding that Revolution's primary frames literally infringed claim 22 of the '545 Patent. *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. 02-CV-01087 (C.D. Cal. Apr. 30, 2007) ("*SJ Order of Infringement of Claim 22*"); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009). Plaintiffs did not allege that Revolution infringed on any other claims of the '545 Patent in the Revolution California Action. [*Id.*].

On December 26, 2006, Plaintiffs sued Marchon Eyewear, Inc. ("Marchon") for infringement of the '545 Patent in the United States District Court for the Central District of California (the "Marchon California Action"). [ECF No. 108 ¶ 13]. Specifically, Plaintiffs alleged that the bottom-mount primary frames of Marchon's old frame designs infringed claim 22. [*Id.* ¶ 14]. Plaintiffs did not allege that Marchon infringed on any other claims of the '545 Patent, including the auxiliary frames. [*Id.* ¶ 15]. Plaintiffs also did not allege any infringement of the '545 Patent with regard to Marchon's new frame designs, which were being sold at the time the Marchon California Action was pending. [*Id.* ¶ 22]. In 2008, Plaintiffs and Marchon entered into a settlement agreement whereby Plaintiffs stipulated to the dismissal of the Marchon California Action, with prejudice (the "Marchon Settlement"). (*Marchon Settlement Agreement* ECF No. 108-C, ¶ 4]).

> 4. DISMISSAL OF PENDING LITIGATION. …The parties hereby stipulate to dismissal with prejudice of the [Marchon] California Action, including all claims and counterclaims, and any claim which could have been had by and between the

>Parties arising from or connected with the [Marchon] California Action, and the Parties acknowledge their release and discharge from any and all such claims.

The Marchon Settlement Agreement also contained a release:

>6. RELEASE.   In consideration of the mutual promises and covenants set forth herein, including the payments and other consideration described herein, each of the Parties herby release, remise, acquit and forever discharge each of the other Parties…from any and all claims of liability, causes of action, actions … claims, counterclaims, liabilities and demands of every kind and character, whether known or unknown, which exist as of the Effective Date of this Agreement with any Marchon Old Design Magnetic Eyewear made, sold, used or offered for sale in the United States.

[*Id.* ¶ 6].

On September 13, 2007, Clarity Eyewear, Inc. filed an *ex parte* request for reexamination of claims 1-9, 12-14, 16-20, 23-24, and 31-34 of the '545 Patent. [ECF No. 116 ¶ 2].  On March 3, 2009, the USPTO issued a Reexamination Certificate for the '545 Patent. [ECF No. 1, Ex. A]. Upon reexamination, the USPTO confirmed the patentability of claims 1-9, 12-14, 16-20, and 31-33.  [*Id.*].  Plaintiffs amended claims 23 and 34, and also claim 35, which is dependent on claim 23. [*Id.*].   The new and amended claims were also determined to be patentable.  [*Id.*]. Claim 35 adds the limitation that the magnetic members of the auxiliary glasses are indeed magnetic.  [*Id.*].  The two claims at issue in this action are claims 23 and 35.

>23.  An eyeglass devise comprising:
>an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.
>
>35.  The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets.

Claims 23 and 35 contain no limitations regarding the size or angle of the arms of the auxiliary frame or the size of the magnets. [*Id.*].  The '545 Patent disclaims "an auxiliary frame that is not stably supported in top-mounting configuration and a primary frame that has embedded magnetic members." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1368 (Fed. Cir. 2009).

On September 23, 2009, Plaintiffs filed a Complaint alleging causes of action for direct infringement of claims 23 and 35 of the '545 Patent against Revolution and Marchon (Counts I and II) and inducement of infringement of the '545 Patent against Hardy Life, LLC, Nike and Gary Martin Zelman (Counts III, IV and V).  [ECF No. 1].

## II. LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once this burden has been met the non-moving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Id.*

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted).  The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970).  The court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied.  *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Conclusory allegations, unsupported by specific evidence, will be insufficient to establish a genuine issue of material fact to defeat a motion for summary judgment.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

### III. ANALYSIS

Claims amended during reexamination are entitled to the date of the original patent if they are without substantive change or are legally "identical" to the claims in the original patent. *See* 35 U.S.C. § 307(b); *see also Kaufman Co. v Lantech, Inc.*, 807 F.2d 970, 975-78 (Fed. Cir. 1986) (stating that section 307(b) incorporates the "identical" standard of 35 U.S.C. § 252).[1]  On March, 3, 2009, the USPTO issued a reexamination certificate for the '545 Patent.  Plaintiffs amended claim 23 by adding "having a horizontal surface" in two places and changing the phrase "magnetic members" to read "magnetic member surfaces" in one place.  In pertinent part, the reexamined claim 23 reads:

---

[1] The first paragraph of section 252 states: The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending or abate any cause of action then existing, and the reissued patent to the extent the claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

> …each of said arms having a rearwardly directed free end for securing a magnetic member *having a horizontal surface*, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members *having a horizontal surface* can vertically engage corresponding magnetic [[*members*]] *member surfaces* on a primary spectacle frame.

F1 37,545 patent, column 2, lines 3-12 (emphasis indicates added claim language). Plaintiffs also added a new dependent claim 35, which requires the magnetic members referenced in claim 23 to be magnets. Under the proper construction, the "horizontal surface" of the magnetic member referenced in claim 23 was always a downwardly facing horizontal surface that lies in a place substantially perpendicular to the face of the lenses of the auxiliary spectacle frame. The '545 Patent discloses an invention that is limited to a top mounted auxiliary frame that vertically engages a primary spectacle frame. The '545 Patent specification, including the drawings and written description, requires top mounting. Furthermore, taking into consideration the functionality of the '545 Patent, the proper construction of the "magnetic members" referenced in both claim 23 and claim 35 requires "magnetic member" of the auxiliary frame to be a permanent magnet. This is the only way the features and advantages of the "Auxiliary Lenses for Eyeglasses" can be achieved. Thus, Plaintiffs did not substantively alter the claim's scope by inserting "having a horizontal surface" or "magnetic member surfaces."

