# COMPOSITE EXHIBIT A

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 09-61515-Civ-COOKE/BANDSTRA

ASPEX EYEWEAR, INC., *et al.*,

     Plaintiffs

vs.

MARCHON EYEWEAR, INC., *et al.*,

     Defendants.

_____/

### ORDER CONSTRUING CLAIMS OF U.S. PATENT RE 37,545

THE MATTER is before me to construe disputed claim terms found in U.S. Patent No.

RE37,545 (the "'545 Patent"). In accordance with *Markman v. Westview Instruments, Inc.*, 517

U.S. 370 (1996), I have reviewed the record, the claim construction briefs filed by the parties

[ECF Nos. 181, 184, 185], and have heard argument of counsel. The summary of the '545

Patent, the claims at issue and the construction of the disputed claim terms are articulated below.

### *I. The Patented Technology*

The technology at issue in this case involves a spectacle frame that supports an auxiliary

frame, enabling the user to securely fasten a second set of lenses (e.g., sunglass lenses) onto the

primary frame (often holding prescription lenses). The '545 Patent is a reissue of Plaintiffs'

original U.S. Patent No. 5,568,207 (the "'207 Patent"), which has been surrendered.[1] On March

3, 2009, the United States Patent and Trademark Office ("USPTO") issued a Reexamination

Certificate which reconfirmed the claims of the '545 Patent, including an amended claim 23 and

a new dependent claim 35. On September 23, 2009, Plaintiffs filed a Complaint alleging causes

---

[1] Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc. are the assignees of record for the '545
Patent.

of action for direct infringement of claims 23 and 35 against Defendants Revolution Eyewear, Inc. ("Revolution") and Marchon Eyewear, Inc. ("Marchon") (Counts I and II), and inducement of infringement against Hardy Life, LLC, Nike, Inc., and Gary Zelman (Counts III, IV, and V). On October 19, 2010, the Parties filed their respective claim construction briefs.

## II. Legal Standard

Claim construction is a question of law for the court with the focus on the language of the claims themselves. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. at 384-85. A "claim" in a patent "provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989). "The purpose of claim construction is to determine the meaning and scope of the patent claims that the plaintiff alleges have been infringed." *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1381 (Fed. Cir. 2009). Claim construction "is the judicial statement of what is and is not covered by the technical terms and other words of the claims." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).

Claim terms should be given their ordinary and customary meaning as understood by one of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). To ascertain this meaning and to define the scope of the invention, courts look to intrinsic evidence including the words of the claims themselves, the specification, and the prosecution history of the patent. *Id.* at 1314; *see also Masco Corp. v. United States*, 303 F.3d 1316, 1324 (Fed. Cir. 2002); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996). "The claims themselves provide substantial guidance as to the meaning of particular claim terms." *Phillips*, 415 F.3d at 1314. The context of the surrounding words of the

claim term may be instructive in determining the ordinary and customary meaning of the term. *Id.* Courts also consider "[o]ther claims of the patent in question, both asserted and unasserted," to determine the ordinary and customary meaning of a claim term. *Id.* "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Id.* Differences in the claim language can also be a useful guide, and "different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope." *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (internal citations omitted).

Claims do not stand alone, but are part of "a fully integrated written instrument," which includes the specification. *See Markman*, 52 F.3d at 978. The specification is the single best guide to the meaning of a disputed term, and "claims must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315; *see also Vitronics*, 90 F.3d at 1582 ("[T]he specification is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term."). Courts, however, will not import a limitation from the specification into the claims. *Phillips*, 415 F.3d at 1320.

When the specification reveals a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess, the inventor's lexicography governs. *Id.* at 1316. There is "no magic formula or catechism for conducting claim construction," and the court must "read the specification in light of its purposes in order to determine whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends for the claims and the embodiments in the specification to be strictly coextensive." *Decisioning.com, Inc. v. Federated Dept. Stores, Inc.*, 527 F.3d 1300, 1307-08 (Fed. Cir. 2008) (citations omitted).

In addition to considering the specification, the court may also consider the patent's prosecution history. *Id.* at 1317.  The prosecution history "consists of the complete record of the proceedings before the USPTO and includes prior art cited during the examination of the patent." The prosecution history, however, "often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.*  The prosecution history may still "inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citing *Vitronics*, 90 F.3d at 1582-83).

In most cases, claims can be resolved based on intrinsic evidence.  *See Vitronics*, 90 F.3d at 1583.  Where an analysis of the intrinsic evidence fails to resolve any ambiguity in the claim language, the court may rely on extrinsic evidence, which consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Markman*, 52 F.3d at 980.  Extrinsic evidence is less significant than intrinsic evidence in construing claim terms and cannot be used to establish a meaning of a claim term that is at odds with the intrinsic evidence. *Phillips*, 415 F.3d at 1317-18.