"Identical" does not mean verbatim, but rather means "without substantive change." *Slimfold Mfg. v. Kinkead Indus.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987). "Claims are not interpreted in a vacuum, but are part of and read in light of the specification." *Id.* at 1116. The addition of the words "having a horizontal surface" or "magnetic member surfaces" does not substantively change the scope of the original claim 23, but merely makes the claim more definite. *See Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413 (Fed. Cir. 1989) (addition of

the word "bottom" merely made claim more definite where common sense dictated the necessity of a bottom wall section). Therefore, the claims 23 and 35 are given date of the original patent for purposes of determining infringement.

***Claim Preclusion***

Revolution and Marchon assert that Plaintiffs' claims of direct infringement are barred by claim preclusion. I agree. Claim preclusion will prohibit a party from re-litigating an infringement claim where a judgment on the merits exists from a prior action. *Roche Palo Alto, LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008). Claim preclusion applies where there is (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of the parties; and (4) identity of the causes of action. *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007). Claim preclusion applies "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of facts." *Id.* (quoting *Manning v. City of Auburn*, 953 F,2d 1355 1358-59 (11th Cir. 1992)).

Whether two claims for infringement constitute the "same claim" is an issue particular to patent law and thus Federal Circuit law applies. *Accumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1322-24 (Fed. Cir. 2008). Under the law of the Federal Circuit, an infringement claim in a second suit is the "same claim" as in an earlier infringement suit if the accused products in the two suits are "essentially the same." *Acumed*, 525 F.3d at 1324; *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991). Accused products "are essentially the same where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent." *Id.* (internal quotations omitted). The party asserting claim preclusion has the burden of showing that the accused products are essentially the same. *Id.*

Here, the accused products are the auxiliary frames sold by Revolution and Marchon and the accused products from the Revolution California Action and the Marchon California Action (collectively, the "California Actions") are indeed "essentially the same." Claim 23 and claim 35 relate to how the auxiliary frame interfaces with the primary frame. The prior California Actions concerned how the primary frame interfaced with the auxiliary frame. The claims and legal theories alleged in this case arise "out of the same operative nucleus of facts." *Manning v. City of Auburn*, 953 F,2d 1355 1358-59 (11th Cir. 1992). Moreover, the accused infringement of claim 23 could have been litigated with the California Actions because Plaintiffs knew how the Revolution's and Marchon's auxiliary frame interfaced with the primary frame. At the time the California Actions were being litigated, Plaintiffs also knew that Revolution's and Marchon's auxiliary frames were being sold in the United States.

The Revolution California Action was fully adjudicated on the merits. The dismissal release of the Marchon Settlement made clear that the settlement dismissed with prejudice as to any causes of action "any claim which could have been had by and between the Parties arising from or connected with" the Marchon California Action. Plaintiffs argue that it alleged legally separate causes of action in their complaint because claim 23 and claim 35 did not exist at the time the California Actions were being litigated. The reexamination of the '545 Patent does not entitle Plaintiffs to circumvent claim preclusion because the amended claims relate back to the original '545 Patent reissue date. Asserting different claims of the same patent, against the same products, and against the same parties is barred by the rule against "claim splitting." *See Mars Inc. v. Nippon Conlux Kabushi-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("claim splitting cannot be justified on the ground that two actions are based on different legal theories.") (citations omitted). The complaint against Revolution and Marchon relate to the same set of

transactions as those litigated n the California Actions. The infringement action against Revolution and Marchon is therefore barred by claim preclusion.

### *Inducement to Infringe*

The Patent Act expressly brands anyone who "actively induces infringement of a patent" as an infringer. 35 U.S.C. § 271(b). It is fundamental that where there is no evidence of direct infringement of a patent, there can be no induced infringement. *See Walter Techs Corp. v. Calco Ltd.*, 850 F.2d 660, 668 n.7 (Fed. Cir. 1988), *cert denied*, 488 U.S. 968 (1988) (direct infringement is a prerequisite to finding induced infringement). Because I find that the causes of action against Revolution and Marchon (Count I and Count II) are barred by claim preclusion, there is no need to address whether the Revolution or Marchon products infringed Plaintiffs' auxiliary frames. It therefore follows that the causes of action for inducement to infringe against Nike, Inc. and Gary Zelman (Count IV and Count V) fail as a matter of law.[2]

### IV.  CONCLUSION

For the reasons stated above, I hereby **ORDER and ADJUDGE** as follows:

1. Plaintiffs' Motion for Partial Summary Judgment [ECF No. 115] is **DENIED**.

2. Marchon's Motion for Summary Judgment [ECF No. 107] is **GRANTED** *in part* **and DENIED** *in part*.

3. Revolution and Zelman's Motion for Summary Judgment [ECF No. 11] is **GRANTED** *in part* **and DENIED** *in part*.

4. Nike, Inc.'s Motion for Summary Judgment [ECF No. 103] is **GRANTED.**

5. The Clerk shall **CLOSE** this case.

6. All pending motions, if any, are **DENIED** *as moot.*

---

[2] On May 18, 2010, Plaintiffs voluntarily dismissed the inducement to infringe action (COUNT III) against Defendant Hardy Way, LLC, with prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of November 2010.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*All Counsel of Record*