### III. The Claim Language

The invention claimed in the '545 Patent is an auxiliary spectacle frame including two extending side arms that can magnetically engage with the upper portion of a primary spectacle frame.  The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward or being disengaged from the primary spectacle frame.

_____

**Claim 23**

An eyeglass device comprising:
an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

**Claim 35**

An eyeglass device according to claim 23 where said magnetic members are magnets.

————————

The following terms and combination of terms in claim 23 of the '545 Patent are disputed: (1) an eyeglass device; (2) each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface; (3) said arms of said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame; (4) so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame. The Parties do not dispute the terms of claim 35. However, the construction of the phrase "where said magnetic members are magnets" should be given a meaning consistent with the construction of the term "magnetic member" referenced in claim 23 and the overall functionality of the '545 Patent.

**(1)  "an eyeglass device"**

"An eyeglass device" is part of the preamble for both claims 23 and 35 and is used throughout the '545 Patent specification. Plaintiffs contend that "an eyeglass device" is not a claim limitation and is therefore not a term that needs to be construed by the court.

The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication. *Markman*, 52 F.3d at 976; *Vitronics*, 90 F.3d at1582. Here, the '545 Patent specification expressly defines "an eyeglass device" as including "a primary and an auxiliary spectacle frame for supporting lenses." Defendants' proposed construction is consistent with the specification in that the "eyeglass device" includes "a primary spectacle frame and an auxiliary spectacle frame."

**(2) "each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface"**

### (a) "rearwardly directed free end"

Plaintiffs claim that the intrinsic record of the '545 Patent compels the Court to construe "rearwardly directed free end" to mean "the end of the arm that extends substantially rearward of the lenses and is not attached to the side portions of the auxiliary spectacle frame." Defendants suggest that the term be given its ordinary and customary meaning.

Plaintiffs' proposed construction is misleading. "Not attached" or "unattached" is the negative of the adjective "attached," which means "tacked on, fastened by material union to" or "joined functionally." (http://dictionary.oed.com). The specification reveals that the portion of the auxiliary frame arm that secures the magnetic members is to be materially united or functionally joined to the primary spectacle frame at the "rearwardly directed free end." To construe the term "free end" to mean "not attached" would be inconsistent with the functionality of the '545 Patent. Accordingly, "a rearwardly directed free end" should be construed to mean "a rearwardly directed end portion." A review of Figure 4 visually confirms such an ordinary and customary term construction.

### (b) "for securing"

Plaintiffs claim that the proposed construction for the term "for securing" – "for

connecting in a manner that the connection is not likely to fail or give way" – is consistent with the ordinary meaning of the word "secure." Defendants also suggest that the term be given its ordinary and customary meaning. The plain language of claim 23, as well as the ordinary meaning the word "secure," supports Plaintiffs' suggested construction.

**(c)  "magnetic member"**

The Plaintiffs contend that "magnetic members" means either "a permanent magnet or ferromagnetic member, but at least one magnetic member in each pair of corresponding auxiliary frame/primary frame magnetic members must be a permanent magnet."  Conversely, Defendant Revolution proposes that "magnetic members" be construed according to its plain meaning as "a member having the properties of a magnet, i.e., attracting iron and producing a magnetic field external to itself."

Under the doctrine of claim differentiation, where some claims are broad and others are narrow, narrow claim limitations cannot be read into the broad claims. *Yarway Corp. v. Eur-Control USA, Inc.,* 775 F.2d 268, 274-75 (Fed. Cir. 1985). On the basis of that doctrine, the construction of the phrase "magnetic member" includes a magnet but cannot be limited to only a magnet. The ordinary meaning of the word "magnet" is "1. A body having the property of attracting iron and producing a magnetic field external to itself; *specifically*: a mass of iron, steel or alloy that has this property artificially imparted.  2. Something that attracts." (http://www.merriam-webstere.com/dictionary/magnet)  Thus, the ordinary meaning of "magnet" is essentially a permanent magnet.  The '545 Patent, however, requires the magnetic members in the auxiliary frame to be a permanent magnet while the primary frame can be either a permanent magnet or a ferromagnetic member.

Based on the language of the '545 Patent, and the ordinary meaning of the word

"magnet," the phrase "magnetic member" should be construed to mean "a member having the properties of a permanent magnet, attracting ferromagnetic material and producing a magnetic field external to itself."

### (d) "having a horizontal surface"

Figure 7 illustrates the "horizontal surface" of the auxiliary frame's magnetic members. Each magnetic member has a surface located in a substantially horizontal plane that has the ability to engage the corresponding horizontal magnetic member of the primary frame. Plaintiffs construe the phrase "horizontal surface" to mean "a surface in a substantially horizontal plane when the frame is worn (i.e., in a plane substantially perpendicular to the plane of the lenses of the auxiliary spectacle frame)." Defendants construe the phrase to mean "having a downwardly facing horizontal surface (exterior face)."

The intrinsic evidence from the specification and prosecution history of the '545 Patent indicates that the claims are restricted to a vertical magnetic engagement, and thus possess horizontal orientation. Although some claims restrict the orientation of the magnets, others do not. The '545 Patent's description of the preferred embodiment and its accompanying figures specifically describe a top mounting design. The written description and drawings only depict a top mounting design. Furthermore, nothing in the prosecution history shows that the inventor envisioned anything other than a top mounting design. Therefore, "having a horizontal surface" should be construed to mean "having a downwardly facing horizontal surface that lies in a plane substantially perpendicular to the face of the lenses of the auxiliary spectacle frame."

### (3) "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame"

The primary objective of the '545 Patent "is to provide auxiliary lenses which may be stably secured and supported on the frames." The specification, including the drawings and the

written description, requires that the arms and magnetic members of the auxiliary frame extend across the top of the side portions of the primary spectacle frame. The '545 Patent' specification describes the attachment of the auxiliary frame in terms of being a top-mounting device:

> The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward.

Plaintiffs contend that "adapted to extend across respective side portions of a primary spectacle frame" should be construed to mean "the magnetic members and at least some portion of the auxiliary spectacle frame arms are suitable for reaching across the top or bottom of the corresponding side portion of the spectacle frame." Defendants, however, argue that this portion of the claim be construed to mean "said arms and said pair of magnetic members are made to extend across the top of respective side portions or extensions of the primary spectacle frame."

All parties contend that the phrase "adapted to" is an ordinary and customary phrase and should be given its ordinary and customary meaning. However, they proffer different meanings for the phrase based on the dictionary definitions. Plaintiffs argue that "adapted to" should be construed to mean "suitable for" to convey that the arms are suitable for reaching across the top or bottom of the corresponding side portion of the spectacle frame. The term, "suitable for," proffered by the Plaintiff, is a broader term than "adapted to." That is, a device could be suitable for reaching across, without being intentionally and specifically made in a way that would cause it to reach across the top or the bottom of the corresponding spectacle frame. Moreover, Plaintiff's proposed definition of "suitable for" does not follow from a plain dictionary definition of the word "adapt." The widely accepted dictionary definitions of "adapt" proffered by the Plaintiff are "to make fit (as for a specific or new use or situation) often by modification"; synonyms include, e.g., adjust, accommodate, and conform (www.merriam-webster.com); "[t]o

make suitable to or fit for a specific use or situation" (www.thefreedictionary.com); "especially suitable for someone or something"; synonyms include, e.g., fitting, apt, and possible (www.macmillandictionary.com).  No dictionary definition that Plaintiff has cited defines "adapt to" to mean specifically "suitable for."  Plaintiff's attempt to proffer a broad and overreaching definition of the terms "suitable for" is inconsistent with the specification, drawings, and written description.

Defendants offer the same three definitions as the Plaintiff, but in addition cite case law from the federal circuit decision in *Revolution Eyewear Inc., v. Aspex Eyewear, Inc.,* et al. 563 F.3d 1358, 1368 (Fed. Cir. 2009), the underlying claim construction from the United States District Court for the Central District of California (the "Revolution California Action"), as well as support from the specification.  Defendants' proposed definition of "adapted to" embraces the concept of a device intentionally and specifically made to act in a certain way.  The written description of the '545 Patent' supports the definition of "made to" meaning to go across the respective side portions or extensions of the primary spectacle frame because it embodies more specific requirements when viewed in conjunction with the specifications, drawings, and writings.  Moreover, the court in the Revolution California construed "said arms extending across a respective extension" in disputed claim 34 to mean "at least some portion of each arm reaches across the top of the corresponding extension."

In addition, the claim language itself is instructive, stating "said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame." The ordinary meaning of the phrase "adapted to" is precisely consistent with the claim, specifications, drawings, and writings in that the "magnetic members" are made "to extend" across the top of the "respective side portions or extensions of the primary spectacle frame;" as

seen in Figures 3 through 7 of the specification. Thus, the "adaptation" of the "magnetic members" is illustrated by the placement of the "magnetic members" which are designed to reach across the top of the primary spectacle frame.

The term "adapted to" should be construed to mean "made to" in concurrence with the Defendants' proffered definition. This construction would give the term the appropriate meaning consistent with the specification, drawings and writings. The intrinsic record supports this construction. "Claims using relative terms such as 'adapted to' are insolubly ambiguous only if they provide no guidance to those skilled in the art as to the scope of that requirement." *See Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (2005)(the definiteness of a claim's terms depends on whether those terms can be given a reasonable meaning by a person of ordinary skill in the art); *Central Admixture Pharm. Servs., Inc. v. Advanced Cardiac Solutions*, 482 F.3d 1347, 1356 (Fed. Cir. 2006) ("adapted to" not indefinite); *se also Verve, LLC v. Crane Cams, Inc.*, 311 F.3d 1116, 1120 (Fed. Cir. 2002). As such, a person of "ordinary skill" in the field would understand the meaning of "adapted to" to mean "made to" because the environment dictates the necessary preciseness of the terms. *Power-One, Inc. v. Artesyn Technologies, Inc.* 599 F.3d 1343, 1348 (Fed. Cir. 2010).

**(4) "so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"**

Defendants argue that the construction of the entire phrase "so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame" should be consistent with the construction of the other terms at issue. Defendants propose that the Court construe the phrase to mean "so that said pair of magnetic members having a downwardly facing horizontal surface can be stably supported and secured on top of the upwardly facing non-embedded magnetic member surfaces on a

primary spectacle frame." Plaintiffs, however, argue that "vertically engage" must be construed to mean "that the horizontal surfaces of the auxiliary spectacle frame magnetic members engage corresponding magnetic member surfaces on a primary spectacle frame through actual contact, or through magnetic attraction without actual contact, in a plane that is substantially parallel to the plane of the lenses of the primary spectacle frame."

Plaintiff's proposed construction supports a top or bottom mounted configuration. The '545 Patent, however, discloses an invention that is limited to a top mounted auxiliary frame that vertically engages a primary spectacle frame. The '545 Patent specification, including the drawings and written description, requires top mounting. This is the only way the features and advantages of the "Auxiliary Lenses for Eyeglasses" can be achieved.

## IV. Conclusion

Based on the foregoing this Court concludes that:

1.      **"an eyeglass device"** means a primary and an auxiliary spectacle frame for supporting lenses.

2.      **"rearwardly directed free end"** means a rearwardly directed end portion.

3.      **"for securing"** means for connecting in a manner that the connection is not likely to fail or give way.

4.      **"magnetic member"** means a member having the properties of a permanent magnet, attracting ferromagnetic material and producing a magnetic field external to itself.

5.      **"having a horizontal surface"** means having a downwardly facing horizontal surface that lies in a plane substantially perpendicular to the horizontal face of the lenses of the primary spectacle frame.

6.      **"said arms and said pair of magnetic members adapted to extend across**

12

respective side portions of a  primary spectacle frame" means that said arms and said pair of magnetic members are made to extend across the top of the respective side portions of a  primary spectacle frame.

7.      **"so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame"** means so that said pair of magnetic members having a downwardly facing horizontal surface can be stably supported and secured on top of the upwardly facing non-embedded magnetic member surfaces on a primary spectacle frame.

**DONE AND ORDERED** in chambers, at Miami, Florida this 3rd day of November 2010.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of Record*

UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF FLORIDA

Case No.: 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC*., et al.*,

      Plainitffs

vs.

MARCHON EYEWEAR, INC. *et al.*,

      Defendants.

_____/

## OMNIBUS ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

THIS CASE is before me on the Parties' cross motions for summary judgment.  I have reviewed the record, the arguments and the relevant legal authorities.  For the reasons stated below, Plaintiffs' Motion for Partial Summary Judgment [ECF No. 115] is denied, Marchon's Motion for Summary Judgment [ECF No. 107] is granted in part and denied in part, Revolution and Zelman's Motion for Summary Judgment [ECF No. 111] is granted in part and denied in part, and Nike's Motion for Summary Judgment [ECF No. 103] is granted.

### *I. BACKGROUND*

The technology in this case involves a primary spectacle frame that supports a top mounted auxiliary frame that is attached magnetically.  In 1996, the United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 5,568,207 (the "'207 Patent") to inventor Richard Chao.  The '207 Patent was later assigned to Plaintiffs Aspex Eyewear, Inc. ("Aspex") and Contour Opik, Inc. ("Contour").

The following facts are not disputed.  In 1999, Plaintiffs sued Revolution Eyewear, Inc. ("Revolution") for infringement of the '207 Patent in the United States District Court for the Central District of California.  The district court granted Revolution's motion for summary

judgment of non-infringement and found that claim 1 of the '207 Patent was directed to the "top-mounted" primary and auxiliary frame combination and that Revolution's products were in a "bottom-mounted" configuration.  The Federal Circuit summarily affirmed the district court's ruling.  *Aspex Eyewear, Inc. v. Revolution Eyewear, Inc.*, 42 F. App'x 436 (Fed. Cir. 2002).

In 2002, Revolution sued Plaintiffs for infringement of U.S. Patent No. 6,343,858 (the "'858 Patent") in the United States District Court for the Central District of California (the "Revolution California Action").  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. 02-CV-01087 (C.D. Cal.).  Also in 2002, around the time when the Revolution California Action was filed, the '207 Patent was reissued with 32 additional claims as U.S. Patent No. RE37,545 (the "'545 Patent") entitled "Auxiliary Lenses for Eyeglasses." (*Pl.'s Statement of Mat. Facts* ¶ 1 [ECF No. 116]; *Def. Revolution Eyewear, Inc.'s Statement of Mat. Facts* ¶ 1 [ECF No. 113]; *Def. Marchon Eyewear, Inc.'s Statement of Mat. Facts* ¶ 4 [ECF No. 108]).  The invention claimed in the '545 Patent solves the following problem:

> The auxiliary spectacle frame including two side portions each having an arm extended therefrom for extending over and for engaging with the upper portion of the primary spectacle frame, and a pair of second magnetic members secured to the arms respectively for engaging with the first magnetic members of the primary spectacle frame so as to secure the auxiliary spectacle frame to the primary spectacle rams.  The arms are engaged with and supported on the upper portion of the primary spectacle frame so as to allow the auxiliary spectacle frame to be stably supported on the primary spectacle frame and so as to prevent the auxiliary spectacle frame from moving downward relative to and so as to prevent the auxiliary spectacle frame from being disengaged from the primary spectacle frame.

(*RE37,545 Col. 1-2, lines 55-67, 1-2* [ECF No. 1, Ex. A]).

After the reissue, Plaintiffs filed a counterclaim alleged that Revolution infringed claims 6, 22 and 34 of the '545 Patent.  [ECF No. 113 ¶ 2].  Patent claims 6 and 34 claim both the primary spectacle frame and the auxiliary frame that attached magnetically to the primary frame.

[*Id.* ¶ 4].   Patent claim 22 is directed to the primary frame, but requires that magnets of the primary frame be "capable of engaging" the magnets of the auxiliary frame.  [*Id.*].  In 2003, Revolution filed a counterclaim for declaratory judgment that it did not infringe any valid claim of the '545 patent.  [*Id.* ¶ 3].  The district court dismissed Revolution's patent infringement action for lack of standing and granted summary judgment in favor of Plaintiffs, finding that Revolution's primary frames literally infringed claim 22 of the '545 Patent.  *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, No. 02-CV-01087 (C.D. Cal. Apr. 30, 2007) ("*SJ Order of Infringement of Claim 22*"); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358 (Fed. Cir. 2009). Plaintiffs did not allege that Revolution infringed on any other claims of the '545 Patent in the Revolution California Action.  [*Id.*].

On December 26, 2006, Plaintiffs sued Marchon Eyewear, Inc. ("Marchon") for infringement of the '545 Patent in the United States District Court for the Central District of California (the "Marchon California Action").  [ECF No. 108 ¶ 13].  Specifically, Plaintiffs alleged that the bottom-mount primary frames of Marchon's old frame designs infringed claim 22.  [*Id.* ¶ 14].  Plaintiffs did not allege that Marchon infringed on any other claims of the '545 Patent, including the auxiliary frames.  [*Id.* ¶ 15].  Plaintiffs also did not allege any infringement of the '545 Patent with regard to Marchon's new frame designs, which were being sold at the time the Marchon California Action was pending.  [*Id.* ¶ 22].  In 2008, Plaintiffs and Marchon entered into a settlement agreement whereby Plaintiffs stipulated to the dismissal of the Marchon California Action, with prejudice (the "Marchon Settlement").  (*Marchon Settlement Agreement* ECF No. 108-C, ¶ 4]).

> 4. DISMISSAL OF PENDING LITIGATION. …The parties hereby stipulate to dismissal with prejudice of the [Marchon] California Action, including all claims and counterclaims, and any claim which could have been had by and between the

Parties arising from or connected with the [Marchon] California Action, and the Parties acknowledge their release and discharge from any and all such claims.

The Marchon Settlement Agreement also contained a release:

6. RELEASE.   In consideration of the mutual promises and covenants set forth herein, including the payments and other consideration described herein, each of the Parties herby release, remise, acquit and forever discharge each of the other Parties…from any and all claims of liability, causes of action, actions … claims, counterclaims, liabilities and demands of every kind and character, whether known or unknown, which exist as of the Effective Date of this Agreement with any Marchon Old Design Magnetic Eyewear made, sold, used or offered for sale in the United States.

[*Id.* ¶ 6].

On September 13, 2007, Clarity Eyewear, Inc. filed an *ex parte* request for reexamination of claims 1-9, 12-14, 16-20, 23-24, and 31-34 of the '545 Patent.  [ECF No. 116 ¶ 2].  On March 3, 2009, the USPTO issued a Reexamination Certificate for the '545 Patent. [ECF No. 1, Ex. A]. Upon reexamination, the USPTO confirmed the patentability of claims 1-9, 12-14, 16-20, and 31-33.  [*Id.*].  Plaintiffs amended claims 23 and 34, and also claim 35, which is dependent on claim 23.  [*Id.*].  The new and amended claims were also determined to be patentable.  [*Id.*]. Claim 35 adds the limitation that the magnetic members of the auxiliary glasses are indeed magnetic.  [*Id.*].  The two claims at issue in this action are claims 23 and 35.

23.  An eyeglass devise comprising:
an auxiliary spectacle frame for supporting auxiliary lenses therein, said frame including a front side, a rear side, and oppositely positioned side portions, each of said side portions having an arm extended therefrom, each of said arms having a rearwardly directed free end for securing a magnetic member having a horizontal surface, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members having a horizontal surface can vertically engage corresponding magnetic member surfaces on a primary spectacle frame.

35.  The eyeglass device according to claim 23, wherein, said magnetic members of said auxiliary spectacle frame are magnets.

Claims 23 and 35 contain no limitations regarding the size or angle of the arms of the auxiliary frame or the size of the magnets.  [*Id.*].  The '545 Patent disclaims  "an auxiliary frame that is not stably supported in top-mounting configuration and a primary frame that has embedded magnetic members." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 563 F.3d 1358, 1368 (Fed. Cir. 2009).

On September 23, 2009, Plaintiffs filed a Complaint alleging causes of action for direct infringement of claims 23 and 35 of the '545 Patent against Revolution and Marchon (Counts I and II) and inducement of infringement of the '545 Patent against Hardy Life, LLC, Nike and Gary Martin Zelman (Counts III, IV and V).  [ECF No. 1].

## II. LEGAL STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Once this burden has been met the non-moving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  *Id.*

Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citations omitted). The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007). Conclusory allegations, unsupported by specific evidence, will be insufficient to establish a genuine issue of material fact to defeat a motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

### III. ANALYSIS

Claims amended during reexamination are entitled to the date of the original patent if they are without substantive change or are legally "identical" to the claims in the original patent. *See* 35 U.S.C. § 307(b); *see also Kaufman Co. v Lantech, Inc.*, 807 F.2d 970, 975-78 (Fed. Cir. 1986) (stating that section 307(b) incorporates the "identical" standard of 35 U.S.C. § 252).[1] On March, 3, 2009, the USPTO issued a reexamination certificate for the '545 Patent. Plaintiffs amended claim 23 by adding "having a horizontal surface" in two places and changing the phrase "magnetic members" to read "magnetic member surfaces" in one place. In pertinent part, the reexamined claim 23 reads:

---

[1] The first paragraph of section 252 states: The surrender of the original patent shall take effect upon the issue of the reissued patent, and every reissued patent shall have the same effect and operation in law, on the trial of actions for causes thereafter arising, as if the same had been originally granted in such amended form, but in so far as the claims of the original and reissued patents are identical, such surrender shall not affect any action then pending or abate any cause of action then existing, and the reissued patent to the extent the claims are identical with the original patent, shall constitute a continuation thereof and have effect continuously from the date of the original patent.

> …each of said arms having a rearwardly directed free end for securing a magnetic member *having a horizontal surface*, and a pair of magnetic members respectively secured in the free ends of said arms, said arms and said pair of magnetic members adapted to extend across respective side portions of a primary spectacle frame so that said pair of magnetic members *having a horizontal surface* can vertically engage corresponding magnetic [[*members*]] *member surfaces* on a primary spectacle frame.

F1 37,545 patent, column 2, lines 3-12 (emphasis indicates added claim language).  Plaintiffs also added a new dependent claim 35, which requires the magnetic members referenced in claim 23 to be magnets.  Under the proper construction, the "horizontal surface" of the magnetic member referenced in claim 23 was always a downwardly facing horizontal surface that lies in a place substantially perpendicular to the face of the lenses of the auxiliary spectacle frame.  The '545 Patent discloses an invention that is limited to a top mounted auxiliary frame that vertically engages a primary spectacle frame.  The '545 Patent specification, including the drawings and written description, requires top mounting.   Furthermore, taking into consideration the functionality of the '545 Patent, the proper construction of the "magnetic members" referenced in both claim 23 and claim 35 requires "magnetic member" of the auxiliary frame to be a permanent magnet.  This is the only way the features and advantages of the "Auxiliary Lenses for Eyeglasses" can be achieved.  Thus, Plaintiffs did not substantively alter the claim's scope by inserting "having a horizontal surface" or "magnetic member surfaces."

"Identical" does not mean verbatim, but rather means "without substantive change." *Slimfold Mfg. v. Kinkead Indus.*, 810 F.2d 1113, 1115 (Fed. Cir. 1987).  "Claims are not interpreted in a vacuum, but are part of and read in light of the specification." *Id.* at 1116. The addition of the words "having a horizontal surface" or "magnetic member surfaces" does not substantively change the scope of the original claim 23, but merely makes the claim more definite. *See Tennant Co. v. Hako Minuteman, Inc.*, 878 F.2d 1413 (Fed. Cir. 1989) (addition of

the word "bottom" merely made claim more definite where common sense dictated the necessity of a bottom wall section).  Therefore, the claims 23 and 35 are given date of the original patent for purposes of determining infringement.

### Claim Preclusion

Revolution and Marchon assert that Plaintiffs' claims of direct infringement are barred by claim preclusion.  I agree.  Claim preclusion will prohibit a party from re-litigating an infringement claim where a judgment on the merits exists from a prior action.  *Roche Palo Alto, LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008).  Claim preclusion applies where there is (1) a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) identity of the parties; and (4) identity of the causes of action.  *Adams v. Southern Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1289 (11th Cir. 2007).  Claim preclusion applies "not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of facts."  *Id.* (quoting *Manning v. City of Auburn*, 953 F,2d 1355 1358-59 (11th Cir. 1992)).

Whether two claims for infringement constitute the "same claim" is an issue particular to patent law and thus Federal Circuit law applies.  *Accumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1322-24 (Fed. Cir. 2008).  Under the law of the Federal Circuit, an infringement claim in a second suit is the "same claim" as in an earlier infringement suit if the accused products in the two suits are "essentially the same."  *Acumed*, 525 F.3d at 1324; *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479-80 (Fed. Cir. 1991).  Accused products "are essentially the same where the differences between them are merely colorable or unrelated to the limitations in the claim of the patent."  *Id.* (internal quotations omitted).  The party asserting claim preclusion has the burden of showing that the accused products are essentially the same.  *Id.*

Here, the accused products are the auxiliary frames sold by Revolution and Marchon and the accused products from the Revolution California Action and the Marchon California Action (collectively, the "California Actions") are indeed "essentially the same."  Claim 23 and claim 35 relate to how the auxiliary frame interfaces with the primary frame.  The prior California Actions concerned how the primary frame interfaced with the auxiliary frame.  The claims and legal theories alleged in this case arise "out of the same operative nucleus of facts."  *Manning v. City of Auburn*, 953 F,2d 1355 1358-59 (11th Cir. 1992).  Moreover, the accused infringement of claim 23 could have been litigated with the California Actions because Plaintiffs knew how the Revolution's and Marchon's auxiliary frame interfaced with the primary frame.  At the time the California Actions were being litigated, Plaintiffs also knew that Revolution's and Marchon's auxiliary frames were being sold in the United States.

The Revolution California Action was fully adjudicated on the merits. The dismissal release of the Marchon Settlement made clear that the settlement dismissed with prejudice as to any causes of action "any claim which could have been had by and between the Parties arising from or connected with" the Marchon California Action.  Plaintiffs argue that it alleged legally separate causes of action in their complaint because claim 23 and claim 35 did not exist at the time the California Actions were being litigated.  The reexamination of the '545 Patent does not entitle Plaintiffs to circumvent claim preclusion because the amended claims relate back to the original '545 Patent reissue date.  Asserting different claims of the same patent, against the same products, and against the same parties is barred by the rule against "claim splitting."  *See Mars Inc. v. Nippon Conlux Kabushi-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) ("claim splitting cannot be justified on the ground that two actions are based on different legal theories.") (citations omitted).  The complaint against Revolution and Marchon relate to the same set of

transactions as those litigated n the California Actions. The infringement action against Revolution and Marchon is therefore barred by claim preclusion.

**Inducement to Infringe**

The Patent Act expressly brands anyone who "actively induces infringement of a patent" as an infringer. 35 U.S.C. § 271(b). It is fundamental that where there is no evidence of direct infringement of a patent, there can be no induced infringement. *See Walter Techs Corp. v. Calco Ltd.*, 850 F.2d 660, 668 n.7 (Fed. Cir. 1988), *cert denied*, 488 U.S. 968 (1988) (direct infringement is a prerequisite to finding induced infringement). Because I find that the causes of action against Revolution and Marchon (Count I and Count II) are barred by claim preclusion, there is no need to address whether the Revolution or Marchon products infringed Plaintiffs' auxiliary frames. It therefore follows that the causes of action for inducement to infringe against Nike, Inc. and Gary Zelman (Count IV and Count V) fail as a matter of law.[2]

## *IV. CONCLUSION*

For the reasons stated above, I hereby **ORDER and ADJUDGE** as follows:

1.      Plaintiffs' Motion for Partial Summary Judgment [ECF No. 115] is **DENIED**.

2.      Marchon's Motion for Summary Judgment [ECF No. 107] is **GRANTED** *in part* and **DENIED** *in part*.

3.      Revolution and Zelman's Motion for Summary Judgment [ECF No. 11] is **GRANTED** *in part* and **DENIED** *in part.*

4.      Nike, Inc.'s Motion for Summary Judgment [ECF No. 103] is **GRANTED.**

5.      The Clerk shall **CLOSE** this case.

6.      All pending motions, if any, are **DENIED** *as moot.*

---

[2] On May 18, 2010, Plaintiffs voluntarily dismissed the inducement to infringe action (COUNT III) against Defendant Hardy Way, LLC, with prejudice.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of November 2010.

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*All Counsel of Record*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 09-61515-CIV-COOKE/BANDSTRA

ASPEX EYEWEAR, INC. *et al.*,

      Plaintiffs

vs.

MARCHON EYEWEAR, INC., *et al.*,

_____/

### <u>FINAL JUDGMENT</u>

THIS CASE is before me upon the Parties' Joint Notice of Proposed Final Judgment (ECF No. 211), filed December 3, 2010.  In light of the Parties' joint stipulation and this Court's Omnibus Order denying Plaintiffs' Motion for Partial Summary Judgment, granting in part Defendants Marchon Eyewear, Inc.'s ("Marchon"), Revolution Eyewear, Inc.'s ("Revolution"), and Gary Martin Zelman's ("Zelman") Motions for Summary Judgment, and granting Defendant Nike, Inc.'s ("Nike") Motion for Summary Judgment (ECF No. 210), I hereby **ORDER and ADJUDGE** as follows:

1.      Final Judgment is entered in favor of Defendants Marchon, Revolution, Nike, and Zelman against Plaintiffs Aspex Eyewear, Inc. and Contour Optik, Inc. on ***all counts*** of Plaintiffs' Complaint.  (ECF No. 1).

2.      Plaintiffs' cause of action against Marchon (Count I) is barred by claim preclusion.

3.      Plaintiffs' cause of action against Revolution (Count II) is barred by claim preclusion.

4.      Plaintiffs' cause of action against Nike (Count IV) fails as a matter of law, as the cause of action against Marchon (Count I) is barred by claim preclusion.

5.      Plaintiffs' cause of action against Zelman (Count V) fails as a matter of law, as the cause of action against Revolution (Count II) is barred by claim preclusion.

6.      Defendants' non-infringement defenses, invalidity defenses and respective counterclaims are ***moot as a matter of law*** and are **DISMISSED** ***without prejudice***.

7.      Defendant Marchon's counterclaims for breach of contract and breach of implied covenant of good faith and fair dealings are **STAYED** pending Plaintiffs appeal to Federal Circuit, in accordance with this Courts Order Granting Agreed Motion to Stay.  (ECF No. XXX).

8.      Defendants shall file their respective Motions for Attorneys Fees and Costs pursuant to Local Rule 7.3 within sixty (60) days of entry of this Final Judgment.

**DONE and ORDERED** in chambers at Miami, Florida this 16th day of December 2010.

_Marcia G. Cooke_
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Ted E. Bandstra, U.S. Magistrate Judge*
*Counsel of Record*